1   WAYNE A. SILVER, Esq. (CA 108135)
2   333 West El Camino Real, Suite 310
    Sunnyvale, California 94087
3   Email: w_silver@sbcglobal.net
    Tel. (408) 720-7007
4   Fax. (408) 720-7001
    (*Admitted Pro Hac Vice*)
5
6   LAW OFFICES OF AMY N. TIRRE
    Amy N. Tirre, Esq. (NV 6523)
7   3715 Lakeside Dr., Suite "A"
    Reno, NV 89509
8   Email: amy@amytirrelaw.com
    Tel. (775) 828-0909
9   Fax. (775) 828-0914
10
    Attorneys for Plaintiff,
11  KENMARK VENTURES, LLC

12                  **UNITED STATES BANKRUPTCY COURT**

13                         **DISTRICT OF NEVADA**

14

15  In re:                                    Case No. BK-N-14-50333-BTB
                                              Case No. BK-N-14-50332-BTB
16  ANTHONY THOMAS and WENDI
    THOMAS,                                   Chapter 11
17
    AT EMERALD, LLC,                          [Jointly Administered]
18
            Debtors.
19
    ─────────────────────────
    KENMARK VENTURES, LLC                     Adv. Pro. No. _____
20
            Plaintiff,
21
        v.                                    **COMPLAINT FOR DAMAGES AND TO
22                                            DETERMINE DISCHARGEABILITY OF
    ANTHONY THOMAS and WENDI                  DEBT**
23  THOMAS,
                                              **[11 U.S.C. §523(A)(2)]**
24          Defendants.
    ─────────────────────────
25          Plaintiff KENMARK VENTURES, LLC ("Plaintiff"), through its counsel Wayne A. Silver

26  and Amy N. Tirre, hereby complains and alleges against ANTHONY THOMAS and WENDI

27  THOMAS ("Defendants") the following:

28              **I.        JURISDICTIONAL ALLEGATIONS**

                                                                              Page 1

1.     This is an adversary proceeding within the meaning of Federal Rule of Bankruptcy Procedure 7001.

2.      This adversary proceeding arises out of and is related to Defendants' above-captioned Chapter 11 bankruptcy case No. BK-N-14-50333-BTB ("Bankruptcy Case"), pending before the United States Bankruptcy Court for the District of Nevada ("Bankruptcy Court"). The Bankruptcy Court has jurisdiction in the instant adversary proceeding pursuant to 28 U.S.C. §§157 and 1334, and Rule 1001(b)(2) of the Local Rules of Bankruptcy Practice for the United States Bankruptcy Court for the District of Nevada.

3.     The claims for relief set forth herein are proceedings to determine the dischargeability of particular debts and, as such, are core proceedings pursuant to 28 U.S.C. §157(b)(2)(I). If these claims are determined to be "noncore" however, Plaintiff consents to entry of final orders and judgment by the Bankruptcy Court.

4.     Venue is proper pursuant to 28 U.S.C. §1409.

5.     Defendants filed their chapter 11 voluntary bankruptcy petition on March 4, 2014 in the Bankruptcy Court, thereby initiating the Bankruptcy Case.

## II.     PARTIES

6.     Plaintiff is a California Limited Liability Company doing business in Santa Clara County, California.

7.     Plaintiff is informed and believes Defendants are married adult individuals and the Debtors in the above-referenced Bankruptcy Case. Defendant WENDI THOMAS is sued solely to the extent of her community property interests and to the extent Plaintiff is determined to be the holder of a "community claim" as defined by 11 U.S.C. §101(7), et seq.

8.     The last address for the Defendants, as listed in the mailing matrix on their original bankruptcy petition is: 7725 Peavine Peak Court, Reno, Nevada 89523.

9.     ELECTRONIC PLASTICS, LLC ("EPL"), a Delaware limited liability company with its principal place of business in Solano Beach, California. EPC, although not a named defendant, is a material actor in the events and transactions described below. Plaintiff is informed and believes that there is a unity of interest and ownership between ANTHONY THOMAS and EPL, such that

Complaint for Damages and To Determine Dischargeability of Debt

the separate personalities of ANTHONY THOMAS and EPL no longer exist, and that if the acts are treated as those of EPL alone, it would sanction a fraud or promote injustice to uphold the EPL corporate entity and allow ANTHONY THOMAS to escape personal liability for the debt.

10.    On information and belief, ANTHONY THOMAS is personally liable for directly authorizing and/or actively participating in and/or controlling the wrongful or tortious conduct described below, notwithstanding the fact that ANTHONY THOMAS was purporting to act on behalf of EPL.

11.    ANTHONY THOMAS is therefore fully responsible for any obligation owed to Plaintiff by EPL. Plaintiff expressly reserves the right to name EPL as a defendant in this Adversary Proceeding to the extent necessary to enforce Plaintiff's rights and remedies against Defendants.

### III.    GENERAL ALLEGATIONS

12.    In early 2007, in San Jose, California, Defendant ANTHONY THOMAS purportedly acting on behalf of and in concert with EPL, approached Plaintiff seeking to borrow funds, allegedly to pay for the development and marketing of a proprietary biometric smartcard technology for authenticating identification for electronic transactions and other applications (hereinafter "Smartcard Technology"). ANTHONY THOMAS represented to Plaintiff that EPL was at the stage of marketing the Smartcard Technology for commercial use and manufacturing, that there was significant interest in various industry sectors in purchasing security products containing the Smartcard Technology and EPL was forecasting that they would be selling 30 million smartcards in the next 24 to 30 months.

13.    Plaintiff was not interested in making an equity investment in EPL for the development and marketing of Smartcard Technology or otherwise; however, on the basis of ANTHONY THOMAS ' representations and the written business plan provided by ANTHONY THOMAS and EPL, Plaintiff was willing to lend money to ANTHONY THOMAS and EPL, to be used for the sole and specific purpose of developing and marketing the Smartcard Technology, provided that ANTHONY THOMAS and EPL were able to provide adequate security for any sums loaned.

14.    In response to Plaintiff's requirement for adequate security for the loan sought by

Complaint for Damages and To Determine Dischargeability of Debt

ANTHONY THOMAS and EPL, ANTHONY THOMAS represented to Kenneth Tersini, as an agent of Plaintiff and to other members of Plaintiff and their agents and representatives, that he owned a raw emerald weighing over 21,000 carats and appraised as having a value of over Five Hundred Million Dollars ($500,000,000.00) (hereinafter the "Emerald") and that ANTHONY THOMAS was willing to provide the Emerald as security for Plaintiff's loan.

15. Based on these representations and written materials material provided by ANTHONY THOMAS and EPL, Plaintiff agreed to loan ANTHONY THOMAS and EPL up to Six Million One Hundred Ten Thousand Dollars ($6,110,000.00) through a series of fundings, for the specific purpose of developing and marketing the Smartcard Technology.

16. Pursuant to the terms of the initial oral agreement, commencing in June of 2007 and ending in May 2008, through a series of fundings, Plaintiff loaned a total of Six Million One Hundred Ten Thousand Dollars ($6,110,000.00) to ANTHONY THOMAS and EPL

17. In or about June 2007, ANTHONY THOMAS delivered possession of the Emerald to Plaintiff by depositing the Emerald in a security deposit box at Wells Fargo Bank in Reno, Nevada and delivering to Plaintiff's agent the key to said security deposit box, all for the purpose of allowing Plaintiff to perfect its security interest in the Emerald by possession. Out of an abundance of caution, Plaintiff also perfected its security interest in the Emerald by filing a UCC-l with the State of Nevada, where the Emerald was then located.

18. On or about October 25, 2007, ANTHONY THOMAS and EPL executed and delivered a secured Promissory Note in the then current principal amount of Three Million Dollars ($3,000,000.00), and to include and be increased by any and all additional future advances (the "Note"). The Note was secured by a Security Agreement designating the Emerald as collateral for performance of the Note ("Security Agreement"). True and correct copies of the Note and Security Agreement are attached hereto as Exhibit "A" and "B," respectively. Subsequent to the execution of Exhibit "A," Plaintiff loaned an additional Three Million One Hundred Ten Thousand Dollars ($3,110,000.00) to ANTHONY THOMAS and EPL, increasing the total amount owed under the Note to Six Million One Hundred Ten Thousand Dollars ($6,110,000.00).

19. In or about of May 2008, ANTHONY THOMAS requested that Plaintiff allow the

Complaint for Damages and To Determine Dischargeability of Debt

Emerald to be removed from the security bank box in Reno, Nevada and transported to a vault in Sarasota, Florida, to be shown to a potential buyer or buyers, allegedly interested in purchasing the Emerald. ANTHONY THOMAS also represented that upon any sale of the Emerald, and directly from the proceeds of the sale of the Emerald, they would immediately repay Plaintiff the outstanding balance of the Note. Based on such representations, Plaintiff authorized ANTHONY THOMAS to transport the Emerald to Florida to be deposited in a vault in Sarasota, Florida for the sole purpose of allowing the potential buyer(s) to examine the Emerald and effectuate the sale of the Emerald to such potential buyer(s). However, once the Emerald was in Sarasota, Florida, ANTHONY THOMAS refused Plaintiff access to the Emerald and made various excuses about alleged delays in selling the Emerald. Plaintiff was later informed by ANTHONY THOMAS that the potential buyer had a funding problem and could not proceed with the purchase.

20.    On or about October 31, 2008, Plaintiff made a written demand to ANTHONY THOMAS and EPL to pay the Six Million One Hundred Ten Thousand Dollars ($6,110,000.00) owed under the Note and return the possession of Emerald to Plaintiff to be held as security or otherwise disposed of pursuant to the terms of the Security Agreement. A copy of Plaintiff's demand letter is attached as Exhibit "C". In response to Plaintiff's demand, on or about November 6, 2008, Plaintiff received a letter from Defendants, through their attorney, advising that ANTHONY THOMAS and EPL refused to pay any amount owed under the Note or deliver possession of the Emerald.

21.    Plaintiff therefore brought a Replevin action in the Circuit Court for the Twelfth Judicial Circuit in Sarasota County, Florida, Case No. 2008-CA-20557-NC to recover possession of the Emerald pursuant to the terms of the Security Agreement (the "Florida Replevin Action"). As the result of such action, the Emerald was held in Florida by Sarasota Vault, under the order of the Florida Circuit Court, which prohibited the Defendants in the Florida Replevin Action from gaining access to the Emerald, pending further order of the Florida Circuit Court.

22.    Plaintiff also brought a civil action against ANTHONY THOMAS, EPL and others in the Santa Clara Superior Court, Case No. 108CV130677 (the "Santa Clara Lawsuit"). The Santa Clara Lawsuit was settled during trial, and called for ANTHONY THOMAS, EPL and the other

Complaint for Damages and To Determine Dischargeability of Debt

named defendants in the Santa Clara Lawsuit to pay Five Million Dollars ($5,000,000.00) to the Plaintiff in a series of annual installment payments commencing on January 1, 2013 and ending on January 1, 2017. The Florida Replevin Action was dismissed as a condition of the settlement in the Santa Clara Lawsuit, as was a cross-complaint filed by ANTHONY THOMAS and jointly administered debtor A.T. EMERALD, LLC against Plaintiff. Although the settlement was not reduced to written agreement, it was placed on the record in the Santa Clara Lawsuit. A copy of the Transcript from that October 5, 2011 hearing in the Santa Clara Action is attached as Exhibit "D".

## FIRST CLAIM FOR RELIEF

### Money Damages for Breach of Settlement Agreement

23.    Plaintiff realleges and incorporates herein by this reference each of the allegations contained in paragraphs 1 – 22 above as though fully set forth hereagain in full.

24.    ANTHONY THOMAS made a $500,000.00 payment under the terms of the settlement agreement in the Santa Clara Lawsuit, however failed to make the payment due on January 1, 2014, or any subsequent payments.

25.    On or about January 9, 2014, ANTHONY THOMAS and Plaintiff agreed to a Stipulation for Judgment in the Santa Clara Lawsuit ("Stipulation"), a copy of which is attached as Exhibit "E". ANTHONY THOMAS further agreed to pay Plaintiff $575,000.00 toward the settlement agreement in the Santa Clara Lawsuit in exchange for an extension of the payment date to January 31, 2014, and Plaintiff's agreement not to file the Stipulation before that date.

26.    ANTHONY THOMAS failed to pay the agreed $575,000.00 toward the settlement agreement in the Santa Clara Lawsuit on or before January 31, 2014, and Plaintiff therefore gave the required notice to ANTHONY THOMAS of its intent to seek entry of judgment on the Stipulation. Plaintiff was prevented from obtaining a judgment against ANTHONY THOMAS by the filing of the Bankruptcy Case on March 4, 2014.

27.    As a result, there is due and owing and unpaid from ANTHONY THOMAS to Plaintiff the sum of Four Million Five Hundred Thousand Dollars ($4,500,000.00), together with interest thereon at the rate often percent (10%) per annum, plus attorneys' fees as allowed under the Note in an amount to be proven at trial ("Plaintiff's Claim").

Complaint for Damages and To Determine Dischargeability of Debt

**WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, as set forth below.

## SECOND CLAIM FOR RELIEF

### Nondischargeability – Fraud (Intentional Misrepresentation)

### [11 U.S.C. §523(a)(2)]

28.     Plaintiff realleges and incorporates herein by this reference each of the allegations contained in paragraphs 1 – 27 above as though fully set forth hereagain in full.

29.     On or about May 1, 2007, in San Jose, California, ANTHONY THOMAS orally represented to Plaintiff, through its agent and members, Kenneth Tersini and Mark Tersini, that EPL owned or had an exclusive worldwide license for the use of the Smartcard Technology for all commercial purposes including manufacturing and marketing. Plaintiff, through its agents Kenneth Tersini and Mark Tersini, heard and believed these representations and relied on these representations in making the decision to lend and actually lending money to Defendants, as is evidenced by the Note.

30.     ANTHONY THOMAS made the representation in ¶29 to induce Plaintiff to make loans to him and to EPL in the ultimate amount of Six Million One Hundred Ten Thousand Dollars ($6,110,000.00) to support the development and marketing of Smartcard Technology. This representation was false, and ANTHONY THOMAS knew said representation to be false at the time it was made. The true facts were, on information and belief, that EPL did not own or have credible or legal claim to the Smartcard Technology.

31.     On or about June 1, 2007, in San Jose, California, ANTHONY THOMAS orally represented to Plaintiff, through its agents and members, Kenneth Tersini and Mark Tersini, that ANTHONY THOMAS and ELP were seeking funding to develop and market the Smartcard Technology and that all loans received from Plaintiff would be used solely and exclusively for such purpose. This representation was made to induce Plaintiff to make loans to him and to EPL in the ultimate amount of Six Million One Hundred Ten Thousand Dollars ($6,110,000.00) to support the development and marketing of Smartcard Technology. Plaintiff, through its agents Kenneth Tersini and Mark Tersini, heard and believed these representations and relied on these representations in

Complaint for Damages and To Determine Dischargeability of Debt

1  making the decision to lend and actually lending money to Defendants, as is evidenced by the Note.

2        32.    ANTHONY THOMAS's representations in ¶31 regarding the use of funds were false.

3  The falsity of these statements was known to ANTHONY THOMAS at the time they were made.

4  The true facts were that ANTHONY THOMAS intended to and did use, or cause ELP to use, the

5  sums evidenced by the Note and secured by the Security Agreement for purposes unrelated to

6  production and marketing of Smartcard Technology. Plaintiff is informed and believes, and thereon

7  alleges that ANTHONY THOMAS used the loan proceeds made pursuant to the Note for purposes

8  other than the development and marketing of the Smartcard Technology, and used some or all of the

9  proceeds for his personal expenses.

10        33.    On or about May 1, 2007, in San Jose, California, ANTHONY THOMAS orally

11  represented to Plaintiff, through its agent and members, Kenneth Tersini and Mark Tersini, that the

12  Emerald described in ¶14 was extremely valuable and worth in excess of Five Hundred Million

13  Dollars ($500,000,000.00). This representation was made to induce Plaintiff to make loans to him

14  and to EPL in the ultimate amount of Six Million One Hundred Ten Thousand Dollars

15  ($6,110,000.00) to support the development and marketing of Smartcard Technology. Plaintiff,

16  through its agents Kenneth Tersini and Mark Tersini, heard and believed these representations and

17  relied on these representations in making the decision to lend and actually lending money to

18  Defendants, as is evidenced by the Note.

19        34.    ANTHONY THOMAS's representations in ¶33 were false, and ANTHONY

20  THOMAS knew said representation to be false at the time it was made. The true facts were the

21  Emerald was worth far less than Five Hundred Million Dollars ($500,000,000.00), its value was not

22  sufficient to secure Plaintiff's loan, and ANTHONY THOMAS knew his appraisal was false.

23        35.    Plaintiff did not know of the fraud perpetrated by ANTHONY THOMAS when

24  Plaintiff made the demand for payment under the Note on October 31, 2008.

25        36.    When ANTHONY THOMAS made the aforesaid representations in ¶¶29, 31 and 33

26  and 34, he knew them to be false and made them with the intention to induce Plaintiff to act in

27  reliance on these representations and to make the loans, as alleged above.

28        37.    Plaintiff, at the time the representations in ¶¶29, 31 and 33 were made by ANTHONY

Complaint for Damages and To Determine Dischargeability of Debt

1  THOMAS and at the time Plaintiff took the actions herein alleged, was ignorant of the falsity of

2  ANTHONY THOMAS's representations and believed them to be true. In reliance on these

3  representations, Plaintiff was induced to and did make a series of funding totaling Six Million One

4  Hundred Ten Thousand Dollars ($6,110,000.00) to ANTHONY THOMAS and ELP pursuant to

5  Exhibits "A" and "B". Had Plaintiff known the true facts, it would not have taken such action.

6  Plaintiff's reliance on ANTHONY THOMAS's representations in ¶¶29, 31 and 33 was justified

7  because Plaintiff had no cause to disbelieve him.

8       38.    As a proximate result of the fraudulent statements of ANTHONY THOMAS in

9  ¶¶29, 31 and 33, Plaintiff was induced to lend Six Million One Hundred Ten Thousand Dollars

10  ($6,110,000.00) to ANTHONY THOMAS and ELP. Plaintiff's Claim pursuant to the settlement in

11  the Santa Clara Lawsuit, is therefore non-dischargeable under 11 U.S.C. §523(a)(2).

12       WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as set

13  forth below.

14  **THIRD CLAIM FOR RELIEF**

15  **Nondischargeability – Fraud (Concealment)**

16  **[11 U.S.C. §523(a)(2)]**

17       39.    Plaintiff realleges and incorporates herein by this reference each of the allegations

18  contained in paragraphs 1 – 38 above as though fully set forth hereagain in full.

19       40.    On or about May 1, 2007, in San Jose, California, ANTHONY THOMAS orally

20  represented to Plaintiff, through its agent and members, Kenneth Tersini and Mark Tersini, that EPL

21  owned or had an exclusive worldwide license for the use of the Smartcard Technology for all

22  commercial purposes including manufacturing and marketing in order to induce Plaintiff to make

23  loans in the ultimate amount of Six Million One Hundred Ten Thousand Dollars ($6,110,000.00) to

24  support the development and marketing of Smartcard Technology.

25       41.    ANTHONY THOMAS, at the time he made the representation to Plaintiff alleged in

26  ¶40, concealed the fact that EPL was, in fact not the owner of the Smartcard Technology and that

27  EPL and its members, as of May 1, 2007, were defendants in an on-going litigation then pending in

28  Federal Court in San Francisco, California, where it was alleged that EPL and/or its members stole

Complaint for Damages and To Determine Dischargeability of Debt

1  the Smartcard Technology and challenged the right of EPL to use or distribute the Smartcard

2  Technology.

3          42.    The true facts were, on information and belief, that EPL did not own or have credible

4  or legal claim to the Smartcard Technology.

5          43.    ANTHONY THOMAS failed to disclose and suppressed the fact alleged in ¶¶40 - 42.

6          44.    ANTHONY THOMAS's concealment of the existence of the pending legal action

7  and suppressions of information herein alleged was undertaken with the intent to induce Plaintiff to

8  loan $6,100,000 to ANTHONY THOMAS and EPL.

9          45.    Plaintiff, at the time these failures to disclose and suppression of material facts

10  alleged in ¶¶40 – 42 occurred and at the time Plaintiff took the actions herein alleged, was ignorant

11  of the true facts and the existence of the facts that ANTHONY THOMAS suppressed and failed to

12  disclose. If Plaintiff had been aware of the true facts and existence of the facts suppressed and

13  concealed, Plaintiff would not have made a loan in the amount of Six Million One Hundred Ten

14  Thousand Dollars ($6,110,000.00) or any lesser amount to ANTHONY THOMAS and EPL. As a

15  result of the Plaintiffs reliance on ANTHONY THOMAS's concealments, Plaintiff was damaged in

16  the sum of Six Million One Hundred Ten Thousand Dollars ($6,110,000.00).

17          46.    The aforementioned conduct of ANTHONY THOMAS constitutes a concealment of

18  material facts known to him that he had a duty to disclose to Plaintiff in connection with the

19  transactions alleged herein. ANTHONY THOMAS's concealment of these material facts was done

20  with the express intention of depriving Plaintiff of property or legal rights or otherwise causing

21  injury.

22          **WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, as

23  follows:

24          1.    For judgment against Defendants in the amount of Four Million Five Hundred

25  Thousand Dollars ($4,500,000.00), together with interest thereon at the rate of ten percent (10%) per

26  annum, plus attorneys' fees as allowed under the Note in an amount to be proven at trial

27  ("Judgment");

28          2.    A declaration that such Judgment is non-dischargeable pursuant to 11 U.S.C.

Complaint for Damages and To Determine Dischargeability of Debt

§523(a)(2);

      3.     Costs and attorneys' fees as allowed by law; and,

      4.     Such further relief as the Court feels is fair and equitable under the circumstances alleged herein.

      Dated: May 31, 2014

                                    /s/ Wayne A. Silver
                                    Wayne A. Silver, attorney for Plaintiff
                                    KENMARK VENTURES, LLC

Complaint for Damages and To Determine Dischargeability of Debt

EXHIBIT "A"

[Demand Note]

## SECURED DEMAND NOTE

October 25
~~November~~ 2007

Cupertino, CA

$1,000,000.00

For value received, the undersigned, Electronic Plastics, LLC, and Tony Thomas (collectively "Maker"), promise to pay to the order of Kenmark Ventures, LLC, a California limited liability company ("Holder"), **on demand**, the sum of ~~Two~~ **Million Dollars** ($2,000,000.00) together with such additional advances which may be made by Holder to Maker, payable at 21710 Stevens Creek Blvd., #200, Cupertino, CA 95014 or at any other place that may be designated in writing by the Holder. All sums due are payable in lawful money of the United States of America. This Demand Note ("Note") is secured by certain collateral under a Security Agreement executed by the Maker concurrently with the Note.

If the Maker fails to pay this Note when demanded by the Holder, the amount due under the Note shall accrue interest at the rate of ten percent (10%) from the date when the demand was made until paid.

All payments on this Note will be applied first to the payment of any costs, attorney's fees or other charges incurred in connection with the indebtedness evidenced by this Note; next, to the payment of accrued interest; then to the reduction of the principal balance; or in any other order that the Holder requires.

Maker will pay to the Holder all sums owing under this Note without deduction, offset, or counterclaim of any kind. The relationship of Maker and Holder under this Note is solely that of Maker and Holder, and the loan evidenced by this Note and secured by the Security Agreement will in no manner make Holder the partner or joint venturer of Maker.

If any attorney is engaged by Holder to enforce or construe any provision of this Note or the Security Agreement, with or without the filing of any legal action or proceeding, Maker shall immediately pay to Holder on demand all attorney fees and other costs incurred by Holder, together with interest from the date of the demand until paid.

No previous waiver or failure or delay by Holder in acting with respect to the terms of this Note or the Security Agreement will constitute a waiver of any breach, default, or failure of condition under this Note or the Security Agreement.

All notice required or permitted in connection with this Note will be in writing and will be given at the place and in the manner provided in the Security Agreement for the giving of notices.

Maker waives presentment; demand; notice of dishonor; notice of default or delinquency; notice of acceleration; notice of protest and nonpayment; notice of costs, expenses, or losses and interest; notice of interest on interest and late charges; and diligence in taking any action to collect any sums owing under this Note or in proceeding against any of the rights or interests to properties securing payment of this Note. Time is of the essence with respect to every provision of this Note. This Note will be construed and enforced in accordance with California law.

Page 1 of 2

**Jury Trial Waiver:**  IN ORDER TO AVOID DELAYS IN TIME AND ANY PREJUDICE THAT MAY ARISE FROM TRIAL BY JURY AND IN LIGHT OF THE COMPLEXITIES OF THIS TRANSACTION, IN THE EVENT OF LITIGATION ARISING OUT OF OR RELATING TO THIS NOTE, THE OTHER LOAN DOCUMENTS AND/OR IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT TO THIS NOTE, THE OTHER LOAN DOCUMENTS AND/OR ANY OTHER INSTRUMENT, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE, THE MAKER, WITH THE PRIOR ADVICE OF COUNSEL, KNOWINGLY, INTELLIGENTLY, AND AS A BARGAINED FOR MATTER, WAIVES ITS RIGHT TO TRIAL BY JURY AND AGREES AND CONSENTS THAT ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION IN RESPECT TO SUCH LITIGATION SHALL BE DECIDED BY TRIAL TO THE COURT WITHOUT A JURY.

IN WITNESS WHEREOF, MAKER has executed this Note as of the date and year first above written at Cupertino, California.

Date: 10/25/07

Electronic Plastics, LLC.

By: _____
Tony Thomas, Manager

_____
Tony Thomas

::ODMA\GRPWISE\MMCN_SJDOMAIN.MMCN_SJPO.CorporateLibrary:23613.1

EXHIBIT "B"

[Security Agreement]

# SECURITY AGREEMENT

THIS SECURITY AGREEMENT (the "Security Agreement") is entered into effective as of the 25th day of ~~August~~ October, 2007, by and between TONY THOMAS ("Maker") and KENMARK VENTURES, LLC, a California limited liability company ("Secured Party").

## RECITALS

A.    Maker and Electronic Plastics, LLC borrowed the sum of $3,000,000.00 from Secured Party and executed that certain Demand Note (the "Note") of even date herewith.

B.    As security for the payment and performance of the obligations under the Note, Maker desires to grant to Secured Party a security interest in certain property as hereinafter provided.

## AGREEMENT

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1.    Grant of Security Interest.  Maker hereby grants to Secured Party a security interest in the property described in Section 2 below ("Collateral") to secure Maker's obligations under the Note, and all additional advances thereunder.

2.    Collateral.  The Obligations shall be secured by a security interest in the following personal property:  that certain uncut emerald weighing over 21,000 karats currently in the possession of Shawn Milligan, who is an agent of the Secured Party and kept in a security deposit box, Box Number 7758, at Wells Fargo Bank, MAC S4619-001, 200 So. Virginia St., Reno, Nevada 89501.

3.    Term.  The security interest established by this Security Agreement shall remain in effect until all obligations of Maker under the Note and this Security Agreement shall have been satisfied in full (the "Term").

4.    Perfection of Security Interest.  Maker has already delivered possession of the Collateral to the Secured Party for the obligations under the Note, by delivering both keys issued by Wells Fargo Bank to said security deposit box to Shawn Milligan, who is an agent of the Secured Party. Furthermore, at Secured Party's discretion, Secured Party may file a financing statement against the Collateral in compliance with NRS sections 104.9310 and 104.9501 et seq. and the applicable provisions of the law of any other state in which the Collateral may be held or as otherwise deemed appropriate by Secured Party..

5.    Secured Obligations.  The security interest granted hereunder is created and granted to secure each of the obligations under the Note.

6.    Rights of Commercial Code.  The parties hereto acknowledge that this Security Agreement is being made under the California Uniform Commercial Code as enacted and

122

interpreted under the laws of the State of California, and all parties shall have the rights and obligations set forth therein as supplemented and modified by the terms of this Agreement.

7.    Election of Remedies.    Once an event of default has occurred under this Agreement or when the Note or Agreement or any other written Agreement between the Maker and the Secured Party, the Secured Party shall give written notice to Maker concerning the occurrence of an event of default. Maker shall have 60 days to cure. In the event that the default is not cured within the 60-day period, after 30 days after the expiration of the 60-day cure period, Secured Party may then, or at any time thereafter, elect any of the following remedies:

(a)    Sell the Collateral to satisfy the Obligations, or any part thereof, including the expenses of such sale. The sale, at the option of Secured Party, may be at a private or public sale, upon the giving of such notice or notification to Maker as may be required by the California Uniform Commercial Code, by mailing notice, postage prepaid, to Maker's address provided for below.

(b)    In lieu of the right to sell the Collateral as provided for above, Secured Party may elect to retain the Collateral in satisfaction of all the Obligations of Maker hereunder after having given notice of such election to Maker; provided, however, that Maker does not object, in writing, to such retention which shall be delivered to Secured Party on or before fifteen (15) days after Secured Party's receipt of notice of the intent to retain the Collateral.

(c)    Secured Party may enforce its security interest granted hereunder in any manner permitted by the California Commercial Code.

8.    Application of Proceeds.    The proceeds of any sale described above shall be applied, in order, to the following:

(a)    Reasonable expenses of retaking, holding, preparing for sale, selling and the like, and to the extent provided for in this Agreement and no prohibited by law, reasonable attorneys' fees and legal expenses incurred by Secured Party; and

(b)    Satisfaction of the Obligations secured by the security interest under which the disposition is made.

9.    Purchase by Secured Party.    Secured Party may purchase the Collateral at any public or private sale under conditions specified in the California Commercial Code. Any sale hereunder may be conducted by an auctioneer or agent of Secured Party.

10.    Authorized Action by Secured Party.    Maker hereby appoints Secured Party as its attorney in fact to do upon the event of default under this Security Agreement or the Note, and exercise such rights and powers as Maker may exercise with respect to the Collateral.

11.    Events of Default.    Maker shall be deemed in default hereunder upon the occurrence of any of the following events ("Events of Default"):

(a)    Failure by Maker to pay the Note when demanded by Secured Party;

2

122

(h)   Failure by Maker to reimburse the Secured Party for any payment made by the Secured Party under the Guaranty when demanded by the Secured Party; or

(e)   Failure of Maker to keep or perform any of the terms or provisions of this Security Agreement and such failure continues for a period of ten (10) days after Maker's receipt of written notice from Secured Party; or

12.   Notices.   Any notice provided for or permitted to be given pursuant to this Security Agreement must be in writing and shall be deemed to have been properly given only if personally delivered in the official United States mail, postage paid and registered or certified with return receipt requested, or via a reputable overnight mail carrier addressed as follows:

If to Maker:          Tony Thomas
                      16255 Denali Drive
                      Morgan Hill, CA  95037

If to Secured Party:  c/o Kenneth S. Tersini
                      21710 Stevens Creek Blvd., #200
                      Cupertino, CA  95014

Such notices shall be deemed to have been effective upon the date of personal delivery or upon the date shown on the return receipt as the date being delivered.

13.   Different Address.   Either party may designate a different address upon thirty (30) days written notice to the other party.

14.   Advances/Costs Part of Obligation.   All advances, charges, costs and expenses, including reasonable attorneys' fees, incurred or paid by Secured Party in exercising any right, power or remedy conferred by this Security Agreement or in the enforcement thereof, shall become a part of the Obligations secured hereunder, and shall be paid to Secured Party by Maker, immediately and upon demand.

15.   Additional Documents.   Maker shall execute any additional agreements, assignments or documents that may be deemed desirable or necessary by Secured Party to effectuate the purposes of this Security Agreement.

16.   Unenforceable Provisions.   If any provision of this Security Agreement shall be held by a court of competent jurisdiction to be unenforceable, such provision shall be severed from the remaining provisions, and such remaining provisions shall remain enforceable.

17.   Cumulative Rights.   The rights, powers and remedies given to Secured Party by virtue of this Security Agreement shall be in addition to all rights, powers, and remedies given to Secured Party by virtue of any statute or rule of law and shall not preclude direct enforcement of this Security Agreement without pursuing the security interest granted herein.  Any forbearance, failure or delay by Secured Party in exercising any right, power or remedy hereunder or under this Security Agreement shall not be deemed to be a waiver of any right, power or remedy; and any single or partial exercise of any right, power or remedy hereunder or under the Agreement shall not preclude the further exercise or enforcement thereof hereunder.  Every right, power and

3

122

remedy of Secured Party shall continue in full force and effect until such right, power or remedy is specifically waived by an instrument in writing executed by Secured Party or upon payment in full of the Obligation.

18.    Binding.  This Security Agreement shall be binding upon Maker and each of its successors and assigns.

19.    Retransfer of Collateral.  Upon payment and discharge in full of all obligations described above, Secured Party, or any successor trustee, shall transfer back to Maker its interest in all of the Collateral and shall execute such UCC forms as are necessary or proper to reflect such transfer as may be requested by Maker.

20.    Amendment.  This Security Agreement may not be amended, modified or changed except in writing signed by the parties hereto.  This Security Agreement may not be modified by oral agreement even if supported by new consideration.

21.    Time of Essence.  Time is of the essence of each and every provision hereof.

IN WITNESS WHEREOF, the undersigned have executed this Security Agreement as of the date first set forth above.

MAKER:

TONY THOMAS

SECURED PARTY                                KENMARK VENTURES, LLC, a California
                                             limited liability company

                                             By:

                                             KENNETH S. TERSINI, Manager

::ODMA\GRPWISE\MMCN_SJDOMAIN.MMCN_SJPO.CorporateLibrary:23612.1

4

EXHIBIT "C"

[Demand Letter]

# MILLER MORTON CAILLAT & NEVIS, LLP

### ATTORNEYS AT LAW

David L. Nevis

Frank J. Hughes

Peter A. Kline

Steven C. Adelman

Joseph A. Scanlan, Jr

William K. Hurley

Peter V. Dessau

David I. Kornbluh

Katherine S. Pak

Christopher J. Hersey

Anthony F. Ventura

Amber S. Crothall

Daniel J. Nevis

Roger F. Liu

Angela F. Storey

Autumn E. Casadonte

Eric C. McAllister

———

Harvey C. Miller
1906–1993

Richard W. Morton
1916–1975

Charles V. Caillat
1920–1990

October 31, 2008

VIA FIRST-CLASS MAIL & FACSIMILE

Tony Thomas
Electronic Plastics, LLC
16255 Denali Drive
Morgan Hill, CA  95037

Re:    KT Properties/Smartcard
Our File No.: 27980-0710

Dear Tony:

As you know, the business development of Electronic Plastics, LLC ("Company") has not gone the way you had envisioned when you solicited financing from Kenmark Ventures, LLC ("Kenmark") approximately sixteen (16) months ago. Despite your efforts, given the recent defection of all key engineers and other employees, the Company is no longer viable. He does <u>not</u> have a lot of options at this point. Accordingly, Ken has asked me to handle unraveling the financial dealings between the Company and Kenmark. While Ken's practice is to personally handle the business negotiations, he steps back when the matter is referred to counsel. All further communication should, accordingly, be through this office.

Given the current loss of personnel, we see no option other than to request on behalf of Kenmark that Electronic Plastics, LLC and you immediately, but no later than within five (5) days of the date of this letter, make full payment of the principal (i.e., $6,000,000.00) owed under the note.

We further request that you immediately return the possession of the emerald, which is the collateral for the note, to Kenmark. In accordance with the term of the Security Agreement was executed in October 2007, you delivered the possession of the collateral to Kenmark by virtue of delivering the keys to the safety deposit box at Wells Fargo Bank in Reno, Nevada where the emerald was kept, to Shawn Milligan, an agent for Kenmark. Subsequently, based on your representation that there was a buyer for the uncut emerald, and in order to facilitate such transaction, Kenmark allowed the emerald to be transported to a vault at Sarasota, FL. The sale, unfortunately, did not materialize, and the emerald should now be immediately returned to Kenmark.

Tony, from the legal point of view, the demands in this letter have to be made, and you will need to comply with such demands not to be in default of the Note and Security

Tony Thomas
October 31, 2008
Page 2

Agreement; however, this does not mean that Ken is abandoning the project. Ken believes in the smartcard technology and is willing, as he has been in the past, to work with you in the future, however, your financial obligations to Kenmark must be brought current.

    If you have any questions, please do not hesitate to contact me.

        Very truly yours,

        MILLER, MORTON, CAILLAT & NEVIS, LLP

By:

        PETER A. KLINE

PAK/jns

::ODMA\GRPWISE\MMCN_SJDOMAIN.MMCN_SJPO.CorporateLibrary:26605.1

EXHIBIT "D"

[Transcript]

1          IN THE SUPERIOR COURT, STATE OF CALIFORNIA

2            IN AND FOR THE COUNTY OF SANTA CLARA

3                       ---o0o---

4    BEFORE THE HONORABLE LESLIE C. NICHOLS, JUDGE

5

6    KENMARK VENTURES, LLC                No.  1-08-CV-130677

7          Plaintiff,

8       vs.

9    ANTHONY THOMAS,

10         Defendant.

11   - - - - - - - - - - - - - - - /

12

13              REPORTER'S TRANSCRIPT OF PROCEEDINGS
                      October 5, 2011
14                       ---o0o---

15   A P P E A R A N C E S:

16   For the Plaintiff:   MILLER, MORTON, CAILLAT & NEVIS
                          BY:   JOSEPH A. SCANLAN
17                              J. CARLOS ORELLANA
                          25 Metro, 7th Floor
18                        San Jose, CA 95110

19

20   For the Defendant:   LAW OFFICES OF PATRICIA DOUGLASS
     Michael Gardner      BY:   PATRICIA DOUGLASS
21                        98 Interpromontory Road
                          Great Falls, VA 22066
22

23

24           (Appearances continued on next page)

25   REPORTED BY:  CHRISTINE BEDARD, C.S.R. #10709

                CHRISTINE BEDARD, C.S.R.                1

1                    (Appearances continued)

2

3

4   For the Defendant/        LAW OFFICES OF MICHAEL MORRISSEY
    Cross-Complainant         BY:  MICHAEL MORRISSEY
5   Anthony Thomas            P.O. Box 2549
    A.T. Emerald, LLC         Cupertino, CA 95015
6

7

8

9                         ---o0o---

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1  October 5, 2011

2

3         THE COURT:  Good morning, everyone, on the Kenmark

4  Ventures LLC vs. Anthony Thomas and Michael Gardner and related

5  Cross-complainants.  Appearances stated, please.

6         MR. SCANLAN:  Joe Scanlan and Carlos Orellana appearing

7  for Kenmark Ventures Limited as Plaintiffs and Cross-defendant.

8         THE COURT:  And Mr. Tersini.

9         MR. SCANLAN:  Mr. Tersini a principal of Kenmark is

10  likewise present.

11         THE COURT:  Hello, sir.

12         MS. DOUGLASS:  Patricia Douglass appearing for Defendant

13  Michael Gardner.  This is Mr. Gardner.

14         THE COURT:  Hello, sir.

15         MR. MORRISSEY:  Good morning, your Honor.

16  Michael Morrissey on behalf of Anthony Thomas, who is here to my

17  right.

18         THE COURT:  And does that also include --

19         MR. MORRISSEY:  A.T. Emerald, LLC.

20         THE COURT:  A.T. Emerald, LLC.

21         MR. MORRISSEY:  Yes, your Honor.

22         THE COURT:  We have good news here.  We'll take a short

23  time, but as long as is necessary, to formalize this.  This

24  matter, as stated on the record earlier, was assigned to me,

25  Leslie Nichols retired judge sitting on assignment for jury

1    trial, and we commenced two days ago on Monday.

2              At that time, there was a stipulation inviting the

3    Court to participate in settlement discussions while retaining

4    full authority as trial judge.  I accepted that and entered into

5    extended discussions with all counsel, and they have conferred

6    extensively with their clients.  I have now been presented a

7    written form of settlement agreement.

8              All counsel have agreed that although the form of it

9    had provided for signatures, it is the intention that there be

10   no signatures, but that this be recited as the agreement; is

11   that correct?

12        MR. SCANLAN:  That is correct, your Honor, and that it be

13   deemed to be judicially enforceable under 664.6.

14        THE COURT:  A judicially-enforced settlement agreement

15   can be approved when a document is reviewed in writing or orally

16   stated upon the record.  And in this case, I have been presented

17   a writing, and although it's not signed, it is a writing.

18             Do you agree that my review of this writing is that

19   it's sufficient to give me the opportunity to approve it and to

20   retain jurisdiction to enforce it?

21        MR. MORRISSEY:  We were actually, your Honor, hoping we

22   could recite the writing through the court reporter and do it

23   that way.

24        THE COURT:  That's fine.  We will do that.  And then it

25   would be an agreement orally recited on the record before the

CHRISTINE BEDARD, C.S.R.                           4

```
 1    Court and subject to enforcement under 664.6 of the Code of

 2    Civil Procedure.  Agreed?

 3           MR. SCANLAN:  Agreed.

 4           MR. MORRISSEY:  That's correct; exactly right.

 5           THE COURT:  Something that's not in the writing, but

 6    you're asking the Court to retain jurisdiction to enforce its

 7    terms?

 8           MR. SCANLAN:  That is absolutely correct and an essential

 9    part of our agreement.

10           MR. MORRISSEY:  Yes, your Honor.

11           MS. DOUGLASS:  Yes, your Honor.

12           THE COURT:  The agreement is in 17 numbered paragraphs,

13    and for the benefit of our court reporter, if someone will read

14    it slowly, that will be great.

15           Let me indicate that we're at a quarter to 12:00, and I

16    don't want to commence this process unless the parties

17    personally orally affirm now that I'll ask a few questions now

18    of Mr. Tersini and then quickly of the defendants.  Mr. Tersini,

19    are you the authorized representative of Kenmark Ventures, LLC?

20           MR. TERSINI:  Yes, I am.

21           THE COURT:  And you're authorized to settle this case on

22    behalf of the entity?

23           MR. TERSINI:  Yes, I am.

24           THE COURT:  This document, as you know from my

25    interaction with all of you folks, has been an interactive
```

1    process.  You were working with your attorney in chambers on the

2    laptop computer, Mr. Gardner would bring in a computer stick to

3    stick in my computer, it would be printed out in drafts, and

4    you've participated in each and every aspect of that; isn't that

5    true, sir?

6         MR. TERSINI:  Yes.

7         THE COURT:  Are you satisfied that now, on this third day

8    of the scheduled trial, you have had ample opportunity, you've

9    taken an opportunity, the opportunity to confer with your

10   counsel, so you're ready to approve this agreement?

11        MR. TERSINI:  Yes.

12        THE COURT:  And at this moment, do you have any questions

13   of your counsel that you need to be clarified before this is

14   read into the record?

15        MR. TERSINI:  No, I do not.

16        THE COURT:  And the Court is being asked to retain

17   jurisdiction to enforce the terms of this agreement to the

18   extent possible; is that what you want?

19        MR. TERSINI:  Yes.

20        THE COURT:  This is out of great respect for you, but you

21   all seem to be in reasonable health and full capacity.  You're

22   not under the influence of any alcohol or drugs or mind-altering

23   materials; is that correct?

24        MR. TERSINI:  No, I'm not.

25        THE COURT:  I've got to ask these questions.  You'd be

CHRISTINE BEDARD, C.S.R.                    6

1   surprised what people say after the fact when they try to get

2   out of deals.  So I take --

3          MR. MORRISSEY:  It's not noon, yet, your Honor.

4          THE COURT:  I'll take great care.  Mr. Thomas, did you

5   hear the questions that I put to Mr. Tersini?

6          MR. THOMAS:  I did.

7          THE COURT:  And you speak personally on behalf of an

8   entity A.T. Emerald, LLC; is that right?

9          MR. THOMAS:  Yes.

10          THE COURT:  And you're authorized to bind that entity?

11          MR. THOMAS:  Yes.

12          THE COURT:  You have the authority to do so?

13          MR. THOMAS:  Yes.

14          THE COURT:  Your answers to each of the questions I put

15   to Mr. Tersini is the same?

16          MR. THOMAS:  Yes.

17          THE COURT:  Mr. Gardner, did you hear the questions of

18   Mr. Tersini?

19          MR. GARDNER:  Yes.

20          THE COURT:  Are those questions and answers fresh in your

21   mind?

22          MR. GARDNER:  Yes, they are.

23          THE COURT:  Do you affirm that your answers are same?

24          MR. GARDNER:  Yes, I do.

25          THE COURT:  All right.  Counsel, you concur?

CHRISTINE BEDARD, C.S.R.                    7

1          MS. DOUGLASS:  We do.

2          MR. MORRISSEY:  Yes, your Honor.

3          MR. SCANLAN:  Yes, your Honor.

4          THE COURT:  Okay.  Mr. Scanlan, will you read the

5     agreement.

6          MR. SCANLAN:  Yes, your Honor, I will.

7          THE COURT:  Please read each numbered paragraph.  Read it

8     in its entirety and slowly for the benefit of our court reporter

9     and my brain.

10         MR. SCANLAN:  We'll leave a copy with the court reporter

11    to help her if she has any questions.

12         THE COURT:  I'm grateful for that.

13         MR. SCANLAN:  One:  Parties:  This agreement is entered

14    between Kenmark Ventures, LLC (Kenmark), on the one hand, and

15    Anthony Thomas, A.T. Emerald, LLC and Michael Gardner, (the

16    three collectively "defendants" and collectively with Kenmark,

17    the "parties") on the other.

18         Two:  The parties agree that this settlement agreement

19    is designed to resolve disputed claims by the parties and does

20    not constitute an admission of any wrongdoing by any party.

21         Three:  Payment:  Defendants shall pay to Kenmark the

22    following sums in U.S. dollars.  A:  $500,000 on or before

23    January 1, 2013.  B:  $500,000 on or before January 1, 2014.

24         C:  $1,333,333 on or before January 1, 2015.  D:

25    $1,333,333 on or about January 1, 2016.  E:  $1,333,334 on or

1   before January 1st, 2017.  The defendants' liability on these

2   amounts is joint and several.

3           Four:  Time is of the essence in the performance of all

4   obligations hereunder.  In the event payments are not made on or

5   before the date sets forth in paragraph three, then the

6   defendants shall be in default under this agreement.

7   Notwithstanding the foregoing, Defendants shall have a

8   five-calendar-day grace period to make any payment missed, in

9   full.

10          Five:  All payments shall be made to Kenmark Ventures,

11  LLC at 21710 Stevens Creek Boulevard, Suite 200, Cupertino,

12  California 95014.

13          Six:  In the event Defendants fail to make timely

14  payments set forth as in paragraph three or within the grace

15  period provided, Kenmark Ventures, LLC may apply, ex parte, for

16  an entry of judgment in the amount of all sums remaining unpaid

17  under this agreement.

18          Judgment shall be entered under the forth and fifth

19  causes of action of Kenmark's First Amended Complaint.  The

20  defendants' liability on any such judgment will be joint and

21  several.

22          24 hours fax notice shall be given to Defendant of such

23  ex parte hearing via the office of Michael Morrissey, Esquire,

24  Counsel for Anthony Thomas and A.T. Emerald, LLC and the office

25  of Patricia D. Douglass, Esquire.

1          THE COURT:  Excuse me.  Douglas has two Ss?  Thank you.

2          MR. SCANLAN:  Seven:  Kenmark Ventures, LLC shall

3     forthwith cause its Florida replevin action to be dismissed and

4     the 21,000 carat emerald known as the Thomas Emerald made

5     accessible to Anthony Thomas.

6          Kenmark agrees to execute any and all documents

7     necessary to release any and all liens, encumbrances and UCC

8     filings that it has at any time placed as encumbrances on the

9     Thomas Emerald and provide evidence of the same promptly to

10    Mr. Morrissey and Ms. Douglass.

11         Eight:  Anthony Thomas shall keep Kenmark apprised, at

12    all times, of all successful sales or monetization of the

13    Thomas Emerald.

14         Nine:  By this settlement agreement, all parties

15    release all claims, known and unknown, that they have or may

16    have against each other whether arising from events mentioned in

17    the pleadings or discovery in this case or otherwise.

18         In connection with that mutual general release, parties

19    hereby also waive the protection of Civil Code Section 1542:  A

20    general release does not extend to claims which the creditor

21    does not know or suspect to exist in his or her favor at the

22    time of executing the release, which if known by him or her must

23    have materially affected his or her settlement with the debtor.

24         10:  In the event a judgement is entered hereunder,

25    Defendants waive and relinquish any right of appeal,

CHRISTINE BEDARD, C.S.R.                    10

1    modification or collateral attack on the judgment.

2           11:  This settlement was entered in open court by all

3    the parties hereto and the parties agree and intend that any or

4    all of its terms and provisions may be enforced by ex parte

5    motion under C.C.P. Section 664.6.

6           12:  A.T. Emerald, LLC and Anthony Thomas must dismiss

7    their cross-complaint against Kenmark Ventures, LLC with

8    prejudice within ten court days of the date of this agreement.

9           13:  Each party to this agreement shall bear its

10   respective attorneys' fees and court costs in connection with

11   this action.

12          14:  The defendants will be jointly and severally

13   liable on any judgement entered under this agreement.

14          15:  The parties agree to keep the terms of this

15   settlement agreement in strictest confidence, except to the

16   extent necessary to meet obligations imposed upon them by law.

17          The parties agree that if asked about the terms on

18   which this case was settled, that they will state only that the

19   matter was settled to the mutual satisfaction of the parties.

20          The parties agree to notify each other of any

21   apparently lawful request for the information contained in this

22   agreement before releasing it to a third party.

23          16:  The parties agree that they will not disparage or

24   publicly speak ill of any other party to this agreement.

25          17:  This agreement may only be altered in writing,

1    signed by all of the parties.  The parties expressly waive any

2    right to orally modify this paragraph 17 or to enter into any

3    oral agreement to modify the terms of this agreement.

4           THE COURT:  I just have a question.  In the event that

5    unfortunately an ex parte application had to be made to the

6    Court to enforce the terms of this, we have the possibility of a

7    court transcript.  Now, it may be -- does anyone wish to obtain

8    a copy of the transcript?

9           MR. SCANLAN:  Yes, your Honor.

10          MR. MORRISSEY:  Yes, I think that would be a good idea.

11          THE COURT:  Because if this were years from now,

12   sometimes it may be difficult to find the report of the notes.

13          MR. MORRISSEY:  Yes, your Honor.

14          THE COURT:  So get an authentic copy of that document,

15   which could then only be used for the purpose of enforcement.

16          MR. MORRISSEY:  Yes, your Honor.

17          MR. SCANLAN:  Yes, your Honor.

18          THE COURT:  Otherwise, I was going to say please initial

19   the writing or do something, because I would never suggest if

20   there were successor parties or other things, someone might

21   submit the authenticity, but with the transcript, you're in good

22   shape.

23          MR. SCANLAN:  Your Honor, I do want to affirm at the end,

24   because we didn't include the term, that the Court does indeed

25   have continuing jurisdiction over this matter.

CHRISTINE BEDARD, C.S.R.                    12

1        THE COURT:  Yes, that's not in the writing, but I added

2   that, and I'll expressly provide that again.  The paragraph 11

3   pretty much covers it --

4        MR. MORRISSEY:  Yes, your Honor.

5        THE COURT:  -- by saying the settlement was entered in

6   open court by all the parties hereto, and the parties agree and

7   intend that any and all terms and provisions may be enforced by

8   ex parte motion under C.C.P. 664.6.

9        Just one second.  But further, and to be express about

10  it, this means that the Court is asked to retain jurisdiction to

11  enforce the terms of it, and if it were necessary to enter

12  judgment, to interpret the document if appropriate and to do all

13  other things to give full force and effect of the agreement; is

14  that your understanding?

15       MR. SCANLAN:  That is correct.

16       THE COURT:  Mr. Tersini.

17       MR. TERSINI:  Yes.

18       THE COURT:  Ms. Douglass?

19       MS. DOUGLASS:  Yes.

20       THE COURT:  And you agree?

21       MR. MORRISSEY:  I do.

22       THE COURT:  And you agree, Mr. Thomas?

23       MR. THOMAS:  Yeah.

24       THE COURT:  All right.  Then the final question, I asked

25  you these questions earlier, but Mr. Tersini, you have now heard

CHRISTINE BEDARD, C.S.R.                      13

1    the reading of the very document that you earlier said you

2    approve, and do you stand on your earlier approval that the

3    Court has been asked to approve this agreement, direct the

4    parties to comply with it and to retain jurisdiction to enforce

5    its terms?

6         MR. TERSINI:  Yes, I do.

7         THE COURT:  Is your answer the same, Mr. Gardner?

8         MR. GARDNER:  Yes, it is.

9         THE COURT:  And you as well, Mr. Thomas?

10        MR. THOMAS:  Yes.

11        THE COURT:  And each counsel agrees?

12        MR. MORRISSEY:  We do.

13        MS. DOUGLASS:  We do.

14        MR. SCANLAN:  Yes, your Honor.

15        THE COURT:  Can't do better than that.  I do approve this

16   agreement as recited as requested by the parties and counsel,

17   and you'll obtain a transcript of that.  That's the way you want

18   to memorialize it; isn't it?

19        MR. SCANLAN:  That correct.

20        THE COURT:  Our minutes will reflect that the Court has

21   voir dired the parties and Counsel thoroughly; that they

22   approved the agreement and asked the Court to retain

23   jurisdiction, and that the memorialization of this will be in a

24   transcript obtained, at the very least, by Plaintiff's counsel,

25   probably all counsel would want to get it.

CHRISTINE BEDARD, C.S.R.                    14

1        But you'll have that and that will serve as the

2    evidence necessary should there be further proceedings, because

3    in accordance with your request, the detailed terms of this will

4    not be reside in the minutes.

5        I cannot speak to the situation in the unlikely event

6    that some third party asks for a transcript, that's under the

7    public records proceedings and that would be dealt with

8    appropriately by the clerk and court reporter.  I will return

9    this.  But you'll be holding those transcripts just for proper

10   purposes.

11       MR. SCANLAN:  That's correct.

12       THE COURT:  The Court does each of the things you

13   requested.  I approved the agreement, direct the parties to

14   comply with the terms of the agreement.  I find that this

15   agreement was entered knowingly, intelligently, without duress,

16   coercion, each party being in full capacity and knowledgeable.

17       And I affirm their statements that they have all

18   interacted with counsel, and the bottom line is that this is a

19   settlement that you have agreed to.  I'm glad to approve it.  I

20   appreciate the courtesies of all of you.

21       I respect counsel and the parties.  There's been no

22   adjudication of any wrongdoing.  You worked this out on your

23   terms, and I find that it's appropriate.  So I approve it for

24   that agreement.  Thank you so much.  Anything else to do before

25   we conclude?

1      MR. MORRISSEY:  Your Honor, sometimes they set a C.M.C.

2   date out at the end, so January 15th at 2017 for the court

3   tracking system.

4      THE CLERK:  It would be on a Thursday, 10:00 a.m.

5      THE COURT:  Okay.

6      THE CLERK:  Did you want it to come before you?

7      THE COURT:  Just on the general calendar.

8      THE CLERK:  January.

9      THE COURT:  2017.

10     MS. DOUGLASS:  I think you're busy that day.

11     MR. SCANLAN:  Your Honor, as the clerk looks for that, I

12  would like to steal this minute to thank the Court for its

13  patience and extraordinary efforts over the last two days, and

14  in sending this to an end.  It's genuinely appreciated.

15     THE COURT:  I appreciate everyone's good wishes, and I

16  reciprocate those feelings.

17     MS. DOUGLASS:  Thank you.

18     THE COURT:  I always felt it's a little too easy for a

19  judge to puff up him or herself.  I never say I settled the

20  case.  It requires the parties and counsel, but to the extent

21  I've helped to be a catalyst, I'm grateful for that opportunity.

22     THE CLERK:  Your Honor, do you want to set a case status

23  re dismissal in January?

24     THE COURT:  2017.  If the clerk notices anything else,

25  she'll send it to everybody.

1          THE CLERK:  For 2017, we have Thursday, January 4th,

2     12th, 19th and 26th.

3          MR. MORRISSEY:  How about the 19th.

4          THE COURT:  19th.

5          MR. SCANLAN:  That's fine.

6          THE COURT:  10:00.  January 19th.  In the mean time,

7     you'll have several years to contact the legislature and plead

8     for appropriate funding for the judicial branch of government,

9     so there will be a courthouse here.  Thank you very much.  We'll

10    be in recess.

11         MS. DOUGLASS:  Thank you, your Honor.

12

13

14                        ---o0o---

15

16

17

18

19

20

21

22

23

24

25

                    CHRISTINE BEDARD, C.S.R.                    17

```
1   STATE OF CALIFORNIA      )
                             ) ss.
2   COUNTY OF SANTA CLARA    )

3

4

5

6        I, CHRISTINE BEDARD, Certified Shorthand Reporter, do

7   hereby certify that I am a pro tempore reporter of the

8   Superior Court of the State of California, and that has

9   such, I reported the proceedings had in the above-entitled

10  matter at the time and place set for herein.

11       That my stenograph notes were thereafter transcribed

12  into typewriting under my direction; and that the

13  foregoing pages constitute a full, true and correct

14  transcription of my said notes to the best of my ability.

15

16

17                          /s:/ Christine Bedard
                            - - - - - - - - - - - - - - -
18                          CHRISTINE BEDARD, C.S.R. #10709

19

20  Dated:  November 9, 2012

21

22

23

24

25
```

EXHIBIT "E"

[Stipulation]

1  DAVID I. KORNBLUH, ESQ., SBN 162310
2  J. CARLOS ORELLANA, ESQ., SBN 233403
   MILLER, MORTON, CAILLAT & NEVIS, LLP
   25 Metro Drive, 7th Floor
3  San Jose, California  95110
   Telephone:  (408) 292-1765
4  Facsimile:  (408) 436-8272

5  Attorneys for Plaintiff KENMARK VENTURES, LLC,
   a California Limited Liability Company

6

7

8                  SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                      FOR THE COUNTY OF SANTA CLARA

10

11 KENMARK VENTURES, LLC, a California    )  Case No.: 108CV130677
   limited liability company,             )
12                                         )
                                           )
13              Plaintiff,                 )  STIPULATION FOR JUDGMENT AND
        vs.                                )  [PROPOSED] JUDGMENT
14                                         )
15 TONY THOMAS, an individual;            )
   ELECTRONIC PLASTICS, LLC, a Delaware   )
16 limited liability company; MICHAEL     )
   GARDINER, an individual; and DOES 1    )
17 through 100, inclusive,                )
                                           )
18              Defendants.                )
                                           )
19 _____  )
                                           )
20 AND RELATED CROSS-COMPLAINT            )
                                           )
21 _____  )

22

23                            **RECITALS**

24      **WHEREAS,** on or about December 19, 2008 Plaintiff Kenmark Ventures, LLC

25 ("Kenmark") filed suit against Defendants Anthony Thomas, Electronic Plastics, LLC, and

26 Michael Gardner;

27      **WHEREAS,** on or about March 20, 2009, Defendant filed its First Amended Complaint

28 against Defendants Anthony Thomas, Electronic Plastics, LLC, and Michael Gardner alleging,

                                        1

STIPULATION FOR JUDGMENT

1  *inter alia*, causes of action for fraud on the alleged basis that Defendant Anthony Thomas as the

2  sole member of AT Emerald, LLC, and Defendant Michael Gardiner defrauded Kenmark into

3  loaning $6,110,000.00 to Anthony Thomas and Electronic Plastics, LLC based on written

4  misrepresentations and concealments;

5        **WHEREAS,** on or about October 5, 2011, the parties reached a settlement of this action

6  which they stated on the record before the Court (the "Settlement");

7        **WHEREAS,** a true and correct copy of the transcript of the hearing at which the

8  Settlement was entered into the record is attached hereto as Exhibit "A";

9        **WHEREAS,** the Settlement, among other things, required Defendants Thomas and

10  Gardner, jointly and severally to pay Kenmark a total of $5,000,000 in installments of $500,000

11  on January 1, 2013, $500,000 on January 1, 2014, $1,000,000 on January 1, 2015, $1,000,000 on

12  January 1, 2016, and $1,000,000 on January 1, 2017, with a five-day grace period for each

13  payment;

14        **WHEREAS,** Defendants Thomas and Gardner made their first payment under the

15  Settlement but have not made any further payments within the time specified in the Settlement;

16        **WHEREAS,** the Settlement provides that upon the failure of Defendants Thomas and

17  Gardner to pay any settlement payment, Kenmark may obtain entry of judgment against

18  Defendants Thomas and Gardner, jointly and severally, on Kenmark's Fourth Cause of Action

19  for Fraud and Fifth Cause of Action for Fraud;

20        **WHEREAS,** Defendant Thomas has promised to pay $575,000 toward the stipulated

21  settlement amount on or before January 30, 2014; and

22        **WHEREAS,** Defendant Thomas's legal name is Anthony as reflected in the transcript of

23  the October 5, 2011 hearing before this Court that is attached hereto as Exhibit "A".

24        **IT IS HEREBY STIPULATED** by the parties hereto as follows:

25        1.        If payment of $550,000 is not received by Kenmark on or before January 30,

26  2014, judgment shall hereby be entered in favor of Plaintiff Kenmark Ventures, LLC against

27  Defendants Anthony Thomas jointly and severally with Defendant Michael Gardner, on

28  Kenmark's Fourth Cause of Action for Fraud and Fifth Cause of Action for Fraud in the

MILLER, MORTON, CAILLAT & NEVIS, LLP
25 Metro Drive, 7th Floor
San Jose, CA 95110
Telephone: (408) 292-1765

2

STIPULATION FOR JUDGMENT

1  principal sum of $4,500,000 (four million, five hundred thousand dollars) together with interest

2  on the judgment thereafter at the rate of 10% per annum, as provided by law.

3        2.      The Clerk of the Court is authorized to enter judgment against Defendant

4  Thomas in his correct legal name of Anthony Thomas rather than Tony Thomas.

5        3.      Defendant Thomas authorizes Kenmark to file this Stipulation and to obtain entry

6  of judgment on an *ex parte* basis.

7        4.      This Stipulation is entered into freely and voluntarily. The parties to this

8  stipulation acknowledge that they have been represented by counsel of their choice, or had the

9  option to be represented by counsel of their choice, in the negotiations that preceded the

10  execution of this Stipulation and in connection with the preparation and execution of this

11  Stipulation. Each party hereto has executed this Stipulation with full knowledge of its

12  significance and with the express intention of affecting its legal consequence. None of the

13  parties hereto have relied upon any representation of any other party in signing this Stipulation.

14        5.      This Stipulation may be executed in counterparts and executed facsimiles or PDF

15  files thereof may be used in lieu of the original for all purposes.

16  Dated: January 27, 2014

17

18                      KENMARK VENTURES, LLC, Plaintiff

19                      By:  Kenneth Tersini
                    Its:  Managing Member

20  Dated: January 9, 2014

21

22                      ANTHONY THOMAS, Defendant

23    397666_1

24  //

25  //

26  //

27  //

28  //

MILLER, MORTON, CAILLAT & NEVIS, LLP
25 Metro Drive, 7th Floor
San Jose, CA 95110
Telephone: (408) 292-1765

3

STIPULATION FOR JUDGMENT

1

## JUDGMENT BY STIPULATION

2      The Court, having considered the Stipulation of Plaintiff Kenmark Ventures, LLC and

3  Defendant Anthony Thomas, and good cause appearing therefor,

4      **HEREBY ENTERS JUDGMENT** in favor of Plaintiff Kenmark Ventures, LLC

5  against Defendant Anthony Thomas, jointly and severally, on Kenmark Ventures, LLC's Fourth

6  Cause of Action for Fraud and Fifth Cause of Action for Fraud in the principal sum of

7  $4,500,000 (four million, five hundred thousand dollars).  This judgment shall accrue interest at

8  the rate of ten percent (10%) per year from the date of entry of this judgment.

9      The Clerk of the Court is authorized to enter judgment against Defendant Thomas in his

10  correct legal name of Anthony Thomas rather than Tony Thomas.

11

12  Dated: _____

13

14

15                                          _____

16                                          JUDGE OF THE SUPERIOR COURT

17

18

19

20

21

22

23

24

25

26

27

28

MILLER, MORTON, CAILLAT & NEVIS, LLP
25 Metro Drive, 7th Floor
San Jose, CA 95110
Telephone: (408) 292-1765

4

STIPULATION FOR JUDGMENT