ANTHONY THOMAS
WENDI THOMAS
7725 Peavine Peak Court
Reno, Nevada 89523
(408) 640-2795
Email: ATEmerald2@gmail.c

Debtors In Pro Per

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

IN RE:

ANTHONY THOMAS and WENDI THOMAS

Debtors.

Case No.: BK-N-14-50333-BTB
CHAPTER 7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEBTORS' OPPOSITION TO TRUSTEE'S MOTION FOR ORDER APPROVING COMPROMISE AND SETTLEMENT AGREEMENT

DATE: February 25, 2015
TIME: 10:00 a.m.

## INTRODUCTION

This memorandum is submitted in support of the Debtors' opposition to the Trustee's motion to settle the malpractice case filed by Anthony G. Thomas (hereinafter "Thomas") against his former counsel. The Debtors have also moved *ex parte* to continue the hearing date on this motion. Alternatively, the Debtors respectfully request that this late opposition be considered by this Court.

The Trustee seeks to settle the malpractice claims for $2,000.00. In the underlying legal malpractice action, Thomas seeks damages from the firm he contracted with, Trepel McGrane Greenfield LLP (hereinafter "TMG") and Anthony Trepel (hereinafter "Trepel") and William

McGrane (hereinafter "McGrane"). TMG, Trepel and McGrane are hereinafter collectively referred to as the "Defendants." The litigation is entitled Thomas vs. Trepel, et al. Santa Clara County Superior Court Case No. 1-12-CV-219586.

The Defendants were hired to try a case wherein Thomas was a defendant and cross-complainant. The action was entitled Kenmark Ventures, LLC vs. Thomas, Santa Clara County Superior Court Case No. 1-08-CV-130677 (hereinafter "Kenmark Action"). The Kenmark action had an impending trial date in the California Superior Court. The Defendants were specifically hired as trial counsel, as all of the pre-trial litigation had been handled by another lawyer.[1]

## FACTS

The Trustee seeks to settle the Thomas legal malpractice action against his prior counsel for $2,000.00. She does this without an actual investigation into the validity of the case and after advising the Thomas that she was abandoning the case, leaving Thomas to pursue it himself.

Following a motion brought by McGrane, this Court lifted the automatic stay so that the Thomas malpractice action could proceed in the California Superior Court and before the American Arbitration Association. The Debtors stipulated to McGrane's request. The Trustee was appointed after the Debtors stipulated to the stay being lifted.

Thomas has had multiple conversations with the Trustee, including conversations while they were in Florida to inspect the Thomas Emerald. The Trustee advised Thomas that the estate would not be prosecuting the malpractice action or three other civil actions currently pending in California.

---

[1] Thomas was represented by Joseph Kafka for over a year and a half prior to retaining the Defendants to try the Kenmark action. Mr. Kafka is not a trial lawyer and had to handle the case so long as trial counsel if a trial was necessary. When Thomas hired the Defendants in the late August 2010, the case was set for trial on October 12, 2010.

Not only did the Trustee advise Thomas that she was abandoning the case, she has not prosecuted it and instead has allowed Thomas to prosecute the claim himself, at his own expense. For example, Thomas just recently paid over $4,000.00 to the American Arbitration Association ("AAA") so that the arbitration with McGrane could proceed. Thomas has appeared before the AAA and has taken all of necessary steps to prosecute the action since the automatic stay was lifted. TMG and Trepel did not move to compel arbitration nor did they participate in the initiation of the pending AAA proceeding. They in fact opposed McGrane's petition to compel arbitration. While Thomas opposed arbitrating his claims, he has nonetheless recently moved to have TMG and Trepel be joined as parties to the arbitration. Since McGrane has been operating independent of his former firm and partner, the case was procedurally in limbo. Under California law, a case against multiple defendants must be heard by one by one factfinder, so that the one final judgment can be rendered. Thomas has diligently prosecuted the claims following the Trustee's representations that the estate was abandoning the case.

Despite her representations and failure to prosecute the malpractice action, the Trustee now seeks to settle Thomas' claims for less than half of just the arbitration fees paid by Thomas. The settlement includes a waiver of the Defendants' patently false claim that they are owed some $39,0000.00, and includes a provision asking this Court to specifically reserve the Defendants' claims for malicious prosecution against Thomas and one of his lawyers. The proposed settlement not only reserves the Defendants' rights to sue Thomas in California State Court for malicious prosecution, it allows McGrane to continue to prosecute the adversary proceeding he filed for malicious prosecution that is currently pending before this Court. The proposed settlement is inherently inequitable as it strips Thomas of his ability to have the malpractice case heard on the merits while simultaneously allowing his former attorneys to sue him for malicious

prosecution for filing the malpractice case.

The fact that the Trustee failed to investigate Thomas' claims is evidenced by the only declaration filed in support of her motion. All of the "facts" set forth in the motion, as well as the Trustee's assessment that Thomas has little chance of prevailing against the Defendants, are based on the Declaration of Maureen Harrington, a partner in TMG. **Had the trustee merely reviewed the invoices attached to the declaration, she would have seen that they add up to less than $110,000.00.** The declaration and facts set forth in the motion are one-sided at best, and in many instances completely false.

On its face, the "settlement" does not pass the smell test, but it is worse when one considers that the Trustee did not did not seek any input from Thomas as to the facts or, indeed, even bother to find out what his actual claims are against the Defendants. The Trustte essentially seeks to sell malpractice action to the very lawyers that have been sued for a mere $2,000.00.[2] Again, the Trustee moves to sell and assign Thomas' claim without investigating the claims set forth in the legal malpractice case.

Thomas has been prosecuting all of the California civil claims at his own expense. He has spent an inordinate amount of time prosecuting the cases (two of which are on appeal). He has taken excessive time off of work to attend hearing and has paid all costs associated with the cases.

Despite claiming to have provided over One Hundred Fifty Thousand Dollars ($150,000.00) in services in a few months, as far as the Debtors can tell, the Defendants did

---

[2] The Trustee and her attorney undoubtedly will request fees of at least $2,000.00 for their efforts in connection with this motion. The Debtors believe and thereon allege that this is nothing more than a self-serving motion brought solely for the benefit of the Trustee and/or her attorney. It is respectfully submitted no reasonable person would find that the motion and proposed sale of the Debtor's claim is made to benefit the estate or the Debtor's creditors.

virtually nothing to prepare the case for trial.[3]  Indeed, when the Defendants abandoned him, Thomas was required to retain new trial counsel.  Thomas' new counsel brought the case to trial where it ultimately settled.

The Trustee's motion does not accurately describe Thomas' legal malpractice claims against the Defendants.  The Trustee describes the malpractice action as a dispute over the terms of the fee agreement that Thomas entered into with TMG.  While that is part of Thomas' claims, it is only small part.  Thomas' claims are primarily center around the padded and fictional billings of the Defendants.

Thomas also possesses valid claims based on the Defendants' breach of fiduciary duty including, but not limited to: abandoning their client without cause and without having earned the $150,000.00 retainer deposited by Thomas; withdrawing from the case without giving Thomas a reasonably opportunity meet their demand for more money; and engaging in conduct adverse to their client with sole purpose of prejudicing their client.  The conduct of the Defendants resulted in Thomas sustained actual prejudice and damages in the Kenmark action as a result of the Defendants actions. It is believed that the conduct of the Defendants and resulting damages will give rise to a finding and award of punitive damages for fraud and breach of fiduciary duty.

---

[3] The Defendants took two depositions and attended one deposition wherein Thomas was providing testimony as the PMK for AT Emerald.  Those three depositions took place in January of 2011 and aside for those depositions, the Defendants provided nothing of value to Thomas. Unbelievably, they did not even respond to a set of supplemental discovery requests and a request for production of documents that served before they substituted into the case. All other written discovery had been completed by Attorney Kafka, including the disclosure of expert witnesses. The Defendants obtained extensions to answer the discovery, but never prepared the responses. They failed to answer the discovery despite multiple reminders and requests from opposing counsel. The failure to prepare the responses resulted in a waiver of any objections that Thomas possessed. The responses were ultimately prepared by the trial attorney Thomas hired after the Defendants.

The claim itself arises out of the payment of a $150,000.00 fee to the Defendants, who it will be shown did nothing to earn it. Furthermore, they breached the fee agreement and then abandoned the debtor.

## ARGUMENT

### I. THE PROPOSED SETTLEMENT DOES NOT MEET THE CRITERIA REQUIRED PRIOR TO A COURT GRANTING A MOTION TO APPROVE COMPROMISE OR SETTLEMENT.

The Trustee's motion claims that the proposed settlement meets the criteria set forth in *Martin v. Kane (In re A&C Properties, Inc.)*, 784 F.2d 1377 (9th Cir. 1986). It does not.

The only supporting evidence is the Declaration of Maureen Harrington and according to that declaration, the Defendants invoices add up to less than $110,000.00.

The Debtors have not had the opportunity to go through each billing to set forth the clearly padded time entries, however, even a cursory glance at the bills shows the false nature of the billings. For instance, when the Defendants were hired, Thomas was advised that the Defendants would not even be able to even start working on the case for at least two months. There are hours and hours (actually days) of time billed by four separate individuals for reviewing the very same deposition transcript. There are time entries wherein Trepel claims to have met with Thomas for anywhere from six to seven and a half hours a day, even when he was trying a different case.

### I2. LEGAL MALPRACTICE CASES ARE NOT ASSIGNABLE UNDER CALIFORNIA LAW.

California does not allow the assignment of a legal malpractice claim [*Goodley v. Wank & Wank, Inc.* (1976) 62 Cal.App.3d 389 (*Goodley*)], with very limited exceptions. Recently, the

California Court of Appeal in *White Mountains Reinsurance Co. of America v. Borton Petrini LLP* (2013) 221 Cal. App. 4th 890, confirmed "[t]here is a general rule in California barring the assignment of a cause of action for legal malpractice." (*Id.* at p. 891.) The Court, however, reversed the trial court's grant of summary judgment recognizing the validity of an assignment under the following narrow circumstances:

> "(1) the assignment of the legal malpractice claim is only a small, incidental part of a larger commercial transfer between insurance companies;
>
> (2) the larger transfer is of assets, rights, obligations, and liabilities and does not treat the legal malpractice claim as a distinct commodity;"
>
> (3) *the transfer is not to a former adversary;*"
>
> (4) the legal malpractice claim arose under circumstances where the original client insurance company retained the attorney to represent and defend an insured; and
>
> (5) the communications between the attorney and the original client insurance company were conducted via a third party claims administrator." [Emphasis added.]

Under California law the Trustee does not possess the right to assign or sell the own the claim and it is not hers to resolve. It is true that there are some cases that say that a legal malpractice claim is assignable in a bankruptcy proceeding, but the Supreme Court has not yet spoken.

In California, the rule that a legal malpractice cause of action is not assignable can be traced to *Goodley*, which has been referred to as "the seminal decision" on the assignability of legal malpractice claims. [Mallen & Smith, Legal Malpractice (2013) § 7:12, p. 835.]

**II.     THE TRUSTEE ABANDONED THE CLAIM.**

The Trustee informally abandoned the claim and it is now owned by the Debtors. An abandonment need not be express, although in this case it was. It just was not reduced to writing.

In addition, the Trustee's actions, or more specifically her lack of action, constitute an implied abandonment of the three California civil actions pending in the Santa Clara County and Los Angeles County Superior Courts.

## CONCLUSION

It is respectfully submitted that the motion should be continued. Alternatively, the motion should be denied.

Dated: February 24, 2014                    Respectfully submitted,

                                            _____
                                            Anthony Thomas, Debtor In Pro Per

## PROOF OF SERVICE BY MAIL/ELECTRONIC TRANSMISSION/FACSIMILE

I am employed in Santa Clara County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 1110 North First Street, San Jose, California, 95112. I am readily familiar with processing correspondence and documents for mailing with the United States Postal Service. On **December 14, 2011** I placed with the United States Postal Service as well as transmitted via facsimile, a true and correct copy of the following document(s):

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEBTORS' OPPOSITION TO TRUSTEE'S MOTION FOR ORDER APPROVING COMPROMISE AND SETTLEMENT AGREEMENT**

**DECLARATION OF ANTHONY THOMAS IN SUPPORT OF DEBTORS OPPOSITION TO CREDITORS MOTION FOR ORDER APPROVING COMPROMISE AND SETTLEMENT AGREEMENT**

in a sealed envelope, postage fully paid, addressed as follows:

    Jeffrey L. Hartman, Esq.
    Hartman & Hartman
    510 West Plumb Lane, Suite B
    Reno, NV 89509    Email: notices@bankruptcyreno.com

In addition to mailing, I served a true and correct copy of the documentstated above by electronic transmission (email) to the addresses stated. No error was reported regarding the facsimile and/or email transmission.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed this 24th day of February 2015.

                                              _____
                                              Tracey McCarroll