Anthony G. Thomas
7725 Peavine Peak Court
Reno, NV 89523
Tel:           (408) 640-2795
E-mail:      atemerald2@gmail.com

Debtor In Propria Persona

RECEIVED AND FILED
2018 SEP -7 PM 3: 57
U.S. BANKRUPTCY COURT
MARY A. SCHOTT, CLERK

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA - RENO

| | |
|---|---|
| IN RE:<br><br>ANTHONY THOMAS and<br><br>WENDI THOMAS<br><br>AT EMERALD, LLC<br><br>Debtors. | Case No.   BK-N-14-50333-BTB<br>Case No.   BK-N-14-60442-BTB<br>(Jointly Administered)<br>CHAPTER 7<br><br>OPPOSITION TO TURNOVER MOTION<br><br>Date:       September 13th 2018<br>Time:       10:00 a.m.<br>Judge:      Hon. Bruce T. Beesley<br>Courtroom: 2 |

Debtor Anthony G. Thomas hereby submits this Opposition that is based upon his attached Declaration and the Exhibits attached thereto, as well as based upon the Exhibits that were filed on 9-5-2018 as documents consisting of the facts and the law that are sought to be judicially noticed by the Debtors, set for hearing on 10-16-2018.

Debtor's are concurrently filing with this Opposition, an Ex Parte Application for an Order continuing the hearing date on the Turnover Motion upon the grounds that if the Court rules on the Turnover Motion, while the debtor is unrepresented by counsel, and the Court grants the Trustee's Motion for Turnover, despite the fact that doing so would be in contravention of California property law that is based upon several hundred years of English Common law, as evidenced by the excerpts from the learned treatises attached to the Exhibit List filed in connection with the Motion for Judicial notice filed on 9-5-2018, it would constitute a deprivation of due process and an illegal taking of property from the Thomas's parents in violation of the U.S. Constitution, and in violation of the criminal laws of the State of California, Nevada and the United States.

is predicated upon the facts and law sought to be judicially noticed, set for hearing on October 16th 2018. This Opposition Brief pre-supposes that the facts and law that are relevant to this case will be taken notice of and will form the basis of any ruling on the Trustee's Turnover Motion before this Court. The Turnover Motion filed by the Trustee on 7-10-2018 is predicated upon a false representation made by both the U.S. Trustee that the Debtors have concealed an asset, namely the home in Portola California that was transferred by Deed in January 2008 to the parents of Debtor Mr. & Mrs. Dorothy Thomas, the facts of which were fully disclosed in the initial BK filing on 3-4-2018, in the Amended Filing filed by Attorney Michael Lehners, Esq. as well as fully disclosed in detailed questioning by the U.S. Trustee at the 341 hearing on 12-4-2014. As such, the statement made by the Attorney Hartman at the end of the 8-10-2018 hearing on the Motion for Debtor's previous attorney Laury Macauley where Attorney Hartman falsely repeated the claim at the Thomas's did not disclose the facts regarding the Portola property and engaged in deceptive conduct falsely claiming that the property was not disclosed, and further falsely claiming that the Trustee only found out about the property recently, where Attorney Hartman stated on the record:

record:

> "MR. HARTMAN: He couldn't claim an exemption in a California property. **It wasn't disclosed. When the Trustee found out about it very recently, she promptly moved to change the locks, get it listed for sale, and if we find a buyer, we want to bring it to the Court.** So I understand the Court considering a delay for purposes of Mr. Thomas being able to respond to the motion, but I don't think 90 days is reasonable." [Emphasis added]
>
> Transcript of hearing on 8-10-2018 - p.17 - lines 22-25 to p.18 lines 1-3 attached to Debtor's Motion for Judicial Notice docket entry #: 365-1, pages ___ to ___ inclusive.

OPPOSITION TO U.S. TRUSTEE TURNOVER MOTION

**EVIDENCE TO CONTRADICT HARTMAN AND US TRUSTEE FALSE CLAIMS:**

On p.11 of the Debtor's 46 page initial bankruptcy filing on 3-4-2014, the following disclosure regarding the transfer of the Portola property to the parents of Debtor Anthony Thomas was made:

---

**10. Other transfers**

None ☐ a. List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within two years immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF TRANSFEREE, RELATIONSHIP TO DEBTOR | DATE | DESCRIBE PROPERTY TRANSFERRED AND VALUE RECEIVED |
|---|---|---|
| ELI & DOROTHY THOMAS 19946 KOSICH DRIVE SARATOGA, CA 95070 PARENTS | JANUARY, 2008 | RESIDENCE VALUED AT $25,000.00 IN PORTOLA, CA $200,000.00 |

---

Docket Entry 1 - Initial BK Filing page 36 of 46, also attached as Exhibit to Motion for Judicial Notice Docket 395 - p. 11 of 191 filed on 9-6-2018

OTHER EVIDENCE SHOWING DISCLOSURES RE: PROPERTY

The Debtor is requesting that the Court take Judicial Notice that Portola, California is located in Plumas County California, and take Judicial Notice that on p.10 of the 46 page filing listing the top 20 creditors, the following disclosure related to the Portola property was made:

Case 14-50333-btb   Doc 395   Entered 09/06/18 15:30:▓▓   Page 10 of 191
Case 14-50333-▓▓    Doc 1   Entered 03/04/14 15:3▓▓▓   Page 12 of 46

B4 (Official Form 4) (12/07) - Cont.
In re  **ANTHONY THOMAS**
       **WENDI THOMAS**                                Case No. _____
                    Debtor(s)

**LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS**
(Continuation Sheet)

| (1) Name of creditor and complete mailing address including zip code | (2) Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | (3) Nature of claim (trade debt, bank loan, government contract, etc.) | (4) Indicate if claim is contingent, unliquidated, disputed or subject to setoff | (5) Amount of claim [if secured, also state value of security] |
|---|---|---|---|---|
| LARRY BALAKIAN 3209 NORTH VAN NESS BLVD. FRESNO, CA 93704 | LARRY BALAKIAN 3209 NORTH VAN NESS BLVD. FRESNO, CA 93704 | PERSONAL LOAN | | 5,000.00 |
| MICHELE THOMAS 625 N. SPAULDING LOS ANGELES, CA 90036 | MICHELE THOMAS 625 N. SPAULDING LOS ANGELES, CA 90036 | PERSONAL LOAN | | 5,000.00 |
| PLUMAS COUNTY TREASURER P.O. BOX 176 QUINCY, CA 95971 | PLUMAS COUNTY TREASURER P.O. BOX 176 QUINCY, CA 95971 | PROPERTY TAXES | | 1,200.00 |

1  The disclosure of the claim of the Plumas County Treasurer, providing the name
2  of the Creditor, the address of the Plumas County Treasurer in Quincy, CA, and
3  disclosure that the Nature of the Claim is for Property Taxes in the amount $1,200,
4  shows that the Debtors did disclose all material facts regarding the Portola property.
5  These disclosures were followed up in the questioning by the US Trustee regarding the
6  Portola property, that was followed up by the Debtor's sending a copy of the latest
7  property tax bill, submitted to the Trustee through the Law Offices of Michael Lehners,
8  Esq. showing further good faith disclosures regarding the Portola CA property.

EXCERPTS FROM TRANSCRIPTS OF 341 MEETING OF CREDITORS:

EXCERPTS FROM TRANSCRIPT OF 341 MEETING HELD ON 12-4-2014:
FROM P.8:
MR. LUKAS:          What other real property did you own during that time
                    period?
MS. THOMAS:         The house in Portola.
...
FROM P.9:
MR. LUKAS:          Okay. Let's set Texas aside for a moment. Anything
                    outside of Texas, what did you own during that period?
                    Portola?
MS. THOMAS:         We had -- yeah, we had a house in Portola.
MR. LUKAS:          Okay. And when did you buy the house in Portola?
MS. THOMAS:         1999.
MR. LUKAS:          And when did you sell that house?
MS. THOMAS:         We deeded it over to his parents.
MR. LUKAS:          Is that Thomas and Dorothy or --
MS. THOMAS:         Yeah, Eli Thomas.
MR. LUKAS:          Or Eli and Dorothy?
MS. THOMAS:         Yeah.
MS. COPPA-KNUDSON:  When was that deeded?
MS. THOMAS:         2008, I believe.
MR. THOMAS:         Yeah, sometime.
MR. LUKAS:          Did you continue to live in that house in that period?
MS. THOMAS:         It's never been lived in. It's not finished.
...
MR. LUKAS:          Okay. Dorothy Thomas is your mother, Mr. Thomas?
MR. THOMAS:         Yes.
MR. LUKAS:          Okay. And so that explains -- she's listed in creditors.
                    You took a loan out of $200,000 from her?
MR. THOMAS:         Yes.
MR. LUKAS:          Okay. Is there a promissory note or documentation for that
                    loan?
MR. THOMAS:         Yes.
MR. LUKAS:          Okay. Fair enough. There is a Plumas County Treasurer's
                    property taxes for $1,200, Quincy, California. That's
                    usually --
MS. COPPA-KNUDSON:  Is that that Portola property?

- 4 -
OPPOSITION TO U.S. TRUSTEE TURNOVER MOTION

| | | |
|---|---|---|
| 1 | MS. THOMAS: | Those are old taxes. |
| | MS. COPPA-KNUDSON: | Oh. |
| 2 | MS. THOMAS: | Tony's mom hasn't been able to pay, and we haven't had the money to pay them for her. |
| 3 | MS. COPPA-KNUDSON: | But you're obligated to pay those? |
| | MR. THOMAS: | We're not, but she has the deed on the house and has had the deed on the house for five years or four years. |
| 4 | MS. THOMAS: | But we have back taxes in our name, so we just put it all in our name. |
| 5 | MS. COPPA-KNUDSON: | Oh, okay. So somehow, they were in your name. I don't quite understand that. |
| 6 | MS. THOMAS: | Which is long past any statute of limitations period of tax deed period. |
| 7 | MS. COPPA-KNUDSON: | Right. |
| 8 | MS. THOMAS: | I raise that. So you don't have any property, though, other than what you described before. |
| 9 | MR. THOMAS: | Right. |
| | MR. LUKAS: | Do you have some type of listing of what the property taxes are for or billing statement for them? |
| 10 | MS. THOMAS: | We still get a billing statement for the property taxes. |
| 11 | MR. THOMAS: | That's why we listed them. |
| | MS. THOMAS: | She didn't put it in her name. |
| 12 | MR. LUKAS: | So you're saying the Portola house has not been put into your mother's name, it's still in your name? |
| 13 | MS. THOMAS: | We deeded it over to her, but she didn't -- she just holds the |
| 14 | MR. LUKAS: | She never recorded the deed? |
| | MS. THOMAS: | Yeah, she just holds it. |
| 15 | MS. COPPA-KNUDSON: | Uh-oh. Uh-oh. |
| | MR. LUKAS: | We have found assets. |
| 16 | MS. COPPA-KNUDSON: | We have found assets. |
| | MS. THOMAS: | It's not much of an asset though, but -- (Counsel and debtor confer) |
| 17 | MS. COPPA-KNUDSON: | It's in Portola? |
| 18 | MR. THOMAS: | It's -- |
| | MS. COPPA-KNUDSON: | Where is it? |
| 19 | MR. LUKAS: | What county is it in? |
| | MS. THOMAS: | Plumas County. |
| 20 | MR. LEHNERS: | It is in -- Portola Valley is in Plumas County? |
| | MS. THOMAS: | It's not Portola Valley. |
| 21 | MR. LEHNERS: | Oh, I thought you said Portola Valley. |
| | MS. THOMAS: | It's Portola, California. |
| 22 | MS. COPPA-KNUDSON: | Portola. MR. LEHNERS: Portola. |
| | MS. THOMAS: | It's a little, tiny railroad town. |
| 23 | MS. COPPA-KNUDSON: | Not -- no, no, no, no. It's out by Quincy. |
| | MR. LUKAS: | Yeah, railroad town. I thought it was. |
| 24 | MS. COPPA-KNUDSON: | It's out by Quincy. |
| | MR. LUKAS: | Yeah, exactly right, Quincy. |
| 25 | MR. LEHNERS: | Makes sense, okay. |
| | MS. COPPA-KNUDSON: | But it -- |
| 26 | MR. LUKAS: | Feather River College. |
| | MS. COPPA-KNUDSON: | Yeah. So that deed was never transferred? |
| 27 | MS. THOMAS: | She holds it. |
| | MR. THOMAS: | It was transferred. We transferred it four years ago. |
| 28 | MS. COPPA-KNUDSON: | But if she didn't record the deed, it's not -- it's |

- 5 -

```
 1                          still in your name.
    MR. THOMAS:       I don't know whether she recorded it or not.  I just know
 2                    that we signed it over to us, and they sent us -- they keep
                      sending us these things, so we -- it's part of our creditor
 3                    --
    MS. COPPA-KNUDSON:   Obviously, it wasn't recorded.
 4  MR. LEHNERS:      Wasn't recorded.
    MR. LUKAS:        And so you're getting still property tax bills for that
 5                    property.
    MS. COPPA-KNUDSON:  What about mortgage?  Is there any money owing on that?
 6  MS. THOMAS:       No, we bought it for $12,000.  It's a shell of a house.
                      It's not --
 7  MS. COPPA-KNUDSON:   And is she living there?
    MS. THOMAS:       Nobody lives there.  There's nothing in it.  It's just
 8                    walls.  It's completely gutted.  We bought it, it was a
                      teardown.  So we bought it and did a little work on it, and
 9                    then we didn't have the money to finish it or the time.
                      We were just
10  MS. COPPA-KNUDSON:   And why did you deed it to her?
    MS. THOMAS:       Because we owed Dorothy money, and that's the only
11                    asset we had at the time.
    MR. THOMAS:       When we deeded it over to her.
12  MS. COPPA-KNUDSON:    And do you -- to your knowledge, has she attempted to
                      try to sell this?
13  MS. THOMAS:       She's talked about it, but she hasn't sold it.
    MR. THOMAS:       It's probably not going to sell.
14  MS. THOMAS:       It's not worth a lot.
    MR. THOMAS:       It's not worth anything.
15  MS. COPPA-KNUDSON:    Well, I don't know if the land is worth something
                      --
16  MR. LUKAS:        Let's ask about what's

17  MS.COPPA-KNUDSON:   Okay, sorry.
    MR.LUKAS:   You said it was worth $200,000.
18  MS. THOMAS:   No.
    MR. THOMAS:   No, I didn't.
19  LUKAS:   Oh, well -

20  MS. THOMAS:  We'd never say that.

21  MR. LUKAS:        Counsel, why don't you look at the schedules and statements
                      what they put as the value of that.
22
    MS. THOMAS:       No, we would not put that.
23
    MR. THOMAS:       We bought it for 12 grand.
24
    MR. LUKAS:        I'm just saying you put 200- on your schedules and
25                    statements.

26  MS. THOMAS:       Well, we didn't put that.

27  MR. LUKAS:        Look at the transfers.  It's $200,000.
    MR. LEHNERS:      Yeah, residence valued at 25,000.
28  MR. LUKAS:        And that's a motorcycle, isn't it?
```

-6-

| | | |
|---|---|---|
| 1 | MR. THOMAS: | No, other transfers. Residence value |
| | MS. ESTES: | $200,000 is the amount that they borrowed from their mom. |
| 2 | MR. LUKAS: | Oh, okay, okay. Sorry for the -• |
| | MS. COPPA-KNUDSON: | Oh, okay. |
| 3 | MS. ESTES: | Sorry about the mathing. It's -- |
| | MR. LEHNERS: | Residence valued at 25,000 in Portola, transferred January |
| 4 | | of '08. 200,000 appears here. Do you know why? |
| | MR. THOMAS: | That's what we borrowed from my mom. |
| 5 | MR. LEHNERS: | Okay. |
| | MR. LUKAS: | Okay. So |
| 6 | MR. LEHNERS: | It would appear that the 200,000 is the amount of the debt. |
| | | The 25,000 is the value of the real estate. Mr. Thomas, is |
| 7 | | that correct? |
| | MR. THOMAS: | Yes. |
| 8 | MR. LUKAS: | Okay. So residence value is 25,000. |
| | MS. THOMAS: | Yeah. I mean |
| 9 | | |
| | MR. LUKAS: | Give or take. Okay, fair enough. I didn't do the schedules |
| 10 | | and statements. I didn't sign them under penalty of |
| | | perjury. |
| 11 | | |
| | MR. LEHNERS: | Just ask questions. |
| 12 | ... | |
| | MS. COPPA-KNUDSON: | And -- no. I need -• |
| 13 | MR. SILVER: | Emails. |
| | MS. COPPA-KNUDSON: | the information on the tax bill -- copy of the tax |
| 14 | | bill on the Portola property so that I can go ahead |
| | | and look into that. If that's never been transferred, |
| 15 | | it's an asset of Thomas, I believe, not AT Emerald. |
| | MR. LEHNERS: | Can I get you the AT -- assessor's parcel number? |
| 16 | MS. COPPA-KNUDSON: | It would be helpful if I just had a copy of the tax |
| | | bill. Really helpful. I mean, and that'll have the |
| 17 | | assessor's parcel number on it. And, you know, I just |
| | | recall that I reviewed all the files from the U.S. |
| 18 | | Trustee's office, and I did not see any bank |
| | | statements for AT Emerald. |
| 19 | MR. LEHNERS: | Okay. We'll get them. |

20  Excerpts from 341 meeting, attached as Exhibit 12 to Motion for Judicial Notice, Docket
    395 - pages 174-191
21

22       The above excerpts from the 341 meeting of creditors, establishes that the

23  Trustee was fully aware of all of the facts surrounding the Portola property and that the

24  Debtor's did not conceal the asset, and were the ones that identified the fact that debtor

25  Anthony Thomas's parents did not record the deed. As such, the only basis for the

26  Turnover Motion is on the mistaken belief that the property still belongs to the Thomas's

27  only because they are still listed of record on the Tax Records of Plumas County, and

28  the Thomas parents did not record the Deed with the County Recorder's Office. The

- 7 -

OPPOSITION TO U.S. TRUSTEE TURNOVER MOTION

1  case law and the learned Treatises on Real Property law on the issue of the validity of a
2  transfer of property by Deed that is not recorded establishes otherwise.  Furthermore, it
3  is well understood that the Turnover procedure can only be used to go after assets of
4  the Bankruptcy Estate that are not subject to any dispute over the asset such as
5  disputed claims over ownership or title, something that is clear on the record here.
6  Under the circumstances, the Trustee is not permitted to uses the Turnover procedure,
7  and must proceed by means of Adversary proceeding.
8      Indeed, the listing on the Internet shows that the property was listed for sale on
9  8-9-2018, and the photographs show clearly that everything that the Thomas's stated
10 on the record at their 341 meeting of creditors is true, and the claims made by the U.S.
11 Trustee in her Motion papers, falsely claiming that the Thomas's were renting out the
12 property to tenants and concealing the income from the trustee were all false.  Debtor
13 is attaching a screenshot of an e-mail that he received from the Re/Max listing agent
14 that the home is not livable.
15     California law governs the transfer of an interest in real estate by physical
16 transfer of a deed that is neither acknowledged, nor recorded.  Under the facts of the
17 case, the Trustee and this Court is duty bound to apply California law to the facts of this
18 case.  In this regard, the Debtor is attaching as Exhibit 11, a learned article on the
19 interplay between turnover orders in the US Bankruptcy Court, published in the
20 September 2016 issue of L.A. Lawyer magazine, along with a learned treatise
21 published by the Norton 2012 Bankruptcy Panel on 542 Turnover Motions in the U.S.
22 Bankruptcy Court.
23     The entire legal basis for the Trustee Turnover motion is upon the grounds that
24 Debtor's parents did not record their Deed, and upon the grounds that the Debtors
25 appear on public records as owners of the real property, despite the fact that the
26 Debtors did in fact legally transfer their interests in the Portola property by Deed, and
27 that California law recognizes the transfer by the Debtors as valid and Debtors
28 respectfully request that this Court take judicial notice of the law governing the transfer

OPPOSITION TO U.S. TRUSTEE TURNOVER MOTION

of real estate by deed that does not require the deed to be either acknowledged or recorded in order for the transfer to be valid. The Debtors also respectfully request that this Court take specific judicial notice of the facts that establish that the Debtors did in fact fully disclose the details regarding the Portola property, in their initial 3-4-2014 bankruptcy filing as described more fully herein, as well as providing full disclosure of the details regarding the transfer of the Portola property to Debtor Anthony Thomas's parents in January 2008, facts which clearly show that there was no concealment of assets that the Trustee and the attorney for the Trustee now incredulously claim in direct contradiction of the facts that the Debtors are requesting that this Court take judicial notice of.

> "It is well established that the burden of proof is on the party seeking turnover of property of the estate[.]" Matter of Alofs Mfg. Co., 209 B.R. 83, 89-90 (Bkrtcy.W.D.Mich.1997). Therefore, the trustee must prove each element of her turnover action under section 542 by a preponderance of the evidence in the record. Id. at 91. One of these elements requires the trustee to prove that the property in question is in the "possession custody, or control of an entity," ... In addition, fundamental to the concept of turnover under § 542(a) is that the asset to be turned over must be property of the debtor's bankruptcy estate as defined by the Bankruptcy Code.

In re Greer, 242 B.R. 389, 393 (Bkrtcy.N.D.Ohio 1999).

The Greer case states that it is State law that governs whether there exists a legitimate property interest:

> In re Greer, 242 B.R. at 393 (citations omitted). However, "property of the estate is generally limited to legal or equitable interests in property that were held by the debtor prior to, and up until the time of the filing of the bankruptcy petition." Id. In addition, Under § 541(a) the determination of whether a debtor's interest in property constitutes `property of the estate' is a question of federal law. However, unless there is a strong countervailing federal interest, the actual existence of a debtor's right in property, including its nature and scope, is determined by looking at state law. . . .

Id. at 394 (citations omitted).

Therefore, the trustee must demonstrate that the property in question did not transfer to the Thomas parents as alleged and disclosed by the Debtors under California law.

## LAW DOES NOT REQUIRE THE DEED TO BE ACKNOWLEDGED OR RECORDED

The deed of conveyance was not invalid between the parties thereto

merely because it was not acknowledged 171*171 by the grantors. The purpose of an acknowledgment to a deed is evidentiary in character and is required so as to entitle the instrument to be recorded or to render it competent evidence without further proof. (9 Cal.Jur. 113, sec. 18; Gordon v. City of San Diego, 108 Cal. 264 [41 P. 301]; Knaugh v. Baender, 84 Cal.App. 142 [257 P. 606]; sec. 1161, Civ. Code.) [6] The fact that the deed in this case was irregularly acknowledged out of the presence of the grantors is immaterial except for the purpose of determining whether the grantors intended to presently convey their title to the land therein described when the deed was handed to Mr. Weis for the purpose of delivering it to the grantee. There is sufficient evidence in the record to support the finding of the court to the effect that the deed was delivered by the grantors for the purpose of conveying title to the property without any condition or contingency attached thereto and that the delivery of the deed was absolute.

<u>Williston v. City of Yuba City</u>   1 Cal.App.2d 166 at 170-171

Case law - In re: Adeeb, disclosure of property at first meeting of creditors does not constitute concealment under the law as follows:

Our conclusion is consistent with cases interpreting "concealed" as used in section 727(a)(2)(A). Those cases state that a "debtor who fully discloses his property transactions at the first meeting of creditors is not fraudulently concealing property from his creditors." In re Waddle, 29 B.R. 100, 103 (Bankr.W.D.Ky.1983) ; see 4 Collier on Bankruptcy ¶ 727.02[6][b] (15th ed. 1985). Although a concealment may be undone simply by disclosing the existence of the property, disclosure does not undo a transfer. However, a transfer may be undone by recovering the property.

<u>In re: Adeeb</u>

This holding is repeated in the KY BK case:

"A debtor who fully discloses his property transactions at the first meeting of creditors is not fraudulently concealing property from his creditors. In Re Doody, 92 F.2d 653 (7th Cir.1937); Thompson v. Eck, 149 F.2d 631 (2d Cir.1945).

In re Waddle, 29 B.R. 100, 103 (Bankr.W.D.Ky.1983)

In Brubacker, the Bankruptcy Court held:

It should be noted at the outset that the Trustee carries the burden of proof on her Motion for Turnover. To the extent that the record is incomplete or does not address certain evidentiary issues, the court must hold the Trustee responsible. In seeking the entry of a turnover order, the burden is on the trustee to show that the property or proceeds are part of the bankruptcy estate. Maggio v. Zeitz, 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476 (1948); In re Joe Necessary & Son, Inc., 475 F.Supp. 610 (W.D.Va.1979). The general rule is that "[t]he trustee succeeds only to such rights as the bankrupt possessed; and the trustee is subject to all claims and defenses which might

have been asserted against the bankrupt but for the filing of the petition."
Bank of Marin v. England, 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966).

In re: Brubacker (2010)

Duties of BK Court to be careful using the turnover procedure:

> This Court has said that the turnover order must be supported by "clear and convincing evidence," Oriel v. Russell, 278 U.S. 358, and that includes proof that the property has been abstracted from the bankrupt estate and is in the possession of the party proceeded against. It is the burden of the trustee to produce this evidence, however difficult his task may be.

The US Supreme Court warned against the misuse of the Turnover Motion procedure:

> Turnover orders should not be issued or affirmed on a presumption thought to arise from some isolated circumstance, such as onetime possession, when the reviewing court finds from the whole record that the order is unrealistic and unjust. No rule of law requires that judgment be thus fettered; nor has this Court ever so prescribed. Of course, deference is due to the trial court's findings of fact, as prescribed by our rules, but even this presupposes that the trier of fact be actually exercising his judgment, not merely applying some supposed rule of law. In any event, rules of evidence as to inferences from facts are to aid reason, not to override it. And
>
> [333 U.S. 67]
>
> there does not appear to be any reason for allowing any such presumption to override reason when reviewing a turnover order. We are well aware that these generalities do little to solve concrete issues. The latter can be resolved only by the sound sense and good judgment of trial courts, mindful that the order should issue only as a responsible and final adjudication of possession and ability to deliver, not as a questionable experiment in coercion which will recoil to the discredit of the judicial process if time proves the adjudication to have been improvident and requires the courts to abandon its enforcement.

Acknowledgement is not necessary under CA Law, pursuant to CA Supreme Court Case:

> "This brings us to a consideration of a destroyed deed which was signed and delivered by respondent but not acknowledged, purporting to convey lots 61 and 62, which constituted the most valuable portion of respondent's estate. In 1915 respondent fell very ill with pneumonia and his physician dispaired of his life. While thus ill a deed was drawn at the suggestion of his wife, which by its terms conveyed the title of lots 61 and 62 to her. It was delivered to her unacknowledged. Some time thereafter the husband requested the redelivery of said deed to him and intimated in the conversation that she had obtained his signature and the possession of the deed by employing questionable methods. Incensed by the implication the wife, with a feeling of indignation, returned the instrument to him and he immediately destroyed it. Appellant takes the position that by signing and delivering the deed, though

unacknowledged, *Page 349 the grantor passed title to the grantee and it was not revived in the grantor by a redelivery or by the destruction of said instrument. The provisions relating to the acknowledgment of deeds are made for the protection and security of creditors and purchasers. Title vested in a grantor passes by his deed to the grantee as completely as it would if the conveyance had been acknowledged and recorded. (1 Devlin on Real Estate, 3d ed., p. 817.) In the absence of a statute providing otherwise an acknowledgment is not necessary to and adds nothing to the validity or effect of an instrument as between the parties thereto and persons having actual notice of the execution of it. (1 Cal. Jur., p. 222.) We have no statute in this state making the acknowledgment of a husband's deed essential to give it validity. Granting the rule of law as above stated, we do not think that it should control the instant case but that the questions of intent and delivery are the major considerations.

Kimbro v. Kimbro, 249 P. 180 (Cal. 1926) 199 Cal. 344

Debtors reserve the right to supplement this Opposition after the Court takes judicial notice of the facts and law of this case, and grants the Debtor's Ex Parte Application for an Order continuing the hearing on the Turnover Motion until after the Court rules on the Motion for Judicial Notice.

Date:  Friday September 7th 2018.

Respectfully submitted,

*Tony Thomas*

Anthony G. Thomas - Debtor
In Propria Persona

OPPOSITION TO U.S. TRUSTEE TURNOVER MOTION

## 397 2nd Ave — Inbox

**Melinda Bennett**
to me, wendithomas6, Marsha
Aug 11 View details

Hi Toni and Wendi...per our phone conversation this morning, I have been in the property and it is not currently habitable...it is definitely under construction and there aren't plumbing or lighting fixtures installed.

Please let me know if you have any other questions or concerns.

Thanks

*´¨)
¸.·´¸.·*´¨)
(¸.·´ (¸Melinda Bennett, Realtor

**RE/MAX**

## CERTIFICATE OF SERVICE

I certify that I am an adult, over the age of 18 years, not a party to the action herein who resides in Washoe County, Nevada. I caused to be served the foregoing document via e-mail to the following persons as listed below from my e-mail address of mickjoseph@sbcglobal.net as follows:

JEFFREY A. COGAN

jeffrey@jeffreycogan.com, beautausinga@gmail.com, beau@jeffreycogan.com

JERI COPPA-KNUDSON VIA E-MAIL AND US MAIL: 3495 Lakeside Dr. Reno, NV 89509

renobktrustee@gmail.com, jcoppaknudson@ecf.episystems.com

KEVIN A. DARBY

kad@darbylawpractice.com, tricia@darbylawpractice.com, jill@darbylawpractice.com, hersh@darbylawpractice.com, sam@darbylawpractice.com

JEFFREY L. HARTMAN VIA E-MAIL AND US MAIL: 510 W. Plumb Lane Suite B - Reno, NV 89509

notices@bankruptcyreno.com, sji@bankruptcyreno.com

TIMOTHY A. LUCAS

ecflukast@hollandhart.com

LAURY MILES MACAULEY

laury@macauleylawgroup.com

WILLIAM MCGRANE

ECF-8116edf28c97@ecf.pacerpro.com, mitch.chyette@mcgranellp.com

STEPHANIE T. SHARP

ssharp@rssblaw.com, cobrien@rssblaw.com

WAYNE A. SILVER

w_silver@sbcglobal.net, ws@waynesilverlaw.com

ALAN R. SMITH

mail@asmithlaw.com

STEVEN C. SMITH

ssmith@smith-lc.com, mbrandt@smith-lc.com

AMY N. TIRRE

amy@amytirrelaw.com, admin@amytirrelaw.com

OPPOSITION TO U.S. TRUSTEE TURNOVER MOTION

| | |
|---|---|
| 1 | U.S. TRUSTEE - RN - 7,7 |
| 2 | USTPRegion17.RE.ECF@usdoj.gov |
| 3 | JOSEPH G. WENT |
| 4 | jgwent@hollandhart.com, vllarsen@hollandhart.com |

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  September 7th 2018.

/S/ Mick Joseph

MICK JOSEPH