1  Anthony G. Thomas
   7725 Peavine Peak Court
2  Reno, NV 89523
   Tel:    (408) 640-2795
3  E-mail: atemerald2@gmail.com

4  Debtor In Propria Persona

5

6              **UNITED STATES BANKRUPTCY COURT**

7              **DISTRICT OF NEVADA - RENO**

8  IN RE:                          ) Case No.   BK-N-14-50333-BTB
                                   ) Case No.   BK-N-14-60442-BTB
9  ANTHONY THOMAS and              ) (Jointly Administered)
                                   )
10 WENDI THOMAS                    ) CHAPTER  7
                                   )
11 AT EMERALD, LLC                 ) [PROPOSED] ORDER TAKING JUDICIAL
                                   ) NOTICE OF LAW & FACTS
12         Debtors.                )
                                   ) Date:        October 19th 2018
13                                 ) Time:        10:00 a.m.
                                   ) Judge:       Hon. Bruce T. Beesley
14                                 ) Courtroom: 2
                                   )
15

16        The Court, having reviewed Exhibits 1-12 filed on 9-5-2018 as Docket Entry 395

17 consisting of 191 pages, and Exhibits 13-17 filed as Docket Entry 395-1 consisting of

18 98 pages, as well as the Exhibits filed on 9-13-2018 as Docket Entry 406 consisting of

19 171 pages in connection with his Motion Requesting Judicial Notice of the Law & Facts

20 that govern Turnover Motions as well as the specific facts relating to this case, the

21 Court having reviewed those Exhibits and having read the specific numbered requests

22 for the Court to take Judicial Notice of the Court hereby either takes notice or does not

23 take notice as noted on the checkboxes next to each specific request as follows:

24

25

26

27

28

---

**PROPOSED ORDER RE: DEBTOR ANTHONY THOMAS'S MOTION FOR JUDICIAL NOTICE**

1

| Ex # | Description of Exhibits /Requests made | DE 395 Pages | Notice Taken Y | N |
|---|---|---|---|---|
| 1.1 | **Excerpts from 3-4-2014 - Initial BK Petition p. 11** | 09 | | |
| R1.1 | Requesting Court to take Notice that Debtors listed Mrs. Dorothy Thomas as one of the List of Creditors Holding 20 Largest Unsecured Claims | | ☐ | ☐ |
| 1.2 | **Excerpts from 3-4-2014 BK Filing - page 12** | 10 | | |
| R1.2 | Requesting Court to take Notice that Debtor's Listed the Plumas County Treasurer on the List of Creditors Holding 20 Largest Unsecured Claims and that the Debtors Listed the nature of the Claim as Property Taxes[1] | | ☐ | ☐ |

---

The fact that the Debtors fully disclosed the fact that there were property taxes owing to the Plumas County Treasurer is conclusive evidence of the fact that the Thomas's had no intention of concealing the Portola, CA property from the Banktruptcy Trustee

PROPOSED ORDER RE: DEBTOR ANTHONY THOMAS'S MOTION FOR JUDICIAL NOTICE

| 1.3 | **Excerpt from 3-4-2014 BK Filing - page 36 of 46 - Statement of Financial Affairs -** | 11 | | |
|---|---|---|---|---|
| R1.3 | Debtors are Requesting that the Court take Judicial Notice of the full text of Question 10 of the Statement of Financial Affairs as asked on page 36 of 46 of the Thomas's Initial BK petition filed on 3-4-2014, and the fact that the question specifically asks whether there has been any transfer, and if the transfer was either transferred absolutely (as was the case here) or whether the property was transferred as security as follows:<br><br>Question 10: a. List all other property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within two years immediately preceding the commencement of the case. | | ☐ | ☐ |
| R1.3.1 | Debtors Identified the NAME AND ADDRESS OF TRANSFEREE, RELATIONSHIP TO DEBTOR DATE<br><br>ELI & DOROTHY THOMAS<br>JANUARY, 2008<br>18945 KOSICH DRIVE<br>SARATOGA, CA 95070<br>    PARENTS | | ☐ | ☐ |
| R1.3.2 | Request that the Court take Notice that the Debtors answered the question<br><br>"DESCRIBE PROPERTY TRANSFERRED" as:<br><br>"RESIDENCE VALUED AT $25,000 IN PORTOLA, CA" | | ☐ | ☐ |
| R1.3.3 | Request that the Court take Notice that the Debtors answered the Question:<br><br>"AND VALUE RECEIVED"<br><br>"$200,000" | | ☐ | ☐ |
| 2 | **Debtor Basic Questionnaire provided by U.S. Bankruptcy Trustee and questionnaire answered fully by Debtors and signed on 11-22-2014** | 12-14 | | |
| R2 | **Request that the Court take Notice that the Debtors fully disclosed all questions that were asked by the U.S. Trustee** | | ☐ | ☐ |

| 3 | | Decisional Case Law of the State of California - **Belli v. Bonavia** (1959) 167 Cal.App.2d | 15-19 | | |
|---|---|---|---|---|---|
| | | **Request that the Court take Judicial Notice of the following points of California Law regarding the validity of transfers of Real Estate by Deed:** | | | |
| | R3.1 | A presumption of delivery arises from the possession of the deed by the grantee. (Stewart v. Silva, 192 Cal. 405; Severn v. Ruhde, 58 Cal.App.2d 704 | | ☐ | ☐ |
| | R3.2 | There is a further presumption that the delivery took place at the time of execution. (Civ. Code, 1055; Marple v. Jackson, 184 Cal. 411 | | ☐ | ☐ |
| | R3.3 | These presumptions are applicable even if the deed is not recorded until after the death of the grantor, who in the meantime exercises acts of control over the property by collecting rent, paying insurance in his own name, etc. (Merritt v. Rey, 104 Cal.App. 700; Shaver v. Canfield, 21 Cal.App.2d 734; Drummond v. Drummond, 39 Cal.App.2d 418; Estate of Schmidt, 49 Cal.App.2d 86 ; Lewis v. Burns, 122 Cal. 358 ; Lewis v. Brown, 22 Cal.App. 38.) | | ☐ | ☐ |
| | R3.4 | Possession of the deed by the grantee also creates prima facie evidence of valid delivery. (Labadie v. Labadie, 57 Cal.App.2d 456 .) | | ☐ | ☐ |
| | R3.5 | Once a prima facie case is made out, or the presumption established, the burden shifts to the party attacking the validity of the deed. (California Trust Co. v. Hughes, 111 Cal.App.2d 717.) | | ☐ | ☐ |
| | R3.6 | "Nothing but the most satisfactory evidence of non-delivery should prevail against the presumptions." (Stewart v. Silva, 192 Cal. 405 .) | | ☐ | ☐ |
| | R3.7 | Payment of taxes and keeping up insurance by the grantor are consistent with the intent to pass title. (Hitch v. Hitch 24 Cal.App.2d 291.) | | ☐ | ☐ |
| | R3.8 | The validity of the document is not affected by the failure to record or change possession. (Knox v. Kearney, 40 Cal.App. 290 | | ☐ | ☐ |
| | R3.9 | Delivery to one joint owner is delivery to both. (Smith v. Lombard, 201 Cal. 518 | | ☐ | ☐ |

| | | | | |
|---|---|---|---|---|
| R.3.10 | Acceptance is presumed where a grant is beneficial, even where a grantee has no knowledge of the deed. (Estate of Kalt, 16 Cal.2d 807; Smith v. Lombard, 201 Cal. 518; Herman v. Mortensen, 72 Cal.App.2d 413 | | ☐ | ☐ |
| 4 | Learned Treatise on the Law of Real Property & Deeds (1911) by Devlin (3rd Edition) | 20-27 | | |
| | Request that the Court take Judicial Notice of the above-noted Learned Treatise on the Law of Real Property & Deeds: | | | |
| R4.1 | The certificate of acknowledgment is not essential to the validity of the deed , which is operative, without acknowledgment between the parties. Devlin p.815 | 25 | ☐ | ☐ |
| R4.2 | §465. Acknowledgment not necessary between the parties - The rule which obtains in most of the States, is that as between the parties, no acknowledgment is necessary.  The provisions relating to the acknowledgment of deeds are made for the protection and security of creditors and purchasers.  But so far as the grantor is concerned, the title invested in him passes by deed to the grantee as completely as it would if the conveyance had been acknowledged and recorded. FN 6  FN 6: Hastings v. Vaughn 5 Cal. 315 | | ☐ | ☐ |

PROPOSED ORDER RE: DEBTOR ANTHONY THOMAS'S MOTION FOR JUDICIAL NOTICE

| | | |
|---|---|---|
| 5A | **Decisional Case law of Supreme Court of California** <br> **Hastings v. Vaughn** (1855) 5 Cal. 315 | 28-34 |
| | Request that the Court take Judicial Notice of the following propositions of law governing the validity of Deeds: | |
| **R5A.1** | "Although a deed be defective in the acknowledgment, so as not to entitle it to registration, it is not void but it is still good as between the parties, and as to all the world, except subsequent purchasers without notice." | ☐ ☐ |
| **R5A.2** | "A deed defective in the acknowledgment, should not be rejected as evidence for that reason, but should be admitted, with instructions to the jury as to the effect in giving notice to third persons." | ☐ ☐ |
| **R5A.3** | "Our statute regarding Conveyances requires that all conveyances of land, or of any estate or interest thereon, shall be by deed. Comp. Laws p. 513 Section 1.  The common law of England, in respect to this question, is our law. Comp. Laws, p. 186." | ☐ ☐ |
| 5 | **Decisional Case law of the United States Supreme Court re: Turnover Law -  Magolo v. Zeitz** (1948) 333 **U.S. 56** | 35-54 |
| | Request that the Court take Judicial Notice from U.S. Supreme Court precedent regarding the Bankruptcy Turnover Law: | |
| **R5.1** | The nature and derivation of the remedy make clear that it is appropriate only when the evidence satisfactorily establishes the existence of the property or its proceeds, and possession thereof by the defendant at the time of the proceeding | ☐ ☐ |
| **R5.2** | It is evident that the real issue as to turnover orders concerns the burden of proof that will be put on the trustee and how he can meet it. This Court has said that the turnover order must be supported by "clear and convincing evidence," Oriel v. Russell, 278 U.S. 358, and that includes proof that the property has been abstracted from the bankrupt estate and is in the possession of the party proceeded against. It is the burden of the trustee to produce this evidence, however difficult his task may be. | ☐ ☐ |

| 6 | **Case Law - In re: Doody** (1937) 92 F. 653 | 55-57 | | |
| | Request that the Court take Judicial Notice of the facts of the case as applied to the allegation of fraudulent concealment of assets: | | | |
| R6.1 | It may be said however, that at the first meeting of creditors the bankrupt fully disclosed the transaction, and at the referee's hearing on appellant's objections to the discharge, the bankrupt fully described the entire transaction and submitted the second deeds for inspection.  Under these circumstances, we think there was no error in holding that there was neither trust nor fraudulent concealment proved. In re Hennebry, supra | | ☐ | ☐ |
| 7 | Case Law - In re: Adeeb (1986) 787 F.2d 1339 **re: lack of concealment where disclosure is made at first meeting of creditors:** | 58-65 | | |
| | **Request that the Court take Judicial Notice of the Law regarding disclosure of assets at first meeting of creditors:** | | | |
| R7.1 | [A] "debtor who fully discloses his property transactions at the first meeting of creditors is not fraudulently concealing property from his creditors." In re Waddle, 29 B.R. 100, 103 (Bankr.W.D.Ky.1983); see 4 Collier on Bankruptcy ¶ 727.02[6][b] (15th ed. 1985). | | ☐ | ☐ |
| 8 | Case Law - California Trust (1952) 111 Cal.App.2d 717 | 66-69 | ☐ | ☐ |
| | Request that the Court take Judicial Notice of the following points of California law regarding validity of transfer by deed: | | | |
| R8.1 | While acceptance is an essential part of delivery, possession of a deed by a grantee, or those holding under him, is prima facie evidence of both delivery and acceptance (Hodoian v. Garabedian, 79 Cal.App. 762, 769) | | ☐ | ☐ |
| R8.2 | The failure of recordation of a deed during the lifetime of the grantee has never been deemed a reason for not giving effect to the presumption that arises from possession of the deed by the grantee or those claiming under him. (See Stewart v. Silva, 192 Cal. 405; Hodoian v. Garabedian, supra; Dinneen v. Younger, supra, 57 Cal.App.2d 200.) | | ☐ | ☐ |

PROPOSED ORDER RE: DEBTOR ANTHONY THOMAS'S MOTION FOR JUDICIAL NOTICE

| 9 | | **Learned Treatise on the Law of Judicial Notice - The American Register September 1885 - THE LAW OF JUDICIAL NOTICE** | 70-90 | | |
| | | Request that the Court take Judicial Notice of the following points of law taken from the above-noted Learned Treatise on the Law of Judicial Notice: | | | |
| | R9.1 | In the first place, courts are always presumed to know the laws under the which they act and which they are to administer. | | ☐ | ☐ |
| | R9.2 | [A]ny branch or division of the body of the law which appplies to the territory within the jurisdiction of the court need not be established as a matter of fact but will be officially noted. | | ☐ | ☐ |
| | R9.3 | Since the common or unwritten law of the state, together with its general and public stattues, constitutes an integral part of the domestic jurisprudence, these also are proper subjects for the judicial cognisance of the court | | ☐ | ☐ |
| | R9.4 | IV. Judicial Notice of State Law in the Federal Courts Whenever questions arise in the courts of the United States which depend upon points of state law, the adjudicating tribunals will take judicial notice of all such laws: *Merrill v. Dawson*, 1 Hemp. 563; *Jones v. Hays*, 4 McLean 521; *Mewster v. Spaulding*, 6 Id. 24; *Pennington v. Gibson* 16 How. 35 | | ☐ | ☐ |
| | R9.5 | The judicial knowledge of a national court is not confined to the enactments of the state where it happens to be sitting at the particular time, but extends at all times to the laws of all other states within its jurisdiction. | | ☐ | ☐ |
| | R9.6 | The circuit courts of the United States are created by Congress, not for the purpose of administering the local laws of a single state alone, but to adminsiter the laws of all the states of the Union, in cases to which they respectively apply."*Owings v. Hull*, 9 Pet. 625 | | ☐ | ☐ |
| | R9.7 | Since every court is presumed to know the whole body of the law which it is intended to administer, it follows that these courts must be acquainted with the state laws. | | ☐ | ☐ |

| 10 | **L.A. Lawyer Magazine article BK Procedure Turnover Law** | **91-95** | ☐ | ☐ |
|---|---|---|---|---|
| **R10** | Request that the Court take Judicial Notice of this article entitled "Bankruptcy Procedure in the Context of Turnover and Preference" | | ☐ | ☐ |
| **11** | 2012 Norton Bankruptcy Law Review | 96-173 | | |
| | Request that the Court take Judicial Notice of the following points of law regarding Turnover Motions under Section 542 and 543 of the Bankruptcy Code: | | | |
| **R11.1** | A turnover action under section 542 or 543 generally cannot be used, however, to demand assets whose title is in dispute | | ☐ | ☐ |
| **R11.2** | Request that the Court take Judicial Notice that an action to recover property held by a non-debtor must be made by Adversary Action quoting Norton Annual Survey of Bankruptcy Law, 2012 Edition, p. 958 | | ☐ | ☐ |
| **R11.3** | Federal Rule of Bankruptcy Procedure 7001(1) 49 includes in the list of adversary proceedings "a proceeding to recover money or property, other than a proceeding to compel the debtor to deliver property to the trustee." Thus a turnover of estate property from a debtor 50 and a turnover action for recorded information under section 542(e) may be brought by motion, while Rule 7001(1) requires all other actions for turnover of estate property under section 542(a) and (b) (i.e., an action against a nondebtor) and section 543(a) to be commenced by an adversary proceeding.<br><br>ISSUE- RE: UNEXPLAINED DELAY OF TRUSTEE IN BRINGING TURNOVER MOTION IN LIGHT OF DISCLOSURE MADE AT SECTION 341 MEERTING OF CREDITORS (SEE Exhibit 12 - Transcript of 12-4-2014):<br><br>LACHES MAY APPLY TO BAR THE TRUSTEE'S TURNOVER MOTION: | | ☐ | ☐ |
| **R11.4** | Laches may apply to time bar the claim if there has been an unreasonably delay by the plaintiff or movant in bringing the claim. In re American Home Mortg. Holding, also discussed in § X above, the defendants raised the defense of laches to the debtors' turnover claim among others. The bankruptcy court held that the "determination of unreasonable delay is left to the discretion of the court." | | ☐ | ☐ |

| R11.5 | [g]ood reason and sound practice dictate that actions under § 542(a) be commenced within a reasonable period of time," Greene v. Schmukler (In re De Berry), 59 B.R. 891, 898 (Bankr. E.D.N.Y. 1986). | ☐ ☐ |
| **R11.6** | [Turnover Motions are] subject to equitable defenses, such as laches, equitable estoppel, waiver, and acquiescence. See Planavsky v. County of Broome (In re Planavsky), 432 B.R. 481, 494 (Bankr. N.D.N.Y. 2010); Rice v. Johnson (In re Johnson), 371 B.R. 380, 386-387 (Bankr. E.D. Ark.2007). | ☐ ☐ |
| **R11.7** | Laches bars the assertion of a claim based upon the plaintiff's unreasonable delay which prejudices the other party. Ackerman v. Schultz (In re Schultz), 250 B.R. 22, 37-38 (Bankr. E.D.N.Y. 2000) (citing In re Coffee Cupboard, Inc., 118 B.R. 197, 200 (Bankr. E.D.N.Y.1990)). | ☐ ☐ |

| 12 | **Excerpts from 12-4-2014 341 Meeting of Creditors** |
|---|---|
| | **Request that the Court take Judicial Notice of the following excerpts where Debtors fully disclose the facts re: Portola property including the fact that Debtor Anthony Thomas's parents did not record the Deed:** |
| R12.1 | **FROM P.8:** |
| | **MR. LUKAS:**     What other real property did you own during that time period? |
| | **MS. THOMAS:**     The house in Portola. |
| | ... |
| | **FROM P.9:** |
| | **MR. LUKAS:**     Okay. Let's set Texas aside for a moment. Anything outside of Texas, what did you own during that period? Portola? |
| | **MS. THOMAS:**     We had -- yeah, we had a house in Portola. |
| | **MR. LUKAS:**     Okay. And when did you buy the house in Portola? |
| | **MS. THOMAS:**     1999. |
| | **MR. LUKAS:**     And when did you sell that house? |
| | **MS. THOMAS:**     We deeded it over to his parents. |
| | **MR. LUKAS:**     Is that Thomas and Dorothy or -- |
| | **MS. THOMAS:**     Yeah, Eli Thomas. |
| | **MR. LUKAS:**     Or Eli and Dorothy? |
| | **MS. THOMAS:**     Yeah. |
| | **MS. COPPA-KNUDSON:** When was that deeded? |
| | **MS. THOMAS:**     2008, I believe. |
| | **MR. THOMAS:**     Yeah, sometime. |
| | **MR. LUKAS:**     Did you continue to live in that house in that period? |
| | **MS. THOMAS:**     It's never been lived in. It's not finished. |
| | ... |
| | **MR. LUKAS:**     Okay. Dorothy Thomas is your mother, Mr. Thomas? |
| | **MR. THOMAS:**     Yes. |
| | **MR. LUKAS:**     Okay. And so that explains -- she's listed in creditors. You took a loan out of $200,000 from her? |
| | **MR. THOMAS:**     Yes. |
| | **MR. LUKAS:**     Okay. Is there a promissory note or documentation for that loan? |
| | **MR. THOMAS:**     Yes. |

PROPOSED ORDER RE: DEBTOR ANTHONY THOMAS'S MOTION FOR JUDICIAL NOTICE

12

| | |
|---|---|
| MR. LUKAS: | Okay.  Fair enough.  There is a Plumas County Treasurer's property taxes for $1,200, Quincy, California.  That's usually -- |
| MS. COPPA-KNUDSON: | Is that that Portola property? |
| MS. THOMAS: | Those are old taxes. |
| MS. COPPA-KNUDSON: | Oh. |
| MS. THOMAS: | Tony's mom hasn't been able to pay, and we haven't had the money to pay them for her. |
| MS. COPPA-KNUDSON: | But you're obligated to pay those? |
| MR. THOMAS: | We're not, but she has the deed on the house and has had the deed on the house for five years or four years. |
| MS. THOMAS: | But we have back taxes in our name, so we just put it all in our name. |
| MS. COPPA-KNUDSON: | Oh, okay.  So somehow, they were in your name.  I don't quite understand that. |
| MS. THOMAS: | Which is long past any statute of limitations period of tax deed period. |
| MS. COPPA-KNUDSON: | Right. |
| MS. THOMAS: | I raise that.  So you don't have any property, though, other than what you described before. |
| MR. THOMAS: | Right. |
| MR. LUKAS: | Do you have some type of listing of what the property taxes are for or billing statement for them? |
| MS. THOMAS: | We still get a billing statement for the property taxes. |
| MR. THOMAS: | That's why we listed them. |
| MS. THOMAS: | She didn't put it in her name. |
| MR. LUKAS: | So you're saying the Portola house has not been put into your mother's name, it's still in your name? |
| MS. THOMAS: | We deeded it over to her, but she didn't -- she just holds the |
| MR. LUKAS: | She never recorded the deed? |
| MS. THOMAS: | Yeah, she just holds it. |
| MR. LUKAS: | Okay.  Fair enough.  There is a Plumas County Treasurer's property taxes for $1,200, Quincy, California.  That's usually -- |
| MS. COPPA-KNUDSON: | Is that that Portola property? |

12

MS. THOMAS:        Those are old taxes.

MS. COPPA-KNUDSON: Oh.

MS. THOMAS:        Tony's mom hasn't been able to pay, and we haven't had the money to pay them for her.

MS. COPPA-KNUDSON:  But you're obligated to pay those?

MR. THOMAS:        We're not, but she has the deed on the house and has had the deed on the house for five years or four years.

MS. THOMAS:        But we have back taxes in our name, so we just put it all in our name.

MS. COPPA-KNUDSON:   Oh, okay.  So somehow, they were in your name.  I don't quite understand that.

MS. THOMAS:        Which is long past any statute of limitations period of tax deed period.

MS. COPPA-KNUDSON:  Right.

MS. THOMAS:        I raise that.  So you don't have any property, though, other than what you described before.

MR. THOMAS:        Right.

MR. LUKAS:         Do you have some type of listing of what the property taxes are for or billing statement for them?

MS. THOMAS:        We still get a billing statement for the property taxes.

MR. THOMAS:        That's why we listed them.

MS. THOMAS:        She didn't put it in her name.

MR. LUKAS:         So you're saying the Portola house has not been put into your mother's name, it's still in your name?

MS. THOMAS:        We deeded it over to her, but she didn't -- she just holds the

MR. LUKAS:         She never recorded the deed?

MS. THOMAS:        Yeah, she just holds it.

MS. COPPA-KNUDSON: Uh-oh.  Uh-oh.

MR. LUKAS:         We have found assets.

MS. COPPA-KNUDSON:  We have found assets.

MS. THOMAS:        It's not much of an asset though, but -- (Counsel and debtor confer)

**PROPOSED ORDER RE: DEBTOR ANTHONY THOMAS'S MOTION FOR JUDICIAL NOTICE**

**12**

MS. COPPA-KNUDSON: It's in Portola?

MR. THOMAS:        It's —

MS. COPPA-KNUDSON: Where is it?

MR. LUKAS:         What county is it in?

MS. THOMAS:        Plumas County.

MR. LEHNERS:       It is in — Portola Valley is in Plumas County?

MS. THOMAS:        It's not Portola Valley.

MR. LEHNERS:       Oh, I thought you said Portola Valley.

MS. THOMAS:        It's Portola, California.

MS. COPPA-KNUDSON: Portola. MR. LEHNERS: Portola.

MS. THOMAS:        It's a little, tiny railroad town.

MS. COPPA-KNUDSON: Not -- no, no, no, no. It's out by Quincy.

MR. LUKAS:         Yeah, railroad town. I thought it was.

MS. COPPA-KNUDSON: It's out by Quincy.

MR. LUKAS:         Yeah, exactly right, Quincy.

MR. LEHNERS:       Makes sense, okay.

MS. COPPA-KNUDSON: But it --

MR. LUKAS:         Feather River College.

MS. COPPA-KNUDSON: Yeah. So that deed was never transferred?

MS. THOMAS:        She holds it.

MR. THOMAS:        It was transferred. We transferred it four years ago.

MS. COPPA-KNUDSON:  But if she didn't record the deed, it's not -- it's still in your name.

MR. THOMAS:        I don't know whether she recorded it or not. I just know that we signed it over to us, and they sent us -- they keep sending us these things, so we -- it's part of our creditor --

MS. COPPA-KNUDSON: Obviously, it wasn't recorded.

MR. LEHNERS:       Wasn't recorded.

MR. LUKAS:         And so you're getting still property tax bills  for that property.

---

**12**

MS. COPPA-KNUDSON: What about mortgage? Is there any money owing on that?

MS. THOMAS:       No, we bought it for $12,000. It's a shell of a house. It's not --

MS. COPPA-KNUDSON: And is she living there?

MS. THOMAS:       Nobody lives there. There's nothing in it. It's just walls. It's completely gutted. We bought it, it was a teardown. So we bought it and did a little work on it, and then we didn't have the money to finish it or the time. We were just

MS. COPPA-KNUDSON:   And why did you deed it to her?

MS. THOMAS:       Because we owed Dorothy money, and that's the only asset we had at the time.

MR. THOMAS:       When we deeded it over to her.

MS. COPPA-KNUDSON: And do you -- to your knowledge, has she attempted to try to sell this?

MS. THOMAS:       She's talked about it, but she hasn't sold it.

MR. THOMAS:       It's probably not going to sell.

MS. THOMAS:       It's not worth a lot.

MR. THOMAS:       It's not worth anything.

MS. COPPA-KNUDSON: Well, I don't know if the land is worth something --

MR. LUKAS:        Let's ask about what's

MS.COPPA-KNUDSON:   Okay, sorry.

MR.LUKAS:   You said it was worth $200,000.

MS. THOMAS:   No.

MR. THOMAS:   No, I didn't.

LUKAS:   Oh, well --

MS. THOMAS:   We'd never say that.

MR. LUKAS:        Counsel, why don't you look at the schedules and statements what they put as the value of that.

**PROPOSED ORDER RE: DEBTOR ANTHONY THOMAS'S MOTION FOR JUDICIAL NOTICE**

| | | |
|---|---|---|
| MS. THOMAS: | No, we would not put that. |
| MR. THOMAS: | We bought it for 12 grand. |
| MR. LUKAS: | I'm just saying you put 200- onyour schedules and statements. |
| MS. THOMAS: | Well, we didn't put that. |
| MR. LUKAS: | Look at the transfers. It's $200,000. |
| MR. LEHNERS: | Yeah, residence valued at 25,000. |
| MR. LUKAS: | And that's a motorcycle, isn't it? |
| MR. THOMAS: | No, other transfers. Residence value |
| MS. ESTES: | $200,000 is the amount that they borrowed from their mom. |
| MR. LUKAS: | Oh, okay, okay. Sorry for the -• |
| MS.COPPA-KNUDSON: | Oh, okay. |
| MS. ESTES: | Sorry about the mathing. It's -- |
| MR. LEHNERS: | Residence valued at 25,000 in Portola, transferred January of '08. 200,000 appears here. Do you know why? |
| MR. THOMAS: | That's what we borrowed from my mom. |
| MR. LEHNERS: | Okay. |
| MR. LUKAS: | Okay. So |
| MR. LEHNERS: | It would appear that the 200,000 is the amount of the debt. The 25,000 is the value of the real estate. Mr. Thomas, is that correct? |
| MR. THOMAS: | Yes. |
| MR. LUKAS: | Okay. So residence value is 25,000. |
| MS. THOMAS: | Yeah. I mean |
| MR. LUKAS: | Give or take. Okay, fair enough. I didn't do the schedules and statements. I didn't sign them under penalty of perjury. |
| MR. LEHNERS: | Just ask questions. |
| ... | |
| MS. COPPA-KNUDSON: | And -- no. I need -• |
| MR. SILVER: | Emails. |

| 12 | MS. COPPA-KNUDSON:   the information on the tax bill -- copy of the tax bill on the Portola property so that I can go ahead and look into that.  If that's never been transferred, it's an asset of Thomas, I believe, not AT Emerald.<br><br>MR. LEHNERS:       Can I get you the AT -- assessor's parcel number?<br><br>MS. COPPA-KNUDSON:   It would be helpful if I just had a copy of the tax bill.  Really helpful.  I mean, and that'll have the assessor's parcel number on it. And, you know, I just recall that I reviewed all the files from the U.S. Trustee's office, and I did not see any bank statements for AT Emerald.<br><br>MR. LEHNERS:       Okay.  We'll get them. | | |
|---|---|---|---|
| 13 | NOTE - EXHIBITS 13-17 ARE FOUND IN PAGES 1-98 OF DE 395-1 WITH PAGE NUMBERS AS FOLLOWS: | | |
|  | CA Law Transfer by Deed Osterberg v. Osterberg (1945) 68 Cal.App.2d 254 | 01-13 | |
| R13.1 | Request that the Court take Judicial Notice of California Law regarding the validity of transfer by deed: | | ☐  ☐ |
|  | In California the acknowledgment of a deed is not essential to its validity. The acknowledgment of a deed is merely evidentiary in character and is required only to entitle it to be recorded so as to render it competent evidence of the conveyance without further proof. (Williston v. City of Yuba City, 1 Cal.App.2d 166, 171; Kimbro v. Kimbro, 199 Cal. 344; Dutton v. Locke-Paddon, 37 Cal.App. 693 | | ☐  ☐ |

PROPOSED ORDER RE: DEBTOR ANTHONY THOMAS'S MOTION FOR JUDICIAL NOTICE

| | 14 | Blackburn v. Drake (1963) 211 Cal.App.2d 806 | 15-28 | | |
|---|---|---|---|---|---|
| | | Request that the Court take Judicial Notice of the California Law of Deeds: | | | |
| | R14.1 | Delivery or absence of delivery is a question of fact to be determined by the trial court. (Condencia v. Nelson, 187 Cal.App.2d 300, 302; Chaffee v. Sorensen, 107 Cal.App.2d 284, 288 | | ☐ | ☐ |
| | R14.2 | Intent to pass title is an essential element of delivery and the question of intent is a question of fact to be determined by the trial court or jury upon all the circumstances surrounding the transaction. (Jones v. Jones, 183 Cal.App.2d 468, 472; Williams v. Kidd, 170 Cal. 631, 638; Priest v. Bell, 123 Cal.App.2d 528 531; Donahue v. Sweeney, 171 Cal. 388.) | | ☐ | ☐ |
| | R14.3 | The important intention is that of the grantor and not that of the grantee. (Huth v. Katz, 30 Cal.2d 605, 608.) | | ☐ | ☐ |
| | R14.4 | [R]ecordation is not essential to the validity of a deed and that the failure to record in and of itself does not vitiate delivery or the intent to make a present transfer (Belli v. Bonavia, supra, 167 Cal.App.2d 275, 280; Stewart v. Silva, supra, 192 Cal. 405, 410) | | ☐ | ☐ |
| | 15 | Gonzales v. Gonzales (1968) 267 Cal.App.2d 428 | **29-39** | | |
| | | Request that the Court take Judicial Notice of the following points of California law: | | | |
| | R15.1 | a finding of effective delivery was not precluded by the fact that the deed was not acknowledged (Osterberg v. Osterberg, 68 Cal.App.2d 254, 262) [fn. 6] or by the fact that it was not recorded prior to Sotero's death. (Blackburn v. Drake, 211 Cal.App.2d 806, 814.) [fn. 7] | | ☐ | ☐ |

| | | | | |
|---|---|---|---|---|
| 16 | Transcript of Deposition of Anthony Thomas | 40-52 | |
| | Request that the Court take Judicial Notice of the following excerpts from the transcript of the Deposition of Anthony Thomas taken on 1-15-2010 re: Dyslexia: | | |
| R16 | Transcript - p.4: DE 395-1 p. 44 of 98 line 6: | 44 | ☐ ☐ |
| | EXAMINATION BY MR. SCANLAN: | | |
| | Transcript – p.10 DE 395-1 p.45 of 98 lines 18-21: | 45 | |
| | Q. Okay. Do you have any reading disabilities?<br>A.  I have a hard time recognizing documents<br>Q.  And why is that?<br>A.  Because I'm dyslexic, very dyslexic, and it's hard for<br>   me. | | |
| 16 | Transcript – p.163 DE 395-1 p. 48 of 98 lines 18-25: | 48 | |
| | Q.  Is it your custom and practice to sometimes sign things that are not true and correct?<br>A.   No. It's -- I'm dyslexic and sometimes I don't<br>  understand, don't always get the gist of something<br>    I'm reading.<br>Q.  I'm not being facetious at all.  Because of some<br>    things that Mr. Gardiner said, which I'll go into<br>    in a minute, do you have difficulty reading | | |
| 16 | Transcript p. 164 DE 395-1 p. 49 of 98, lines 1-25: | 49 | |
| |     and understanding English?<br>A.   I have difficulties reading, yes, but not<br>    understanding English in a verbal manner, but I<br>    don't always pick up everything when I am<br>    reading it.<br>Q.  I will represent to you that Mr. Gardiner said to me<br>    and to Mr. Tersini that you had sometimes said you<br>    are illiterate or that it was his opinion that you were<br>    illiterate.  Fair statement or an unfair statement?<br>A.  I don't think I am illiterate.  Just because somebody,<br>    you know — different people learn different things<br>    different ways, and I don't pick up things particularly<br>    well on documentsand don't always catch everything<br>    on a document that's written.  So I've been dyslexic<br>    my whole life.  It's been a difficulty for me.<br>    Everybody excels in life a different way.  I couldn't<br>    excel through the college and all that stuff.  I<br>    excelled through business.<br>Q.  I'm with you and I truly did not mean that to be --<br>    members of my family are dyslexic.  I understand<br>    the way it works.  The only reason I bring it up is I | | |

| | | | | |
|---|---|---|---|---|
| 16 | don't know whether there are going to be other documents<br><br>TRANSCRIPT p. 165 DE 395-1 p. 50 of 98 - lines 1-16:<br><br>where you say I didn't understand that, and I wanted to put it out on the table.<br><br>    Your dyslexia was not severe enough to prevent you from graduating from high school Right? A. No. It wasn't but it wasn't easy for me to get through high school. I didn't get through high school -- you know, I had to work a lot harder at it than most people, and English wasn't my strong suit, you know. I took different classes that they provided so I could get curriculum in the school so I could get my graduation, but it wasn't easy for me. My skill set in spelling in all that stuff is probably not as good as my kids'and they are young kids, but it doesn't mean that, you know, I'm not smart. | | | |
| 16.1<br><br>R16.1 | US Senate Resolution 576 - September 26, 2016<br><br>Request that the Court take Judicial Notice of the U.S. Senate Definition of Dyslexia:<br><br>[D]yslexia is --<br><br>(1) defined as an unexpected difficulty in reading for an individual who has the intelligence to be a much better reader; and<br><br>(2) most commonly due to a difficulty in phonological processing (the appreciation of the individual sounds of spoken language), which affects the ability of an individual to speak, read, spell, and often, learn a second language; | 53-54 | ☐ | ☐ |
| 16.2 | CA Dept of Education Dyslexia Guidelines<br><br>Request that the Court take Judicial Notice of the State of California's Department of Education Dyslexia Guidelines | **55-76** | ☐ | ☐ |
| 17 | Excerpts from 8-10-2018 hearing | **77-98** | ☐ | ☐ |

| NOTE | The following Exhibits were submitted on 9-13-2018 as Docket Entry 406 pages 9-171 as follows: | DE 406 Page # | | |
|---|---|---|---|---|
| 18 | § 30:29: Legitimate disputes, 3A Bankr. Service L.Ed. § 30.29<br><br>Summary of Law re: Legitimate Disputes over Title re: Turnover Motions | 09-10 | | |
| R18.1 | Turnover is not appropriate where there is a legitimate dispute over ownership of the property In re: CONEX HOLDINGS (2014) 518 B.R. 792 | | ☐ | ☐ |
| R18.2 | Turnover is not appropriate when thee is a legitimate dispute over ownership of the property In re: American Home Mortg. Holding (2011) 458 B.R. 161 | | ☐ | ☐ |
| R18.3 | Turnover actions under the Bankruptcy Code cannot be used to demand assets whose title is in dispute In re: W.S.F.-WORLD SPORTS FANS, LLC (2009) 367 B.R. 786 | | ☐ | ☐ |
| R18.4 | Trustee's turnover power can be improperly invoked, especially when it is used as a Trojan Horse for bringing garden variety contract claims, when the property is not already property of the estate, or when the turnover statute is used to recover assets with disputed title when the estate's claim of overship is legitimately debatable.  In re: Soundview Elite Ltd. (2016) 543 B.R. 78 | | ☐ | ☐ |

**PROPOSED ORDER RE: DEBTOR ANTHONY THOMAS'S MOTION FOR JUDICIAL NOTICE**

| 19 | In re: CONEX HOLDINGS (2014) 518 B.R. 792 | 11-28 | ☐ | ☐ |
|---|---|---|---|---|
| R19.1 | Request that the Court take Judicial Notice of the following statement of the Law re: Turnover Motions under Section 542 of the Bankruptcy code: | | ☐ | ☐ |
| R19.2 | "Section 542 provides the cause of action for turnover, which requires an entity in possession of property of the estate to deliver the property or value thereof to the trustee.FN42. A properly pleaded complaint asserting a claim for turnover must allege an undisputed right to recover the claimed debt. FN43 | | ☐ | ☐ |
| | FN 43: In re: Hechinger Investment Co. of Delaware Inc., 282 B.R. 149, 162 (Bankr. D. Del. 2002). | | | |
| R19.3 | Turnover is not appropriate when there is a legitimate dispute over ownership of the property.FN 44 | | ☐ | ☐ |
| | FN44: Giuliano v. Fairfield Health Care Centers Limited P'ship (In re Lexington Healthcare Grp., Inc.) 363 B.R. 713, 716 (Bankr. D. Del. 2007)" | | | |
| **20** | In re: American Home Mortg. Holding (2011) 458 B.R. 161 | 29-43 | ☐ | ☐ |
| | Request that the Court take Judicial Notice of the holding as in Exhibit 19 above: | | | |

**PROPOSED ORDER RE: DEBTOR ANTHONY THOMAS'S MOTION FOR JUDICIAL NOTICE**

| 21 | In re: STANCIL (2012) 473 B.R. 478 | 44-51 | | |
| | Request that this Court take Judicial Notice of the law re: Turnover Motions when there is a legitimate dispute over title: | | | |
| R21.1 | "In support of its argument that the turnover provisions set forth in 11 U.S.C. Section 542 do not apply to assets whose title is in dispute, 12th Street Real Estate, LLC observes that | | ☐ | ☐ |
| R21.2 | "the law is settled that  'the law is well settled that the debtor cannot use the turnover provisions to liuidate contract disputes or otherwise demand assets whose title is in dispute.' U.S. v. Inslaw, Inc., 932 F.2d. 1467 (D.C. Cir. 1991) | | ☐ | ☐ |
| R21.3 | Nonetheless, the dispute as to title to the assets must be "legitimate"or "bona fide"for a turnover motion to be considered premature. See Krasny v. Bagga (In re Januna Real Estate, LLC) 357 B.R. 324, 333-34 (Bankr. E.D.Pa.2006) | | ☐ | ☐ |
| R21.4 | ("[T]urnover is not proper where a bona fide dispute exists.").... Hassett v. BancOhio Nat'l Bank (In re CIS Corp.), 172 B.R. 748,760 (S.D.N.Y.1994) | | ☐ | ☐ |
| R21.5 | ("[A]n action should be regarded as a turnover only when ther is no legitimate dispute over what is owed to the debtor."). In re: STANCIL 473 B.R. @ 483 | | ☐ | ☐ |

| 22 | **In re: W.S.F.-WORLD SPORTS FANS, LLC** (2009) **367 B.R. 786** | 52-61 | | |
|---|---|---|---|---|
| | Request that the Court take Judicial Notice of the law regarding Turnover Motions: | | | |
| **R22.1** | '[i]t is settled law'that (a) turnover actions under Section 542 cannot be used 'to demand assets whose title is in dispute." In re Allegheny Health Educ. & Research Found., 233 B.R. 671.677 (Bankr.W.D.Pa.1999) (quoting, U.S. v. Inslaw, Inc., 932 F.2d 1467, 1472 (D.C. Cir. 1991). | | ☐ | ☐ |
| **R22.2** | "[A]ctions seeking a turnover of assets whose title is in dispute can only constitute, at the most, noncore rather than core proceedings given that such actions are not true turnover actions within the meaning of Section 542(a) and 28 U.S.C. Section 157(b)(2)(E)." id. at 677-678 (citations omitted)." | | ☐ | ☐ |
| 23 | In re: Joey's Steakhouse, LLC (2012) 474 B.R. 167 | 62-86 | | |
| | Request that the Court take Judicial Notice of the Law governing Turnover Motions: | | | |
| R23.1 | "The essential element of a turnover action is that the property sought by the trustee is, in fact, property of the estate. In re White, 389 B.R. 698, 699 (9th Cir. BAP 2008). | | ☐ | ☐ |
| R23.2 | However a turnover action is not proper where a bona fide dispute exists. See In re Allegheny Health Education and Research Foundation, 233 B.R.671, 677 (Bankr.D.Pa.1999) citing U.S. v. Inslaw Inc., 932 F.2d 1467, 1472 (D.C. Cir. 1991) "It is settled law that turnover actions under Section 542 cannot to be used to demand assets whose title is in dispute") see also In re 2045 Wheatsheaf Associates 1998 W: 910228 *10 (Bankr.E.D.Pa.1998) (quoting In re Johnson, 215 B.R. 381, 386 (Bankr.N.D.Ill.1997), to the effect that | | ☐ | ☐ |
| R23.3 | "[t]urnover under Section 542 of the Code 'is not intended as a remedy to determine disputed rights of parties to property.  Rather it is intended as a remedy to obtain what is acknowledged to be property of the bankruptcy estate.'"); | | ☐ | ☐ |

| 24 | In re: Sapphire Resources LLC (2016) 2016 WL 320823 | 87-100 | | |
| | Request that the Court take Judicial Notice of the law regarding Turnover Motions under Section 542(a) and the law requiring the Trustee having the burden of proving the estate is entitled to turnover: | | | |
| R24.1 | "The trustee has the burden of proving the estate is enttiled to turnover." In re Jacobson, 676 F.3d 1193, 1200-1201 (9th Cir. 2012), citing 5 Resnich and Sommer, Collier on Bankruptcy, 542.02 (16th ed. 2011). | | ☐ | ☐ |
| R24.2 | To support a cause of action for turover pursuant to Section 542 of the Bankruptcy Code, the bankruptcy trustee has the burden of proof, by a preponderance of the evidence, to establish that | | ☐ | ☐ |
| | (1) the property is in the possession, custody or control of a noncustodial third party entity; | | | |
| | (2) the property constitutes property of the estate; | | | |
| | (3) the property is of the type | | | |

| 25 | | **In re: Pali Holdings, Inc.** (2013) 488 B.R. 841 | **101-110** **149-154** | |
|---|---|---|---|---|
| | | Request that the Court take judicial notice of the law regarding the proper invocation of the Turnover law: | | |
| | R25.1 | "[13] When the turnover power is property invoked FN 39 | | ☐ ☐ |
| | | FN 39:  Of course, the turnover power can be improperly invoked, especially when it is used as a Trojan Horse...; when the property in question is not already property of the estate; or when the turnover statute is used to recover assets with disputed title when the estate's claim of ownership is legitimately debatable. It is well established that the turnover power may not be used for such purposes. See, e.g., Fairfield Sentry, 458 B.R. at 683 ("Numerous courts have therefore held that an action is non-core when property which is the subject of a significant dispute between the parties is sought to be recovered through a turnover action.... These actions are subject to significant dispute, resolution of which will determine whether the funds redeemed are in fact property of the Funds' estates.") (citations and internal quotations omitted; emphasis added); Savage v. Mandl (In re Teligent), 325 B.R. 134, 137-38 (Bankr.S.D.N.Y.2005) (Bernstein, C.J.) ("Teligent") (citing "settled law that the debtor cannot use the turnover provisions to liquidate contract disputes or otherwise demand assets whose title is in dispute"; other law holding that an action to determine the amount of a claimed debt to the estate that is, as yet, wholly disputed and unliquidated cannot properly be styled an action to turn over estate "property"; and other law holding that an action should be regarded as a turnover "only when there is no legitimate dispute over what is owed to the debtor") (citations omitted); Shea & Gould v. Red Apple Companies, Inc. (In re Shea & Gould), 198 B.R. 861, 867 (Bankr.S.D.N.Y.1996) (Garrity, J.).... | | |
| | R25.2 | Judge Bernstein recognized in Teligent that exercising jurisdiction over an improperly brought turnover action could eviscerate the Supreme Court's holding in Marathon by allowing the bankruptcy court to exercise judicial power reserved for Article III courts. 325 B.R. at 138. Thus, that the turnover power be properly invoked is integral to the bankruptcy court's ability to constitutionally exercise its in rem jurisdiction in entering a final judgment. | | ☐ ☐ |

| 26 | | In re: Soundview Elite Ltd. (2016) 543 B.R. 78 | **155-171** **111-148** | | |
|---|---|---|---|---|---|
| | | Request that this Court take Judicial Notice of the underpinnings of the Turnover Statute and the Limits of the Turnover Law: | | | |
| | R26.1 | 28 U.S.C. § 157, in recognition of bankruptcy courts' historic in rem jurisdiction, and bankruptcy courts need to bring in and administer property of the estate, lists "orders to turn over property of the estate" as included within core proceedings.[98] | | ☐ | ☐ |
| | R26.2 | "mere characterization of an action as a complaint for turnover does not mean that it is a turnover action pursuant to 28 U.S.C. § 157(b)(2)(E))."[99] | | ☐ | ☐ |
| | | FN 99: [99] Shea & Gould v. Red Apple Companies, Inc. (In re Shea & Gould), 198 B.R. 861, 865 (Bankr.S.D.N.Y.1996) (Garrity, J.) ("Shea & Gould"). | | | |
| | R26.3 | To have the statutory and constitutional power to issue a final order that the Turnover Power provides,[100] a bankruptcy judge does not need to conclude that the estate will prevail, either in full or in any particular respect. But the bankruptcy judge does need to be comfortable that the Turnover Power has been properly invoked. This presents a threshold issue that doesn't impede the Trustee's ability to ultimately win, but may require this Court to make a *97 Report and Recommendation before a final order can be entered by the district court. | | ☐ | ☐ |
| | | FN 100: Stern makes clear that the constitutional and statutory limits are not necessarily the same, and that a claim that is a core matter under 28 U.S.C. § 157 may nevertheless be beyond a bankruptcy judge's constitutional power to issue a final order. But the distinction does not matter here. | | | |

PROPOSED ORDER RE: DEBTOR ANTHONY THOMAS'S MOTION FOR JUDICIAL NOTICE

| | | | | |
|---|---|---|---|---|
| | Where the turnover power is properly invoked, it is simply an effort to recover property - or on property - that is already property of the estate. That invokes the court's in rem jurisdiction over the bankruptcy res.[106]<br><br>But as this Court explained in Pali Holdings, "the turnover power can be improperly invoked, especially when it is used as a Trojan Horse for bringing garden variety contract claims; when the property in question is not already property of the estate; or when the turnover statute is used to recover assets with disputed title when the estate's claim of ownership is legitimately debatable. It is well established that the turnover power may not be used for such purposes."[107] | | | |
| 27 | Request for Judicial Notice of the US Code § 541(d) limitation on property of the estate: | | | |
| R27.1 | Under § 541(a), the commencement of a bankruptcy case creates an estate, which includes, subject to certain exceptions, "all legal or equitable interests of the debtor in property as of the commencement of the case," regardless of where the property is located or who holds it. 11 U.S.C. § 541(a)(1). However, | | ☐ | ☐ |
| R27.2 | "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold."<br><br>11 U.S.C. § 541(d). Thus, | | ☐ | ☐ |
| R27.3 | "the bankruptcy estate does not include property of others in which the debtor has some minor interest such as a lien or bare legal title."<br><br>Sanyo Elec., Inc. v. Howard's Appliance Corp. (In re Howard's Appliance Corp.), 874 F.2d 88, 93 (2d Cir. 1989) (quotation and citations omitted). | | ☐ | ☐ |

Dated: _____

Hon. Bruce T. Beesley
U.S. Bankruptcy Judge

PROPOSED ORDER RE: DEBTOR ANTHONY THOMAS'S MOTION FOR JUDICIAL NOTICE