

1 Anthon y G. Thomas
7725 Peavine Peak Court
2 Reno, NV 89523
Tel: (408) 640-2795
3 E-mail: atemerald2@gmail.com

4 Debtor In Propria Persona

RECEIVED
AND FILED

2018 OCT -4  PM 3: 50

U.S. BANKRUPTCY COURT
MARY A. SCHOTT, CLERK

5 **UNITED STATES BANKRUPTCY COURT**

6 **DISTRICT OF NEVADA - RENO**

| | |
|---|---|
| 7 IN RE: | ) Case No. BK-N-14-50333-BTB |
| | ) Case No. BK-N-14-50331-BTB |
| 8 ANTHONY THOMAS and | ) (Jointly Administered) |
| | ) CHAPTER 7 |
| 9 WENDI THOMAS | ) |
| 10 AT EMERALD, LLC | ) **DECLARATION OF ANTHONY THOMAS** |
| | ) Date: October 19th 2018 |
| 11   Debtors. | ) Time: 10:00 a.m. |
| | ) Judge: Hon. Bruce T. Beesley |
| 12  | ) Courtroom: 2 |
| 13  | ) |

14  I, Anthony G. Thomas declare:

15  1. I am submitting this Declaration in support of my late filed Memorandum

16 of Points & Authorities in suppport of my Motion requesting Judicial Notice of Law &

17 Facts and my supplemental opposition brief and supplemental request for Judicial

18 Notice of Law & Facts.  I understand that the Court ordered me not to file any further

19 documents with the Court unless I submitted a copy of my parents deed to this Court.  I

20 am attaching a printout of a photograph of:

21 1. The original Deed that is currently in the possession of my parents and

22 2. The Deed that was given to them in January of 2008.

23  A true and correct photograph of both documents is printed and attached to this

24 Declaration as Exhibit 1 and is incorporated herein by reference.

25  2. I am only able to submit  copies of the above-referenced Deeds, as my

26 parents refuse to hand over the originals to this Court upon advise of counsel.  I would

27 like to add that when I visited the office of my former counsel, Mr. Michael Lehners,

28 Esq. on the afternoon of August 10th 2018, he also warned me not to bring the original

1   Deed into the State of Nevada.

2       3.      I am still in the process of securing counsel, and will advise the Court as

3   soon as I have done so.  In the meantime, while preparing my Memorandum of Points

4   & Authorities in support of my Motion requesting Judicial Notice of the law and the facts

5   in this case, I came across 2 9th Circuit bankruptcy case - One of them, Patel v. Rupp.

6   (Dist.Court, D. Utah 1996) 195 B.R. 779 in discussing Utah state law that is virtually

7   identical to California state law regarding actual, constructive and inquiry notice states:

8       "...Appellee is correct in stating that **a trustee having inquiry notice of a
        prior, unrecorded conveyance, cannot avoid that conveyance under
9       Section 544**"...[Emphasis added]

10      Patel v. Rupp. (Dist.Court, D. Utah 1996) 195 B.R. 779 at 782.

11  The Court in Patel further states:

12      "At the time of bankruptcy filing, a trustee assumes the position of a bona
        fide purchaser ("B.F.P.") of real property from the debtor and may avoid
13      any liens on, or transfers of, the property that a B.F.P. could avoid under
        state law. 11 U.S.C. § 544(a)(3); Watkins v. Watkins, 922 F.2d 1513,
14      1514 (10th Cir. 1991).  The trustee however, assumes the B.F.P. subject
        to the state's notice laws. FN1 See e.g., Watkins, 922 F.2d at 1514
15      (**constructive notice imposed by state law will destroy the B.F.P.'s
        priority claim to the property and, as a result, the trustee's avoidance
16      power under Section 544(a)(3)**. [Emphasis added]

17      Patel v. Rupp. (Dist.Court, D. Utah 1996) 195 B.R. 779.

18      4.      Of course, the Trustee and the attorney for the Trustee both had actual

19  notice of the January 2008 transfer by Deed by the Debtors to debtor Anthony

20  Thomas's parents, Eli & Dorothy Thomas, as disclosed in response to Question 10 of

21  the BK Petition Statement of Financial Affairs, and as further disclosed in response to

22  detailed questioning by the U.S. Trustee at the § 341 Meeting of Creditors held on 12-4-

23  2014, as well as constructive notice of the transfers under California law.

24      5.      California law defines both "actual" notice and "constructive" notice under

25  the provisions of California's Civil Code §§ 18-19 as follows:

26  **CALIFORNIA CIVIL CODE § 18**

27  Notice is:

28  1.      Actual—which consists in express information of a fact; or,

1    2.    Constructive—which is imputed by law.

2    (Enacted 1872.)

3    **Civil Code § 19**

4    Every person who has actual notice of circumstances sufficient to put a
     prudent person upon inquiry as to a particular fact has constructive notice
5    of the fact itself in all cases in which, by prosecuting such inquiry, he or
     she might have learned that fact.

6
     (Amended by Stats. 2017, Ch. 561, Sec. 15. (AB 1516) Effective January
7    1, 2018.)

8    6.    The issue of whether the Trustee has powers under § 544(a)(3) that can

9    avoid a transfer by Deed that was disclosed on the initial BK petition filed on 3-4-2014,

10   more than 8 months before the case was converted from Chapter 11 to Chapter 7 and

11   the current US Trustee appointed and fully disclosed at the 341 meeting of creditors

12   was first raised in the Trustee's Reply Brief filed on 9-11-2018 as DE 403 on p. 3 where

13   he states:

14   "The Trustee contends that the legal issue in this case is whether her
     rights under § 544 are superior to whatever rights might be asserted by Eli
15   & Dorothy Thomas as the holders of a purported, unrecorded deed to the
     Portola Property."
16

17   7.    This issue was also raised by the Court and is memorialized in the

18   Transcript of the Hearing held on 9-13-2018 in Reno.    Attached as Exhibit 2 to this

19   Declaration are true and correct copies of excerpts from the Transcript of the hearing of

20   9-13-2018, where the issue regarding the § 544(a)(3) strong arm powers was raised by

21   the Court where the Court expressed the opinion that it was siding with Attorney

22   Hartman's above representation of the law, despite the existence of at least 2 9th Circuit

23   legal opinions to the contrary, that I am attaching to this Declaration and for which I am

24   requesting the Court take judicial notice of.

25   8.    Unlike Mr. Hartman and the Trustee in this case, who refused to grant a

26   continuance to allow me to obtain legal counsel to oppose the Turnover Motion in light

27   of my counsel's Motion to withdraw from the case, I am willing to stipulate to an

28   extension of time and agree to continue the 10-19-2018 hearing date, if Mr. Hartman

DECLARATION OF ANTHONY THOMAS

1  requires additional time to counter my late filing of my Memorandum of Points &

2  Authorities, and my new submission of law that has come to my attention, starting with

3  the 2 9th Circuit cases that hold that when a Trustee has actual or constructive

4  knowledge of adverse claims to title, the Trustee does not have the status of a bona

5  fide purchasor for value as defined under § 544 (a)(3).  In one of those 9th Circuit

6  reported Bankruptcy cases,  empower the Trustee to have superior title over that

7  asserted by Debtor Anthony Thomas's parents that was disclosed both in answer to

8  Question 10 of the Statement of Financial Affairs in both the original BK petition filed on

9  3-4-2014 as well as the Amended Petition, that was fully disclosed at the § 341 meeting

10  of creditors held on 12-4-2014, as belatedly admitted by attorney for the Trustee

11  Hartman in his papers filed on 9-11-2018, although no such correction of false

12  statements and misrepresentations made on the record by the Trustee has ever been

13  corrected by her, and the falsehoods asserted by her, including her false charge that

14  the Debtor's had concealed the Portola property from her, and her new baseless

15  charges that the Debtors were either residing in the property or renting out the premises

16  and failed to account for the rental income to the Trustee.

17      9.      At the hearing on 9-13-2018, the Court[1],, stated on p.56 of the Transcript:

18  "7 THE COURT:  So stop.  Stop.  Whether -- there's no
   8 allegation at this point that you concealed it.  That's not an
19  9 issue in this case.
   10 MR. THOMAS:  Okay.  Then let's --
20  11 THE COURT:  You did not conceal it.  It was on your
   12 statements and schedules.  You did not conceal the transfer.
21  13 MR. THOMAS:  Okay.
   14 THE COURT:  That's not part of this case.
22  15 MR. THOMAS:  Okay.  If you go to page 7 --
   16 THE COURT:  Hold on.
23  17 MR. THOMAS:  -- I state --
   18 THE COURT:  Hold on.  Stop.  On page 7, you list a
24  19 bunch of cases.
   20 MR. THOMAS:  Yes.  And all these cases have to do
25  21 with the turnover motion if there's a dispute.  And if you look
   22 at Mr. --
26  23 THE COURT:  So what is the dispute?

27  _____

28  [1]  in direct contravention of the holding in the 9th Circuit Bankruptcy case of In re: Weisman
     (1991) 131 B.R. 148

- 4 -

**DECLARATION OF ANTHONY THOMAS**

24 MR. THOMAS:  Mr. Hartman and --
25 THE COURT:  What is the dispute?

P.56:

1 MR. THOMAS:  -- Knudson say that there's a dispute.
2 They put it in their brief, in the trial brief.
3 THE COURT:  Stop.  Answer my question.  What is the
4 dispute?
5 MR. THOMAS:  That my parents own the property and
6 they don't have a right to have it turned over because this
7 isn't a proper procedure for a turnover motion if there's a
8 dispute over the property.  My parents are claiming that they
9 own the property, and he's claiming that --
10 THE COURT:  Well, how about 544(a)(3) that says the
11 trustee has a hypothetical right as a bona fide purchaser of
12 value without notice to recover property?  Please turn your
13 phone off, sir.
14 MR. THOMAS:  I'm turning it off right now.
15 THE COURT:  So in this circumstance, there was not
16 deed that's filed in California that shows your parents own the
17 property.  And, therefore, under 544(a)(3), the trustee can
18 turn it over to her, so.
19 MR. THOMAS:  Your Honor, they can't because the deed
20 was conveyed, and I cited plenty of law in my brief saying --
21 THE COURT:  You've cited plenty of California law,
22 and that's absolutely correct.  But we're dealing with
23 bankruptcy law here.
24 MR. THOMAS:  I understand that, but the property is
25 in California, and California law --

P.57:

1 THE COURT:  Doesn't trump federal law.
2 MR. THOMAS:  Well, and I put a bunch of cases in
3 there if you would read them all about --
4 THE COURT:  You gave them to me 21 minutes before the
5 hearing started.
6 MR. THOMAS:  No, I -- no, I put them in the judicial
7 notice that I'd like you to take when I filed my judicial
8 notice motion that I want you to take judicial notice of the
9 law so that you don't just rule any way you want.
10 THE COURT:  Here's what I'll do.  I will read the
11 cases you have cited.  I will continue this for a week.  You
12 will be back here in a week at 1:30 in the afternoon, and I
13 will make my decision.
14 MR. THOMAS:  Your Honor, I still want to go --
15 THE COURT:  Stop.
16 MR. THOMAS:  I want to make sure that we have a clear
17 record that I put a bunch of cases in there that says that this
18 is not the proper procedure for a turnover motion if there's a
19 dispute.  And the case that they cited, the Chase case, doesn't
20 have anything to do with it.  This should be turned over in my
21 favor today because the Chase case that they cited is a lot of
22 bona fide purchaser.  There's no bona fide purchaser.  My

- 5 -

**DECLARATION OF ANTHONY THOMAS**

23 parents have had that deed since 2008 and it was conveyed
24 properly back then.  Just -- and the law says they don't have
25 to -- they didn't have to register it for it to be their

p.58:

1 property.
2 THE COURT:  Well, that would be perfectly correct if
3 you were in state court in California, but that's not where you
4 are.  You are in federal court in bankruptcy court where the
5 trustee has certain rights to set aside transfers.
6 MR. THOMAS:  I think in 1856 or something like
7 that --
8 THE COURT:  1856 --
9 MR. THOMAS:  --  I'm not sure exactly on the law.
10 THE COURT:  1856 was before the enactment of the
11 Bankruptcy Code.
12 MR. THOMAS:  Well, I understand that, but Nevada took
13 over the English law and so did California.  And in English
14 law, based on English law that I put in my brief that if a deed
15 is conveyed and it's conveyed with the intent, which it was,
16 and it was given to them for full value, then they have legal
17 title to that property.  It doesn't have to be reported and the
18 law --
19 THE COURT:  Except that the trustee has avoiding
20 powers that apply.
21 MR. THOMAS:  Not if there's a dispute.  You can't
22 give him the property in a turnover motion if there's a dispute
23 over the property, and there is a dispute.
24 THE COURT:  I do not think you are correct.
25 MR. THOMAS:  Well --

UNDER CALIFORNIA LAW, ACTUAL KNOWLEDGE OR CONSTRUCTIVE
KNOWLEDGE DEPRIVES THE TRUSTEE OF BONA FIDE PURCHASER STATUS:

9.      In 1961, the California Court of Appeals held:

"the court's finding that "Magic Well" has actual notice of the "Mauerhan"
deed of trust removes it from the status of a purchaser in good faith. (*Slaker*
v. *McCormick-Saeltzer Co.*, 179 Cal. 387, 388; *Bell* v. *Pleasant*, 145 Cal. 410,
413 [78 P. 957, 104 Am.St.Rep. 61] ; *Sieger* v. *Standard Oil Co.*, 155 Cal.
App.2d 649, 656 [318 P.2d 479] .) The evidence not only supports an
inference that Mr. May, the president of "Magic Well," had actual notice of the
existence of the "Mauerhan" deed of trust, because it was the subject of the
discussion in connection with the "Mauerhan" demand for a completion bond,
but also supports an implied finding that he had constructive notice thereof
under "the general rule that whatever is sufficient to direct the attention of a
purchaser or encumbrancer to the prior rights or equities of third persons, and
to enable him to ascertain their nature by inquiry, will operate as a notice of
the facts." ( *Olson* v. *Cornwell*, 134 Cal. App. 419, 428 [25 P.2d 879] ; *Civ.
Code, § 19; Lawton* v. *Gordon*, 37 Cal. 202, 205 ; *Montgomery* v. *Keppel*, 75
Cal. 128, 131 [19 P. 178, 7 Am.St.Rep. 125] ; *Pellissier* v. *Title Guarantee
etc. Co.*, 208 Cal. 172, 184-185 [280 P. 947] .) *[7] Constructive as well as
actual notice of a prior unrecorded deed of trust removes a subsequent
purchaser from the protection of the recording acts.* ( *March* v. *Pantaleo*, 4

1    Cal.2d 242, 243 [48 P.2d 29] ; *Sieger* v. *Standard Oil Co., supra,* 155 Cal.
     App.2d 649, 656 ; *Holman* v. *Toten,* 54 Cal. App.2d 309, 315 [128 P.2d 808]
2    .)

3    Gribble v. Mauerhan (1961) 188 Cal. App. 2d 221 at 227-228.

4        10.    Under the above authorities and the points raised by the Exhibits that I

5    requested the Court take judicial notice of and the law and points raised by those

6    Exhibits and the specific requests made for the Court to take Judicial Notice of, it is

7    abundantly clear that the Trustee does not have the status of a Bona Fide Purchaser in

8    that she had actual, constructive and inquiry notice as to the facts surrounding the 2008

9    transfer by Deed of the Portola home by the Debtors, as well as the facts and law

10   demonstrating that the Trustee did not comply with the provisions of the Turnover law

11   requiring the Trustee to prove each and every element of the Turnover law was applied

12   in this case, and the case authority legal decisions regarding the impropriety of using

13   the Turnover law when title is in dispute and where the property sought to be turned

14   over is not clearly the property of the Estate, as is the case here.

15       11.    I am therefore respectfully requesting that this Court, after a careful

16   consideration of the law and the facts here, decide whether to take notice or whether

17   not to take Judicial Notice of the specific requests made for each Exhibit submitted to

18   this Court as enumerated on the PROPOSED ORDER filed with this court on 9-28-2018

19   as DE 411 and incorporated herein by reference.

20       I declare under penalty of perjury of the laws of the United States and the States

21   of Nevada and California that the foregoing is true and correct.

22

23

24

25

26

27

28

DECLARATION OF ANTHONY THOMAS

**LIST OF EXHIBITS ATTACHED**

**FOR WHICH DEBTOR IS REQUESTING THE COURT TAKE JUDICIAL NOTICE**

| Ex # | DESCRIPTION OF EXHIBIT | PAGES |
|---|---|---|
| 1. | PRINTED PHOTOGRAPH OF ORIGINAL GRANT DEED AND DEED FROM JANUARY 2008 IN POSSESSION OF ELI & DOROTHY THOMAS | 10 |
| 2. | Excerpts from Transcript of Hearing of 9-13-2018 | 11 – 20 |
| 3. | 9th Circuit Case Law re: Inquiry Notice and § 544(a)(3) Strong-Arm Powers - Patel v. Rupp. (Dist.Court, D. Utah 1996) 195 B.R. 779 | 21 – 22 |
| 4. | 9th Circuit California Case re: § 544(a)(3) and law that constructive notice of prior transferees unrecorded interest defeats priority of bona-fide purchaser that records and deprives bona fide purchaser of protection of recording acts Weisman v. Peters (1992) 131 B.R. 148 | 23 – 33 |
| 5. | Learned Treatise on Law of Actual, Constructive and Inquiry Notice 2 Pomeroy Eq. Jur. (4th Ed. 1919) §§ 591-613  pp. 1100-1162 | 34 – 97 |

Date: October 4th 2018.

Respectfully submitted,

Anthony G. Thomas - Debtor
In Propria Persona

DECLARATION OF ANTHONY THOMAS

**CERTIFICATE OF SERVICE**

I certify that I am an adult, over the age of 18 years, not a party to the action herein who resides in Washoe County, Nevada. I caused to be served the foregoing documents:

1,    Memorandum of Points & Authorities in Support of Motion for Judicial Notice;
2,    Declaration of Anthony Thomas

via e-mail to the following persons as listed below from my e-mail address of mickjoseph@sbcglobal.net as follows:

JEFFREY A. COGAN
jeffrey@jeffreycogan.com, beautausinga@gmail.com, beau@jeffreycogan.com
JERI COPPA-KNUDSON VIA E-MAIL & US MAIL: 3495 Lakeside Dr. PMB 62 Reno, NV 89509
renobktrustee@gmail.com, jcoppaknudson@ecf.episystems.com
KEVIN A. DARBY
kad@darbylawpractice.com, tricia@darbylawpractice.com, jill@darbylawpractice.com, hersh@darbylawpractice.com, sam@darbylawpractice.com
JEFFREY L. HARTMAN VIA E-MAIL AND US MAIL: 510 W. Plumb Lane Suite B - Reno, NV 89509
notices@bankruptcyreno.com, sji@bankruptcyreno.com
TIMOTHY A. LUCAS
ecflukast@hollandhart.com
LAURY MILES MACAULEY
laury@macauleylawgroup.com
WILLIAM MCGRANE
ECF-8116edf28c97@ecf.pacerpro.com, mitch.chyette@mcgranellp.com
STEPHANIE T. SHARP
ssharp@rssblaw.com, cobrien@rssblaw.com
WAYNE A. SILVER
w_silver@sbcglobal.net, ws@waynesilverlaw.com
ALAN R. SMITH
mail@asmithlaw.com
STEVEN C. SMITH
ssmith@smith-lc.com, mbrandt@smith-lc.com
AMY N. TIRRE
amy@amytirrelaw.com, admin@amytirrelaw.com
U.S. TRUSTEE - RN - 7,7
USTPRegion17.RE.ECF@usdoj.gov
JOSEPH G. WENT
jgwent@hollandhart.com, vllarsen@hollandhart.com

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  October 4th 2018.

/S/ Mick Joseph

MICK JOSEPH

DECLARATION OF ANTHONY THOMAS

Exhibit 1



**Left deed:**

RECORDING REQUESTED BY:
CAL-SIERRA TITLE COMPANY

WHEN RECORDED MAIL TO

ANTHONY THOMAS
WENDI THOMAS
1107 NORMANDY
CAMPBELL, CA 95008

ESCROW NO. 00032690

Doc No:2000-06518 Page 1 of 1

CAL-SIERRA TITLE CO.
Recording Date: 09/12/2000
Recording Time: 09:45 AM

Plumas County, California
Judith Wells, Recorder
Fee: $   7.00

## GRANT DEED

EXEMPT: 11.954 - 11734(c)

The undersigned grantor(s) declare(s):
County transfer tax is $ 0.00

( XX) computed on full value of property conveyed, or
(   ) computed on full value less value of liens and encumbrances remaining at time of sale.
(   ) Unincorporated area: (XX) City of PORTOLA
FOR VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
FEDERAL NATIONAL MORTGAGE ASSOCIATION ORGANIZED AND EXISTING
UNDER LAWS OF THE UNITED STATES OF AMERICA

hereby GRANTS to  ANTHONY THOMAS AND WENDI THOMAS, HUSBAND AND WIFE AS
JOINT TENANTS

the following described real property in the County of PLUMAS     State of California:
LOT 14 AND THE WEST HALF OF LOT 15 OF BLOCK 19, AS SHOWN UPON
THAT CERTAIN MAP ENTITLED, "ROBERTS LUMBER COMPANY ADDITION TO
PORTOLA TOWNSITE", FILED SEPTEMBER 6, 1910 IN THE OFFICE OF THE
COUNTY RECORDER OF THE COUNTY OF PLUMAS, STATE OF CALIFORNIA,
IN BOOK A OF MAPS, AT PAGE 28.

A.P.N.: 126-123-001

FEDERAL NATIONAL MORTGAGE
ATION.

**Right deed:**

RECORDING REQUESTED BY:
Mrs. Dorothy Thomas

AND WHEN RECORDED MAIL DOCUMENT TO:

Eli & Dorothy Thomas
18945 Kosich Dr.
Saratoga, CA 95070

Space Above This Line for Recorder's Use Only

A.P.N.: 126-123-001

File No.:

## GRANT DEED

The Undersigned Grantor(s) Declare(s)  DOCUMENTARY TRANSFER TAX $          CITY TRANSFER TAX $

[   ] computed on the consideration or full value of property conveyed, OR [   ] computed on the consideration or full value less value of liens and/or encumbrances remaining at time of sale. [   ] unincorporated area; [ ] City of          and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
ANTHONY THOMAS AND WENDI THOMAS, HUSBAND AN WIFE AS JOINT TENANTS

hereby GRANT to
ELI THOMAS AND DOROTHY THOMAS, HUSBAND AND WIFE AS JOINT TENANTS

the following described property in the City of Portola, County of Plumas, State of California:

LOT 14 AND THE WEST HALF OF LOT 15 OF BLOCK 19, AS SHOWN UPON
THAT CERTAIN MAP ENTITLED, "ROBERTS LUMBER COMPANY ADDITION TO
PORTOLA TOWNSITE", FILED SEPTEMBER 6, 1910 IN THE OFFICE OF THE
COUNTY RECORDER OF THE COUNTY OF PLUMAS, STATE OF CALIFORNIA,
IN BOOK A OF MAPS, AT PAGE 28.

Date: January 5th 2008.
                                        Anthony Thomas

Date: January 5th 2008.
                                        Wendi Thomas

Mail Tax Statements To: SAME AS ABOVE

-10-

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA (RENO)

IN RE:                               Case No. 14-50333-BTB

ANTHONY THOMAS AND                   Chapter 7
WENDI THOMAS,
                                     300 Las Vegas Blvd. South
                                     Las Vegas, NV 89101
            Debtors.
                                     Thursday, September 13, 2018
. . . . . . . . . . . . . . .        1:40 p.m.

TRANSCRIPT OF STATUS HEARING FOLLOWING HEARING RE: DOC NO. 358
MOTION TO WITHDRAW AS ATTORNEY OF RECORD AND FOR CLARIFICATION
OF STATUS OF COUNSEL, ETC. FILED BY LAUREY MILES MACAULEY
ON BEHALF OF MACAULEY LAW GROUP, P.C.;
MOTION FOR TURNOVER FILED BY JEFFREY L. HARTMAN
ON BEHALF OF JERI COPPA-KNUDSON [353]
**BEFORE THE HONORABLE BRUCE T. BEESLEY**
**UNITED STATES BANKRUPTCY COURT JUDGE**

APPEARANCES:

For the Debtors:          ANTHONY THOMAS, Pro Se
                          7725 Peavine Peak Court
                          Reno, NV 89523

For the Chapter 7         Hartman & Hartman
Trustee:                  By: JEFFREY L. HARTMAN, ESQ.
                          510 West Plumb Lane, Suite B
                          Reno, NV 89509
                          (775) 324-2800

Audio Operator:           Illuminada Starzyk, ECR

Transcription Company:    Access Transcripts, LLC
                          10110 Youngwood Lane
                          Fishers, IN 46038
                          (855) 873-2223
                          www.accesstranscripts.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

**Exhibit 2**

A. Thomas - Court Examination                    50

1  A    And I made it clear on the record with the trustee.

2  Q    And this is a document that you authorized by your

3  signature to be done.  So this is confusing.  This is a

4  confusing thing.

5  A    That's why I cleared it up in the 341 meeting with the

6  trustee.  So she -- her saying she didn't know.  There's

7  specific questions about that in the 341 meeting, and I

8  presented those -- those questions as evidence.  And we can go

9  through every single one of those.

10          THE COURT:  No, we're done here.  This is not -- what

11 we're going to do is we're going to address Mr. Hartman's

12 motion for turnover, and you can address that.

13 BY THE COURT:

14 Q    The trustee has the right to turn over property that's not

15 exempt.  The house in Portola is not exempt.

16 A    Under the law, I believe you're wrong, Your Honor, and

17 you're not letting me --

18 Q    Could you stop, sir?

19 A    -- present the law.

20 Q    Would you --

21 A    You're --

22 Q    Would you not interrupt me, please?  The trustee has filed

23 a motion to turn over.  The property is not listed in -- the

24 property is still listed in your name.

25 A    But the turnover motion is not --

51

1  Q    Listen to me.

2  A    They already -- they admit in this motion themself that

3  there's an adversary complain with my parents, that there's a

4  dispute over the property.  And a turnover motion is not the

5  proper procedure for if there's a dispute over the property.

6  And I -- and I --

7  Q    You may step down --

8  A    And I put law in about that.

9  Q    -- and then sit down and be quiet.

10      (Witness excused)

11          THE COURT:  Your motion is granted.

12          MR. HARTMAN:  Thank you, Your Honor.

13          THE COURT:  Please upload an order.  I will sign it.

14  You do not need to run it by Mr. Thomas, and I will sign it.

15          Mr. Thomas?

16          MR. THOMAS:  Your Honor, I think you should recuse

17  yourself --

18          THE COURT:  Mr. Thomas?

19          MR. THOMAS:  -- because you do not go by the law.  I

20  put lots of law into this case and you just walked right over

21  it.  There's plenty of law that I put in that says --

22          THE COURT:  Then you should --

23          MR. THOMAS:  -- if there's a dispute --

24          THE COURT:  Then you should appeal.

25          MR. THOMAS:  If there's a dispute over --

52

1          THE COURT:  Then you should appeal.

2          MR. THOMAS:  -- a property --

3          THE COURT:  Then you should appeal.

4          MR. THOMAS:  I will appeal it.

5          THE COURT:  It is not the trustee's fault that your

6    mother did not record the deed.

7          MR. THOMAS:  Your Honor, you're wrong on the law.

8    Your job is to rule on the law, and you are wrong on the law.

9    If there's a dispute over the property, then they can't get it

10   from a turnover motion.  And I submitted all of that law, but

11   you won't look at it.

12         THE COURT:  I disagree with you.

13         MR. THOMAS:  No.  And the statute of limitations is

14   up because they only have six years to even go back and get it.

15   And I put that in, but you won't look at that law.  And then

16   they cite law under Chase Manhattan that's not even relevant to

17   the turnover motion.

18         THE COURT:  Would you --

19         MR. THOMAS:  It's --

20         THE COURT:  Would you please sit down, sir?

21         MR. THOMAS:  Can I cite that law and put it on the

22   record so that I can perfect my appeal?

23         THE COURT:  Please.  And what are you looking at

24   here?

25         MR. THOMAS:  I'm looking at the Chase case that they

53

1  cited.  It's not even relevant.  It's -- and in their brief,
2  they admit that there's a dispute over the law, and if there's
3  a dispute over the law, I provided you with law, tons of it, a
4  whole volume here that says that you cannot have a turnover
5  motion if there's a dispute over the property.  But you won't
6  look at the law.

7        THE COURT:  Show me where you're at.
8        MR. THOMAS:  Show you where it's at?
9        THE COURT:  In your filing of October 16th.
10       MR. THOMAS:  It's in my filings that I filed today.
11       THE COURT:  Well --
12       MR. THOMAS:  And it's also in my --
13       THE COURT:  -- how was I supposed to have read your
14 filings that you just filed?
15       MR. THOMAS:  Your Honor, I think you should read the
16 filings that I just filed because --
17       THE COURT:  Well, for one --
18       MR. THOMAS:  -- the whole -- this whole thing shows
19 that they can't do what they're doing and you can't do what
20 you're doing.  You're not going by the law.  The law says that
21 if there's a dispute --
22       THE COURT:  Stop.  Stop yelling at me.  Stop yelling.
23 Speak in a calm voice.  Don't be raising things up and --
24       MR. THOMAS:  I'm sorry, Your Honor.
25       THE COURT:  -- gesticulating.

55

1          "The turnover motion and to correct the errors in the
2          turnover motion.  Although I stated the trustee
3          replies of the opposition of the motion to turnover
4          of real property, Hartman's declaration makes it
5          clear that Thomas did not conceal the existence of
6          the Portola property" --
7          THE COURT:  So stop.  Stop.  Whether -- there's no
8  allegation at this point that you concealed it.  That's not an
9  issue in this case.
10         MR. THOMAS:  Okay.  Then let's --
11         THE COURT:  You did not conceal it.  It was on your
12 statements and schedules.  You did not conceal the transfer.
13         MR. THOMAS:  Okay.
14         THE COURT:  That's not part of this case.
15         MR. THOMAS:  Okay.  If you go to page 7 --
16         THE COURT:  Hold on.
17         MR. THOMAS:  -- I state --
18         THE COURT:  Hold on.  Stop.  On page 7, you list a
19 bunch of cases.
20         MR. THOMAS:  Yes.  And all these cases have to do
21 with the turnover motion if there's a dispute.  And if you look
22 at Mr. --
23         THE COURT:  So what is the dispute?
24         MR. THOMAS:  Mr. Hartman and --
25         THE COURT:  What is the dispute?

56

1          MR. THOMAS:  -- Knudson say that there's a dispute.
2     They put it in their brief, in the trial brief.

3          THE COURT:  Stop.  Answer my question.  What is the
4     dispute?

5          MR. THOMAS:  That my parents own the property and
6     they don't have a right to have it turned over because this
7     isn't a proper procedure for a turnover motion if there's a
8     dispute over the property.  My parents are claiming that they
9     own the property, and he's claiming that --

10         THE COURT:  Well, how about 544(a)(3) that says the
11    trustee has a hypothetical right as a bona fide purchaser of
12    value without notice to recover property?  Please turn your
13    phone off, sir.

14         MR. THOMAS:  I'm turning it off right now.

15         THE COURT:  So in this circumstance, there was not
16    deed that's filed in California that shows your parents own the
17    property.  And, therefore, under 544(a)(3), the trustee can
18    turn it over to her, so.

19         MR. THOMAS:  Your Honor, they can't because the deed
20    was conveyed, and I cited plenty of law in my brief saying --

21         THE COURT:  You've cited plenty of California law,
22    and that's absolutely correct.  But we're dealing with
23    bankruptcy law here.

24         MR. THOMAS:  I understand that, but the property is
25    in California, and California law --

57

1          THE COURT:  Doesn't trump federal law.

2          MR. THOMAS:  Well, and I put a bunch of cases in

3    there if you would read them all about --

4          THE COURT:  You gave them to me 21 minutes before the

5    hearing started.

6          MR. THOMAS:  No, I -- no, I put them in the judicial

7    notice that I'd like you to take when I filed my judicial

8    notice motion that I want you to take judicial notice of the

9    law so that you don't just rule any way you want.

10         THE COURT:  Here's what I'll do.  I will read the

11   cases you have cited.  I will continue this for a week.  You

12   will be back here in a week at 1:30 in the afternoon, and I

13   will make my decision.

14         MR. THOMAS:  Your Honor, I still want to go --

15         THE COURT:  Stop.

16         MR. THOMAS:  I want to make sure that we have a clear

17   record that I put a bunch of cases in there that says that this

18   is not the proper procedure for a turnover motion if there's a

19   dispute.  And the case that they cited, the Chase case, doesn't

20   have anything to do with it.  This should be turned over in my

21   favor today because the Chase case that they cited is a lot of

22   bona fide purchaser.  There's no bona fide purchaser.  My

23   parents have had that deed since 2008 and it was conveyed

24   properly back then.  Just -- and the law says they don't have

25   to -- they didn't have to register it for it to be their

58

1  property.

2       THE COURT:  Well, that would be perfectly correct if

3  you were in state court in California, but that's not where you

4  are.  You are in federal court in bankruptcy court where the

5  trustee has certain rights to set aside transfers.

6       MR. THOMAS:  I think in 1856 or something like

7  that --

8       THE COURT:  1856 --

9       MR. THOMAS:  --  I'm not sure exactly on the law.

10      THE COURT:  1856 was before the enactment of the

11 Bankruptcy Code.

12      MR. THOMAS:  Well, I understand that, but Nevada took

13 over the English law and so did California.  And in English

14 law, based on English law that I put in my brief that if a deed

15 is conveyed and it's conveyed with the intent, which it was,

16 and it was given to them for full value, then they have legal

17 title to that property.  It doesn't have to be reported and the

18 law --

19      THE COURT:  Except that the trustee has avoiding

20 powers that apply.

21      MR. THOMAS:  Not if there's a dispute.  You can't

22 give him the property in a turnover motion if there's a dispute

23 over the property, and there is a dispute.

24      THE COURT:  I do not think you are correct.

25      MR. THOMAS:  Well --

74

1　　　　　　　　　　　**C E R T I F I C A T I O N**

2

3　　　　　I, Dipti Patel, court-approved transcriber, hereby

4　certify that the foregoing is a correct transcript from the

5　official electronic sound recording of the proceedings in the

6　above-entitled matter.

7

8

9　*/s/ Dipti Patel*

10　DIPTI PATEL, AAERT NO. 997　　DATE:　September 27, 2018

11　ACCESS TRANSCRIPTS, LLC

12

13　　　　　　　　　　　**C E R T I F I C A T I O N**

14

15　　　　　I, Alicia Jarrett, court-approved transcriber, hereby

16　certify that the foregoing is a correct transcript from the

17　official electronic sound recording of the proceedings in the

18　above-entitled matter.

19

20

21

22

23　ALICIA JARRETT, AAERT NO. 428　　DATE:　October 1, 2018

24　ACCESS TRANSCRIPTS, LLC

25

ACCESS TRANSCRIPTS, LLC　　1-855-USE-ACCESS (873-2223)

**Exhibit** 2,

Patel v. Rupp (Dist. Court, D. Utah 1996)195 B.R. 779 -
### Patel v. Rupp, 195 BR 779 - Dist. Court, D. Utah 1996
### 195 B.R. 779 (1996)

## Alka PATEL, Appellant,
## v.
## Stephen W. RUPP, Trustee, Appellee.

Bankruptcy No. 95-2009. No. 95-cv-1089W.

### United States District Court, D. Utah, Central Division.

May 9, 1996.

780

*780 781
*781 Hollis S. Hunt, Salt Lake City, UT, for Appellant.

Gregory J. Adams, McKay, Burton & Thurman, Salt Lake City, UT, for Appellee.

# MEMORANDUM DECISION AND ORDER ON DEFENDANT'S BANKRUPTCY APPEAL

WINDER, Chief Judge.

This matter is before the court on defendant's appeal from the bankruptcy court, argued on April 25, 1996. At the hearing, Hollis S. Hunt represented the defendant/appellant Alka Patel ("Appellant"), and Gregory J. Adams represented the trustee/appellee Stephen W. Rupp ("Trustee"). The court has carefully considered all pleadings, memoranda, and other materials submitted by the parties. The court has further considered the law and facts relevant to this appeal. Now being fully advised, the court enters the following Memorandum Decision and Order.

# I. BACKGROUND

Debtors Arvind C. Patel ("Arvind") and Aruna A. Patel ("Aruna") (collectively the "Debtors") owned the property at issue (the "Property") until the latter part of December 1989. In late December 1989, the Appellant alleges that she purchased the Property from the Debtors

**Exhibit** 3

for fair market value of $65,000. Because Arvind was out of the state at the time the transfer was to occur, the Debtors prepared two separate quit claim deeds to effectuate the transfer. Appellant properly recorded Aruna's quit claim deed in December 1989, and intended to record Arvind's quit claim deed upon his return to the state. However, Arvind's deed was never recorded.

Appellant began to operate the Property as though she were the sole owner. Appellant rented the property, collected revenue, and paid all taxes and costs of improvements. Because Appellant lived in Massachusetts, she used a property management company to operate and maintain the Property. Arvind did not contribute to the operation or management of the property nor receive any benefits from the Property.

In April 1992, the Debtors filed for bankruptcy. The Debtors did not disclose any claim of ownership of the Property in their bankruptcy filing. In December 1994, the Trustee became aware of Appellant's failure to record Arvind's quit claim deed. Attempting to recover a one-half interest in the Property for the benefit of the bankruptcy estate, the Trustee filed a motion of intent to sell. The Trustee brought a Motion for Summary Judgment before the bankruptcy court, arguing that 11 U.S.C. § 544(a)(3) gave him the authority for such action. The bankruptcy court agreed and granted summary judgment in favor of Trustee. Appellant now appeals the bankruptcy court's decision.

782

782 **II. STANDARD OF REVIEW**

This court reviews the legal conclusions of the bankruptcy court de novo. *In re Themy*, 6 F.3d 688 (10th Cir.1993) . This court is bound by the bankruptcy court's factual findings unless such findings are clearly erroneous. *Id.*

**III. DISCUSSION**

Appellant argues that the bankruptcy court erred in ruling that Section 544(a)(3) entitles the Trustee to a one-half interest in the Property. Section 544(a)(3) states:

The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor . . . that is voidable by —

**Exhibit 3**

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544. The powers under Section 544 are commonly known as the trustee's "strong-arm" lien avoidance powers.

Appellant claims that the Trustee is precluded from exercising his strong-arm powers under Section 544 because (1) 11 U.S.C. § 541(d) limits those powers; and (2) the Trustee had inquiry notice of Appellant's unrecorded interest in the Property.

A. *The Relationship Between Sections 544 and 541*

Appellant asserts that the Trustee's strong-arm powers are limited by operation of Section 541(d). This Section states:

Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

Appellant argues that Arvind held only legal title to the disputed half-interest of the Property. Accordingly, she claims that Section 541 protects her equitable interest in the disputed one-half interest from the Trustee's strong-arm power.

The court disagrees. Although there is a split of authority, the court concludes that the opinions holding that Section 541(d) is not a limit on a trustee's strong-arm powers are the better reasoned. *See In re Tleel,* 876 F.2d 769 (9th Cir.1989) ; *In re Markair, Inc.,* 172 B.R. 638 (9th Cir. BAP 1994) ; *In re Ebel,* 144 B.R. 510 (Bankr.D.Colo.1992) ; *In re Granada, Inc.,* 92 B.R. 501 (Bankr.D.Utah 1988) ; *In re Cascade Oil Co.,* 65 B.R. 35 (Bankr.D.Kans.1986) ; *In re Great Plains Western Ranch Co.,* 38 B.R. 899 (Bankr. C.D.Cal.1984) ; *Nile Valley Federal Savings & Loan Assn. v. Security Title Guarantee,* 813 P.2d 849 (Colo.Ct.App.1991) . *But see In re Quality Holstein Leasing,* 752 F.2d 1009 (5th Cir.1985) . *See generally* 96 A.L.R.Fed. 100. The Trustee's strong-arm powers under Section 544 function independently of Section 541(d) and are not automatically limited by operation of Section 541(d). Thus, the bankruptcy court properly ruled on this issue.

B. *Inquiry Notice*

**Exhibit 3**

# West's

# BANKRUPTCY REPORTER

*A Unit of the National Reporter System*



## Volume 131

*Covering*

131 West's Bankruptcy Reporter
942 F.2d 799 to 945 F.2d 418
112 S.Ct. 1–353

*Bankruptcy Cases Decided in the*

**UNITED STATES BANKRUPTCY COURTS**
**UNITED STATES DISTRICT COURTS**
**UNITED STATES COURTS OF APPEALS**
**SUPREME COURT OF THE UNITED STATES**

ST. PAUL, MINN.

WEST PUBLISHING CO.

1992

Exhibit 4

facts here. Great American concludes that even if a Sec. 105 injunction may be utilized against a letter of credit, it should not be done in this situation. Wysko responds by stating that the Debtor has met the high burden of proof necessary for a Sec. 105 injunction, and that this Court may only overturn the ruling of the Bankruptcy Court if it is "clearly erroneous."

It is obvious in the Order from which Appellant appeals that the Bankruptcy Court found that the injunction against the letter of credit was necessary for reorganization. *See In re Wysko Investment Co.*, No. 91–104 (Filed February 6, 1991). Testimony by Don Allan, the President of Dalco, indicated that an injunction of the letter of credit was essential for reorganization and the reorganization hinged upon the injunction. *See* Deposition Testimony of Don Allan, pages 30–33 (February 1, 1991). In light of this evidence, this Court cannot say that the decision of the Bankruptcy Court in finding that the letter of credit was necessary for reorganization was "clearly erroneous." The fact that the injunction was necessary for reorganization is an unusual circumstance which justifies use of the Bankruptcy Court's Sec. 105 powers to enjoin a letter of credit.

Therefore, IT IS ORDERED that the decision of the Bankruptcy Court is AFFIRMED.



In re Marc A. WEISMAN, and Sheila J. Weisman, Debtors.

Jerome E. ROBERTSON,
Trustee, Appellant,

v.

Marc PETERS, Appellee.

No. C–91–0402 EFL.

United States District Court,
N.D. California.

Aug. 26, 1991.

Chapter 7 trustee brought adversary proceeding claiming one-half interest in property on which debtor's former husband and his new wife lived. The United States Bankruptcy Court for the Northern District of California, entered judgment in favor of former husband, and trustee appealed. The District Court, Lynch, J., held that: (1) strong-arm provision permits constructive notice of another party's interest to overcome trustee's hypothetical bona fide purchaser status where constructive notice under applicable California law deprives bona fide purchaser of protection of recording acts, but (2) joint possession of residence, on day of filing, by debtor's former husband along with husband's new wife did not provide trustee with constructive notice, under California recording acts, of unrecorded interest, arising from debtor's unrecorded conveyance of her one-half interest in property to former husband prior to bankruptcy.

Reversed.

1. Bankruptcy ⚖️2705

Bankruptcy Code's strong-arm provision permits constructive notice of another party's property interest to overcome trustee's hypothetical bona fide purchaser status where constructive notice under applicable California law deprives bona fide purchaser of protection of recording acts. Bankr.Code, 11 U.S.C.A. § 544(a)(3).

2. Vendor and Purchaser ⚖️239(1)

Under California law, bona fide purchaser who records does not take priority over prior transferee of whose transfer the bona fide purchaser has constructive notice.

3. Bankruptcy ⚖️2705

Clause in Bankruptcy Code's strong-arm provision, conferring bona fide purchaser status upon trustee "without regard to any knowledge of the trustee," refers only to personal knowledge of trustee, not legal notice, actual or constructive, and does not make trustee's constructive notice irrelevant to trustee's powers and rights as

Exhibit 4

hypothetical purchaser, if constructive notice can overcome rights of bona fide purchasers under applicable state law. Bankr. Code, 11 U.S.C.A. § 544(a)(3).

**4. Vendor and Purchaser ⚖232(12)**

Joint possession of residence, on day of Chapter 7 filing, by debtor's former husband along with husband's new wife did not provide trustee with constructive notice, under California recording acts, of husband's and/or new wife's unrecorded interest, arising from debtor's unrecorded conveyance of her one-half interest in property to former husband prior to bankruptcy; although title to property had also changed from debtor and former husband as community property to debtor and former husband as tenants in common, possession of property by former husband was consistent with record title. Bankr.Code, 11 U.S.C.A. § 544(a)(3); West's Ann.Cal. Civ.Code §§ 19, 1214.

**5. Vendor and Purchaser ⚖232(1)**

Person's possession of property, if consistent with property interest under record title, does not create duty to inquire whether possessor has greater property interest than is in record title. Bankr.Code, 11 U.S.C.A. § 544(a)(3); West's Ann.Cal.Civ. Code §§ 19, 1214.

---

Cathleen C. Moran, Palo Alto, Cal., for appellant.

Esther Z. Hirsh, Long & Levitt, San Francisco, Cal., for appellee.

**AMENDED ORDER AFFIRMING IN PART AND REVERSING IN PART JUDGMENT OF THE UNITED STATES BANKRUPTCY COURT**

LYNCH, District Judge.

**I. SUMMARY**

This matter comes on appeal from the judgment of the United States Bankruptcy Court for the Northern District of California, Division 5, in favor of defendant Marc Peters (appellee herein), denying the bankruptcy trustee any interest in the subject property at 565 Cambrian Drive, Campbell, California. This Court's jurisdiction is proper pursuant to 28 U.S.C. section 158(a).

The appeal raises the issue of whether 11 U.S.C. section 544(a)(3) permits constructive notice of another party's property interest to overcome a trustee's hypothetical bona fide purchaser status under that statute if constructive notice deprives a bona fide purchaser of the protection of the recording acts under applicable state law. If answered affirmatively, the case gives rise to a second issue: whether the bankruptcy court clearly erred in finding that the trustee had constructive notice of Mr. Peters' and/or his new wife's unrecorded interests in the subject property. This Court finds in the affirmative on both issues. Therefore, the judgment of the bankruptcy court is affirmed in part and reversed in part.

**II. STATEMENT OF FACTS**

Both parties have stipulated to the following facts:

Sheila Weisman (formerly known as Sheila Peters), one of the debtors in the underlying proceeding, married appellee Marc Peters on August 31, 1963. The two bought the property at 565 Cambrian Drive, Campbell, California, (the "subject property") on August 8, 1967. They lived together on the subject property continuously from August, 1967 until March, 1985. Their marriage was dissolved effective November 4, 1985.

The two reached a property settlement agreement with respect to the dissolution of their marriage. Pursuant to it, appellee Peters had the right to purchase Sheila Weisman's interest in the subject property within three years of the agreement.

The judgment of dissolution of the marriage of Marc Peters and Sheila Weisman (then Sheila Peters), entered in Santa Clara County Superior Court Case No. 573920, was filed on October 24, 1985. The judgment of dissolution of marriage was not recorded with the County Recorder. In November 1985, Sheila J. Peters married Marc A. Weisman. Since that time she has been known as Sheila J. Weisman.

In accordance with the property settlement agreement between Mr. Peters and

**Exhibit 4**

Ms. Weisman, Mr. Peters undertook to purchase her interest in the subject property by refinancing the property and using the proceeds of the loan to pay her for it. However, the refinancing lender required Ms. Weisman to sign the loan documents as a condition of granting the loan, and, consequently, Ms. Weisman remained on title. Title in the subject property was transferred from Marc Peters and Sheila Peters, as community property, to Marc Peters, an unmarried man, and Sheila Weisman, a married woman as her sole and separate property, as tenants in common. The deed reflecting this transfer was dated June 23, 1986 and recorded on July 2, 1986.

The day after the date of that deed, Sheila Weisman's new husband (and one of the debtors in the underlying bankruptcy action), executed a quitclaim deed in favor of Ms. Weisman disavowing any interest in the subject property. That deed was dated June 24, 1986 and recorded on July 2, 1986.

By quitclaim deed dated June 25, 1986, Ms. Weisman transferred her interest in the subject property to Marc Peters after she received from him the proceeds of the aforementioned loan. The deed was delivered to Mr. Peters on or about August 27, 1986, but he did not record it until December 8, 1988, almost two years later.

Mr. Peters himself remarried. After Ms. Weisman had executed the quitclaim deed to him, but prior to its delivery, he married Niane Neergaard, on August 1, 1986. From that date to the present, Ms. Neergaard has lived openly and continuously on the subject property with Mr. Peters. He has lived openly and continuously on the property from August 1967 until the present.

On August 2, 1988, Marc A. and Sheila J. Weisman filed for bankruptcy under Chapter 7 of the United States Bankruptcy Code. On that date, Mr. Peters and Ms. Neergaard were living openly on the subject property. However, as of that date, record title to the subject property was still held by Marc Peters and Sheila Weisman as tenants in common.

Prior to the time the trustee filed the underlying action, the trustee made no in-quiry into the state of the title or the ownership of the subject property, other than to review a report indicating that Sheila Weisman was a record title holder to the subject property. The trustee has never made any inquiry of Mr. Peters or Ms. Neergaard regarding the title of the premises or regarding Ms. Neergaard's rights in the subject property.

Jerome E. Robertson, the appointed Chapter 7 trustee, claims a one-half interest in the subject property. By Memorandum Decision filed August 17, 1990, the bankruptcy court entered judgment in favor of Mr. Peters, holding that the bankruptcy trustee is not entitled to any interest in the subject property. This appeal followed.

## III. ISSUES ON APPEAL

The issues on appeal are two:

(1) whether Bankruptcy Code section 544(a)(3) permits constructive notice, if it strips a bona fide purchaser of the protection of the recording acts under applicable state law, to remove similarly the protection of the recording acts from the bankruptcy trustee as a hypothetical bona fide purchaser under 11 U.S.C. section 544(a)(3); and

(2) if so, whether the bankruptcy court clearly erred in concluding that the circumstances were sufficient to put appellant trustee on inquiry notice of another's interest in the subject property so as to constitute constructive notice of that interest under California law.

## IV. STANDARD OF REVIEW

The first issue, a statutory interpretation of Bankruptcy Code section 544(a)(3), is a question of law and is therefore reviewed under a *de novo* standard. *In re Nunn*, 788 F.2d 617 (9th Cir.1986). The second issue, whether the circumstances were sufficient to put one on inquiry so as to constitute constructive notice, is a question of fact and is therefore reviewed under the "clearly erroneous" standard. *In re Probasco*, 839 F.2d 1352, 1355 (9th Cir.1988).

**Exhibit 4**

## V.  DISCUSSION

A.  *Constructive Notice, If It Can Overcome The Rights Of A Bona Fide Purchaser Under Applicable State Law, Is Relevant To Determine The Rights Of A Bankruptcy Trustee As A Hypothetical Bona Fide Purchaser Pursuant To 11 U.S.C. Section 544(a)(3).*

[1]  The question on appeal can be simply stated: whether the trustee may avoid the transfer to Peters of the debtor's one-half interest in the subject property, under the strong arm powers afforded the trustee pursuant to Section 544(a)(3).  Section 544(a)(3) provides, in pertinent part:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor ... that is voidable by—

* * * * * *

(3) a bona fide purchaser of real property ... from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of commencement of the case, whether or not such a purchaser exists.

This somewhat labyrinthine statute merits a brief restatement.  It means that the trustee has the rights of a hypothetical bona fide purchaser of the debtor's property, who became a bona fide purchaser and had perfected the transfer at the moment the bankruptcy petition was filed, if indeed the transfer from the debtor to the bona fide purchaser could be perfected under applicable state law.[1]

[2]  The parties on appeal differ over the proper construction of the statute.  Appellee contends that under section 544(a)(3),

the trustee, as hypothetical bona fide purchaser, has no greater rights than any other bona fide purchaser under state law. Under California law, a bona fide purchaser who records does not take priority over a prior transferee of whose transfer the bona fide purchaser had constructive notice.  *In re Probasco*, 839 F.2d 1352, 1354 (9th Cir.1988).  Therefore, appellee contends that if the trustee had, at the time the bankruptcy commenced, constructive notice of the unrecorded, prior interests in the subject property of Peters and/or Neergaard, the trustee would lack priority over appellee as to the one-half interest in the subject property at issue.

Appellant maintains that constructive notice, even if it removes the protection of the recording acts from a subsequent purchaser under California law, is irrelevant under section 544(a)(3) because that provision, by its terms, confers bona fide purchaser status upon the trustee "without regard to any knowledge of the trustee."  Therefore, even if actual or constructive notice of a prior transfer would preclude a subsequent purchaser from having priority over the prior transferee, it should not affect the trustee's priority over a prior transferee for purposes of section 544(a)(3).

[3]  Appellant would have the court equate lack of "knowledge" under the statute with lack of legal "notice."  However, the legislative history, the majority of decisions, and plain logic indicate that "knowledge" within that provision ought to be read to refer to personal knowledge, not legal notice, actual or constructive.  The seminal decision on the issue is *McCannon v. Marston*, 679 F.2d 13 (3d Cir.1982).  There, the Third Circuit had to determine the interrelationship of a bona fide purchaser's rights under Pennsylvania law as compared to those of a section 544(a)(3)

---

1. "The § 544(a)(3) hypothetical bona fide purchaser may be defined as follows: A person who (1) at the instant the petition is filed, purchases from the debtor; (2) for value; (3) in good faith; (4) without actual knowledge of any defect or limitation in title; (5) every interest in real property the debtor could have purported to convey without the terms of the conveyancing instrument itself evidencing irregularity; (6)

by an instrument that adheres to all formal requisites usually and regularly followed in conveyance [and] is in writing and acknowledged; and (7) who as of the moment of purchase, takes all unilateral steps possible under relevant non-bankruptcy law to perfect the conveyance (e.g. recording)."  *Saghi v. Walsh (In re Gurs)*, 27 B.R. 163, 165 (Bankr. 9th Cir.1983).

**Exhibit 4**

trustee. Under Pennsylvania law, as under California law, the rights of a subsequent purchase do not take priority over those of one in clear and open possession of real property that constitutes constructive notice of the latter's right to possession. The trustee argued that the clause "without regard to any knowledge of the trustee" made the prior transferee's constructive notice irrelevant to the trustee's powers and rights as a hypothetical purchaser.

The *McCannon* court extensively examined legislative history and determined that "knowledge" as used in section 544(a)(3) was meant to refer only to "actual knowledge" of the trustee, not notice, actual or constructive. *Id.* at 17. Indeed, if the "knowledge" element in section 544(a)(3) encompassed actual notice to the trustee, it would be over-inclusive to the point of absurdity. Section 544(a)(3) would render even recorded notice by a prior transferee insufficient to overcome the avoidance powers of a bankruptcy trustee. *See In re Cirasuolo,* 48 B.R. 447 (Bankr. N.D.N.Y.1985) (a trustee's avoidance powers would be so great that he would take priority even against prior transferees of the property from the debtor who actually recorded their interest); *In re Perrin's Marine Sales, Inc,* 63 B.R. 4 (Bankr. W.D.Mich.1985). Congress could not have intended such a result. As the *McCannon* court determined, "the words 'without regard to any knowledge' were not meant by Congress to nullify all state law protections of holders of equitable interests [in property].…" *Id.* at 16.

The overwhelming majority of subsequent cases addressing the issue have followed *McCannon* and held that the "knowledge" element of section 544(a)(3) encompasses only personal knowledge, not legal notice, actual or constructive. *See In re Morse,* 30 B.R. 52, 54 (Bankr. 1st Cir. 1983); *In re Probasco,* 839 F.2d 1352, 1354–53 (9th Cir.1988); *Saghi v. Walsh (In re Gurs),* 27 B.R. 163, 165 (Bankr. 9th Cir.1983); *In re Cirasuolo,* 48 B.R. at 450–

51; *In re Hardway Restaurant, Inc,* 31 B.R. 322 (Bankr.S.D.N.Y.1983); *In re Heinig,* 64 B.R. 456, 458 (Bankr.S.D.Cal. 1986); *In re Minton Group, Inc.,* 27 B.R. 385, 389 (Bankr.S.D.N.Y.1983); *In re Perrin's Marine Sales,* 63 B.R. at 7; *but see In re Nemacolin, Inc.,* 105 B.R. 6, 8 (Bankr.W.D.Pa.1989) (attempting to limit *McCannon* to cases involving executory contracts). Therefore, although the trustee is conferred a hypothetical bona fide purchaser status under federal bankruptcy law, "[t]he rights of the trustee vis-a-vis other parties are determined by reference to state law" and, in particular, state "notice" laws governing priority. *In re Morse,* 30 B.R. at 54 (section 544(a)(3) does not give the trustee "any greater rights than … any other person would have as a bona fide purchaser under state law"); *see In re Marino,* 813 F.2d 1562 (9th Cir.1987) (state law defines the powers of a bona fide purchaser for purposes of section 544(a)).

Appellant seeks to suggest that the majority position lacks currency in the Ninth Circuit, citing to *In re Tleel,* 876 F.2d 769 (9th Cir.1989). There, in dicta, the Ninth Circuit stated that because section 544 must be applied "without regard to any knowledge" of the trustee, "actual notice cannot overcome the Trustee's bona fide purchaser status." *Id.* at 772. Closer scrutiny indicates that the term actual "notice" was merely a semantic error by the *Tleel* court. The court cited in support a prior Ninth Circuit decision, *In re Marino,* 813 F.2d 1562 (9th Cir.1987), followed by the parenthetical "(actual knowledge irrelevant)." The parenthetical, paraphrasing *In re Marino,* is indeed correct. Perhaps not cognizant of the decisions distinguishing "knowledge" from legal "notice" with respect to section 544, the court appears to have either inadvertently substituted the term "notice" for "knowledge" or incorrectly viewed actual notice as synonymous with actual knowledge for purposes of the statute.[2] In either case, the *Tleel* decision

---

2. Indeed, the case upon which *Tleel* relied, *In re Marino,* directly relied upon *McCannon,* which unequivocally stands for the proposition that "knowledge" should not be equated with legal

notice, actual or constructive, under the statute. *See McCannon,* 679 F.2d at 13 ("knowledge" element not meant to nullify rights of an earlier

Exhibit 4

## IN RE WEISMAN    153

Cite as 131 B.R. 148 (N.D.Cal. 1991)

nonetheless displays an awareness that *constructive* notice can enable a prior transferee to obtain priority over a trustee as hypothetical subsequent purchaser under section 544. Directly after the dicta that "actual" notice was irrelevant under the statute, the court nonetheless proceeded to determine that the trustee was not on constructive notice of the property interest there in dispute.

*In re Probasco* dispels any doubt whether the Ninth Circuit follows the majority position set forth in *McCannon*. That case, as here, involved the interplay of California law and section 544(a)(3). The Ninth Circuit decision initially set forth the California law that a prior transferee who, by open and clear possession of real property provides constructive notice of his right to possession, removes from a subsequent purchaser the protection of the recording acts, and therefore has priority over the subsequent purchaser.[3] The Court then specifically held that section 544(a)(3), although it renders "knowledge" irrelevant to the rights of the hypothetical bona fide purchaser, does not render constructive notice irrelevant:

> Eads, by virtue of section 544(a)(3), has the rights of a hypothetical bona fide purchaser. The language of the section renders the trustee's or any creditor's knowledge irrelevant. It does not, however, make irrelevant notice constructively given by open possession any more than it would make irrelevant the constructive notice given by recorded instruments that might evidence a competing claim of title to the real property in question.

*Id.* at 1354–55 (footnotes and citations omitted). The *Probasco* court thus indicates that the Ninth Circuit position concurs with that of the majority that constructive notice is relevant to the rights of hypothetical

bona fide purchaser, such as a trustee, under section 544(a)(3). Other decisions within the Ninth Circuit are in accord. *In re Heinig*, 64 B.R. at 458; *Saghi v. Walsh (In re Gurs)*, 27 B.R. at 165. Therefore, this Court affirms the decision of the bankruptcy court that California law determines the trustee's rights as a hypothetical bona fide purchaser under section 544(a)(3) and that, where a trustee has constructive notice, as of the date the bankruptcy case commenced, of the prior transferee's interest in the subject property, the trustee loses the protection of California's recording acts and does not take priority over the rights of prior transferee.

> *B. The Bankruptcy Court's Finding That The Facts And Circumstances Were Sufficient To Constitute Constructive Notice Of Mr. Peter's And/Or Ms. Neergaard's Unrecorded Interests Was Clearly Erroneous.*

[4] As a factual question, the Court reviews the bankruptcy court's finding, that there was constructive notice to the trustee of unrecorded rights of Mr. Peters and Ms. Neergaard in the subject property, under the clearly erroneous standard. This Court must affirm the finding unless "left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

California Civil Code section 19 defines constructive notice:

> Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact.

---

transferee who "has given the rest of the word actual or constructive notice.")

**3.** The *Probasco* court summarized California law thus: "Actual or constructive notice of a prior unrecorded transfer removes a subsequent purchaser from the protection of the recording acts. Clear and open possession of real property constitutes constructive notice of the rights of

the party in possession to subsequent purchasers. Such a prospective purchaser must inquire into the possessor's claimed interests, whether equitable or legal... Therefore, a bona fide purchaser who records does not take priority over one in clear and open possession of real property." *In re Probasco*, 839 F.2d at 1354 (citations omitted).

**Exhibit 4**

**154**                                 **131 BANKRUPTCY REPORTER**

The appellee contends that the following circumstances were, in totality, sufficient to put the trustee on inquiry as to his right to possession in the entire property: (1) the state of the title, i.e., the change from Peters and the debtor as community property to them as tenants in common (2) the debtor was not in possession of the subject property even though on title; (3) Peters was in clear, open continuous possession of the property; and (4) Peters was living on the subject property with his new wife at the time of the bankruptcy in open, continuous and exclusive possession. These facts, appellee contends, were sufficient to create a duty on the part of the trustee to inquire as to the individual's interest and rights in the property, which, if prosecuted, would have informed the trustee of the title's true state.

**[5]** The bankruptcy court found these circumstances constituted sufficient constructive notice of the unrecorded rights of Mr. Peters and Ms. Neergaard in the subject property. In so doing, the bankruptcy court relied chiefly upon *In re Heinig*, 64 B.R. 456 (Bankr.S.D.Ca.1986), a case with essentially identical facts to the one at bar.[4] Appellant does not attack the facts but rather the reasoning of that decision. There, the bankruptcy court found that the trustee had constructive notice of the complete ownership by the ex-spouse in possession, even though record title indicated the property was held by her and the debtor as tenants-in-common, because "clear and open possession of real property generally constitutes constructive notice to subsequent purchasers of the rights of the party in possession....," even in the absence of recording. *Id.* at 458–59. However, the court in *Heinig* ignored a fundamental exception, under California law, to the general rule: clear and open possession does not create a duty to inquire into the possessor's interests when such possession is consistent with record title. *See Schumacher v. Truman*, 134 Cal. 430, 432, 66 P. 591

(1901). That is to say simply this: a person's possession of property, if consistent with his property interest under the record title, would not cause a prudent person to suspect and to inquire if that person possesses a greater property interest than is in the record title. This Court respectfully disagrees with the conclusions of the *Heinig* court that circumstances like these constitute constructive notice of the possessor's unrecorded, claimed interests.

The law in California is well-settled that "inquiry does not become a duty when the apparent possession is consistent with the title appearing of record." *Id.* at 432, 66 P. 591 (collecting cases). In *Schumacher v. Truman*, a husband and wife entered into an unrecorded agreement giving the husband complete control and management of a property. However, by a divorce judgment, which was recorded, the husband and wife became tenants in common of the land. The ex-husband kept a tenant in his stead on the property. The ex-wife sold her one-half interest in the property to one Morgan, who in turn sold it to Truman. The ex-husband asserted that Truman could only take the one-half interest subject to the unrecorded agreement between the ex-husband and ex-wife that the ex-husband was to have complete control and management of the property. In support, he argued that the occupancy of the property by his tenant, as a proxy for himself, provided constructive notice of all of the ex-husband's rights in the property. The California Supreme Court rejected the argument:

> The rule that one who purchases land, which is not at the time in the possession of his vendor, takes the same in subordination to the rights of another who is in actual possession is subject to the qualification that such actual possession be ... inconsistent with the record title.... If actual possession is consistent with the record title, it will be presumed to be under that title and referable thereto.

4. There, record title to the subject property where the debtor's former spouse resided indicated that the property was held by the former spouse, "an unmarried woman," and the debtor, as tenants in common. As in the present case, the debtor executed a deed quitclaiming his interest to the ex-spouse, but did not record it; therefore, he remained on title, even though it appears that only the ex-spouse was in possession, when he filed for bankruptcy.

**Exhibit 4**

*Id.* at 432, 66 P. 591 (citations omitted). Because the ex-husband, as co-tenant in common with his former wife, was entitled to possession of the whole of the land, his possession was consistent with the record title, and the subsequent purchaser "was not required to inquire of him whether he had some unrecorded claim in addition thereto." *Id.* at 433, 66 P. 591.

The definitive treatise on the real estate law of California is in accord:

There is no implied notice to a subsequent party of any unknown claims or interests by a person in possession when the occupant's possession is consistent with the record title. Thus, for example, possession by only one co-tenant is not notice to a subsequent encumbrancer of any unrecorded agreements between the joint owners because such possession is consistent with the record title and does not impose any duty of inquiry on the subsequent party.

3 H. Miller & M. Starr, *California Real Estate,* § 8.65 (2d ed. 1989) (citing to *Kane v. Huntley Financial,* 146 Cal.App.3d 1092, 1095–96, 194 Cal.Rptr. 880 (4th Dist. 1983) (duty to inquire inapplicable where apparent possession consistent with record title); *Caito v. United California Bank,* 20 Cal.3d 694, 702, 144 Cal.Rptr. 751 (1978) (wife's possession not notice of claim that property is her separate property where title held by husband and wife as joint tenants). In the case at bar, the record title indicated that Peters and the debtor Sheila Weisman owned the subject property as tenants in common. "[I]t is a fundamental rule that each tenant in common has a right to occupy the whole of the property." *Russell v. Lescalet,* 248 Cal.

App.2d 310, 313, 56 Cal.Rptr. 399 (2d Dist. 1967). Therefore, Mr. Peter's possession of the subject property is consistent with record title and insufficient, as a matter of California law, to have obligated the trustee, as a hypothetical subsequent purchaser, to inquire as to any unknown property interest of Peters imparted by the possession.[5]

Appellee attempts to distinguish the instant case by the fact that the subject property was possessed by, in addition to Mr. Peters, his new wife, Ms. Neergaard, a stranger to title. It appears that Mr. Peters contends that Ms. Neergaard's possession is indicia going to constructive notice of Mr. Peters' unrecorded interest and Ms. Neergaard's unrecorded interest in the subject property. However, the fact that Ms. Neergaard possessed the property jointly with a record title owner defeats this position. The definitive treatise on California real estate law states that "[g]enerally, when the record title owner shares the use and occupation of the premises with the holder of the unrecorded estate, a subsequent party does not have notice of the unrecorded estate." 3 H. Miller & M. Starr, *California Real Estate,* § 8.70 (2d ed. 1989) (citing to *Schumacher v. Truman,* 134 Cal. at 431, 66 P. 591 (husband and wife); *Houts v. First Trust and Savings Bank,* 34 Cal.App. 613, 168 P. 383 (1917) (husband and wife)). *A fortiori,* a subsequent purchaser would not thereby have notice of an unrecorded interest of that party in possession whose possession is consistent with record title. Consequently, the fact that a stranger to title, Ms. Neergaard, jointly occupied the subject property with a record title owner could

5. Appellee Peters seeks shelter behind the general rule that possession of land by one other than vendor puts an intending purchaser on inquiry notice of the possessor's interest. He relies upon *Basch v. Tidewater Associated Oil Company,* 49 Cal.App.2d (Supp.) 743, 745, 121 P.2d 545 (1942). Yet appellee ignores the exception to this rule acknowledged in that case. The *Basch* decision acknowledges the exception, not applicable in that case, that even possession by one other than the vendor is insufficient to create a duty of inquiry if that possession is consistent with the record title. *See Basch,* 49 Cal.App.2d (Supp.) at 745, 121 P.2d 545.

*In re Probasco* is not inconsistent with the opinion in the instant case. *Probasco* does not, as Peters contends, illustrate that "even where possession is consistent with title, there may still be a duty to inquire." Rather, it illustrates the opposite: where possession is not consistent with title, there is a duty to inquire. There, the Ninth Circuit held that even where record title indicated one party was sole owner of parcel "1," indicia of use and possession of that parcel "1" by a person not on record title as to parcel "1" gave rise to constructive notice of the latter's interest in it. *See In re Probasco,* 839 F.2d at 1356.

**Exhibit 4**

not generally be said to put a prudent person on inquiry notice of an unrecorded interest claimed by the record title owner or by Ms. Neergaard.

In exceptional circumstances, possession and use jointly by a record owner with a party lacking any recorded interest may constitute constructive notice of the latter's unrecorded interest. 3 H. Miller & M. Starr, *California Real Estate*, (2d ed. 1989) § 8.70. Miller & Starr cite as authority *Bessho v. General Petroleum Corp.*, 186 Cal. 133, 199 P. 22 (1921). There, the owner of a land plot orally leased the majority of the premises to a lessee, reserving a small corner occupied by a house for her own use. The lessee immediately cultivated his orally-leased plot, planting long beds and rows on it, thereby making it distinct from the portion reserved to the record owner. Such use and possession was sufficient to support a finding of the jury that a subsequent oral lessee had constructive notice of the prior oral lessee's interest. By contrast, the stipulated facts of the instant case do not indicate that Ms. Neergaard used the property in a manner that was clearly separate and distinguishable from Mr. Peter's use such as would put a subsequent party on notice of any unrecorded interest claimed by Ms. Neergaard.

Indeed, the prudent person of the constructive notice statute is a prudent person in the contemporary world. In the 1980's and 1990's, it is not uncommon for person who holds a titled interest in a property to occupy it jointly with a "significant other" who has no unrecorded interest in the property. In short, the occupancy of the subject property by Ms. Neergaard with Mr. Peters, whose possession was consistent with record title, was insufficient to constitute constructive notice of another unrecorded interest in the land claimed by Mr. Peters or Ms. Neergaard.

Because Mr. Peter's possession was consistent with record title, and because possession of property jointly by a party whose possession is consistent with record title with one who claims at best an unrecorded interest generally does not constitute constructive notice of either the former party's or the latter party's unrecorded interest, this Court rules that the bankruptcy court's finding, that the bankruptcy trustee had constructive notice of Mr. Peters' and/or Ms. Neergaard's unrecorded interest in the subject property, is clearly erroneous. Accordingly, it is reversed.

As a result, the bankruptcy court's finding that the appellant trustee is not entitled to any interest in the subject property is also reversed. Because the circumstances did not provide constructive notice of the unrecorded interests, the trustee, as a hypothetical bona fide purchaser, is afforded the protection of the recording acts under California state law. Pursuant to California Civil Code section 1214[6] and Bankruptcy Code section 544(a)(3), the bankruptcy trustee's status derives from record title on the date of the bankruptcy filing. The record title as of the date the bankruptcy commenced reflected that the debtor held a one-half undivided interest in the subject property as tenant in common with Marc Peters. Accordingly, the bankruptcy trustee is entitled to an undivided one-half interest in a tenancy in common in the subject property.

IT IS SO ORDERED.



---

## In re S.F. DRAKE HOTEL ASSOCIATES, a California Limited Partnership, dba Sir Francis Drake Hotel, Debtor.

### Bankruptcy No. 91-3-00748-LK.

United States Bankruptcy Court,
N.D. California.

Aug. 23, 1991.

Secured creditor sought accounting of cash collateral. The Bankruptcy Court,

---

6. California Civil Code section 1214 provides: "Every conveyance of real property, other than a lease for a term not exceeding one year, is void as against any subsequent purchaser or mortgagee of the same property, or any part thereof, in good faith and for a valuable consideration, whose conveyance is first duly recorded, and as against any judgment affecting the title, unless such conveyance shall have been recorded prior to the record of notice of action."

Exhibit 4

## IN RE S.F. DRAKE HOTEL ASSOCIATES
### Cite as 131 B.R. 156 (Bkrtcy.N.D.Cal. 1991)
**157**

Lloyd King, Chief Judge, held that hotel room revenue was rent, not accumulation of accounts, and thus remained subject to lien of prebankruptcy deed of trust which contained rents, issues and profits clause.

Motion granted.

**1. Bankruptcy ⊜2574**

Bankruptcy court applies state law to determine postpetition validity of security interests.

**2. Bankruptcy ⊜2578**
**Mortgages ⊜199(2)**

Under California law, hotel room revenue was rent, not accumulation of accounts, and thus remained subject to lien of prebankruptcy deed of trust which contained rents, issues and profits clause. Bankr.Code, 11 U.S.C.A. § 552(b).

Joseph A. Eisenberg, Levene & Eisenberg, Los Angeles, Cal., for debtor.

Jaculin Aaron, Shearman & Sterling, Los Angeles, Cal., for Sec. Pacific Nat. Bank.

### OPINION

LLOYD KING, Chief Judge.

### I. *Introduction*

Debtor in Possession S.F. Drake Hotel Associates (Debtor) filed a petition for reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101, *et seq.*, on February 25, 1991. Debtor owns and operates the Sir Francis Drake Hotel in San Francisco, California. Before the court is a contested matter in bankruptcy, initiated by secured creditor Security Pacific National Bank's motion for sequestration of rents, and segregation of and accounting for cash collateral. Debtor filed a cross-motion to determine the extent of Security Pacific's cash collateral, and for authority

1. No evidence has been introduced to establish a breakdown of hotel revenue between room occupancy and other sources. This opinion is limited to revenue generated from the occupancy of rooms.

2. The rent assignment created a lien only, and was not an absolute assignment transferring

to use the cash collateral for normal operating expenses, including repairs and renovations. This court has jurisdiction pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding in bankruptcy. 28 U.S.C. § 157(b)(2)(A), (M).

A hearing was held on July 8, 1991. Jaculin Aaron of Shearman & Sterling appeared on behalf of Security Pacific. Joseph A. Eisenberg and Ron Bender of Levene & Eisenberg represented Debtor.

The issue to be decided is whether the rents, issues, income, and profits clause in a Deed of Trust executed by Debtor operates to encumber the revenue generated from the occupancy of hotel rooms.[1] This issue is of importance for, if this clause does not apply, room revenue generated post-petition appears to be unencumbered "free money," which Debtor may use without restriction. 11 U.S.C. § 552(a). On the other hand, if room revenue is encumbered by the Deed of Trust, those funds are "cash collateral" which Debtor may not use without the consent of Security Pacific or order of the bankruptcy court. 11 U.S.C. § 363(c)(2).

### II. *Facts*

Security Pacific loaned $30,000,000 to Debtor pursuant to a September 26, 1986 Loan Agreement and Promissory Note. This obligation was secured by a deed of trust and assignment of rents, which was recorded under real property law.[2] Furthermore, the parties entered into a personal property Security Agreement, which was perfected by the filing of a U.C.C. Financing Statement. The personal property security agreement purports to create a security interest in room revenues.

The Deed Of Trust granted a first priority lien on the "Trust Estate," which is comprised of "the Property, the Rents, and the Rights" of Debtor. The Deed of Trust

title. The Loan Agreement provides: "5.1 *Nature of Collateral.* The Obligations of the Company under the Loan Documents shall be secured by a first priority lien or security interest in and to the Property and the Leases, subject only to the Permitted Exceptions."

**Exhibit 4**

# A TREATISE

ON

# EQUITY JURISPRUDENCE,

AS ADMINISTERED IN

## THE UNITED STATES OF AMERICA;

ADAPTED FOR ALL THE STATES,

AND

## TO THE UNION OF LEGAL AND EQUITABLE REMEDIES

UNDER THE REFORMED PROCEDURE

By JOHN NORTON POMEROY, LL.D.

## FOURTH EDITION

BY

JOHN NORTON POMEROY, Jr., A.M., LL.B.

Professor of Law in the University of Illinois

IN FOUR VOLUMES

## VOLUME II

BANCROFT-WHITNEY COMPANY
SAN FRANCISCO
THE LAWYERS CO-OPERATIVE PUBLISHING COMPANY
ROCHESTER, N. Y.
1918

-34-

Exhibit 5

iv                    TABLE OF CONTENTS—VOL. II.

§§ 569–577.   V. Admissibility and effect of extrinsic evidence.
    § 570.   General principles discussed and explained.
§§ 571–575.   When the subsequent benefit is given by a writing.
    § 572.   The writing expressly states the donor's intention.
    § 573.   The writing silent as to donor's intention, and no presumption
                arises from it.
    § 574.   The writing silent as to donor's intention, but a presumption of
                satisfaction arises from it.
    § 575.   Cases to which the foregoing rules apply.
    § 576.   When the subsequent benefit is given verbally.
    § 577.   Amount of evidence.

# SECTION IV.
## CONCERNING PERFORMANCE.

    § 578.   *Rationale.*
    § 579.   Definition.
§§ 580–583.   I. Covenant to purchase and settle or convey.
    § 580.   General rule: Lechmere v. Earl of Carlisle.
    § 581.   Forms of covenant to which the rule applies.
    § 582.   Special rules.
    § 583.   Such covenant creates no lien.
§§ 584–586.   II. Covenant to bequeath personal property.
    § 584.   General rule: Blandy v. Widmore; Goldsmid v. Goldsmid.
    § 585.   Limitations on the rule; covenant must not create a debt in life-
                time of deceased.
    § 586.   A legacy not a performance; distinction between "performance"
                and "satisfaction of legacy."
    § 587.   Presumption of performance by trustees.
§§ 588–590.   Meritorious or imperfect consideration; theory of.
§§ 589, 590.   Defective execution of powers; relief of.
    § 590.   Requisites for such relief; a partial execution necessary.

# SECTION V.
## CONCERNING NOTICE.

    § 591.   Questions stated: Le Neve v. Le Neve.
    § 592.   Knowledge and notice distinguished.
    § 593.   Kinds; actual and constructive.
    § 594.   Definition.
§§ 595–603.   Actual notice.
    § 596.   When shown by indirect evidence.
    § 597.   What constitutes; rumors; putting on inquiry, etc.
§§ 598–602.   Special rules concerning actual notice.
    § 603.   Effect of knowledge instead of notice.

**Exhibit 5**

TABLE OF CONTENTS—VOL. II.                    V

§§ 604–609.  Constructive notice in general.
    § 605.  Jones v. Smith, opinion of Wigram, V. C.
§§ 606, 607.  When the presumption is rebuttable; due inquiry.
    § 608.  When it is conclusive.
    § 609.  Species of constructive notice.
§§ 610–613.  1. By extraneous facts; acts of fraud, negligence, or mistake;
                general rule as to putting on inquiry; visible objects, etc.
§§ 614–625.  2. By possession or tenancy.
§§ 614, 615.  General rules, English and American.
§§ 616–618.  Extent and effect of the notice.
§§ 619–622.  Nature and time of the possession.
§§ 623, 624.  Whether the presumption is rebuttable or not.
    § 625.  Possession by a tenant or lessee.
§§ 626–631.  3. By recitals or references in instruments of title.
    § 626.  General rules.
§§ 627–631.  Nature and extent of the notice; limitations; instances, etc.
§§ 632–640.  4. By lis pendens.
    § 632.  Rationale: Bellamy v. Sabine.
§§ 633, 634.  General rules; requisites.
§§ 635, 636.  To what kind of suits the rule applies.
§§ 637, 638.  What persons are affected.
§§ 639, 640.  Statutory notice of lis pendens.
§§ 641–643.  5. By judgments.
§§ 644–665.  6. By recording or registration of instruments.
§§ 645, 646.  (1) The statutory system; abstract of statutes.
§§ 647–649.  (2) General theory, scope, and object of the legislation.
§§ 650–654.  (3) Requisites of the record, in order that it may be a notice.
    § 655.  (4) Of what the record is a notice.
§§ 656–658.  (5) To whom the record is a notice.
    § 657.  Not to prior parties.
    § 658.  To subsequent parties holding under the same source of title;
                effect of a break in the record.
§§ 659, 660.  (6) Effect of other kinds of notice, in the absence of a record.
§§ 661–665.  (7) What kinds of notice will produce this effect.
    § 662.  English rule.
§§ 663, 664.  Conflicting American rules; actual or constructive notice.
    § 665.  True rationale of notice in place of a record.
§§ 666–676.  7. Notice between principal and agent.
§§ 666–669.  Scope and applications.
§§ 670–675.  Requisites of the notice.
    § 670.  (1) Notice must be received by agent during his actual employ-
                ment.
§§ 671, 672.  (2) And in the same transaction; when in a prior transaction.
    § 673.  (3) Information must be material; presumption that it was com-
                municated to the principal.
§§ 674, 675.  Exceptions; agent's own fraud.
    § 676.  True rationale of this rule.

**Exhibit 5**

EQUITY JURISPRUDENCE. **1100**

# SECTION V.

## CONCERNING NOTICE.

### ANALYSIS.

§ 591.  Questions stated: Le Neve v. Le Neve.
§ 592.  Knowledge and notice distinguished.
§ 593.  Kinds; actual and constructive.
§ 594.  Definition.
§§ 595–603.  Actual notice.
§ 596.  When shown by indirect evidence.
§ 597.  What constitutes; rumors; putting on inquiry, etc.
§§ 598–602.  Special rules concerning actual notice.
§ 603.  Effect of knowledge instead of notice.
§§ 604–609.  Constructive notice in general.
§ 605.  Jones v. Smith, opinion of Wigram, V. C.
§§ 606, 607.  When the presumption is rebuttable; due inquiry.
§ 608.  When it is conclusive.
§ 609.  Species of constructive notice.
§§ 610–613.  1. By extraneous facts; acts of fraud, negligence, or mistake; general rule as to putting on inquiry; visible objects, etc.
§§ 614–625.  2. By possession or tenancy.
§§ 614, 615.  General rules, English and American.
§§ 616–618.  Extent and effect of the notice.
§§ 619–622.  Nature and time of the possession.
§§ 623, 624.  Whether the presumption is rebuttable or not.
§ 625.  Possession by a tenant or lessee.
§§ 626–631.  3. By recitals or references in instruments of title.
§ 626.  General rules.
§§ 627–631.  Nature and extent of the notice; limitations; instances, etc.
§§ 632–640.  4. By *lis pendens*.
§ 632.  *Rationale:* Bellamy v. Sabine.
§§ 633, 634.  General rules; requisites.
§§ 635, 636.  To what kind of suits the rule applies.
§§ 637, 638.  What persons are affected.
§§ 639, 640.  Statutory notice of *lis pendens*.
§§ 641–643.  5. By judgments.
§§ 644–665.  6. By recording or registration of instruments.
§§ 645, 646.  (1) The statutory system; abstract of statutes.
§§ 647–649.  (2) General theory, scope, and object of the legislation.
§§ 650–654.  (3) Requisites of the record, in order that it may be a notice.
§ 655.  (4) Of what the record is a notice.
§§ 656–658.  (5) To whom the record is a notice.
§ 657.  Not to prior parties.
§ 658.  To subsequent parties holding under the same source of title; effect of a break in the record.

**Exhibit 5**

§§ 659, 660.   (6) Effect of other kinds of notice, in the absence of a record.
§§ 661–665.   (7) What kinds of notice will produce this effect.
   § 662.   English rule.
§§ 663, 664.   Conflicting American rules; actual or constructive notice.
   § 665.   True *rationale* of notice in place of a record.
§§ 666–676.   7. Notice between principal and agent.
§§ 666–669.   Scope and applications.
§§ 670–675.   Requisites of the notice.
   § 670.   (1) Notice must be received by agent during his actual employment.
§§ 671, 672.   (2) And in the same transaction; when in a prior transaction.
   § 673.   (3) Information must be material; presumption that it was communicated to the principal.
§§ 674, 675.   Exceptions; agent's own fraud.
   § 676.   True *rationale* of this rule.

**§ 591. Questions Stated.**—It has been shown in the preceding chapter that there are two fundamental *principles* or maxims affecting to a greater or less degree nearly the entire body of equity jurisprudence,—nearly the entire administration of equitable rights and remedies,—namely, where there are equal equities, the one which is prior in time must prevail, and where there are equal equities, the law must prevail. These two principles necessarily find their most important application in cases, which are constantly arising, where several different, and perhaps successive, equitable, or legal and equitable, interests in or claims upon the same subject-matter exist at the same time, and there is a contest for the precedence among the respective holders of these interests or claims. It has also been shown that the application of these maxims turns upon the question, When are the different equities simultaneously subsisting with respect to the same subject-matter "equal"? or on the other hand, what renders them "unequal," so that one shall have an essential inherent superiority over another? In answering this question, the doctrine of Notice plays a most important part. When a person is acquiring rights with respect to any subject-matter, the fact whether he is so acting with or without notice of the interests or claims of others in or upon the same subject-matter is regarded throughout the whole range of equity

Exhibit 5

jurisprudence as a most material circumstance in determining the extent and even the existence of the rights which he actually acquires. In conformity with this view, the general rule has been most clearly established, that a purchaser with notice of the right of another is in equity liable to the same extent and in the same manner as the person from whom he made the purchase. The same rule may be thus expressed in somewhat different language: a person who acquires a legal title or an equitable title or interest in a given subject-matter, even for a valuable consideration, but with notice that the subject-matter is already affected by an equity or equitable claim in favor of another, takes it subject to that equity or equitable claim.[a] On the other hand, a person who has acquired a title, and paid a valuable consideration, without any notice of an equity actually existing in favor of another, *may* by that means obtain a perfect title, and hold the property freed from the prior outstanding equity.[b] This general doctrine was formulated by Lord Hardwicke in a celebrated case in the following emphatic terms: "The ground of it is plainly this: that the taking of a legal estate, after notice of a prior right, makes a person a *mala fide* purchaser. This is a species of fraud and *dolus malus* itself; for he knew the first purchaser had the clear right of the estate, and after knowing that, he takes away the right of another person by getting the legal estate. Now, if a person does not stop his hand, but gets the legal estate when he knew the right was in another, *machinatur ad circumveniendum.* It is a maxim, too, in our law that *fraus et dolus nemini patrocinari debent.*"[1] Lord Hardwicke was here speaking of the effect of an actual notice; and undoubtedly it

§ 591, [1] Le Neve v. Le Neve, Amb. 436; 2 Lead. Cas. Eq., 4th Am. ed., 109.

§ 591, (a) The text is quoted in Howard v. McPhail, 37 R. I. 21, Ann. Cas. 1917A, 186, 91 Atl. 12.
§ 591, (b) The text is cited to this effect in Seibet v. Bath, 5 Wyo. 409, 40 Pac. 756; Reel v. Reel, 59 W. Va. 106, 52 S. E. 1023; Swick v. Reese, 62 W. Va. 557, 59 S. E. 510.

**Exhibit 5**

is an act savoring of fraud for a person who has received actual, direct notice of another's right, to go on and knowingly acquire the property in violation of that other's right. But on the other hand, to base the entire doctrine of notice upon fraud, to regard all its rules as inferences from the equitable principle against fraud, is, in my opinion, to ignore the plain meaning of words, and to introduce an unnecessary and misleading fiction into the subject. Most of the confusion in the discussion by courts and writers has resulted, as it seems to me, from their acceptance of this *dictum* of Lord Hardwicke as universally true, and from their attempt to treat the effects of notice, under all circumstances, as mere instances and results of fraud. The great importance of the subject having thus been exhibited, its further examination will be conducted in the following order: 1. The nature of notice, what constitutes it, and its various kinds and classes; 2. The effects of notice, and especially the consequences of notice or the want of notice in determining priorities among equitable claims to or upon the same subject-matter.

§ 592. **Knowledge and Notice Distinguished.**—Before entering upon this examination, a few preliminary observations are necessary, to clear the ground and to explain the exact nature of the questions which are to be discussed, and of the conclusions to be reached by such discussion. In the first place, it is of the utmost importance to distinguish between the objects and purposes for which the fact of notice having been given may be invoked. One object of notice may be simply to affect the priority of a right which the one receiving it has acquired, and to subordinate such right to an interest in the same subject-matter held by another. On the other hand, notice *may* be regarded as an ingredient or badge of fraud, as a feature which renders the transaction entered into by the person who receives it fraudulent. A distinction clearly exists between these two purposes; and the rules which govern the nature and effect of notice in each must be different. That might easily be

Exhibit 5

sufficient to subordinate a person's right to another inter-
est which would at the same time fall far short of stamping
his conduct with actual fraud. In the second place, it should
be most carefully borne in mind that the legal conception
of "notice," as contained in the settled doctrines and rules
of equity, is somewhat artificial and even technical. In this
purely legal artificial sense, notice is by no means synony-
mous with knowledge, *although the effects produced by it
are undoubtedly the same which would result from actual
knowledge.* In other words, while the doctrines of equity on
the subject do not assume that notice *is* knowledge, nor
even that it is necessarily followed by knowledge, they still
often impute to it the very same consequences which would
flow from actual knowledge acquired by the party. As the
notice spoken of by the rules is not knowledge, there may be
notice without knowledge, and knowledge without notice.
If a person, A, were negotiating with B for the purchase
of a piece of land, and should be informed either by B or by
C that B had already given a deed or mortgage of the same
land to C, such information would be notice, and even the
highest kind of notice; but A would not thereby, in any true
meaning of the word, have *knowledge* of the deed or mort-
gage, of its various provisions and legal effect. On the
other hand, if, before the negotiation, A had been casually
shown the deed or mortgage itself by some third person in
whose possession it happened to be, had been permitted by
such person to take and read the instrument, had carefully
examined it, and had thus become familiar with all of its
provisions and its legal effect, he would not, within the set-
tled meaning of the legal term, have received *notice,* but he
would most certainly have obtained, and would be acting
with, a complete *knowledge* of the instrument. Again, un-
der certain circumstances, if A, while dealing with respect
to a piece of property, deliberately and intentionally re-
frains from making inquiries concerning outstanding en-
cumbrances or claims for the very purpose of avoiding any
information, he is charged with notice of the encumbrances

**Exhibit 5**

and claims which are actually outstanding; but he certainly does not acquire, and cannot possibly have, a *knowledge* of such prior charges or interests. The record of a deed or mortgage, when regularly and properly made, is constructive notice to subsequent purchasers and encumbrancers; but it does not necessarily convey any knowledge to such persons; while A, in purchasing land from B, is absolutely and conclusively bound by the proper record of a prior instrument affecting the same premises, he may be acting in perfect good faith and in most complete ignorance of the actual existence of any such instrument. If, however, before making the purchase, A had examined the official records, and had there discovered and read a deed or mortgage of the same land copied at length in the book of records, but under such circumstances that it was not legally entitled to be recorded, on account of a defective acknowledgment or other irregularity, he would not thereby have received any legal *notice* within the true meaning of the term, but he would as certainly have obtained a full *knowledge* of the instrument. These instances are sufficient to illustrate the distinction between notice, in its legal and somewhat artificial conception, and knowledge, and to show that one may exist without the other. Unless this distinction is clearly apprehended and constantly borne in mind, much of the judicial discussion concerning the nature and effect of notice will seem to be confused and uncertain, and an irreconcilable conflict will appear among many of the decisions; the distinction renders the discussion clear and certain, and the decisions harmonious. Whenever the mere notice, in its strict signification, is relied upon, even though not accompanied or followed by any actual knowledge, then, from considerations of policy and expediency, the same effects are attributed to it which would have resulted from actual knowledge; and it will be found that what constitutes this notice is determined by definite, precise, and even somewhat technical rules. Whenever, on the other hand, a party is shown to have obtained an actual

II—70

Exhibit 5

knowledge, even though there has been nothing which constitutes a notice in its true sense, then there is no longer any necessity of resorting to the artificial conception of notice; the consequences must naturally and necessarily flow from an actual knowledge of facts by a party, which from motives of expediency are attributed to a *notice* of the same facts given to him, in the absence of actual knowledge. In a word, among the complicated affairs and transactions of life, it is often necessary that mere ''notice'' should take the place of actual knowledge; but this does not and cannot mean that actual knowledge shall not produce the same effects upon the rights of parties which, from motives of policy, are given to its representative and substitute notice. This conclusion is, as it seems to me, self-evident, and it is most important; it reconciles at once all the confusion and conflict of opinion which, it must be confessed, appear in some of the decisions, and it has the support of the ablest judicial authority. It has been expressly sanctioned and adopted as the settled principle upon which courts of equity act, in a recent case by one of the ablest of modern English equity judges, Lord Cairns. He is speaking of a trustee dealing with the trust fund in his hands, and acting with *knowledge,* but without the true notice, actual or constructive, required by the settled rules, of an encumbrance on the property created by the *cestui que trust.* The general language which he uses with respect to these particular facts will apply to all cases of knowledge as distinct from notice. Lord Cairns says: ''All I can do is to apply those principles which have been well established as part of those principles on which the court proceeds. . . . I am bound to say that I do not think it would be consistent with the principles upon which this court has always proceeded, or with the authorities which have been referred to, if I were to hold that under no circumstances could a trustee, without express notice from the encumbrancer, be fixed with knowledge of an encumbrance upon the fund of which he is the trustee. It

must depend upon the facts of the case.  But I am quite prepared to say that I think the court would expect to find that those who alleged that the trustee had knowledge of the encumbrance had made it out, not by any evidence of casual conversations, much less by any *proof of what would only be constructive notice,* but by proof that the mind of the trustee has in some way been brought to an intelligent apprehension of the nature of the encumbrance which has come upon the property, so that a reasonable man, or an ordinary man of business, would act upon the information, and would regulate his conduct by it in the execution of the trust.  If it can be shown that *in any way* the trustee has got *knowledge* of that kind,—knowledge which would operate upon the mind of any rational man, or man of business, and make him act with reference to the knowledge he has so acquired,—there I think the end is attained, and that there has been fixed upon the conscience of the trustee, and through that upon the trust fund, a security against its being parted with in any way that would be inconsistent with the encumbrance which has been created." [1]   This extract states what is, in my opinion, the general doctrine, applied here to a trustee, but applicable to all persons whose rights or liabilities can be affected by notice of rights belonging to others.  It declares that although there may be no technical "notice," not even a *constructive* notice, still there may be an *actual knowledge,* acquired in modes which do not amount to notice; and this *knowledge* may produce the same effects which the rules of equity attribute to "notice." [a]

§ 593.  **Kinds — Actual and Constructive.**—Notice has been divided by judges and writers into the two main

§ 592, [1] Lloyd v. Banks, L. R. 3 Ch. 488, 490, per Lord Cairns.

§ 592, (a) This section is cited in Cleveland Woolen Mills v. Sibert, 81 Ala. 140, 1 South. 773; Kirkham v. Moore, 30 Ind. App. 549, 65 N. E. 1042; Cleveland, C. C. & St. L. R. Co. v. Moore, 170 Ind. 328, 82 N. E. 52, 84 N. E. 540 (notice putting on inquiry is not always the equivalent of full knowledge).

Exhibit 5

classes,—"actual" and "constructive"; but. there is a great diversity of opinion among text-writers in determining what particular kinds shall come within each of these two classes. According to some, "constructive" notice includes those instances in which no information of the existence of any prior right or claim is directly or indirectly communicated to the party, but certain facts are shown to have existed, and from these the party is *conclusively* presumed to have received the information, and is therefore conclusively charged with notice. In other words, the information amounting to a notice, although not in fact given, is inferred as a conclusive presumption of the law, and this presumption cannot be rebutted by any evidence to the contrary. All other kinds, according to this theory, are "actual." This latter class, therefore, embraces many degrees, from the highest, where a positive, personal information of a fact is directly communicated to the party, down through every grade, in which the notice is either implied by *prima facie* presumptions of law from certain facts shown to exist, or is inferred as an argumentative conclusion, with greater or less cogency, from evidence which is perhaps entirely circumstantial. The objections to this mode of classification are plain. It is, in fact, no classification; it groups under the head of "actual" notice different species which have no common features, no real resemblance, and the name "actual" is an evident misnomer; while on the other hand the class of "constructive" is, from its definition, necessarily confined to a very few species, technical and artificial in their nature, the most important one being wholly .the creature of statute. I prefer and shall adopt the classification approved and followed by many of the most eminent judges, which has the merit of simplicity, naturalness, and certainty. According to this arrangement, "actual" notice embraces all those instances in which positive personal information of a matter is directly commuicated to the party, and this communication of information, being a fact, is es-

tablished by evidence *directly* tending with more or less cogency to its proof. "Constructive" notice includes all other instances in which the information thus directly communicated cannot be shown, but the information is either *conclusively* presumed to have been given and received from the existence of certain facts, or is implied by a *prima facie* presumption of the law in the absence of contrary proof.[a]

§ 594. **Definition.**—Judges and text-writers have seldom attempted to define notice in the abstract, but have generally contented themselves with specifying instances, or describing its kinds and effects. Within the meaning of the rules, notice may, I think, be correctly defined as the *information concerning a fact* actually communicated to a party by an authorized person, or actually derived by him from a proper source, or else presumed by law to have been acquired by him, which information is regarded as equivalent *in its legal effects* to full knowledge of the fact, and to which the law attributes the same consequences as would be imputed to knowledge. It should be most carefully observed that the notice thus defined is not knowledge, nor does it assume that knowledge necessarily results.[a] On the other hand, the information which constitutes the notice may be so full and minute as to produce complete knowl-

§ 593, (a) The text is quoted in Meador Bros. v. Hines (Tex. Civ. App.), 165 S. W. 915; Houston Oil Co. of Texas v. Griggs (Tex. Civ. App.), 181 S. W. 833. This section is cited in Cleveland Woolen Mills v. Sibert, 81 Ala. 140, 1 South. 773; Cleveland, C. C. & St. L. R. Co. v. Moore, 170 Ind. 328, 82 N. E. 52, 84 N. E. 540. In Drey v. Doyle, 99 Mo. 459, 12 S. W. 287, the court commented on the confusion produced by the erroneous use of the terms "actual" and "constructive" notice, and approved the definitions given in the text.

§ 594, (a) This definition is quoted, with approval, in Cleveland Woolen Mills v. Sibert, 81 Ala. 140, 1 South. 773, and in Houston Oil Co. of Texas v. Griggs (Tex. Civ. App.), 181 S. W. 833. This and the two sections following are cited in Kirkham v. Moore, 30 Ind. App. 549, 65 N. E. 1042, where a finding that a purchaser had no "actual knowledge," was held not to be equivalent to a finding that he had "no actual notice."

**Exhibit 5**

edge.[1]  Although an actual knowledge is not necessarily assumed to result, yet in many instances, as will be seen, the party is not permitted to show this fact, but the same consequences follow with respect to his rights and interests as though he had obtained real knowledge.  The correctness of the definition which I have formulated will appear from a comparison of all the cases hereafter cited in the discussions of this section.  In dealing with the subject, great care should be taken to distinguish between notice and the evidence by which it is established.  The personal communication of information which constitutes notice is a fact which may be proved by any kind of competent evidence submitted to, weighed, and passed upon by the tribunal which decides matters of fact.  Whenever the notice is inferred by a conclusive or *prima facie* presumption from certain facts, the office of evidence is to prove the existence of those facts.  Notice is either actual or constructive; but the legal effect of each kind, when established, is exactly the same.[2] [b]

§ 594, [1] Of the few definitions given by text-writers, the following are examples: The English editors of the Leading Cases in Equity attempt no general definition.  The American editor says: "In legal parlance, notice is information given by one duly authorized, or derived from some authentic source.  Notice may be either actual or constructive."  While this definition has the merit of extreme brevity, and of correctly preserving the distinction between notice and knowledge, it lacks, as it seems to me, some of the essential elements of the entire legal conception: 2 Lead. Cas. Eq., 4th Am. ed., 144.  Another American writer says: "Notice, then, in its technical sense, is the legal cognizance of a fact.  It differs from knowledge, for knowledge may exist without notice, and there may be notice without any actual knowledge. . . . Notice, therefore, in the sense here used, may be said to be the definite legal cognizance, either actual or presumptive, of a right or title": Bispham's Equity, 325.  While the distinction between notice and knowledge is here distinctly emphasized, yet the definition itself, in calling notice the "legal cognizance" of a fact, gives the *effect* of notice rather than describes the thing itself.  Legal cognizance means simply legal knowledge, and is the effect which the law regards as produced by notice.

§ 594, [2] Prosser v. Rice, 28 Beav. 68, 74.

§ 594. (b) This sentence is quoted in Central Savings Bank v. Smith, 43 Colo. 90, 95 Pac. 307 (*lis pendens*).

Exhibit 5

**§ 595.  Actual Notice.[a]**—Actual notice is information concerning the fact,—as, for example, concerning the prior interest, claim, or right,—directly and personally communicated to the party.[1]  The distinction between actual and constructive notice does not primarily depend upon the *amount* of the information, but on the manner in which it is obtained, or assumed to have been obtained.  In actual notice information is not *inferred* by any presumption of law; the personal communication of it is a fact, and, like any other fact, is to be proved by evidence.  The information *may* be so full, minute, and circumstantial, that the party receiving it thereby acquires a complete knowledge of the prior fact affecting the transaction in which he is then engaged, or it may fall far short of conveying such knowledge.[2]  Again, the evidence may be so direct, positive, and overwhelming as to establish the fact that the information was personally given and received in the most convincing and unequivocal manner, or it may be entirely indirect and circumstantial.  Wherever, from competent evidence, either direct or circumstantial, the court or the jury is entitled to infer, *as a conclusion of fact, and not by means of any legal presumptions,* that the information was personally communicated to or received by the party, the notice is actual. In short, actual notice is a conclusion of fact, capable of being established by all grades of legitimate evidence.[3] [b]

§ 595, 1 "Notice is actual when the purchaser is aware of the adverse claim or title, or has such information as would lead to knowledge": Am. note in 2 **Lead.** Cas. Eq., 4th Am. ed., 144.

§ 595, 2 Williamson v. Brown, 15 N. Y. 354.  Actual notice need not be full, circumstantial information of every material fact affecting the right of the person receiving it; it is enough that it be information directly tending to show the existence of the fact, and sufficient to put the party on an inquiry: Barnes v. McClinton, 3 Penr. & W. 67, 23 **Am. Dec.** 62; Tillinghast v. Champlin, 4 R. I. 173, 215, 67 **Am. Dec.** 510.

§ 595, 3 Tillinghast v. Champlin, 4 R. I. 173, 215, 67 **Am. Dec.** 510; Warren v. Swett, 31 N. H. 332, 341, 342; Hull v. Noble, 40 Me. 459, 480;

§ 595, (a) This section is cited in Coleman v. Dunton (Me.), 58 Atl. 430; Oglebay v. Todd, 166 Ind. 250, 76 N. E. 238; Cleveland, C. C. & St. L. R'y Co. v. Moore, 170 Ind. 328, 82 N. E. 52, 84 N. E. 540.

§ 595, (b) This paragraph is quoted in full in Parker v. Maslin

Exhibit 5

§ **596.  When Shown by Indirect Evidence.**[a]—It is admitted by all text-writers and by many judges that much confusion and inaccuracy of language are exhibited in the decisions concerning actual and constructive notice; notices are not infrequently called "constructive," which are really "actual," and the rules governing the two are confounded.[1]  That the party has knowledge or information of facts sufficient to put him upon an inquiry has often been treated as peculiarly the characteristic of constructive notice.  In truth, however, this test is equally applicable to every instance of actual notice inferred by process of rational deduction from circumstantial evidence.[2]  The

Buttrick v. Holden, 13 Met. 355, 357; Trefts v. King, 18 Pa. St. 157, 160; Rogers v. Jones, 8 N. H. 264; Griffith v. Griffith, 1 Hoff. Ch. 153; Nelson v. Sims, 23 Miss. 383, 388, 57 **Am. Dec.** 144; Curtis v. Blair, 26 Miss. 309, 328, 59 **Am. Dec.** 257; Bartlett v. Glascock, 4 Mo. 62, 66; Epley v. Witherow, 7 Watts, 163, 167; Jaqnes v. Weeks, 7 Watts, 261, 274; Blatchley v. Osborn, 33 Conn. 226, 233; Buck v. Paine, 50 Miss. 648, 655; Carter v. City of Portland, 4 Or. 339, 350, per McArthur, J. (a very clear and accurate statement of the doctrine); Speck v. Riggin, 40 Mo. 405; Maupin v. Emmons, 47 Mo. 304, 306, 307; Maul v. Rider, 59 Pa. St. 167, 171, 172.

§ 596, [1] Williamson v. Brown, 15 N. Y. 354, per S. L. Selden, J.

§ 596, [2] The confusion mentioned in the text is easily and completely dispelled and the necessary distinction between the two kinds of notice is clearly shown by a brief analysis of their essential operation. · When A is dealing with B for the purchase of land which he knows, sees, or is told to be in the possession of a stranger, C, such possession does not show or tend to show that any information or knowledge of C's interest was directly and personally communicated to A; but *the law presumes* that information of C's real interest and claim was communicated.  But the presumption in this case is rebuttable; it is said that A is put upon

85 Kan. 130, 116 Pac. 227.  See, also, Knapp v. Bailey, 79 Me. 195, 1 **Am. St. Rep.** 295, 9 Atl. 122; Batavia v. Wallace, 102 Fed. 240, 42 C. C. A. 310; Haskett v. Auhl, 3 Kan. App. 744, 45 Pac. 608; Simon Gregory Dry Goods Co. v. Schooley, 66 Mo. App. 406; Lewis v. Dudley, 70 N. H. 594, 49 Atl. 572; Ball v. Danton, 64 Or. 184, 129 Pac. 1032; Aultman & Co. v. Utsey, 34 S. C. 559, 13 S. E.

848; all holding that actual notice is a conclusion of fact.

§ 596, (a) This section is cited in Coleman v. Dunton (Me.), 58 Atl. 430; Cleveland, C. C. & St. R. Co. v. Moore, 170 Ind. 328, 82 N. E. 52, 84 N. E. 540.  Sections 596–600 are cited in Adams v. Gossom, 228 Mo. 566, 129 S. W. 16; Scoggin v. Mason, 46 Tex. Civ. App. 480, 103 S. W. 831.

**Exhibit 5**

distinction is plain and natural.   In all cases of construc-
tive notice, there is no  evidence  which directly tends to
show that any information of the prior conflicting claim
was personally brought home to the  consciousness of the
party affected; the particular facts of which he is shown
to have knowledge do not directly tend to show such infor-
mation; but from these facts the legal presumption arises,

an inquiry; if he fails to make *any* inquiry, or to prosecute it with reason-
able diligence, then the presumption is absolute; if he does prosecute it
with reasonable diligence, and does not discover the truth, then the pre-
sumption is overcome.   But it should be observed that the jury or court
does not find the existence of a notice as a conclusion of fact deduced by
rational argument from the fact of C's possession; the only province of
the triers of fact in this case is to determine the nature, extent, and effect
of A's inquiry as a means of rebutting the presumption.   A second kind
of constructive notice arises from recitals, statements, and references in
title deeds.   Here, also, it is very plain that there is nothing tending to
show direct personal information, since the party is affected with the
notice although he may not have read the deed, and even though he may
not have seen it.   A is the grantee in a deed of conveyance.   From the
mere fact that he must derive his title through that instrument and through
the line of prior conveyances, he is charged with notice of all that they
contain or refer to.   This fact does not in the least tend to show that A
received any direct personal information of a conflicting interest or claim;
the inference is a pure presumption of law, based upon considerations of
general policy, and does not require any argumentative deduction from
evidence.   A third instance of constructive notice is that with which a
principal is charged, when information or knowledge has been obtained
by his agent.   When this particular case is carefully considered, it will
be perceived that it is governed by precisely the same principles as those
which have already been examined.   The *mere fact* that the agent has
acquired information does not tend to show that the information has been
directly and personally communicated to the principal; nor does the rule
depend in the slightest degree upon such an assumption.   That informa-
tion constituting notice is imputed to the principal is entirely a presump-
tion of law, supported by considerations of expediency, and made without
any reference to the actual fact.   The last instance of constructive notice
which I shall mention is that resulting from registration pursuant to stat-
ute.   The *mere fact* that an instrument, of which the party is profoundly
ignorant, has been recorded, certainly does not tend to show that he has
received any direct personal information concerning it, and the interest
or claim which it creates.   The presumption arises from the positive man-

Exhibit 5

§ 596      EQUITY JURISPRUDENCE.      **1114**

either conclusive or rebuttable, that the information was received. In all cases of actual notice inferred from circumstantial evidence, the facts proved do directly tend to show that information of the prior conflicting claim was personally brought home to the consciousness of the party. The court or jury infers from the facts proved, by a process of rational deduction, *but without the aid of any*

date of a statute; there is no occasion for, nor even possibility of, any conclusion of fact drawn from evidence by a process of argument.

The foregoing instances show the *rationale* of the operation of all constructive notices. A similar analysis will disclose the true operation of actual notice. When A is dealing with B for the purchase of land, and the evidence shows that A is directly and personally informed, either by B or by C, that C already holds a conveyance, or mortgage, or encumbrance, or possesses an easement or other charge upon the same premises, the case is so simple, and the notice is so clearly actual, that no doubt can exist concerning it. Whenever the object is to prove that A has received the same kind of personal information concerning some prior interest or claim held by C, but the fact cannot be shown by any direct evidence, *but must be established by indirect and circumstantial evidence,*—that is, must be inferred by the jury or court as a legitimate deduction from such evidence,—the notice is none the less actual; it is to be inferred as a conclusion of fact, by a weighing of the evidence and process of argument, *unaided by any legal presumptions*. One illustration will suffice. A purchased land from B. A third person, C, from whom B obtained the property, has a claim upon it; and the question is, whether A took with notice of C's claim. There is no direct evidence of any information given to A by either B or C. But it is proved that A is B's son, and has constantly lived in his house and been a member of his family; that for several years A has been acquainted with his father's business affairs, and has taken an active part in their management; that A was familiar with the transaction by which B obtained the premises from C, and aided his father in negotiating the contract with C, etc. If from these and similar facts a notice should be inferred, it would be an actual notice, and not constructive. No legal presumptions would aid the court or jury; they would simply arrive at the conclusion, by a process of rational argument, that at some time information or knowledge of C's claim was directly and personally communicated to or acquired by A, in exactly the same manner as a jury may infer that a certain man and woman were at some past time actually married, from the circumstantial evidence of their cohabitation and holding each other out to the world as husband and wife. The only question of law in such a case is, whether the evidence is sufficient to

**Exhibit 5**

*legal presumption,* that such information was actually received.[b]  In weighing this evidence, the tribunal may properly ask whether the facts proved were sufficient to put the party upon an inquiry, so that, if he went on with the transaction without making any inquiry, his actual receipt of information and consequent notice is a legitimate or necessary conclusion; or whether, on the other hand, he prosecuted an inquiry to such an extent and in such a manner that his actual failure to acquire information is a just inference of fact.[3]  A careful examination of the cases con-

warrant the finding of fact that information or knowledge of C's claim was actually acquired by A.  It is true that many cases say, under such circumstances, that "the facts proved are sufficient to put the party, A, upon an inquiry, and if he neglected to make a due inquiry he must be charged with notice."  Such a mode of statement is entirely proper; but it is incorrect, misleading, and a confounding of the two kinds of notice, to say under such circumstances that if the party neglects to make a due inquiry *he is presumed to have received the information* which constitutes notice.  In all cases of information constituting actual notice inferred from circumstantial evidence, this statement that "the facts proved are sufficient to put the party upon an inquiry," etc., is simply tantamount to saying that the facts and circumstances, when uncontradicted and unexplained, are sufficient evidence to warrant a finding that the information was directly and personally acquired by the party, but that the facts and circumstances may be sufficiently explained by the party's showing that he did make a reasonable inquiry, and did seek for information, but failed to obtain it.  By such means the conclusion which would otherwise have been drawn from the unexplained circumstances is overcome and negatived.  For illustrations of these positions, see cases cited in the next following note.

§ 596, [3] In a large number of American cases the discussion concerning actual notice has arisen upon an interpretation of a statutory provision which expressly requires "actual notice" of a prior unrecorded deed or encumbrance, in order that it may have priority over a subsequent deed or mortgage which is first put on record.  In a few of the states the courts have interpreted the intention of the legislature as demanding that the personal information of the unrecorded instrument should be proved by direct evidence, and as excluding all instances of actual notice established by circumstantial evidence.  In most of the states, however, where this

§ 596, (b) The text is quoted in Houston Oil Co. of Texas v. Griggs (Tex. Civ. App.), 181 S. W. 833.

Exhibit 5

cerning notice inferred from circumstances will show that in a large proportion of them the notice was actual, and not constructive; and that one or the other of the following questions was in reality considered and determined by the court: 1. It being shown that the party had been informed of certain facts, and it further appearing that he had, not-

statutory clause is found, the courts have defined the "actual notice" required by the legislature as embracing all instances of that species in contradistinction from "constructive notice,"—that is, all kinds of actual notice, whether proved by direct evidence or inferred as a legitimate conclusion from circumstances.[c] Whichever view of the statute be taken, these decisions are all useful in describing the nature of actual notice, and especially in distinguishing actual notice proved by circumstantial evidence from constructive notice. See Brinkman v. Jones, 44 Wis. 498, 517, 519, 521, 523; Brown v. Volkening, 64 N. Y. 76, 82, 83; Lambert v. Newman, 56 Ala. 623, 625; Helms v. Chadbourne, 45 Wis. 60, 70, per Cole, J.; Chicago etc. R. R. Co. v. Kennedy, 70 Ill. 350, 361, per Walker, J.; Shepardson v. Stevens, 71 Ill. 646; Erickson v. Rafferty, 79 Ill. 209, 212; Reynolds v. Ruckman, 35 Mich. 80; Loughridge v. Bowland, 52 Miss. 546, 553, 555; Trefts v. King, 18 Pa. St. 157, 160; Rogers v. Jones, 8 N. H. 264; Griffith v. Griffith, 1 Hoff. Ch. 153; Nelson v. Sims, 23 Miss. 383, 388, 57 **Am. Dec.** 144; Barnes v. McClinton, 3 Penr. & W. 67, 23 **Am. Dec.** 62; Bartlett v. Glascock, 4 Mo. 62, 66; Epley v. Witherow, 7 Watts, 163, 167; Jaques v. Weeks, 7 Watts, 261, 274; Buttrick v. Holden, 13 Met. 355, 357; Curtis v. Blair, 26 Miss. 309, 328, 59 **Am. Dec.** 257; Hull v. Noble, 40 Me. 459, 480; Warren v. Swett, 31 N. H. 332, 341; Tillinghast v. Champlin, 4 R. I. 173, 215, 67 **Am. Dec.** 510; Buck v. Paine, 50 Miss. 648, 655; Carter v. City of Portland, 4 Or. 339, 350; Pringle v. Dunn, 37 Wis. 449, 460, 461, 465, 19 **Am. Rep.** 772; Parker v. Kane, 4 Wis. 1, 65 **Am. Dec.** 283; Shotwell v. Harrison, 30 Mich. 179; Munroe v. Eastman, 31 Mich. 283; Eck v. Hatcher, 58 Mo. 235; Maupin v. Emmons, 47 Mo. 304, 306, 307; Parker v. Foy, 43 Miss. 260, 266, 55 **Am. Rep.** 484; Wailes v. Cooper, 24 Miss. 208, 228.

In the recent and very instructive case of Brinkman v. Jones, 44 Wis. 498, the question was, whether a grantee had sufficient notice of a prior unrecorded deed to defeat his own recorded conveyance. The court were called upon to interpret the Wisconsin statute, which requires "actual notice" under such circumstances; and it discussed in a very full and accurate manner the true meaning and operation of actual notice. Taylor, J., said (p. 519): "The actual notice required by the statute is not synony-

§ 596, (c) Quoted in Knapp v. Bailey, 79 Me. 195, 1 **Am. St. Rep.** 295, 9 Atl. 122.

Exhibit 5

CONCERNING NOTICE.

withstanding such information, and without making any inquiry respecting its truth, gone on and completed the transaction, whether the court or jury were warranted in inferring as a legitimate conclusion from the evidence that he had *also* received that direct, personal information concerning the existence of a prior conflicting claim which the law

mous with *actual knowledge*. We think the true rule is, that notice must be held to be actual when the subsequent purchaser has actual knowledge of such facts as would put a prudent man upon inquiry which, if prosecuted with ordinary diligence, would lead to actual notice of the right or title in conflict with that which he is about to purchase. When the subsequent purchaser has knowledge of such facts, it becomes his duty to make inquiry, and he is guilty of bad faith if he neglects to do so, and consequently he will be charged with the actual notice he would have received if he had made the inquiry. We are aware that this construction of the statute is in conflict with the later decisions in Massachusetts and Indiana, and with the definition given to the term by Story in his Equity Jurisprudence, section 399: Parker v. Osgood, 3 Allen, 487; Dooley v. Wolcott, 4 Allen, 406; Sibley v. Leffingwell, 8 Allen, 584; White v. Foster, 102 Mass. 375; Lamb v. Pierce, 113 Mass. 72; Crasson v. Swoveland, 22 Ind. 428, 434. . . . These cases all proceed upon the theory that actual notice and actual knowledge mean the same thing." The court also cites decisions from many other states by which the same interpretation is given to similar statutes, and the same meaning attributed to "actual notice." It is admitted, however, that no mere "constructive notice" to the subsequent purchaser would avail, under such a statute, to defeat his rights under an instrument first recorded. In the following cases substantially the same test is laid down, namely: "A knowledge of such facts and circumstances as would put an ordinarily prudent man upon an inquiry." It is true that in some of these opinions the language of the court *appears* to connect this test with constructive notice only; but a closer examination will show that, whatever be the language used, the judge really has in mind and is speaking of those instances of actual notice which are inferred from circumstantial evidence. See Lambert v. Newman, 56 Ala. 623; Helms v. Chadbourne, 45 Wis. 60; Chicago etc. R. R. Co. v. Kennedy, 70 Ill. 350; Shepardson v. Stevens, 71 Ill. 646; Loughridge v. Bowland, 52 Miss. 546; Barnes v. McClinton, 3 Penr. & W. 67, 23 **Am. Dec.** 62; Warren v. Swett, 31 N. H. 332; Buttrick v. Holden, 13 Met. 355,—all of which are cited *supra*. In the recent case of Brown v. Volkening, 64 N. Y. 76, the kind and amount of notice required to defeat the precedence obtained by the first recording of a subsequent conveyance was discussed. The statute of New York does not in express terms require the notice to be actual. The notice relied upon was constructive, arising from the fact of

Exhibit 5

calls "actual notice." 2. It being shown that the party had been informed of certain facts, and it further appearing that he had thereupon made inquiry respecting the truth of such information before he completed the transaction, whether the court or jury were warranted in inferring as a legitimate conclusion from the whole evidence, either that he had or had not received that direct personal information which constitutes actual notice.[4]

### § 597. **What Constitutes It: Rumors; Putting on Inquiry, etc.**[a]—A purchaser, or person obtaining any right in

possession by a third person; and the precise point decided was confined to the kind, nature, purposes, and extent of the possession necessary under such circumstances to raise a legal presumption and to constitute a sufficient constructive notice. In the course of his opinion, however, Allen, J., speaks of actual notice in the following language, which fully corroborates the positions of the text (p. 82): "Actual notice of a prior unrecorded conveyance, or of any title, legal or equitable, to the premises, or knowledge or notice of any facts which should put a prudent man upon inquiry, impeaches the good faith of the subsequent purchaser. There should be proof of actual notice of prior title or prior equities, or *circumstances tending to prove* such prior rights, which affect the conscience of the subsequent purchaser. Actual notice of itself impeaches the subsequent conveyance. Proof of circumstances short of actual notice, which should put a prudent man upon inquiry, authorizes the court or jury to infer and find actual notice." This passage of Mr. Justice Allen's opinion exactly adopts the reasoning and conclusions as given in the text. It declares that when a court or jury find notice as a conclusion of fact from circumstances tending to show it, which should put a prudent man upon inquiry, such notice is actual as truly as though it was proved by direct evidence. It is actual, and not constructive, because, although inferred from circumstances, it is inferred by mere process of argument, and not by means of any legal presumptions. If the party thus put upon inquiry neglects to prosecute the inquiry, the conclusion of fact is then absolute, since the circumstances are left unexplained and the natural inference from them is left unanswered and unweakened. To the same effect as Brinkman v. Jones, 44 Wis. 498, is Maupin v. Emmons, 47 Mo. 304, 306, 307.

§ 596, [4] See the cases cited in the last preceding and in the next following notes.

§ 597, (a) Sections 597, 598, are cited in Stuart v. Farmers' Bank, 137 Wis. 66, 16 **Ann. Cas.** 821, 117 N. W. 820, dissenting opinion. This

specific property, is not affected by vague rumors, hearsay statements, and the like, concerning prior and conflicting claims upon the same property; and the reason is, that such kind of reports and statements do not furnish him with any positive information, any tangible clew, by the aid of which he may commence and successfully prosecute an inquiry, and thus discover the real truth; his conscience is therefore not bound. [1] [b]   On the other hand, the proposition is established by an absolute unanimity of authority, and is equally true both in its application to constructive notice, and to actual notice not proved by direct evidence but inferred from circumstances, that if the party obtains knowledge or information of facts tending to show the existence of a prior right in conflict with the interest which he is seeking to obtain, and which are sufficient to put a reasonably prudent man upon inquiry, then it may be a legitimate, and perhaps even necessary, inference that he acquired the further information which constitutes actual notice. This inference is not, in case of actual notice, a presumption, much less a conclusive presumption, of law; it may be defeated by proper evidence. If the party shows that he made the inquiry, and prosecuted it with reasonable diligence, but still failed to discover the conflicting claim, he thereby overcomes and destroys the inference. If, however, it appears that the party obtains knowledge

§ 597, [1] Woodworth v. Paige, 5 Ohio St. 70; Lamont v. Stimson, 5 Wis. 443; Shepard v. Shepard, 36 Miss. 173; Doyle v. Teas, 4 Scam. 202; Butler v. Stevens, 26 Me. 484; Jaques v. Weeks, 7 Watts, 261, 267; Wilson v. McCullough, 23 Pa. St. 440, 62 Am. Dec. 347; Jolland v. Stainbridge, 3 Ves. 478.

paragraph is cited in Northrop v. Columbian Lumber Co., 186 Fed. 770, 108 C. C. A. 640; John Silvey & Co. v. Cook, 191 Ala. 228, 68 South. 37; Mellon v. St. Louis Union Trust Co., 225 Fed. 693, 140 C. C. A. 567; Johansen v. Looney, 30 Idaho, 123, 163 Pac. 303.

§ 597, (b) See, also, Satterfield v.

Malone, 35 Fed. 445; Raymond v. Flavel, 27 Or. 219, 40 Pac. 158 (citing this section); Hopkins v. O'Brien, 57 Fla. 444, 49 South. 936 (neighborhood reputation): W. L. Moody & Co. v. Martin (Tex. Civ. App.), 117 S. W. 1015; Williams v. Smith, 128 Ga. 306, 57 S. E. 801; and post, § 602.

Exhibit 5

§ 597                    EQUITY JURISPRUDENCE.                    1120

or information of such facts, which are sufficient to put a
prudent man upon inquiry, and which are of such a nature
that the inquiry, *if prosecuted with reasonable diligence,
would certainly lead to a discovery of the conflicting claim,*[c]
then the inference that he acquired the information con-
stituting actual notice is necessary and absolute; for this
is only another mode of stating that the party was put upon
inquiry; that he made the inquiry and arrived at the truth.
Finally, if it appears that the party has knowledge or in-
formation of such facts sufficient to put a prudent man upon
inquiry, and that he wholly neglects to make any inquiry, or
having begun it fails to prosecute it in a reasonable man-
ner, then, also, the inference of actual notice is necessary
and absolute.[d]   These three propositions substantially em-
brace all instances of actual notice proved by circumstan-
tial evidence, and they are illustrated by a vast number of
decisions, each depending upon its own particular circum-
stances.[2][e]

§ 597, [2] Spofford v. Weston, 29 Me. 140; Warren v. Swett, 31 N. H.
332, 341; Nute v. Nute, 41 N. H. 60; Blaisdell v. Stevens, 16 Vt. 179, 186;
Stafford v. Ballou, 17 Vt. 329; McDaniels v. Flower Brook etc. M. Co.,
22 Vt. 274; Stevens v. Goodenough, 26 Vt. 676; Blatchley v. Osborn, 33

§ 597, (c) Quoted in dissenting
opinion in Bell v. Solomons (Cal.),
75 Pac. 649; in New York, N. H. &
H. R. Co. v. Russell, 83 Conn. 581,
78 Atl. 324; in Le Vine v. White-
house, 37 Utah, 260, Ann. Cas. 1912C,
407, 109 Pac. 2; paraphrased in
Wahl v. Stoy, 72 N. J. Eq. 607,
66 Atl. 176. That the facts must
be of such a nature as to lead
to the discovery of the conflicting
claim, see College Park Electric Belt
Line v. Ide, 15 Tex. Civ. App. 273,
40 S. W. 64; Fischer v. Lee, 98 Va.
159, 35 S. E. 441; and cases cited at
the end of this paragraph. See, also,
Herbert v. Wagg, 27 Okl. 674, 117
Pac. 209 (where inquiry would have
been ineffectual, because the party

from whom inquiry would have been
made did not know of her right, fail-
ure to make it is immaterial); John-
son v. Erlandson, 14 N. D. 518, 105
N. W. 722 (facts discovered must
furnish a clue to facts to be dis-
covered).

§ 597, (d) The text is quoted in
New York, N. H. & H. R. Co. v. Rus-
sell, 83 Conn. 581, 78 Atl. 324; in Le
Vine v. Whitehouse, 37 Utah, 260,
Ann. Cas. 1912C, 407, 109 Pac. 2;
and paraphrased in Wahl v. Stoy,
72 N. J. Eq. 607, 66 Atl. 176.

§ 597, (e) The text is cited in
Houston Oil Co. v. Wilhelm, 182 Fed.
474, 104 C. C. A. 618; Johansen v.
Looney, 30 Idaho, 123, 163 Pac. 303.
In addition to the recent cases cited

Exhibit 5

**§ 598. Special Rules.**—The general rules formulated in the foregoing paragraphs apply to all species of actual notice. The inquiry next presents itself, whether any more particular rules have been established which determine the existence or non-existence of actual notice under special conditions of fact. Since actual notice is, by its very defini-

Conn. 226, 233; Sigourney v. Munn, 7 Conn. 324; Peters v. Goodrich, 3 Conn. 146; Raritan Water etc. Co. v. Veghte, 21 N. J. Eq. 463, 478; Hoy v. Bramhall, 19 N. J. Eq. 563, 97 **Am. Dec.** 687; Williamson v. Brown, 15 N. Y. 354, 362; Swarthout v. Curtis, 5 N. Y. 301, 55 **Am. Dec.** 345; Pendleton v. Fay, 2 Paige, 202; Danforth v. Dart, 4 Duer, 101; Jackson v. Caldwell, 1 Cow. 622; Hawley v. Cramer, 4 Cow. 717; Parrish v. Brooks, 4 Brewst. 154; Kerns v. Swope, 2 Watts, 75; Jaques v. Weeks, 7 Watts, 261, 274; Epley v. Witherow, 7 Watts, 163, 167; Bellas v. McCarthy, 10 Watts, 13; Randall v. Silverthorne, 4 Pa. St. 173; Trefts v. King, 18 Pa. St. 157, 160; Ringgold v. Bryan, 3 Md. Ch. 488; Stockett v. Taylor, 3 Md. Ch. 537; Bunting v. Ricks, 2 Dev. & B. Eq. 130, 32 **Am. Dec.** 699; Gibbes v. Cobb, 7 Rich. Eq. 54; Maybin v. Kirby, 4 Rich. Eq. 105; Center v. Bank, 22 Ala. 743; McGehee v. Gindrat, 20 Ala. 95; Ringgold v. Waggoner, 14 Ark. 69; Bartlett v. Glascock, 4 Mo. 62, 66; Doyle v. Teas, 4 Scam. 202; Hoxie v. Carr, 1 Sum. 193; Hinde v. Vattier, 1 McLean, 110, 7 Pet. 252; Lambert v. Newman, 56 Ala. 623, 625; Helms v. Chadbourne, 45 Wis. 60, 70; Brinkman v. Jones, 44 Wis. 498, 519; Chicago etc. R. R. v. Kennedy, 70 Ill. 350, 361; Shepardson v. Stevens, 71 Ill. 646; Erickson v. Rafferty, 79 Ill. 209, 212; Reynolds v. Ruckman, 35 Mich. 80; Loughridge v. Bowland, 52 Miss. 546, 555; Brown v. Volkening, 64 N. Y. 76, 82; Chicago v. Witt, 75 Ill. 211; Buck v. Paine, 50 Miss. 648, 655; McLeod v. First Nat. Bank, 42 Miss. 99. 112; Parker v. Foy, 43 Miss. 260, 55 **Am. Rep.** 484; Carter v. City of Portland, 4 Or. 339, 350, per McArthur, J. (a very clear and accurate statement of the doctrine); Pringle v. Dunn, 37 Wis. 449, 465, 19 **Am. Rep.** 772; Shotwell v. Harrison, 30 Mich. 179; Munroe v. Eastman, 31 Mich. 283; Eck v. Hatcher, 58 Mo. 235; Maul v. Rider, 59 Pa. St. 167, 171, 172; Lawton v. Gordon, 37 Cal. 202, 205.

in the notes to the foregoing and the following sections, see these recent cases: Smith v. Ayer, 101 U. S. 320; Havana Central R. Co. v. Central Trust Co., 204 Fed. 546, 123 C. C. A. 72; Mellon v. St. Louis Union Trust Co., 225 Fed. 693, 140 C. C. A. 567 (citing text; notice that party is lessee puts on inquiry as to terms

of lease); Spence v. Mobile & M. R. Co., 79 Ala. 576; Woodall v. Kelly, 85 Ala. 368, 7 **Am. St. Rep.** 57, 5 South. 164; Gamble v. Black Warrior Coal Co., 172 Ala. 669, 55 South. 190; Luke v. Smith, 13 Ariz. 155, 108 Pac. 494 (notice to party to a suit, from the complaint therein, of the plaintiff's right, though the complaint

Exhibit 5

tion, a conclusion of fact inferred from evidence more or less convincing, it is plain that each case must, to a great extent, depend upon its own circumstances; and the results collected and arranged from the decisions must therefore be regarded as *illustrations* of the general doctrines heretofore described, rather than as additional and more definite rules. It is possible, however, to reach some conclusions from a comparison and classification of judicial opinions, which will afford great practical aid in applying these gen-

does not state the facts); Montgomery v. Keppel, 75 Cal. 128, 7 **Am. St. Rep.** 125, 19 Pac. 178; Leake v. Watson, 58 Conn. 332, 18 **Am. St. Rep.** 270, 20 Atl. 343; Gale v. Hardy, 20 Fla. 171; Urquhart v. Leverett, 69 Ga. 92; Hunt v. Dunn, 74 Ga. 124; Stokes v. Riley, 121 Ill. 166, 11 N. E. 877; Wishard v. Hansen, 99 Iowa, 307, 61 **Am. St. Rep.** 238, 88 N. W. 691; Schnavely v. Bishop, 8 Kan. App. 301, 55 Pac. 667 (notice to purchaser of mortgaged chattels); Knapp v. Bailey, 79 Me. 195, 1 **Am. St. Rep.** 295, 9 Atl. 122; Bradley v. Merrill, 88 Me. 319, 34 Atl. 160; Marbury v. Ehlers, 72 Md. 206, 20 **Am. St. Rep.** 467, 19 Atl. 648; Kent v. Mellus, 69 Mich. 71, 37 N. W. 48; Hains v. Hains, 69 Mich. 581, 37 N. W. 563; Mercantile Nat. Bank v. Parsons, 54 Minn. 56, 40 **Am. St. Rep.** 299, 55 N. W. 825; Sensenderfer v. Kempf, 83 Mo. 581, citing this section; Connecticut Mut. L. Ins. Co. v. Smith, 117 Mo. 261, 38 **Am. St. Rep.** 656, 22 S. W. 623, citing §§ 596–600 of the text; Werner v. Litzinger, 45 Mo. App. 106 (notice need not be of the exact nature of the lien); Sicher v. Rambousek, 193 Mo. 113, 91 S. W. 68; Richmond v. Ashcraft, 137 Mo. App. 191, 117 S. W. 689; Hurley v. O'Neill, 26 Mont. 269, 67 Pac. 626; Frerking v. Thomas, 64 Neb. 193, 89 N. W. 1005;

McParland v. Peters, 87 Neb. 829, 128 N. W. 523; Lang Syne Gold Mining Co. v. Ross, 20 Nev. 127, 19 **Am. St. Rep.** 337, 18 Pac. 358; Kline v. Grannis, 61 N. J. Eq. 397, 48 Atl. 566; Hodge v. United States Steel Corporation (N. J. Eq.), 54 Atl. 1; Ellis v. Horrman, 90 N. Y. 466; Wannemacher v. Merrill, 22 N. D. 46, 132 N. W. 412; Trumbo v. Vernon, 22 N. D. 191, 133 N. W. 296; McDougal v. Lame, 39 Or. 212, 64 Pac. 864, and cases cited; Morgan's Appeal, 126 Pa. St. 500, 17 Atl. 666 (notice to assignee of mortgage); Middleton v. Johnston (Tex. Civ. App.), 110 S. W. 789; W. L. Moody & Co. v. Martin (Tex. Civ. App.), 117 S. W. 1015; La Brie v. Cartwright, 55 Tex. Civ. App. 144, 118 S. W. 785; Toland v. Corey, 6 Utah, 392, 24 Pac. 190, citing this and the following sections; Neponset Land & L. Co. v. Dixon, 10 Utah, 334, 37 Pac. 573, citing this section; Town of Woodbury v. Bruce, 59 Vt. 624, 11 Atl. 52; Roanoke Brick & L. Co. v. Simmons (Va.), 20 S. E. 955, citing §§ 595–597 of the text; Copperthite v. Loudoun Nat. Bank. 111 Va. 70, 68 S. E. 392; Cain v. Cox, 23 W. Va. 594; Farley v. Bateman, 40 W. Va. 540, 22 S. E. 72 (notice of undocketed judgment); Pocahontas Tanning Co. v. St. Lawrence Boom & Mfg. Co., 63 W. Va. 685, 60 S. E.

**Exhibit 5**

eral rules to particular cases.  The whole inquiry is reduced to the examination of two entirely distinct questions, which should not be confounded, namely: What kind of information personally communicated to a party constitutes the actual notice proved by direct evidence?  What facts are sufficient to put a party upon an inquiry, so that, if not overcome by contrary proofs, they would constitute the actual notice inferred from circumstantial evidence?

890; Diehl v. Middle States Loan Bldg. & Construction Co., 72 W. Va. 74, 77 S. E. 549.

The doctrine as to actual notice inferred from circumstances is well illustrated by innumerable cases of conveyances or transfers in fraud of creditors, where the purchaser from the fraudulent debtor is charged, or sought to be charged, with notice of the fraudulent intent; see Shaner v. Alterton, 151 U. S. 607, 14 Sup. Ct. 442; Simms v. Morse, 2 Fed. 325 (purchaser not affected by mere suspicion); Singer v. Jacobs, 11 Fed. 559; The Holladay Case, 27 Fed. 849; Walker v. Collins, 50 Fed. 737, 1 C. C. A. 642, 4 U. S. App. 406, and cases cited; Brittain v. Crowther, 54 Fed. 295, 4 C. C. A. 341, 12 U. S. App. 148; Batavia v. Wallace, 102 Fed. 240, 42 C. C. A. 310, and cases cited; Montgomery v. Bayliss, 96 Ala. 342, 11 South. 198, and cases cited; Chipman v. Glennon, 98 Ala. 263, 13 South. 822; Simmons v. Shelton, 112 Ala. 284, 57 Am. St. Rep. 39, 21 South. 309; Dyer v. Taylor, 50 Ark. 314, 7 S. W. 258; Adler-Goldman Commission Co. v. Hathcock, 55 Ark. 579, 18 S. W. 1048; Ballou v. Andrews Bkg. Co., 128 Cal. 562, 61 Pac. 102; Knower v. Clothing Co., 57 Conn. 202, 221, 17 Atl. 580; Reagan v. First Nat. Bk., 157 Ind. 623, 61 N. E. 575, 62 N. E. 701; Jones v. Hetherington, 45 Iowa, 681; Gamet v. Simmons, 103 Iowa, 163, 72 N. W.

444; Gollober v. Martin, 33 Kan. 252, 6 Pac. 267; Martin v. Marshall, 54 Kan. 147, 37 Pac. 977; Richolson v. Freeman, 56 Kan. 463, 43 Pac. 772; Haskett v. Auhl, 3 Kan. App. 744, 45 Pac. 608 (circumstances out of the usual course of business, and such as to excite the suspicions of a reasonably prudent man); Biddinger v. Wyland, 67 Md. 359, 10 Atl. 202; Smith v. Pattison, 84 Md. 341, 35 Atl. 963; Carroll v. Hayward, 124 Mass. 120; Hastings Malting Co. v. Heller, 47 Minn. 71, 49 N. W. 400; Dow v. Sutphin, 47 Minn. 479, 50 N. W. 604; Tuteur v. Chase, 66 Miss. 476, 14 Am. St. Rep. 577, 4 L. R. A. 832, 6 South. 241 (mere suspicion not sufficient); State v. Purcell, 131 Mo. 312, 33 S. W. 13; Reid, Murdock & Co. v. Lloyd, 52 Mo. App. 278; Sammons v. O'Neill, 60 Mo. App. 530; Hearn v. Due, 79 Mo. App. 322; Parker v. Conner, 93 N. Y. 118, 124, 45 Am. Rep. 178; Fluegel v. Henschel, 7 N. D. 276, 66 Am. St. Rep. 642, 74 N. W. 996, and cases cited; Tantum v. Green, 21 N. J. Eq. 364; Coolidge v. Heneky, 11 Or. 327, 8 Pac. 281; Dodd v. Gaines, 82 Tex. 429, 18 S. W. 618; Anderson v. Mossy Creek Woolen Mills Co., 100 Va. 420, 41 S. E. 854; McMasters v. Edgar, 22 W. Va. 673; Keneweg Co. v. Schilansky, 47 W. Va. 287, 34 S. E. 773; Wilson v. Carrico, 50 W. Va. 336, 40 S. E. 439; Rindskopf v. Myers, 87 Wis. 80, 57 N. W. 967.

Exhibit 5

**§ 599.  Same—Kind and Amount of Information Necessary.**—In the first of these two inquiries, it is assumed that some information is shown by direct evidence to have been personally communicated to the party, and the sole question is, What kind or amount of such information will constitute actual notice, and so bind his conscience? Whenever A is dealing concerning certain property with B, who acts as owner, grantor, vendor, or mortgagor, as the case may be, a definite statement made to A by a third person, C, that he has or claims some conflicting interest or right, legal or equitable, in the subject-matter, is a sufficient actual notice to affect A's conscience.  The statement need not be so full and detailed that it communicates to A complete knowledge of the opposing interest or right; it is enough that it is so definite as to assert the existence of an interest or right as a fact.[1 a]  Under the same circumstances, if A is informed by the grantor or vendor, B, that the subject-matter is encumbered, or is subject to an outstanding lien or equitable claim, or that he himself has not for any reason a title free and perfect, such information is actual notice; it need not state all the particulars, nor impart complete knowledge of the conflicting interest, encumbrance, or right; it is enough that A is reasonably informed, and has reasonable grounds to believe, that the conflicting right exists as a fact.[2 b]  Of course the state-

§ 599, [1] Epley v. Witherow, 7 Watts, 163, 167; Jaques v. Weeks, 7 Watts, 261, 274; Barnes v. McClinton, 3 Penr. & W. 67, 23 **Am. Dec.** 62; Bartlett v. Glascock, 4 Mo. 62, 66; Nelson v. Sims, 6 Miss. 383, 388, 57 **Am. Dec.** 144; Blatchley v. Osborn, 33 Conn. 226, 233; Reynolds v. Ruckman, 35 Mich. 80 (a case in which it was held that no notice had been given); Ponder v. Scott, 44 Ala. 241, 244, 245 (case in which no notice was held to have been given).

§ 599, [2] Hudson v. Warner, 2 Har. & G. 415; Price v. McDonald, 1 Md. 403, 54 **Am. Dec.** 657; Russell v. Petree, 10 B. Mon. 184, 186; Reynolds

§ 599, (a)  The text is cited and followed in Bell v. Bell, 103 S. C. 95, 87 S. E. 540.  See, also, Fry v. Warfield etc. Co., 105 Iowa, 559, 75 N. W. 485.

§ 599, (b)  Jackson v. Waldstein (Tex. Civ. App.), 27 S. W. 26 (vendor told vendee that he did not know whether he owned the property or not); Ohio River Junction R. Co. v.

**Exhibit 5**

ment by B may be so vague and uncertain, or it may be so accompanied by additional explanatory or contradictory matter, that it does not affect the conscience of the purchaser, A, and does not amount to an actual notice.[3][d] Wherever, under the circumstances above described, information given by the grantor or vendor with whom the purchaser is dealing, or by the holder of the conflicting claim or right, would constitute an actual notice, the same information may be communicated by a relative or friend of either of these persons, and would then operate in like manner as actual notice, provided the party so represented was prevented by absence, sickness, or other disability from making the communication in his own person and on his own behalf.[4]

v. Ruckman, 35 Mich. 80 (example of no notice); Chicago v. Witt, 75 Ill. 211 (ditto, no notice); Ponder v. Scott, 44 Ala. 241, 244, 245 (notice merely of an intention to execute a deed is not notice of the contents of the deed afterwards executed). Definite information of a conflicting claim communicated by a third person, neither the claimant nor the party with whom the purchaser is dealing, who speaks from his own positive knowledge, *may* amount to the knowledge which supersedes and takes the place of a mere notice. This question is fully examined in a subsequent paragraph. See Butcher v. Yocum, 61 Pa. St. 168, 171, 100 **Am. Dec.** 625; Lawton v. Gordon, 37 Cal. 202, 205, 206.[e]

§ 599, [3] Buttrick v. Holden, 13 Met. 355, 357; Curtis v. Blair, 9 Miss. 309, 328, 59 **Am. Dec.** 257; Chicago v. Witt, 75 Ill. 211; Ponder v. Scott, 44 Ala. 241, 244, 245; and see *post*, § 601, where the question is more fully examined.

§ 599, [4] Butcher v. Yocum, 61 Pa. St. 168, 171, 100 **Am. Dec.** 625; Mulliken v. Graham, 72 Pa. St. 484; Ripple v. Ripple, 1 Rawle, 386. In Butcher v. Yocum, 61 Pa. St. 168, 100 **Am. Dec.** 625, it was said not to be *essential* that notice of an equitable interest should come from the party interested or his agent; it may come *aliunde*, provided it be of a character likely to gain credit. A person about to purchase land from a widow in whom the legal title was vested was informed by the grand-

Pennsylvania Co., 222 Pa. St. 573, 72 Atl. 271 (purchaser accepts statement of vendor as to binding effect of outstanding agreement of sale with another).

§ 599, [e] Woodall v. Kelly, 85

Ala. 368, 7 **Am. St. Rep.** 57, 5 South. 164.

§ 599, (d) Satterfield v. Malone. 35 Fed. 445, 1 **L. R. A.** 35; Shulthis v. McDougal, 170 Fed. 529, 95 C. C. A. 615.

Exhibit 5

**§ 600.  Same—What Circumstances Sufficient.**—The second question is, What facts are sufficient to put the party upon an inquiry, so that he may thereby be charged with the actual notice inferred from circumstantial evidence? Among the facts to which, as evidence, such force has been attributed are: Close relationship, personal intimacy, or business connections existing between the purchaser and the party with whom he is dealing, or between him and the holder of the adverse claim; [1] great inadequacy of the price, which may arouse the purchaser's suspicion, and put him upon an inquiry as to the reasons for selling the property at less than its apparent value; [2] [b] the sight or knowledge of

father of her minor children that the equitable title had been in her deceased husband, and was then in his heirs. The grandfather was held a proper person to give notice, and the purchaser was bound by it as an actual notice. In Ripple v. Ripple, 1 Rawle, 386, a notice was given by an uncle of the person interested. But *per contra*, see Woods v. Farmere, 7 Watts, 382, 387, 32 **Am. Dec.** 772, per Gibson, C. J.; Jolland v. Stainbridge, 3 Ves. 478, per Lord Loughborough.[e]

§ 600, [1] It is hardly to be supposed, however, that notice could be inferred from *mere* relationship or intimacy, without *any* other circumstances:[a] Tillinghast v. Champlin, 4 R. I. 173, 204, 215, 67 **Am. Dec.** 510; Spurlock v. Sullivan, 36 Tex. 511; Trefts v. King, 18 Pa. St. 157, 160; Phillips v. Bank of Lewistown, 18 Pa. St. 394, 404; Hoxie v. Carr, 1 Sum. 173, 192; Flagg v. Mann, 2 Sum. 486; Dubois v. Barker, 4 Hun, 80, 86; 6 Thomp. & C. 349 (*mere* relationship of grantee to grantor, without any other evidence, not sufficient ground from which to infer notice of a conflicting equitable claim); Reynolds v. Ruckman, 35 Mich. 80 (knowledge of a partnership existing between a grantor and another held not sufficient to charge grantee with notice).

§ 600, [2] Peabody v. Fenton, 3 Barb. Ch. 451; Hoppin v. Doty, 25 Wis. 573; Beadles v. Miller, 9 Bush, 405 (case in which inadequacy of price

§ 599, (e) In John v. Battle, 58 Tex. 591, public notice given at a bankrupt sale that the wife of the bankrupt "claimed an interest" in the estate, was held sufficient to charge purchasers at the sale. As to who is an interested party within the rule, see, further, Yaukey v. Forney, 231 Pa. St. 371, 80 Atl. 879.

§ 600, (a) So held, in cases of con-

veyances in fraud of creditors, with respect to the grantee's notice of the fraudulent intent: Johnson v. Jones, 16 Colo. 138, 26 Pac. 584; Fraser v. Passage, 63 Mich. 551, 30 N. W. 334; Fluegel v. Henschel, 7 N. D. 276, 66 **Am. St. Rep.** 642, 74 N. W. 996.

§ 600, (b) **Inadequacy of Price as Notice.**—The text is quoted in Moore v. Sawyer, 167 Fed. 826 (purchaser

Exhibit 5

visible material objects upon or connected with the subject-matter, which may reasonably suggest the existence of some easement or other similar right.[3 c]   The irregular, defec-

was held not sufficient notice of grantor's fraudulent design, so as to invalidate a conveyance as against the grantor's creditors) ; Eck v. Hatcher, 58 Mo. 235 (case in which inadequacy of price and other circumstances were held a sufficient notice of grantor's fraud, etc.) ; Hoppin v. Doty, 25 Wis. 573, 591 (a grantee bought for one hundred dollars land which he knew to be worth two thousand dollars; held a notice of the grantor's defects of title, fraudulent intent in conveying, etc.).

§ 600, [3] Thus structures upon land distinctly visible to the purchaser have been held sufficient to put him on an inquiry, and to constitute notice to him of an existing easement; Raritan Water Power Co. v. Veghte, 21 N. J. Eq. 463, 478; Hoy v. Bramhall, 19 N. J. Eq. 563; Randall v. Silverthorn, 4 Pa. St. 173.[d]   The fact that there were fourteen chimney-pots

put on inquiry by the inadequate consideration of a deed to his grantor): Pelham v. Chattahoochie R. Co., 156 Ala. 500, 47 South. 172; New York, N. H. & H. R. Co. v. Russell, 83 Conn. 581, 78 Atl. 324.  See, also, Dunn v. Barnum, 51 Fed. 355, 10 U. S. App. 86, 2 C. C. A. 265; Barstow v. Beckett, 122 Fed. 140; Gaines v. Saunders, 50 Ark. 322, 7 S. W. 301; Mason v. Mullahey, 145 Ill. 383, 34 N. E. 36; Hume v. Franzen, 73 Iowa, 25, 34 N. W. 490; Allen v. Stingel, 95 Mich. 195, 54 N. W. 880; Baldwin v. Anderson, 103 Miss. 462, 60 South. 578 (purchase price only one-third real value); Connecticut Mut. Life Ins. Co. v. Smith, 117 Mo. 261, 38 Am. St. Rep. 656, 22 S. W. 623, citing this section; Brown v. Columbus (N. J. Eq.), 75 Atl. 917; Durant v. Crowell, 97 N. C. 367, 2 S. E. 541; Wood v. French, 39 Okl. 685, 136 Pac. 734; Jackson v. Waldstein (Tex. Civ. App.), 27 S. W. 26; Hume v. Ware, 87 Tex. 380, 28 S. W. 935.  The fact that a conveyance by a husband to his wife was voluntary is sufficient to put a subsequent purchaser on

inquiry as to whether the conveyance was in fraud of the grantor's creditors; Milholland v. Tiffany, 64 Md. 455, 2 Atl. 831; and see New England Loan & T. Co. v. Avery (Tex. Civ. App.), 41 S. W. 673.  In the following cases the inadequacy of price was held not sufficiently great to put the purchaser upon inquiry: Fish v. Benson, 71 Cal. 428, 12 Pac. 454; Thomas v. Van Meter, 164 Ill. 304, 45 N. E. 405; Anderson v. Blood, 152 N. Y. 285, 57 Am. St. Rep. 515, 46 N. E. 493 (purchaser not affected by mere suspicion); Wilmerding v. Jarmulowsky, 85 Hun, 285, 32 N. Y. Supp. 983.  As to inadequacy of the consideration destroying the *bona fides* of the purchase, see *post*, § 747, and cases cited.

§ 600, (c) The text is quoted in Moore v. Sawyer, 167 Fed. 826; New York, N. H. & H. R. Co. v. Russell, 83 Conn. 581, 78 Atl. 324 (power line across the land).

§ 600, (d) Notice from Structures, Maps, etc.—See, also, Atlantic City v. New Auditorium Pier Co., 63 N. J. Eq. 644, 53 Atl. 99; Bradley v. Walker, 138 N. Y. 291, 33 N. E.

Exhibit 5

tive, or improper recording of an instrument, although clearly not a constructive notice under the statute, may be sufficient to put a purchaser upon inquiry, and so constitute an actual notice; and the inspection, perusal, or knowledge of a writing which purported to be a certified or official copy of the instrument thus defectively or improperly re-

on the top of a house, but only twelve flues in the house, was held to be notice to the purchaser of an easement for the passage of smoke, held by an adjoining owner: Hervey v. Smith, 22 Beav. 299; and see Davies v. Sear, L. R. 7 Eq. 427; Blatchley v. Osborn, 33 Conn. 226, 233. In Paul v. Connersville etc. R. R., 51 Ind. 527, 530, it was held that a grantee of land with a graded railroad track openly across it, having embankments and excavations plainly to be seen by the purchaser, takes with actual notice of all the rights in the land possessed by the railroad company; and a warranty deed from his grantor cannot affect those rights.[e]

1079, citing this chapter (fact that houses are set back eight feet from the street is not notice of an equitable easement); McDougal v. Lame, 39 Or. 212, 64 Pac. 864 (easement in ditch on land purchased); Joseph v. Wild, 146 Ind. 249, 45 N. E. 467 (easement in stairway over vacant lot from adjoining building.) See, further, Pollard v. Rebman, 162 Cal. 633, 124 Pac. 235 (gate in fence insufficient to put on inquiry as to right of way); Lorenzi v. Star Market Co., 19 Idaho, 674, 35 L. R. A. (N. S.) 1142, 115 Pac. 490 (party-wall, notice of agreement relating thereto); Brown v. Honeyfield, 139 Iowa, 414, 116 N. W. 731 (drain ditch); Longshore v. Chicago & Great Western R. Co., 147 Iowa, 463, 124 N. W. 795 (right of way under railroad bridge); Seng v. Payne, 87 Neb. 812, 128 N. W. 625 (drain ditch); Rollo v. Nelson, 34 Utah, 116, 26 L. R. A. (N. S.) 315, 96 Pac. 263; Kalinowski v. Jacobowski, 52 Wash. 359, 100 Pac. 852 (right of way); Roundtree v. Hutchinson, 57 Wash. 414, 27 L. R. A. (N. S.) 875, 107 Pac. 345 (public right of burial); Hawkes v. Hoffman, 56 Wash. 120, 24 L. R. A. (N. S.) 1038, 105 Pac. 156 (existence of party-wall is not notice of an agreement to contribute to the cost of it). See, also, Eshleman v. Parkesburg Iron Co., 235 Pa. St. 439, 84 Atl. 399 (purchaser of riparian land, with notice of existence of a dam farther upstream, bound by notice of terms of the easement for diversion of water). Similarly, where the shape and location of lots on a map suggested their intended use as a public park, the purchaser was put on inquiry: Commonwealth v. Calhoun, 184 Pa. St. 629, 39 Atl. 563. See, also, Higbee Fishing Club v. Atlantic City Electric Co., 78 N. J. Eq. 434, 79 Atl. 326 (survey shows existence of a right of way of necessity).

§ 600, (e) For further instances of notice of easements in favor of railroads from the existence of tracks or grades upon the land, see Indiana, B. & W. R. Co. v. McBroom, 114 Ind. 198, 15 N. E. 831; Kamer v. Bryant, 103 Ky. 723, 46 S. W. 14; Goodman v. Heilig, 157 N. C. 6, 36 L. R. A. (N. S.) 1004, 72 S. E. 866; Chicago

corded should produce the same effect, although upon this particular point there seems to be some conflict of judicial opinion. It has even been held that, under special circumstances, a jury or court might assume as an inference of fact, in the absence of any positive evidence, that a purchaser examined the public records, and thus obtained information amounting to an actual notice from a conveyance imperfectly recorded, or improperly recorded, through some defect.[4] [f]

§ 600, [4] Kerns v. Swope, 2 Watts, 75; Hastings v. Cutler, 24 N. H. 431. In Kerns v. Swope, 2 Watts, 75, a deed of land lying in two coun-

[f] E. I. R. Co. v. Wright, 153 Ill. 307, 38 N. E. 1062 (purchaser knew name of the railroad company, and by inquiry of its officers could have learned of an unrecorded deed of the right of way).

*Other circumstances putting on inquiry.*—One who has knowledge that the purchase-money of land was unpaid, wholly or in part, at the time of the passing of title, is bound to inquire as to the existence and extent of a vendor's lien on the land and the manner in which payment of it was secured: Briscoe v. Minah Consolidated Min. Co., 82 Fed. 952; Woodall v. Kelly, 85 Ala. 368, 7 Am. St. Rep. 57, 5 South. 164; Ellis v. Horrman, 90 N. Y. 466; see, also, *post*, § 1253, note. That the assignee of a mortgage is bound to make inquiries of the mortgagor, or else is chargeable with the equities in his favor, see Morgan's Appeal, 126 Pa. St. 500, 17 Atl. 666; and *post*, § 733. An execution purchaser who knows that the judgment was procured by fraud is put on inquiry as to the rights of the defendant against whom the judgment was rendered: Lang Syne Gold Mining Co. v. Ross, 20 Nev. 127, 19 Am. St. Rep. 337, 18 Pac. 358. Knowledge that there was a water right connected with

the land purchased puts the purchaser on inquiry as to its terms: Fresno C. & I. Co. v. Russell, 80 Cal. 114, 13 Am. St. Rep. 112, 22 Pac. 53. See, also, Marx v. Oliver, 246 Ill. 316, 92 N. E. 864 (vendee of incompleted house, knowing that the building contract gave vendor right to make changes, takes with notice of changes actually made by vendor before the sale); Zweigart v. Reed, 221 Mo. 33, 119 S. W. 960 (knowledge that someone other than record holder of title had paid taxes, puts on inquiry as to claim of such party). It has been suggested that publication of a fact in a newspaper habitually read by a party or his agent tends in some degree to show actual notice of the fact; but this appears to be doubtful and unsupported by authority: American Fire Ins. Co. v. Landfare, 56 Neb. 482, 76 N. W. 1068. In general, knowledge of the existence of a debt does not put one dealing with the debtor on inquiry to ascertain whether it is secured: Johnson v. Valido Marble Co., 64 Vt. 337, 25 Atl. 441. That knowledge of the trust character of property is notice of the terms of the trust, see *post*, § 630.

§ 600, (f) Notice from Actual Inspection of Record.—Woods v. Gar-

Exhibit 5

**§ 601. Same—Effect of Explaining or Contradicting the Information Given.**—In concluding this branch of the discussion, the important question remains to be considered, How far may a party rely upon the whole of the information given or statement made to him in a case of actual notice? In other words, when information is given or a statement is made to a purchaser which, standing alone, would be actual notice, or at least would be sufficient to put him upon an inquiry, but this is accompanied by further explanatory or contradictory declarations which

ties was recorded in only one of these counties, so that the record was not a constructive notice with respect to the portion of land situate in the other county. The court held, in an elaborate opinion by Chief Justice Gibson, that a jury might infer, as a conclusion of fact, that the purchaser examined the records, and so became acquainted with the prior conveyance affecting the title to the whole land in both counties. The court further held that an inspection by the purchaser of a paper which purported to be a certified or official copy of a deed improperly recorded on account of a defective acknowledgment, where the copy disclosed this defect, was not a fact from which actual notice could be inferred, because it was not sufficient to put the purchaser on an inquiry. This decision seems to be unsound; at least, its correctness is very doubtful; it seems to misinterpret the nature of facts sufficient to put a purchaser upon inquiry, and to confound them with absolute and complete knowledge. Hastings v. Cutler, 24 N. H. 481, holds, much more consistently, as it seems to me, that the inspection of a writing which purports to be a certified copy of a recorded deed, although it shows that the record was improperly made, because the deed was defectively acknowledged, is a fact sufficient to put the purchaser on an inquiry, so that if he neglected to make a proper inquiry, the inference of actual notice would be necessary. See Pringle v. Dunn, 37 Wis. 449, 461–464, 19 **Am. Rep.** 772, and Partridge v. Smith, 2 Biss. 183, 185, 186, as to the notice given by a defective record.

nett, 72 Miss. 78, 16 South. 390 (one who purchases after seeing on records an unacknowledged deed is not a *bona fide* purchaser); Ladnier v. Stewart (Miss.), 38 South. 748 (actual notice of defectively acknowledged lease); Bledsoe v. Ross, 59 Ind. App. 609, 109 N. E. 53 (citing text; verdict against existence of notice not disturbed); James v. New-man, 147 Iowa, 574, 126 N. W. 781; *contra,* Nordman v. Rau, 86 Kan. 19, **Ann. Cas.** 1913B, 1068, 38 **L. R. A.** **(N. S.)** 400, and note, 119 Pac. 351 (record of instrument not entitled to record, not notice to one who buys with actual knowledge thereof; a view which, of course, is *contra* to the great weight of authority).

Exhibit 5

tend to nullify or destroy the effect of the former lan-
guage, how far may the purchaser accept and act upon
the entire communication? or how far is he affected by that
portion which tends to show the existence of a prior, out-
standing, and conflicting claim? If the only information
given to the purchaser concerning the existence of an out-
standing claim, contract, or equity affecting the property
is communicated by a third person,—a stranger having no
interest in the matter,—and this person also states that
such contract has been rescinded, or such claim or equity
has been abandoned or discharged, and no longer exists,
the purchaser, it seems, may rely on the whole communi-
cation; it is not sufficient, in the absence of special rea-
sons for believing the former part and rejecting the latter,
to put him upon an inquiry, and does not therefore amount
to an actual notice. This conclusion results from the ob-
vious fact that such an informant has no personal interest
to deceive the purchaser by misrepresenting or concealing
the truth.[1]  When, however, the grantor, vendor, or mort-
gagor admits that his title was defective or encumbered, or
that there was some outstanding claim upon or equity in the
property, or makes any other communication which, unex-
plained, would constitute an actual notice, but adds a
further declaration to the effect that such defect has been
cured, or encumbrance removed, or claim or equity re-
scinded and destroyed, the purchaser, according to the
weight of authority, is not warranted in accepting and
relying upon this explanation or contradiction; the in-

§ 601, [1] In re Bright's Trusts, 21 Beav. 430; Buttrick v. Holden, 13
Met. 355, 357; Curtis v. Blair, 26 Miss. 309, 328, 59 Am. Dec. 257; Rogers
v. Wiley, 14 Ill. 65, 56 Am. Dec. 491; Williamson v. Brown, 15 N. Y.
354, 360. In Pringle v. Dunn, 37 Wis. 449, 465, 467, 19 Am. Rep. 772,
one purchaser "had heard that there was a defective railroad mortgage
on the premises, but did not look for it, because his abstract did not show
it." Another purchaser of a parcel of the land "knew by report" that
there was such a mortgage, etc. Both were held charged with actual
notice; but it does not appear in the report of the case *from whom* the
purchasers obtained the information.

Exhibit 5

formation obtained under such circumstances and from such a source is sufficient to put a prudent man upon an inquiry. The reason of this is plain. The informant is under a strong personal interest to misrepresent or conceal the real facts. While the former branch of his communication is made against his interest, and is therefore more likely to be true, the latter part is in conformity with his personal interest, and is essentially untrustworthy.[2a]  Finally, a purchaser is fully warranted in accepting and acting upon the statements or conduct of the

§ 601, [2] Hudson v. Warner, 2 Har. & G. 415; Price v. McDonald, 1 Md. 403, 54 Am. Dec. 657; Russell v. Petree, 10 B. Mon. 184; Bunting v. Ricks, 2 Dev. & B. Eq. 130, 32 Am. Dec. 699; Littleton v. Giddings, 47 Tex. 109. This rule, however, is not pushed so far by the courts as to work real injustice to innocent purchasers who have been manifestly deceived and misled. See Jones v. Smith, 1 Hare, 43; Rogers v. Jones, 8 N. H. 264; Curtis v. Blair, 26 Miss. 309, 328, 59 Am. Dec. 257. In Chicago v. Witt, 75 Ill. 211, a grantee, some time before the conveyance was executed, was told by the grantor that he was not *then* able to make a good title, but that in a short time he would be able. It was held that no notice of an adverse unrecorded deed of the same land could be inferred: Ponder v. Scott, 44 Ala. 241, 244, 245.[b]

§ 601, (a) The text is quoted in Le Vine v. Whitehouse, 37 Utah, 260, Ann. Cas. 1912C, 407, 109 Pac. 2. See, also, Manasses v. Dent, 89 Ala. 565, 8 South. 108, citing this paragraph of the text: Overall v. Taylor, 99 Ala. 12, 11 South. 738, citing this paragraph of the text. See, further, Engler v. Garrett, 100 Md. 387, 59 Atl. 648; Ohio River Junction R. Co. v. Pennsylvania Co., 222 Pa. St. 573, 72 Atl. 271.

§ 601, (b) In the very instructive case of Simpson v. Hinson, 88 Ala. 527, 7 South. 264, a second mortgagee was held not chargeable with notice of a prior unrecorded mortgage on the same property, solely on evidence that on making inquiry of the mortgagor whether the first mortgagee did not hold a mortgage against him, he was informed that he did, but that it was on other property only; relying on the closely analogous case of Jones v. Smith, 1 Hare, 43, and the distinction there made: "Undoubtedly, when a party has notice of a deed which, from the nature of it, must affect the property, or is told at the time that it does affect it, he is considered to have notice of the contents of that deed, and of all other deeds to which it refers; but, where a party has notice of a deed which does not necessarily—which may or may not—affect the property, and is told that in fact it does not affect it, but relates to some other property, and the party acts fairly in the transaction, and believes the representation to be true, there is no decision

Exhibit 5

person who holds or asserts a conflicting interest, claim, or right, if he, when interrogated upon the subject, either keeps silence, or denies the existence of any claim, or affirmatively declares it to be of a certain kind and amount; such a person, even if not absolutely estopped from afterwards setting up any claim, or a claim different from his representations, would certainly be debarred from afterwards alleging that the purchaser was put upon an inquiry, and was charged with notice.[3 c] If a purchaser, having been put upon an inquiry, prosecutes it with reasonable and due diligence, without discovering any adverse right, the inference of an actual notice received by him is overcome and destroyed.[4 d] What is a due inquiry in these instances of actual notice inferred from circumstantial evidence must, to a great extent, depend upon the par-

§ 601, [3] McGehee v. Gindrat, 20 Ala. 95; Massie v. Greenhow's Ex'rs, 2 Pat. & H. 255; and see the following English authorities: Ibbotson v. Rhodes, 2 Vern. 554; Pearson v. Morgan, 2 Brown Ch. 388; Bridge v. Beadon, L. R. 3 Eq. 664; Lee v. Howlett, 2 Kay & J. 531; Burrowes v. Locke, 10 Ves. 470; Slim v. Croucher, 1 De Gex, F. & J. 518; Barry v. Croskey, 2 Johns. & H. 1, 21; 1 Dart on Vendors, c. 3, sec. 1, pp. 88, 89.

§ 601, [4] See cases cited *ante*, under §§ 596, 597.

that goes the length of saying that if he is misled he is fixed with notice of the instrument." See, also, *post*, § 631, and notes.

§ 601, (c) See, also, Winter-Loeb Grocery Co. v. Mutual Warehouse Co., 4 Ala. App. 431, 58 South. 807; Barrett v. Baker, 136 Mo. 512, 37 S. W. 130 (purchaser justified in relying on written statement of owner of note that debt was paid and trust-deed satisfied); Thompson v. Lapsley (Minn.), 96 N. W. 788 (former owner's false assertion of a title in fee does not put purchaser from his grantee on inquiry as to an unrecorded purchase-money mortgage); Rutherford Land & Improvement Co. v. Sanntrock (N. J. Eq.),

44 Atl. 938; Dickey v. Henarie, 15 Or. 351, 15 Pac. 464; Miller v. Merine, 43 Fed. 261. That the committee of a lunatic has no power to bind him by a declaration, in answer to a purchaser's inquiry, that he has no interest in the land, see Jennings v. Bloomfield, 199 Pa. St. 638, 49 Atl. 135.

§ 601, (d) See Mercantile Nat. Bank v. Parsons, 54 Minn. 56, 40 Am. St. Rep. 299, 55 N. W. 825. See, also, Bowles v. Belt (Tex. Civ. App.), 159 S. W. 885; Loomis v. Cobb (Tex. Civ. App.), 159 S. W. 305; Shulthis v. McDougal, 170 Fed. 529, 95 C. C. A. 615; and see *ante*, § 597, note (c).

**Exhibit 5**

ticular facts of each case.   It is well settled, however, that mere examination of the record, and finding no adverse title or claim recorded, is not due inquiry by one who has been put upon inquiry by circumstances tending to show the existence of a conflicting title, claim, or right.[5][e]

§ 602.  **Same—By Whom and when Information must be Given.**[a]—Such being its general nature, it is impossible to define by a single formula what will amount to an actual notice sufficient to affect the conscience of the party receiving it, and courts have not attempted to lay down any such criterion; each case must, to a considerable extent, depend upon its own particular circumstances.   The following ancillary rules, however, bearing upon the question, have been well settled.   Where an actual notice is relied upon, in order to be binding it must come from some person interested in the property to be affected by it; and it is said that

§ 601, [5] In Shotwell v. Harrison, 30 Mich. 179, and Munroe v. Eastman, 31 Mich. 283, it was held that a purchaser who has such notice of a prior unrecorded deed cannot rely upon a mere search of the records without any other inquiry; the case of Barnard v. Campau, 29 Mich. 162, was distinguished.   In Pringle v. Dunn, 37 Wis. 449, 465, 467, 19 **Am. Rep.** 772, a purchaser "who had heard that there was a defective railroad mortgage on the premises, but did not look for it, because his abstract did not show it," and another, who "knew by report" that there was such a mortgage, but made no further examination, were both held charged with actual notice: Brinkman v. Jones, 44 Wis. 498, 519.   Littleton v. Giddings, 47 Tex. 109, holds that looking at the records and inquiring of the grantor is not enough, when an inquiry among the neighbors would have led to the truth; also, that a notice given to a person who was actually interested in the purchase, although not named as a grantee in the conveyance, is notice to the grantee himself.

§ 601, (e) See, also, Griffin v. Missouri, K. & E. Ry. Co., 82 Mo. App. 93 (one having notice of unrecorded deed does not satisfy requirement of good faith by examining the records, but should inquire of grantor and reputed grantee); Stokes v. Riley, 121 Ill. 166, 11 N. E. 877 (investigation not conducted in the way most likely to lead to knowledge of the facts); Baltimore High Grade Brick Co. v. Amos, 95 Md. 571, 52 Atl. 582, 53 Atl. 148 (advice of counsel does not relieve from duty of making inquiry).

§ 602, (a) This section is cited in Raymond v. Flavel, 27 Or. 219, 40 Pac. 158.

Exhibit 5

it must be given and received in the course of the very transaction itself concerning the property in which the parties are then engaged.   As a necessary consequence, no mere vague reports from strangers, nor mere general statements by individuals not interested in the property, that some other person claims a prior right or title, will amount to an actual notice so as to bind the conscience of the party; nor will he be bound by a notice given in some previous and distinct transaction, which he might have forgotten.[1b]   It should be most carefully observed that the

§ 602, [1] See Sugden on Vendors and Purchasers, 755; Barnhart v. Greenshields, 9 Moore P. C. C. 18, 36; Natal Land etc. Co. v. Good, L. R. 2 P. C. 121, 129; Butcher v. Stapely, 1 Vern. 363; Jolland v. Stainbridge, 3 Ves. 478; Fry v. Porter, 1 Mod. 300; Wildgoose v. Wayland, Goulds, 147, pl. 67.   That mere vague statements, rumors, and reports coming from third persons not interested in the transaction, or from any other unauthentic source, and even vague, uncertain, and wholly general statements, coming from a person interested in the subject-matter, such as the vendor or the claimant himself, will not amount to an actual notice, and will not bind the conscience of a purchaser, is decided or laid down by way of a *dictum* in a multitude of cases: Chicago v. Witt, 75 Ill. 211 (insufficient statement from a grantor to the purchaser); Loughbridge v. Bowland, 52 Miss. 546, 555 (rumors, suspicions, etc.); Reynolds v. Ruckman, 35 Mich. 80 (facts not amounting to notice); Lambert v. Newman, 56 Ala. 623, 625, 626 (vague evidence of conversations); Parker v. Foy, 43 Miss. 260, 266, 55 **Am. Rep.** 484; Wailes v. Cooper, 24 Miss. 208

§ 602, (b) Thus, it has been held that an announcement at an execution sale that certain lots did not belong to the debtor is not sufficient to put a purchaser on inquiry as to a dedication to the public, when the announcement did not disclose the name of the adverse claimant, nor the nature of his claim: Commonwealth v. Calhoun, 184 Pa. St. 629, 39 Atl. 563. Where an intending purchaser was told by a third person that if he bought the land he would "have trouble" with certain persons, and that his vendor had "stolen" the land, he is not put on inquiry; such rumors and insinuations "do not furnish any positive information, any tangible clew, by the aid of which he may commence and successfully pursue an inquiry, and thus discover the real truth": Raymond v. Flavel, 27 Or. 219, 40 Pac. 158, citing this section of the text. See, also, Hall v. Livingston, 3 Del. Ch. 348, 402–406, and cases cited. In general, that the facts relied on to prove notice must be something more than would excite the suspicion of a cautious and wary person, see Crossen v. Oliver, 37 Or. 514, 61 Pac. 885; Green v. Morgan

Exhibit 5

decisions here referred to, and the rules which they sustain, are dealing exclusively with the artificial conception of an actual *notice,* which is regarded as affecting the conscience of the party, and producing results upon his rights in the same manner and to the same extent as though it amounted to full knowledge, although it may perhaps fall far short of such a consummation. The question as to the consequences of such knowledge acquired in some other manner or from some other source is therefore left untouched.

§ 603. **Effect of Knowledge.**—What, then, is the effect of actual knowledge of the prior fact, interest, claim, or right, acquired previously, or in an entirely different transaction, or from a stranger or person having no interest in the property, or even in an accidental and fortuitous manner? The answer, on principle, is very clear and certain. It was

(rumors); Buttrick v. Holden, 13 Met. 355, 357; Curtis v. Blair, 26 Miss. 309, 328, 59 **Am. Dec.** 257; Peebles v. Reading, 8 Serg. & R. 484; Miller v. Cresson, 5 Watts & S. 284; Epley v. Witherow, 7 Watts, 163, 167; Jaques v. Weeks, 7 Watts, 261, 267, 274; Woods v. Farmere, 7 Watts, 382, 387, 32 **Am. Dec.** 772; Hood v. Fahnestock, 1 Pa. St. 470, 44 **Am. Dec.** 147; Churcher v. Guernsey, 39 Pa. St. 84; Wilson v. McCullough, 23 Pa. St. 440, 62 **Am. Dec.** 347; Van Duyne v. Vreeland, 12 N. J. Eq. 142, 155; Butler v. Stevens, 26 Me. 484; Lamont v. Stimson, 5 Wis. 443; Rogers v. Haskings, 14 Ga. 166; Maul v. Rider, 59 Pa. St. 167, 171, 172 (general rumors); but as to notice not coming from the party interested, see Curtis v. Mundy, 3 Met. 405; Mulliken v. Graham, 72 Pa. St. 484, 490. That an actual notice given in a prior transaction is not notice in a subsequent and different one, see Lowther v. Carlton, 2 Atk. 242; Fuller v. Benett, 2 Hare, 394, 404; Boggs v. Varner, 6 Watts & S. 460; Meehan v. Williams, 48 Pa. St. 238; Bank of Louisville v. Curren, 36 Iowa, 555.

(N. J. Eq.), 21 Atl. 857; Newberry v. Bank of Princeton, 98 Va. 471, 36 S. E. 515; Fischer v. Lee, 98 Va. 159, 35 S. E. 441; Arbuckle v. Gates, 95 Va. 802, 30 S. E. 496 (proof of actual notice "must be such as to affect the conscience of the purchaser, and must be so strong and clear as to fix upon him the imputation of *mala fides*"). See, also, Daly v. Rizzutto, 59 Wash. 62, 29 **L. R. A.** (N. S.) 467, 109 Pac. 276; Hopkins v. O'Brien, 57 Fla. 444, 49 South. 936 (neighborhood reputation as to ownership); W. L. Moody & Co. v. Martin (Tex. Civ. App.), 117 S. W. 1015; and see *ante,* § 597, note (b).

**Exhibit**

shown in a former paragraph that the conception of notice was introduced, and the rules concerning it were established, from considerations of policy and expediency based upon the common experience of mankind. Notice, even when actual, is not necessarily equivalent to knowledge; [a] but the same effects must be attributed to it which would naturally flow from knowledge. It is treated as a representative of, or substitute for, actual knowledge, and is therefore in its essential nature inferior to knowledge. It necessarily follows that whenever a party has obtained a full knowledge, although not in accordance with the rules which define the nature of notice, and regulate the mode of its being given and received, there is no longer any need of invoking the legal conception of notice; the rules concerning it no longer apply; the very fact for which it is intended as a substitute has been more perfectly accomplished in another manner. To sum up in one statement, if the party has in any way obtained the full knowledge, those same results must necessarily, and even in a higher degree, be attributed to it—the very substance itself—which are, from motives of general policy, attributed to notice as its representative and substitute. The conclusion thus reached, upon principle, is supported by the weight of judicial authority, and it will reconcile much, if not all, of the apparent confusion and conflict of opinion upon this subject to be found in some of the decisions.[1]

§ 603, [1] It cannot be claimed that the views contained in the text are expressly adopted by all the decided cases. There is unfortunately a great lack of precision and accuracy in the language of too many judicial opinions; actual and constructive notice are sometimes not discriminated; notice and the evidence by which it is shown are often confounded; knowledge and notice are used interchangeably, as though they were exactly equivalent. However great an *appearance* of conflict there may be, the reasoning and conclusions of the text will, in my opinion, produce a consistent and harmonious system. See the cases cited in the next following note but one under this paragraph.

§ 603, (a) The text is cited to this effect in Cleveland, C. C. & St. L. R. Co. v. Moore, 170 Ind. 328, 82 N. E. 52, 84 N. E. 540.

Exhibit 5

Of course the knowledge here spoken of must be something more than the mental condition produced by rumors, casual conversations, and the like,—more than any constructive notice,—more even than the *mere* actual notice defined and permitted by the rules. It must appear that the mind of the party charged with the knowledge has been brought thereby to an intelligent apprehension of the nature of the prior fact, interest, claim, or right, so that a reasonable man, or an ordinary man of business, would act upon the information, and would regulate his conduct by it in the transaction or dealing in which he is engaged.[2] In accordance with principle, and as a conclusion from the decided cases, the following proposition may be formulated: If it can be shown that the party has in any way, from any person or source, by any means or method, for any purpose, although not in pursuance of the rules which regulate the giving of notice, obtained or derived actual and full *knowledge* of the kind above described, concerning the prior fact, interest, claim, or right,—that is, a knowledge which would operate upon the mind of any rational man, or man of business, and make him act with reference to the knowledge he has so acquired in the transaction or dealing in which he is engaged—then the same results must follow from the knowledge so obtained which would follow from an actual notice communicated in the manner required by the rules governing notice; in other words, the conscience of the party having the knowledge is affected by it in the same manner and to the same extent as it would be affected by an actual notice.[3][b] It some-

§ 603, [2] Lloyd v. Banks, L. R. 3 Ch. 488, 490, per Lord Cairns.

§ 603, [3] Lloyd v. Banks, L. R. 3 Ch. 488, 490, per Lord Cairns; Matter of Leiman, 32 Md. 225, 244; Price v. McDonald, 1 Md. 403, 54 Am. Dec.

§ 603, (b) The rule that actual notice must be obtained in the course of the transaction or dealing respecting the property is inapplicable to knowledge of facts as the equivalent or substitute for actual notice: Manasses v. Dent, 89 Ala. 565, 8 South. 108, citing this section. Information amounting to knowledge may come from any source: see Jaeger v. Hardy, 48 Ohio St. 335, 27 N. E. 563. One who has knowl-

**Exhibit**

times happens that by a positive rule of the law an actual and technical notice is necessary, in order to put a person in default, or to perfect some legal right, and then knowledge, however complete, will not supersede or take the place of the notice.   Actual knowledge, however, will generally have the same effect as notice in controversies concerning priority; but it is especially important in determining the existence of good faith; it is often a most essential element in making out a fraudulent intent, where a mere technical notice would not be sufficient.

657; Winchester v. Baltimore etc. R. R., 4 Md. 231; Johns v. Scott, 5 Md. 81 (actual knowledge of a prior unrecorded deed); Brown v. Wells, 44 Ga. 573, 575 (grantee's actual knowledge that his grantor was a mere squatter without color of title defeated his own title, although he had continued in possession under it for seven years); Pringle v. Dunn, 37 Wis. 449, 465–467, 19 Am. Rep. 772 (the premises being encumbered by a prior unrecorded mortgage; one subsequent purchaser of a portion of them "had heard that there was a defective railroad mortgage upon the premises, but did not look for it, because his abstract did not show it"; another purchaser of a different portion "knew by report" that there was such a mortgage; both were held charged as though they had received an actual notice); Jones v. Lapham, 15 Kan. 540, 545, 546 (purchaser of the legal estate with full knowledge of an outstanding equitable interest, claim or lien); Virgin v. Wingfield, 54 Ga. 451, 454, and cases cited (full knowledge has the effect of notice, and is evidence of fraud on the part of the grantee or purchaser); Blatchley v. Osborn, 33 Conn. 226, 233 (actual knowledge of an existing easement); Butcher v. Yokum, 61 Pa. St. 168, 171, 100 Am. Dec. 625 (it is not essential that information should come from the party or his agent; it may come *aliunde,* provided it be of a character likely to obtain credit; knowledge was obtained from the grandfather of the equitable title belonging to infant heirs, by a purchaser of

edge that another has a contract to purchase the land must inquire of him as to the terms of the contract: Hains v. Hains, 69 Mich. 581, 37 N. W. 563. And a prior mortgagee who, pending the negotiations for his mortgage, acquires knowledge that the property offered as security belongs to a third person, and was to be purchased by the mortgagor, and that negotiations for its purchase

were then pending, is charged with notice of the terms upon which the purchase is to be made; and when such terms involve the execution by the purchaser of a mortgage to the vendor to secure the purchase price, the later mortgage, although subsequently recorded, takes priority: Montgomery v. Keppel, 75 Cal. 128, 7 Am. St. Rep. 125, 19 Pac. 178.

Exhibit 5

**§ 604. Constructive Notice.**[a]—Constructive notice assumes that no information concerning the prior fact, claim, or right has been directly and personally communicated to the party; at least, such information is not shown by evidence, but is only *inferred by operation of legal presumptions.* It embraces all those instances, widely differing in their external features, in which, either from certain extraneous facts, or from certain acts or omissions of the party himself, disclosed by the evidence, the information is *conclusively presumed* to have been given to or received by him, or is inferred by a *prima facie* presumption of the law in the absence of contrary proof.[1]    There is a marked

the legal title from the widow); Lawton v. Gordon, 37 Cal. 202, 205, 206 (a person about to purchase land was told by the recorder that the intended grantor had already given a deed of the property to another person, which had been filed for record, but afterwards taken away from the office before recording. Held, a sufficient knowledge; *such* information need not come from a person interested in the property. The court expressly placed the decision upon the distinction, as laid down in the text, between actual knowledge obtained in any authentic manner, and the technical, actual notice). See, also, Dickerson v. Campbell, 32 Mo. 544 (where a clerk of a court obtained knowledge of prior equities through his familiarity with the records); Curtis v. Mundy, 3 Met. 405, 407, per Putnam, J.; Stevens v. Goodenough, 26 Vt. 676; Mulliken v. Graham, 72 Pa. St. 484, 490; Henry v. Raiman, 25 Pa. St. 354, 64 **Am. Dec.** 703; Phillipps v. Bank of Lewistown, 18 Pa. St. 394, 404; McKinney v. Brights, 16 Pa. St. 399, 55 **Am. Dec.** 512; Van Duyne v. Vreeland, 12 N. J. Eq. 142, 155; Rupert v. Mark, 15 Ill. 540; Cox v. Milner, 23 Ill. 476; Hankinson v. Barbour, 29 Ill. 80.

§ 604, [1] In the often-quoted case of Espin v. Pemberton, 3 De Gex & J. 547, 554, Lord Chancellor Chelmsford made some observations concerning constructive notice. The case was one of notice to a party's attorney. The lord chancellor, admitting that it was treated as a species of constructive notice, thought that it had better be classed under the head of actual notice. "If a person employs a solicitor, who either knows or has imparted to him in the course of his employment some fact which affects the transaction, the principal is bound by the fact, whether it is communicated to or concealed from him." He then adds: "Constructive notice properly so called is the knowledge [information?] which the courts im-

§ 604, (a) This paragraph is cited in Loomis v. Cobb (Tex. Civ. App.), 159 S. W. 305.

Exhibit 5

inconsistency in the treatment of constructive notice by
even the most eminent judges and text-writers. It has
often been defined as knowledge or information inferred
from certain circumstances, by a legal presumption of so
high and conclusive a nature that the party is not allowed
to overcome the inference by any contrary evidence show-
ing that in fact he had no knowledge nor information.[2]
Notwithstanding this definition, writers and judges who
adopt it have admitted into the class of constructive notice,
and have treated as instances thereof, all those cases in

pute to a person upon a presumption so strong of the existence of the
knowledge that it cannot be allowed to be rebutted, either from his know-
ing something which ought to have put him upon further inquiry, or from
his willfully abstaining from inquiry to avoid notice. I should therefore
prefer calling the knowledge which a person has, either by himself or
through his agent, actual knowledge; or if it is necessary to make a dis-
tinction between the knowledge which a person possesses himself and
that which is known to his agent, the latter might be called *imputed* knowl-
edge." The entire view of the chancellor in this extract is lacking in
accuracy of thought, from his confusion of *information* with knowledge.
Some necessary criticism upon his description of "constructive notice" will
be found in the text and in the next following note.

§ 604, [2] Thus the English editor of the Leading Cases in Equity says:
"Constructive notice is defined to be in its nature no more than evidence
of notice the presumption of which is so violent that the court will not
even allow of its being controverted"; citing Eyre, C. B., in Plumb v.
Fluitt, 2 Anstr. 438; Kennedy v. Green, 3 Mylne & K. 699, 719; 2 Lead.
Cas. Eq., 4th Am. ed., 121. Judge Story gives exactly the same definition:
1 Story's Eq. Jur., sec. 399. A recent editor of Judge Story's treatise
adopts the same view, in nearly the same language: "Constructive notice
is thus a conclusive presumption": 1 Story's Eq. Jur., sec. 410a. In
Hewitt v. Loosemore, 9 Hare, 449, 455, Turner, V. C., said: "Constructive
notice is knowledge which the court imputes to a party upon a presump-
tion, so strong that it cannot be allowed to be rebutted, that the knowledge
must have been communicated." The American editor of the Leading
Cases in Equity says: "Constructive notice is a legal inference from estab-
lished facts, and, like other legal presumptions, does not admit of dispute":
2 Lead. Cas. Eq., 4th Am. ed., 157. With respect to this last citation,
it certainly cannot be said of *all* legal presumptions that they "do not
admit of dispute." "Legal presumptions" are sometimes conclusive, and
sometimes rebuttable .

**Exhibit**

which it is settled that the presumption of information being received is merely *prima facie,* and that the inference may be overcome by contrary evidence. The essential element of constructive as distinguished from actual notice certainly is the *legal presumption* that information has been communicated to or acquired by the party; but it is equally certain that this legal presumption may be conclusive and may be rebuttable.[3]

### § 605. Opinion of Wigram, V. C., in Jones v. Smith.—It would be very difficult to formulate any statement which should embrace within its general terms all instances of constructive notice. The most important species, however, have been sufficiently settled by the decisions, and will be described in the subsequent paragraphs. The most comprehensive and accurate generalization ever attempted by any judge or text-writer was made by Vice-Chancellor Wigram, in the following passage, which is well worthy of being quoted in full: ''It is indeed scarcely possible to declare *a priori* what shall be deemed constructive notice, because, unquestionably, what would not affect one man may be abundantly sufficient to affect another.

§ 604, [3] This view renders the classification simple, comprehensive, and certain. "Actual" and "constructive" notice, as defined in the text, are separated by a broad, clear, and natural line of distinction. Additional subdivisions into "constructive," "implied," "imputed" notice, and the like, are, as it seems to me, equally unnecessary and confusing. The explanation given by Lord Brougham in Kennedy v. Green, 3 Mylne & K. 699, 719, is, in my opinion, very forcible and accurate, since while admitting a legal presumption as the basis, it does not assert that the presumption is always conclusive. He says: "The doctrine of constructive notice depends upon two considerations: first, that certain things existing in the relation or conduct of parties, or in the case between them, beget a presumption so strong of actual knowledge, that the law holds the knowledge to exist, because it is highly improbable it should not; and next, that policy, and the safety of the public, forbid a person to deny knowledge while he is so dealing as to keep himself ignorant, or so as that he may keep himself ignorant, and yet all the while let his agent know, and himself, perhaps, profit by that knowledge."

Exhibit 5

CONCERNING NOTICE.

But I believe I may, with sufficient accuracy, and without danger, assert that the cases in which constructive notice has been established resolve themselves into two classes: 1. Cases in which the party charged has had actual notice that the property in dispute was in fact charged, encumbered, or in some way affected, and the court has thereupon bound him with constructive notice of facts and instruments, to a knowledge of which he would have been led by an inquiry after [i. e., concerning] the charge, encumbrance, or other circumstance affecting the property of which he had actual notice; and 2. Cases in which the court has been satisfied from the evidence before it that the party charged had designedly abstained from inquiry for the very purpose of avoiding notice. How reluctantly the court has applied, and within what strict limits it has confined, the latter class of cases, I shall presently consider. The proposition of law upon which the former class of cases proceeds is, not that the party charged had notice of a fact or instrument which in truth related to the subject in dispute without his knowing that such was the case, but that he had actual notice that it did so relate. The proposition of law upon which the second class of cases proceeds is, not that the party charged had incautiously neglected to make inquiries, but that he had designedly abstained from making such inquiries for the purpose of avoiding knowledge,—a purpose which, if proved, would clearly show that he had a suspicion of the truth, and a fraudulent determination not to learn it. If, in short, there is not actual notice that the property is in some way affected, and no fraudulent turning away from a knowledge of facts which the *res gestæ* would suggest to a prudent mind,—if mere want of caution as distinguished from fraudulent and willful blindness is all that can be imputed to a purchaser,—then the doctrine of constructive notice will not apply; then the purchaser will in equity be considered, as in fact he is, a *bona fide* purchaser without

Exhibit 5

notice.''[1]  I would remark in passing that the constructive notice to subsequent purchasers and encumbrancers resulting from the registration of a prior deed, mortgage, or other instrument, under the recording statutes of this country, does not seem to fall within either of Vice-Chancellor Wigram's two classes, since it does not depend upon information or knowledge concerning any fact affecting the property sufficient to put the party upon an inquiry, which is the criterion of the first class, nor upon the party's willfully abstaining from seeking information, which is the test of the second class.  In short, this species of constructive notice is wholly of statutory origin, and is not the result or application of any general doctrine.

**§ 606.  When the Presumption is Rebuttable.**[a]—Since constructive notice, as heretofore defined, includes all the instances in which information concerning a prior fact, claim, or right is inferred either by a conclusive or by a rebuttable presumption of law, it would be a most important aid in the further discussion if we could discover a general criterion for distinguishing these two classes, and determining in what cases the presumption is conclusive,

§ 605, [1] Jones v. Smith, 1 Hare, 43, 55, 56.  The vice-chancellor quoted as examples of his two classes the following cases: 1. *Of the first class:* Ferrars v. Cherry, 2 Vern. 383; Jackson v. Rowe, 2 Sim. & St. 472; Kennedy v. Green, 3 Mylne & K. 699; Taylor v. Baker, 5 Price, 306; Coppin v. Fernyhough, 2 Brown Ch. 291; Davies v. Thomas, 2 Younge & C. 234; Eyre v. Dolphin, 2 Ball & B. 290; Malpas v. Ackland, 3 Russ. 273; Bisco v. Earl of Banbury, 1 Cas. Ch. 257; Allen v. Anthony, 1 Mer. 282; Daniels v. Davison, 17 Ves. 433; Taylor v. Stibbert, 2 Ves. 437.  2. *Of the second class:* Illustrations of and limitations on the doctrine: Whitbread v. Jordan, 1 Younge & C. 303; Birch v. Ellames, 2 Anstr. 427; Hiern v. Mill, 13 Ves. 114; Miles v. Langley, 1 Russ. & M. 39; Hanbury v. Litchfield, 2 Mylne & K. 629; Hine v. Dodd, 2 Atk. 275; Plumb v. Fluitt, 2 Anstr. 432; Evans v. Bicknell, 6 Ves. 174; Cothay v. Sydenham, 2 Brown Ch. 391.

§ 606, (a) This section is cited in National Cash Register Co. v. New Columbus Watch Co. (C. C. A.), 129 Fed. 114; Gainer v. Jones, 176 Ala. 408, 58 South. 288 (notice by possession).

**Exhibit 5**

and in what it is only *prima facie* and rebuttable.   It may not be possible to lay down a rule which is absolutely universal in its operation, and which furnishes a certain test for every case; but a rule may be formulated which is quite general in its application, and  which gives  a practical test sufficient for many instances differing widely in their external features.[1]   Wherever a party has information or

§ 606, [1] Williamson v. Brown, 15 N. Y. 354, has been uniformly treated as an important and leading case: The controversy was concerning the priority between the plaintiff, who held under a subsequent conveyance of the land which was duly recorded, and the defendant, who held a prior *unrecorded* mortgage.  The defendant claimed that plaintiff took his deed with notice of the prior mortgage.  On this issue the referee found that the plaintiff, when he took his deed, did not have actual notice of the prior mortgage, but that he had sufficient information or belief of the existence of said mortgage to put him upon inquiry, and that he pursued such inquiry to the extent of his information and belief, and failed to discover that any such mortgage actually existed.  This finding the court interpreted to mean that the plaintiff made all the inquiry which it became his duty to make upon the information he had received; upon this interpretation the court made its decision, and laid down certain general rules. It was held that upon the finding of fact no constructive notice had been given; the *prima facie* presumption was overcome.  It will be observed that the finding does not specify the particulars nor nature of the information, which was enough to put the plaintiff upon an inquiry, nor does it state the particulars of the inquiry which he made.  The conclusions reached by the court, and rules laid down by them, are therefore general, and apply to all cases which could be properly described by this finding of facts. S. L. Selden, J., holds, first, that constructive notice, as well as actual notice, will defeat the priority obtained under the recording statute by a previous record.  Passing to the question now under consideration, he quotes the definition of actual and of constructive notice, given in Story's treatise (Story's Eq. Jur., sec. 309); he gives a recorded deed and notice to an agent as examples of constructive notice; because in each case the presumption is conclusive, and the party would not be allowed to show that he actually received no information.  He adds some remarks concerning the various and inaccurate modes in which the terms "actual" and "constructive" have sometimes been used.  The learned judge then proceeds (p. 360): "The phraseology uniformly used, as descriptive of the kind of notice in question, 'sufficient to put the party upon inquiry,' would seem to imply that if the party is faithful in making inquiries, but fails to discover the conveyance, he will be protected.  The import of

Exhibit 5

knowledge of certain extraneous facts, *which do not of themselves constitute actual notice* of an existing interest, claim, or right in or 'to the subject-matter, but which are sufficient to put him upon an inquiry concerning the existence of a conflicting interest, claim, or right, then he is charged with constructive notice, because a presumption of law arises. This proposition is settled by an overwhelming weight of authority, English and American. A large number of particular instances or species of constructive notice are referable to and embraced within the general terms of this description. It should be carefully observed that the facts of which the party receives information or has knowledge *do not directly tend to show* the existence of any conflicting interest or claim, and are therefore not *actual* notice; but they are sufficient, whatever be their nature and form, to put the party, as a reasonable man, upon further inquiry. As an illustration, if a party is negotiating for the purchase of certain land, and sees or learns that the land is not in the intended grantor's possession, but is possessed and occupied by a

the terms is, that it becomes the duty of the party to inquire. If, then, he performs that duty, is he still to be bound, without any actual notice? The presumption of notice which arises from proof of that degree of knowledge which will put a party upon inquiry is, I apprehend, not a presumption of law, but of fact, and may therefore be controverted by evidence." I must remark at this point that the mistake in the last sentence is inexplicable. Judge Selden has, in other opinions, described in the most clear and accurate manner, excelled in fact by no other judge, the true nature of legal presumptions, the distinctions between those which are conclusive and those which are *prima facie*, and that argumentative conclusions of fact *are not presumptions at all;* that the term "presumption of fact" is a misnomer; that a presumption "may be controverted by evidence," is not the test of a presumption being one of fact, and not of law. The inference which is drawn from "information or knowledge of facts sufficient to put the party upon an inquiry" is, under every correct definition, a presumption of law, and not a mere argumentative deduction which a jury may or may not make; the only question is, whether it is a conclusive or a rebuttable presumption. Judge Selden, in support of his position that the presumption under these circumstances may be rebutted by evidence, then cites and quotes from the opinions in Whitbread

**Exhibit 5**

third person, a stranger, this fact of possession is sufficient to put the expected grantee upon an inquiry concerning the nature of the occupant's interest. The information or knowledge of such extraneous facts which are sufficient to put the party upon an inquiry constitutes a constructive notice of the conflicting claim or interest which *does* exist, because a presumption thence arises. Another instance is much more common in England than in this country. If a person loans money upon the security of a mortgage or other equitable lien given upon land belonging to the borrower, and learns that the title deeds are not in the possession of the borrower, but are in the possession of some third person, this is a constructive notice of any claim or interest in the land held by such third person, because the lender is put upon an inquiry, and a legal presumption arises from the facts. This presumption, in all cases of this class, is really a double one. The party is either presumed to have made the inquiry, and to have carried it out until he obtained full knowledge of the outstanding conflicting interest, claim, or right, or else to have

v. Boulnois, 1 Younge & C. 303, per Alderson, B.; Jones v. Smith, 1 Hare, 43; Hanbury v. Litchfield, 2 Mylne & K. 629; Flagg v. Mann, 2 Sum. 486, 554, per Story, J.; and Rogers v. Jones, 8 N. H. 264, per Parker, J. In conclusion, he states the general rule as follows (p. 362): "If these authorities are to be relied upon, and I see no reason to doubt their correctness, the true doctrine on this subject is, that where a purchaser has knowledge of any fact sufficient to put him on inquiry as to the existence of some right or title in conflict with that he is about to purchase, he is presumed either to have made the inquiry and ascertained the extent of such prior right, or to have been guilty of a degree of negligence equally fatal to his claim to be considered as a *bona fide* purchaser. This presumption, however, [is a mere inference of fact, and] may be repelled by proof that the purchaser failed to discover the prior right, notwithstanding the exercise of proper diligence on his part." The general conclusion thus formulated, both as to the extent of the presumption,—what is presumed, —and its *prima facie* or rebuttable nature, is beyond a doubt correct. The *dictum* by which it is asserted to be "a mere inference of fact" is as clearly erroneous. Another opinion was also delivered by Mr. Justice Paige, which arrived at the same result, by substantially the same reasoning: Reed v. Gannon, 50 N. Y. 345, 349, 350.

**Exhibit**

intentionally and deliberately refrained from making the inquiry or following it up in a reasonable and proper manner for the very purpose of avoiding the knowledge which he might have acquired.  The presumption is clearly one of law, and not a mere inference of fact; because upon the bare proof that the party had the information of facts sufficient to put him upon an inquiry, the inference is at once made, without any further evidence in its support, and in the absence of all contrary evidence it is absolute and conclusive.[2]

§ 606, [2] Ratcliffe v. Barnard, L. R. 6 Ch. 652, 654; Maxfield v. Burton, L. R. 17 Eq. 15, 18; Rolland v. Hart, L. R. 6 Ch. 678, 681, 682; Broadbent v. Barlow, 3 De Gex, F. & J. 570, 581; Hunt v. Elmes, 2 De Gex, F. & J. 578, 587, 588; Perry v. Holl, 2 De Gex, F. & J. 38; Espin v. Pemberton, 3 De Gex & J. 547, 554, 555; Roberts v. Croft, 2 De Gex & J. 1, 5, 6; Atterbury v. Wallis, 8 De Gex, M. & G. 454; Ware v. Lord Egmont, 4 De Gex, M. & G. 460, 473, 474; Penny v. Watts, 1 Macn. & G. 150, 167; Jackson v. Rowe, 2 Sim. & St. 472; Hewitt v. Loosemore, 9 Hare, 449, 456, 458.  In several of these later English cases a very strong disposition has been shown to limit and restrict the effect of the constructive notice which arises from the existence of facts and circumstances sufficient to put the party on an inquiry.  This limitation is applied both where the party made some inquiry and relied upon what he had learned thereby, and where he made no inquiry at all.  The criterion to which I refer was fully stated in Ware v. Lord Egmont, 4 De Gex, M. & G. 460, 473, by Lord Cranworth, as follows: "I must not part with this case without expressing my entire concurrence in what has on many occasions of late years fallen from judges of great eminence on the subject of constructive notice, namely, that it is highly inexpedient for courts of equity to extend the doctrine,—to attempt to apply it to cases to which it has not hitherto been held applicable.  Where a person has not *actual* notice, he ought not to be treated as if he had notice, unless the circumstances are such as enable the court to say, not only that he might have acquired, but also that he *ought* to have acquired, the notice with which it is sought to affect him; that he would have acquired it but for his gross negligence in the conduct of the business in question.  The question, when it is sought to affect a purchaser with constructive notice, is, not whether he had the means of obtaining, and might by prudent caution have obtained, the knowledge in question, but whether the not obtaining it was an act of gross or culpable negligence.  It is obvious that no definite rule as to what will amount to gross or culpable negligence, so as to meet every case,

Exhibit 5

**§ 607. Same—Rebutted by Due Inquiry.**—It may be stated as a general proposition that in all instances of constructive notice belonging to this class, where it arises from information of some extraneous facts, not of themselves tending to show an actual notice of the conflicting right, but sufficient to put a prudent man upon an inquiry, the constructive notice is not absolute; the legal presumption aris-

can possibly be laid down." The first and leading case in which this restricted view was laid down, and which other decisions have followed and approved, was Hewitt v. Loosemore, 9 Hare, 449, decided by Turner, V. C.; and see Woodworth v. Paige, 5 Ohio St. 70, 76. On the other hand, in Broadbent v. Barlow, 3 De Gex, F. & J. 570, Lord Chancellor Campbell said: "By 'the means of knowledge' by which any one is to be affected, must be understood means of knowledge which are practically within reach, and of which a prudent man might have been expected to avail himself." It is plain that the criterion, as established by these most recent English cases, is no longer the mere want of that reasonable care and diligence in making an inquiry which would be used by a prudent man; the failure to prosecute or to make the inquiry must, under the circumstances, amount to gross or culpable negligence. It should be observed, however, that this rule is confined, and is intended to be confined, to that class of constructive notices in which the legal presumption is rebuttable.[b]

The American courts do not appear to have adopted this most recent English rule; they seem to have adhered with great unanimity to the doctrine contained in the *dictum* above quoted from Lord Campbell.[c] Wherever the facts and circumstances do not tend to show actual notice,—in other words, where the facts and circumstances are not simply the circumstantial evidence of an actual notice,—the test of constructive notice generally applied by the American courts has been, whether such facts are sufficient

§ 606, (b) The criterion of Ware v. Lord Egmont was followed in the recent English cases of Oliver v. Hinton, [1899] 2 Ch. 264, 68 Law J. Ch. 583, 81 Law T. (N. S.) 212, 48 Wkly. Rep. 3; Bailey v. Barnes. [1894] 1 Ch. 25, 7 Reports, 9 (knowledge that the land had been sold for less than its value under a power of sale in a mortgage does not charge a purchaser from the vendee at such sale with constructive notice of fraud in the conduct of the sale).

In the opinion in this case it is observed: "Gross or culpable negligence does not import any breach of a legal duty. It includes willful departure by a purchaser from the 'usual course of business' in order to avoid acquiring a knowledge of his vendor's title."

§ 606, (c) See, however, expressions tending to support the English rule, in Grundies v. Reid, 107 Ill. 304.

**Exhibit 5**

Case 14-50333-btb    Doc 423    Entered 10/10/18 12:52:06    Page 88 of 99

ing under the circumstances is only *prima facie;* it may be overcome by evidence, and the resulting notice may thereby be destroyed. Whenever, therefore, a party has merely received information, or has knowledge of such facts sufficient to put him on an inquiry, and this constitutes the sole foundation for inferring a constructive notice, he is allowed to rebut the *prima facie* presumption thence arising by evidence; and if he shows by convincing evidence that he did

to put a prudent man upon an inquiry, and whether an inquiry has been prosecuted with reasonable care and diligence: Rogers v. Jones, 8 N. H. 264; Griffith v. Griffith, 1 Hoff. Ch. 153; Hull v. Noble, 40 Me. 459, 480; Warren v. Swett, 31 N. H. 332, 341, 342; Briggs v. Taylor, 28 Vt. 180; Littleton v. Giddings, 47 Tex. 109; Allen v. Poole, 54 Miss. 323; Wood v. Krebbs, 30 Gratt. 708; Cordova v. Hood, 17 Wall. 1, per Strong, J.; Brush v. Ware, 15 Pet. 93, 112; Helms v. Chadbourne, 45 Wis. 60, 70, 71, 73; Chicago etc. R. R. Co. v. Kennedy, 70 Ill. 350, 361, 362; Blanchard v. Wave, 43 Iowa, 530; 37 Iowa, 305; Loughridge v. Bowland, 52 Miss. 546, 553–555; Deason v. Taylor, 53 Miss. 697, 701; Brown v. Volkening, 64 N. Y. 76, 82; Cambridge Valley Bank v. Delano, 48 N. Y. 326, 336, 339; Bennett v. Buchan, 61 N. Y. 222, 225; Kellogg v. Smith, 26 N. Y. 18; Baker v. Bliss, 39 N. Y. 70, 74, 78; Reed v. Gannon, 50 N. Y. 345; Pendleton v. Fay, 2 Paige, 202, 205; Edwards v. Thompson, 71 N. C. 177, 179; Major v. Bukley, 51 Mo. 227, 231; Russell v. Sweezey, 22 Mich. 235, 239; O'Rourke v. O'Connor, 39 Cal. 442, 446; Dutton v. Warschauer, 21 Cal. 609, 82 Am. Dec. 765; Pell v. McElroy, 36 Cal. 268; Witter v. Dudley, 42 Ala. 616, 621, 625;[d] and many other cases cited in the preceding and the subsequent notes. It is sometimes difficult to distinguish a case of constructive notice arising from extraneous facts sufficient to put the party upon an inquiry from a case of mere actual notice depending upon circumstantial evidence; and the two have occasionally been confounded by the decisions themselves. The criterion as given in the text will, I think, render the distinction sufficiently plain and practical.

§ 606, (d) See, also, Bright v. Buckman, 39 Fed. 243, citing this section; Tillman v. Thomas, 87 Ala. 321, 13 Am. St. Rep. 42, 6 South. 151; Montgomery v. Keppel, 75 Cal. 128, 7 Am. St. Rep. 125, 19 Pac. 178; Washburn v. Huntington, 78 Cal. 573, 21 Pac. 305; Fresno C. & I. Co. v. Rowell, 80 Cal. 114, 13 Am. St. Rep. 112, 22 Pac. 53; Anthony v. Wheeler, 130 Ill. 128, 17 Am. St. Rep. 281, 22 N. E. 494; Janvrin v. Janvrin, 60 N. H. 169; Gale v. Morris, 30 N. J. Eq. 289; Vredenburgh v. Burnet, 31 N. J. Eq. 232; Jaffray v. Tower, 63 N. J. Eq. 530, 53 Atl. 182, citing this and the preceding section of the text; Lamar's Ex'r v. Hale, 79 Va. 147.

Exhibit

make the inquiry, and did prosecute it with all the care and
diligence required of a reasonably prudent man, and that
he failed to discover the existence of, or to obtain knowl-
edge of, any conflicting claim, interest, or right, then the
presumption of knowledge which had arisen against him
will be completely overcome; the information of facts and
circumstances which he had received will not amount to a
constructive notice.   What will amount to a due inquiry
must largely depend upon the circumstances of each case.[1]

§ 607, [1] The different species of constructive notice in which the legal
presumption may thus be overcome seem to be the following: 1. That
derived wholly from mere extraneous facts and circumstances which are
said to put a party on an inquiry, which are matters *in pais*, and which
generally consist of fraud, concealments, neglects, mistakes, and the like,
by third persons; 2. That derived from the possession or tenancy of the
property by some third person; and 3. To a partial extent, that derived
from the pendency of an action affecting the property.   In the following
species the constructive notice seems to be absolute and the presumption
conclusive: 1. That derived from a statutory recording or registration in
the United States;[a] 2. That derived from the statutory *lis pendens; 3.* That
derived from a definite recital or reference in an instrument forming an
essential part of a party's chain of title; and 4. That affecting a prin-
cipal, where an actual or a constructive notice has been duly given to his
proper agent.   That the presumption *may* be overcome in the classes of
cases first above mentioned is either directly or inferentially held by the
following decisions, among others: Williamson v. Brown, 15 N. Y. 354,
360; Flagg v. Mann, 2 Sum. 486, 554, per Story, J.; Rogers v. Jones,
8 N. H. 264, per Parker, J.; Whitbread v. Boulnois, 1 Younge & C. 303,
per Alderson, J.; Jones v. Smith, 1 Hare, 43, per Wigram, V. C.; Han-
bury v. Litchfield, 2 Mylne & K. 629; Hunt v. Elmes, 2 De Gex, F. & J.
578; Espin v. Pemberton, 3 De Gex & J. 547; Roberts v. Croft, 2 De Gex
& J. 1; Ware v. Lord Egmont, 4 De Gex, M. & G. 460; Hewitt v. Loose-
more, 9 Hare, 449; Griffith v. Griffith, 1 Hoff. Ch. 153.[b]
Whenever a party has, by means of information concerning extraneous
matters, been put upon inquiry, how this inquiry should be made, and how
far it should be prosecuted, in order that the legal presumption may be
overcome, and the constructive notice defeated, although the party may
still have failed to ascertain the real truth, must largely depend upon the

§ 607, [a] The text is cited to this
effect in Johnson v. Hess, 126 Ind.
298, 9 **L. R. A.** 471, 25 N. E. 445.

§ 607, [b] See, also, Anthony v.
Wheeler, 130 Ill. 128, 17 **Am. St. Rep.**
281, 22 N. E. 494.

Exhibit 5

§ 607                    EQUITY JURISPRUDENCE.                    1152

If, on the other hand, he fail to make any inquiry, or to prosecute one with due diligence to the end, the presumption remains operative, and the conclusion of a notice is

particular circumstances of each case; no universal rule is possible. Much help, however, may be derived from a comparison of the decisions, which I have arranged according to their general subject-matter.

1. *Examination of the Records.*—Examination of the records is always necessary, and there could hardly be a "due inquiry" without it. If the information given points to the existence of some interest or claim which, if it exists at all, must necessarily appear upon the record, then a search of the proper record, and a discovery that no such claim appeared therein, would generally be sufficient; the "due inquiry" would have been prosecuted: Barnard v. Campau, 29 Mich. 162; Jackson v. Van Valkenburg, 8 Cow. 260; Bellas v. McCarthy, 10 Watts, 13, 28; Van Keuren v. Cent. R. R., 38 N. J. L. 165, 167 (when a grantor remains in possession after conveyance, a purchaser from his *grantee* held not bound to inquire further than the record of his conveyance; the record of his deed sufficient; but see, *per contra*, Illinois Cent. R. R. v. McCullough, 59 Ill. 166); Reynolds v. Ruckman, 35 Mich. 80.

In general, an examination of the records by such a party is not sufficient. If the information which puts him on an inquiry points to the existence of some matter *in pais*, some interest *dehors* the records, or which would not necessarily be shown by the records, then a search of the records alone is not "due inquiry,"—if, for example, the supposed claim was an easement, or a grantor's lien for purchase price, and the like: Wilson v. Hunter, 30 Ind. 466, 472; Russell v. Sweezey, 22 Mich. 235, 239; Shotwell v. Harrison, 30 Mich. 179; Munroe v. Eastman, 31 Mich. 283; Deason v. Taylor, 53 Miss. 697, 701; Littleton v. Giddings, 47 Tex. 109; Baker v. Bliss, 39 N. Y. 70; Randall v. Silverthorn, 4 Pa. St. 173.

2. *Inquiry from the Grantor or Vendor.*—A purchaser who had been put on an inquiry should seek information from his grantor or vendor, and a failure to do so would generally show a lack of the due care and diligence in making the inquiry. There are cases which go to the length of holding that such a purchaser, who neglects to question his grantor or vendor, will be charged with notice of all he could have learned: Sergeant v. Ingersoll, 7 Pa. St. 340; 15 Pa. St. 343, 348, 349.e Under some circumstances it is possible that the information sought and obtained from the grantor or vendor would satisfy the requirements of the rule, and constitute the due inquiry: See Espin v. Pemberton, 3 De Gex & J. 547, 556.

§ 607, (e) See, also, Hickman v. Green, 123 Mo. 165, 29 L. R. A. 39, 22 S. W. 455, 27 S. W. 440, dissenting opinion of Sherwood, J., citing this note.

Exhibit 5

absolute.[e]  The criterion thus laid down will serve to determine the *prima facie* nature of the presumption in a very large number of the instances which are properly referable to the class of "constructive notice."

3. *Inquiry from Third Persons.*—Under many circumstances, an examination of the records and a questioning of the vendor would not be sufficient, unless the inquiry were further prosecuted among third persons from whom information could probably be obtained; a neglect to make such inquiry would not overcome the presumption.  Thus an omission to seek information from a third person who was in possession, or from a third person who was said or claimed to hold some lien or encumbrance thereon, would generally be a failure to prosecute the inquiry with due diligence. The cases on this particular subject are very numerous, depending upon a great diversity of facts: Littleton v. Giddings, 47 Tex. 109; Russell v. Sweezey, 22 Mich. 235, 239; Witter v. Dudley, 42 Ala. 616, 621, 625.[d] The following recent English cases are illustrations of a failure to make "due inquiry," whereby the party remained charged with constructive notice: Hopgood v. Ernest, 3 De Gex, J. & S. 116, 121; Broadbent v. Barlow, 3 De Gex, F. & J. 570, 581; Atterbury v. Wallis, 8 De Gex, M. & G. 454; Penny v. Watts, 1 Macn. & G. 150, 165; Hewitt v. Loosemore, 9 Hare, 449, 456, 458; Maxfield v. Burton, L. R. 17 Eq. 15, 18; Pitcher v. Rawlins, L. R. 11 Eq. 53; Briggs v. Jones, L. R. 10 Eq. 92.  In the following recent English cases it was held that the inquiry was sufficient, and the party was not affected with notice: Greenfield v. Edwards, 2 De Gex, J. & S. 582; Cory v. Eyre, 1 De Gex, J. & S. 149, 168, 169; Hunt v. Elmes, 2 De Gex, F. & J. 578, 588; Perry v. Holl, 2 De Gex, F. & J. 38, 53, 54; Espin v. Pemberton, 3 De Gex & J. 547, 556; Roberts v. Croft, 2 De Gex & J. 1, 5, 6; Ware v. Lord Egmont, 4 De Gex, M. & G. 460, 473, 474; Hewitt v. Loosemore, 9 Hare, 449, 456, 458; Credland v. Potter, L. R. 10 Ch. 8; Ratcliffe v. Barnard, L. R. 6 Ch. 652, 654; see, also, Epley v. Witherow, 7 Watts, 163, 167; McGehee v. Gindrat, 20 Ala. 95; Wilson v. McCullough, 23 Pa. St. 440, 62 **Am. Dec.** 347.

§ 607, (d) See, also, Hickman v. Green, 123 Mo. 165, 29 **L. R. A.** 39, 22 S. W. 455, 27 S. W. 440, dissenting opinion of Sherwood, J., citing this note.

§ 607, (e) This passage is quoted in Hill v. Moore, 85 Tex. 335, 19 S. W. 162; cited, Hickman v. Green, 123 Mo. 165, 29 **L. R. A.** 39, 22 S. W. 455, 27 S. W. 440, dissenting opinion of Sherwood, J. The paragraph is quoted at length in Loomis v. Cobb (Tex. Civ. App.), 159 S. W. 305.

II—73

Exhibit 5

**§ 608. When Conclusive.**—It should be added, for the purpose of concluding this general description, that the doctrine determining what constitutes a constructive notice under such circumstances may be formulated, in somewhat different terms, as follows: Whenever a party has information or knowledge of certain extraneous facts, which of themselves do not amount to, nor tend to show, an *actual* notice, but which are sufficient to put a reasonably prudent man upon an inquiry respecting a conflicting interest, claim, or right, *and the circumstances are such that the inquiry, if made and followed up with reasonable care and diligence, would lead to a discovery of the truth,* to a knowledge of the interest, claim, or right which really exists, then the party is absolutely charged with a constructive notice of such interest, claim, or right. The presumption of knowledge is then conclusive.[a] There is plainly nothing contradictory between this statement and the criterion laid down in the preceding paragraph; both are phases of the same doctrine. Since the facts are assumed to be such that an inquiry properly conducted would result in arriving at the truth, it would be impossible for the party to show by any evidence that he had duly prosecuted the inquiry, and had nevertheless failed to acquire the knowledge. If the facts of a particular case bring it within this description, the legal presumption becomes conclusive, and the constructive notice is absolute in its effects.[1]

§ 608, [1] It is in pursuance of this general proposition that the constructive notice from recitals contained in a deed forming a necessary link in a party's chain of title, and that chargeable upon a principal when given to an agent, and that derived from a *lis pendens* and from registration, are absolute in their effects, the legal presumptions being conclu-

§ 608, (a) This passage is quoted in Lang Syne Gold Mining Co. v. Ross, 20 Nev. 127, 19 **Am. St. Rep.** 337, 18 Pac. 358; Kernohan v. Durham, 48 Ohio St. 1, 12 **L. R. A.** 41, 26 N. E. 982. The text is cited in Wittkowsky v. Gedney, 124 N. C. 437, 32 S. E. 731; Cooke v. Caswell, 81 Tex. 678, 17 S. W. 385.

**Exhibit** 5

**§ 609. Species of Constructive Notice.**—Having thus explained the nature of constructive notice, and discussed the general doctrines concerning it, I shall now describe its various kinds or species, and state the particular rules applicable to each. The following subdivision is accurate and sufficient; it is based upon natural lines of separation, and embraces every definite species recognized by the courts. These various kinds of constructive notice are: 1. That by extraneous facts, or matters *in pais*, generally involving acts of fraud or negligence; 2. That by possession or tenancy; 3. That by recital or reference in instruments of title; 4. That by *lis pendens*, including the statutory notice of a pending action; 5. That by judgments; 6. That by registration or recording of instruments; 7. That between a principal and his agent. These seven species will be examined in the order thus given.

**§ 610. 1. By Extraneous Facts, Generally Acts of Fraud, Negligence, or Mistake.**—The criterion in all instances of this species is, that the party had knowledge or information of certain matters *in pais*, which, although not directly tending to show the existence of a prior conflicting right, are sufficient to put him, as a prudent man, upon an inquiry; and he is charged with constructive notice of all that he might have learned by an inquiry prosecuted with

sive. In support of the general rule as given in the text, see the following cases, among others: Helms v. Chadbourne, 45 Wis. 60, 70, 71; Chicago etc. R. R. Co. v. Kennedy, 70 Ill. 350, 361; Loughridge v. Bowland, 52 Miss. 546, 553; Maul v. Rider, 59 Pa. St. 167, 171; Mullison's Estate, 68 Pa. St. 212; Kennedy v. Green, 3 Mylne & K. 699.[b]

§ 608, (b) It appears that a person who is put on inquiry is conclusively charged with notice of such a fact as dedication to the public, notwithstanding that his inquiries led him to a wrong conclusion: Attorney-General v. Abbott, 154 Mass. 323, 13 L. R. A. 251, 28 N. E. 346. That a purchaser at a guardian's sale is presumed to have notice of the proceedings authorizing the sale, see In re Axtell's Petition, 95 Mich. 244, 54 N. W. 889, citing this note. In Gulf, C. & S. F. R. Co. v. Gill, 5 Tex. Civ. App. 496, 23 S. W. 142, citing §§ 604 and 606 of the text, the author's classification of constructive notice is approved, but notice from recitals is treated as of the second class.

Exhibit 5

reasonable diligence; a legal presumption arises that he *has* obtained information of what he might thus have learned. In every such case the first question is, whether the facts of which the party has information *are* sufficient to put him upon an inquiry, so as to raise the *prima facie* presumption; the further question is then presented, whether he has made a due inquiry without discovering the truth, so as to overcome the presumption and defeat the notice, or whether he has so neglected this duty that the presumption remains unshaken and the notice effective.[a] A third question might be suggested, whether he had made an inquiry and had ascertained the whole truth concerning the prior conflicting right, so that the constructive notice would in reality be turned into actual knowledge or actual notice. I would remark that in many of the decisions involving this species of notice it will be seen upon a careful examination that the point actually determined by the court was, not whether the party had made a due and reasonable inquiry, but whether the facts were sufficient to put him upon *any* inquiry, so that his failure to inquire would be a fatal neglect. It is plain from the discussions of the preceding paragraphs that in all instances belonging to this species the legal presumption upon which constructive notice always rests is only *prima facie*, and may be overcome by evidence clearly showing that the inquiry was duly prosecuted without success. Before describing the particular cases falling under this head, it is proper to mention the difficulty, which may sometimes exist, of distinguishing this kind of constructive notice from those instances of actual notice which are established merely by circumstantial evidence. In fact, there are decisions which make no attempt to distinguish them; the terms "constructive notice" and "actual notice" have been applied indiscriminately to the same condition of circumstances. The distinction, however, exists, and is funda-

§ 610, (a) The text is quoted in Newberry v. Wilkinson, 199 Fed. 673, 118 C. C. A. 111; Miller v. Ash, 156 Cal. 544, 105 Pac. 600.

**Exhibit 5**

mental.  Whatever may be the language of judicial *dicta*, it is settled beyond a doubt that in one case the actual notice is argumentatively inferred as a conclusion of fact, by the jury or other tribunal, from the circumstances which put the party upon an inquiry; and in the other case the constructive notice is inferred by the court as a presumption or conclusion of law from the same kind of circumstances, in the absence of contrary evidence.[1]  I shall now mention the most important instances which properly belong to this branch of constructive notice.

§ 611.  **Visible Objects and Structures.**—If a purchaser sees or has knowledge of, or by the ordinary use of his senses might see or know of, visible material objects or structures upon or connected with the land or other subject-matter concerning which he is dealing, he may, and generally will, be charged with a constructive notice of any easement or other similar right the existence of which would be reasonably suggested to him by the appearance of such material object.  He is put upon an inquiry, and is presumed to have ascertained whatever he might have learned by prosecuting the inquiry in a due and reasonable manner.[1a]

§ 610, [1] These propositions are so fully examined in the preceding paragraphs that no further citation of authorities in their support is necessary. Cases belonging to this first species of constructive notice are much more common in England than in the United States; indeed, a very large proportion of the English decisions concerning constructive notice must be referred to this head.  The reason is obvious.  In England, the absence of any general system of recording renders is possible for titles to be affected in a vast number of modes by matters *in pais*, by matters resting in the knowledge of particular individuals, and which can only be ascertained by a special inquiry.  The universal system of recording in this country largely diminishes the possibility of titles being thus affected by extraneous matters.

§ 611, [1] Hervey v. Smith, 22 Beav. 299; Davies v. Sear, L. R. 7 Eq. 427, 432, 433; Morland v. Cook, L. R. 6 Eq. 252, 263, 265; Raritan Water

§ 611, (a) For recent cases illustrative of this section, see *ante*, § 600, note.

Exhibit 5

**§ 612.  Absence of Title Deeds.**—The case belonging to this head which most frequently occurs in England is that arising from the absence of the title deeds, or their non-production by the owner of land with whom an intended purchaser or encumbrancer is dealing.  From the peculiar system of conveyancing and land titles prevailing in England, the owner of a *legal* estate in fee or for life is entitled and is presumed to have the title deeds and other muni-

P. Co. v. Veghte, 21 N. J. Eq. 463, 478; Hoy v. Bramhall, 19 N. J. Eq. 563, 97 Am. Dec. 687; Randall v. Silverthorn, 4 Pa. St. 173; Paul v. Connersville etc. R. R., 51 Ind. 527, 530.  In Hervey v. Smith, 22 Beav. 299, there were fourteen chimney-pots visible on the roof of a house, but only twelve flues in the house; and the purchaser was held charged with constructive notice of an easement for the passage of smoke in favor of an adjoining dwelling.  This decision has been criticised.  In Davies v. Sear, L. R. 7 Eq. 427, an open archway in a house visible to the purchaser was held constructive notice of a right of way through the premises enjoyed by a neighboring owner.  In Morland v. Cook, L. R. 6 Eq. 252, lands on the coast were purchased which were below the level of the sea, and which, together with a larger extent of adjacent land, were protected by a sea-wall. The purchaser was held to be charged with constructive notice of a covenant providing for the maintenance of the sea-wall which constituted an equitable charge upon the land so bought.  In Raritan etc. Co. v. Veghte, 21 N. J. Eq. 463, a mill race and dam were held constructive notice of easements for the use of water rights encumbering the property; while in Paul v. Connersville etc. R. R., 51 Ind. 527, a graded railway track across a farm was held notice of all the rights of the railroad.  See, also, Allen v. Seckham, L. R. 11 Ch. Div. 790, 794; Suffield v. Brown, 9 Jur., N. S., 999; 33 L. J. Ch. 249, per Lord Romilly, M. R., and 10 Jur., N. S., 111; 33 L. J. Ch. 256, per Lord Westbury; Pyer v. Carter, 1 Hurl. & N. 916; Ewart v. Cochrane, 4 Macq. 117; Dann v. Spurrier, 7 Ves. 231; Clements v. Welles, L. R. 1 Eq. 200; Wilson v. Hart, L. R. 1 Ch. 463.  Exactly the same question *in principle* sometimes arises in suits for the specific performance of contracts, where the vendee, being familiar with the premises, or having seen them shortly before entering into the contract, is held charged with constructive notice of easements, and other similar rights affecting the land, which are reasonably suggested by the visible appearance of material structures or of modes in which the premises are used and occupied.  See Shackleton v. Sutcliffe, 1 De Gex & S. 609; Grant v. Munt, Coop. 173; Pope v. Garland, 4 Younge & C. 394; Bowles v. Round, 5 Ves. 508; Dyer v. Hargrave, 10 Ves. 506.

Exhibit 5

ments of title constituting the written evidence of his estate in his own possession or under his personal and immediate control. The inability to produce the title deeds, and especially their possession by a stranger, would indicate that some equitable or perhaps legal interest, mortgage, or lien had been created and was outstanding.[1] The three following general rules may be considered as definitely settled by a strong preponderance of authority, and especially by the more recent and carefully considered decisions of the English courts. It should be observed that they are given as *general* rules; their application must largely depend upon and vary with the changing circumstances of particular cases. If a purchaser or encumbrancer dealing with the apparent owner of an estate learns or is informed that the title deeds are in the possession of a third person, this will, in general, be a constructive notice·of any interest in or claim upon the estate held by such person; and will certainly be a notice, if the party thus receiving the information intentionally omits to make any inquiry into the nature and objects of the stranger's possession.[2] On the other

§ 612, [1] In fact, the possession, by the apparent owner of the legal estate, of *all* the title deeds is quite analogous to, though not of course exactly identical with, a perfect record title in the United States. A purchaser dealing with the legal owner in England, and finding him in possession of *all* the title deeds, is in a position quite similar to that of a purchaser in this country who has made a search and finds the owner's title on the records clear and unencumbered. While in neither case is such purchaser *absolutely* secure against unknown outstanding claims, in both he stands in a like position of advantage and protection.

§ 612, [2] Dryden v. Frost, 3 Mylne & C. 670, 673, per Lord Cottenham; Hiern v. Mill, 13 Ves. 114; Birch v. Ellames, 2 Anstr. 427; Bradley v. Riches, L. R. 9 Ch. Div. 189, 195, 196; Maxfield v. Burton, L. R. 17 Eq. 15, 18 (the purchaser was informed that the deeds were in the possession of a third person, and simply neglected to make any inquiry; it did not appear that his neglect was intentional or willful). Upon substantially the same grounds it was held, in Kellogg v. Smith, 26 N. Y. 18, 23, that the purchaser of a bond and mortgage who fails to require the production of the bond, it being in fact not produced, is charged with notice of any defects in his assignor's title.

Exhibit 5

hand, it is now thoroughly settled that the *mere* absence
or non-production of the title deeds is not of itself a con-
structive notice to a purchaser or encumbrancer, if he in
good faith inquires for them, and a reasonable excuse for
their non-appearance is given. His omission to make
further inquiry is not the "culpable neglect" which the
English courts now require, under such circumstances, in
order to charge the party with notice. Exactly the same
rule has been applied by several of the cases to a some-
what different state of facts. If deeds *are* produced and
delivered to the purchaser or encumbrancer, which are
represented to be all of the muniments of title, while in
fact they are not all, but some of the deeds affecting the
title are in possession of a third person, his omission to ex-
amine the deeds thus delivered to him and to discover the
defect is not the culpable neglect which renders him
chargeable with notice.[3] Finally, if a purchaser or en-
cumbrancer fails to make any inquiries concerning the title
deeds of the property for which he is dealing, this is, under
the English system, a "culpable negligence," and he is
thereby charged with constructive notice of all the facts
which he might have learned by means of a due inquiry.[4a]

§ 612, [3] Dixon v. Muckleston, L. R. 8 Ch. 155, 158, 161; Ratcliffe v.
Barnard, L. R. 6 Ch. 652, 654; Hunt v. Elmes, 2 De Gex, F. & J. 578,
588; 28 Beav. 631; Perry v. Holl, 2 De Gex, F. & J. 38, 53, 54; Espin v.
Pemberton, 3 De Gex & J. 547, 556; 4 Drew. 333; Roberts v. Croft, 2
De Gex & J. 1, 5, 6; 24 Beav. 223; Hewitt v. Loosemore, 9 Hare, 449, 456,
458; Colyer v. Finch, 5 H. L. Cas. 905; Finch v. Shaw, 19 Beav. 500;
Dowle v. Saunders, 2 Hem. & M. 242; Hipkins v. Amery, 2 Giff. 292;
Farrow v. Rees, 4 Beav. 18; Evans v. Bicknell, 6 Ves. 174; Plumb v.
Fluitt, 2 Anstr. 432; and see Ware v. Lord Egmont, 4 De Gex, M. & G.
460, 473, 474; Greenfield v. Edwards, 2 De Gex, J. & S. 582; Cory v.
Eyre, 1 De Gex, J. & S. 149, 168, 169; Perry Herrick v. Attwood, 2 De
Gex & J. 21, 37.

§ 612, [4] Such conduct is the willful shutting one's eyes to the truth,
and omitting to inquire for the very purpose of avoiding information,

§ 612, (a) So, where a general in-        tain what they consisted of or to
quiry was made about the title deeds,     have them produced, the purchaser
but no endeavor was made to ascer-        was culpably negligent: Oliver v.

**§ 613.  Other Matters in Pais.**—As might be supposed from our wholly different system of conveyancing and titles, instances of constructive notice by the absence or non-production of title deeds seldom, if ever, arise in this country.  The same general rule, however, is applied by our courts in all analogous cases.  If a purchaser or encumbrancer, dealing concerning property of which the record title appears to be complete and perfect, has information of extraneous facts or matters *in pais,* sufficient to put him on inquiry respecting some unrecorded conveyance, mortgage, or encumbrance, or respecting some outstanding interest, claim, or right which is not the subject of record, and he omits to make a proper inquiry, he will be charged with constructive notice of all the facts which he might have learned by means of a due and reasonable inquiry.[1 a]

spoken of by Vice-Chancellor Wigram in the passage quoted in a preceding paragraph: Hewitt v. Loosemore, 9 Hare, 449, 458; Hopgood v. Ernest, 3 De Gex, J. & S. 116, 121; Atterbury v. Wallis, 8 De Gex, M. & G. 454, 466; Maxfield v. Burton, L. R. 17 Eq. 15, 18; Bradley v. Riches, L. R. 9 Ch. Div. 189, 195, 196; Finch v. Shaw, 19 Beav. 500, 511; Jones v. Williams, 24 Beav. 47; Peto v. Hammond, 30 Beav. 495; Allen v. Knight, 5 Hare, 272; Jones v. Smith, 1 Hare, 43; 1 Phill. Ch. 244; Worthington v. Morgan, 16 Sim. 547; Jackson v. Rowe, 2 Sim. & St. 472.

§ 613, [1] This inquiry, as has been shown, sometimes should be made of the grantor or vendor, and sometimes of third persons, according to the circumstances of each case: Epley v. Witherow, 7 Watts, 163, 167; Jaques v. Weeks, 7 Watts, 261, 274; Buttrick v. Holden, 13 Met. 355, 357; Sergeant v. Ingersoll, 7 Pa. St. 340, 15 Pa. St. 343, 348, 349; Warren v. Swett, 31 N. H. 332, 341; Littleton v. Giddings, 47 Tex. 109; Helms v. Chadbourne, 45 Wis. 60, 70; Shepardson v. Stevens, 71 Ill. 646; Erickson v. Rafferty, 79 Ill. 209, 212; Buck v. Payne, 50 Miss. 648, 655; Maul v. Rider, 59 Pa. St. 167, 171; Stearns v. Gage, 79 N. Y. 102, 107; Baker v. Bliss, 39 N. Y. 70.

Hinton, [1899] 2 Ch. 264, 68 Law J. Ch. 583, 81 Law T. (N. S.) 212, 48 Wkly. Rep. 3.  See, also, in support of the text, Berwick & Co. v. Price, [1905] 1 Ch. 632; Davis v. Hutchings, [1907] 1 Ch. 356.

§ 613 (a)  The text is quoted in E. K. Bonds & Co. v. Ford, 175 Ky., §27, 195 S. W. 124.  See, also, Kirsch v. Tozier, 143 N. Y. 390, 42 Am. St. Rep. 729, 38 N. E. 375; Petrain v. Kiernan, 23 Or. 455, 32 Pac. 158.

Exhibit 5