

```
1  Anthony G. Thomas
   7725 Peavine Peak Court
2  Reno, NV 89523                              2018 OCT 15  AM 11: 05
   Tel:        (408) 640-2795
3  E-mail:     atemerald2@gmail.com

4  Debtor In Propria Persona
```

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA - RENO

| IN RE: | ) Case No. BK-N-14-50333-BTB |
|---|---|
| | ) Case No. BK-N-14-50331-BTB |
| ANTHONY THOMAS and | ) (Jointly Administered) |
| WENDI THOMAS | ) CHAPTER 7 |
| AT EMERALD, LLC | ) DECLARATION OF ANTHONY THOMAS & |
| | ) REPLY MEMORANDUM RE: |
| Debtors. | ) FOR JUDICIAL NOTICE [FRE 201] |
| | ) Date: Friday November 2nd 2018 |
| | ) Time: 10:00 a.m. |
| | ) Judge: Hon. Bruce T. Beesley |
| | ) Courtroom: 2 - 300 Booth St. - 5th Floor |

I, Anthony G. Thomas declare:

1.   I am submitting this Declaration and Reply Memorandum in response to 2 specific legal claims made by Attorney Hartman in this case, namely, the statement contained in Attorney Hartman's Opposition Brief that under principles of law applicable to this case under Section 541 of the Bankruptcy Code, that the Portola property constitutes "Property of the Bankruptcy Estate", and the following statement first made on 9-11-2018 in DE 403. entitled TRUSTEE'S REPLY TO DEBTORS'OPPOSITION TO MOTION FOR TURNOVER OF PROPERTY, filed on 9-11-2018 where Attorney Hartman writes:

> "The Turnover Motion is a proceeding to compel the Debtors to deliver the Portola Property to the Trustee. The Trustee contends that the legal issue in this case is whether her rights under Section 544 are superior to whatever rights might be asserted by Eli and Dorothy Thomas as the holders of a purported, unrecorded deed to the Portola Property."

<u>TRUSTEE'S REPLY TO DEBTOR'S OPPOSITION TO MOTION FOR TURNOVER OF REAL PROPERTY</u> DE 403, page 3, lines 2-5.

2. In this regard, I am specifically requesting that this Court take judicial notice of the above statement and make a specific finding of fact and conclusion of law that the above statement constitutes an admission that there is a legitimate dispute over title to property and take notice to the voluminous case law attached as Exhibits 18-26 to DE 406 filed on 9-13-2018 that clearly states that the Trustee can only use the Turnover Motion procedure to recover assets that are without dispute a part of the Bankruptcy Estate, and the rule of law that places the burden of proof upon the Trustee to establish a prima facia case that the assets sought by Turnover Motion are in fact undisputedly property of the Estate.

3. This principle of law is contained within the learned treatise published as part of the 2012 Norton Bankruptcy Update article attached as Exhibit 11 tp DE 395 pp 96-173. Specifically, on p. 120 of 191 of that learned treatise on Section 542 and 543 Turnover law, the article states the following propositions of law on the topic that are backed up by relevant legal authority:

> In In re Rood, by contrast, the court stated that the trustee, as movant, must
>
> > "demonstrate by clear and convincing evidence that the assets in question are part of the bankrupt's estate. FN 70
>
> FN 70:   In re: Rood, 2011 WL 4459094 *17 (Bankr.D.Md.), quoting In re Himes, 179 B.R. 279, 282 (Bankr.E.D. Okla.1995).
>
> Similarly, in In re Kana the bankruptcy court held that the
>
> > " 'burden of proof in a turnover proceeding is at all times on the receiver or trustee; he must at least establish a prima facie case. After that, the burden of explaining or going forward shifts to the other party, but the ultimate burden or risk of persuasion is upon the receiver or trustee.' As part of a prima facie case, the trustee must demonstrate by clear and convincing evidence that the as sets in question are part of the bankrupt's estate. FN 71
>
> FN 71:   In re Kana, 2011WL1753208 *2 (Bankr.D.N.D.), quoting Evans v. Robbins, 897 F.2d 966, 968 (8th Cir.1990).

DECLARATION OF ANTHONY THOMAS/REPLY MEMO RE: MOTION FOR JUDICIAL NOTICE

4. In the TRUSTEE'S REPLY TO DEBTORS'OPPOSITION TO MOTION FOR TURNOVER OF PROPERTY, filed on 9-11-2018 as DE 403, Attorney Hartman writes:

> "The Turnover Motion is a proceeding to compel the Debtors to deliver the Portola Property to the Trustee. The Trustee contends that the legal issue in this case is whether her rights under Section 544 are superior to whatever rights might be asserted by Eli and Dorothy Thomas as the holders of a purported, unrecorded deed to the Portola Property."

TRUSTEE'S REPLY TO DEBTOR'S OPPOSITION TO MOTION FOR TURNOVER OF REAL PROPERTY DE 403, page 3, lines 2-5.

5. In response to the above-quoted statement, I filed an additional 5 Exhibits numbers 18-26 inclusive on 9-13-2018 as DE406 and attached 146 pages of relevant Bankruptcy case law on the rules governing Turnover Motions, that clearly establish that the Turnover Motion procedure cannot be used to recover assets where title is in dispute, and can only be used to recover assets that are clearly part of the Bankruptcy Estate, as defined in the Bankruptcy Code 11 U.S.C. § 541(a)(1), subject to the express limitations of 11 U.S.C. § 541(d) which limits the Trustee's ability to recover assets where the Debtor holds only bare legal title as is the case here.

6. In this regard, even the hypothetical strong arm powers under Section 544(a)(3) as cited by Attorney Hartman in his Reply Memorandum filed on 9-11-2018 and referenced on the record by the Court at the hearing on 9-13-2018, are limited by the fact that the trustee only succeeds to whatever legal interest was held by the Debtor at the time of the filing of the Bankruptcy Petition.

**DEBTOR FILED A COPY OF BOTH THE ORIGINAL 2000 DEED AND THE 2008 GRANT DEED FROM ANTHONY AND WENDI THOMAS TO ELI & DOROTHY THOMAS**

7. The Trustee's Opposition Brief filed on 10-4-2018 complains about the fact that in 300 pages of filings to oppose the Trustee Turnover Motion, I did not file a copy of the Deed, yet even though the Trustee claimed on the record that "we have assets here"in regards to the Portola property, the very first time any request was made for a copy of the Deed was when Attorney Hartman made such a request by letter

1  dated 8-13-2018, more than 3 ½ years after the 341 meeting of creditors. Neither
2  Attorney Hartman nor the Trustee have provided any explanation for the more than 3 ½
3  year delay between being fully aware of all of the facts regarding the Portola property,
4  and the unexplained lapse of more than 3 ½ years before bringing the Turnover Motion,
5  all the while never asking either the Debtors or Debtor Anthony Thomas's parents for a
6  copy of the January 2008 deed, instead trying in their pleadings to somehow shift the
7  burden and the blame for their failure to act and failure to request the documents that
8  they now claim are essential to this case.

9      8.    I have filed additional Exhibits attached to my Amended Exhibit list filed
10 concurrently with this Declaration/Reply Brief Memorandum that address the case law
11 governing the Definition of Property of the Estate under Section 541 and the limits on
12 that definition as provided under Section 541(d) as more fully discussed in the Sanyo
13 and Whiting 1983 US Supreme Court cases that are attached as Exhibits to the
14 Amended Exhibit list filed concurrently with this pleading. These Exhibits include
15 decisional law from the U.S. Supreme Court that counter Attorney Hartman's false claim
16 made without any legal foundation or authority that the Portola property constitutes
17 property of the Bankruptcy Estate pursuant to 11 U.S.C. Section 541, contrary to the
18 U.S. Supreme Court authority attached to this Declaration as Exhibit 36 as pages 15-30
19 inclusive which is cited by the U.S. Court of Appeals for the 2nd Circuit in the 1989 case
20 of In re: Howard Appliance Corp. (2nd Cir. 1989) 874 F.2d 88, also attached to this
21 Declaration as Exhibit 37 and attached here as pages 31-39 inclusive.

22     9.    I have filed concurrently with this Declaration, an Amended Exhibit List
23 listing the 39 Exhibits that I have submitted in several filings, including the last 6
24 Exhibits 32-37 that are attached in support of my Reply Brief in Support of my Motion
25 for Judicial Notice, specifically to counter the false statement of law stated by Attorney
26 Hartman in his Opposition Brief where he falsely states that the Portola property
27 Attached to this Declaration are new Exhibits that I am respectfully requesting that this
28 Court consider in it's ruling on my Motion for Judicial Notice.

- 4 -

DECLARATION OF ANTHONY THOMAS/REPLY MEMO RE: MOTION FOR JUDICIAL NOTICE

1    10.    The Opposition brief filed by the attorney for the Trustee did not offer any contrary law governing the legal issues that arise from his Turnover Motion or cite any contrary law or authority in opposition to those submitted by me in my Motion for Judicial Notice of Law & Facts. His primary argument on his 3 page Opposition Brief is:

> "The debtors have filed over 300 pages of paper in their effort to deny the Trustee's request but the one document which would aid the Court in disposing of the issue is the 2008 deed. That document has not been produced."
>
> <u>Trustee's Response to Debtor's Request for Judicial Notice</u> DE 418 p.1 lines 22-25

11.    The January 2008 Deed fully corroborates the disclosures made in our initial BK petition filed on 3-4-2014 where in response to Question 10 of the Statement of Financial Affairs, we disclosed the transfer of the Portola Property. These facts were further elaborated on the record at the Section 341 meeting of creditors held on 12-4-2014. Both myself and my wife were the ones who fully disclosed the fact that my mother Dorothy Thomas was holding the Deed and that the Deed was not recorded and that the Tax bills from the Plumas County Treasurer were still being sent to the Portola house in my and my wife Wendi's name. When this was disclosed on the record, the Trustee, Ms. Coppa-Knudsen remarked "We have assets", a statement that was repeated by the Attorney for one of the creditors repeating the statement that "we have assets".

12.    Despite these disclosures, the Trustee has still not corrected her false statements that we concealed the assets, and the further lie made in her moving papers where she falsely alleges that my wife and I were either residing at the residence or were renting the home and illegally pocketing the rental income without disclosing that fact to her.

13.    Despite the Trustee stating on the record at the 341 meeting that she believed that she found the house to be an asset of the Bankruptcy Estate, she made no request at all for a copy of the Deed. Indeed Mr. Hartman and the Trustee had a

1  duty to ensure that there were no disputed claims of title in order to bring the Turnover
2  Motion.  This issue as to the impropriety of using the Turnover Motion procedure when
3  title to the asset is in dispute is the reason I filed an additional 5 Exhibits attached to my
4  Opposition to Attorney Hartman's Reply Brief filed on 9-11-2018.

5  14.    The fact is that after the 341 meeting, and on the record, the Trustee did
6  in fact request and Debtors were instructed in a letter dated 12-4-2014 from their
7  counsel to provide the Trustee with a list of documents including providing copies of the
8  latest Property Tax bill from the Plumas County Treasurer, a request that was complied
9  with.  The Trustee also found it fit to request dozens of pages of bank statements of AT
10 Emerald LLC, all of which were complied with.  Notably absent from any request on the
11 record from the transcript of the 341 meeting, and notably absent from Attorney Michael
12 Lehner's letter to the Debtors dated 12-4-2014 is any request for a copy of the Deed
13 transferring title in the Portola home from the Debtors to Anthony Thomas's parents Eli
14 & Dorothy Thomas in January of 2008, more than 6 years prior to filing the Bankruptcy
15 Petition.

16 15.    Nor did Attorney Hartman or the Trustee make any demands for a copy of
17 the 2008 Deed prior to bringing the Turnover Motion, or breaking and entering into my
18 parents property without any Court order and calling a locksmith, and proceeding to
19 paint the interior and list the property with a listing agreement in my and my wife's
20 Wendi's name without our authorization or approval, while knowing that we had
21 transferred the property by Deed in 2008.

22 16.    The very first time that any request was made for a copy of the Deed was
23 by a letter from Attorney Hartman dated 8-13-2018, some 4 days after the property was
24 listed for sale on 8-9-2018, a day before the hearing on my former Attorney Macauley's
25 Motion to withdraw as counsel on the case.  The declarations of my former attorney
26 clearly establish that she requested continuances from both the Trustee and Mr.
27 Hartman for 90 days both in the event that her Motion was granted, or in the event that
28 the Court required her to oppose the Motion.  All requests for continuances were

**DECLARATION OF ANTHONY THOMAS/REPLY MEMO RE: MOTION FOR JUDICIAL NOTICE**

1  denied, and they attempted to take advantage of a mentally disabled litigant with
2  dyslexia who was now without counsel making it virtually impossible for me to be able to
3  have my right to counsel or to have the Court make reasonable accommodations and
4  appoint me a lawyer under the provisions of the Americans with Disabilities Act.

5      18.   I am attaching as Exhibit 37 a true and correct copy of the California
6  Supreme Court 1917 decision of Martin v. Superior Court (1917) 176 Cal. 289, attached
7  as Exhibit 39 as pages 49-61 that confirms that under the English common law of 1850
8  when California adopted the English common law as the decisional law of the state by
9  An Act Adopting the Common Law of England passed by the California State
10 Legislature on April 13th 1850 as Stats 1850 ch. 95 p. 421, the CA Supreme Court in
11 the Martin case noted that indigent litigants were to be able to file their cases without
12 paying any costs or legal fees, and have a lawyer appointed to represent them at no
13 charge. This right, according to the CA Supreme Court is a right that all Californians
14 inherited and is an inchoate right that we still have to this day. The State of Nevada
15 also adopted the Common law of England as the decisional law of the State of Nevada
16 in 1864. The cases that follow Martin and the other case clearly establish the right not
17 only of the indigent to right to counsel at no expense, but also recognize the duty of the
18 Courts to appoint counsel in cases where a litigant has any kind of mental infirmity as is
19 the case here. I am hereby invoking my right under the principle of the Martin v.
20 Superior Court case and the subsequent California legal authority of my right to counsel
21 to be appointed at no expense on account of my mental disability under the common
22 law of England that is in force and currently codified at Section 22.2 of California's Civil
23 Code in addition to my rights for reasonable accommodations under the provisions of
24 the Americans with disabilities Act, rights that are conferred upon other Americans in
25 the courts of the State of Colorado and Florida, to just name two.

26     19.   I consider it to be preposterous for Attorney Hartman to belittle my
27 disability and to challenge the letter from the director of the Raskob Institute confirming
28 that I attended the school in 1976, and questioning if it does in fact establish that I am

1 dyslexic, insinuating that I am somehow deceiving the Court with a false claim of
2 dyslexia.

3     20.    The reason why I was even able to obtain such a letter, attached as
4 Exhibit 1 to my Declaration filed on 9-28-2018, is because my mother was able to go
5 into her financial records and show payments to the Raskob. Back in 1976, the ADA
6 and the IDEA both federal laws recognizing dyslexia as covered under both laws, and
7 thus entitling the child to obtain special education and instruction at no cost, then, the
8 parents had to pay $500 per week, as my mother did, in addition to raising 8 children
9 and driving 100 miles per day of schooling at Raskob from Saratoga to Oakland back
10 and forth. In the midst of documenting my dyslexia, my mother produced an original
11 envelope from Dr. Levinson, who would regularly mail my mother newspaper clippings
12 and articles on dyslexia and promote his specialized tests that he would charge parents
13 $500. Adjusted for inflation in 1976 dollars adjusted for the cost of living, that would be
14 at least $2,500 in todays dollars, expenses that parents had to pay out of their own
15 pockets. In addition to attending Raskob in 1976, I also in 1978 when I enrolled in high
16 school as a grade 9 student enrolled in the Foss School, another school for students
17 with dyslexia. In addition, throughout highschool I received special education classes
18 for my learning disability.

19     21.    The reason why the Executive Director would not go into details regarding
20 my private medical files is found from the Raskob website, a printout of which I am
21 attaching to this Declaration as Exhibit 33, attached to this Declaration/Reply
22 Memorandum as pages 7-8 inclusive entitled: "Who are Raskob Students?"

23     In answering that question, the website states:

24     "Raskob's program is designed for students who:

25     ...
    * Students who are diagnosed with:

26     ...
        * Dyslexia, or other Reading Disorders

27     On the next page from the website printout is a section titled "Confidentiality of
28 information" that states:

- 8 -

DECLARATION OF ANTHONY THOMAS/REPLY MEMO RE: MOTION FOR JUDICIAL NOTICE

Confidentiality of Information All information concerning your child's academic and psychological records and progress reports are confidential under Federal and State laws (Public Laws 94-142 and 93-380) and California Laws, Chapter 1229, States of 1974.) These reports may not be distributed to any professional or other persons who are not a Raskob Institute/Day School staff member without the written consent, in advance, by the parents or legal guardians of the child, under the Family Educational Rights and Privacy Act of 1974, except by court order.

Exhibit 33 page 8. - printout of Raskob website

22. Going back to the merits of the law regarding the transfer of the Portola home, Mr. Hartman concedes that it is appropriate for the Court to consider the Exhibits including the case law and law review articles and legal treatises that "bear upon the issue before the court" and states:

"The legal question still remains. At the date the Petition was filed, the Debtors held record fee title to the Property and as of the date of this hearing, the Debtors continue to hold record title to the Property. Applying the principles of law under Section 541, the property is an asset of the estate."

23. Of course Attorney Hartman cites no law to support his proposition. Indeed, the very section 541 that he cites, and voluminous case law analysis of that very Section 541(d) holds to the contrary.

11 U.S.C. § 541 defines property of the Estate as including:

"All legal or equitable interests of the debtor in property as of the commencement of the case"

11 U.S.C. § 541(a)(1).

23. However, this apparently sweeping definition of property of the Estate is limited by the express provisions of 11 U.S.C. Section 541(d) which clearly states:

"(d) Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

11 U.S.C. Section 541(d).

//

//

- 9 -

DECLARATION OF ANTHONY THOMAS/REPLY MEMO RE: MOTION FOR JUDICIAL NOTICE

In Howard, the Court stated:

Under section 541 of the Bankruptcy Code, a debtor's legal and equitable interests in property, "as of the commencement of the case," constitute "[p]roperty of the estate,"

11 U.S.C. § 541(a)(1).

Property in which the debtor holds only legal title and not an equitable interest, however, becomes property of the estate

> "only to the extent of a debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold,"

id. § 541(d).

That is, the bankruptcy estate does not include

> "property of others in which the debtor has] some minor interest such as a lien or bare legal title,"

United States v. Whiting Pools, Inc., 462 U.S. 198, 204 n. 8, 103 S.Ct. 2309, 2313 n. 8, 76 L.Ed.2d 515 (1983); see 4 Collier on Bankruptcy ¶ 541.13, at 541-75 (15th ed.1989) (estate succeeds only to the title and rights that the debtor possessed); In re Quality Holstein Leasing, 752 F.2d 1009, 1012 (5th Cir.1985) (same).

Where the debtor's

> "conduct gives rise to the imposition of a constructive trust, so that the debtor holds only bare legal title to the property, subject to a duty to reconvey it to the rightful owner, the estate will generally hold the property subject to the same restrictions,"

In re Flight Transp. Corp. Securities Litigation, 730 F.2d 1128, 1136 (8th Cir.1984); see Georgia Pacific Corp. v. Sigma Service Corp., 712 F.2d 962, 968 (5th Cir.1983).

Indeed, the Supreme Court has declared that, while the outer boundaries of the bankruptcy estate may be uncertain,

> "Congress plainly excluded property of others held by the debtor in trust at the time of the filing of the petition,"

Whiting Pools, 462 U.S. at 205 n. 10; see S.Rep. No. 989, 95th Cong., 2d Sess. 82 and H.R.Rep. No. 595, 95th Cong., 2d Sess. 368, reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5868, 6323-24; see also In re Kennedy & Cohen, Inc., 612 F.2d 963, 965 (5th Cir.) (under previous bankruptcy statute, property held by debtor in constructive trust

> "belongs to the beneficiary and never becomes a part of the bankruptcy estate"),
>
> cert. denied, 449 U.S. 833, 101 S.Ct. 103, 66 L.Ed.2d 38 (1980).[5]
>
> A constructive trust, therefore,
>
> "confers on the true owner of the property an equitable interest in the property superior to the trustee's," Quality Holstein Leasing, 752 F.2d at 1012; cf. In re General Coffee Corp., 828 F.2d 699, 706 (11th Cir.1987) (constructive trust beneficiary has priority to trust assets over a judicial lienholder or execution creditor), cert. denied, ___ U.S. ___, 108 S.Ct. 1470, 99 L.Ed.2d 699 (1988). The reason for this priority is clear: but for the debtor's misconduct, the trust beneficiary would have perfected his security interest in the res of the trust and thus would have prevailed over the debtor as well as the debtor-in-possession.
>
> The existence and nature of a debtor's interest, and correspondingly the estate's interest, in property is determined by state law. In re FCX, Inc., 853 F.2d 1149, 1153 (4th Cir.1988), cert. denied, ___ U.S. ___, 109 S.Ct. 1118, 103 L.Ed.2d 181 (1989); In re N.S. Garrott & Sons, 772 F.2d 462, 466 (8th Cir.1985); 4 Collier on Bankruptcy ¶ 541.02[1], at 541-10 to -13.
>
> One must look to state law, therefore, to determine whether to impose a constructive trust on property within the debtor's possession. See, e.g., In re N.S. Garrott & Sons, 772 F.2d at 467; Quality Holstein Leasing, 752 F.2d at 1012. As a general *94 rule, the law of the situs of the property, and therefore the trust, governs this determination. See, e.g., In re O.P.M. Leasing Services, Inc., 40 B.R. 380, 398-99 (Bankr. S.D.N.Y.), aff'd, 44 B.R. 1023 (S.D.N.Y. 1984); cf. Collier on Bankr. ¶ 544.02, at 544-13 to -14 (under section 544,
>
>> "the tendency of the courts is to treat the law of the situs of property at the commencement of the case as governing");
>
> In re Dennis Mitchell Indus., Inc., 419 F.2d 349, 352, 353 n. 10 (3d Cir.1969) (same)"

In re: Howard's Appliance Corp. (2d. Cir. 1989) 874 F.2d. 88 at 93-95.

24.     I am attaching as Exhibit 36 to this Declaration, a true and correct copy of the U.S. Supreme Court case United States v. Whiting Pools, Inc. (1983) 462 U.S. 198 at pages 15-30 that clearly establishes that the Portola Property, in the words of the U.S. Supreme Court constitutes:

"the Property of others"

25.     Here, the transfer of the Portola property was made by Deed in January of

DECLARATION OF ANTHONY THOMAS/REPLY MEMO RE: MOTION FOR JUDICIAL NOTICE

2008. All of the requirements for a valid transfer and conveyance of all right title and interest in the Portola property from the Debtors Anthony and Wendi Thomas to Eli & Dorothy Thomas were complied with in that there was an express intent to convey the property by the Debtors, there was an acceptance of the transfer by Eli & Dorothy Thomas, there was a valid delivery of both the original grant deed conveying the property by Grant Deed in 2000 to Anthony & Wendi Thomas, along with the delivery and acceptance and continuous physical possession of both Deeds by Eli & Dorothy Thomas since that date. All of the legal presumptions that are found in the 1855 Supreme Court of California Hastings v. Vaughn case for which Debtor is requesting the Court take judicial notice of have been complied with.

26. This is an instance where the Debtors hold only "bare legal title" to the Portola home, and since the neither Anthony or Wendi Thomas hold any equitable interest in the property since their absolute conveyance of the property by Deed in 2008, they only remain as holding bare legal title to the Portola property with no equitable interests in that property, thereby giving the Trustee also only bare legal title under the law.

27. According to the California law that Attorney Hartman seemingly does not oppose when he states:

> "To the extent that the Debtor's Request for Judicial Notice includes copies of reported decisions, law review articles and other legal analysis, it is certainly within the purview of the Court to consider legal principles which bear upon the issue before the Court, however the central legal question is not addressed by Mr. Thomas because there is no evidence in the record regarding the actual deed in question.
>
> DE 418 p. 2, lines 7-11

29. As such, there being no opposition whatsoever to the principle of this Court taking judicial notice of the adjudicative facts and the law governing the case, I am respectfully requesting that this Court take judicial notice of all of the specifically enumerated requests derived from each of the Exhibits that I have submitted, and allow me to amend my PROPOSED ORDER OF FINDINGS OF FACT AND CONCLUSIONS

1  OF LAW to take into consideration and reference the most recent Exhibits that I have
2  submitted in this matter in order to ensure that this Court is properly guided by the
3  decisional case law that governs the issues arising from the Turnover Motion and to
4  deny the Trustee's Motion in its' entirety and issue a written statement of decision in this
5  regard.

7  Dated: October 12th 2018.              Respectfully submitted,

*[signature: Tony Thomas]*
Anthony G. Thomas - Debtor
In Propria Persona

DECLARATION OF ANTHONY THOMAS/REPLY MEMO RE: MOTION FOR JUDICIAL NOTICE

# CERTIFICATE OF SERVICE

I certify that I am an adult, over the age of 18 years, not a party to the action herein who resides in Washoe County, Nevada. I caused to be served the foregoing document via e-mail to the following persons as listed below from my e-mail address of mickjoseph@sbcglobal.net as follows:

JEFFREY A. COGAN
jeffrey@jeffreycogan.com, beautausinga@gmail.com, beau@jeffreycogan.com

JERI COPPA-KNUDSON VIA E-MAIL AND US MAIL: 3495 Lakeside Dr. Reno, NV 89509
renobktrustee@gmail.com, jcoppaknudson@ecf.episystems.com

KEVIN A. DARBY
kad@darbylawpractice.com, tricia@darbylawpractice.com, jill@darbylawpractice.com, hersh@darbylawpractice.com, sam@darbylawpractice.com

JEFFREY L. HARTMAN VIA E-MAIL AND US MAIL: 510 W. Plumb Lane Suite B - Reno, NV 89509
notices@bankruptcyreno.com, sji@bankruptcyreno.com

TIMOTHY A. LUCAS
ecflukast@hollandhart.com

LAURY MILES MACAULEY
laury@macauleylawgroup.com

WILLIAM MCGRANE
ECF-8116edf28c97@ecf.pacerpro.com, mitch.chyette@mcgranellp.com

STEPHANIE T. SHARP
ssharp@rssblaw.com, cobrien@rssblaw.com

WAYNE A. SILVER
w_silver@sbcglobal.net, ws@waynesilverlaw.com

ALAN R. SMITH
mail@asmithlaw.com

STEVEN C. SMITH
ssmith@smith-lc.com, mbrandt@smith-lc.com

AMY N. TIRRE
amy@amytirrelaw.com, admin@amytirrelaw.com

U.S. TRUSTEE - RN - 7,7
USTPRegion17.RE.ECF@usdoj.gov

JOSEPH G. WENT
jgwent@hollandhart.com, vllarsen@hollandhart.com

I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 15 2018.

/S/ Mick Joseph

*Mick Joseph*

MICK JOSEPH