

RECEIVED
FILED

2018 NOV -2 PM 3:02

Anthony G. Thomas
7725 Peavine Peak Court
Reno, NV 89523
Tel: (408) 640-2795
E-mail: atemerald2@gmail.com

Debtor In Propria Persona

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA - RENO**

| | |
|---|---|
| IN RE:<br><br>ANTHONY THOMAS and<br><br>WENDI THOMAS<br><br>AT EMERALD, LLC<br><br>Debtors. | ) Case No. BK-N-14-50333-BTB<br>) Case No. BK-N-14-50331-BTB<br>) (Jointly Administered)<br>) CHAPTER 7<br>)<br>) DECLARATION OF ANTHONY THOMAS<br>) RE: BIAS OF COURT<br>) Date: November 2nd 2018<br>) Time: 2:00 p.m.<br>) Judge: Hon. Bruce T. Beesley<br>) Courtroom: 2 |

1. I am submitting this Declaration with supporting Exhibits in Opposition to the Statements made by the Court on the record at the hearing of 9-13-2018 in Reno, remarks that are memorialized in the Transcript of the Proceedings that were transcribed on that date.

2. I feel it is important to be able to correct a false impression and statements of bias made by the Court in response to an allegation that I made that the Court has demonstrated on several occasions its' bias (depriving me of my right to counsel before forcing both myself and my company into involuntary Chapter 7 liquidation cases from being a Chapter 11 Debtors in Possession, depriving my LLC of its' right to counsel and essentially making a judgment against it while it was unrepresented by legal counsel in express violation of the Bankruptcy Rules that do not permit a corporation or LLC to appear before the court without legal counsel. When I raised these points before the Court, the Court's response was that it was entitled to hold the opinion that I am dishonest, based upon the fact that a fraud judgment had been entered against me in the Santa Clara County Superior Court. Despite my attempts to explain that I was the victim of opposing counsel, co-counsel (who was also representing me), and my own counsel's fraudulent concealment of the settlement terms from

me, at a settlement conference where I never saw any of the printed drafts of the settlement, nor did I participate in the settlement negotiations since I was told by my lawyer that my co-litigant, Mr. Michael Gardiner had agreed to assume all liability for the claims made by the plaintiff Mr. Tersini and Kenmark Ventures LLC, and that I had no liability, and so on that basis, I was fraudulently induced due to fraud upon the court, attorney collusion and deception, combined with actions of opposing counsel and co-counsel in concealing the true facts into agreeing to an oral stipulation for entry of judgment where there was no mention of the word fraud anywhere in the transcript, merely a vague reference to counts 4 and 5, and use of the term "joint and several" that I did not understand, all the while designed by the lawyers in this case to prevent me from ever seeing a printed copy of the actual negotiated terms of the settlement that were negotiated by and between Tersini and his lawyer Scanlan, and Mr. Gardiner and his lawyer Pat Douglas, while I was out in the hallway with Mr. Morrissey who did not and was not involved in crafting the settlement agreement. It is clear from the facts that Mr. Morrissey was under pressure to be reported to the Bar, and so went along with the Scanlan-Tersini- Gardiner-Douglas fraudulent scheme to hold me liable for something that I and my lawyer was fully ready to litigate, where it not for the facts that emerge from Exhibits 2 and 3 to this Declaration.

3. Before discussing those 2 exhibits, let me cite in this Declaration, the exchange between myself and the Court on 9-13-2018 where the scenario as explained above was captured on the transcript.

4. I am submitting for this Court's attention, a document that is already a part of the Court record, in the Adversary Complaint in this action, case 14-050222-btb Docket Entry (DE1), filed on 5-31-2014, pages 23-41 of 46 pages, attached as an Exhibit to the Adversary Complaint filed on that date. This document is the oral transcript of the purported settlement agreement of October 5th 2011 that was referred to in the transcript on the record of the 9-13-2018 hearing date as follows:

p.31:

"16 MR. THOMAS: Next is that there was

misrepresentations by Ms. Macauley. Ms. Macauley had told me that you have a target on my back, and I've been told that by Mr. Leonard, too. And that --

THE COURT: You don't have a target on your back from my concern. You --

MR. THOMAS: Well, you said that I was -- my problem is not dyslexia.

THE COURT: You are dishonest.

MR. THOMAS: It's dishonesty. No, it's not.

**THE COURT: You are dishonest.**

**MR. THOMAS: No, it's not. I'm not being dishonest, Your Honor.**

THE COURT: Well, what about the fraud judgment that was entered against you for several million dollars?

MR. THOMAS: What fraud judgment? The Kenmark case where you didn't let me put in any evidence to show --

THE COURT: No, no.

MR. THOMAS: -- that they were an investor?

THE COURT: In state court.

MR. THOMAS: You blocked evidence --

THE COURT: In state -- in state --

MR. THOMAS: -- over and over.

THE COURT: -- in state court, the fraud judgment that was entered against you.

MR. THOMAS: That judgment is in the process of being turned over because the attorneys were convicted of fraud. we're filing a case in California for that right now. They --

THE COURT: And you are currently the subject of a fraud judgment entered against you. Is that correct?

MR. THOMAS: It was -- yeah, because of illegal acts from my attorney. They never disclosed that there was fraud in the judgment to me. It was said under Counts 4 and 5. They

24 never told me that -- nobody in the courtroom ever said that
25 there was fraud, and my attorney told me --

ACCESS TRANSCRIPTS, LLC 1-855-USE-ACCESS (873-2223)

p.33:

1 THE COURT: Except the judge.
2 MR. THOMAS: No, we did not.
3 THE COURT: Then why was there a judgment entered
4 that said fraud?
5 MR. THOMAS: It's not in the record at all that there
6 was fraud.
7 THE COURT: Why --
8 MR. THOMAS: They --
9 THE COURT: Stop. Why would the judge enter a
10 judgment that said you had committed fraud?
11 MR. THOMAS: The judge didn't enter a - on the
12 record, the judge said all parties are agreeing to no
13 wrongdoing. And Tersini's attorneys said that there was -- all
14 parties are agreeing to no wrongdoing. And they slipped in
15 under -- because they -- the attorneys colluded to put four --
16 Counts 4 and 5 in there and never said what they were. The
17 judge didn't even know what they were.
18 And so when it was read onto the record, they never
19 let me see a copy of the settlement agreement. I never got to
20 see it. I never got to sign it. And my attorney told me that
21 I wasn't liable at all, that Mr. Gardner was taking 100 percent
22 of the responsibility. His --
23 THE COURT: However, there was a judgment entered
24 against -- listen to me. There was a judgment entered against
25 you that said you had committed fraud. Was there not?

ACCESS TRANSCRIPTS, LLC 1-855-USE-ACCESS (873-2223)

p. 34

1 MR. THOMAS: There was a -- the fraud was committed
2 on me, Your Honor.
3 THE COURT: Answer my question.

MR. THOMAS: And I'm going to answer your question.
THE COURT: Was -- answer my question. Was there a judgment entered against you that you had committed fraud?
MR. THOMAS: Only by you, Your Honor.
THE COURT: No, that's not true. There was a California state judgment that was entered against you.
MR. THOMAS: There was -- there was a California state judgment, but they never revealed the fraud to the judge or myself.
THE COURT: I didn't ask you that. I asked you if there was a judgment entered against you that said you had committed fraud in a California state court.
MR. THOMAS: Yes. And that judgment was only because you lifted the stay through the bankruptcy. You lifted the stay so they could go in and get a fraud judgment against me. There was no fraud judgment before.
THE COURT: I lifted the stay so they could go forward with litigation.
MR. THOMAS: And get a fraud judgment against me.
THE COURT: I had no idea what they were going to do.
MR. THOMAS: Well, I did. I knew exactly what they were going to do and that's why I asked you not to lift the

stay because I was not aware of the fraud because I was lied to by my counsel and they committed fraud on the Court. They didn't tell the judge that there was fraud in there. The judge said on the record, all parties are agreeing to no wrongdoing. Mr. Silver, Mr. Kenmark's attorney, said the exact same thing. All parties --
THE COURT: Well, let me ask you this.
MR. THOMAS: -- are agreeing to no wrongdoing.
THE COURT: Have you appealed?
MR. THOMAS: Huh?

11 THE COURT: Have you appealed? Did you appeal the
12 California state judgment?
13 MR. THOMAS: I am filing a case to have the whole
14 thing turned over. The attorneys that represented me --
15 THE COURT: Answer --
16 MR. THOMAS: -- have been convicted of fraud.
17 THE COURT: Answer my question first. Have you
18 appealed the California state judgment?
19 MR. THOMAS: I'm in the process of doing that right
20 now, okay. We're having it turned over --
21 THE COURT: Stop.
22 MR. THOMAS: -- on the basis of fraud.
23 THE COURT: Stop. Stop.
24 MR. THOMAS: I'm filing a motion with the Court.
25 THE COURT: And have you gotten a stay of the

ACCESS TRANSCRIPTS, LLC 1-855-USE-ACCESS (873-2223)

p. 36

1 judgment pending your efforts to get it overturned?
2 MR. THOMAS: Not yet, but we will.
3 THE COURT: Okay. So --
4 MR. THOMAS: We're in the -- I'm in that process
5 right now, Your Honor.
**6 THE COURT: All right. So you have a fraud judgment**
**7 against you that is current?**
**8 MR. THOMAS: Yes.**
**9 THE COURT: That's one of the reason I think you are**
**10 dishonest.**
11 MR. THOMAS: Because I was defrauded by my attorneys
12 and --
**13 THE COURT: That's not what the judgment says. The**
**14 judgment says you committed fraud.**
**15 MR. THOMAS: You can read the transcript. The judge**
**16 said that all parties are agreeing to no wrongdoing.**

17 THE COURT: What I care about is what the judgment

18 says.

19 MR. THOMAS: The judge didn't know what the judgment

20 said. He wasn't even there. He didn't sign off on the

21 judgment.

22 THE COURT: I think that's highly unlikely.

23 MR. THOMAS: No. He didn't. Judge Nichols was gone

24 when they went in and got the judgment. They got it from

25 another judge.

ACCESS TRANSCRIPTS, LLC 1-855-USE-ACCESS (873-2223)

p. 37

1 THE COURT: You nonetheless have an active judgment

2 finding you committed fraud. That's one of the reasons I don't

3 think you're credible and I don't think you're honest.

4 MR. THOMAS: Well, then you shouldn't be my judge

5 because if you can't be independent, then you shouldn't be the

6 judge. You should recuse yourself right now.

7 THE COURT: I should not because --

8 MR. THOMAS: You should be because you're biased

9 against me.

10 THE COURT: No, I'm not. The only way I know about

11 this to know that you have committed fraud is by virtue of what

12 has happened in this case. I am allowed to make findings and

13 have impressions based on what has happened in this case.

14 MR. THOMAS: Your Honor, you blocked evidence in the

15 Tracini case throughout that showed that he was an investor.

16 There never was a loan.

17 THE COURT: And have you --

18 MR. THOMAS: And there was never funds --

19 THE COURT: And have you appealed that judgment?

20 MR. THOMAS: Yes, I have, Your Honor.

21 THE COURT: And where is it?

22 MR. THOMAS: Your case is in the Ninth Circuit Court

23 right now.
24 THE COURT: That's fine. And they may overturn me.
25 I don't know.

ACCESS TRANSCRIPTS, LLC 1-855-USE-ACCESS (873-2223)

p. 38
1 MR. THOMAS: I believe they will.
2 THE COURT: They could.
3 MR. THOMAS: I believe they will.
4 THE COURT: They could. I don't know.
5 MR. THOMAS: And I believe the case in Santa Clara
6 County is going to be overturned, too, Your Honor, and I think
7 I will be out of the bankruptcy because I didn't own anybody
8 any money.
9 THE COURT: Okay. Well --
10 MR. THOMAS: And the fraud was committed on me. And
11 you have taken it out on me since day one, me and my family.
12 And you've been biased. You blocked all the evidence that I
13 tried to get into the court case showing that -- there never
14 was a loan. There never was a loan. There was no funds that
15 ever came to me, ever.

5. I feel it is important for me to bring the true facts before this Court in order to correct the Court's false opinion that is not founded on real facts, but based on a set of facts that is in fact completely false and contrary to what actually occurred.

6. The transcript clearly shows the lengths to which the settlement terms were concealed from me, and the terms of the agreeement clearly held that there was no finding of any wrongdoing by any party. That statement appears in the October 5th transcript, 3 times, at the beginning of the transcript, at the end of the transcript, and is repeated by the Judge who goes even further on the record and asserts that there has been no finding of wrondoing. No reference to any fraud, and the fact that the agreeement is void on its' face, not only because of the fraud upon the court, the fraudulent concealment, the extrinsic fraud depriving me of my

day in Court, but also because my lawyer essentially ceased to act as such when he knew he could not try the case after he received notice of the contents of the State Bar Court's Minute order of October 3rd 2014 that was faxed to his fax line retrieved by his wife and communicated to him over the phone and in person at lunch on October 4th ,2018. It was those two exhibits, attached hereto as Exhibits 2 and 3, a letter from my attorney to the State Bar requesting a continuance of the new state bar disciplinary case that his mentally ill wife concealed from him, followed by the denial of that request by the State Bar Court Judge, ordering him to appear for trial on October 11th 2011 otherwise his default would be entered (as it was). As a consequence, Mr. Morrissey "ceased to act" as my attorney when he could no longer represent me at trial, a fact that he had confided in co-counsel Pat Douglass, who instead of informing the Court as is required under CCP 286, went and used that information to seek her own financial gain, by selling out her client, selling out myself with the desire to cash in on the sale of the Emerald, since she hadn't been paid a dime by her client Gardiner since Electronic Plastics filed for BK in 2009, and she stood to make considerably more money by collecting a percentage of the multimillion dollar commission that Michael Gardiner stood to make upon the sale of the Emerald. (Gardiner's depo exhibits shows that in one transaction, he stood to make a $55 million commission off the sale of the emerald, and even if we assume a modest 20% contingency fee for Attorney Douglass in exchange for her role in obtaining the fraudulent settlement agreement, she stood to make over $10 million dollars.

7. I only recently became aware of these facts as a direct consequence of my lawyer Mr. Morrissey, his colleague Robert Machado and his wife Tracey McCarroll all pleading guilty to criminal charges, where sentence was imposed in October of 2017. This fact allowed me to persuade Mr. Machado to come clean and offer a Declaration to show his role in these facts, and his witness to a telephone call made on the afternoon of October 4th where Mr. Morrissey repeated his claims to me that he had settled the case without any liability on my part.

8. It was only then that I became aware of the State Bar Court files, copies of which I finally obtained just before I had to jump into the fire in this Court to prevent the Court from ordering the unlawful turnover of the Portola property in complete violation of the Bankruptcy rules, and decisional case law on the subject that is clearly established by my Motion for Judicial Notice of the law and the facts in this case.

9. I am putting these facts before the Court, so as to give the Court a heads up of the fact that I am using these facts of fraud upon the court and extrinsic and constructive fraud as well as the facts that otherwise render the Judgment void, as in violation of CCP 286, violation of the Statute of Frauds and procedural irregularities in failure to follow the procedures necessary to ensure a settlement under CCP 664.6, as well as the general principle of contract law that the terms of the judgment must be the terms that the parties agreed to. Nowhere in the Judgment that was procured against me is there any mention of the critical statement that induced me to agree to the purported settlement in the first place, the statement that there is no finding of wrongdoing by any party, and the explicit omission in the transcript of any reference to fraud, merely to counts 4 and 5 that were never specified on the record.

10. On a final note, I am submitting a copy of my Dunn & Bradstreet report for my construction company T&D construction Inc., showing my stellar business record, with no lawsuits and a stellar business rating by Dunn & Bradstreet showing my true character as a man of my word, in an industry where lawsuits are the norm. I always performed according to the highest ethics and integrity and always delivered a first class product, which shows that even a person with a learning disability like dyslexia that the law defines as an illness that impairs a major life activity, that even with such an impairment, a man can rise to the top of his profession and earn the respect and admiration of his clients, fellow businessmen and his community.

I declare under penalty of perjury of the laws of the States of California and Nevada that the foregoing is true and correct.

Executed on November 2nd 2018 at Reno, NV.

Respectfully submitted,

Tony Thomas

Anthony G. Thomas In Propria Persona

**CERTIFICATE OF SERVICE**

I certify that I am an adult, over the age of 18 years, not a party to the action herein who resides in Washoe County, Nevada. I caused to be served the foregoing document via e-mail to the following persons as listed below from my e-mail address of mickjoseph@sbcglobal.net as follows:

JEFFREY A. COGAN
jeffrey@jeffreycogan.com, beautausinga@gmail.com, beau@jeffreycogan.com
JERI COPPA-KNUDSON VIA E-MAIL AND US MAIL: 3495 Lakeside Dr. Reno, NV 89509
renobktrustee@gmail.com, jcoppaknudson@ecf.episystems.com
KEVIN A. DARBY
kad@darbylawpractice.com, tricia@darbylawpractice.com, jill@darbylawpractice.com, hersh@darbylawpractice.com, sam@darbylawpractice.com
JEFFREY L. HARTMAN VIA E-MAIL AND US MAIL: 510 W. Plumb Lane Suite B - Reno, NV 89509
notices@bankruptcyreno.com, sji@bankruptcyreno.com
TIMOTHY A. LUCAS
ecflukast@hollandhart.com
LAURY MILES MACAULEY
laury@macauleylawgroup.com
WILLIAM MCGRANE
ECF-8116edf28c97@ecf.pacerpro.com, mitch.chyette@mcgranellp.com
STEPHANIE T. SHARP
ssharp@rssblaw.com, cobrien@rssblaw.com
WAYNE A. SILVER
w_silver@sbcglobal.net, ws@waynesilverlaw.com
ALAN R. SMITH
mail@asmithlaw.com
STEVEN C. SMITH
ssmith@smith-lc.com, mbrandt@smith-lc.com
AMY N. TIRRE
amy@amytirrelaw.com, admin@amytirrelaw.com
U.S. TRUSTEE - RN - 7,7
USTPRegion17.RE.ECF@usdoj.gov
JOSEPH G. WENT
jgwent@hollandhart.com, vllarsen@hollandhart.com

I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 2nd 2018.

/S/ Mick Joseph

MICK JOSEPH

Official Records of the U.S. BK Court
Case # 14-05022-btb
Docket Entry # 1

Exhibit 1

~~Filed~~/Entered — 05-31-2014
pp. 26-41 of 46 -- Exhibit
attached to Kennack v. Thomas
Adv complaint

Transcript of 10-5-2011
Santa Clara County Superior Court
Case # 1-08-CV-130677

Exhibit 1

IN THE SUPERIOR COURT, STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SANTA CLARA

---o0o---

BEFORE THE HONORABLE LESLIE C. NICHOLS, JUDGE

KENMARK VENTURES, LLC No. 1-08-CV-130677

Plaintiff,

vs.

ANTHONY THOMAS,

Defendant.

- - - - - - - - - - - - - - - - - /

REPORTER'S TRANSCRIPT OF PROCEEDINGS
October 5, 2011
---o0o---

A P P E A R A N C E S:

For the Plaintiff: MILLER, MORTON, CAILLAT & NEVIS
BY: JOSEPH A. SCANLAN
J. CARLOS ORELLANA
25 Metro, 7th Floor
San Jose, CA 95110

For the Defendant: LAW OFFICES OF PATRICIA DOUGLASS
Michael Gardner BY: PATRICIA DOUGLASS
98 Interpromontory Road
Great Falls, VA 22066

(Appearances continued on next page)

REPORTED BY: CHRISTINE BEDARD, C.S.R. #10709

(Appearances continued)

| | |
|---|---|
| For the Defendant/<br>Cross-Complainant<br>Anthony Thomas<br>A.T. Emerald, LLC | LAW OFFICES OF MICHAEL MORRISSEY<br>BY: MICHAEL MORRISSEY<br>P.O. Box 2549<br>Cupertino, CA 95015 |

---o0o---

October 5, 2011

THE COURT: Good morning, everyone, on the Kenmark Ventures LLC vs. Anthony Thomas and Michael Gardner and related Cross-complainants. Appearances stated, please.

MR. SCANLAN: Joe Scanlan and Carlos Orellana appearing for Kenmark Ventures Limited as Plaintiffs and Cross-defendant.

THE COURT: And Mr. Tersini.

MR. SCANLAN: Mr. Tersini a principal of Kenmark is likewise present.

THE COURT: Hello, sir.

MS. DOUGLASS: Patricia Douglass appearing for Defendant Michael Gardner. This is Mr. Gardner.

THE COURT: Hello, sir.

MR. MORRISSEY: Good morning, your Honor. Michael Morrissey on behalf of Anthony Thomas, who is here to my right.

THE COURT: And does that also include --

MR. MORRISSEY: A.T. Emerald, LLC.

THE COURT: A.T. Emerald, LLC.

MR. MORRISSEY: Yes, your Honor.

THE COURT: We have good news here. We'll take a short time, but as long as is necessary, to formalize this. This matter, as stated on the record earlier, was assigned to me, Leslie Nichols retired judge sitting on assignment for jury

trial, and we commenced two days ago on Monday.

At that time, there was a stipulation inviting the Court to participate in settlement discussions while retaining full authority as trial judge. I accepted that and entered into extended discussions with all counsel, and they have conferred extensively with their clients. I have now been presented a written form of settlement agreement.

All counsel have agreed that although the form of it had provided for signatures, it is the intention that there be no signatures, but that this be recited as the agreement; is that correct?

MR. SCANLAN: That is correct, your Honor, and that it be deemed to be judicially enforceable under 664.6.

THE COURT: A judicially-enforced settlement agreement can be approved when a document is reviewed in writing or orally stated upon the record. And in this case, I have been presented a writing, and although it's not signed, it is a writing.

Do you agree that my review of this writing is that it's sufficient to give me the opportunity to approve it and to retain jurisdiction to enforce it?

MR. MORRISSEY: We were actually, your Honor, hoping we could recite the writing through the court reporter and do it that way.

THE COURT: That's fine. We will do that. And then it would be an agreement orally recited on the record before the

Court and subject to enforcement under 664.6 of the Code of Civil Procedure. Agreed?

MR. SCANLAN: Agreed.

MR. MORRISSEY: That's correct; exactly right.

THE COURT: Something that's not in the writing, but you're asking the Court to retain jurisdiction to enforce its terms?

MR. SCANLAN: That is absolutely correct and an essential part of our agreement.

MR. MORRISSEY: Yes, your Honor.

MS. DOUGLASS: Yes, your Honor.

THE COURT: The agreement is in 17 numbered paragraphs, and for the benefit of our court reporter, if someone will read it slowly, that will be great.

Let me indicate that we're at a quarter to 12:00, and I don't want to commence this process unless the parties personally orally affirm now that I'll ask a few questions now of Mr. Tersini and then quickly of the defendants. Mr. Tersini, are you the authorized representative of Kenmark Ventures, LLC?

MR. TERSINI: Yes, I am.

THE COURT: And you're authorized to settle this case on behalf of the entity?

MR. TERSINI: Yes, I am.

THE COURT: This document, as you know from my interaction with all of you folks, has been an interactive

process. You were working with your attorney in chambers on the laptop computer, Mr. Gardner would bring in a computer stick to stick in my computer, it would be printed out in drafts, and you've participated in each and every aspect of that; isn't that true, sir?

MR. TERSINI: Yes.

THE COURT: Are you satisfied that now, on this third day of the scheduled trial, you have had ample opportunity, you've taken an opportunity, the opportunity to confer with your counsel, so you're ready to approve this agreement?

MR. TERSINI: Yes.

THE COURT: And at this moment, do you have any questions of your counsel that you need to be clarified before this is read into the record?

MR. TERSINI: No, I do not.

THE COURT: And the Court is being asked to retain jurisdiction to enforce the terms of this agreement to the extent possible; is that what you want?

MR. TERSINI: Yes.

THE COURT: This is out of great respect for you, but you all seem to be in reasonable health and full capacity. You're not under the influence of any alcohol or drugs or mind-altering materials; is that correct?

MR. TERSINI: No, I'm not.

THE COURT: I've got to ask these questions. You'd be

surprised what people say after the fact when they try to get out of deals. So I take --

MR. MORRISSEY: It's not noon, yet, your Honor.

THE COURT: I'll take great care. Mr. Thomas, did you hear the questions that I put to Mr. Tersini?

MR. THOMAS: I did.

THE COURT: And you speak personally on behalf of an entity A.T. Emerald, LLC; is that right?

MR. THOMAS: Yes.

THE COURT: And you're authorized to bind that entity?

MR. THOMAS: Yes.

THE COURT: You have the authority to do so?

MR. THOMAS: Yes.

THE COURT: Your answers to each of the questions I put to Mr. Tersini is the same?

MR. THOMAS: Yes.

THE COURT: Mr. Gardner, did you hear the questions of Mr. Tersini?

MR. GARDNER: Yes.

THE COURT: Are those questions and answers fresh in your mind?

MR. GARDNER: Yes, they are.

THE COURT: Do you affirm that your answers are same?

MR. GARDNER: Yes, I do.

THE COURT: All right. Counsel, you concur?

MS. DOUGLASS: We do.

MR. MORRISSEY: Yes, your Honor.

MR. SCANLAN: Yes, your Honor.

THE COURT: Okay. Mr. Scanlan, will you read the agreement.

MR. SCANLAN: Yes, your Honor, I will.

THE COURT: Please read each numbered paragraph. Read it in its entirety and slowly for the benefit of our court reporter and my brain.

MR. SCANLAN: We'll leave a copy with the court reporter to help her if she has any questions.

THE COURT: I'm grateful for that.

MR. SCANLAN: One: Parties: This agreement is entered between Kenmark Ventures, LLC (Kenmark), on the one hand, and Anthony Thomas, A.T. Emerald, LLC and Michael Gardner, (the three collectively "defendants" and collectively with Kenmark, the "parties") on the other.

Two: The parties agree that this settlement agreement is designed to resolve disputed claims by the parties and does not constitute an admission of any wrongdoing by any party.

Three: Payment: Defendants shall pay to Kenmark the following sums in U.S. dollars. A: $500,000 on or before January 1, 2013. B: $500,000 on or before January 1, 2014.

C: $1,333,333 on or before January 1, 2015. D: $1,333,333 on or about January 1, 2016. E: $1,333,334 on or

before January 1st, 2017. The defendants' liability on these amounts is joint and several.

Four: Time is of the essence in the performance of all obligations hereunder. In the event payments are not made on or before the date sets forth in paragraph three, then the defendants shall be in default under this agreement. Notwithstanding the foregoing, Defendants shall have a five-calendar-day grace period to make any payment missed, in full.

Five: All payments shall be made to Kenmark Ventures, LLC at 21710 Stevens Creek Boulevard, Suite 200, Cupertino, California 95014.

Six: In the event Defendants fail to make timely payments set forth as in paragraph three or within the grace period provided, Kenmark Ventures, LLC may apply, ex parte, for an entry of judgment in the amount of all sums remaining unpaid under this agreement.

Judgment shall be entered under the forth and fifth causes of action of Kenmark's First Amended Complaint. The defendants' liability on any such judgment will be joint and several.

24 hours fax notice shall be given to Defendant of such ex parte hearing via the office of Michael Morrissey, Esquire, Counsel for Anthony Thomas and A.T. Emerald, LLC and the office of Patricia D. Douglass, Esquire.

THE COURT: Excuse me. Douglas has two Ss? Thank you.

MR. SCANLAN: Seven: Kenmark Ventures, LLC shall forthwith cause its Florida replevin action to be dismissed and the 21,000 carat emerald known as the Thomas Emerald made accessible to Anthony Thomas.

Kenmark agrees to execute any and all documents necessary to release any and all liens, encumbrances and UCC filings that it has at any time placed as encumbrances on the Thomas Emerald and provide evidence of the same promptly to Mr. Morrissey and Ms. Douglass.

Eight: Anthony Thomas shall keep Kenmark apprised, at all times, of all successful sales or monetization of the Thomas Emerald.

Nine: By this settlement agreement, all parties release all claims, known and unknown, that they have or may have against each other whether arising from events mentioned in the pleadings or discovery in this case or otherwise.

In connection with that mutual general release, parties hereby also waive the protection of Civil Code Section 1542: A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

10: In the event a judgement is entered hereunder, Defendants waive and relinquish any right of appeal,

modification or collateral attack on the judgment.

11: This settlement was entered in open court by all the parties hereto and the parties agree and intend that any or all of its terms and provisions may be enforced by ex parte motion under C.C.P. Section 664.6.

12: A.T. Emerald, LLC and Anthony Thomas must dismiss their cross-complaint against Kenmark Ventures, LLC with prejudice within ten court days of the date of this agreement.

13: Each party to this agreement shall bear its respective attorneys' fees and court costs in connection with this action.

14: The defendants will be jointly and severally liable on any judgement entered under this agreement.

15: The parties agree to keep the terms of this settlement agreement in strictest confidence, except to the extent necessary to meet obligations imposed upon them by law.

The parties agree that if asked about the terms on which this case was settled, that they will state only that the matter was settled to the mutual satisfaction of the parties.

The parties agree to notify each other of any apparently lawful request for the information contained in this agreement before releasing it to a third party.

16: The parties agree that they will not disparage or publicly speak ill of any other party to this agreement.

17: This agreement may only be altered in writing,

signed by all of the parties. The parties expressly waive any right to orally modify this paragraph 17 or to enter into any oral agreement to modify the terms of this agreement.

THE COURT: I just have a question. In the event that unfortunately an ex parte application had to be made to the Court to enforce the terms of this, we have the possibility of a court transcript. Now, it may be -- does anyone wish to obtain a copy of the transcript?

MR. SCANLAN: Yes, your Honor.

MR. MORRISSEY: Yes, I think that would be a good idea.

THE COURT: Because if this were years from now, sometimes it may be difficult to find the report of the notes.

MR. MORRISSEY: Yes, your Honor.

THE COURT: So get an authentic copy of that document, which could then only be used for the purpose of enforcement.

MR. MORRISSEY: Yes, your Honor.

MR. SCANLAN: Yes, your Honor.

THE COURT: Otherwise, I was going to say please initial the writing or do something, because I would never suggest if there were successor parties or other things, someone might submit the authenticity, but with the transcript, you're in good shape.

MR. SCANLAN: Your Honor, I do want to affirm at the end, because we didn't include the term, that the Court does indeed have continuing jurisdiction over this matter.

THE COURT: Yes, that's not in the writing, but I added that, and I'll expressly provide that again. The paragraph 11 pretty much covers it --

MR. MORRISSEY: Yes, your Honor.

THE COURT: -- by saying the settlement was entered in open court by all the parties hereto, and the parties agree and intend that any and all terms and provisions may be enforced by ex parte motion under C.C.P. 664.6.

Just one second. But further, and to be express about it, this means that the Court is asked to retain jurisdiction to enforce the terms of it, and if it were necessary to enter judgment, to interpret the document if appropriate and to do all other things to give full force and effect of the agreement; is that your understanding?

MR. SCANLAN: That is correct.

THE COURT: Mr. Tersini.

MR. TERSINI: Yes.

THE COURT: Ms. Douglass?

MS. DOUGLASS: Yes.

THE COURT: And you agree?

MR. MORRISSEY: I do.

THE COURT: And you agree, Mr. Thomas?

MR. THOMAS: Yeah.

THE COURT: All right. Then the final question, I asked you these questions earlier, but Mr. Tersini, you have now heard

the reading of the very document that you earlier said you approve, and do you stand on your earlier approval that the Court has been asked to approve this agreement, direct the parties to comply with it and to retain jurisdiction to enforce its terms?

MR. TERSINI: Yes, I do.

THE COURT: Is your answer the same, Mr. Gardner?

MR. GARDNER: Yes, it is.

THE COURT: And you as well, Mr. Thomas?

MR. THOMAS: Yes.

THE COURT: And each counsel agrees?

MR. MORRISSEY: We do.

MS. DOUGLASS: We do.

MR. SCANLAN: Yes, your Honor.

THE COURT: Can't do better than that. I do approve this agreement as recited as requested by the parties and counsel, and you'll obtain a transcript of that. That's the way you want to memorialize it; isn't it?

MR. SCANLAN: That correct.

THE COURT: Our minutes will reflect that the Court has voir dired the parties and Counsel thoroughly; that they approved the agreement and asked the Court to retain jurisdiction, and that the memorialization of this will be in a transcript obtained, at the very least, by Plaintiff's counsel, probably all counsel would want to get it.

But you'll have that and that will serve as the evidence necessary should there be further proceedings, because in accordance with your request, the detailed terms of this will not be reside in the minutes.

I cannot speak to the situation in the unlikely event that some third party asks for a transcript, that's under the public records proceedings and that would be dealt with appropriately by the clerk and court reporter. I will return this. But you'll be holding those transcripts just for proper purposes.

MR. SCANLAN: That's correct.

THE COURT: The Court does each of the things you requested. I approved the agreement, direct the parties to comply with the terms of the agreement. I find that this agreement was entered knowingly, intelligently, without duress, coercion, each party being in full capacity and knowledgeable.

And I affirm their statements that they have all interacted with counsel, and the bottom line is that this is a settlement that you have agreed to. I'm glad to approve it. I appreciate the courtesies of all of you.

I respect counsel and the parties. There's been no adjudication of any wrongdoing. You worked this out on your terms, and I find that it's appropriate. So I approve it for that agreement. Thank you so much. Anything else to do before we conclude?

MR. MORRISSEY: Your Honor, sometimes they set a C.M.C. date out at the end, so January 15th at 2017 for the court tracking system.

THE CLERK: It would be on a Thursday, 10:00 a.m.

THE COURT: Okay.

THE CLERK: Did you want it to come before you?

THE COURT: Just on the general calendar.

THE CLERK: January.

THE COURT: 2017.

MS. DOUGLASS: I think you're busy that day.

MR. SCANLAN: Your Honor, as the clerk looks for that, I would like to steal this minute to thank the Court for its patience and extraordinary efforts over the last two days, and in sending this to an end. It's genuinely appreciated.

THE COURT: I appreciate everyone's good wishes, and I reciprocate those feelings.

MS. DOUGLASS: Thank you.

THE COURT: I always felt it's a little too easy for a judge to puff up him or herself. I never say I settled the case. It requires the parties and counsel, but to the extent I've helped to be a catalyst, I'm grateful for that opportunity.

THE CLERK: Your Honor, do you want to set a case status re dismissal in January?

THE COURT: 2017. If the clerk notices anything else, she'll send it to everybody.

THE CLERK: For 2017, we have Thursday, January 4th, 12th, 19th and 26th.

MR. MORRISSEY: How about the 19th.

THE COURT: 19th.

MR. SCANLAN: That's fine.

THE COURT: 10:00. January 19th. In the mean time, you'll have several years to contact the legislature and plead for appropriate funding for the judicial branch of government, so there will be a courthouse here. Thank you very much. We'll be in recess.

MS. DOUGLASS: Thank you, your Honor.

---o0o---

STATE OF CALIFORNIA )
) ss.
COUNTY OF SANTA CLARA )

I, CHRISTINE BEDARD, Certified Shorthand Reporter, do hereby certify that I am a pro tempore reporter of the Superior Court of the State of California, and that has such, I reported the proceedings had in the above-entitled matter at the time and place set for herein.

That my stenograph notes were thereafter transcribed into typewriting under my direction; and that the foregoing pages constitute a full, true and correct transcription of my said notes to the best of my ability.

/s:/ Christine Bedard
CHRISTINE BEDARD, C.S.R. #10709

Dated: November 9, 2012

Exhibit 2

Letter from Atty. Morrissey
to State Bar
faxed on 10-3-2011

Exhibit 2

10/03/2011 05:48 0000000 LAW OFFICE PAGE 01/02

P.O. BOX 2549
CUPERTINO, CA 95015-2549
(408) 872-1850
(408) 741-1671 – Facsimile No.

LAW OFFICES OF
MICHAEL T. MORRISSEY

# Fax

| To: | State Bar Court | From: | Michael Morrissey |
|---|---|---|---|
| Fax: | (415) 538-2043 | Pages: | 2, including this page |
| Phone: | | Date: | 10/3/2011 |
| Re: | Michael Morrissey - #062195 | CC: | Office of Chief Trial Counsel – (415) 538-2284 |

☐ Urgent ☐ For Review ☐ Please Comment ☐ Please Reply

● Comments:

RECEIVED
OCT - 3 2011
STATE BAR OF CALIFORNIA
ENFORCEMENT - SF

CONFIDENTIALITY NOTICE

*The information contained in this facsimile message is information protected by attorney-client and or the attorney work product privilege. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by facsimile. If the person actually receiving this facsimile or any other reader of the facsimile is not the named recipient or the employee or agent responsible for delivering this facsimile to the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If this facsimile communication has been received in error, please immediately notify us by telephone and return the original communication to the address listed above via the U.S. Postal Service.*

IF YOU HAVE ANY PROBLEM WITH THE RECEIPT OF THIS TRANSMISSION,

EXHIBIT 1

OCT-03-2011 06:49 000000000 96% P.01

MICHAEL T. MORRISSEY
LAW OFFICES OF MICHAEL T. MORRISSEY
P.O. Box 2549
Cupertino CA 95015-2549
(408) 872-1850
(408) 741-1671 – Facsimile

October 3, 2011

State Bar Court
State Bar of California
180 Howard Street
San Francisco, CA 94105

Re: Michael T. Morrissey – CSBN: 062195
Hearing of Today's Date

The Honorable Presiding Judge of the State Bar Court:

I was advised late last night that there is a hearing today regarding disciplinary charges that have been brought against me. While I have not had an opportunity to investigate exactly why I have not received notice of this matter or any hearings, I do know that it relates to my wife, who apparently been suffering from mental health issues, and not the State Bar Court.

I am starting a trial today in the Santa Clara County Superior Court and have spent every moment since I was reinstated on Friday preparing for this trial. This trial was continued from August 1, 2011 to today due to the suspension I served following my graduation for LAP and the ADP program. I do not have any option but to fully represent my client and try his case. The case currently has a two week time estimate by all parties.

I am requesting that any hearing scheduled for today be continued, so as to allow a formal application and the possible hiring of counsel on my behalf.

Very truly yours,

Michael T. Morrissey

cc: Office of Chief Trial Counsel

# Exhibit 3

Minute Order of CA
State Bar Court dated
10-4-2011

Exhibit 3

STATE BAR COURT OF CALIFORNIA

HEARING DEPARTMENT

180 Howard St., 6th Fl., San Francisco, CA 94105

FOR CLERK'S USE ONLY:

FILED

OCT 04 2011

STATE BAR COURT CLERK'S OFFICE
SAN FRANCISCO

In the Matter of:

MICHAEL T. MORRISSEY
Member No.: 62195

A Member of the State Bar.

Case No(s): 10-O-09718-LMA

MINUTE ORDER

☒ Pretrial Conf. ☐ Motion Hrg. ☐ Default Hrg.

Date held: October 3, 2011 Time: 11:00 a.m.

APPEARANCES:

Deputy Trial Counsel Christine A. Souhrada ☒ Appeared ☐ No Appearance

Respondent Michael T. Morrissey ☐ Appeared ☒ No Appearance ☐ Co-counsel ☐ In Pro per

Counsel ☐ Appeared ☐ No Appearance ☐ None

CONFERENCES:

☐ Status Conference: ☐ In person ☐ Telephonic

☐ Settlement Conference: ☐ In Person ☐ Telephonic

☐ Further Pretrial Conference: ☐ In Person ☐ Telephonic

ORDERS:

☐ Motion of ☐ Deputy Trial Counsel; ☐ Resp./Appl./Petit.; ☐ Court for:
☐ No opposition ☐ Granted ☐ Denied

☐ Matter ☐ off calendar due to
☐ continued to

☐ Trial continued to at

☐ Briefs due: ☐ Deputy Trial Counsel ☐ Respondent

☐ Parties waive service of order.

☒ Other Respondent failed to appear at the Pre-Trial conference and has failed to appear at every single court related event. Respondent's default will be entered if he fails to appear at trial. Trial will start at 10:30 on October 11, 2011.

IT IS SO ORDERED.

Dated: October 3, 2011

LUCY ARMENDARIZ
Judge of the State Bar Court

**CERTIFICATE OF SERVICE**

[Rules Proc. of State Bar; Rule 5.27(B); Code Civ. Proc., § 1013a(4)]

I am a Case Administrator of the State Bar Court of California. I am over the age of eighteen and not a party to the within proceeding. Pursuant to standard court practice, in the City and County of San Francisco, on October 4, 2011, I deposited a true copy of the following document(s):

MINUTE ORDER

in a sealed envelope for collection and mailing on that date as follows:

☒ by first-class mail, with postage thereon fully prepaid, through the United States Postal Service at San Francisco, California, addressed as follows:

MICHAEL THOMAS MORRISSEY
PO BOX 2549
CUPERTINO, CA 95015

☒ by fax transmission, at fax numbers (408) 741-1671. No error was reported by the fax machine that I used.

☒ by interoffice mail through a facility regularly maintained by the State Bar of California addressed as follows:

CHRISTINE A. SOUHRADA, Enforcement, San Francisco

I hereby certify that the foregoing is true and correct. Executed in San Francisco, California, on October 4, 2011.

Bernadette C.O. Molina
Case Administrator
State Bar Court





Exhibit 5

Dunn & Bradstreet Report of

Anthony Thomas' Construction

Business

T & D Construction INC

Exhibit 5

D&B | Small Business Solutions

Home | Subscriptions | My Account | Lo

Get Credit Reports | Collect Debt | Find New Customers | Manage My Business Credit | View My Reports A

Update Monitor Improve Protect

**T & D CONSTRUCTION INC**
538 ALDO AVE
SANTA CLARA, CA 950542204

**D-U-N-S Number: 78-364-3034**

Risk of Late Payment

Lower Risk Higher Risk

**Purchased Reports**

| Available Until | Report Type | Delete Report |
|---|---|---|
| 6/29/2007 | SelfMonitor | Delete |

You have the Auto-Refresh service on this report. Each time you view the report, you will see the most up-to-date information available from D&B.

**Alerts Summary** | **Alerts Detail**

Back to Alerts Summary    **Alerts: 1 of 7**    Previous | Next

History

**You received this alert on: 5/10/2007. This alert will expire in 8 days.**

Print Alert | Delete Aler

History Section: 05/01/07

HISTORY

ANTHONY THOMAS, PRESIDENT WENDY THOMAS, SECRETARY
DIRECTOR(S): THE OFFICER(S)

---

CORPORATE AND BUSINESS REGISTRATIONS
REPORTED BY THE SECRETARY OF STATE
OR OTHER OFFICIAL SOURCE AS OF 04/20/2007

---

This data is for informational purposes only, certification can only be obtained through the Sacramento Office of the California Secretary of State.

REGISTERED NAME: T & D CONSTRUCTION, INC.

CORPORATION TYPE: PROFIT FILING DATE: 05/10/1991
BUSINESS TYPE: CORPORATION
REGISTRATION ID #: C1686356

STATE OF ORGANIZATION (INCORPORATION): CALIFORNIA
DATE OF ORGANIZATION (INCORPORATION) : 05/10/1991

STATUS: ACTIVE

WHERE FILED: SECRETARY OF STATE/CORPORATIONS DIVISION, SACRAMENTO, CA

Small Business Solutions Case 14-50333-btb Doc 427 Entered 11/02/18 15:11:18 Page 41 of 49 Page 3 of 3

REGISTERED AGENT: ANTHONY G. THOMAS, 1107 NORMANDY DRIVE, CAMPBELL, CA 95008

PRINCIPALS: ANTHONY G. THOMAS, PRESIDENT, 1107 NORMANDY DRIVE, CAMPBELL, CA 95008

---

Corporate File #01686356.

Business started Jun 1989 by Anthony Thomas as sole proprietorship. Relocated Jul 1997 from San Jose, CA. 100% of capital stock is owned by Anthony Thomas.

ANTHONY THOMAS born 1963. 1989-present active here. 1985-89 employed by Joseph Albaness Construction, Santa Clara, CA. 1984-85 employed by Cal Drywall, San Jose, CA.

WENDY THOMAS born 1964. 1994-present active here.

Business address has changed from 538 Aldo Ave, Santa Clara , CA, 95054 to 538 Aldo Ave, Santa Clara, CA, 95054.

END OF HISTORY

‹ Back to Alerts Summary Alerts: 1 of 7 «« Previous | Next ›

D&B Home | About D&B | Customer Service | Site Map | Privacy Policy
Refund & Cancellation Policy | FAQs | Glossary | D&B Data Quality | Terms of Use | Product List

© 2007 Dun & Bradstreet, Inc.



D&B
Small Business
Solutions

SelfMonitor for
T & D CONSTRUCTION INC
Report Printed: June 1, 2007

D-U-N-S #: 78-364-3034

▸ Print this report
▸ To save this report to your PC: Select File and then Save As from the browser menu bar. Click on the Save in: drop-down menu and select a location for your file. Enter a file name and save the report as a .html or .txt file.

Copyright 2007 Dun & Bradstreet - Provided under contract for the exclusive use of subscriber WENDI THOMAS, T & D CONSTRUCTION INC

Company Snapshot Creditworthiness Payment History & Trends Public Filings History & Operations Banking & Finance

## Company Snapshot

### Business Summary

**Profile**
**T & D CONSTRUCTION INC**
538 Aldo Ave
Santa Clara, CA 95054

**Tel:** 408 727-7419
**D-U-N-S #:** 78-364-3034
**D&B Rating:** 2R2

**Company Stats**

| | |
|---|---|
| **Year Incorporated** | 1991 |
| **Year started** | 1989 |
| **Employees** | 6 |
| **Chief Executive** | Anthony Thomas , President |
| **S.I.C.** | 1795<br>1799 |

**Industry**
Wrecking/demolition contractor, trade contractor

This is a single location.

The Net worth amount in this section may have been adjusted by D&B to reflect typical deductions, such as certain intangible assets.

**Timeliness of historical payments for this company** — **PROMPT** ☑

**D&B PAYDEX®: 80**

100 — 0
Anticipates Prompt — 30 days slow — 120 days slow

**Payment performance trend over the past 90 days** — UNCHANGED

**Likelihood this company will not pay on time over the next 12 months** — **LOW** ☑

**Credit Score Class: 1**

1 2 3 4 5
Low Moderate High

**Likelihood this company will experience financial distress in the next 12 months** — **LOW** ☑

**Financial Stress Class: 1**

1 2 3 4 5
Low Moderate High

**Likelihood this supplier will experience financial distress in the next 12 months (can be used to compare companies across international borders)** — **MODERATE** ⚠

**Supplier Evaluation Risk Rating: 4**

1 2 3 4 5 6 7 8 9
Low
Moderate
High

**D&B offers guidance on credit limits for this company based on its profile as well as profiles of other companies similar in size, industry, and credit usage** — Get details

| | |
|---|---|
| **Evidence of bankruptcy, fraud, or criminal proceedings in the history of this business or its management** | NO ☑ |
| **Noteworthy special events in this company's file** | NO ☑ |
| **Total number of suits, liens and judgments in this company's file** | 0 ☑ |
| **Value of open suits, liens and judgments for this company** | $0 ☑ |

Value of open records refers only to 10 most recent filings for each record type.

Company Snapshot Creditworthiness Payment History & Trends Public Filings History & Operations Banking & Finance

## Creditworthiness

## Summary

**Likelihood this company will not pay on time over the next 12 months** — LOW

**Likelihood this company will experience financial distress in the next 12 months** — LOW

**Likelihood this supplier will experience financial distress in the next 12 months (can be used to compare companies across international borders)** — MODERATE

**D&B Rating: 2R2**
Number of employees: 2R is 1 to 9 employees.
Composite credit appraisal: 2 is good.
The 1R and 2R ratings categories reflect company size based on the total number of employees for the business. They are assigned to business files that do not contain a current financial statement. In 1R and 2R Ratings, the 2, 3, or 4 creditworthiness indicator is based on analysis by D&B of public filings, trade payments, business age and other important factors. 2 is the highest Composite Credit Appraisal a company not supplying D&B with current financial information can receive. For more information, see the D&B Rating Key.

## Payment within Terms: Commercial Credit Summary

**Likelihood this company will not pay on time over the next 12 months** — LOW

Credit Score Class: 1

1
2
3
4
5
Low
Moderate
High

**Key Factors**
- 12 trade experiences exist for this company.
- Payment information in the D&B files indicates no slow payment(s) nor negative comment(s).
- No record of open suit(s), lien(s), or judgment(s) in the D&B files.

The Credit Score class of 1 for this company shows that 2.0% of firms with this classification paid one or more bills severely delinquent, which is lower than the average of businesses in D&B's database.

Credit score percentile: 98 (high risk: 1%; low risk: 100%)

**Commercial Credit Score Norms**

| Norms for companies in the same: | National Percentile |
|---|---|
| Region: (PACIFIC) | 52 |
| Industry: (CONSTRUCTION) | 51 |
| Employee Range: (1-9) | 58 |
| Years in Business Range: (11-25) | 64 |
| This Business: | 98 |

The subject company has a Commercial Credit Score Percentile that shows:

- Lower risk than other companies in the same region.
- Lower risk than other companies in the same industry.
- Lower risk than other companies in the same employee size range.
- Lower risk than other companies with a comparable number of years in business.

## Default on Payment: Financial Stress Summary

**Likelihood this company will experience financial distress in the next 12 months** — LOW

Financial Stress Class: 1

1
2
3
4
5
Low
Moderate
High

**Key Factors**
- 12 trade experiences exist for this company.
- Financial Stress Score: 1398 (high risk: 1,001;low risk: 1,875)
- Payment information in the D&B files indicates no slow payment(s) nor negative comment(s).
- No record of open suit(s), lien(s), or judgment(s) in the D&B files.

During the prior year, firms in this Financial Stress Class had a failure rate of 1.2%, which is 0.48 times lower than the national average.

Financial stress national percentile: 61 (high risk: 1%; low risk: 100%)

**Financial Stress Score Norms**

| Norms for companies in the same: | National Percentile |
|---|---|
| Region: (PACIFIC) | 50 |
| Industry: (CONSTRUCTION) | 38 |
| Employee Range: (1-9) | 38 |
| Years in Business Range: (11-25) | 52 |
| This Business: | 61 |

This subject company has a Financial Stress Score Percentile that shows:

- Lower risk than other companies in the same region.
- Lower risk than other companies in the same industry.
- Lower risk than other companies in the same employee size range.
- Lower risk than other companies with a comparable number of years in business.

### Supplier Statistics: Supplier Evaluation Risk Summary

**Likelihood this supplier will experience financial distress in the next 12 months (can be used to compare companies across international borders)**

**MODERATE** ⚠

Supplier Evaluation Risk Rating: 4

1 2 3 4 5 6 7 8 9
Low
Moderate
High

**Key Factors**

- Sales for the Fiscal year ending APR, 2000 are Up by 52.7%.
- Net worth for the Fiscal year ending APR, 2000 is Up by 25.6%.
- Average Payments are on terms.
- Average Industry Payments are 5 day(s) beyond terms.
- UCC Filings present - See PUBLIC FILINGS section.
- Under present management control 18 years.

### Additional Information

**Commercial Credit Summary**

- The Incidence of Delinquent Payment is the percentage of companies with this classification that were reported 90 days past due or more by creditors. The calculation of this value is based on an inquiry weighted sample.
- The Percentile ranks this firm relative to other businesses. For example, a firm in the 80th percentile has a lower risk of paying in a severely delinquent manner than 79% of all scorable companies in D&B's files.

**Financial Stress Summary**

- The Financial Stress Class indicates that this firm shares some of the same business and financial characteristics of other companies with this classification. It does not mean the firm will necessarily experience financial stress.
- The Incidence of Financial Stress shows the percentage of firms in a given Class that discontinued operations over the past year with loss to creditors. The Incidence of Financial Stress - National Average represents the national failure rate and is provided for comparative purposes.
- The Financial Stress National Percentile reflects the relative ranking of a company among all scorable companies in D&B's file.
- The Financial Stress Score offers a more precise measure of the level of risk than the Class and Percentile. It is especially helpful to customers using a scorecard approach to determining overall business performance.
- All Financial Stress Class, Percentile, Score and Incidence statistics are based on 2004.

**Supplier Evaluation Risk Summary**

- The Supplier Evaluation Risk Rating Class indicates that this firm shares some of the same business and financial characteristics of other companies with this classification. It does not mean the firm will necessarily experience supplier failure.

Company Snapshot Creditworthiness Payment History & Trends Public Filings History & Operations Banking & Finance

## Payment History

### Summary

**Average payment performance trend when weighted by dollar amount** — **UNCHANGED** ↔

**Company's payment performance over the past 12 months compared with its peers** — **AHEAD** ☑

### Payment History Overview

| | | | |
|---|---|---|---|
| **Payment experiences on file with D&B:** | 12 | Average highest credit: | $8,072 |
| Payments made within terms: | 12 (100%) | Largest high credit: | $55,000 |
| Amount placed for collections: | 0 (0%) | Highest now owing: | $40,000 |
| | | Highest past due: | $0 |

### Historical Payment Trends: PAYDEX®

**Average payment performance trend when weighted by dollar amount**

Based on payments collected over last 12 months.
Indications of slowness can be the result of dispute over merchandise, skipped invoices, etc. Accounts are sometimes placed for collection even though the existence or amount of the debt is disputed.

### Historical Payment Trends: PAYDEX® Comparison to Industry

**Company's payment performance over the past 12 months compared with its peers** AHEAD ☑

**This company's 12-month high:** 80, or equal to generally within terms
**This company's 12-month low:** 79, or equal to 2 days beyond terms

Shows PAYDEX scores of this Business compared to the Primary Industry from each of the last four quarters. The Primary Industry is Wrecking/demolition contractor, trade contractor, based on SIC code 1795.

### Payment History Details

| Date Reported | Paying Record | High Credit ($) | Now Owes ($) | Past Due ($) | Selling Terms | Last Sale Within (months) |
|---|---|---|---|---|---|---|
| 04/07 | Prompt | 55,000 | 40,000 | 0 | | |
| 04/07 | Prompt | 25,000 | 15,000 | 0 | | |
| 04/07 | Prompt | 2,500 | 1,000 | 0 | | 1 |
| 04/07 | Prompt | 1,000 | 0 | 0 | Net30 | 1 |
| 04/07 | Prompt | 250 | 0 | 0 | | 6-12 |
| 04/07 | Prompt | 0 | 0 | 0 | Net30 | 6-12 |
| 02/07 | Prompt | 2,500 | 2,500 | 0 | | 1 |
| 08/06 | Prompt | 250 | 250 | 0 | | 1 |
| 07/06 | Prompt | 500 | 0 | 0 | Net30 | 6-12 |
| 07/06 | (010) Satisfactory. | 750 | | | | 1 |
| 01/06 | Prompt | 1,000 | 0 | 0 | | 6-12 |
| 12/05 | Prompt | 50 | 0 | 0 | | 1 |

Payment experiences reflect how bills are met in relation to the terms granted. In some instances payment beyond terms can be the result of dispute over merchandise, skipped invoices, etc.
Each experience shown is from a separate supplier. Updated trade experiences replace those previously reported.

### Payment Analysis By Industry

**Company's dollar-weighted payments listed by the primary industries of its suppliers**

| Industry | Total Received (#) | Total Dollar Amount ($) | Largest High Credit ($) | Within Terms | Slow 1-30 | Slow 31-60 | Slow 61-90 | Slow 91+ |
|---|---|---|---|---|---|---|---|---|
| | | | | | (% of dollar amount) | | | |
| Misc business credit | 2 | 80,000 | 55,000 | 100 | 0 | 0 | 0 | 0 |
| Nonclassified | 2 | 300 | 250 | 100 | 0 | 0 | 0 | 0 |
| Radiotelephone commun | 1 | 2,500 | 2,500 | 100 | 0 | 0 | 0 | 0 |
| Fire/casualty insur. | 1 | 2,500 | 2,500 | 100 | 0 | 0 | 0 | 0 |
| Hvy const eqpt rental | 1 | 1,000 | 1,000 | 100 | 0 | 0 | 0 | 0 |
| Help supply service | 1 | 1,000 | 1,000 | 100 | 0 | 0 | 0 | 0 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Misc general gov't | 1 | 750 | 750 | 100 | 0 | 0 | 0 | 0 |
| Employment agency | 1 | 500 | 500 | 100 | 0 | 0 | 0 | 0 |
| Accounting services | 1 | 250 | 250 | 100 | 0 | 0 | 0 | 0 |
| Whol electrical equip | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Other payment categories** | | | | | | | | |
| Cash experiences | 0 | 0 | 0 | | | | | |
| Payment record unknown | 0 | 0 | 0 | | | | | |
| Unfavorable comments | 0 | 0 | 0 | | | | | |
| **Placed for collection** | | | | | | | | |
| With D&B | 0 | 0 | 0 | | | | | |
| Other | 0 | N/A | 0 | | | | | |
| **Total in D&B's file** | **12** | **88,800** | **55,000** | | | | | |

There are 12 payment experiences in D&B's file for the most recent 12 months, with 6 experiences reported during the last three month period.

Company Snapshot Creditworthiness Payment History & Trends Public Filings History & Operations Banking & Finance

## Public Filings

### Summary of Court Actions

**The following data includes both open and closed filings found in D&B's database on the subject company.**

| Record Type | Open Records | Open Value | Total Records | Most Recent Filing Date |
|---|---|---|---|---|
| Suits | 0 | 0 | 0 | - |
| Liens | 0 | 0 | 0 | - |
| Judgments | 0 | 0 | 0 | - |
| UCC Filings | 1 | N/A | 3 | 03/15/2007 |
| Bankruptcy Proceedings | 0 | N/A | 0 | - |

Public filing data is for informational purposes only and is not the official record. Certified copies can only by obtained from the official source. Number and value of open records refers only to 10 most recent filings for each record type.

### UCC Filings

| Collateral | Type | Sec. Party | Debtor | Date Filed | Additional Details |
|---|---|---|---|---|---|
| All Negotiable instruments and proceeds - All Inventory and proceeds - All Account (s) and proceeds - All Fixtures and proceeds - and OTHERS | Original | COMERICA BANK, MC 6514, DALLAS, TX | T & D CONSTRUCTION, INC. | 03/15/2007 | Filing number: 077108493986 Filed with: SECRETARY OF STATE/UCC DIVISION, SACRAMENTO, CA Latest info Received: 03/28/2007 |
| Equipment and proceeds | Original | ASSOCIATES COMMERCIAL CORPORATION, IRVING, TX | T & D CONSTRUCTION INC | 08/23/1999 | Filing number: 9925060245 Filed with: SECRETARY OF STATE/UCC DIVISION, SACRAMENTO, CA Latest Info Received: 09/21/1999 |
| Leased Equipment | Original | MCGRATH-RENTELCO, LIVERMORE, CA | T&D CONSTRUCTION, INC. | 09/14/2000 | Filing number: 0026660321 Filed with: SECRETARY OF STATE/UCC DIVISION, SACRAMENTO, CA Latest Info Received: 10/09/2000 |

The public record items contained in this report may have been paid, terminated, vacated or released prior to the date this report was printed. Any public filings displayed in red are open.

### Government Activity

| Activity Summary | | Possible Candidate for Socio-Economic Program Consideration | |
|---|---|---|---|
| Borrower (Dir/Guar) | No | Labor Surplus Area | Yes (2007) |
| Administrative Debt | No | Small Business | Yes (2007) |
| Contractor | No | 8(A) Firm | N/A |
| Grantee | No | | |
| Party Excluded from Federal Program(s) | No | | |

The details provided in the Government Activity section are as reported to D&B by the federal government and other sources.

Company Snapshot Creditworthiness Payment History & Trends Public Filings History & Operations Banking & Finance

## History & Operations

| Topic | Description |
| --- | --- |
| History | Detailed information on the history of a company, including background information on the management team and key principals, and information on related companies. |
| Registration & Incorporation | Detailed registration and incorporation information, including the date and state of incorporation and the type of corporation formed. |
| Company Operations | Detailed information on a company's operations, including the identity of the parent company, the geographic scope of the business, and the key holdings. |
| Industry Classification | Details on the specific industry within which a company is classified. |

### History

**Officer(s):**
ANTHONY THOMAS, PRESIDENT

WENDY THOMAS, SECRETARY

**Director(s):**
THE OFFICER(S)

Corporate File #01686356.

Business started Jun 1989 by Anthony Thomas as sole proprietorship. Relocated Jul 1997 from San Jose, CA. 100% of capital stock is owned by Anthony Thomas.

ANTHONY THOMAS born 1963. 1989-present active here. 1985-89 employed by Joseph Albaness Construction, Santa Clara, CA. 1984-85 employed by Cal Drywall, San Jose, CA.

WENDY THOMAS born 1964. 1994-present active here.

Business address has changed from 538 Aldo Ave, Santa Clara CA, 95054 to 538 Aldo Ave, Santa Clara, CA, 95054.

### Registration & Incorporation

| | |
| --- | --- |
| **Registered Name:** | T & d construction, Inc. |
| **Business Type:** | Corporation |
| **Corporation Type:** | Profit |
| **Date Incorporated:** | May 10, 1991 |
| **State of Incorporation:** | California |
| **Status:** | Active |
| **Filing Date:** | May 10, 1991 |
| **Registration ID:** | C1686356 |
| **Where filed:** | SECRETARY OF STATE/CORPORATIONS DIVISION, SACRAMENTO, CA |
| **Registered Agent:** | ANTHONY G. THOMAS, 1107 NORMANDY DRIVE, CAMPBELL, CA, 950080000 |
| **Principals:** | ANTHONY G. THOMAS, PRESIDENT, 1107 NORMANDY DRIVE, CAMPBELL, CA, 950080000 |

Corporate and business registrations provided by management or other source.

### Company Operations

**Description:** Operates as a demolition and boring contractor (100%).

Contracts are obtained through bidding 50% and negotiation 50%. Contracts call for fixed fee 50% and cost plus 50%.

Contractors License Number: 622917.

Terms vary and include progress payments and cash upon completion. Sells to contractors and commercial concerns. Territory : 100 mile radius.

**Employees:** 6 which includes officer(s).

**Facilities:** Rents premises in a one story concrete block building.

**Location:** Industrial section on well traveled street.

### Industry Classification

| SIC | | NAICS | |
| --- | --- | --- | --- |
| 17959902 | Demolition, buildings and other structures | 238910 | Site Preparation Contractors |
| 17990901 | Boring for building construction | 238990 | All Other Specialty Trade Contractors |

Based on information in our file, D&B has assigned this company an extended 8-digit SIC. D&B's use of 8-digit SICs enables us to be more specific to a company's operations than if we use the standard 4-digit code.
The 4-digit SIC numbers link to the description on the Occupational Safety & Health Administration (OSHA) Web site. Links open in a new browser window.

Company Snapshot Creditworthiness Payment History & Trends Public Filings History & Operations Banking & Finance

# Banking & Finance

## Key Business Ratios

**Statement date:** Apr 30 2000

| | Industry Norms based on 18 establishments | | |
|---|---|---|---|
| | **This Business** | **Industry Median** | **Industry Quartile** |
| **Profitability** | | | |
| Return on Sales | UN | 1.6 | UN |
| Return on Net Worth | UN | 9.6 | UN |
| **Short-Trem Solvency** | | | |
| Current Ratio | 13.7 | 1.7 | 1 |
| Quick Ratio | UN | 1.3 | UN |
| **Efficiency** | | | |
| Assets Sales | UN | 44.7 | UN |
| Sales / Net Working Capital | 5.6 | 9.1 | 3 |
| **Utilization** | | | |
| Total Liabilities / Net Worth | UN | 124.0 | UN |

UN = Unavailable

## Finance

**04/30/2007**

**Three-year statement comparative:**

| | Fiscal Apr 30 1998 | Fiscal Apr 30 1999 | Fiscal Apr 30 2000 |
|---|---|---|---|
| Current Assets | 214,180 | 190,504 | 259,813 |
| Current Liabs | 41,612 | 31,136 | 18,958 |
| Current Ratio | 5.15 | 6.12 | 13.7 |
| Working Capital | 172,568 | 159,368 | 240,855 |
| Other Assets | 279,667 | 332,685 | 351,192 |
| Net Worth | 241,688 | 269,532 | 336,436 |
| Sales | 856,406 | 876,922 | 1,339,117 |
| Long Term Liab | 210,547 | 222,501 | 253,812 |
| Net Profit (Loss) | 87,820 | 26,193 | 72,759 |

### Balance Sheet Explanations

. —— STATEMENT ITEM EXPLANATIONS —— .
The complete balance sheet was reviewed in its entirety and the above highlights were extracted for publication.
It is noted there are no intangibles.
The statement includes no deferred credits.

**Contingencies**
None.
Non-current assets consist of fixed assets.
Long term liabilities consist of long term debt.

**Current assets**
Consist of cash and accounts receivable..

**Current liabilities**
Consist of accounts payable, notes payable and taxes..

**Liquidity**
Liquid assets provide full coverage of current liabilities.

The name and address of this business have been confirmed by D&B using available sources.

Company Snapshot Creditworthiness Payment History & Trends Public Filings History & Operations Banking & Finance

**Customer Service**

- Email us with your questions at sbsSupport@dnb.com
- If you'd like to speak to one of our member support technicians directly, call toll-free 1-800-333-0505, Monday through Friday, 7:00AM to 7:00 PM CST
- If this is a report on your own company use eUpdate, our easy online tool, to inform D&B of any changes to your business information.

- Print this report
- **To save this report to your PC:** Select File and then Save As from the browser menu bar. Click on the Save In: drop-down menu and select a location for your file. Enter a file name and save the report as a .html or .txt file.

---

Copyright 2007 Dun & Bradstreet - Provided under contract for the exclusive use of subscriber WENDI THOMAS, T & D CONSTRUCTION INC