RECEIVED
AND FILED

2019 MAR 14 PM 3:49

U.S. BANKRUPTCY COURT
MARY A. SCHOTT, CLERK

Anthony G. Thomas
7725 Peavine Peak Court
Reno, NV 89523
Tel: (408) 640-2795
E-mail: atemerald2@gmail.com

Debtor In Propria Persona

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA - RENO**

| | |
|---|---|
| IN RE:<br><br>ANTHONY THOMAS and<br><br>WENDI THOMAS<br><br>AT EMERALD, LLC<br><br>Debtors. | ) Case No. BK-N-14-50333-BTB<br>) Case No. BK-N-14-50331-BTB<br>) (Jointly Administered)<br>)<br>) CHAPTER 7<br>)<br>) OPPOSITION TO SALE OF THOMAS EMERALD<br>)<br>) Date: March 22nd 2018<br>) Time: 3:00 pm<br>) Dept. 2<br>) Judge: Hon. Bruce T. Beesley |

Debtor Anthony Thomas contends that he should be able to have the sale order overturned pursuant to the catch-all provision of Federal Rule of Civil Procedure Rule 60(b)(6) because he did not receive notice of the sale of the Thomas Emerald pursuant to the provisions of the law, rendering the sale Void on the face of the record.

Section 363(b)(1) of the Bankruptcy Code provides that:

> "The trustee, **after notice** and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate ...."
>
> 11 U.S.C. § 363(b)(1)(emphasis added).

Fed. R. Bankr. P. 2002(a)(2) provides:

> Except as provided in subdivisions (h), (I), (l), (p), and (q) of this rule, the clerk, or some other person as the court may direct, shall give the debtor, the trustee, all creditors and indenture trustees at least 21 days' notice by mail of... a proposed use, sale, or lease of property of the estate other than in the ordinary course of business, unless the court for cause shown shortens the time or directs another method of giving notice. .

Id.

## A SALE WITHOUT REQUISITE NOTICE IS VOID

The United States Court of Appeals for the 2nd Circuit held:

"[W]here the transaction is outside the ordinary course of the debtor's business, the debtor may not 'use, sell, or lease' estate property until creditors and other interested parties are given notice of the proposed transaction and the opportunity for a hearing if they object. 11 U.S.C. § 363(b)(1)."
Medical Malpractice Ins. Assoc. v. Hirsch (in re Lavigne), 114 F.3d 379, 384 (2nd Cir. 1997).

"Because [the debtor] gave no notice of the proposed [transaction] to his creditors, the transaction is null and void if it was beyond the ordinary course of business."

Id.

"Since no good cause has been shown why notice was unnecessary, the failure of notice will serve to vitiate any sale."

Mullins v. First Nat'l Exchange Bank of Va., 275 F. Supp. 712, 723 (D. Va. 1967).

The Arizona Bankruptcy Court discussed the necessity of compliance with Section 363 (b) as follows:

"Section 363 states that a trustee (or debtor in possession) may only "use, sell, or lease" property outside the ordinary course of business "after notice and a hearing." 11 U.S.C. § 363(b)(1). Neither party disputes that Koneta's post-petition agreement with Mac, to exercise a modified option contract, involved the use of estate property outside the ordinary course of business and therefore required court approval after notice and a hearing. 240 North Brand Partners, Ltd. v. Colony GFP Partners, L.P. (In re 240 North Brand Partners, Ltd.), 200 B.R. 653, 659 (9th Cir. BAP 1996); cf. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) (due process principles require "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections").

Because the requirements of § 363(b) protect the creditors' interest in the estate's assets, "[t]he usual effect of a sale or lease of property of the estate, conducted outside of the ordinary course of business but without adherence to the notice and hearing requirements of § 363(b)(1), is that any sale held is rendered null and void." In re Weisser Eyecare, Inc., 245 B.R. 844, 850 (Bkrtcy. 544*544 N.D.Ill.2000); 240 North Brand Partners, 200 B.R. at 659; United States v. Goodstein, 883 F.2d 1362, 1367 (7th Cir.1989).

Court approval not being obtained, the March 24, 2006 agreement is declared to be null and void and of no legal force and effect.

"Because the requirements of § 363(b) protect the creditors' interest in the estate's assets, '[t]he usual effect of a sale or lease of property of the estate, conducted

outside of the ordinary course of business but without adherence to the notice and hearing requirements of § 363(b)(1), is that any sale held is rendered null and void.' "

In re Koneta, 357 B.R. 540, 544 (Bankr. D. Arizona 2006)(quoting In re Weisser Eyecare, Inc., 245 B.R. 844, 850 (Bankr. N.D. Ill. 2000)).

"The usual effect of a sale or lease of property of the estate, conducted outside of the ordinary course of business but without adherence to the notice and hearing requirements of § 363(b)(1), is that any sale held is rendered null and void."

In re Weisser Eyecare, Inc., 245 B.R. 844, 850 (Bankr. N.D. Ill. 2000).

A 1996 case from the 9th Circuit In re: 240 North Brand Partners 200 B.R. 653 explained:

"Section 363 states that a trustee (or debtor in possession) may only "use, sell, or lease" property outside the ordinary course of business after notice and a hearing. 11 U.S.C. § 363(b)(1) "

and then continued:

"The requirements of section 363(b) protect the creditors' interest in the assets of the estate." U.S. v. Goodstein, 883 F.2d 1362, 1367 (7th Cir.1989), cert. denied, 494 U.S. 1007, (1990) (quoting In re First Int'l Services Corp., 25 B.R. 66, 70 (Bankr.D.Conn.1982)). As a result, debtors who wish to utilize § 363(b) to dispose of property of the estate must demonstrate that such disposition has a valid business justification.

In re Lionel Corp., 722 F.2d 1063, 1070 (2d Cir.1983).

In addition to proving that the proposed sale has a valid business justification, the debtor must also show that the sale is proposed in good faith. In re Wilde Horse Enterprises, Inc., 136 B.R. 830, 841 (Bankr. C.D.Cal.1991). "`Good faith' encompasses fair value, and further speaks to the integrity of the transaction. Typical `bad faith' or misconduct, would include collusion between the seller and buyer, or any attempt to take unfair advantage of other potential purchasers."

Id. at 842

Another case discussed the specifics regarding notice required under both the Code and Rule 2002 as follows:

"Ample authority exists for the principle that sales within the scope of § 363(b)(1), of which no proper notice was provided, may be set aside. See, e.g., M.R.R. Traders, Inc. v. Cave Atlantique, Inc., 788 F.2d 816 , 818 (1st Cir.1986); In re First Baptist Church, Inc., 564 F.2d 677 , 679 (5th Cir. 1977); and In re Stanley Engineering Corp., 164 F.2d 316 , 318 (3d Cir.1947), cert. denied, 332 U.S. 847 , 68 S.Ct. 351, 92 L.Ed. 417 (1948); In re International Services, Inc., 25 B.R. 66 , 70-71 (Bankr.D.Conn. 1982); and In re Foster, 19 B.R. 28 , 29 (Bankr.E.D.Pa.1982).

Reference may also made to Bankruptcy Rule (hereinafter referred to as "B.R.") 2002

to ascertain whether notice as was appropriate in the particular circumstances was given, as B.R. 2002 governs, inter alia, the amount of notice, the content of the notice, and the proper recipient or addressees of notice of a proposed use, sale, or lease of property other than in the ordinary course of business. Particularly pertinent is subsection (g) of B.R. 2002, which provides as follows:

(g)    Addresses of notices. All notices required to be mailed under this rule to a creditor, equity holder, or indenture trustee shall be addressed as he or his authorized agent may direct in a request filed with the court, otherwise, to the address shown in the list of creditors or the schedule whichever is filed later, but if a different address is stated in a proof claim duly filed, that address shall be used (emphasis added).

[ 73 B.R. 620 ]

It is undisputed that Notice to Shrager was sent care of the Dilworth firm. However, Entry No. 27 of the Claims Docket on file in the Clerk's Office reflects that on January 9, 1986, Shrager filed a proof of claim in the amount of $28,710.00 in which he stated the following address:
Louis Shrager & Sons    P.O. Box 689    Bala-Cynwyd, PA 19004

Since the original Motion for Leave to Sell the Property was not filed until January 28, 1986, by the Debtor, it is evident to us that the notice required under § 363(b)(1) and B.R. 2002 should have been sent to the address stated in his proof of claim. We are further persuaded that the Trustee's argument that it is the creditor's responsibility to keep the Court advised of its current address is well-met by considering the address on the proof of claim filed on January 9, 1986.

Furthermore, as Shrager contends, elementary principles of due process of law require that it receive notice before it may be deprived of its interest in the Debtor's property. Shrager cites to a dated, but nevertheless apparently viable case, for the principle that a bankruptcy sale affecting its interests without notice would be violative of due process. Ray v. Norseworthy, 90 U.S. (23 Wall.) 128, 23 L.Ed. 116 (1874). See also Mullane v. Central Hanover Trust Co., 339 U.S. 306 , 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950); and In re Clark, 69 B R. 885 , 892 (Bankr.E.D.Pa.1987).

In re: Fernwood Markets (1987) 73 B.R. 616

**SALE MUST BE CONDUCTED IN GOOD FAITH**

The same 9th Circuit case discussed the Attorney's Fiduciary Duties in a Chapter 11 Debtor in Possession case, as this case was originally filed.  The Trustee now steps in the shoes of the Chapter 11, now 7 Trustee Jeri Coppa-Knudson, so her attorney Mr. Hartman is bound by those same FIDUCIARY DUTIES  as follows:

**FIDUCIARY DUTIES OF CHAPTER 11 DEBTOR'S ATTORNEY**

In a Chapter 11 proceeding, the attorney for debtor in possession, as an officer of the court charged to perform duties in the administration of the case, has a high fiduciary duty to the estate represented.

Matter of Evangeline Refining Co., 890 F.2d 1312, 1323 (5th Cir.1989) ; Matter of

Consol. Bancshares, 785 F.2d 1249, 1255 (5th Cir.1986) ; In re Doors and More, Inc., 126 B.R. 43, 45 (Bankr. E.D.Mich.1991), citing In re Bohack Corp., 607 F.2d 258, 264 (2nd Cir.1979) ; In re Consupak, Inc., 87 B.R. 529, 548-49 (Bankr.N.D.Ill.1988) ; In re Grabill Corp., 113 B.R. 966 (Bankr.N.D.Ill.1990) ; In re Coastal Equities, Inc., 39 B.R. 304, 309 (Bankr.S.D.Cal.1984) . Moreover, counsel for a corporate Chapter 11 debtor in possession owes a fiduciary duty to the corporate entity estate — the client—and represents its interests, not those of the entity's principals. In re Grabill Corp., supra, 970 ; citing In re Overmeyer Telecasting Co., 23 B.R. 823, 931 (Bankr.N.D.Ohio 1982), aff'd, 750 F.2d 31 (6th Cir.1984); and others omitted; In re WPMK, Inc. 42 B.R. 157 (Bankr.Hawaii 1984) . And certainly, the attorney is obligated to act not in his or her own best interest, but in the best interest of all the creditors. In re Doors and More, Inc., at 45 , citing Commodity Futures Trading Comm'n. v. Weintraub, 471 U.S. 343, 105 S.Ct. 1986, 1194, 85 L.Ed.2d 372 (1985), and others omitted.

An attorney's "client" is the person or entity on whose behalf the lawyer acts. In certain proceedings an attorney may have more than one client, and where this is so, they owe duties of loyalty to all the interests represented. The duty of loyalty includes a duty of candor — candor to all the interests represented. "A lawyer like a trustee is bound to higher standards than the morals of the marketplace." MGIC Indemnity Corporation v. Weisman, 803 F.2d 500, 504 (9th Cir.1986)  "Professional ethics requires of a lawyer a decent sense of responsibility to all those he [or she] serves." Id, at 504.

Because the attorney for debtor in possession is a fiduciary of the estate and an officer of the Court, the duty to advise the client goes beyond responding the client's requests for advice. It requires an active concern for the interests of the estate, and its beneficiaries, the unsecured creditors. Consequently, the attorney may not simply close his or her eyes to matters having a legal and practical consequence for the estate — especially where the consequences may have an adverse effect. The attorney has the duty to remind the debtor in possession, and its principals, of its duties under the Code, and to assist the debtor in fulfilling those duties. See In re Consupak, Inc., 87 B.R. 529, 548-551 (Bankr.N.D.Ill.1988) ; In re Sowers, 97 B.R. 480, 488 (Bankr.N.D.Ind.1989) . What's more, counsel has a duty to assist and advise debtor respecting the fulfilling of the requirements of the Office of the United States Trustee; unwillingness to do so disqualifies the attorney's representation of debtor. In re Plaza Hotel Corp., 111 B.R. 882, 891 (Bankr.E.D.Cal.1990) .

An attorney retained by the trustee, or debtor in possession, who assists with the collection of the assets of the estate, must abide by the highest professional standards. "Not honesty alone, but the punctilio of an honor the most sensitive, is the standard of behavior." In re Thompson, 54 B.R. 311, 315 (Bankr. N.D.Ohio 1985), quoting Judge Cardozo in Meinhard v. Salmon, 249 N.Y. 458, 464, 164 N.E. 545, 546 (1928)

An attorney's duty goes beyond not merely putting false evidence before the court; the duty is greater — the lawyer has a duty to not make misrepresentations to the court. In re Disciplinary Action Curl, 803 F.2d 1004, 1005-06 (9th Cir.1986) . For disciplinary purposes in the Ninth Circuit, where an attorney has misrepresented the record on appeal to the Court, no finding of intentionally wrongful conduct is required to impose a sanction; a finding of a lack of diligence by the attorney is sufficient. 841 *841 DCD Programs, Ltd. v. Leighton, 846 F.2d 526 (9th Cir.1988)

**ATTORNEY'S DUTY OF GOOD FAITH FILINGS**

All attorneys before the federal court, including those representing the estate of a debtor in possession, have duties under F.R.C.P. 11 (incorporated into the Bankruptcy Code as Federal Rules of Bankruptcy Procedure Rule 9011). The Rule provides, among other things, that the signature of an attorney on a petition, pleading or motion constitutes a certificate that to the best of the attorney knowledge, information or belief "formed after reasonable inquiry", the content of the document is "well grounded in fact and is warranted by existing law. . . ." The "well grounded in fact" requirement demands, at least, that the attorney not accept the client's (or the client's principal's) version of certain facts "on faith", but at a minimum the attorney has a duty to probe the client carefully for the facts before they are included in any document signed by the attorney or in any other way presented to the Court. See Fleming Sales Co. v. Bailey, 611 F.S. 507, 519 (D.C.Ill.1985) .

**CHAPTER 11 DEBTOR'S ATTORNEY'S DUTY RE: PROPOSED SALE OF ASSETS**

Under § 363(b), the debtor in possession may sell property of the estate, other than in the ordinary course of business, only after notice and hearing. In any sale of estate assets, the ultimate purpose is to obtain the highest price for the property sold. Matter of Chung King, Inc., 753 F.2d 547 (7th Cir.1985) ; In re Alpha Industries, Inc., 84 B.R. 703, 705 (Bankr. Mont.1988) ; 2 Collier on Bankruptcy, 15th ed. ¶ 363.03[1].

Under what circumstances should the debtor in possession be allowed to sale of all or virtually all of the estates property prior to the confirmation of debtor's plan? This was the fundamental question raised and discussed in In re Lionel Corporation, 722 F.2d 1063 (2nd Cir.1983) . Lionel, stands for the notion, at least, that § 363(b) does not grant the bankruptcy judge carte blanche to approve any sale proposed by the debtor, but requires that "reasons be given for whatever determination is made", Id. at 1069, i.e. "[T]here must be some articulated business justification before the bankruptcy judge may order such disposition." Id. at 1070. The "notice and hearing" safeguard of § 363(b) would be meaningless if the court were not required to articulate some reasons why the sale is in the best interest of the estate.

Of course, the court and the creditors can only make an "articulated business" judgment regarding the prudence of the sale where there has been a full disclosure of the details of the proposed sale by its proponent. "The key to the reorganization Chapter . . . is disclosure. . . " Id. at 1070. The essential purpose served by disclosure is to ensure that parties in interest are not left entirely at the mercy of the debtor and others having special influence over debtor.

A sale of substantially all of debtor's property outside the ordinary course of business, and without a Chapter 11 disclosure statement and plan, must be closely scrutinized. In re Channel One Communications, Inc. 117 B.R. 493 (Bankr.E.D.Mo.1990) . In proposing any such sale, the debtor has the burden of demonstrating that it is in the best interests of the estate. Lionel, at 1071; Channel One, at 496.

In approving any sale outside the ordinary course of business, the court must not only articulate a sufficient business reason for the sale, it must further find it is in the best interest of the estate, i.e. it is fair and reasonable, that it has been given adequate marketing, that it has been negotiated and proposed in good faith, that the purchaser is proceeding in good faith, and that it is an "arms-length" transaction. Matter of Phoenix Steel Corp., 82 B.R. 334, 335-36 (Bankr.Del.1987) ; In re Alpha Industries, Inc., 84 B.R. 703, 705-06 (Bankr.Mont.1988) ; In re Alves, 52 B.R. 353 (Bankr.R.I.1985) ; In re Delaware & Hudson Railway Co., 124 B.R. 169, 176-77 (D.Del.1991) ; In re Planned Systems, Inc. 82 B.R. 919, 923 (Bankr.S.D.Ohio 1988)

It is the proponents duty to produce evidence probative of these issues.

"Good faith" encompasses fair value, and further speaks to the integrity of the transaction. Typical "bad faith" or misconduct, would include collusion between the seller and buyer, or any attempt to take unfair advantage of other potential purchasers. Alpha Industries, at 706. And, with respect to making such determinations, the court and creditors must be provided with sufficient information to allow them to take a position on the proposed sale.

In re Structurlite Plastics Corp., 91 B.R. 813 (Bankr.S.D.Ohio 1988) .

Finally, the court must determine that the debtor in possession has given all interested parties adequate and reasonable notice regarding the sale.

In re Delaware & Hudson Railway Co., 124 B.R. at 176 .

In re: 240 North Brand Partners

Failure to provide the notice required by that rule is grounds for setting aside a bankruptcy sale in appropriate circumstances.
[A] sale without a required Rule [2002(a)(2)] notice may be set aside."

McTigue v. American Sav. & Loan Assoc. Of Florida 564 F.2d 677, 679 (5th Cir. 1977) .

According to the Bankruptcy Court for the Western District of Arkansas:

"The most common remedy, where adequate notice of sale has not been given, is to set the sale aside or to treat it as voidable, typically at the option of the person who failed to receive notice."

Walker v. Lee (In re Rounds), 229 B.R. 758, 765 (Bankr. W.D. Ark. 1999).

This view is corroborated by the Bankruptcy Court for the Eastern District of Pennsylvania that stated:

"Ample authority exists for the principle that sales within the scope of § 363(b)(1), of which no proper notice was provided, may be set aside."

Esposito v. Title Ins. Co of Pa. (In re Fernwood Markets), 73 B.R. 616, 619 (Bankr. E.D. Pa. 1987).

"The lack of notice [to creditors] prior to the private sale coupled with an inadequate purchase price justifies setting aside the Agreed Order and reopening the bidding process."

In re Donohue, 410 B.R. 311, 316 (Bankr. D. Kan. 2009).

"Failure to send notice to the most recent address of record violates due process and results in a sale voidable at the option of the creditor."

In re F.A. Potts & Co., Inc., 86 B.R. 853, 859 (Bankr. E.D. Pa. 1988).

A case that came before the Bankruptcy Court for the Northern District of New York noting the failure to comply with the procedure required by Rule 6004 that requires notice pursuant to

Rule 2002(a)(2) stated:

"The sale, having failed to comply with the procedure required by Rule 6004, Federal Rules of Bankruptcy Procedure [requiring notice pursuant to Rule 2002(a)(2)], is hereby set aside, effective when the sale proceeds are returned to the buyer."

In re Langlands, 385 B.R. 32, 35 (Bankr. N.D.N.Y. 2008).

"[Debtor-in-possession's] failure to comply with 11 U.S.C. § 363(b) forms an independent basis for voiding the entire Agreement [to sell all of the stock of the debtor corporation]."

Command Performance Operators, Inc. v. First Intern. Services Corp. (In re First Intern. Services Corp.), 25 B.R.66, 71 (Bankr. Conn. 1982).

See also Cedar Tide Corp. v. Chandler's Cove Inn, Ltd. (In re Cedar Tide Corp.), 859 F.2d 1127 (2nd Cir. 1988)(bankruptcy court did not err in nullifying debtor-in-possession's post-petition transfer of substantially all of its assets without notice and a hearing as required by section 363(b)(1)); M.R.R. Traders, Inc. v. Cave Atlantique, Inc., 788 F.2d 816 (1st Cir. 1986)(bankruptcy sale properly set aside where creditor's attorney was not provided notice of sale pursuant to Fed. R. Bankr. P. 2002(a)(2) and creditor offered to pay more for item sold than original purchaser); Wolverton v. Shell Oil Co., 442 F.2d 666 (9th Cir. 1971)(sale to bankrupt properly set aside where creditors were not provided requisite notice of the sale); Mason v. Ashback, 383 F.2d 779 (10th Cir. 1967)(where creditors were not provided notice of trustee's sale, sale should be set aside); Hunt, Ortmann, Blasco, Palffy & Rossell, Inc. v. Jim L. Shetakis Distributing Co. (In re Jim L. Shetakis Distributing Co.), 415 B.R. 791 (D. Nev. 2009)(sale outside ordinary course without notice to creditor may be set aside pursuant to 11 U.S.C. § 549 as unauthorized post-petition transfer of estate property).

I declare under penalty of perjury of the laws of the State of California, the State of Nevada and the United States that the foregoing is true and correct.

Dated: 3-8-2019

Anthony G. Thomas
Debtor/In Propria Persona

Anthony G. Thomas
7725 Peavine Peak Court
Reno, NV 89523
Tel: (408) 640-2795
E-mail: atemerald2@gmail.com

Debtor In Propria Persona

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA - RENO**

| | |
|---|---|
| IN RE:<br><br>ANTHONY THOMAS and<br><br>WENDI THOMAS<br><br>AT EMERALD, LLC<br><br>Debtors. | ) Case No. BK-N-14-50333-BTB<br>) Case No. BK-N-14-50331-BTB<br>) (Jointly Administered)<br>)<br>) CHAPTER 7<br>)<br>) DECLARATION OF PAUL. S. MULA IN<br>) SUPPORT OF OPPOSITION TO PAY<br>) AUCTIONEER STREMMEL AUCTIONEERS<br>) FOR FRAUD UPON THE COURT<br>)<br>)<br>) Date: March 22nd 2018<br>) Time: 3:00 pm<br>) Dept. 2<br>) Judge: Hon. Bruce T. Beesley<br>) |

I Paul S. Mula Jr. declare:

1. I am submitting this declaration in support of Anthony Thomas's Opposition to payment to Stremmel Auctions based upon fraud upon the Court. I am willing to testify to the below facts if necessary.

2. On October 16th 2018, I telephoned and spoke to Mr. Steve Stremmel of Stremmel Auctions in Reno, NV, to inquire about the sale of the Thomas Emerald. I was told by Mr. Steve Stremmel:

- "You can wipe your ass with the appraisals"
- "The appraisals are cartoons"
- "This is a huge huge huge opportunity I mean like geometric with zeroes on the end. There is so much hair on it. Somebody who knows what they're doing which is not us."
- "I don't care what it sells for"

8. The second attachment to the E-mail sent by steve@stremmelauctions.com to myself on 10-23-2018 attached hereto as Exhibit 1-2 is entitled "Emerald Report" by Ringsrud Gemology dated 5-24-2005. The header information indicates that this document was filed as Docket Entry (DE 270-2) in the U.S. Bankruptcy Court - Reno, NV in on 6-10-2015 as pages 2 of 3 and 3 of 3.

9. Attached as Exhibit 2, and incorporated herein by reference is a true and correct copy of an E-mail sent by sstremmel@aol.com on 10-23-2018 at 3:25 pm consisting of an e-mail from sstremmel@me.com to Hudson Stremmel (h_stremmel@hotmail.com) on 8-22-2017 and consists of links on the internet of: 1. a link to the National Geographic Channel video documentary entitled "The Bahia Emerald Story - Explorer Video". 2. A link to an article in the Los Angeles Times dated 6-25-2015 entitled "Federal Judge halts release of massive Brazilian emerald". 3. A forwarded e-mail from Steve Stremmel to Hudson Stremmel dated 8-21-2017 consisting of forwarded e-mail from Peter Stremmel to Steve Stremmel re: Nan Summerfield. The E-mail references the Doyle auction house and was sent by Peter Stremmel of Stremmel Gallery located in downtown Reno, who identifies himself as the brother of Steve Stremmel.

10. Attached as a PDF attachment to the above-referenced chain of e-mails identified in Exhibit 2 and attached hereto as Exhibit 2-1 is a true and correct copy of the Bankruptcy Court's Order to Employ Auctioneer, a 2 page document filed on 10-18-2017 as Docket Entry (DE-348).

11. Attached to this Declaration as Exhibit 3 and incorporated herein by reference is a 2 page document consisting of a true and correct copy of an E-mail from sstremmel@aol.com (Steve Stremmel) dated 10-23-2018 sent to me at 3:22 p.m. consisting of a forwarded e-mail from Steve Stremmel to the Trustee Jeri Coppa-Knudson, with 17 attachments of Emerald photographs taken by AG (asagilmore.com).

12. Attached as a PDF attachment to the e-mail referenced in paragraph 11 above, and attached hereto as Exhibit 3-1 is a true and correct copy of a $200 invoice from AG to Stremmel auctions.

13. Attached hereto as Exhibit 4 is a true and correct copy of an e-mail that was sent

18. I also reviewed the 50 pages of documents that were produced by Steve Stremmel in response to a subpoena for production of documents, and his documents support my declaration fully in that he only submitted $200 in receipts, and that he didn't notify anybody about the date of the auction.

19. On 10-26-2018, I had another telephone call with Mr. Steve Stremmel where I informed Mr. Stremmel that I believed that Mr. Thomas paid $20K for the Emerald. Mr. Stremmel was very pleased and stated that

"I'm trying to build a case when you buy it for $830." "I can say that this slob only paid $20,000 for it". He told me that "I love it when you say this". Mr. Stremmel told me: "I want to see you steal this thing". He told me: "Your bid is going to be next to nothing which is going to be more than fair" and that "we've got a 60 lb door stop for you".

20. On 10-29-2018 I had a further telephone call with Mr. Stremmel where he stated:

'I want to be honest with you Paul, You are the only one I talked to about this". He told me that the Judge always sides with the Trustee and that "it's a really cool stone".

21. I believe that the conduct of Mr. Steve Stremmel in disparaging the emerald so that it could then be sold at a low price constitutes collusion and fraud in the auction process and the declaration of Hudson Stremmel constitutes fraud upon the Court that I consider to be abhorrent and despicable behavior that should disqualify Stremmel Auctions from profiting off of his 40 year relationship with the U.S. Bankruptcy Trustee.

I declare under penalty of perjury of the laws of the State of California, the State of Nevada and the United States that the foregoing is true and correct.

Dated: February 25th 2019.

Paul S. Mula
(949) 836-8229
pmula@techmasters.tech

From: **Paul Mula** <pmula@techmasters.tech>
Date: Tue, Oct 23, 2018 at 11:47 AM
Subject: Emerald specimen
To: steve@stremmelauctions.com <steve@stremmelauctions.com>

Steve,

I was a pleasure to speak with you, I look forward to inspecting the specimen and making a reasonable offer.

Please send me a copy of the appraisals, I will review them and get back to you ASAP.

If you need to reach me, my cell phone number is 949-836-8229

Best,

Paul

Exhibit 1

From: **Steve Stremmel** <steve@stremmelauctions.com>
Date: Tue, Oct 23, 2018 at 3:19 PM
Subject: Re: Emerald specimen
To: Paul Mula <pmula@techmasters.tech>

> On Oct 23, 2018, at 11:47 AM, Paul Mula <pmula@techmasters.tech> wrote:
>
> Steve,
>
> I was a pleasure to speak with you, I look forward to inspecting the specimen and making a reasonable offer.
>
> Please send me a copy of the appraisals, I will review them and get back to you ASAP.
>
> If you need to reach me, my cell phone number is 949-836-8229
>
> Best,
>
> Paul

---------- Forwarded message ----------
From: Steve Stremmel <sstremmel@aol.com>
To: info@leewasson.com
Cc:
Bcc:
Date: Mon, 30 Oct 2017 14:14:33 -0700
Subject: Bankruptcy emerald

>

Thanks for your time
Steve Stremmel
Stremmel Auctions
775-787-7000

---

**3 attachments**

**specimen #1.pdf**
1282K

**specimen #2 (1).pdf**
804K

**Bankruptcy emerald.eml**
2855K

Exhibit 1

CONFIDENTIAL

**Prepared For:** Joe Wendt
5441 Kietze Lane
2nd Floor
Reno, NV 89511

**Date:** 11/6/2014

**Emerald Crystal in Matrix**

One mineral specimen consisting of one doubly terminated, re-healed beryl/emerald crystal embedded in matrix. The matrix is typical of that from Bahia, Brazil. The morphology and association is also typical of that from Bahia, Brazil. The specimen measures approximately 32 CM (L) x 6.6 CM (W) x 6 CM (D). There is a broken section of beryl/emerald crystal located near the end of the large crystal and embedded in matrix of similar quality measuring approximately 47.06 MM (L) x 56.58 MM (W). The termination of the crystals are not fully visible due to the positioning within the matrix.

In addition to the two large crystals described above, there are multiple smaller white beryl crystals also embedded in the matrix. This combination of crystals is typical of Bahia, Brazil. (See attached excerpt from *Emerald and Other Beryls by John Sinkankas).*

**Emerald Crystal in Matrix Attributes**

| | |
|---|---|
| Main Mineral Species/Variety: | Beryl/Emerald Embedded in Matrix |
| Secondary Minerals: | Beryl/Colorless |

Shape:

- Crystal Habit — Hexagonal
- Finish — Good
- Matrix — Biotite Schist
- Damage — None
- Termination — Typical flat with sharp edges
- Shape Type — Elongated with good crystal faces

Source:

- Mine — Unknown
- Country — Brazil
- State — Bahia

Size:

- Length — 32 CM (approx.)
- Width — 6.6 CM (approx.)
- Depth — 6.6 CM (approx.)

CONFIDENTIAL

Exhibit 1-1

CONFIDENTIAL

Color:

- Hue Bluish Green (no apparent dye)
- Tone Dark (7)
- Saturation Slightly Grayish (2)

Clarity:

- Transparency Semi-translucent to opaque
- Clarity Declassee'

CONFIDENTIAL

# Photographs

2014/10/05 22:42

2014/10/05 22:39

CONFIDENTIAL

- 10 -

Exhibit 1-1

CONFIDENTIAL

CONFIDENTIAL

- 11 -

Exhibit 1-1



Ringsrud Gemology
408 741 9077 FAX 408 741 9082
Box 128, Saratoga, California USA

# Emerald Report

This report is based on the color nomenclature guidelines of the Colored Stone Grading System of the Gemological Institute of America (G.I.A.). Other technical guidelines followed are those of the AGTA (American Gem Trade Association).

This laboratory judges emeralds to current industry standards of quality. The detailed description below is a [illegible] description using current nomenclature. Any deviation from the quality standards of the colored gemstone industry will be disclosed in the "comments" section. Further information and disclosures are on the reverse of this page.

Emerald Mineral Specimen: Hexagonal emerald crystal with two of its faces polished to show color. The emerald is approximately 25.9 cm long. The color is a dark tone of a medium saturation, very slightly yellowish-Green and is semi-transparent. This color is considered to be typical of emeralds from Brazilian localities. The presence of three small zones of mica shist positively identify the emerald as being a natural Brazilian emerald. The color is unenhanced and native.

Measurements: The emerald is approximately 25.9 cm long. The base is approximately 12 x 7 cm in size. Near the base are two secondary emerald crystals approximately 6 x 9 x 2.5cm. The last 8 cm of the other end of the crystal tapers from approx. 12 down to 3 cm. Weight is estimated to be approx. 20,385 carats or 4077 grams.

Conclusion: This measurement places this emerald specimen as one of the largest in the world. The size, along with the classic rich Brazilian color, makes this specimen extremely rare with comparative valuation from $100 per carat and higher. It would serve as the central focus of any important mineral collection.

The items described above have been examined gemologically. The information recorded on this document represents our interpretation of results obtained from the use of gemological instruments as well as grading techniques based on the Color Grading System of the Gemological Institute of America. Weights and measurements are approximate. Document not valid without authorized signature.

Date: May 24 2005 Signature [signature]

Exhibit 1-2

## Legal Limitations

There are no limitations; the simple philosophy of direct communication and trust between client and purveyor has the immediate effect of negating the need for long legal limitations in small print. Ringsrud Gemology adheres to that philosophy and we stand behind our work.

## Emerald Information

Small microscopic fissures are common to emerald due to their crystal nature and current mining methods. Since this is normal for almost all emeralds, small fissures are considered insignificant unless they affect the clarity grade or unless they appear on the surface of more than 20% of the facets of the stone. 20% is 9 or more facets in most emerald cuts (which usually have 41 facets).

In the processing that takes place during cutting and polishing, emerald fissures that reach the surface (if any) are masked with a colorless oil to reduce the visibility of those fissures. This simple and low-tech process is accepted by the gem industry and is called clarity enhancement which may be slight, moderate or significant. Most emeralds currently available in the trade are 'slight' or 'moderate'.

The final customer of this stone should note that the above-mentioned enhancement affects clarity only. Emerald color is unenhanced and remains natural.

Every gemstone is unique - with its own series of internal and external characteristics. Fissures are counted and their location is taken into account. Cutting is judged and color concentrations are analyzed. The skilled grader takes into consideration the nature, location, and number of these characteristics to assign each stone its clarity grade and degree of enhancement. Color analysis is done by judging color observed through the crown of the stone under controlled lighting conditions.

## Connoisseurship Disclosure

This report is limited, as are all certificates and reports, to objective criteria only. It is only meant to validate the genuineness and quality of the gemstone tested. The allure, timelessness, uniqueness, wholeness, and fineness of a gemstone are out of place on a scientific report and can only be experienced in quiet moments of simple undistracted visual appreciation of the stone. The purpose of the conclusions on the other side of this report is to attest to the genuineness and soundness of the stone, thereby putting the intellect at rest. When viewing the stone with a quiet intellect, a condition is created which allows the mind, heart and senses to deeply enjoy the wholeness and allure of the piece. This is the true definition of connoisseurship. A gem report or certificate is only the first small step towards that; this disclosure seeks to define this limitation.

True connoisseurship of a gem involves not only the intellect but also the heart (or in modern language: not only the left but also the right brain hemispheres); not only the objective but also the subjective. With critical objectivity taken care of by the report, the wholeness of the mind is free to identify with the wholeness of the gem. The definition of allure and wholeness, rather than sought in a dictionary, can be effortlessly experienced by gazing into a fine gem.

Exhibit 1-2

From: **Steve Stremmel** <[redacted]>
Date: Tue, Oct 23, 2018 at 3:25 PM
Subject: Fwd: Nan Summerfield, SVP/Director, California Operations | Doyle Auction House
To: Paul Mula <pmula@techmasters.tech>

Begin forwarded message:

**From:** STEVE STREMMEL <sstremm[redacted]me.com>
**Subject: Re: Nan Summerfield, SVP/Director, California Operations | Doyle Auction House**
**Date:** August 22, 2017 at 1:41:28 AM PDT
**To:** hudson stremmel <h_stremmel[redacted]hotmail.com>

https://www.wired.com/2017/03/curse-bahia-emerald-giant-[redacted]-rock-wreaks-havoc-[redacted]/

On Aug 21, 2017, at 10:44 PM, hudson stremmel <h_stremmel[redacted]hotmail.com> **wrote:**

http://channel.nationalgeographic.com/explorer/videos/the-bahia-emerald-story/

The Bahia Emerald Story - Explorer Video - National Geographic Channel
channel.nationalgeographic.com

When a mine in Brazil uncovers one of the biggest emeralds in the **world,** the stone begins a mysterious ten year journey.

http://www.latimes.com/local/lanow/la-me-ln-brazilian-bahia-emerald-20150625-story.html

Federal judge halts release of massive Brazilian emerald ...
www.latimes.com

The more than six-year legal battle over the Bahia Emerald seemed to have reached a conclusion last month, when a Los A judge finally determined ...

**From:** STEVE STREMMEL <sstremmel[redacted]>
**Sent:** August 21, 2017 7:35:35 PM
**To:** hudson stremmel
**Subject:** Fwd: Nan Summerfield, SVP/Director, California Operations | Doyle Auction House

Begin forwarded message:

**From:** Peter Stremmel <[redacted]stremmelgallery.com>
**Subject: Nan Summerfield, SVP/Director, California Operations | Doyle Auction House**
**Date:** August 21, 2017 at 1:40:41 PM PDT
**To:** STEVE STREMMEL <sstremmel[redacted]>

Call Nan up and tell her you're my brother — we're good friends

https://doyle.com/[redacted]/nan-summerfield

Exhibit 2

Skip to main content

Sign In

<logo-header.png> FEATURED STORY

Browse

<15LA02-Lot3341-Tiffany-Moonstone-Necklace.jpeg>

## Titans of Tiffany

Nan Summerfield profiles three turn-of-the-century jewelers and the profound effect they had on American jewelry design.

Read More

<Tony-Duquette-Jan-2017.jpeg>

## Tony Duquette: More is More

Nan Summerfield profiles the legendary American designer and the exquisite jewelry he created.

Read More

SPECIALIST

## Nan Summerfield

SVP/Director, California Operations | Jewelry

<nan-summerfield.jpeg>

310-276-6616
DoyleLA@Doyle.com

Request an Appointment

Exhibit 2

Nan Summerfield joined Doyle New York as Director of the California office in Beverly Hills in 2014. Ms. Summerfield, a GIA Graduate Gemologist. auction business for thirty-eight years.

Nan began her career at the Gemological Institute of America in New York as a Staff Gemologist in the GIA Laboratory and later as an Instructor in spending thirteen years as a Vice President in the Jewelry Department at Sotheby's, first in New York, then in Los Angeles. Nan continued to devel auctions in Beverly Hills for eight years. For twenty years before joining Doyle, she owned Summerfield's, a successful firm in Beverly Hills that sp estate jewelry.

CURRENT & UPCOMING AUCTIONS

<17LA02-Taylor-Coral-Necklace.jpeg>

UPCOMING AUCTION

## Fine Jewelry - Beverly Hills

**Mon, Nov 13, 2017 at 10am PST | Beverly Hills / California**
Exhibition dates: Nov 11Nov 12

Add to Calendar

Sale Info | Sell in this Category

<logo-footer.png>

info@doyle.com
212-427-2730

175 East 87th Street
New York, NY 10128

<doyle-footerlogo-hayloft.png>

<doyle-footerlogo-bhhs.png>

Auctions
Past Auctions

Department Directory
Specialist Directory

Locations
Consignment Days

Museum & Institutional Services
Trusts & Estates

SELLING AT DOYLE

Request an Estimate

Why Sell at Doyle?
Obtaining an Auction Estimate
Selling Options
Results Statement

Payment

BUYING AT DOYLE

Register to Bid

Download a Bid Form
Before the Auction
Bidding Methods
Buyer's Premium
Bidding Increments
Payment Methods
Storage Fees
Shipping

Copyright .2017 William Doyle Galleries, Inc. | Website Terms of Use | Privacy Policy

STREMMEL GALLERY
1400 SOUTH VIRGINIA STREET
RENO, NEVADA 89502
T:775.786.0558 F:775.786.0311
WWW.STREMMELGALLERY.COM

From: **Steve Stremmel** <sstremmel@aol.com>
Date: Tue, Oct 23, 2018 at 3:27 PM
Subject: Fwd: Order to employ - At Emerald, Thomas
To: Paul Mula <pmula@techmasters.tech>

order on application to employ [1].pdf
329K

Exhibit 2-1

Honorable Bruce T. Beesley
United States Bankruptcy Judge

Entered on Docket
October 18, 2017

JERI COPPA-KNUDSON, Trustee
3495 LAKESIDE DRIVE, PMB #62
RENO, NV. 89509-4841
(775) 329-1528
renobktrustee@gmail.com

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

IN RE:

ANTHONY THOMAS and
WENDI THOMAS,

AT EMERALD, LLC

Debtors.

CASE NO. BK-N-14-50333-BTB

CASE NO. BK-N-14-50331-BTB
(Jointly Administered)

CHAPTER 7

**ORDER TO EMPLOY AUCTIONEER**

The court having considered the Trustee's Ex Parte Application to Employ Auctioneer (the "Application") and the Verified Statement of Steve Stremmel, of Stremmel Auctions, Inc., in support of Trustee's Ex Parte Application to Employ Auctioneer, (the "Verified Statement"), the court finds that Stremmel Auctions, Inc. does not hold or represent any interest adverse to the estate is a disinterested person within the meaning of 11 U.S.C. Section 101, and that the Office of the United States Trustee has reviewed and approved the application.

Good cause appearing.

**IT IS HEREBY ORDERED** that employment of Stremmel Auctions, Inc., as auctioneer for the estate is **APPROVED,**

**IT IS FURTHER ORDERED** that the auctioneer's commission shall be based on a graduated percentage of the total sale of assets, plus approved expenses, subject, however, to approval by this court after notice and hearing, of all compensation and reimbursement requested.

Submitted by:

/s/ Jeri Coppa-Knudson
Jeri Coppa-Knudson, Trustee

###

**From:** **Steve Stremmel** <[redacted]>
Date: Tue, Oct 23, 2018 at 3:22 PM
Subject: Fwd: Emerald
To: Paul Mula <pmula@techmasters.tech>

Begin forwarded message:

**From:** Steve Stremmel <[redacted]stremmel[redacted]aol.com>
**Subject: Fwd: Emerald**
**Date:** August 28, 2018 at 12:04:51 PM PDT
**To:** COPPA-KNUDSON JERI <[redacted]>

Emerald Photographs

- StremmelAuction-Emerald20180308-0001.jpg
- StremmelAuction-Emerald20180308-0002.jpg
- StremmelAuction-Emerald20180308-0003.jpg
- StremmelAuction-Emerald20180308-0004.jpg
- StremmelAuction-Emerald20180308-0005.jpg
- StremmelAuction-Emerald20180308-0006.jpg
- StremmelAuction-Emerald20180308-0007.jpg
- StremmelAuction-Emerald20180308-0008.jpg
- StremmelAuction-Emerald20180308-0009.jpg
- StremmelAuction-Emerald20180308-0010.jpg
- StremmelAuction-Emerald20180308-0011.jpg
- StremmelAuction-Emerald20180308-0012.jpg
- StremmelAuction-Emerald20180308-0013.jpg
- StremmelAuction-Emerald20180308-0014.jpg
- StremmelAuction-Emerald20180308-0015.jpg
- StremmelAuction-Emerald20180308-0016.jpg

Ag

775.530.7151
[redacted]

17 Attachments

Exhibit 3



Paul Mula
to me
1 Attachments
$200.00
Invoice 05454.pdf
Reply
Forward

Exhibit 3



Asa Gilmore, Ag LLC
7755307151

PO Box 21492
Reno, Nevada
89515
United States

Billed To
Hudson Stremmel
Stremmel Auctions

Date of Issue
03/09/2018

Due Date
04/08/2018

Invoice Number
05454

Amount Due (USD)
**$200.00**

| Description | Rate | Qty | Line Total |
|---|---|---|---|
| Studio photography - Emerald | $80.00 | 2.5 | $200.00 |

| | |
|---|---|
| Subtotal | 200.00 |
| Tax | 0.00 |
| Total | 200.00 |
| Amount Paid | 0.00 |
| Amount Due (USD) | $200.00 |

Terms
For full terms, please see http://www.asagilmore.com/agterms.pdf

**Exhibit 3-1**

From: **Steve Stremmel** <sstremmel@aol.com>
Date: Wed, Nov 7, 2018 at 7:35 PM
Subject: emerald
To: Paul Mula <pmula@techmasters.tech>

think it may go for $8,000 to $10 K

From: **Steve Stremmel** <sstremmel@aol.com>
Date: Thu, Nov 8, 2018 at 7:16 AM
Subject: Re: emerald
To: Paul Mula <pmula@techmasters.tech>

Total of 3 bidders. Go online and register, which doesn't cost anything and bid what makes sense. We have to get it approved by the court but only the successful bidders offer will be considered at court. Any chance of coming up before the 15?

**Steve Stremmel**

**550 West Plumb Lane #406**
**Reno, Nevada 89509**
**775-787-7000**
**775-323-6445 fax**
**stremmelauctions.com**

On Nov 7, 2018, at 8:57 PM, Paul Mula <pmula@techmasters.tech> wrote:

So what should I do? How many bidders....

On Wed, Nov 7, 2018 at 7:35 PM Steve Stremmel <sstremmel@aol.com> wrote:

> think it may go for $8,000 to $10 K



Phone
9:29 PM
23%
+1 (775) 240-5331
iMessage
Thu, Nov 1, 2:57 PM
Sorry, I can't talk right now.
Hi, I have a few things I'm doing, can you send me a text and let me know what time your available
Fri, Nov 2, 8:54 AM
We have a bid on the Emerald so what you want to do is register and bid if interested
Fri, Nov 2, 11:07 AM
What is the bid at?
Fri, Nov 2, 12:15 PM
$500
Ok, I'm in meeting all day, I'll call you at 4pm
Actually can you make it latter or tomorrow
iMessage

Exhibit 6



Phone
9:29 PM
23%
194
+1 (775) 240-5331
Actually can you make it latter or tomorrow
Sure no problem.... what were you thinking?
Sat, Nov 3, 2:23 PM
It is now up to 1500
How many bidders
2
Wed, Nov 7, 5:
What is the bid at now
Tue, Nov 13, 11:26 AM
Happy Tuesday, hope you had a good weekend... my fathers service was Sunday. Where is the bid at
Wed, Nov 14, 11:02 AM
Message

Exhibit 6



Phone
9:29 PM
23%
194
+1 (775) 240-5331
Wed, Nov 7, 5:18 PM
What is the bid at now
Tue, Nov 13, 11:26 AM
Happy Tuesday, hope you had a good weekend... my fathers service was Sunday. Where is the bid at
Wed, Nov 14, 11:02 AM
When does the auction end tomorrow?
Delivered
Wed, Nov 14, 1:56 PM
So sorry to hear about your dad that's always a tough one the auction ends at 10 AM tomorrow but it's what they call a soft clothes so if you make a bed at 9:58 and goes for five more minutes until everyone stop spinning but if nobody bids any further it ends at 10. Paul my very best to you

iMessage
Pay

Exhibit 6



Phone
9:29 PM
23%
+1 (775) 240-5331
Wed, Nov 7, 5:18 PM
What is the bid at now
Tue, Nov 13, 11:26 AM
Happy Tuesday, hope you had a good weekend... my fathers service was Sunday. Where is the bid at
Wed, Nov 14, 11:02 AM
When does the auction end tomorrow?
Delivered
Wed, Nov 14, 1:06 PM

So sorry to hear about your dad that's always a tough one the auction ends at 10 AM tomorrow but it's what they call a soft clothes so if you make a bed at 9:58 and goes for five more minutes until everyone stop spinning but if nobody bids any further it ends at 10. Pa[illegible] my [illegible] best to you

iMessage

Exhibit 6

Anthony G. Thomas
7725 Peavine Peak Court
Reno, NV 89523
Tel: (408) 640-2795
E-mail: atemerald2@gmail.com

Debtor In Propria Persona

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA - RENO**

| | |
|---|---|
| IN RE:<br><br>ANTHONY THOMAS and<br><br>WENDI THOMAS<br><br>AT EMERALD, LLC<br><br>Debtors. | ) Case No. BK-N-14-50333-BTB<br>) Case No. BK-N-14-50331-BTB<br>) (Jointly Administered)<br>)<br>) CHAPTER 7<br>)<br>) DECLARATION OF ANTHONY G. THOMAS IN SUPPORT OF OPPOSITION TO SALE OF EMERALD FOR FRAUD UPON THE COURT REQUEST FOR JUDICIAL NOTICE OF LAW & FACTS [RULE 201]<br>)<br>) Date: March 22nd 2018<br>) Time: 3:00 pm<br>) Dept. 2<br>) Judge: Hon. Bruce T. Beesley<br>) |

I Anthony G. Thomas declare:

1. I am submitting this declaration in support of my Opposition to the sale of the Thomas Emerald and am forced to file concurrently herewith a Motion for Judicial Notice of Law & Facts based upon the filing that I made with this Court on 12-17-2018 and in light of the fact that I have raised the issue on several occasions of the Trustee's failure to comply with Bankruptcy Code Section 363(b), Rule 6004 and Rule 2002 that govern the sale of estate assets and require notice of any proposed sale of estate assets to be served by mail upon all creditors and interested parties by the clerk of the Court 21 days prior to sale.

2. I was forced to set the hearing on 12-17-2018 due to the failure of Attorney Hartman to respond to my meet and confer letter dated 12-6-2018 where I first pointed out the failure to comply with the Notice Rules **PRIOR** to sale that the law mandates notice to be sent buy the clerk of the Court to all interested parties by mail. There is no such docket entry, that I am requesting that this Court take Judicial Notice of (attached to this Declaration as Exhibit 1

and incorporated herein by reference is a true and correct copy of the Pacer Docket entries 347-469 inclusive printed on 14 pages. I was forced to set the hearing on 12-17-2018, where I sought a continuance of the 1-8-2019 hearing to confirm the sale of the Emerald, due to the irregularities in the sale process in violation of the 21 day notice requirements imposed by law by virtue of Bankruptcy Rule 2002, as well as the fact that the only creditors that were informed of the sale before the sale occurred were only Ken Tersini and Wayne Silver who are listed in the Declaration of Hudson Stremmel as Emerald Experts.

3. Mr. Tersini is the one who by his commission of Fraud Upon the Court in the underlying Santa Clara County case of Kenmark Ventures LLC v. Thomas, was the ringleader in procuring a $5 million judgment against me that is void on its' face and subject to a pending Motion to Vacate in the Santa Clara County Superior Court, something that the instant filings against me have made difficult to achieve while I am devoting unnecessary time and energy to oppose the sale of the Thomas Emerald that is Void on its' face for failure to comply with the mandatory notice requirements before sale under BK Code 363(b), and Rules 6004 and 2002 of the Bankrutpcy Rules (attached as Exhibit 3 to my filing of 12-17-2018 for which I am respectfully requesting that this Court take judicial notice of under Federal Rule of Evidence 201 and for which I am requesting a written order with specific findings of fact and conclusions of law.

4. This is not the first time that Mr. Tersini has failed to comply with notice rules. In the Florida Replevin action, filed in 2008 in the Circuit Court for the Twelfth Circuit Court in Sarasota FL, Mr. Tersini and his attorneys filed a lawsuit without giving me any notice (See Exhibit 4 to my Declaration), and made fraudulent representations to the Court that they notified me when they didn't, and claimed that the emerald was worth $500,000,000 [FIVE HUNDRED MILLION DOLLARS].

**FAILURE OF TRUSTEE AND HARTMAN TO PROVIDE NOTICE OF SALE TO DEBTOR AND TO OTHER CREDITORS OTHER THAN TERSINI OF KENMARK VENTURES, LLC, AND HIS ATTORNEY WAYNE SILVER**

5. The sale of the Thomas Emerald is governed by Section 363(b)(1) of the U.S. Bankruptcy Code, as well as the provisions of Rule 6004 that references Rule 2002 governing

the rules regarding Notice of Sale. These laws are attached as Exhibit 3, pp. 60-74 of 189 of the filing that I made on 12-17-2018 as DE 439.0 These provisions before sale were not complied with, and Attorney Hartman's claims to the contrary at the hearing of 12-17-2018 before this Court were false and constitute fraudulent concealment of the true facts from the Court, combined with the collusive bidding where no other creditors other than Tersini and his lawyer were notified of the sale prior to the sale, renders the sale to an employee and personal notary of Ken Tersini as a creditor whose entire judgment is subject to being overturned for being void on its' face and procured inter alia by fraud on the Court and collusion in the auction process.

6. As referenced in paragraph 2 above, I am submitting as Exhibit 1 to my Declaration, a true and correct copy of the 14 page Docket printout from pacer from 10-16-2017 Docket Entry 347 Ex Parte Application to Employ Stremmel Auctions to the period my request that the Court take judicial notice of the underlying facts and law that establish conclusively that the purported sale by Auction to Jennifer Jodoin, personal notary to Kenmark Ventures LLC and KT Properties and related companies principal Ken Tersini, the very party who committed fraud on the Court to procure a judgment against me falsely claiming that he extended a loan, where all the evidence shows to the contrary, where not one dime was ever received by me, and where the document that Mr. Tersini used to hold me liable to a non-dischargeable fraud judgment against me is Exhibit 22 to the Trial Exhibits filed in this Court's Kenmark v. Thomas Adversary Proceeding, a document that was sworn to where I testified in a Deposition in the Kenmark matter, in the adversary matter and testified to on the stand was not sent by me, and in light of new evidence in the form of a Declaration to to pay a commission and expenses to auctioneer Stremmel Auctions in light of the manifest fraud and deception committed by Mr. Steve Stremmel, who despite being the principal and owner of Stremmel Auctions, inexplicably filed the declaration in support of the Trustee and her attorney's illegal attempt to sell the Thomas Emerald without complying with the mandatory notice requirements imposed on a sale of Bankruptcy Estate assets under

U.S. Bankruptcy Code Section 363(b), and Bankruptcy Rules 6004 and 2002 that require Court approval and notice mailed by the Clerk of the Court prior to any proposed sale of any property of the Estate, rules that were not complied with and the fact that there is no proof of service from the Clerk of the Court on the Court docket complying with the 21 day notice requirements imposed by Rule 2002, makes the entire proceeding and attempt to sell the Thomas Emerald to be void on its' face and must be vacated according to the decisional case law of the Bankruptcy courts that have addressed other instances where the proper notice rules were not complied with where the necessary outcome was to void the sale for failure to comply with the statutory notice requirements.

7. Attached as Exhibit 2 to my Declaration is a true and correct copy of an e-mail that I received from Sid Lambersky entitled "DECLARATION RE: OVERSTOCK.COM NEGOTIATIONS". Mr. Lambersky states: "We stopped hearing from the Trustee and decided to move on. He includes references to a paragraph 2.2 Expenses and 2.2.1 Expense Budget. He continues and states unequivocally in direct contradiction to Mr. Hartman's represenations on the record where he infers that Overstock.com was asking for a large up front marketing guarantee that he states is the reason why the Trustee could not continue with the Overstock.com contract due to the estate being insolvent:

"Seth Marks and I were and are seasoned bankrutpcy professionals and there is NO way we were asking for $250,000 up front. We believed we had to spend the money to make the deal happen. Overstock had agreed to this." Sid then attached an attachment to his E-mail which I printed and attached to Exhibit 2 which is the Agency Agreement that Sid referenced on page 1 of his e-mail.

I understand that the Court preliminarily objected to this e-mail on the record as a hearsay, so I am respecfully requesting this Court for additional time to obtain a proper declaration to be filed with this court to corroborate and be legally admissible evidence that I can present to this Court.

8. Obviously, a void sale cannot confer any sales commission or expense reimbursement to the Auctioneer, whose document production of the attached bate stamped documents attached to this Declaration as Exhibit 3 and bate-stamped as STR001-STR050. These 50 pages, minus an 8 page color brochure constituted the entire document production in response to the subpoena for production of documents that was issued by the Clerk of this Court on 1-17-2019, for which Mr. Steve Stremmel responded with the 50 page document production attached to this Declaration. For the benefit of the Court, I have also prepared an index and Exhibit list of the bate-stamped 50 pages that were produced by Mr. Steve Stremmel in response to the Subpoena consisting of 5 pages along with a cover letter that I sent to Mr. Stremmel more than once by e-mail asking him to confirm that the attached 50 pages were in fact the complete set of documents that he did in fact produce in response to the Subpoena. The document production is wholly deficient and in contradiction to that of Hudson Stremmel submitted in support of the Trustee's Application for an Order approving the attached as DE 431 (6 page Declaration of Hudson Stremmel filed on 11-29-2018) as well as filed Exhibit 2 to my filing of 12-17-2018 as DE 439.0 as pp 46-53 of 189 pages.

9. The discrepancy is even more outrageous, when one considers the Declaration of Paul S. Mula (filed concurrently herewith), consisting of the e-mail, text and contents of the telephone calls by and between Mr. Mula and Mr. Steve Stremmel, which was completely ommitted from the document production made by Steve Stremmel in response to the Subpoena issued on 1-17-2019. The omission of any reference to the e-mail communications between Steve Stremmel and Paul Mula constitutes a perjury, suppression of evidence and fraudulent concealment on the part of Mr. Steve Stremmel and is grounds for filing contempt and/or perjury charges against Mr. Stremmel and demonstrates the bad faith conduct of Mr. Stremmel in not spending any money (other than $200 for the taking of photographs of the emerald. Indeed the document production in response to the subpoena, and the documents submitted in support of Mr. Paul Mula's declaration establish that very little if no marketing was done to sell the Emerald

worldwide, in contradiction to the statements made in the Declaration of Hudson Stremmel (DE 431, filed on 11-29-2018 in support of the Sale Motion filed by the Trustee in this matter.

10. The serious discrepancy between what was stated and filed with this Court and the response to the 1-17-2019 subpoena upon Steve Stremmel as well as the Declaration of Paul S. Mula is in sharp contrast to the collusive sale of the Emerald without Notice by auction between 10-30-2018 and 11-15-2018 that resulted in a sale to none other than Jennifer Jodoin, personal notary to Ken Tersini, Kenmark Ventures, LLC and executive insider of the Tersini group of companies, a fact that belies the hollow claim that she should be granted bona-fide purchasor status rather than being a scheming participant in the underlying fraud upon the Court (why weren't any of the purported Thomas-Tersini documents ever notarized?), along with the fact that Jennifer Jodoin's name appears on Exhibit 22 in the Kenmark adversary case trial exhibits, the forged e-mail from the Norfield e-mail account that was used to send the purported appraisals of the Thomas Emerald, that was used as the basis of the BK courts finding of non-dischargeability due to fraud despite the fact that Thomas denied ever having sent the e-mail in question (denied in the Kenmark v. Thomas Santa Clara case deposition as well as denied in the trial of the Adversary Kenmark v. Thomas case in this Court) and despite the fact that Thomas never had a Norfield e-mail account.

11. These facts were contested by me in the original Deposition in the Santa Clara County Superior Court case as well aa during the Adversary Trial in this case, where the Court disregarded all evidence that Tersini's funds wired into the Electronic Plastics LLC account were an investment and not a loan. If it is characterized as a loan, then I am entitled to an $18 million usury claim as explained in the pre-trial briefs in the Kenmark v. Thomas case prior to the sell out that took place on 10-5-2011 the transcript of which has been filed in this Court as an Exhibit to the adversary complaint as Exhibit 4, pages 26-46 inclusive.

12. The Transcript (attached as Exhibit 4 to the Kenmark Adv Complaint of the

10-5-2011 hearing in the Santa Clara County Superior Court itself shows that the Judgment is void on its' face for:

1. **Failure to comply with the Statute of Frauds (CA Civil Code Section 1624)**
2. **Void for failure to comply with the Provisions of CCP 664.6 requiring proper voir diring by the Judge that wasn't done here.**
3. **Attorney Abandonment by Michael Morrissey as confirmed by the Declaration of Bob Machado in the 9th Circuit case filed on 2-12-2018, forming the basis of my current Petition before the U.S. Supreme Court. as well as void under Olvera v. Grade and in violation of CCP 286 among others.**
4. **Void due to attorney abandonment as evidenced by the 10-3-2011 Faxed Letter from Morrissey to the State Bar that was provided to this Court at the hearing of 11-2-2018 and was read into the record where the response from the State Bar dated 10-4-2011 ordering Morrissey to appear for his State Bar Court trial on 10-11-2011 that was read by Judge Beesley on the record.**

13. It is therefore uncomprehensible that this Court seeks to sell the Thomas Emerald when it was put on notice of Mr. Thomas's intent to vacate the Santa Clara Judgment based upon grounds that render the Judgment against him in the Santa Clara County case void on its' face.

14. The sale of the Emerald is also void due to the illegal and void conversion order of this Court where this Court converted me from Chapter 11 to 7, pursuant to the holding in Powell v. Alabama (1932). At the conversion hearing, this court denied me a 2 week continuance to seek legal counsel and would not permit my withdrawing counsel to represent me and argue against the conversion motion on the merits, basically forcing him to accept the court's order permitting withdrawal and not allowing him to argue for me despite his willingness to do so. The U.S. Supreme Court, held very explicitly that the denial of the right to be represented by legal counsel constitutes a deprivation of constitttutional rights, thereby rendering any such action void:

> "What, then, does a hearing include? Historically and in practice, in our own country at least, it has always included the right to the aid of counsel when desired and provided by the party asserting the right. The right to be heard would be, in many cases, of little avail if it did not

comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more true is it of the ignorant and illiterate, or those of feeble intellect. **If in any case, civil or criminal, a state or federal court were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it reasonably may not be doubted that such a refusal would be a denial of a hearing, and, therefore, of due process in the constitutional sense.**

Powell v. Alabama (1932) 287 U.S. 45, 68-69 [Emphasis added].

15. Under the circumstances I am respectfully requesting that this Court take judicial notice of all the law and citations contained in this opposition and render a written decision in detail as to what points of law and facts are taken and which ones were not, something that the Court failed to do in the battle over the Trustee's criminal actions in taking possession and title of that property without a court order.

16. A comparison with the Declaration of Hudson Stremmel with the document production produced by Steve Stremmel on 1-17-2019 demonstrates fraud on the Court, disparagement of the Emerald value and no marketing or even inability to show his expenses only submitting a $200 invoice, corroborated with the Declaration of Paul Mula whose e-mail and other information demanded in the subpoena was not complied with subjecting him to contempt.

17. In Mr. Mula's Declaration filed concurrently, Mr. Mula states:

"6. On 10-26-2018, I had another telephone call with Mr. Steve Stremmel where I informed Mr. Stremmel that I believed that Mr. Thomas paid $20K for the Emerald. Mr. Stremmel was very pleased and stated that

"I'm trying to build a case when you buy it for $830." "I can say that this slob only paid $20,000 for it". He told me that "I love it when you say this". Mr. Stremmel told

me: "I want to see you steal this thing". He told me: "Your bid is going to be next to nothing which is going to be more than fair" and that you will soon have "we've got a 60 lb door stop for you".

7. On 10-29-2018 I had a further telephone call with Mr. Stremmel where he stated:

"I want to be honest with you Paul, You are the only one I talked to about this". He told me that the Judge always sides with the Trustee and that "it's a really cool stone".

18. The above facts need to be carefully considered by this Court. There is no need for any rush to judgment in this matter. Justice requires that the law and facts be taken first by the Court with findings in writing as mandated by Rule 201(d) of the Federal Rules of Evidence, and that once taken, the sale be rescinded and overturned.

I declare under penalty of perjury of the laws of the State of California, the State of Nevada and the United States that the foregoing is true and correct.

Dated: March 7th 2019

Tony Thomas

Anthony G. Thomas
Debtor In Propria Persona

# Request for Judicial Notice of Adjudicative Facts [Rule 201 FRE]

Request to take Judicial Notice of Register of Actions / Docket Entries

347- 10-16-2017- to -
469- 03-04-2019

EXHIBIT 1

EXHIBIT 1

LEAD, BAPCPA, JNTADMN, 727OBJ

U.S. Bankruptcy Court
District of Nevada (Reno)
Bankruptcy Petition #: 14-50333-btb

Assigned to: BRUCE T. BEESLEY
Chapter 7
Previous chapter 11
Original chapter 11
Voluntary
Asset

Date filed: 03/04/2014
Date converted: 08/29/2014
341 meeting: 12/04/2014
Deadline for objecting to discharge: 12/08/2014

**Debtor**
**ANTHONY THOMAS**
7725 PEAVINE PEAK COURT
RENO, NV 89523
WASHOE-NV
SSN / ITIN: xxx-xx-3971

represented by **ANTHONY THOMAS**
PRO SE

**MICHAEL LEHNERS**
429 MARSH AVE
RENO, NV 89509
(775) 786-1695
Fax: (775) 786-0799
Email: michaellehners@yahoo.com
TERMINATED: 08/04/2015

**ALAN R SMITH**
(See above for address)
TERMINATED: 08/26/2014

**Jnt Admin Debtor**
**AT EMERALD, LLC**
7725 PEAVINE PEAK COURT
RENO, NV 89523
SSN / ITIN: xxx-xx-3971
Tax ID / EIN: 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

represented by **AT EMERALD, LLC**
PRO SE

**ALAN R SMITH**
505 RIDGE ST
RENO, NV 89501
(775) 786-4579
Fax: (775)
Email: mail@asmithlaw.com
TERMINATED: 08/26/2014

**Joint Debtor**
**WENDI THOMAS**
7725 PEAVINE PEAK COURT
RENO, NV 89523
WASHOE-NV
SSN / ITIN: xxx-xx-8142

represented by **WENDI THOMAS**
PRO SE

**MICHAEL LEHNERS**
429 MARSH AVE
RENO, NV 89509
(775) 786-1695
Fax: (775) 786-0799
Email: michaellehners@yahoo.com
TERMINATED: 08/04/2015

**ALAN R SMITH**
(See above for address)
TERMINATED: 08/26/2014

**Trustee**
**CHRISTINA W. LOVATO**
P.O. BOX 18417

RENO, NV 89511
(775) 851 1424
TERMINATED: 08/29/2014

Trustee
**JERI COPPA-KNUDSON**
3495 LAKESIDE DR
PMB #62
RENO, NV 89509
(775) 329-1528

represented by **JERI COPPA-KNUDSON**
3495 LAKESIDE DR
PMB #62
RENO, NV 89509
(775) 329-1528
Fax: (775) 329-5320
Email: renobktrustee@gmail.com

**JEFFREY L HARTMAN**
HARTMAN & HARTMAN
510 WEST PLUMB LANE, STE B
RENO, NV 89509
(775) 324-2800
Fax: (775) 324-1818
Email: notices@bankruptcyreno.com

U.S. Trustee
**U.S. TRUSTEE - RN - 11**
300 BOOTH STREET, STE 3009
RENO, NV 89509
TERMINATED: 08/29/2014

U.S. Trustee
**U.S. TRUSTEE - RN - 7, 7**
300 BOOTH STREET, STE 3009
RENO, NV 89509

| Filing Date | # | Docket Text |
|---|---|---|
| 10/16/2017 | 347 (4 pgs; 2 docs) | Ex Parte Application to Employ STREMMEL AUCTIONS as AUCTIONEER Filed by JERI COPPA-KNUDSON on behalf of STREMMEL AUCTIONS, INC. (Attachments: # 1 Affidavit)(COPPA-KNUDSON, JERI) (Entered: 10/16/2017) |
| 10/18/2017 | 348 (2 pgs) | Order Granting Application to Employ (Related document(s) 347) (cly) (Entered: 10/18/2017) |
| 10/19/2017 | 349 (2 pgs) | Order Granting Application For Administrative Claim/Expenses (Related document(s) 343) (cly) (Entered: 10/19/2017) |
| 03/13/2018 | 350 | Disposition and Closing of Adversary Case (cly) (Entered: 03/13/2018) |
| 05/24/2018 | 351 | Disposition and Closing of Adversary Case (cly) (Entered: 05/24/2018) |
| 07/10/2018 | 352 R (3 pgs) | Notice with Certificate of Service Filed by JEFFREY L HARTMAN on behalf of JERI COPPA-KNUDSON (HARTMAN, JEFFREY) (Entered: 07/10/2018) |
|  | 353 | Motion for Turnover Filed by JEFFREY L HARTMAN on behalf of |

| | | |
|---|---|---|
| 07/10/2018 | (4 pgs) | JERI COPPA-KNUDSON (HARTMAN, JEFFREY) (Entered: 07/10/2018) |
| 07/10/2018 | 354 (13 pgs; 3 docs) | Declaration Of: Jeri Coppa-Knudson Filed by JEFFREY L HARTMAN on behalf of JERI COPPA-KNUDSON (Related document(s)353 Motion for Turnover filed by Trustee JERI COPPA-KNUDSON) (Attachments: # 1 Exhibit A # 2 Exhibit B) (HARTMAN, JEFFREY) (Entered: 07/10/2018) |
| 07/10/2018 | 355 (2 pgs) | Notice of Hearing Hearing Date: 08/21/2018 Hearing Time: 2:00 p.m. Filed by JEFFREY L HARTMAN on behalf of JERI COPPA-KNUDSON (Related document(s)353 Motion for Turnover filed by Trustee JERI COPPA-KNUDSON) (HARTMAN, JEFFREY) (Entered: 07/10/2018) |
| 07/11/2018 | 356 | Hearing Scheduled/Rescheduled. Hearing scheduled 8/21/2018 at 02:00 PM at BTB RN-Courtroom 2, Young Bldg.. (Related document(s)353 Motion for Turnover filed by Trustee JERI COPPA-KNUDSON) (cly) (Entered: 07/11/2018) |
| 07/11/2018 | 357 (7 pgs) | Certificate of Service Filed by JEFFREY L HARTMAN on behalf of JERI COPPA-KNUDSON (Related document(s)353 Motion for Turnover filed by Trustee JERI COPPA-KNUDSON, 354 Declaration filed by Trustee JERI COPPA-KNUDSON, 355 Notice of Hearing filed by Trustee JERI COPPA-KNUDSON) (HARTMAN, JEFFREY) (Entered: 07/11/2018) |
| 08/06/2018 | 358 (7 pgs) | Motion to Withdraw as Attorney of Record AND FOR CLARIFICATION OF STATUS AS COUNSEL, ETC. Filed by LAURY MILES MACAULEY on behalf of MACAULEY LAW GROUP, P.C. (MACAULEY, LAURY) (Entered: 08/06/2018) |
| 08/06/2018 | 359 (3 pgs) | Declaration Of: LAURY M. MACAULEY Filed by LAURY MILES MACAULEY on behalf of MACAULEY LAW GROUP, P.C. (Related document(s)358 Motion to Withdraw as Attorney of Record filed by Debtor MACAULEY LAW GROUP, P.C.) (MACAULEY, LAURY) (Entered: 08/06/2018) |
| 08/06/2018 | 360 (3 pgs) | Motion for Order Shortening Time Filed by LAURY MILES MACAULEY on behalf of MACAULEY LAW GROUP, P.C. (MACAULEY, LAURY) (Entered: 08/06/2018) |
| 08/06/2018 | 361 (3 pgs) | Declaration Of: Laury M. Macauley Filed by LAURY MILES MACAULEY on behalf of MACAULEY LAW GROUP, P.C. (Related document(s)360 Motion for Order Shortening Time filed by Debtor MACAULEY LAW GROUP, P.C.) (MACAULEY, LAURY) (Entered: 08/06/2018) |
| 08/07/2018 | 362 (5 pgs) | Amended Motion for Order Shortening Time Filed by LAURY MILES MACAULEY on behalf of MACAULEY LAW GROUP, P.C. (Related document(s)358 Motion to Withdraw as Attorney of Record AND FOR CLARIFICATION OF STATUS AS COUNSEL, ETC. filed by Attorney MACAULEY LAW GROUP, P.C..)(MACAULEY, LAURY). Modified on 8/7/2018 to remove relationship to doc# 360 and adding relationship to doc# 358 (Hannan, KS). Modified on 8/8/2018 to correct docket text (Hannan, KS). (Entered: 08/07/2018) |

| | | |
|---|---|---|
| 08/07/2018 | 363 (3 pgs) | Amended Declaration Of: Laury M. Macauley Filed by LAURY MILES MACAULEY on behalf of MACAULEY LAW GROUP, P.C. (Related document(s)362 Motion for Order Shortening Time filed by Debtor MACAULEY LAW GROUP, P.C..) (MACAULEY, LAURY). Modified on 8/7/2018 to remove relationship to doc# 361 and adding relationship to doc# 362 (Hannan, KS). (Entered: 08/07/2018) |
| 08/07/2018 | 364 (5 pgs) | Trustee's Response with Certificate of Service Filed by JEFFREY L HARTMAN on behalf of JERI COPPA-KNUDSON (Related document(s)358 Motion to Withdraw as Attorney of Record filed by Debtor MACAULEY LAW GROUP, P.C..) (HARTMAN, JEFFREY) (Entered: 08/07/2018) |
| 08/07/2018 | 365 (13 pgs) | Certificate of Service Filed by LAURY MILES MACAULEY on behalf of MACAULEY LAW GROUP, P.C. (Related document(s)360 Motion for Order Shortening Time filed by Debtor MACAULEY LAW GROUP, P.C.) (MACAULEY, LAURY) (Entered: 08/07/2018) |
| 08/07/2018 | 366 (2 pgs) | Order Granting Motion for Order Shortening Time (Related document(s) 362). Hearing scheduled 8/10/2018 at 10:00 AM at BTB RN-Courtroom 2, Young Bldg.. (Related document(s) 358 Motion to Withdraw as Attorney of Record AND FOR CLARIFICATION OF STATUS AS COUNSEL, ETC. filed by Debtor MACAULEY LAW GROUP, P.C..) (cly). Modified on 8/7/2018 to relate to #358 in place of #360 (Gallagher, DA). (Entered: 08/07/2018) |
| 08/07/2018 | 367 | Hearing Scheduled/Rescheduled. Hearing scheduled 8/10/2018 at 10:00 AM at BTB RN-Courtroom 2, Young Bldg.. (Related document(s)358 Motion to Withdraw as Attorney of Record filed by Debtor MACAULEY LAW GROUP, P.C..) (dag) (Entered: 08/07/2018) |
| 08/07/2018 | 368 (2 pgs) | Response Filed by LAURY MILES MACAULEY on behalf of MACAULEY LAW GROUP, P.C. (Related document(s)353 Motion for Turnover filed by Trustee JERI COPPA-KNUDSON.) (MACAULEY, LAURY) (Entered: 08/07/2018) |
| 08/08/2018 | 369 (8 pgs) | Certificate of Service Filed by LAURY MILES MACAULEY on behalf of MACAULEY LAW GROUP, P.C. (Related document(s)368 Response filed by Attorney MACAULEY LAW GROUP, P.C.) (MACAULEY, LAURY) (Entered: 08/08/2018) |
| 08/08/2018 | 370 (1 pg) | Notice of Docketing Error (Related document(s)368 Response filed by Attorney MACAULEY LAW GROUP, P.C.) (cly) (Entered: 08/08/2018) |
| 08/08/2018 | 371 (13 pgs) | Certificate of Service Filed by LAURY MILES MACAULEY on behalf of MACAULEY LAW GROUP, P.C. (Related document(s)358 Motion to Withdraw as Attorney of Record filed by Attorney MACAULEY LAW GROUP, P.C.) (MACAULEY, LAURY) (Entered: 08/08/2018) |
| 08/09/2018 | 372 R (13 pgs; 2 docs) | Ex Parte Application to Employ MELINDA BENNETT as REALTOR Filed by JERI COPPA-KNUDSON on behalf of MELINDA BENNETT (Attachments: # 1 R Exhibit A)(COPPA-KNUDSON, JERI) (Entered: 08/09/2018) |

| | | |
|---|---|---|
| 08/09/2018 | 373 R (3 pgs) | Affidavit Of: MELINDA BENNETT Filed by JERI COPPA-KNUDSON on behalf of MELINDA BENNETT (Related document(s)372 R Application to Employ filed by Realtor MELINDA BENNETT) (COPPA-KNUDSON, JERI) (Entered: 08/09/2018) |
| 08/09/2018 | 374 (3 pgs) | Certificate of Service Filed by LAURY MILES MACAULEY on behalf of MACAULEY LAW GROUP, P.C. (Related document(s)360 Motion for Order Shortening Time filed by Attorney MACAULEY LAW GROUP, P.C.) (MACAULEY, LAURY) (Entered: 08/09/2018) |
| 08/10/2018 | 375 (34 pgs) | Transcript regarding Hearing Held on 08/22/14. The transcript may be viewed at the Bankruptcy Court Clerk's Office. For additional information, you may contact the Transcriber Access Transcripts, LLC, Telephone number 855-873-2223. Purchasing Party: Wendi Thomas. Redaction Request Due By 08/31/2018. Redacted Transcript Submission Due By 09/10/2018. Transcript access will be restricted through 11/8/2018. (ACCESS TRANSCRIPTS, LLC) (Entered: 08/10/2018) |
| 08/10/2018 | 376 R (1 pg) | Notice of Docketing Error (Related document(s)372 R Application to Employ filed by Realtor MELINDA BENNETT, 373 R Affidavit filed by Realtor MELINDA BENNETT) (dag) (Entered: 08/10/2018) |
| 08/10/2018 | 377 R (1 pg) | Order Granting Application to Employ (Related document(s) 372 R) (dag) (Entered: 08/10/2018) |
| 08/10/2018 | 378 (1 pg) | Notice of Filing Official Transcript. Related document(s) 375 . (admin) (Entered: 08/10/2018) |
| 08/10/2018 | 390 | **Minute Entry** Re: hearing on 8/10/2018. Continued. (related document(s): 358 Motion to Withdraw as Attorney of Record filed by MACAULEY LAW GROUP, P.C.) Appearances: JEFFREY L HARTMAN, LAURY MILES MACAULEY, ANTHONY THOMAS Status Hearing to be held on 09/13/2018 at 10:00 AM at BTB RN-Courtroom 2, Young Bldg.. (ias) (Entered: 08/21/2018) |
| 08/13/2018 | 379 (22 pgs) | Transcript regarding Hearing Held on 08/10/18. The transcript may be viewed at the Bankruptcy Court Clerk's Office. For additional information, you may contact the Transcriber Access Transcripts, LLC, Telephone number 855-873-2223. Purchasing Party: Wendi Thomas. Redaction Request Due By 09/4/2018. Redacted Transcript Submission Due By 09/13/2018. Transcript access will be restricted through 11/13/2018. (ACCESS TRANSCRIPTS, LLC) (Entered: 08/13/2018) |
| 08/13/2018 | 380 (1 pg) | Notice of Filing Official Transcript. Related document(s) 379 . (admin) (Entered: 08/13/2018) |
| 08/14/2018 | 381 R (13 pgs; 2 docs) | Amended Ex Parte Application to Employ MELINDA BENNETT as REALTOR Filed by JERI COPPA-KNUDSON on behalf of MELINDA BENNETT (Related document(s)372 R Application to Employ filed by Realtor MELINDA BENNETT) (Attachments: # 1 R Exhibit A) (COPPA-KNUDSON, JERI) (Entered: 08/14/2018) |

| | | |
|---|---|---|
| 08/14/2018 | 382 (3 pgs) | Amended Affidavit Of: MELINDA BENNETT Filed by JERI COPPA-KNUDSON on behalf of MELINDA BENNETT (Related document(s)381 Application to Employ filed by Realtor MELINDA BENNETT) (COPPA-KNUDSON, JERI) (Entered: 08/14/2018) |
| 08/14/2018 | 383 (3 pgs) | Notice of Entry of Order with Certificate of Service Filed by JERI COPPA-KNUDSON on behalf of JERI COPPA-KNUDSON (Related document(s)377 Order on Application to Employ) (COPPA-KNUDSON, JERI) (Entered: 08/14/2018) |
| 08/14/2018 | 384 (12 pgs) | Supplemental Declaration Of: Laury M. Macauley Filed by LAURY MILES MACAULEY on behalf of MACAULEY LAW GROUP, P.C. (Related document(s)358 Motion to Withdraw as Attorney of Record filed by Attorney MACAULEY LAW GROUP, P.C.) (MACAULEY, LAURY) (Entered: 08/14/2018) |
| 08/14/2018 | 385 (7 pgs) | Certificate of Service Filed by LAURY MILES MACAULEY on behalf of MACAULEY LAW GROUP, P.C. (Related document(s)384 Declaration filed by Attorney MACAULEY LAW GROUP, P.C.) (MACAULEY, LAURY) (Entered: 08/14/2018) |
| 08/15/2018 | 386 (1 pg) | Notice of Hearing. PER COURT INSTRUCTION - - HEARING RESCHEDULED 9/13/2018 at 10:00 AM at BTB RN-Courtroom 2, Young Bldg.. (Related document(s)353 Motion for Turnover filed by Trustee JERI COPPA-KNUDSON) (ias) (Entered: 08/15/2018) |
| 08/15/2018 | 387 (4 pgs) | BNC Certificate of Mailing - pdf (Related document(s)378 Notice of Filing Official Transcript (BNC-BK)) No. of Notices: 66. Notice Date 08/15/2018. (Admin.) (Entered: 08/15/2018) |
| 08/16/2018 | 388 (4 pgs) | BNC Certificate of Mailing - pdf (Related document(s)380 Notice of Filing Official Transcript (BNC-BK)) No. of Notices: 66. Notice Date 08/16/2018. (Admin.) (Entered: 08/16/2018) |
| 08/17/2018 | 389 (3 pgs) | BNC Certificate of Mailing. (Related document(s)386 Notice of Hearing (BNC-BK and/or ADV only)) No. of Notices: 7. Notice Date 08/17/2018. (Admin.) (Entered: 08/17/2018) |
| 08/31/2018 | 391 (2 pgs) | Order Granting Motion To Withdraw As Attorney of Record (Related document(s) 358) LAURY MILES MACAULEY terminated from the case. (cly) (Entered: 08/31/2018) |
| 09/05/2018 | 394 (2 pgs) | Notice (Motion For Judicial Notice Of Law & Facts FRE Rule 201) Filed by ANTHONY THOMAS (lms) (Entered: 09/06/2018) |
| 09/05/2018 | 395 (289 pgs; 2 docs) | Declaration Of Anthony Thomas In Support Of Motion For Judicial Notice Of Law & Facts (FRE Rule 201)) Filed by ANTHONY THOMAS (Related document(s)353 Motion for Turnover filed by Trustee JERI COPPA-KNUDSON, 394 Notice filed by Debtor ANTHONY THOMAS) (Attachments: # 1 Appendix Continued) (lms) (Entered: 09/06/2018) |
| | 392 (21 pgs) | Transcript regarding Hearing Held on 02/25/15. The transcript may be viewed at the Bankruptcy Court Clerk's Office. For additional |

| | | |
|---|---|---|
| 09/06/2018 | | information, you may contact the Transcriber Access Transcripts LLC, Telephone number 855-873-2223. Purchasing Party: Wendi Thomas. Morning Session Only Redaction Request Due By 09/27/2018. Redacted Transcript Submission Due By 10/9/2018. Transcript access will be restricted through 12/5/2018. (ACCESS TRANSCRIPTS, LLC) Modified on 9/7/2018 to reflect corrected hearing date of 02/25/15 (Gallagher, DA). (Entered: 09/06/2018) |
| 09/06/2018 | 393 (4 pgs) | Notice of Entry of Order Filed by LAURY MILES MACAULEY on behalf of MACAULEY LAW GROUP, P.C. (Related document(s)391 Order on Motion to Withdraw as Attorney of Record) (MACAULEY, LAURY) (Entered: 09/06/2018) |
| 09/06/2018 | 396 (1 pg) | Notice of Filing Official Transcript. Related document(s) 392 . (admin) (Entered: 09/06/2018) |
| 09/07/2018 | 398 (15 pgs) | Opposition Filed by ANTHONY THOMAS (Related document(s)353 Motion for Turnover filed by Trustee JERI COPPA-KNUDSON.) (lms) (Entered: 09/10/2018) |
| 09/09/2018 | 397 (4 pgs) | BNC Certificate of Mailing - pdf (Related document(s)396 Notice of Filing Official Transcript (BNC-BK)) No. of Notices: 66. Notice Date 09/09/2018. (Admin.) (Entered: 09/09/2018) |
| 09/10/2018 | 399 (7 pgs) | Certificate of Service Filed by LAURY MILES MACAULEY on behalf of MACAULEY LAW GROUP, P.C. (Related document(s)393 Notice of Entry of Order filed by Interested Party MACAULEY LAW GROUP, P.C.) (MACAULEY, LAURY) (Entered: 09/10/2018) |
| 09/11/2018 | 400 | **Minute Entry** Re: hearing Continued. **CHANGE AS TO START TIME ONLY** (related document(s): 358 Motion to Withdraw as Attorney of Record filed by MACAULEY LAW GROUP, P.C.) Status Hearing to be held on 09/13/2018 at 01:30 PM at BTB RN-Courtroom 2, Young Bldg.. (ias) (Entered: 09/11/2018) |
| 09/11/2018 | 401 | **Minute Entry** Re: hearing Continued. **CHANGE AS TO START TIME ONLY** (related document(s): 353 Motion for Turnover filed by JERI COPPA-KNUDSON) (Hearing scheduled 09/13/2018 at 01:30 PM at BTB RN-Courtroom 2, Young Bldg.. (ias) (Entered: 09/11/2018) |
| **09/11/2018** | 402 (1 pg) | Notice of Docketing Error (Related document(s)394 Notice filed by Debtor ANTHONY THOMAS, 395 Document filed by Debtor ANTHONY THOMAS, 398 Opposition filed by Debtor ANTHONY THOMAS) (lms) (Entered: 09/11/2018) |
| 09/11/2018 | 403 (6 pgs) | Reply with Certificate of Service Filed by JEFFREY L HARTMAN on behalf of JERI COPPA-KNUDSON (Related document(s) 398 Opposition filed by Debtor ANTHONY THOMAS. ) (HARTMAN, JEFFREY). Modified on 9/12/2018 to relate to #398 in place of #353 (Gallagher, DA). (Entered: 09/11/2018) |
| 09/11/2018 | 404 (5 pgs) | Declaration Of: Jeffrey Hartman with Certificate of Service Filed by JEFFREY L HARTMAN on behalf of JERI COPPA-KNUDSON (Related document(s)403 Reply filed by Trustee JERI COPPA-KNUDSON) (HARTMAN, JEFFREY) (Entered: 09/11/2018) |

| | | |
|---|---|---|
| 09/12/2018 | 405 (5 pgs) | Notice of Received Correpondence with Certificate of Service Filed by JEFFREY L HARTMAN on behalf of JERI COPPA-KNUDSON (Related document(s)353 Motion for Turnover filed by Trustee JERI COPPA-KNUDSON) (HARTMAN, JEFFREY) (Entered: 09/12/2018) |
| 09/13/2018 | 406 (171 pgs) | Opposition to Reply Brief Filed by ANTHONY THOMAS (Related document(s)404 Declaration filed by Trustee JERI COPPA-KNUDSON.) (lms) (Entered: 09/13/2018) |
| 09/13/2018 | 407 (3 pgs) | BNC Certificate of Mailing. (Related document(s)402 Notice of Docketing Error) No. of Notices: 1. Notice Date 09/13/2018. (Admin.) (Entered: 09/13/2018) |
| 09/17/2018 | 408 (2 pgs) | Order to Continue Hearing Hearing scheduled 10/19/2018 at 10:00 AM at BTB RN-Courtroom 2, Young Bldg.. (Related document(s)353 Motion for Turnover filed by Trustee JERI COPPA-KNUDSON.) (dag) (Entered: 09/17/2018) |
| 09/28/2018 | 409 | Hearing Scheduled/Rescheduled. Hearing scheduled 10/16/2018 at 02:00 PM at BTB RN-Courtroom 2, Young Bldg.. (Related document(s)395 Motion for Judicial Notice filed by Debtor ANTHONY THOMAS) (ias) (Entered: 09/28/2018) |
| 09/28/2018 | 410 (1 pg) | Notice of Hearing. PER COURT INSTRUCTION Hearing RESCHEDULED 10/19/2018 at 10:00 AM at BTB RN-Courtroom 2, Young Bldg.. (Related document(s)395 Motion for Judicial Notice filed by Debtor ANTHONY THOMAS) (ias) (Entered: 09/28/2018) |
| 09/28/2018 | 411 (28 pgs) | [Proposed] Order Taking Judicial Notice Of Law & Facts Filed by ANTHONY THOMAS (Related document(s)353 Motion for Turnover filed by Trustee JERI COPPA-KNUDSON) (cly) (Entered: 09/28/2018) |
| 09/28/2018 | 412 (4 pgs) | Declaration Of: Anthony Thomas with Certificate of Service Filed by ANTHONY THOMAS (Related document(s)353 Motion for Turnover filed by Trustee JERI COPPA-KNUDSON, 411 Document filed by Debtor ANTHONY THOMAS) (cly) (Entered: 09/28/2018) |
| 09/30/2018 | 413 (3 pgs) | BNC Certificate of Mailing. (Related document(s)410 Notice of Hearing (BNC-BK and/or ADV only)) No. of Notices: 7. Notice Date 09/30/2018. (Admin.) (Entered: 09/30/2018) |
| 10/02/2018 | 414 (74 pgs) | Transcript regarding Hearing Held on 09/13/18. The transcript may be viewed at the Bankruptcy Court Clerk's Office. For additional information, you may contact the Transcriber Access Transcripts, LLC, Telephone number 855-873-2223. Purchasing Party: Judge Beesley. Redaction Request Due By 10/23/2018. Redacted Transcript Submission Due By 11/2/2018. Transcript access will be restricted through 12/31/2018. (ACCESS TRANSCRIPTS, LLC) (Entered: 10/02/2018) |
| | 415 (74 pgs) | Amended Transcript regarding Hearing Held on 09/13/18. The transcript may be viewed at the Bankruptcy Court Clerk's Office. For |

| | | |
|---|---|---|
| 10/02/2018 | | additional information, you may contact the Transcriber Access Transcripts, LLC, Telephone number 855-873-2223. Purchasing Party: Judge Beesley. Redaction Request Due By 10/23/2018. Redacted Transcript Submission Due By 11/2/2018. Transcript access will be restricted through 12/31/2018. (ACCESS TRANSCRIPTS, LLC) (Entered: 10/02/2018) |
| 10/02/2018 | 416 (1 pg) | Notice of Filing Official Transcript. Related document(s) 414 . (admin) (Entered: 10/02/2018) |
| 10/02/2018 | 417 (1 pg) | Notice of Filing Official Transcript. Related document(s) 415 . (admin) (Entered: 10/02/2018) |
| 10/04/2018 | 418 (5 pgs) | Trustee's Response with Certificate of Service Filed by JEFFREY L HARTMAN on behalf of JERI COPPA-KNUDSON (Related document(s)394 Notice filed by Debtor ANTHONY THOMAS.) (HARTMAN, JEFFREY) (Entered: 10/04/2018) |
| 10/04/2018 | 422 (4 pgs) | Points and Authorities Filed by ANTHONY THOMAS (Related document(s)394 Notice filed by Debtor ANTHONY THOMAS) (cly) (Entered: 10/10/2018) |
| 10/04/2018 | 423 (99 pgs) | Declaration Of: Anthony Thomas with Certificate of Service Filed by ANTHONY THOMAS (Related document(s)422 Points and Authorities filed by Debtor ANTHONY THOMAS) (cly) (Entered: 10/10/2018) |
| 10/05/2018 | 419 (4 pgs) | BNC Certificate of Mailing - pdf (Related document(s)416 Notice of Filing Official Transcript (BNC-BK)) No. of Notices: 66. Notice Date 10/05/2018. (Admin.) (Entered: 10/05/2018) |
| 10/05/2018 | 420 (4 pgs) | BNC Certificate of Mailing - pdf (Related document(s)417 Notice of Filing Official Transcript (BNC-BK)) No. of Notices: 66. Notice Date 10/05/2018. (Admin.) (Entered: 10/05/2018) |
| 10/09/2018 | 421 (1 pg) | Notice of Hearing. Hearing RESCHEDULED 11/2/2018 at 02:00 PM at BTB RN-Courtroom 2, Young Bldg.. (Related document(s)353 Motion for Turnover filed by Trustee JERI COPPA-KNUDSON, 395 Document filed by Debtor ANTHONY THOMAS) (ias) (Entered: 10/09/2018) |
| 10/11/2018 | 424 (3 pgs) | BNC Certificate of Mailing. (Related document(s)421 Notice of Hearing (BNC-BK and/or ADV only)) No. of Notices: 7. Notice Date 10/11/2018. (Admin.) (Entered: 10/11/2018) |
| 10/15/2018 | 425 (14 pgs) | Declaration Of: Anthony G. Thomas with Certificate of Service Filed by ANTHONY THOMAS (Related document(s)394 Notice filed by Debtor ANTHONY THOMAS) (cly) (Entered: 10/16/2018) |
| 10/15/2018 | 426 (61 pgs) | Exhibit List of Documents Filed by ANTHONY THOMAS (Related document(s)394 Notice filed by Debtor ANTHONY THOMAS) (cly) (Entered: 10/16/2018) |
| | | Declaration Of: Anthony Thomas with Certificate of Service Filed by |

| | | |
|---|---|---|
| 11/02/2018 | 427 (49 pgs) | ANTHONY THOMAS (Related document(s)353 Motion for Turnover filed by Trustee JERI COPPA-KNUDSON, 395 Document filed by Debtor ANTHONY THOMAS) (cly) (Entered: 11/02/2018) |
| 11/08/2018 | 428 (4 pgs) | Ex Parte Motion for 2004 Examination of Dorothy Thomas with Proposed Order Filed by JEFFREY L HARTMAN on behalf of JERI COPPA-KNUDSON (HARTMAN, JEFFREY) (Entered: 11/08/2018) |
| 11/13/2018 | 429 (1 pg) | Order Granting Motion for 2004 Examination (Related document(s) 428 ) (cly) (Entered: 11/13/2018) |
| 11/29/2018 | 430 (4 pgs) | Motion to Sell Filed by JEFFREY L HARTMAN on behalf of JERI COPPA-KNUDSON (HARTMAN, JEFFREY) (Entered: 11/29/2018) |
| 11/29/2018 | 431 (6 pgs) | Declaration Of: Hudson Stremmel Filed by JEFFREY L HARTMAN on behalf of JERI COPPA-KNUDSON (Related document(s)430 Motion to Sell filed by Trustee JERI COPPA-KNUDSON) (HARTMAN, JEFFREY) (Entered: 11/29/2018) |
| 11/29/2018 | 432 (2 pgs) | Notice of Hearing Hearing Date: 01/08/2019 Hearing Time: 2:00 p.m. Filed by JEFFREY L HARTMAN on behalf of JERI COPPA-KNUDSON (Related document(s)430 Motion to Sell filed by Trustee JERI COPPA-KNUDSON) (HARTMAN, JEFFREY) (Entered: 11/29/2018) |
| 11/29/2018 | 433 (4 pgs) | Application for Compensation for JERI COPPA-KNUDSON , Fees: $3225.00, Expenses: $1231.00. (Related document(s)430 ) Filed by JERI COPPA-KNUDSON (cly) Docketed for missed relief (Entered: 11/30/2018) |
| 11/30/2018 | 434 | Hearing Scheduled/Rescheduled. Hearing scheduled 1/8/2019 at 02:00 PM at BTB RN-Courtroom 2, Young Bldg.. (Related document(s)430 Motion to Sell filed by Trustee JERI COPPA-KNUDSON, 433 Application for Compensation filed by Trustee JERI COPPA-KNUDSON) (cly) (Entered: 11/30/2018) |
| 12/03/2018 | 435 (7 pgs) | Certificate of Service Filed by JEFFREY L HARTMAN on behalf of JERI COPPA-KNUDSON (Related document(s)430 Motion to Sell filed by Trustee JERI COPPA-KNUDSON, 431 Declaration filed by Trustee JERI COPPA-KNUDSON, 432 Notice of Hearing filed by Trustee JERI COPPA-KNUDSON) (HARTMAN, JEFFREY) (Entered: 12/03/2018) |
| TR 11-2-2018 12/11/2018 | 436 | Transcript regarding Hearing Held on 11/02/18. The transcript may be viewed at the Bankruptcy Court Clerk's Office. For additional information, you may contact the Transcriber Access Transcripts, LLC, Telephone number 855-873-2223. Purchasing Party: Anthony Thomas. Redaction Request Due By 01/2/2019. Redacted Transcript Submission Due By 01/11/2019. Transcript access will be restricted through 03/11/2019. (ACCESS TRANSCRIPTS, LLC) (Entered: 12/11/2018) |
| | 437 | Notice of Filing Official Transcript. Related document(s) 436 . |

| | | |
|---|---|---|
| 12/11/2018 | (1 pg) | (admin) (Entered: 12/11/2018) |
| 12/14/2018 | 438 (4 pgs) | BNC Certificate of Mailing - pdf (Related document(s)437 Notice of Filing Official Transcript (BNC-BK)) No. of Notices: 66. Notice Date 12/14/2018. (Admin.) (Entered: 12/14/2018) |
| 12/17/2018 | 439 (214 pgs; 2 docs) | Motion to Continue/Reschedule Hearing , Motion for Order Shortening Time, With Certificate of Service Filed by ANTHONY THOMAS (Related document(s)430 Motion to Sell filed by Trustee JERI COPPA-KNUDSON) (Attachments: # 1 Appendix continued)(lms) Modified on 12/18/2018 to add With Certificate of Service (Gallagher, DA). (Entered: 12/17/2018) |
| 12/21/2018 | 440 | Transcript regarding Hearing Held on 12/17/18. The transcript may be viewed at the Bankruptcy Court Clerk's Office. For additional information, you may contact the Transcriber Access Transcripts, Telephone number 855-873-2223. Purchasing Party: Anthony Thomas. Redaction Request Due By 01/11/2019. Redacted Transcript Submission Due By 01/22/2019. Transcript access will be restricted through 03/21/2019. (ACCESS TRANSCRIPTS, LLC) (Entered: 12/21/2018) |
| 12/21/2018 | 441 (1 pg) | Notice of Filing Official Transcript. Related document(s) 440 . (admin) (Entered: 12/21/2018) |
| 12/26/2018 | 442 (4 pgs) | BNC Certificate of Mailing - pdf (Related document(s)441 Notice of Filing Official Transcript (BNC-BK)) No. of Notices: 66. Notice Date 12/26/2018. (Admin.) (Entered: 12/26/2018) |
| 12/27/2018 | 443 (1 pg) | Notice of Hearing. Hearing rescheduled 2/22/2019 at 10:00 AM at BTB RN-Courtroom 2, Young Bldg.. (Related document(s)430 Motion to Sell filed by Trustee JERI COPPA-KNUDSON) (ias) (Entered: 12/27/2018) |
| 12/29/2018 | 444 (4 pgs) | BNC Certificate of Mailing. (Related document(s)443 Notice of Hearing (BNC-BK and/or ADV only)) No. of Notices: 66. Notice Date 12/29/2018. (Admin.) (Entered: 12/29/2018) |
| 01/03/2019 | 445 | Hearing Scheduled/Rescheduled. DISCOVERY DISPUTE Hearing scheduled 1/4/2019 at 10:00 AM at BTB RN-Courtroom 2, Young Bldg.. (Related document(s)430 Motion to Sell filed by Trustee JERI COPPA-KNUDSON) (ias) (Entered: 01/03/2019) |
| 01/03/2019 | 446 (1 pg) | Notice of Hearing. PER COURT INSTRUCTION Hearing rescheduled 2/22/2019 at 10:00 AM at BTB RN-Courtroom 2, Young Bldg.. (Related document(s)433 Application for Compensation filed by Trustee JERI COPPA-KNUDSON) (ias) (Entered: 01/03/2019) |
| 01/05/2019 | 447 (3 pgs) | BNC Certificate of Mailing. (Related document(s)446 Notice of Hearing (BNC-BK and/or ADV only)) No. of Notices: 7. Notice Date 01/05/2019. (Admin.) (Entered: 01/05/2019) |
| | 448 | Transcript regarding Hearing Held on 01/04/19. The transcript may be |

| | | |
|---|---|---|
| 01/10/2019 | | viewed at the Bankruptcy Court Clerk's Office. For additional information, you may contact the Transcriber Access Transcripts, Telephone number 855-873-2223. Purchasing Party: Anthony Thomas. Redaction Request Due By 01/31/2019. Redacted Transcript Submission Due By 02/11/2019. Transcript access will be restricted through 04/10/2019. (ACCESS TRANSCRIPTS, LLC) (Entered: 01/10/2019) |
| 01/10/2019 | 449 (1 pg) | Notice of Filing Official Transcript. Related document(s) 448 . (admin) (Entered: 01/10/2019) |
| 01/13/2019 | 450 (4 pgs) | BNC Certificate of Mailing - pdf (Related document(s)449 Notice of Filing Official Transcript (BNC-BK)) No. of Notices: 64. Notice Date 01/13/2019. (Admin.) (Entered: 01/13/2019) |
| 01/17/2019 | 451 R (3 pgs) | Order to Set Hearing Evidentiary Hearing scheduled for 3/22/2019 at 10:00 AM at BTB RN-Courtroom 2, Young Bldg.. (Related document(s)430 R Motion to Sell filed by Trustee JERI COPPA-KNUDSON.) (cly) (Entered: 01/17/2019) |
| 01/17/2019 | 452 (6 pgs) | Certificate of Service Filed by JEFFREY L HARTMAN on behalf of JERI COPPA-KNUDSON (Related document(s)430 R Motion to Sell filed by Trustee JERI COPPA-KNUDSON, 451 R Order to Set Hearing) (HARTMAN, JEFFREY) (Entered: 01/17/2019) |
| 01/18/2019 | 453 | Hearing Scheduled/Rescheduled. Status Hearing to be held on 2/22/2019 at 03:00 PM at BTB RN-Courtroom 2, Young Bldg.. (Related document(s)430 R Motion to Sell filed by Trustee JERI COPPA-KNUDSON) (cly) (Entered: 01/18/2019) |
| **02/04/2019** | 454 **(3 pgs)** | Notice Filed by JEFFREY L HARTMAN on behalf of JERI COPPA-**KNUDSON (HARTMAN, JEFFREY) (Entered: 02/04/2019)** |
| 02/04/2019 | 455 (4 pgs; 2 docs) | Declaration Of: Trustee Jeri Coppa-Knudson Filed by JEFFREY L HARTMAN on behalf of JERI COPPA-KNUDSON (Related document(s)454 Notice filed by Trustee JERI COPPA-KNUDSON) (Attachments: # 1 Exhibit A) (HARTMAN, JEFFREY) (Entered: 02/04/2019) |
| 02/04/2019 | 456 (2 pgs) | Notice of Hearing Hearing Date: 03/06/19 Hearing Time: 10:00 a.m. Filed by JEFFREY L HARTMAN on behalf of JERI COPPA-KNUDSON (Related document(s)454 Notice filed by Trustee JERI COPPA-KNUDSON) (HARTMAN, JEFFREY). Modified on 2/5/2019 to remove relationship to #455 (Ivey, SD). (Entered: 02/04/2019) |
| 02/05/2019 | 457 (7 pgs) | Certificate of Service Filed by JEFFREY L HARTMAN on behalf of JERI COPPA-KNUDSON (Related document(s)454 Notice filed by Trustee JERI COPPA-KNUDSON, 455 Declaration filed by Trustee JERI COPPA-KNUDSON, 456 Notice of Hearing filed by Trustee JERI COPPA-KNUDSON) (HARTMAN, JEFFREY) (Entered: 02/05/2019) |
| 02/05/2019 | 458 | Hearing Scheduled/Rescheduled. Hearing scheduled 3/6/2019 at 10:00 AM at BTB RN-Courtroom 2, Young Bldg.. (Related document(s)454 Notice filed by Trustee JERI COPPA-KNUDSON) (cly) (Entered: 02/05/2019) |

| | | |
|---|---|---|
| 02/07/2019 | 459 (1 pg) | Notice of Hearing. PER COURT INSTRUCTION Hearing scheduled 3/22/2019 at 10:00 AM at BTB RN-Courtroom 2, Young Bldg.. (Related document(s)433 Application for Compensation filed by Trustee JERI COPPA-KNUDSON) (ias) (Entered: 02/07/2019) |
| 02/09/2019 | 460 (4 pgs) | BNC Certificate of Mailing. (Related document(s)459 Notice of Hearing (BNC-BK and/or ADV only)) No. of Notices: 64. Notice Date 02/09/2019. (Admin.) (Entered: 02/09/2019) |
| 02/20/2019 | 464 (19 pgs) | Certificate of Service Filed by MICK JOSEPH (Related document(s)398 Opposition filed by Debtor ANTHONY THOMAS, 461 Declaration filed by Debtor ANTHONY THOMAS, 462 Declaration filed by Interested Party DOROTHY THOMAS, 463 Declaration filed by Creditor CHRIS PERNA) (cly) (Entered: 02/22/2019) |
| 02/21/2019 | 461 (10 pgs) | Declaration Of: Anthony G. Thomas Filed by ANTHONY THOMAS (Related document(s)398 Opposition filed by Debtor ANTHONY THOMAS) (cly) (Entered: 02/22/2019) |
| 02/21/2019 | 462 (3 pgs) | Declaration Of: Dorothy Thomas with Certificate of Service Filed by DOROTHY THOMAS (Related document(s)398 Opposition filed by Debtor ANTHONY THOMAS) (cly) (Entered: 02/22/2019) |
| 02/21/2019 | 463 (6 pgs) | Declaration Of: Chris Perna Filed by CHRIS PERNA (Related document(s)398 Opposition filed by Debtor ANTHONY THOMAS) (cly) (Entered: 02/22/2019) |
| 02/27/2019 | 465 (5 pgs; 2 docs) | Reply Filed by JEFFREY L HARTMAN on behalf of JERI COPPA-KNUDSON (Related document(s)461 Declaration filed by Debtor ANTHONY THOMAS, 462 Declaration filed by Interested Party DOROTHY THOMAS, 463 Declaration filed by Creditor CHRIS PERNA.) (Attachments: # 1 Exhibit A) (HARTMAN, JEFFREY). Modified on 2/28/2019 to remove relationship to #454 and #455 (Ivey, SD). (Entered: 02/27/2019) |
| 02/27/2019 | 466 (2 pgs) | Certificate of Service Filed by JEFFREY L HARTMAN on behalf of JERI COPPA-KNUDSON (Related document(s)465 Reply filed by Trustee JERI COPPA-KNUDSON) (HARTMAN, JEFFREY) (Entered: 02/27/2019) |
| 03/01/2019 | 467 | Transcript Ordered. Acknowledgement of Request for Transcript of Testimony Received on 3/1/2019. Hearing held on 2/22/2019. Ordering Party: Tony Thomas. The Reporter Expects to Have the Transcript Completed by 3/4/2019. (ACCESS TRANSCRIPTS, LLC) (Entered: 03/01/2019) |
| 03/04/2019 | 468 | Transcript regarding Hearing Held on 02/22/19. The transcript may be viewed at the Bankruptcy Court Clerk's Office. For additional information, you may contact the Transcriber Access Transcripts, Telephone number 855-873-2223. Purchasing Party: Anthony Thomas. Redaction Request Due By 03/25/2019. Redacted Transcript Submission Due By 04/4/2019. Transcript access will be restricted through 06/3/2019. (ACCESS TRANSCRIPTS, LLC) (Entered: 03/04/2019) |

| | | |
|---|---|---|
| 03/04/2019 | 469 (1 pg) | Notice of Filing Official Transcript. Related document(s) 468 . (admin) (Entered: 03/04/2019) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 03/07/2019 08:32:26 | | | |
| PACER Login: | atemerald2:5665516:0 | Client Code: | |
| Description: | Docket Report | Search Criteria: | 14-50333-btb Fil or Ent: filed Doc From: 347 Doc To: 469 Term: included Format: html Page counts for documents: included |
| Billable Pages: | 10 | Cost: | 1.00 |

Declaration via e:mail dated 1-17-2019 from Sid Lambersky Re: Overstock.com Negotiations

EXHIBIT 2

EXHIBIT 2

 Anthony Thomas <atemerald2@gmail.com>

## DECLARATION RE: OVERSTOCK EMERALD CONTRACT NEGOTIATIONS

**Sid Lambersky** <sidlambersky@icloud.com> Thu, Jan 17, 2019 at 8:07 AM
To: Anthony Thomas <atemerald2@gmail.com>

Hi Tony,

I believe the attached is the final agreement that was sent to the Trustee. My other copies have a lot of redlines in them. We stopped hearing from the Trustee and decided to move on. I am confident that if we knew about the auction Overstock.com would have bid on it. I certainly do remember notice that it was available at auction.

Here is what I believe you are seeking and this is from the attached agreement, I believe this was the agreement that I sent to the Trustee.

2.2) Expenses. Trustee shall be responsible to reimburse Agent for all Expenses (as defined herein) upon sale of the Emerald. Trustee may review or audit the Expenses at any time. As used herein, "Expenses" shall mean the operating expenditures of Agent which arise during the Term and are related to the sale of the Emerald. Expenses shall include, without limitation, reasonable travel costs; consultant or appraisal fees; temporary labor costs; costs related to development of photo, video, print, website design, marketing email and other marketing materials; customer list acquisition; reasonable insurance policies (if applicable); and public relations efforts. Expenses shall also include a reasonable cost for exposure on Agent's website, Overstock.com. Expenses shall not include: (i) rent or related occupancy costs; (ii) employee benefits; (iii) any rent or other occupancy expenses; (iv) costs of maintaining and operating Agent's website.

2.2.1) Expense Budget. Agent shall be limited to an initial budget for Expenses of two hundred and fifty thousand dollars ($250,000). The budget may be modified by mutual written agreement of the parties and, if required, approval of the Bankruptcy Court.

However the following is from I believe a draft:

b) Expenses. Debtor's estate shall be responsible to reimburse Agent for all Expenses (as defined herein). Such reimbursement of Expenses shall come either from the Proceeds; or if there are no Proceeds, shall be deemed to be a valid superpriority claim against the Debtor's estate. Trustee may review or audit the Expenses

at any time. As used herein, "Expenses" shall mean the operating expenditures of Agent which arise during the Term and are related to the sale of the Emerald. Expenses shall include, without limitation, reasonable travel costs; consultant or appraisal fees; temporary labor costs; costs related to development of photo, video, print, website design, marketing email and other marketing materials; customer list acquisition; reasonable insurance policies (if applicable); and public relations efforts. Expenses shall also include a reasonable value for exposure on Overstock.com. Expenses shall not include: (i) rent or related occupancy costs; (ii) employee benefits; (iii) any other occupancy expenses; (iv) costs of maintaining and operating Agent's website unrelated to the Marketing Services.

Seth Marks and I were and are seasoned bankruptcy professionals, and there is NO way we were asking for $250,000 up front. We believed we had to spend the money to make the deal happen. Overstock had agreed to this.

We had inhouse counsel Edward Christenson review/draft the agreement and it was also reviewed by Stanton Huntington.

Good luck.

***Sid***

Sid Lambersky

801-441-9351

sidlambersky@icloud.com

**Agency Agreement v1 OSTK-SMH 20141219.docx**
40K

## AGENCY AGREEMENT

This Agency Agreement (the "Agreement") is entered into as of this ___ day of _____________, 2015, ("Effective Date") by and between Overstock.com, Inc., a Utah corporation ("Agent"), and Jeri Coppa-Knudsen ("Trustee," and together with Agent, the "Parties") as the duly appointed and authorized Chapter 7 trustee of the estate in the bankruptcy case of Mr. Anthony Thomas.

WHEREAS, on _______________, Mr. Anthony Thomas ("Debtor") filed a petition for relief under chapter 7 of Title 11, United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Nevada, ________ Division (the "Bankruptcy Court"). Trustee's chapter 7 case is currently pending before the Bankruptcy Court under case number __________ ("Bankruptcy Case").

WHEREAS, Trustee is appointed to take whatever measures allowed under the Bankruptcy Code including the potential liquidation of the bankruptcy estate's assets.

WHEREAS, Trustee has taken possession of an emerald, known as the Thomas Emerald, described further in the document attachment hereto as Exhibit A (the "Emerald"), and desires that Agent act as Trustee's exclusive marketing agent for the limited purpose of (a) marketing to potential buyers of the Emerald; and (b) referring those buyers to Trustee for further due diligence and potentially to purchase the Emerald through the process defined by the Trustee or its designee.

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Agent and Trustee hereby agree as follows:

1) Appointment of Agent. Effective on the date hereof and subject to the entry of the Approval Order, Trustee hereby irrevocably appoints Agent, and Agent hereby agrees to serve, as Trustee's agent for the limited purpose of (i) marketing to potential buyers of the Emerald; and (ii) referring interested buyers to the Trustee or Trustee's designee, for potential purchase of the Emerald, in accordance with the terms and conditions of this Agreement ("Marketing Services").

1.1) Exclusivity. Agent will be Trustee's exclusive provider of Marketing Services for the Term ("Term" defined below).

1.2) Term of Appointment. The term of this Agreement shall be for 1 year from the Effective Date ("Initial Term"), and may be extended upon mutual written agreement of the parties for additional periods (if applicable, each, a "Renewal Term" and with the Initial Term, the "Term").

1.3) Termination. This Agreement may be terminated anytime as follows:

a) by mutual written consent of the Trustee and Agent;

b) automatically and without any action or notice by either Agent or Trustee, immediately upon the occurrence of any of the following events:

(i) the issuance of a final and non-appealable order by any agency, division, subdivision, or governmental or regulatory authority, or any adjudicatory body thereof, of the United

States or any state thereof, any foreign government or state or any municipal or other political subdivision thereof to restrain, enjoin, or otherwise prohibit the transfer of the Emerald; or

(ii) if the Bankruptcy Case is converted into a case under a different Chapter of the Bankruptcy Code or dismissed;

(c) a party may terminate this Agreement upon written notice if the other party breaches a term of the Agreement and fails to remedy the breach within ten (10) days of receiving notice of such breach;

(d) by one party providing ninety (90) days' prior written notice to the other party.

2) Agent Compensation and Expense Reimbursement. Agent shall receive reimbursement for its expenses as set forth below, and shall be paid a commission based on the final sales price of the Emerald, which shall be the total amount offered before subtracting any deductions, reimbursements, credits or exclusions ("Proceeds").

2.1) Commission Payment. In exchange for providing the Marketing Services, Trustee agrees to pay Agent a commission in the amount of a percentage of the Proceeds ("Commission"). The percentage shall be calculated as follows:

a) If the Emerald is sold during the Term, or is sold at any time to any buyer referred to the Trustee as a result of the efforts of Agent regardless of whether this Agreement is still in force, the Commission shall be five percent (5%) of the Proceeds;

b) If the Emerald is sold any time after the Term, or after termination of this Agreement for any reason, the Commission shall be three percent (3%) of the Proceeds.

2.2) Expenses. Trustee shall be responsible to reimburse Agent for all Expenses (as defined herein) upon sale of the Emerald. Trustee may review or audit the Expenses at any time. As used herein, "Expenses" shall mean the operating expenditures of Agent which arise during the Term and are related to the sale of the Emerald. Expenses shall include, without limitation, reasonable travel costs; consultant or appraisal fees; temporary labor costs; costs related to development of photo, video, print, website design, marketing email and other marketing materials; customer list acquisition; reasonable insurance policies (if applicable); and public relations efforts. Expenses shall also include a reasonable cost for exposure on Agent's website, Overstock.com. Expenses shall not include: (i) rent or related occupancy costs; (ii) employee benefits; (iii) any rent or other occupancy expenses; (iv) costs of maintaining and operating Agent's website.

2.2.1) Expense Budget. Agent shall be limited to an initial budget for Expenses of two hundred and fifty thousand dollars ($250,000). The budget may be modified by mutual written agreement of the parties and, if required, approval of the Bankruptcy Court.

3) Approval Order. On or about _______, __, 2015, Trustee intends to file a motion with the United States Bankruptcy Court, which motion shall seek entry of an order approving this Agreement and authorizing Agent to perform the Marketing Services in accordance with the terms hereof (the "Approval Order") . The Approval Order shall provide, in a form reasonably satisfactory to the Trustee and Agent, among other things that:

(i)        this Agreement is approved in its entirety;

(ii)       Trustee and Agent shall be authorized to continue to take any and all actions as may be necessary or desirable to implement this Agreement;

(iii)      Agent shall be entitled to advertise the Emerald as free and clear of all liens, claims or encumbrances thereon;

(iv)      Agent shall have the right to use any documentation or information provided by the Trustee or any party it designates to act on its behalf ("Designee") for the purpose of performing the Marketing Services;

(v)       Agent, as agent for Trustee, is authorized to conduct, advertise, and otherwise promote the Sale as a trustee's sale, liquidation, or similar themed sale, or as set forth in the Sale Guidelines (as the same may be modified and approved by the Bankruptcy Court) and without regard to the Liquidation Sale Laws, subject to compliance with Approval Order;

(vi)      Agent shall be granted a limited license and right to use the trademarks, trade names, and logos relating to and used in connection with the Emerald throughout the Term, solely for the purpose of advertising the Sale in accordance with the terms of this Agreement;

(vii)     all newspapers and other advertising media in which the Sale is advertised shall be directed to accept the Approval Order as binding and to allow Trustee and Agent to consummate the transactions provided for in this Agreement, including, without limitation, conducting the Marketing Services in the manner contemplated by this Agreement;

(viii)    the Bankruptcy Court shall retain jurisdiction over the parties to enforce this Agreement;

(ix)      Agent shall not be liable for any claims against the Trustee other than as expressly provided for in this Agreement;

(x)       subject to Agent having satisfied its obligations hereunder, any amounts owed to Agent under this Agreement shall be granted the status of superpriority claims in Trustee's Bankruptcy Case pursuant to section 364(c) of the Bankruptcy Code senior to all other superpriority claims, including, without limitation, to the superpriority claims of the creditors, if any;

(xi)      Agent shall be granted a valid, binding, enforceable and perfected security interest without the necessity of filing financing statements to perfect the security interests;

(xii)     the Bankruptcy Court finds that time is of the essence in effectuating this Agreement and proceeding with the Marketing Services uninterrupted;

(xiii)    Trustee's decisions to (a) enter into this Agreement and (b) perform under and make payments required by this Agreement is a reasonable exercise of the Trustee 's sound business judgment consistent with its fiduciary duties and is in the best interests of the bankruptcy estate, its creditors, and other parties in interest;

(xiv)    this Agreement was negotiated in good faith and at arms' length between the Trustee and Agent and that Agent is entitled to the protection of the applicable provisions in Section 363 of the Bankruptcy Code;

(xv)    Agent's performance under this Agreement will be, and payment of any Commission, under this Agreement will be made, in good faith and for valid business purposes and uses, as a consequence of which Agent is entitled to the protection and benefits of Sections 363(m) and 364(e) of the Bankruptcy Code; and

(xvi)    in the event any of the provisions of the Approval Order are modified, amended or vacated by a subsequent order of the Bankruptcy Court or any other court, Agent shall be entitled to the protections provided in Sections 363(m) and 364(e) of the Bankruptcy Code, and no such appeal, modification, amendment or vacatur shall affect the validity and enforceability of the sale or the liens or priority authorized or created under this Agreement or the Approval Order.

4) Conduct of Marketing Services. Agent shall perform the Marketing Services in the name of and on behalf of Trustee in a commercially reasonable manner and in compliance with the terms of this Agreement and, except as modified by the Approval Order, all governing laws and applicable agreements to which Trustee is a party. Agent shall perform the Marketing Services in accordance with the Sale Guidelines, if any, annexed hereto as Exhibit ___ and approved by the Approval Order, whether such services shall be delivered by media advertising, email marketing, or other promotional materials. Trustee shall have the right to monitor the Marketing Services and activities attendant thereto so long as Trustee's monitoring does not unreasonably disrupt the Marketing Services. Agent agrees that Trustee will conduct the sale and Agent will remain, at all times, a service provider to Trustee for the limited purpose of providing the Marketing Services. Trustee will conduct the sale in accordance with the Sale Guidelines.

4.1) Right to advertise. Agent shall have the discretion to develop and use any advertising and promotional programs consistent with a Trustee's sale, and as otherwise provided in the Approval Order and the Sale Guidelines, if any, as and where applicable (including, without limitation, by means of media advertising, photo, audio, video, print advertisements, advertising on the Overstock.com website and similar marketing efforts).

4.2) Buyer Terms of Sale. Trustee, with the help of Agent if so requested, shall create terms and conditions dictating the policies and procedures that shall govern the sale of the Emerald ("Buyer Terms of Sale"). At all times throughout the Term, Agent shall provide access to such Buyer Terms of Sale. The Buyer Terms of Sale shall include, among other things, a statement that Agent will not warrant the Emerald in any manner.

4.3) Authority. Except as otherwise specifically provided in this Agreement, Agent shall have no authority, and shall not represent that it has any authority, to enter into any contract, agreement, or other arrangement or take any other action by or on behalf of Trustee, that would have the effect of creating any obligation or liability, present or contingent, on behalf of or for the account of Trustee without Trustee's prior written consent.

4.4) Taxes. Any taxes due and payable as a result of this Agreement shall be borne by the party to whom such tax is attributable. Agent shall have no further obligation to the Trustee, the buyer, any

taxing authority, or any other party, and Trustee shall indemnify and hold harmless Agent and its officers, directors, employees, agents and Supervisors (collectively, "Agent Indemnified Parties") from and against all claims, demands, assessments, penalties, losses, liability or damage, including, without limitation, reasonable attorneys' fees and expenses, directly or indirectly asserted against, resulting from or related to the failure by Trustee or buyer to promptly pay such taxes to the proper taxing authorities and/or the failure by Trustee to promptly file with such taxing authorities all reports and other documents required by applicable law to be filed with or delivered to such taxing authorities.

5) Conditions Precedent to Agent's Obligations. The willingness of Agent to enter into the transactions contemplated under this Agreement is directly conditioned upon the satisfaction of the following conditions at the time or during the time periods indicated, unless specifically waived in writing by Agent:

5.1) All representations and warranties of Trustee hereunder shall be true and correct in all material respects;

5.2) The Bankruptcy Court shall have entered the Approval Order, on or before __________, 2015;

5.3) Agent shall have performed an independent inspection and appraisal of the Emerald, on or before ________________ 2015, the results of which must be satisfactory to Agent in order to proceed with the transactions contemplated. Agent shall have sole discretion to waive this condition.

6) Representations and Warranties.

6.1) Trustee's Representations, Warranties, and Covenants. Trustee hereby represents, warrants, and covenants in favor of Agent as follows:

6.1.1) Trustee (i) is a validly appointed bankruptcy trustee; (ii) has all requisite power and authority to enter into this Agreement, conduct the Sale and to carry on its business as presently conducted; and (iii) is, and during the Term will continue to be, duly authorized and qualified to do conduct its business.

6.1.2) Subject to the entry of the Approval Order, Trustee has the right, power, and authority to execute and deliver this Agreement and each other document and agreement contemplated hereby (collectively, together with this Agreement, the "Agency Documents") and to perform fully its obligations hereunder. Subject to the entry of the Approval Order, Trustee has taken all necessary actions required to authorize the execution, delivery, and performance of the Agency Documents, and no further consent or approval on the part of Trustee is required for Trustee to enter into and deliver the Agency Documents, to perform its obligations thereunder, and to consummate the Sale. Subject to the entry of the Approval Order, no court order or decree of any federal, state, local, or provincial governmental authority or regulatory body is in effect that would prevent or materially impair, or is required for Trustee's consummation of, the transactions contemplated by this Agreement, and no consent of any third party that has not been obtained is required therefor, except for any such consent the failure of which to be obtained could not reasonably be expected to have a material adverse effect on the ability of Trustee to execute and deliver this Agreement and perform fully its obligations hereunder. No contract or other agreement to which Trustee is a party or by which Trustee is otherwise bound will prevent or materially impair the consummation of the Sale and the other transactions contemplated by this Agreement.

6.1.3) Trustee has the right, and will own at all times during the Sale Term, the right to convey the Emerald free and clear of all liens, claims, and encumbrances of any nature. And Trustee shall not create, incur, assume, or suffer to exist any security interest, lien, or other charge or encumbrance upon or with respect to the Emerald or the Proceeds, in each case, except for such pre-existing liens and security interests as shall have been disclosed by Trustee to Agent and identified in Exhibit 11.1 (hereof, which liens and security interests shall, pursuant to the Approval Order, attach only to the Guaranteed Amount, the Sharing Amount, the Additional Agent Merchandise Fee, Expenses, and any other amounts payable to Trustee hereunder).

6.1.4) To the best of Trustee's knowledge, the Emerald is in material compliance with all applicable federal, state, and local laws, rules, and standards related to such goods.

6.1.5) Except for (i) the Bankruptcy Case and (ii) the matters set forth on Exhibit 6.1.5, no action, arbitration, suit, notice, or legal, administrative, or other proceeding before any court or governmental body has been instituted by or against Trustee or the Debtor, or has been settled or resolved, or to Trustee's knowledge, is threatened against or affects Trustee or Debtor, which if adversely determined, would adversely affect the conduct of the Marketing Efforts or the Sale.

6.1.6) To Trustee's knowledge, formed after reasonable inquiry, all documents, information and supplements provided by Trustee to Agent in connection with Agent's due diligence and the negotiation of this Agreement were true and accurate in all material respects at the time provided.

6.2) Agent's Representations and Warranties. Agent hereby represents, warrants, and covenants in favor of Trustee as follows:

6.2.1) Agent (i) is a corporation duly and validly existing and in good standing under the laws of the State of Delaware; (ii) has all requisite power and authority to carry on its business as presently conducted and to consummate the transactions contemplated hereby; and (iii) is and during the Sale Term will continue to be duly authorized and qualified as a foreign company to do business and in good standing in each jurisdiction where the nature of its business or properties requires such qualification.

6.2.2) Agent has the right, power, and authority to execute and deliver each of the Agency Documents to which it is a party and to perform fully its obligations thereunder. Agent has taken all necessary actions required to authorize the execution, delivery, and performance of the Agency Documents, and no further consent or approval is required on the part of Agent for Agent to enter into and deliver the Agency Documents, to perform its obligations thereunder, and to consummate the Sale. Each of the Agency Documents has been duly executed and delivered by Agent and constitutes the legal, valid, and binding obligation of Agent enforceable in accordance with its terms. No court order or decree of any federal, provincial, state, or local governmental authority or regulatory body is in effect that would prevent or impair or is required for Agent's consummation of the transactions contemplated by this Agreement, and no consent of any third party which has not been obtained is required therefor other than as provided herein . No contract or other agreement to which Agent is a party or by which Agent is otherwise bound will prevent or impair the consummation of the transactions contemplated by this Agreement.

6.2.3) No action, arbitration, suit, notice, or legal, administrative, or other proceeding before any court or governmental body has been instituted by or against Agent, or has been settled or resolved, or to Agent's knowledge, has been threatened against or affects Agent, which questions the validity of this Agreement or any action taken or to be taken by Agent in connection with this Agreement, or which if adversely determined, would have a material adverse effect upon Agent's ability to perform its obligations under this Agreement.

7) Indemnification.

7.1) Trustee Indemnification. Trustee shall indemnify and hold Agent and each Agent Indemnified Party harmless from and against all claims, demands, penalties, losses, liability, or damage, including, without limitation, reasonable attorneys' fees and expenses, asserted directly or indirectly against Agent resulting from or related to:

7.1.1) Trustee's material breach of or failure to comply with any of its agreements, covenants, representations or warranties contained in any Agency Document;

7.1.2) any failure by Trustee to pay any Sales Taxes to the proper taxing authorities or to properly file with any taxing authorities any reports or documents required by applicable Jaw to be filed in respect thereof;

7.1.3) any consumer warranty or products liability claims relating to the Emerald;

7.1.4) any liability or other claims asserted by creditors, Buyer, or potential buyers, or any other person against any Agent Indemnified Party;

7.1.5) the gross negligence or willful misconduct of Trustee or any of its officers, directors, employees, agents (other than Agent), or representatives.

The indemnification obligations set forth in this Section ____ shall be in addition to (and shall not limit) any other indemnification obligations of Trustee set forth in this Agreement.

7.2) Agent Indemnification. Agent shall indemnify and hold harmless Trustee and the Trustee Indemnified Parties from and against all claims, demands, penalties, losses, liability, or damage, including, without limitation, reasonable attorneys' fees and expenses, asserted directly or indirectly against Trustee resulting from or related to (including acts or omissions of persons or entities affiliated with or acting on behalf of Agent):

7.2.1) Agent's material breach of or failure to comply with any of its agreements, covenants, representations, or warranties contained in any Agency Document;

7.2.2) any claims by any party engaged by Agent as an employee or independent contractor arising out of such engagement;

7.2.3) the gross negligence, willful misconduct, or fraud of Agent or any of its officers, directors, employees, agents, or representatives; and
The indemnification obligations set forth in this Section ____ shall be in addition to (and shall not limit) any other indemnification obligations of Agent set forth in this Agreement.

8) LIMITATION OF LIABILITY. IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR CONSEQUENTIAL, SPECIAL, PUNITIVE, INDIRECT OR INCIDENTAL DAMAGES.

9) Agent's Security Interest. In consideration of and effective upon execution of this Agreement Trustee hereby grants to Agent first priority, senior security interests in and liens (subject to the subordination provisions set forth herein below) upon: (i) the Emerald; and (ii) the Proceeds to secure the full payment and performance of all obligations of Agent hereunder. Upon entry of the Approval Order, the security interest granted to the Agent hereunder shall be deemed properly perfected without the necessity of filing UCC-1 financing statements or any other documentation.

9.1) Without any further act by or on behalf of the Agent or any other party, the Agent's security interests and liens created hereunder are (i) validly created, (ii) effective upon entry of the Approval Order, perfected, and (iii) senior to all other liens and security interests. Trustee shall cooperate with Agent with respect to all filings (including, without limitation, UCC-1 financing statements) and other actions to the extent reasonably requested by Agent in connection with the security interests and liens granted under this Agreement.

10) Defaults.
The following shall constitute "Events of Default" hereunder:

10.1) Trustee's or Agent's failure to perform any of their respective material obligations hereunder, which failure shall continue uncured seven (7) days after receipt of written notice thereof to the defaulting party; or

10.2) Any representation or warranty made by Trustee or Agent proves untrue in any material respect as of the date made or at any time and throughout the Sale Term; or

10.3) The filing of a motion by any party to convert or the conversion of the Bankruptcy Case to a case under another chapter of the Bankruptcy Code (other than chapter 7).

In the event of an Event of Default, the non-defaulting party (in the case of 10.1 or 10.2 above, or the Agent in the case of 10.3 above) may, in its discretion, elect to terminate this Agreement upon seven (7) business days' written notice to the other party and pursue any and all rights and remedies and damages resulting from such default hereunder in the event such cure is not effected by the defaulting party.

11) Governing Law; Consent to Jurisdiction. This Agreement shall be governed and construed in accordance with the laws of the State of Utah, without regard to conflicts of laws principles thereof. The parties hereto agree that the Bankruptcy Court (and the District Court and Circuit Court of Appeal with appellate jurisdiction over the Bankruptcy Court) shall retain exclusive jurisdiction to hear and finally determine any disputes arising from or under this Agreement, and by execution of this Agreement each party hereby irrevocably accepts and submits to the jurisdiction of such court with respect to any such action or proceeding and to service of process by certified mail, return receipt requested to the address listed above for each party.

12) Entire Agreement. This Agreement, the Exhibits hereto, and the Agency Documents (subject, in each instance, to the Approval Order) contain the entire agreement between the parties with respect to

the transactions contemplated hereby and supersede and cancel all prior agreements, including but not limited to all proposals, letters of intent, or representations, written or oral, with respect thereto.

13) Amendments. This Agreement, the Exhibits hereto, and the Agency Documents may not be modified except in a written instrument executed by each of the parties hereto.

14) No Waiver. No party's consent to or waiver of any breach or default by the other in the performance of its obligations hereunder shall be deemed or construed to be a consent or waiver to or of any other breach or default in the performance by such other party of the same or any other obligation of such party. Failure on the part of any party to complain of any act or failure to act by the other party or to declare the other party in default, irrespective of how long such failure continues, shall not constitute a waiver by such party of its rights hereunder.

IN WITNESS WHEREOF, Agent and Trustee hereby execute this Agency Agreement as of the Effective Date.

| Overstock.com, Inc. ("Agent") | Trustee |
|---|---|
| By: ______________________ | By: ______________________ |
| Name: ______________________ | Jeri Coppa-Knudsen<br>U.S. Bankruptcy Trustee |
| Title: ______________________ | |

-36-

Letter e-mailed to Steve Stremmel dated 2-4-2019 RE:
1-17-2019 Subpoena for production of Documents produced on 1-28-2019 bate stamped ST001-ST050

EXHIBIT 3

EXHIBIT 3

**Anthony G. Thomas**
**7725 Peavine Peak Court**
**Reno, NV 89523**
**Tel:(408) 640-2795**
**E-mail: atemerald2@gmail.com**

Monday February 4st 2019.

Mr. Steve Stremmel
Stremmel Auctions
550 West Plumb Lane #406
Reno, NV 89523

Tel: (775) 787-7000
Fax: (775) 323-6445
URL: www.stremmelauctions.com

VIA E-MAIL: sstremmel@aol.com

**RE: RENO, NV U.S. BANKRUPTCY COURT CASE: 14-BK-50333-BTB**
**REQUEST TO CONFIRM DETAILS OF DOCUMENT PRODUCTION**

Dear Mr. Steve Stremmel:

This letter is a follow up to the subpoena (copy attached) for production of documents that was issued by the U.S. Bankruptcy Court in Reno on 1-17-2019, that you responded to by delivering a sealed envelope on Monday January 24th 2019 to the Mary St. offices of LPS/Legal Process Service in Reno. Upon receiving the sealed envelope, I found 50 pages of documents that I have scanned and bate stamped in the upper right corner as STR01-STR050. I also received an 8 page color brochure. I have not included the 8 page color brochure in the documents below. Please confirm A.S.A.P that the documents below constitute the complete set of documents that you produced in response to the subpoena.

Yours truly,

/S/ ____________________
Anthony G. Thomas

I Steve Stremmel hereby confirm that the documents bate stamped STR01-STR050 along with an 8 page color brochure are a complete set of the documents that I produced in response to the US Bankruptcy Court subpoena issued on 1-17-2019.

Date: ____________

x ____________________
Steve Stremmel

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

District of NEVADA - RENO

In re ANTHONY & WENDI THOMAS
Debtor

(Complete if issued in an adversary proceeding)

Case No. 14-BK-50333-BTB

Chapter 7

Plaintiff
v.

Adv. Proc. No.

Defendant

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: Steve Stremmel - CEO of Stremmel Auctions - 200 S. Virginia St. - Reno, NV 89501
(Name of person to whom the subpoena is directed)

[X] *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: **All documents related to the auction of the Thomas Emerald including all US Mail, phone logs, voicemail recordings and/or transcripts, e-mails, receipts, evidence of travel to conferences, evidence of marketing**

| PLACE<br>105 Mary Street - Reno, NV 89509 | DATE AND TIME<br>Friday February 1st 2019 at 1pm |
|---|---|

[ ] *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 1/17/19

CLERK OF COURT

OR

[signature]
*Signature of Clerk or Deputy Clerk*

*Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)* Debtor Anthony G. Thomas, who issues or requests this subpoena, are:
Anthony G. Thomas In Propria Persona - 7725 Peavine Peak Court - Reno, NV - (408) 640-2795

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).



ST001

January 28, 2019

Dear Sirs:

Stremmel Auctions does not keep phone logs, or voice mail recordings/transcripts.

Steve Stremmel

350 W. Plumb Lane #406 • Reno, NV 89509 • o: (775) 787-7000 • f: (775) 323-6445 • www.stremmelauctions.com

ST002

Nan works for Doyles & Doyle doesn't do ... . She recommends Bonhams Auction, & under the criteria, Bonhams wouldn't do the auction

From: hudson stremmel ...stremmel@hotmail.com
Subject: Re: Nan Summerfield, SVP/Director, California Operations | Doyle Auction House
Date: August 21, 2017 at 10:44 PM
To: STEVE STREMMEL sstremmel@me.com

http://channel.nationalgeographic.com/explorer/videos/the-bahia-emerald-story/

The Bahia Emerald Story - Explorer Video - National Geographic Channel

channel.nationalgeographic.com

When a mine in Brazil uncovers one of the biggest emeralds in the world,the stone begins a mysterious ten year journey.

http://www.latimes.com/local/lanow/la-me-in--brazilian-bahia-emerald-20150625-story.html

Federal judge halts release of massive Brazilian emerald ...

www.latimes.com

The more than six-year legal battle over the Bahia Emerald seemed to have reached a conclusion last month, when a Los Angeles Superior Court judge finally determined . .

From: STEVE STREMMEL <sstremmel@me.com>
Sent: August 21, 2017 7:35:35 PM
To: hudson stremmel

ST003

From: **LEE** info@leewasson.com
Subject: RE: **She is a Work of Art** - Press anywhere on this page
Date: October 31, 2017 at 12:38 PM
To: Steve Stremmel sstremmel@...

Your Welcome Steve!
Ron is not a buyer for that piece but he may have one.
The Earrings are Gorgeous.
They are on the web site.
*Price $18.750 U.S.D.*
Export, Shipping included.
Warmest, Lee

**De:** Steve Stremmel [mailto:sstremmel@aol.com]
**Enviado el:** martes, 31 de octubre de 2017 02:16 p.m.
**Para:** LEE <info@leewasson.com>
**Asunto:** Re: She is a Work of Art - Press anywhere on this page

thank you so much for your kindness anytime I get any jewelry with Emeralds their coming your way. If he buys you're going to get a bone. OTS how much are the earrings thanks so much

Sent from my iPhone

On Oct 31, 2017, at 11:56 AM, LEE info@leewasson.com wrote:

**Hello Steve,**
Lee Wasson here from Bogota Colombia.
You need to get actual photos of this specimen,
And then get in contact with Ron Pingenot out of Denver Colorado.
1-303- 378- 5706
He may even have a client for the rock
Highly experienced, very knowledgeable, knows the market, TOP people to deal with.
Good luck,
Don't hesitate to call if I can be of further assistance.
**Warmest regards, Lee**



ST004

Gmail

Hudson Stremmel <hudson@stremmelauctions.com>

**Emerald in Reno**

**Claudia Florian** <Claudia.Florian@bonhams.com> Thu, Nov 2, 2017 at 11:04 PM
To: Hudson Stremmel <hudson@stremmelauctions.com>

Dear Hudson,

The size of this emerald crystal is extremely impressive--much more than many of the Bahia emeralds which we have handled in the past or which I have seen in Tucson. However, like most, it is completely opaque and not gem quality....so any appraisals you may have seen discussing the per carats value are not germane to the valuation of a mineral which would never be used as "cutting rough". It is a display specimen and it is impressive, but Bahia specimens will never be valued as highly as Muzo, Columbian specimens. I will need to see it in person to see if it could be stood up vertically with the aid of a stand or on its own. Vertical minerals often make more money than those which are horizontal.

Here is a link to a very large specimen I had that measured about 30 inches in length. It failed to sell in my last auction.

http://www.bonhams.com/auctions/24039/lot/2109/

and another which did **sell**:

http://www.bonhams.com/auctions/19429/lot/1221/

So I think the auction estimate I might quote on this present specimen is in the neighborhood of $25,000-35,000 with a low reserve (or no reserve).

As I mentioned over the phone, my department would be happy to pay an introductory commission of 25% of the selling commission charged upon successful sale. The commission charged in my department is a flat 20% commission inclusive of insurance, photography and online listing.

Please let me know if you should have any further questions.

best wishes,

Claudia

Claudia Florian, GJG

Natural History Department

Co-consulting Director

323-899-1443 cellphone

---

**From:** Hudson Stremmel <hudson@stremmelauctions.com>
**Sent:** Tuesday, October 31, 2017 1:37:31 PM
**To:** Claudia Florian
**Subject:** Emerald in Reno

Excuse the poor photographs and setting, we had to improvise haha. Thank you for taking the time, and here is the emerald in Reno

Hudson

 

ST006

Hudson Stremmel <hudson@stremmelauctions.com>

## Emerald Specimen Auction

**Brian Greenstone** <sales@finemineralia.com>
To: Hudson Stremmel <hudson@stremmelauctions.com>

Thanks! I've got mixed feeling on this thing because one one hand it's huge, but on the other hand it's kind of a mess - not a particularly good mineral specimen being that the terminations are destroyed and it's broken in several places. It needs a lot of lab work to make it presentable, and it's hard to tell if the emerald itself is even gemmy enough to be used as cutting rough (most Brazilian emerald is opaque and not usable as gem material). At first I thought I'd just pass on it, but then I figured what the heck... it's a low-ball offer which I'm sure you've already got higher ones for, but I'd take a gamble at $1000. I'll have to put thousands more into shipping this thing around and having the lab work done on it and then mounted, so I figure when all is said and done I'll probably be $6k into it which is about all I'd want to be.

So, as low as it is, my bid would be $1000.

Thanks

-Brian

Brian Greenstone, Greenstone Fine Mineralia
brian@finemineralia.com
www.finemineralia.com
www.facebook.com/finemineralia

On Feb 7, 2018, at 11:54 AM, Hudson Stremmel <hudson@stremmelauctions.com> wrote:

Brian,

If I can make things easier for you, whether it be different photos or even a video, just let me know and it'll be on it's way.

The emerald measures roughly 11" in length on it's longest side, roughly 10.5" on its shortest. It is roughly 3" in heighth and jets out about 2.5" from the matrix. It is in fact opaque.

If you were to win, we would be able to ship it out to you. We would proably need to get it crated, but after that is complete, we could send it on its way. Of course you are able to pick up. Whatever is easiest we of course would try and make work.

If I can answer any additional questions or send anything additional your way, please don't hesitate to reach out.

Thank you again,
Hudson Stremmel
Stremmel Auctions
(775) 997-3612

ST007

SHE'S
A WORK OF
ART
SPECIALIST IN FINE COLOMBIAN EMERALDS
By Appointment Only

CONFIDENTIAL

Color:

- Hue Bluish Green (no apparent dye)
- Tone Dark (7)
- Saturation Slightly Grayish (2)

Clarity:

- Transparency Semi-translucent to opaque
- Clarity Declassee`

ST009

TRIED TO CONTACT -
NOT THERE

No Longer There

CONFIDENTIAL

Date: 11/6/2[illegible]

Prepared For: Joe Wendt
5441 Kietze Lane
2nd Floor
Reno, NV 89511

**Emerald Crystal in Matrix**

One mineral specimen consisting of one doubly terminated, re-healed beryl/emerald crystal embedded in matrix. The matrix is typical of that from Bahia, Brazil. The morphology and association is also typical of that from Bahia, Brazil. The specimen measures approximately 32 CM (L) x 6.6 CM (W) x 6 CM (D). There is a broken section, of beryl/emerald crystal located near the end of the large crystal and embedded in matrix of similar quality measuring approximately 47.06 MM (L) x 56.58 MM (W). The termination of the crystals are not fully visible due to the positioning within the matrix.

In addition to the two large crystals described above, there are multiple smaller white beryl crystals also embedded in the matrix. This combination of crystals is typical of Bahia, Brazil. (See attached excerpt from *Emerald and Other Beryls by John Sinkankas)*.

**Emerald Crystal in Matrix Attributes**

Main Mineral Species/Variety: Beryl/Emerald Embedded in Matrix
Secondary Minerals: Beryl/Colorless

Shape:

- Crystal Habit — Hexagonal
- Finish — Good
- Matrix — Biotite Schist
- Damage — None
- Termination — Typical flat with sharp edges
- Shape Type — Elongated with good crystal faces

Source:

- Mine — Unknown
- Country — Brazil
- State — Bahia

Size:

- Length — 32 CM (approx.)
- Width — 6.6 CM (approx.)
- Depth — 6.6 CM (approx.)

CONFIDENTIAL



ST010

Photographs

CONFIDENTIAL

ST011

CONFIDENTIAL

CONFIDENTIAL



ST012

Ringsrud Gemology
Telephone 415 254 2474
Box 128, Saratoga, CA 95071 USA

## Emerald Report

This report is based on the color nomenclature guidelines of the Colored Stone Grading System of the Gemological Institute of America (G.I.A.). Other technical guidelines followed are those of the AGTA – American Gem Trade Association

This laboratory judges emeralds to the current industry standards of quality. The detailed description below is a verbal description using current nomenclature. Any deviation from the quality standards of the colored gemstone industry will be disclosed in a "comments" section. Further information and disclosures are contained on the reverse of this page.

**Emerald Mineral Specimen:** Hexagonal emerald on bed of grey-black mica schist. The emerald is approximately 34 cm. long. The color is a dark tone of a strongly saturated, very slightly yellowish-Green and is semitranslucent to opaque. This color is considered to be typical of emeralds from Brazilian localities.

**Measurements:** Two emerald crystals intersect at the base and three out of six hexagonal faces are visible above the matrix. The main crystal is approx. 34 cm. long and 7.4 cm. wide; the second crystal is approx. 10 cm. long with the same width. Weight estimated by calculation is approx. 21,000 carats or 4200 grams. This measurement places this emerald crystal as one of the largest, if not THE largest such specimen in the world; it is certainly the longest.

**Origin:** Brazilian

**Heirloom Value:** Extremely High – This rating addresses the piece's probable ability to command and maintain its high rarity, beauty and value in the future, generation after generation.

The items described above have been examined gemologically. The information recorded on this document represents our interpretation of results obtained from the use of gemological instruments as well as grading techniques based on the Color Grading System of the Gemological Institute of America. Document not valid without authorized signature.

*Date:__September 23, 2009__* *Signature__*[signature]

**Legal Limitations**

There are no limitations; the simple philosophy of direct communication and trust between client and purveyor has the immediate effect of negating the need for long legal limitations in small print. Ringsrud Gemology adheres to that philosophy and we stand behind our work.

**Emerald Information**

Small microscopic fissures are common to emerald due to their crystal nature and current mining methods. Since this is normal for almost all emeralds, small fissures are considered insignificant unless they affect the clarity grade or unless they appear on the surface of more than 20% of the facets of the stone. 20% is 9 or more facets in most emerald cuts (which usually have 41 facets).

In the processing that takes place during cutting and polishing, emerald fissures that reach the surface (if any) are masked with a colorless oil to reduce the visibility of those fissures. This simple and low-tech process is accepted by the gem industry and is called clarity enhancement which may be slight, moderate or significant. Most emeralds currently available in the trade are 'slight' or 'moderate'.

The final customer of this stone should note that the above mentioned enhancement affects **clarity** only. Emerald color is unenhanced and remains natural.

Every gemstone is unique - with its own series of internal and external characteristics. Fissures are counted and their location is taken into account. Cutting is judged and color concentrations are analyzed. The skilled grader takes into consideration the nature, location, and number of these characteristics to assign each stone its clarity grade and degree of enhancement. Color analysis is done by judging color observed through the crown of the stone under controlled lighting conditions.

**Connoisseurship Disclosure**

This report is limited, as are all certificates and reports, to objective criteria only. It is only meant to validate the genuineness and quality of the gemstone tested. The allure, timelessness, uniqueness, wholeness, and fineness of a gemstone are out of place on a scientific report and can only be experienced in quiet moments of simple undistracted visual appreciation of the stone. The purpose of the conclusions on the other side of this report is to attest to the genuineness and soundness of the stone, thereby putting the intellect at rest. When viewing the stone with a quiet intellect, a condition is created which allows the mind, heart and senses to deeply enjoy the wholeness and allure of the piece. This is the true definition of connoisseurship. A gem report or certificate is only the first small step towards that; this disclosure seeks to define this limitation.

True connoisseurship of a gem involves not only the intellect but also the heart (or in modern language: not only the left but also the right brain hemispheres); not only the objective but also the subjective. With critical objectivity taken care of by the report, the wholeness of the mind is free to identify with the wholeness of the gem. The definition of allure and wholeness, rather than sought in a dictionary, can be effortlessly experienced by gazing into a fine gem.



ST014

September 23, 2009

To Whom it may Concern,
Re: 21,000 carat Emerald Rough

In life, one is presented with both noble idealistic causes as well as a myriad of distractions. True-hearted adherence to the highest and noblest of causes however, is laudable; even to the extent that it depletes resources meant for other lesser things. This is the message of the Thomas Emerald – as one looks upon the beautiful green of the principle crystal one notices near it a dozen small white crystals. These crystals are beryl, and have no color because the formation of the large crystal consumed and depleted all of the vanadium and chromium atoms in the geologic environment during its formation. Atoms of chromium and vanadium are necessary for the creation of emerald; they provide the green color. All of these smaller crystals remain subsidiary to the main emerald crystal; the resources went first and foremost to it.

Geologic rarity is one of the most overlooked treasures of the planet. Connoisseurs appreciate the beauty and rarity of any well formed specimen of almost any mineral. This specimen, being an emerald, and being one of the largest in the world, is extremely rare and deserves to be the centerpiece of any museum display or collection. The fact that it tells a story is just more personality and rarity revealed. Indeed, the green color is often associated with growth, healing and noblesse oblige.

Ron Ringsrud

ST015

## Legal Limitations

The simple philosophy of direct communication and trust between client and purveyor has the immediate effect of negating the need for long legal limitations in small print. Ringgrand Gemology adheres to that philosophy and stands behind our work.

## Emerald Information

Small microscopic fissures are common to emerald due to their crystal nature and current mining methods. Since this is normal for almost all emeralds, small fissures are considered insignificant unless they affect the clarity grade or unless they appear on the surface of more than 15% of the facets of the stone. 15% is 6 or more facets in most emerald cuts (which usually have 41 facets).

In the processing that takes place after cutting and polishing, emerald fissures that reach the surface (if any) are masked with a colorless oil or resin to reduce the visibility of those fissures. This simple and low-tech process is accepted as normal by the gem industry and is called clarity enhancement which may be slight, moderate or significant. Enhancements are industry-accepted processes for fashioning, polishing and finishing a gemstone while 'treatments' are more intense procedures to alter the gemstone appearance which require disclosure to the purchasing public.

The final customer for this stone should note that the above mentioned enhancement affects clarity only. Emerald color is unenhanced and remains natural.

Every gemstone is unique – with its own series of internal and external characteristics. Fissures are counted and their location is taken into account. Cutting and color concentrations are analyzed. The skilled grader takes into consideration the nature, location, and number of these characteristics to assign each stone its clarity grade and degree of enhancement. Color analysis is done by judging color observed through the crown of the stone under controlled lighting conditions.

## Connoisseurship Disclosure

This report is limited, as are all certificates and reports, to objective criteria only. It is only meant to validate the genuineness and quality of the gemstone tested. The allure, timelessness, uniqueness, wholeness, and fineness of a gemstone are out of place on a scientific report and can only be experienced in quiet moments of simple undistracted visual appreciation of the stone. The purpose of the conclusions on the other side of this report is to attest to the genuineness and soundness of the stone, thereby putting the intellect at rest. When viewing the stone with a quiet intellect, a condition is created which allows the mind, heart and senses to deeply enjoy the wholeness and allure of the piece. This is the true definition of connoisseurship. A gem report or certificate is only the first small step towards that; this disclosure seeks to define this limitation.

True connoisseurship of a gem involves not only the intellect but also the heart (or in modern language: not only the left but also the right brain hemispheres; not only the objective but also the subjective). With critical objectivity taken care of by the report, the wholeness of the mind is free to identify with the wholeness of the gem. The definition of allure and wholeness, rather than sought in a dictionary, can be effortlessly experienced by gazing into a fine gem like the one described in this emerald report.

¡nh World Forensics, LLC
Specialists in Rare and Unusual Gemstones and Minerals

8110 S. Houghton Road, Suite 158-145
Tucson, AZ 85747-4700
(520) 207-6888

# DESCRIPTIVE REPORT AND ESTIMATED MARKET VALUE

jnh World Forensics, LLC
Specialists in Rare and Unusual Gemstones and Minerals

8110 S. Houghton, Ste. 158-145
Tucson, AZ 85747
(520) 207-6080

Appraisal For: To Whom It May Concern
Proper Market: Collector Auction or Museum
Estimated Appraised Value: $800 Million USD
Date: September 23, 2009

**DESCRIPTIVE REPORT AND ESTIMATED APPRAISED VALUE UPDATE**

For a full understanding of the valuation of the "Thomas Emerald," it is first essential to read the original appraisal and descriptive reports issued by this author over the last several years, as well as all addenda thereto.

The accuracy of the Hoover Institute for the Study of Cycles, mentioned in the descriptive report and appraisal dated February 22, 2007, should be of special note. The Institute predicted the current "Great Recession," and also predicted that it would ultimately have a greater downward effect on the worldwide economy than the Great Depression of the 1930s.

In previous world cycles, the current economic position inevitably leads to a repositioning of assets into fine art, rarities, gems and jewelry, and other easily portable items in which great amounts of wealth can be concentrated in relatively small items.

Recent auction reports are bearing this out, as evidenced by the Christie's-London offering scheduled for December 8, 2009, of a work by Rembrandt that hasn't been seen by the public in 40 years (*New York Times*, Friday, September 18, 2009); among others.

ST018

# Jurat

State of California

County of Santa Clara

Subscribed and sworn to (or affirmed) before me on this 23rd day of September 2009 by Ronald Ringsrud

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Signature [signature]

GARDENIA GONZALEZ
COMM. #1849161
NOTARY PUBLIC - CALIFORNIA
SANTA CLARA COUNTY

## OPTIONAL INFORMATION

**DESCRIPTION OF THE ATTACHED DOCUMENT**

Emerald [illegible] 1
(Title or description of attached document)

(Title or description of attached document continued)

Number of Pages 1 Document Date 9/23

(Additional information)

**INSTRUCTIONS FOR COMPLETING THIS FORM**

[illegible]

2008 Version CAPA v1.9.07 800-873-9865 www.NotaryClasses.com

**APPRAISER'S BIO:**

College-trained in geology, mineralogy, and archeology. Recorded as discoverer of first shamanistic burial find on Monterey Peninsula, S.F. Bay Area Archives (College of San Mateo Library). Two Master's degrees.

Turned to real estate in 1977. Appraised real estate in Los Angeles, 1978-79; attended required college courses for broker's license, before commencing gemological training Gem dealer for five years prior to earning Graduate Gemology degree at Gemological Institute of America, Santa Monica, 1984. GIA stonecutter training, 1987.

Internationally-recognized emerald consultant/dealer. Published in trade journals; noted as one of three enhancement-detection experts in ***Modern Jeweler*** magazine, June 1989. Article on detection secrets and tricks published by ***Accredited Gemologists Association Quarterly***, Summer/Fall 1998. Lecturer and workshop leader on country-of-origin, emerald formation, treatment-detection, and heat-alteration, for numerous appraisal and gemological organizations since late 1980s. Lead appraiser for Mel Fisher's group ("Treasure Salvors"), 1986-1990. Consulted to GIA Lab on Fisher's ***Atocha*** (shipwreck salvage) emeralds.

Buyer and seller of emerald rough in bulk since 1982. Have appraised for IRS. Member: National Association of Jewelry Appraisers, American Gemological Association, GIA Alumni Association.

ST020

Due to the fact that the world economy is essentially adrift at the current time, I believe that last year's estimate of 800 Million USD should remain, just as gold has remained hovering around $1,000 per ounce throughout this same period.

Ultimately, a firm value will only be set when money or goods change hands.

As of this date, I estimate a potential value on the Thomas Emerald of approximately 800 Million USD.

-END OF REPORT-

James B. Lyle, M.S., G.G. (GIA)

Date: 23 Sept 2009

Signed and sworn before me this date, September 23, 2009

Notary Public

DEBORAH BUTLER
NOTARY PUBLIC - ARIZONA
PIMA COUNTY
My Commission Expires
August 11, 2010

ST021

2º
RECONHEÇO POR SEMELHANÇA 0001 F
DIMITRI PARASKEVOPULOS
São Paulo, 14/11/2001
CIDADE 345677
TANIA DE FREITAS
Escrevente Autorizada
OBS. DO 2 - CARTORIO DE NOTAS
RECONHECIMENTO FEITO NOS TERMOS DO PROVIMENTO N. 29/80 DA CORREGEDORIA GERAL DA JUSTIÇA DO ESTADO DE SÃO PAULO.
ESTE DOCUMENTO PARA PRODUZIR EFEITO NO BRASIL E PARA VALER CONTRA TERCEIROS, DEVERÁ SER VERTIDO EM VERNÁCULO E REGISTRADA A TRADUÇÃO

11

True copy of Text of Appraisal from Harrison Steele Partners PP dtd 12/3/06

QUOTE . . .

Harrison Steele Partners P.P.

Date: December 3, 2006

To Whom It May Concern:

APPRAISAL OF EMERALD SPECIMEN

APPRAISER'S EXPERIENCE

I have worked in the field of valuation science, gemology and economics for over 34 years. This includes studying many emerald crystals; I have learned a great deal from mines in Brazil and Colombia. I have spent a great number of late hours with others who share my interest in emeralds, emerald formations, emerald treatments and emerald valuation.
I have also debated the finer points of emerald growth and formation as affects durability and value based on color, shape, termination, intrusion of other minerals such as calcite, etc.

With my economic experience added to this, and the apparent deflationary times lurking ahead, I judge myself to be more than well-qualified to offer an opinion of the unique 21,000 ct crystal under consideration, known currently as the "Thomas Emerald."

GEMOLOGICAL SPECIFICATIONS AND OPINION OF VALUE

ORIGIN: Brazil.

FORMATION: This is a well-formed hexagonal emerald, resting in a bed of grey-black mica schist. The crystal is approximately 34 cm long. The tone rating is a dark, strongly saturated hue. The color rating is a very slightly yellowish-green and is semi-transparent to opaque.

Two emerald crystals intersect at the base and three out of six hexagonal faces are visible above the matrix. The main crystal is approximately 34 cm long and 7.4 cm wide; the second crystal is approximately 10 cm long with the same width. The weight estimation was done by calculation (the only appropriate method in this case) and yields a result of approximately 21,000 carats, or 4,200 grams. These measurements place this emerald

among the largest known specimens in the world, if not the absolute largest. It is, without a doubt, the longest.

SALES MARKET FOR HIGHEST AND BEST USE: Collectors and Museums. It is my opinion that this emerald should not be sold outside of the aforementioned marketplace.

OPINION OF ESTIMATED APPRAISED VALUE: The only comparable emerald crystal now known is the 3,296 gram crystal in the British Museum. This falls 1,204 grams short of the Thomas Emerald. This crystal was valued at $792 million USD in 2001. Considering this and all other determinable variables, including the effects of deflation on Current Value, I can place this specimen within a modal range of approximately $650-750 million US Dollars on the date of this appraisal. This modal range is valid only on the date of signing, and does not include any taxes, auction fees, or other such fees that are sometimes assessed in a monetary exchange.

Dr. Stephen H. Steele
Managing Partner
Harrison Steele Partners
P.O. Box 24841
Chattanooga, TN 37422
HarrisonSteelePartners@Yahoo.com

. . . UNQUOTE



ST024

# Certificado

117/01

This is the evaluation of a block of black schist weighing 23 kg. with a green crystal encrusted in the matrix.

After an intense examination and various tests, the green crystal was identified as a beryl, or natural emerald.

In addition to the solid green crystal, embedded in the schist are some 25 white beryl crystals of no commercial or mineral significance.

Characterized by the natural hexagonal formation of beryl, this emerald crystal measures 61 mm wide (the parallel facets of the hexagon) and one facet is 32 mm in length. Along the length of this crystal, there are two old fractures dividing it into three sections that have filled with the passing of time thus forming one solid rock.

The extremities are covered with schist, and on looking at the left side from the front, there are two crystals at an angle of 45 degrees, that are each 22 mm and 42 mm high with a width of 57 mm between the parallel facets.

The weight of the emerald crystal has been calculated at approximately 4,500 gr. or 22,500 cts. When held up to the light, it shows complete crystallization.

In my 35 years as a professional, I have never encountered anything similar, and due to its uniqueness, there is nothing I can refer to in order to establish a monetary value for this rock. Consequently, it is entirely up to the owner of the crystal and the party interested in purchasing it to establish the crystal's market value.

If I were to quote the commercial value of this stone, it would be superior to the value of the solid block found in the British Museum, Great Russell Street, London, England WC1 which measures 203 x 172 x 160 mm, weighs 3,296 gr. and is worth US$ 792 million (seven-hundred, ninety-two million dollars). The specimen in this report, which weighs 1,204 grams (6,020 cts) more than the rock in the British Museum, I estimate is worth US$ 800 million (eight-hundred million dollars).

As a gemologist and expert in this area, I must emphasize that this piece is a rare find to be admired by all.

São Paulo, November 5th, 2001.

*Dimitri Paraskevopulos*
Expert Appraiser - Gemólogo
RG 1.600.656 – CPF 035.745.606-87
[illegible]

Enc: color photograph

EXACTA Peritos [illegible]

10

-63-

ST025

ST026

Account number

$ ______________ Amount Enclosed

Make your check payable to: Chase Card Services

STEVE STREMMEL
1335 DARTMOUTH DR
RENO NV 89509 3258

Steve

CARDMEMBER SERVICE
PO BOX 94014
PALATINE IL 60094-4014

5000160 28 203151866850 21

Southwest Rapid Rewards

Manage your account online: www.chase.com/southwest

Customer Service 1-800-792-0001

Mobile: Download the Chase Mobile app today

## ACCOUNT SUMMARY

| Account Number | |
|---|---|
| Previous Balance | |
| Payment, Credits | |
| Purchases | |
| Cash Advances | $0.00 |
| Balance Transfers | $0.00 |
| Fees Charged | $0.00 |
| Interest Charged | $0.00 |
| New Balance | |
| Opening/Closing Date | 01/17/18 - 02/16/18 |
| Credit Access Line | |
| Available Credit | |
| Cash Access Line | |
| Available for Cash | |
| Past Due Amount | $0.00 |
| Balance over the Credit Access Line | $0.00 |

## PAYMENT INFORMATION

New Balance

Payment Due Date

Minimum Payment Due

**Late Payment Warning:** If we do not receive your minimum payment by the date listed above, you may have to pay a late fee of up to $37.00.

**Minimum Payment Warning:** If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance. For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | [illegible] years | $18,791 |
| [illegible] | [illegible] years | $10,266 (Savings=$8,525) |

If you would like information about credit counseling services, call 1-866-797-2885

## SOUTHWEST AIRLINES RAPID REWARDS CARD SUMMARY

01/18 ... SDALE AZ

01/20 CIRCLE K 02801 PHOENIX AZ

Learn more about your Rapid Rewards® Credit Card at www.chase.com/southwest. View point totals and

-65-

ST027

Account number

Amount Enclosed

Make your check payable to: Chase Card Services

STEVE STREMMEL
STREMMEL AUCTIONS
550 W PLUMB LN # 406
RENO NV 89509-3488

HUDSON

CARDMEMBER SERVICE
PO BOX 94014
PALATINE IL 60094-4014

500016028 1595207318662 1

Southwest Rapid Rewards

Manage your account online: www.chase.com/Southwest

Customer Service: 1-800-345-5538

Mobile: Download the Chase Mobile app today

## ACCOUNT SUMMARY

| Account Number | |
|---|---|
| Previous Balance | |
| Payment, Credits | |
| Purchases | |
| Cash Advances | $0.00 |
| Balance Transfers | $0.00 |
| Fees Charged | $0.00 |
| Interest Charged | $0.00 |
| New Balance | |
| Opening/Closing Date | 01/22/18 - 02/21/18 |
| Revolving Credit Amount | |
| Available Credit | |
| Cash Access Line | |
| Available for Cash | |
| Past Due Amount | $0.00 |
| Balance over the Credit Access Line | $0.00 |

## PAYMENT INFORMATION

New Balance

Payment Due Date

Minimum Payment Due

**Late Payment Warning:** If we do not receive your minimum payment by the due date, you may have to pay up to a $39 late fee.

**Minimum Payment Warning:** Enroll in Auto-Pay and avoid missing a payment. To enroll, call the number on the back of your card or go to the web site listed above.

## SOUTHWEST AIRLINES RAPID REWARDS SUMMARY

| | |
|---|---|
| + 2X Pts for Southwest purchases | 0 |
| + Points earned on all other purchases | 4,977 |
| = Total Rapid Rewards transf. to Southwest | 4,977 |

Learn more about your Rapid Rewards® Credit Card at www.chase.com/southwest. View point totals and redeem at www.southwest.com/myaccount. Call 1-800-I-FLY-SWA or visit www.southwest.com to book flights.

ST028

among the largest known specimens in the world, if not the absolute largest. It is, without a doubt, the longest.

SALES MARKET FOR HIGHEST AND BEST USE: Collectors and Museums. It is my opinion that this emerald should not be sold outside of the aforementioned marketplace.

OPINION OF ESTIMATED APPRAISED VALUE: The only comparable emerald crystal now known is the 3,296 gram crystal in the British Museum. This falls 1,204 grams short of the Thomas Emerald. This crystal was valued at $792 million USD in 2001. Considering this and all other determinable variables, including the effects of deflation on Current Value, I can place this specimen within a modal range of approximately $650-750 million US Dollars on the date of this appraisal. This modal range is valid only on the date of signing, and does not include any taxes, auction fees, or other such fees that are sometimes assessed in a monetary exchange.

Dr. Stephen H. Steele
Managing Partner
Harrison Steele Partners
P.O. Box 24841
Chattanooga, TN 37422
HarrisonSteelePartners@Yahoo.com

... UNQUOTE

11

True copy of Text of Appraisal from Harrison Steele Partners PP dtd 12/3/06

QUOTE . . .

Harrison Steele Partners P.P.

Date: December 3, 2006

To Whom It May Concern:

APPRAISAL OF EMERALD SPECIMEN

APPRAISER'S EXPERIENCE

I have worked in the field of valuation science, gemology and economics for over 34 years. This includes studying many emerald crystals; I have learned a great deal from mines in Brazil and Colombia. I have spent a great number of late hours with others who share my interest in emeralds, emerald formations, emerald treatments and emerald valuation.
I have also debated the finer points of emerald growth and formation as affects durability and value based on color, shape, termination, intrusion of other minerals such as calcite, etc.

With my economic experience added to this, and the apparent deflationary times lurking ahead, I judge myself to be more than well-qualified to offer an opinion of the unique 21,000 ct crystal under consideration, known currently as the "Thomas Emerald."

GEMOLOGICAL SPECIFICATIONS AND OPINION OF VALUE

ORIGIN: Brazil.

FORMATION: This is a well-formed hexagonal emerald, resting in a bed of grey-black mica schist. The crystal is approximately 34 cm long. The tone rating is a dark, strongly saturated hue. The color rating is a very slightly yellowish-green and is semi-transparent to opaque.

Two emerald crystals intersect at the base and three out of six hexagonal faces are visible above the matrix. The main crystal is approximately 34 cm long and 7.4 cm wide; the second crystal is approximately 10 cm long with the same width. The weight estimation was done by calculation (the only appropriate method in this case) and yields a result of approximately 21,000 carats, or 4,200 grams. These measurements place this emerald

ST030

From: **Steve Stremmel** [illegible]
Subject: **Emerald Auction**
Date: **February 20, 2018 at 11:47 AM**
To: jenny@stonehouseplus.com

We are auctioning off a 51 pound emerald on behalf of the United States Bankruptcy Court.
sstremmelauctions.com
Thank you for you time Steve Stremmel

ST031

44



ST032

**From:** **Customer Service - Blue Nile** service@bluenile.com
**Subject:** **RE:** Emerald Auction
**Date:** **February 20, 2018 at 11:48 AM**
**To:**

Hello!

Thank you for contacting Blue Nile. We have a team of Diamond & Jewelry Consultants working 24/7 to assist our customers, but please allow up to 24 hours for us to respond to your inquiry via email.

For immediate assistance, please call us at 888.565.7610 or use our Livechat service (if available in your area).

Our website is a great place to start if you'd like to look for answers on your own.

Find information about popular inquiries in our FAQ:
http://www.bluenile.com/faq

Questions about our policies, such as warranty, shipping, or returns? Interested in style guides for bracelets and wedding rings? Curious about the difference between white gold and platinum? Visit our help guides here:
https://www.bluenile.com/inside-blue-nile/help

Checking an order status? Start here:
https://secure.bluenile.com/order-status.html
(Keep in mind that most shipments will not appear in the carrier's system until 8 PM EST.)

If you would like to set up a return for refund on an item under $500, we offer online returns here:
https://secure.bluenile.com/accounts/account-returns-center.html

(If your item is over $500, please call us or use Livechat. We're happy to assist.)

Thanks again for reaching out to us. We look forward to helping you with your inquiry very soon.

ST033

From: International Gem Society LLC support@gemsociety.org
Subject: Message Received - Emerald Auction (via GemSociety.org Contact Form)
Date: February 20, 2018 at 2:10 PM
To: [illegible]

Dear Sstremmel,

We would like to acknowledge that we have received your message.

A support representative will be reviewing your request. We do our best to reply within one business day.

Thank you.

Sincerely,
Support Team

3/7/15

jnh World Forensics, LLC
Specialists in Rare and Unusual Gemstones and Minerals

8110 S. Houghton Road, Suite 158-145
Tucson, AZ 85747-4700
(520) 207-6888

# DESCRIPTIVE REPORT AND ESTIMATED MARKET VALUE

**ST035**

**From:** Steve Strommel [illegible]
**Subject:** Fwd: Emerald Auction
**Date:** February 26, 2018 at 8:20 AM
**To:** Forrest Snowden [illegible]

[illegible]

Hello Steve,

Sure, please feel free to call Jim & I regarding this auction.

Cheers,

[illegible]

Mobile +1-202 213 [illegible]

FaceBook Twitter LinkedIn [illegible]

The information contained in this email is privileged and intended only for the recipient(s) named above and may be legally privileged. If the reader of this message is not the intended recipient you are hereby notified that [illegible] copying of this [illegible]
Thank you.

On 2018-02-20 20:52, Steve Strommel wrote:

May I call you tomorrow with the whole story? Steve

On Feb 20, 2018, at 12:51 PM, Forrest Snowden <[illegible].com> wrote:

Jim, can you check out? Likely BS, but never know.

Keith, this is typical for oversized gems in the end.

Forrest Snowden
Mobile: +1-202-213-7975
http://www.[illegible].com

Sent from BlueMail
On Feb 20, 2018, at 2:50 PM, Steve Strommel <[illegible]> wrote:

[illegible] of the United States Bankruptcy Court. [illegible]
Thank you for your time Steve Strommel

ST036

jnh World Forensics, LLC
Specialists in Rare and Unusual Gemstones and Minerals
8110 S. Houghton, Ste. 158-145
Tucson, AZ 85747
(520) 207-6868

Appraisal For: To Whom It May Concern
Proper Market: Collector Auction or Museum
Estimated Appraised Value: $800 Million USD
Date: September 22, 2009

## DESCRIPTIVE REPORT AND ESTIMATED APPRAISED VALUE UPDATE

For a full understanding of the valuation of the "Thomas Emerald," it is first essential to read the original appraisal and descriptive reports issued by this author over the last several years, as well as all addenda thereto.

The accuracy of the Hoover Institute for the Study of Cycles, mentioned in the descriptive report and appraisal dated February 22, 2007, should be of special note. The Institute predicted the current "Great Recession," and also predicted that it would ultimately have a greater downward effect on the worldwide economy than the Great Depression of the 1930s.

In previous world cycles, the current economic position inevitably leads to a repositioning of assets into fine art, rarities, gems and jewelry, and other easily portable items in which great amounts of wealth can be concentrated in relatively small items.

Recent auction reports are bearing this out, as evidenced by the Christie's-London offering scheduled for December 8, 2009, of a work by Rembrandt that hasn't been seen by the public in 40 years (*New York Times*, Friday, September 18, 2009); among others.

Due to the fact that the world economy is essentially adrift at the current time, I believe that last year's estimate of 800 Million USD should remain, just as gold has remained hovering around $1,000 per ounce throughout this same period.

Ultimately, a firm value will only be set when money or goods change hands.

As of this date, I estimate a potential value on the Thomas Emerald of approximately 800 Million USD.

-END OF REPORT-

James R. Lyle, M.S., G.G. (GIA)

Date: 23 Sept. 2009

Signed and sworn before me this date, September 23, 2009

Notary Public

DEBORAH BUTLER
NOTARY PUBLIC - ARIZONA
PIMA COUNTY
My Commission Expires
August 11, 2010

**APPRAISER'S BIO:**

College-trained in geology, mineralogy, and archeology. Recorded as discoverer of first shamanistic burial find on Monterey Peninsula, S.F. Bay Area Archives (College of San Mateo Library). Two Master's degrees.

Turned to real estate in 1977. Appraised real estate in Los Angeles, 1978-79; attended required college courses for broker's license, before commencing gemological training. Gem dealer for five years prior to earning Graduate Gemology degree at Gemological Institute of America, Santa Monica, 1984. GIA stonecutter training, 1987.

Internationally-recognized emerald consultant/dealer. Published in trade journals; noted as one of three enhancement-detection experts in *Modern Jeweler* magazine, June 1989. Article on detection secrets and tricks published by *Accredited Gemologists Association Quarterly*, Summer/Fall 1998. Lecturer and workshop leader on country-of-origin, emerald formation, treatment-detection, and heat-alteration, for numerous appraisal and gemological organizations since late 1980s. Lead appraiser for Mel Fisher's group ("Treasure Salvors"), 1986-1990. Consulted to GIA Lab on Fisher's *Atocha* (shipwreck salvage) emeralds.

Buyer and seller of emerald rough in bulk since 1982. Have appraised for IRS. Member: National Association of Jewelry Appraisers, American Gemological Association, GIA Alumni Association.

ST039

**From** **Steve Stremmel** sstremmel@aol.com
**Subject** **Fwd Emerald**
**Date** [redacted]
**To** [redacted] agents.com, COPPA-KNUDSON JERI renobktrustee@gmail.com

Begin forwarded message:

**From:** Hudson Stremmel <hudson@stremmel...
**Subject: Fwd: Emerald**
**Date:** March 9, 2018 at 11:31:43 AM PST
**To:** sstremmel@aol.com

Here are the pictures for the emerald

Begin forwarded message:

> From: Asa Gilmore <asa...gilmore...
> Date: March 9, 2018 at 11:15:19 AM PST
> To: Hudson Stremmel <hudson@stremmelauction...
> Subject: Emerald
>
> Hello Hudson,
>
> StremmelAuction-Emerald20180308-0001.jpg
>
> StremmelAuction-Emerald20180308-0002.jpg
>
> StremmelAuction-Emerald20180308-0003.jpg
>
> StremmelAuction-Emerald20180308-0004.jpg
>
> StremmelAuction-Emerald20180308-0005.jpg
>
> StremmelAuction-Emerald20180308-0006.jpg
>
> StremmelAuction-Emerald20180308-0007.jpg
>
> StremmelAuction-Emerald20180308-0008.jpg
>
> StremmelAuction-Emerald20180308-0009.jpg

 # Certificado

This is the evaluation of a block of black schist weighing 23 kg. with a green crystal encrusted in the matrix.

After an intense examination and various tests, the green crystal was identified as a beryl, or natural emerald.

In addition to the solid green crystal, embedded in the schist are some 25 white beryl crystals of no commercial or mineral significance.

Characterized by the natural hexagonal formation of beryl, this emerald crystal measures 61 mm wide (the parallel facets of the hexagon) and one facet is 32 mm in length. Along the length of this crystal, there are two old fractures dividing it into three sections that have filled with the passing of time thus forming one solid rock.

The extremities are covered with schist, and on looking at the left side from the front, there are two crystals at an angle of 45 degrees, that are each 22 mm and 42 mm high with a width of 37 mm between the parallel facets.

The weight of the emerald crystal has been calculated at approximately 4,500 gr. or 22,500 cts. When held up to the light, it shows complete crystallization

In my 35 years as a professional, I have never encountered anything similar, and due to its uniqueness, there is nothing I can refer to in order to establish a monetary value for this rock. Consequently, it is entirely up to the owner of the crystal and the party interested in purchasing it to establish the crystal's market value.

If I were to quote the commercial value of this stone, it would be superior to the value of the solid block found in the British Museum, Great Russell Street, London, England WC1 which measures 203 x 172 x 160 mm, weighs 3,206 gr and is worth US$ 792 million (seven-hundred, ninety-two million dollars). The specimen in this report, which weighs 1,204 grams (6,020 cts) more than the rock in the British Museum, I estimate is worth US$ 800 million (eight-hundred million dollars)

As a gemologist and expert in this area, I must emphasize that this piece is a rare find to be admired by all.

São Paulo, November 5th, 2001.

*Dimitri Paraskevopulos*
Expert Appraiser – Gemólogo

Enc. color photograph

ST041

| | |
|---|---|
| Subtotal | 200.00 |
| Tax | 0.00 |
| Total | 200.00 |
| Amount Paid | 0.00 |
| Amount Due (USD) | $200.00 |

Terms

For full terms, please see http://www.[illegible]agimore.com/[illegible]terms.pdf

ST042

StremmelAuction-Emerald20180308-0010.jpg

StremmelAuction-Emerald20180308-0011.jpg

StremmelAuction-Emerald20180308-0012.jpg

StremmelAuction-Emerald20180308-0013.jpg

StremmelAuction-Emerald20180308-0014.jpg

StremmelAuction-Emerald20180308-0015.jpg

StremmelAuction-Emerald20180308-0016.jpg

gilmore.com

Asa Gilmore Ag LLC
7755307151

PO Box 21492
Reno, Nevada
89515
United States

Billed To
Hudson Stremmel
Stremmel Auctions

Date of Issue
03/09/2018

Due Date
04/08/2018

Invoice Number
05454

Amount Due
$200.00

| Description | Rate | Qty | Line Total |
|---|---|---|---|
| Studio photography Emerald | $80.00 | [illegible] | $200.00 |

ST043

From: **Emerald Expositions** EmeraldExpositions@e...
Subject: Updated Privacy Policy **and Terms of Use**
Date: May 23, 2018 at 6:54 PM
To: SSTREMMEL@aol.com SSTREMMEL@AOL...

We value your privacy and are updating our Privacy Policy and Terms of Use to make them even more understandable and transparent. Here's a brief summary of the changes:

- Our Privacy Policy and Terms of Use reflect recent changes to data protection laws and provide additional clarity regarding how we collect, store and process your information.
- GDPR: On May 25, 2018, the General Data Protection Regulation ("GDPR") takes effect. The GDPR gives individuals in the European Union ("EU") greater control over how their personal data is used and places certain obligations on businesses that process their personal data. We've updated our Privacy Policy to account for the new requirements of the GDPR.

Our updated Privacy Policy and Terms of Use (which we encourage you to read) will go into effect on May 25, 2018.

Please submit any questions to pr...@emeraldexpo.com

Thank you for your continued support of Emerald Expositions.

You are receiving this email because you have previously registered to attend an Emerald Expositions trade show, conference or other event; subscribed to one of our publications; entered one of our sweepstakes or contests; participated in one of our surveys; or otherwise provided us with your email address. For more information about Emerald Expositions, please visit https://www.emeraldexpositions...

© 2018 Emerald Expositions, LLC · 31910 Del Obispo, Suite 200 · San Juan Capistrano, CA 92675 USA · All Rights Reserved.



ST044

Hudson Stremmel <hudson@stremmelauctions.com>

**Emerald Specimen Bankruptcy Auction**

**Monica Kitt** <monica@irocks.com> **Wed, Oct 24, 2018 at 9:26 AM**
To: hudson@stremmelauctions.com

It's always a little confusing to me when gem appraisers are used as experts to appraise crystal specimens! Interesting reports.

**Good luck!**
[Quoted text hidden]



Hudson Stremmel <hudson@stremmelauctions.com>

**Emerald Specimen Bankruptcy Auction**

**Monica Kitt** <monica@irocks.com>
To: hudson@stremmelauctions.com
Cc: "gallery@irocks.com" <gallery@irocks.com>

[redacted] 2018 at 8:43 PM

Thanks Hudson -

Tough sell for our market, but best of luck

Quick note I was curious who did the appraisals and tried to view them - they both direct to files hosted directly on someone's computer on your side and aren't hosted anywhere - maybe you recognize the user that would be msusu as seen below.

file:///C:/Users/msusu/Desktop/specimen%20#2%20(1).pdf

Best,
Monica
[Quoted text hidden]

--
Monica Kitt
E: monica@iRocks.com
O: (972) 437-2492 x 205
C: (972) 523-8426

The Arkenstone | www.iRocks.com
Fine Minerals and Crystals
PO Box 830460, Richardson, TX 75083

Love minerals? Join our mailing list for updates when we post new minerals for sale, announce show dates, or host special events.

 Hudson Stremmel <hudson@stremmelauctions.com>

## Emerald

**Jacques van den Berg** <jacques@minfind.com> [redacted] PM
To: Hudson Stremmel <hudson@stremmelauctions.com>

Hi Hudson,

I managed to access your images.

In my humble opinion, this specimen as presented will not fetch $250.

I am not trying to be factitious, at all.

I can try and help you, but it is up to you.

Regards
Jacques

On 25 Oct 2018, at 20:26, Hudson Stremmel <hudson@stremmelauctions.com> wrote:

[Quoted text hidden]
<RINGSRUD GEMOLOGY REPORT.pdf><specimen #2 (1).pdf><specimen #1.pdf>

ST047

Pentagon gear cutters
Denver Gem
Gems n y
blue mtn 888.565 7610
Stone ~~[illegible]~~ Plus
Gem flix
Aria
Four mine
Darmar
Matt Dunkle
GIA 800.421.7250
Emeralds Int
Star Ruby, ln
Tommy Rocks
IGS
Gemstone Universe

.721.
~~Patty~~
Chinese
Furnit
3' long
drag
Ivorey
Dayton

Forest Jun
~~[illegible]~~
202 213

rock museum h
crystal
to stay

~~Forr~~ Forres
Aria
con
15 lbs of
[illegible]

ST048

Emerald Specimen from Bahia, Brazil
Stremmel Auctions
200 South Virginia
Reno, NV 89501
Date(s) 10/30/2018 - 11/15/2018
Online only beginning 10.30.18-11.15.18
Past Auction
Online-Only Auction
Bidding Notice: This is an online only auction. All bidding will take place over the internet. This will be a timed auction. Each item will end at a certain time, similar to the way Ebay conducts a sale. To prevent from being "sniped" it is necessary for the highest and best bid to be placed prior to the close of the item.
Auction Details
View Catalog (1 Lot)

^ Auction Information

| | |
|---|---|
| **Name** | Emerald Specimen from Bahia, Brazil |
| **Auctioneer** | Stremmel Auctions |
| **Type** | Online-Only Auction |
| **Date(s)** | 10/30/201[redacted] |
| | Online only beginning 10.30.18-11.15.18 |
| **Preview Date/Time** | By Appointment Only |
| **Checkout Date/Time** | Immediately following the conclusion of the auction. |
| **Location** | 200 South Virginia<br>Reno, NV 89501 |
| **Buyer Premium** | Buyers Premium 13%, Cash Discount 3%=10% |
| **Description** | By order of the United States Bankruptcy Court, the online auction for a Brazilian Emerald Specimen will begin on October 30, 2018 and conclude November 15, 2018. All bids are subject to court approval. |

v Terms and Conditions

v Bid Increments

v Payment Information

v Shipping / Pick Up

© 2019 Stremmel Auctions

Smithsonian Institute
202 633-1000
Washington D.C.

7/16 Gemological Institute of America
866. 805-6500

ST050

From: Ron Ringsrud
Subject: Re: Tony Thomas Emerald
Date: September 5, 2018 at 9:42 AM
To: Steve Stremmel

My one guy in Japan said thanks but no thanks.
I really have no other possibility.

The dream has shattered.
It is now a puff of smoke.

RR

> On Sep 5, 2018, at 9:12 AM, Steve Stremmel <sstremmel@aol.com> wrote:
>
> Did you get the pictures and is this "boat anchor" worth anything? Thanks Steve Stremmel, Stremmel Auctions, 775-787-7000

Request for Judicial Notice

2008 Florida Replevin Action

EXHIBIT 4

EXHIBIT 4

IN THE CIRCUIT COURT FOR THE TWELFTH JUDICIAL CIRCUIT
IN AND FOR SARASOTA COUNTY, FLORIDA

KENMARK VENTURES, LLC,
a California limited liability company,

Plaintiff, CASE NO.

vs.

SARASOTA VAULT DEPOSITORY, INC.,
a Florida corporation,

Defendant.
_______________________________/

**COMPLAINT FOR REPLEVIN**

Plaintiff, KENMARK VENTURES, LLC, a California limited liability company (hereinafter referred to as "KENMARK") sues defendant, SARASOTA VAULT DEPOSITORY, INC., a Florida corporation (hereinafter referred to as "SARASOTA VAULT") and states:

1. This is an action to recover possession of personal property that exceeds $15,000 in value, which property is located, upon information and belief, in Sarasota County, Florida.

2. The description of the personal property sought to be replevined is:

> that certain uncut emerald weighing over 21 thousand carats ("Emerald").

To the best of Kenmark's knowledge, information and belief, the value of the personal property sought to be replevined exceeds $500,000,000.00.

3. Kenmark is entitled to possession of the property because Kenmark holds a valid and enforceable security interest in the Emerald, as evidenced by the UCC-1 attached hereto and incorporated herein as ***Exhibit A***. The security interest in the Emerald was given by Tony

Thomas, the owner of the Emerald, pursuant to a security agreement which is attached hereto and incorporated herein as ***Exhibit B***. Mr. Thomas has defaulted under his obligations which created the security interest in the Emerald.

4. To the best of Kenmark's knowledge, information and belief, the property is located at 640 South Washington Boulevard, Suite 175, Sarasota, Florida.

5. Upon information and belief, the property is currently being wrongfully detained by Sarasota Vault Depository, Inc. Sarasota Vault came into possession of the property when Kenmark permitted Tony Thomas to transfer the Emerald to Sarasota Vault Depository, Inc. in Sarasota, Florida for the sole and limited purpose of potentially effectuating the sale of the Emerald.

6. Tony Thomas, upon information and belief, was unable to sell the Emerald. Upon information and believe Sarasota Vault remains in possession of the Emerald contrary to Kenmark's right of current possession of the Emerald as provided by the Security Agreement.

7. On November 25, 2008, Kenmark, through its attorneys, made demand on Sarasota Vault Depository, Inc. to confirm that it was still in possession of the Emerald and that they would maintain possession, custody and control of the Emerald until such time as a Court determines the parties' respective entitlements to the Emerald. A copy of that letter is attached hereto as ***Exhibit C***. To date, Kenmark and its attorneys have received no response to Exhibit C.

8. The property has not been taken for any tax assessment or fine pursuant to law.

9. The property has not been taken under an execution or attachment against Kenmark's property.

WHEREFORE, Kenmark demands judgment for possession of the Emerald, plus costs in pursuing this action.

Martin Garcia
Florida Bar No. 0817597
Hunter W. Carroll
Florida Bar No. 0297630
Matthews, Eastmoore, Hardy,
Crauwels & Garcia, P.A.
1777 Main Street, Suite 500
Sarasota, Florida 34236
(941) 366-8888
(941) 954-7777 - Facsimile
***Attorneys for Plaintiff***

**CERTIFICATE OF SERVICE**

I Paul S. Mula Jr. certify that I am an adult, over the age of 18 years, not a party to the action herein who resides in Santa Clara County, California. I caused to be served the following documents via e-mail to the following persons as listed below from my e-mail address of pauly_p_78@yahoo.com as follows:

DOCUMENTS SERVED:

1. OPPOSITION TO SALE OF EMERALD
2. DECLARATION OF ANTHONY THOMAS IN OPPOSITION TO SALE & IN SUPPORT OF MOTION FOR JUDICIAL NOTICE
3. DECLARATION OF PAUL S. MULA IN OPPOSITION TO SALE
4. NOTICE OF MOTION TAKING JUDICIAL NOTICE OF LAW & FACTS
5. [PROPOSED] ORDER RE: MOTION FOR JUDICIAL NOTICE

as follows:

JEFFREY A. COGAN
jeffrey@jeffreycogan.com, beautausinga@gmail.com, beau@jeffreycogan.com
JERI COPPA-KNUDSON VIA E-MAIL & US MAIL: 3495 Lakeside PMB 62 Dr. Reno, NV 89509
renobktrustee@gmail.com, jcoppaknudson@ecf.episystems.com
KEVIN A. DARBY
kad@darbylawpractice.com, tricia@darbylawpractice.com
jill@darbylawpractice.com,
hersh@darbylawpractice.com, sam@darbylawpractice.com
JEFFREY L. HARTMAN VIA E-MAIL & US MAIL: 510 W. Plumb Lane Suite B Reno, NV 89509
notices@bankruptcyreno.com, sji@bankruptcyreno.com
TIMOTHY A. LUCAS
ecflukast@hollandhart.com
LAURY MILES MACAULEY
laury@macauleylawgroup.com
WILLIAM MCGRANE
ECF-8116edf28c97@ecf.pacerpro.com, mitch.chyette@mcgranellp.com
STEPHANIE T. SHARP
ssharp@rssblaw.com, cobrien@rssblaw.com
WAYNE A. SILVER
w_silver@sbcglobal.net, ws@waynesilverlaw.com
ALAN R. SMITH
mail@asmithlaw.com
STEVEN C. SMITH
ssmith@smith-lc.com, mbrandt@smith-lc.com
AMY N. TIRRE
amy@amytirrelaw.com, admin@amytirrelaw.com
U.S. TRUSTEE - RN - 7,7
USTPRegion17.RE.ECF@usdoj.gov
JOSEPH G. WENT
jgwent@hollandhart.com, vllarsen@hollandhart.com

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 8th 2019.

Paul S. Mula Jr.