1  Jeffrey L. Hartman, Esq., #1607
   **HARTMAN & HARTMAN**
2  510 West Plumb Lane, Suite B
   Reno, Nevada  89509
3  Telephone: (775) 324-2800
   Fax: (775) 324-1818
4  notices@bankruptcyreno.com

5  Attorney for Jeri Coppa-Knudson, Trustee

6            **UNITED STATES BANKRUPTCY COURT**

7                **DISTRICT OF NEVADA**

8

9  IN RE:                          CASE NO.    BK-N-14-50333-BTB

10 ANTHONY THOMAS and              CASE NO.    BK-N-14-50331-BTB
   WENDI THOMAS,
11                                 (Jointly Administered)
   AT EMERALD, LLC,                CHAPTER    7
12
          Debtors.                 **TRUSTEE'S REPLY TO DEBTORS'**
13                                 **OPPOSITION TO MOTION FOR ORDER**
                                   **CONFIRMING SALE BY AUCTION;**
14                                 **REQUEST FOR APPROVAL OF**
                                   **PAYMENT OF COMMISSION TO**
15                                 **STREMMEL AUCTIONS**

16                                 **REQUEST TO DISREGARD LATE FILED**
                                   **OPPOSITION**
17
                                   **Hearing Date:    March 22, 2019**
18 _____/      **Hearing Time:    10:00 a.m.**

19        Jeri Coppa-Knudson ("Trustee"), replies to the Debtors' 'Opposition' To Motion For

20 Order Confirming Sale By Auction; Request For Approval Of Commission To Stremmel

21 Auctions.  Until Friday March 15, 2019 at 12:48 p.m., the Debtor had not filed on the docket

22 a paper actually identified as an Opposition to the Sale Motion **DE 476**.  However, on

23 December 17, 2018, Debtor Thomas filed his Application For Order Shortening Time Re:

24 Motion To continue Hearing Of 1-8-2019 Due To Fraud Upon The Court; Declaration Of

25 Anthony Thomas ("Application").  **DE 439, 439-1**.  See discussion below about Late

26 Opposition.  This Reply is supported by the separately filed Declaration of Jeffrey L.

27 ///

28 ///

Hartman & Hartman
510 West Plumb Lane, Ste. B
Reno, Nevada 89509
(775) 324-2800

Hartman and a Supplemental Declaration of Hudson Stremmel. The Trustee is also filing a separate Request For Judicial Notice.  The Trustee reserves all evidentiary objections for the hearing.

## PRELIMINARY MATTER

On Tuesday, March 12 at 4:20 p.m., Hartman received an e-mail from Paul Mula, an individual unknown to him, without any explanation.[1]  Attached to the e-mail was a paper titled "Notice Of Motion For Judicial Notice of Law And Facts [FRE201]."  Also attached to the e-mail from Mr. Mula was a paper titled Opposition To Sale Of Thomas Emerald. A Declaration of Paul S. Mula In Support Of Opposition To Pay Auctioneer Stremmel Auctioneers For Fraud Upon The Court with 29 pages of exhibits and a Declaration of Anthony Thomas In Support Of Opposition To Sale Of Emerald For Fraud Upon The Court Request For Judicial Notice Of Law And Facts with 93 pages of exhibits ("Late Opposition"). **DE 475, DE 476**.  These papers had not been filed on the docket, until the afternoon of March 15, 2019.  Nothing had been filed by the Debtors as of the deadline for Opposition on March 8, 2019.

Although Mr. Mula's Certificate of Service indicates the Late Opposition was e-mailed to Hartman on March 8, 2019, that is not the case.  See, Hartman Declaration, **Exhibits D, E, F and G**.


## FACTUAL ASSERTIONS

Though the Debtor has asserted an extensive list of complaints as to the motion procedure, these are the main issues which go to the heart of the Trustee's motion to approve the sale of the Emerald utilizing the auction process.


**Notice of Hearing**

As a preliminary matter, the Trustee repeats that **no sale of the Emerald has yet**

---

[1]  Mr. Mula is not a creditor or a party in interest in the case.

Hartman & Hartman
510 West Plumb Lane, Ste. B
Reno, Nevada 89509
(775) 324-2800

1  **been approved by the Court**.  The Trustee's Motion to confirm the sale by auction was

2  filed November 29, 2018 ("Sale Motion").  **DE 430**.  The notice period for a sale hearing is

3  28 days.  F.R.Bankr.P. 2002(b) and LR 9014(a)(1).[2]  Hearing was scheduled for January 8,

4  2019, a notice period of at least 36 days.   The Trustee's Certificate of Service was filed on

5  December 3, 2018.  **DE 435**.  The Certificate of Service demonstrates the Notice of Hearing

6  was provided to the entire creditor matrix including to Mr. Thomas at his Peavine Peak

7  Court address in Reno and to his e-mail address.  At the time the Sale Motion was filed and

8  notice of hearing was given to all parties in interest, the Trustee had no knowledge that Ms.

9  Jodoin had any connection with Mr. Tersini.  Mr. Thomas' contention that he did not get

10  notice of the hearing on the Sale Motion is simply false.  In fact, as noted earlier, the Trustee

11  is treating his Application For Order Shortening Time Re: Motion To Continue Hearing Of

12  1-8-2019 Due To Fraud Upon The Court, **DE 439, 439-1**, as an Opposition.

13         Moreover, on January 17, 2019 the Court entered its Order And Notice Re:

14  Continued Hearing; Discovery Deadlines.  **DE 451**.  That Order includes the following

15  language:

16         **IT IS FURTHER ORDERED** that objections to the Sale Motion are to be
           filed no later than **March 8, 2019**, and in compliance with applicable rules
17         including F.R.Bankr.P. 9014 and Local Rule of Bankruptcy Practice 9014;

18  This language clearly provided Mr. Thomas an additional opportunity to object to the Sale

19  Motion.  Put another way, Mr. Thomas has had, since January 17, 2019, the time in which to

20  file any objection he wished  – a total of 50 days. A check of the docket indicates that no

21  paper titled 'Objection to Sale Motion' or any similar paper had been filed by Mr. Thomas

22  as of March 8, 2018.  In addition, the Order also provides:

23         **IT IS FURTHER ORDERED** that, unless the Court orders otherwise for
           cause,  any discovery the Debtor wishes to propound in connection with the
24         Sale Motion must be properly served and completed not later than February
           19, 2019. Copies of all papers obtained in connection with such discovery
25         must be provided to Trustee's counsel.

26

27         [2]  F.R.Bankr.P. 6004(b) provides that an objection must be filed not less than seven days
      before the date of the sale, or within the time fixed by the court. Here, the court set the time for
28    filing objections as March 8, 2019.

1   **DE 451**.[3]  See, Certificate of Service at **DE 452**. Until Trustee's counsel received the e-mail

2   from Mr. Mula on March 12, Debtors had provided no copies of any discovery papers

3   propounded by, or any responses produced to, the Thomases.

4

5   **Overstock.com**

6           The Trustee had discussions with Overstock.com ("Overstock"), representatives

7   regarding possible marketing of the Emerald claimed by the Debtor to be worth

8   $200,000,000.  On December 30, 2014, the Trustee received a proposed Marketing Services

9   Agreement ("MSA") from Stanton Huntington, Associate General Counsel for Overstock.

10  A copy of the e-mail from Mr. Huntington, together with the draft MSA, is attached to the

11  **Hartman Declaration as Exhibit A**.  The Trustee's primary problem with the MSA was

12  the Expenses and the Expense Budget, found at page 2 of the MSA.  The Trustee would be

13  responsible to reimburse Overstock for all expenses as defined in the MSA.  The initial

14  budget for expenses was set at $250,000.  These jointly administered estates are

15  administratively insolvent and the Trustee would not have been in a position to agree to be

16  responsible for expenses of this magnitude, particularly in light of the fact that the Trustee

17  had no way of knowing the actual value of the Emerald.  The MSA also provided that

18  Overstock would be entitled to superpriority status under § 364© with respect to its

19  commission and expenses.  The Trustee concluded that she could not enter into such an

20  agreement.

21          The initial MSA was followed by an amended version on March 18, 2015.

22  **Hartman Declaration**, **Exhibit B**.  This version of the MSA included a new provision that

23  "Upon sale of the Emerald, expiration or termination of this Agreement for any reason",

24  Overstock would be entitled to reimbursement for expenses.  This revision also made clear

25  that the Estate, and not the Trustee, would be liable for expenses.  A third version of the

26

27          [3] On or about January 17, 2019, Mr. Thomas issued/served a subpoena for documents
    on Stremmel Auctions.  Mr. Thomas did not comply with the Discovery Order and did not
28  comply with F.R.Bankr.P. 9016 and F.R.Civ.P. 45(a)(4).

MSA followed on March 24, 2015.  Hartman Declaration, **Exhibit C**.  This third version continued to include the provisions binding the estate for as much as $250,000 in expenses. Utilizing her business judgment, the Trustee determined the estate could not take on such an obligation.

**Purchaser**

As noted above, until the Trustee received Mr. Thomas' letter on Thursday December 6, 2018, neither she nor attorney Hartman were aware of any connection between Ken Tersini and Jennifer Jodoin.  Accordingly, the Trustee could not have been in a position to disclose any such connection.  Regardless, the Trustee defers to the judgment of the Court as to whether any connection should affect the auction outcome.

**False Claims Made In Moving Papers**

The Trustee has filed a separate Request for Judicial Notice ("Trustee's RJN"), which includes materials related to the Kenmark nondischargeable judgment against the Debtor.  On February 19, 2016, this Court entered its Nondischargeable Judgment After Trial in favor of Kenmark and against Anthony Thomas ("Kenmark Judgment").  **Adv. 14-5022, DE 49.**  Although the Trustee believes that the Kenmark Judgment is not relevant to the Sale Motion, Mr. Thomas continues to raise it as an issue in every hearing.  This Court determined that Mr. Thomas engaged in fraudulent conduct in connection with a transaction with Kenmark.

Mr. Thomas appealed the Kenmark Judgment to the Bankruptcy Appellate Panel ("BAP").  Case no. NV-16-1058. On March 28, 2017, the BAP affirmed the Kenmark Judgment.  Mr. Thomas appealed the BAP decision to the Ninth Circuit.  Case no. 17-60042.  In the Ninth Circuit Appeal, on February 12, 2018, Mr. Thomas filed a Motion To Supplement Record To Include Newly Available Evidence.  **Trustee's RJN, Exhibit 2**. This motion asked the Ninth Circuit to permit Mr. Thomas to supplement the appellate

///

1  record with evidence that allegedly established the Santa Clara judgment was obtained as a

2  result of fraud upon the Santa Clara court.

3       On March 23, 2018, the Ninth Circuit entered its Memorandum Decision.  **Trustee's**

4  **RJN Exhibit 5**.  In the Memorandum Decision, the Court denied Mr. Thomas' Motion To

5  Supplement Record To Include Newly Available Evidence.  The Court affirmed the

6  Kenmark Judgment. **Trustee's RJN Exhibit 5**. On August 17, 2018, Mr. Thomas filed his

7  Motion To Recall Mandate. **Trustee's RJN Exhibit 7**.  On October 17, 2018, the Court

8  denied the Motion To Recall The Mandate.  **Trustee's RJN Exhibit 9.**

9       Nevertheless, Mr. Thomas continues with his assertion that the Kenmark litigation

10  and the judgment against him is based upon a fraud on the Santa Clara court.  At ¶ 16 of the

11  Application, Mr. Thomas states:

12           I have already informed the Court of my plan to file papers before the Santa
             Clara Superior Court that move to invalidate the void judgment procured
13           against me inter alia by fraud upon the court and other legal principles that
             render the judgment void on its face.

14

15  Attached to the Trustee's RJN is a copy of the docket from the Santa Clara Superior Court

16  in the civil action styled as <u>Kenmark Ventures, LLC v. T. Thomas, et al</u>, case no 2008-1-

17  CV-130677.  The docket is 47 pages in length.  **Trustee's RJN Exhibit 10.**  There is no

18  indication in the docket that Mr. Thomas has filed any papers requesting a judgment against

19  him be set aside.

20       The Trustee also notes Mr. Thomas' argument about the Santa Clara Judgment is

21  irrelevant, because Mr. Thomas admitted he is personally liable for the obligation. During

22  the trial in the Kenmark Adversary Proceeding, this Court granted Kenmark's Request for

23  Judicial Notice of the Adversary Complaint and Mr. Thomas' Answer, and stated:

24       THE COURT: Admits the allegations contained in paragraph 27 [of the Adversary

25       Complaint,] and that admission is [T]here is due, and owing unpaid from Anthony

26       Thomas to plaintiff the sum of, $4,500,000 together with interest charged at the rate

27       of 10 percent, per annum plus attorneys' fees as allowed under the note. So we've

28       established there's a debt. What we're trying to establish is whether that debt is

1   dischargeable or not. (Trial Transcript, pp.132:10 – 16)

2   - - -

3       THE COURT: Okay. Those are admitted and I'm taking judicial notice of both the

4   complaint and the answer, although I don't really have to do that, but anyway it's

5   admitted that there is a debt of $4.5 million plus accrued interests and attorneys' fees.

6

7       MR. SILVER: And that Mr. Thomas is personally liable for it.

8

9       THE COURT: Mr. Thomas is personally liable. (Trial Transcript, pp.133:14 – 21)

10  Thus, Mr. Thomas' debt to Kenmark was independently established in the Adversary

11  Proceeding in this Court.

12

13                          **LEGAL DISCUSSION**

14  **Request To Disregard Late Filed Opposition**

15      The Trustee requests the Court disregard the Late Opposition filed by the Debtor

16  over the counter on March 14 but entered on the docket on March 15, 2019, **DE 476**.

17  Trustee's counsel received Debtor's second Late Opposition by e-mail on Tuesday, March

18  12 at approximately 4:40 p.m.  As noted above, the Court's Order, **DE 451**, clearly states

19  that any opposition to the Sale Motion was to be filed not later than March 8, 2019.  On

20  motion practice, LR 9014 (d) provides:

21      Opposition, response, and reply.

22          (1) Except as set out in subsection (3) below, any opposition to a motion
            must be filed, and service of the opposition must be completed on the
23          movant, no later than fourteen (14) days preceding the hearing date for the
            motion.

24

25  Mr. Thomas had 50 days' notice of the time for filing any Opposition and failed to comply

26  with the Court established deadline.  The Court should enforce its Order regarding the filing

27  of an opposition to the Sale Motion and disregard the Late Opposition.

28  ///

Hartman & Hartman
510 West Plumb Lane, Ste. B
Reno, Nevada 89509
(775) 324-2800

**Notice Was Proper**

To begin, the sale of the Emerald has not yet been approved by the Court.  And, as noted, the Debtor has had more than ample opportunity to object to the Sale Motion.  And, as noted, the entire creditor matrix received notice of the hearing on the Sale Motion, first on December 3, 2018, **DE 435**, and then again on January 17, 2019 as to the continued hearing, **DE 452**.  No one, other than the Debtor has objected to the Sale Motion.

**Standing To Object**

A chapter 7 debtor in an insolvent estate lacks standing to object to the sale of a primary asset.  *Willemain v. Kivitz*, 764 F.2d 1019, 1022-1023 (4th Cir. 1985), *In re Bowman*, 181 B.R. 836, 844 (Bankr. D. Md. 1995).

**Overstock.com.**

The Trustee is entitled to exercise her business judgment in administering a bankruptcy estate.  Under each contract proposed by Overstock.com, it required an expense budget of $250,000.  These jointly administered estates are administratively insolvent.  There is no justifiable argument that the Trustee should commit the estates to what amounts to a superpriority administrative expense claim on the hope that the Emerald would sell for substantially more than $250,000.  The Debtor's prior negotiations with Overstock.com are irrelevant.

**Purchaser Status and Alleged Fraud On The Court**

Just because the proposed purchaser is a creditor of the Debtor and the estate, does not lead to the summary conclusion that its offer is not made in good faith.  The Ninth Circuit has addressed the § 363(m) good faith issue numerous times:

> The Suchys also contend that Rule 805 affords no protection to Community because it did not qualify as a "good faith purchaser." Neither Bankruptcy Rule 805 nor the accompanying committee notes define "good faith purchaser." See L. King, 2 Collier on Bankruptcy, para. 363.13 (15th Ed. 1985) ("No definition of good faith is attempted in the Code.") Lack of good

1  faith, however, is determined by fraudulent conduct during the sale
   proceedings.  In re Exennium, 715 F.2d at 1404-05. **The requirement that a**
2  **purchaser act in good faith, of course, speaks to the integrity of his**
   **conduct in the course of the sale proceedings. Typically, the misconduct**
3  **that would destroy a purchaser's good faith status at a judicial sale**
   **involves fraud, collusion between the purchaser and other bidders or the**
4  **trustee, or an attempt to take grossly unfair advantage of other bidders.**
   Prichard v. Sherwood & Roberts, Inc. (In re Kings Inn, Ltd.), 37 Bankr. 239,
5  243 (Bankr. 9th Cir. 1984)  quoting In Re Rock Industries Machinery Corp.,
   572 F.2d 1195, 1198 (7th Cir. 1978). The Suchys do not contend that
6  Community acted fraudulently in the course of the judicial sale proceedings.

7  *In re Suchy*, 786 F.2d 900, 902, (9th Cir. 1985) (emphasis added).  Here, there is no

8  evidence that Jodoin colluded with the Trustee or any other bidder in the auction process.

9       Although the Trustee is not involved in the dispute between Mr. Thomas and

10 Kenmark, Mr. Thomas nevertheless continues to conflate the Kenmark issue with the Sale

11 Motion.   Simply put, Mr. Thomas is asking this Court to accept, as fact, his assertion that

12 Kenmark has no claim in the case because the underlying claim in the Santa Clara litigation

13 was a result of fraud upon the Santa Clara court.  First, that issue is not germane to the Sale

14 Motion. Second, the Rooker-Feldman doctrine precludes this Court from disregarding the

15 outcome of the Santa Clara litigation and, instead, requires that it give full faith and credit to

16 the California Superior Court determination:

17       The "Rooker-Feldman" doctrine requires federal courts to give full faith and
         credit to the decisions of state courts. The doctrine applies in bankruptcy
18       proceedings where the relevant dispute also is raised before a state court. See
         Reusser v. Wachovia Bank, N.A., 525 F.3d 855, 858-59 (9th Cir. 2008). In
19       Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 125 S. Ct.
         1517, 161 L. Ed. 2d 454 (2005), Justice Ginsburg clarified that the
20       Rooker-Feldman doctrine is "confined to cases of the kind in which the
         doctrine acquired its name: cases brought by state-courts losers complaining
21       of injuries caused by state-court judgments rendered before the district court
         proceedings commenced and inviting district court review and rejection of
22       those judgments." 544 U.S. at 284 (emphasis added). Where a federal and
         state court have concurrent jurisdiction over a factual or legal issue,
23       "[d]isposition of the federal action, once the state-court adjudication is
         complete, would be governed by preclusion law." Id. at 293.
24

25 *In re Leeds*, 589 B.R. 186, 195 fn.6 (Bankr. D. Nev. 2018)(Judge Nakagawa).  Mr. Thomas'

26 dispute with Kenmark has no bearing on the Sale Motion.

27       In addition, this Court made an independent determination that Mr. Thomas engaged

28 in fraudulent conduct in his dealings with Kenmark, resulting in the Kenmark Judgment.

Hartman & Hartman
510 West Plumb Lane, Ste. B
Reno, Nevada 89509
(775) 324-2800

9

**<u>Debtors' Request for Judicial Notice</u>**

The Trustee responds to the Request For Judicial Notice, included with the Late Opposition, as follows:

**R1.1**    The Court should not take judicial notice of this item.  The Sale Motion, which is the only § 363 motion in question, was set for hearing on January 8 and Mr. Thomas received appropriate notice. **DE 435**, **DE 452.**

**R3.1-3**    The Court need not take judicial notice of the law.

**R.4**    The Court need not take judicial notice of the law.

**R.5**    The Court should take judicial notice of the Court docket which does clearly indicate that Mr. Thomas had Notice of the Sale Motion.  **DE 435** and **DE 452**.

It appears that Mr. Thomas is really objecting to the fact that the Trustee engaged an auctioneer to liquidate the Emerald and that he wanted an opportunity to object to the auction process itself.  First, Mr. Thomas has had a full opportunity to demonstrate to the Court why the auction process is faulty.  He has not done so; he is merely unhappy that the auction process did not result in an offer more in line with what he believes to be a much higher valuation of the Emerald.  Second, the Court will recall that while this case was still a chapter 11, AT Emerald filed a Motion To Sell the Emerald to an entity known as Koyo Shipping and Trading Company.  **DE 40,** filed June 23, 2014.  Curiously, the amount of the sale price was redacted from the papers filed with the Court.  Sixteen days later, and without any stated reason, on July 9, 2014 the Debtors withdrew the papers filed in connection with the proposed sale, at the undisclosed price, and the cases were converted to chapter 7 shortly thereafter.

///

///

///

///

1

## CONCLUSION

2      The Trustee requests the Court overrule the Debtors' Late Objection and approve her

3   Motion.  There is no evidence from Mr. Thomas that the marketplace would generate a

4   value for the Emerald higher than that resulting from the online auction.  The Trustee also

5   requests  the Court determine that the successful purchaser of the Emerald is a good faith

6   purchaser for value entitled to the safe harbor provisions of  § 363(m).  Finally, the Trustee

7   requests approval to reimburse Stremmel Auctions its out-of pocket-expenses and its

8   commission.

9      DATED: March 15, 2019.

10                    **HARTMAN & HARTMAN**

11

12                    /S/ Jeffrey L. Hartman
                       Jeffrey L. Hartman, Esq., for

13                      Trustee Jeri Coppa-Knudson

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hartman & Hartman
510 West Plumb Lane, Ste. B
Reno, Nevada 89509
(775) 324-2800