Jeffrey L. Hartman, Esq., #1607
**HARTMAN & HARTMAN**
510 West Plumb Lane, Suite B
Reno, Nevada  89509
Telephone: (775) 324-2800
Fax: (775) 324-1818
notices@bankruptcyreno.com

Attorney for Jeri Coppa-Knudson, Trustee

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| IN RE: | CASE NO.    BK-N-14-50333-BTB |
| ANTHONY THOMAS and WENDI THOMAS, | CASE NO.    BK-N-14-50331-BTB |
| AT EMERALD, LLC, | (Jointly Administered) CHAPTER    7 |
| Debtors. | |

**DECLARATION OF JEFFREY L. HARTMAN IN SUPPORT OF TRUSTEE'S REPLY TO DEBTORS' OPPOSITION TO MOTION FOR ORDER CONFIRMING SALE BY AUCTION; REQUEST FOR APPROVAL OF PAYMENT OF COMMISSION TO STREMMEL AUCTIONS**

**REQUEST TO DISREGARD LATE FILED OPPOSITION**

**Hearing Date:    March 22, 2019
Hearing Time:    10:00 a.m.**
_____/

Jeffrey L. Hartman, under penalty of perjury of the laws of the United States, declares:

1. I am a member in good standing of the State Bar of Nevada and represent the chapter 7 trustee in this case.  I have personal knowledge of the matters stated herein.

2. The Trustee and I had e-mail exchanges and some phone calls with Overstock.com representatives ("Overstock"), regarding possible marketing of the Emerald claimed by the Debtor to be worth $200,000,000.

3. On December 30, 2014, the Trustee and I received a proposed Marketing Services

Agreement ("MSA") from Stanton Huntington, Associate General Counsel for Overstock. A copy of the e-mail from Mr. Huntington, together with the draft MSA, is attached as **Exhibit A**. The Trustee's primary problems with the MSA were the Expenses and the Expense Budget, found at page 2 of the MSA. Under that provision, the Trustee would be responsible to reimburse Overstock for all expenses as defined in the MSA. The initial budget for expenses was set at $250,000.

4. These jointly administered estates are administratively insolvent and the Trustee would not have been in a position to agree to be responsible for expenses of this magnitude, particularly in light of the fact that the Trustee had no way of knowing the actual value of the Emerald.

5. The MSA also provided that Overstock would essentially be entitled to superpriority status under § 364(c) with respect to its commission and expenses. The Trustee concluded that she could not enter into such an agreement.

6. The initial MSA was followed by an amended version on March 18, 2015. **Exhibit B**. This version of the MSA included a new provision that "Upon sale of the Emerald, expiration or termination of this Agreement for any reason", Overstock would be entitled to reimbursement for expenses. This revision also made clear that the Estate, and not the Trustee, would be liable for expenses.

7. A third version of the MSA followed on March 24, 2015. **Exhibit C**. This third version continued to include the provisions binding the estate for as much as $250,000 in expenses.

8. Utilizing her business judgment, the Trustee determined the chapter 7 estate could not take on such an obligation.

9. At the time I filed the Motion For Order Confirming Sale By Auction; Request For Approval Of Payment Of Commission To Stremmel Auctions, neither the Trustee nor I had any knowledge of the purchaser Jennifer Jodoin and her purported connection to Mr. Tersini. I learned of the connection in the e-mail from Mr. Thomas on December 5, 2018. ///

1       10.  On Tuesday March 12, 2019, I received an e-mail from Paul Mula, an individual

2    unknown to me, which included as an enclosure the Notice Of Motion For Judicial Notice of

3    Law And Facts [FRE201]."  Also attached to the e-mail from Mr. Mula was a paper titled

4    Opposition To Sale Of Thomas Emerald. A Declaration of Paul S. Mula In Support Of

5    Opposition To Pay Auctioneer Stremmel Auctioneers For Fraud Upon The Court with 29

6    pages of exhibits and a Declaration of Anthony Thomas In Support Of Opposition To Sale

7    Of Emerald For Fraud Upon The Court Request For Judicial Notice Of Law And Facts with

8    93 pages of exhibits.  Although the papers include a Certificate of Service indicating that the

9    papers were e-mail to me on March 8, 2019, that is not the case.  A copy of my e-mail

10    receipt is attached hereto as **Exhibit D**.  **Exhibit D** shows receipt of the e-mail at 4:20 p.m.

11    on Tuesday March 12, 2019.  The same papers arrived by Priority Mail on March 14, 2019.

12    The Priority Mail envelope shows it was mailed from San Jose, California on March 12,

13    2019.  **Exhibit E**.

14       11.  I have checked my inbox for jlh@bankruptcyreno.com for March 8, 2019 and it

15    show no e-mails from Paul Mula.  **Exhibit F**.  I have checked my deleted files directory for

16    March 8, 2019 and it shows no e-mails from Paul Mula as having been deleted.  **Exhibit G.**

17       12.  The first I became aware of Thomas's Notice Of Motion For Judicial Notice of

18    Law And Facts [FRE201] and Opposition To Sale Of Thomas Emerald, the Declaration of

19    Paul S. Mula In Support Of Opposition To Pay Auctioneer Stremmel Auctioneers For Fraud

20    Upon The Court, was Tuesday March 12, 2019 at 4:20 p.m. by way of Mr. Mula's e-mail

21    and by Priority Mail on that same date.

22                   /S/ Jeffrey L. Hartman

                         Jeffrey L. Hartman

23

24

25

26

27

28