# EXHIBIT C

# Jeffrey L. Hartman

**From:** Stanton Huntington <stantonhuntington@overstock.com>
**Sent:** Tuesday, March 24, 2015 8:28 AM
**To:** Jeffrey L. Hartman
**Subject:** FW: Reconnecting on the Thomas Emerald
**Attachments:** Marketing Services Agreement v13 (cl) OSTK-SMH 20150309.docx; Marketing Services Agreement v13 (rl) OSTK-SMH 20150309.pdf

Here it is. I've attached a redline marked up from the last version you saw and a clean version of the same. Please let us know your thoughts. We'd be glad to jump on a call to discuss.

Thanks,

Stanton Huntington
Associate General Counsel
801-947-3134



**From:** Jeff Hartman [mailto:jlh@bankruptcyreno.com]
**Sent:** Monday, March 23, 2015 6:34 PM
**To:** Stanton Huntington
**Subject:** RE: Reconnecting on the Thomas Emerald

Please ask someone to forward to me and I will review it immediately.

Jeff Hartman

**From:** Stanton Huntington [mailto:stantonhuntington@overstock.com]
**Sent:** Monday, March 23, 2015 4:44 PM
**To:** jlh@bankruptcyreno.com
**Subject:** Reconnecting on the Thomas Emerald

Hi Jeff,

I just wanted to reach out and see if you were aware that we finally submitted a revised version of our Marketing Services Agreement to Jeri. I understand that the Overstock business side sent it directly to her last week. Has Jeri been in touch with you on it? I realize this has a been a very slow moving project, the fault of course belonging to us here at Overstock, but I hope we can get some momentum on it and push it along. Please let me know if I can do anything to help do that.

We'd be glad to jump on a call to discuss anything in our proposed agreement.

Thanks,

Stanton Huntington
Associate General Counsel

1

801-947-3134



CONFIDENTIALITY NOTICE: This message is intended only for the use and review of the individual or entity to which it is addressed and may contain information that is privileged and confidential. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message solely to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify sender immediately by telephone or return email. Thank you.

CONFIDENTIALITY NOTICE: This message is intended only for the use and review of the individual or entity to which it is addressed and may contain information that is privileged and confidential. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message solely to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify sender immediately by telephone or return email. Thank you.


## MARKETING SERVICES AGREEMENT

This Marketing Services Agreement (the "Agreement") is entered into as of this ___ day of _____, 2015, ("Effective Date") by and between Overstock.com, Inc., a Delaware~~Utah~~ corporation ("Agent"), and Jeri Coppa-Knudsen ("Trustee," and together with Agent, the "Parties") as the duly appointed and authorized Chapter 7 trustee of the estate in the bankruptcy case of Mr. Anthony Thomas.

WHEREAS, on March 4, 2014, AT EMERALD, LLC ("Debtor") entered into a bankruptcy proceeding under chapter 11 of Title 11, United States Code (the "Bankruptcy Code") and the filing was subsequently converted to a chapter 7 filing, in the United States Bankruptcy Court for the State of Nevada (the "Bankruptcy Court"), ~~and Trustee's~~and Trustee's chapter 7 case is currently pending before the Bankruptcy Court under case number 14-50331-btb ("Bankruptcy Case").

WHEREAS, Trustee is appointed to take whatever measures allowed under the Bankruptcy Code to manage the Debtor's estate including the potential liquidation of the Debtor's assets.

WHEREAS, Trustee has taken control of an emerald, known as the Thomas Emerald, which is an asset in the Debtor's estate described further in the document attachment hereto as Exhibit A (the "Emerald"), and desires that Agent act as Trustee's exclusive marketing agent for the limited purpose of (a) marketing the Emerald to potential buyers ~~of the Emerald~~; and (b) referring those potential buyers to Trustee for further due diligence and ~~potentially to~~ purchase ~~the Emerald through~~ the process defined by the Trustee or its designee~~;~~.

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Agent and Trustee hereby agree as follows:

1) **Appointment of Agent.** Effective on the date hereof and subject to the entry of an~~the Approval O~~ order from the court approving the appointment described herein, Trustee hereby irrevocably appoints Agent, and Agent hereby agrees to serve, as Trustee's agent for the limited purpose of (i) marketing ~~to~~ and solicit~~ation of~~ing potential buyers of the Emerald; and (ii) referring ~~interested~~ potential buyers ~~(each a "Referred Buyer")~~ to the Trustee or Trustee's designee, for potential purchase of the Emerald, in accordance with the terms and conditions of this Agreement ("Marketing Services").

    a) **Exclusivity.** Agent will be Trustee's exclusive provider of Marketing Services for the Term ("Term" defined below).

    b) **Term of Appointment.** The term of this Agreement shall be for 1 year from the Effective Date ("~~Initial~~ Term"), and may be extended upon mutual written agreement of the parties for additional periods (the original period and each additional period shall be collectively referred to as ~~if applicable, each, a "Renewal Term" and with the Initial Term,~~ the "Term").

    c) **Termination.** This Agreement may be terminated anytime as follows:

        i) ___by mutual written consent of the Trustee and Agent;

ii) automatically and without any action or notice by either Agent or Trustee, immediately upon the occurrence of any of the following events:

(1) the issuance of a final and non-appealable order by any agency, division, subdivision, or governmental or regulatory authority, or any adjudicatory body thereof, of the United States or any state thereof, any foreign government or state or any municipal or other political subdivision thereof to restrain, enjoin, or otherwise prohibit the transfer of the Emerald; or

(2) if the Bankruptcy Case is converted into a case under a different Chapter of the Bankruptcy Code or dismissed;

(iii) a party may terminate this Agreement upon written notice if the other party breaches a term of the Agreement and fails to remedy the breach within ten (10) business days of receiving notice of such breach;

(iv) by one party providing ninety (90) days' prior written notice to the other party.

d) Effect of Termination. Upon the effective date of termination of this Agreement or at the end of the Term, Agent shall cease all Marketing Services. Upon any termination of this Agreement or at the end of the Term, the ~~Trustee~~ Debtor's estate shall be liable to the Agent for any Expenses (as defined below) accrued through the date of termination or the end of the Term.

2) Agent Compensation and Expense Reimbursement. Upon sale of the Emerald, expiration or termination of this Agreement for any reason, ~~Upon sale of the Emerald,~~ Agent shall receive ~~and~~ or be entitled to reimbursement for its ~~expenses~~ Expenses as set forth below. Upon the sale of the Emerald, Agent ~~and~~ shall be paid a commission based on the gross price paid by a buyer for the purchase of the Emerald ~~final sales price~~ Proceeds ~~of the Emerald, which shall be~~ defined as ~~the total amount offered for the Emerald by a Referred Buyer, accepted by the Trustee, and approved by the Bankruptcy Court,~~ without subtracting any commissions, deductions, reimbursements, credits, exclusions or Agent's Expenses ("Proceeds").

a) Commission ~~Payment~~. In exchange for providing the Marketing Services, Trustee agrees to pay Agent a commission in the amount of a percentage of the Proceeds ("Commission"). The percentage shall be calculated as follows:

i) 5% Commission. The Commission shall be five percent (5%) of the Proceeds if:

1) during the Term, Trustee receives a Lead from Agent or any other source concerning the eventual purchaser of the Emerald, regardless of when the purchase is completed. "Lead" means information consisting of a name and additional contact information sufficient to reasonably identify the Potential Buyer. The "Potential Buyer" means any individual, and, if applicable, any related entity, partnership, group, affiliate or similar unit, or any related agents, interests, or assigns who expresses interest in the Emerald or provide contact information to either Agent or Trustee; or, ~~If the Emerald is sold during the Term, or is sold at any time to any buyer referred to the Trustee as a result of the efforts of Agent regardless of whether this Agreement is still in force, the Commission shall be five percent (5%) of the Proceeds;~~

2) during the Term, any agreement to acquire the Emerald is executed, except for any agreement executed by a Previously Identified Buyer (as defined below) identified by Trustee in Exhibit 2(a)(ii)(2).

~~1)~~

ii) 3% Commission. The Commission shall be three percent (3%) of the Proceeds if:

(1) during the 12 months after the Term or termination of this Agreement, any Potential Buyer about whom Trustee did not receive a Lead during the Term, makes initial contact with Agent or Trustee and eventually buys the Emerald; or,

(2) at any time during the Term or thereafter, the Emerald is sold to any buyer who has contacted or been identified by the Trustee or Debtor's Estate prior to execution of this Agreement ("Previously Identified Buyer").

For a buyer to qualify as a Previously Identified Buyer the Trustee must provide Agent documentation proving Trustee held the buyer's contact or identification information prior to the execution of this Agreement and must list the buyer on the attached Exhibit 2(a)(ii)(2). Calculation of the Commission from any Potential Buyer not qualifying as a Previously Identified Buyer shall be governed by Section 2(a)(i) or Section 2(a)(ii)(1), as applicable.

~~If the Emerald is sold any time after the Term, or after termination of this Agreement for any reason, the Commission shall be three percent (3%) of the Proceeds.~~

iii) Record Keeping. Agent and Trustee agree to create and maintain records related to this Agreement in a commercially reasonable manner in order to, among other reasons, ensure calculation and payment of the appropriate Commission. Such records shall include, at a minimum, all Leads, offers to purchase, and all related dates. Each party may request such records from the other party by providing a written request. The record keeping obligations and rights in this provision shall survive termination of this Agreement for so long as is required to give effect to this Agreement.

<ins>a</ins><del>b</del>) Expenses. ~~Trustee~~ Debtor's estate shall be responsible to reimburse Agent for all Expenses (as defined herein). Such reimbursement of Expenses shall come either from the Proceeds; or if there are no Proceeds, shall be deemed to be a valid superpriority claim against the Debtor's estate ~~of the sale of the Emerald. The obligation to reimburse Agent for Expenses shall survive termination of this Agreement.~~ Trustee may review or audit the Expenses at any time. As used herein, "Expenses" shall mean the operating expenditures of Agent which arise during the Term and are related to the sale of the Emerald. Expenses shall include, without limitation, reasonable travel costs; consultant or appraisal fees; temporary labor costs; costs related to development of photo, video, print, website design, marketing email and other marketing materials; customer list acquisition; reasonable insurance policies (if applicable); and public relations efforts. Expenses shall also include a reasonable value~~cost~~ for exposure on ~~Agent's website,~~ Overstock.com. Expenses shall not include: (i) rent or related occupancy costs; (ii) employee benefits; (iii) any other occupancy expenses; (iv) costs of maintaining and operating Agent's website unrelated to the Marketing Services.

> Comment [EWC1]: Accounting to opine on this.

i) Expense Budget. Agent shall be limited to an initial budget for Expenses of two hundred and fifty thousand dollars ($250,000). The budget may be modified by mutual written agreement of the parties and, if required, approval of the Bankruptcy Court.

3) <u>Approval Order</u>. On or about _____, \_\_, 2015, Trustee intends to file a motion with the United States Bankruptcy Court, which motion shall seek entry of an order approving this Agreement and authorizing Agent to perform the Marketing Services in accordance with the terms hereof (the "<u>Approval Order</u>"). The Approval Order shall provide, in a form reasonably satisfactory to the Trustee and Agent, among other things that:

(a) this Agreement is approved in its entirety;

(b) Trustee and Agent shall be authorized to continue to take any and all actions as may be necessary or desirable to implement this Agreement;

(c) Agent shall be entitled to advertise the Emerald as free and clear of all liens, claims or encumbrances thereon; [Comment SH2: Trustee to advise on any advertising restrictions.]

(d) Agent shall have the right to use any documentation or information provided by the Trustee or any party it designates to act on its behalf ("<u>Designee</u>") for the purpose of performing the Marketing Services;

(e) Agent, as agent for Trustee, is authorized to conduct, advertise, and otherwise promote the ~~s~~Sale as a trustee's sale, liquidation, or similar themed sale, or as set forth in the Sale Guidelines (<u>as defined and set forth in the Exhibit attached hereto, and</u> as the same may be modified and approved by the Bankruptcy Court) and without regard to ~~the~~ <u>any</u> ~~L~~liquidation ~~S~~sale ~~L~~laws, subject to compliance with Approval Order;

(f) Agent shall be granted a limited license and right to use the trademarks, trade names, and logos relating to and used in connection with the Emerald throughout the Term, solely for the purpose of advertising the Sale in accordance with the terms of this Agreement;

(g) all newspapers and other advertising media in which the ~~s~~Sale is advertised shall be directed to accept the Approval Order as binding and to allow Trustee and Agent to consummate the transactions provided for in this Agreement, including, without limitation, conducting the Marketing Services in the manner contemplated by this Agreement;

(h) the Bankruptcy Court shall retain jurisdiction over the parties to enforce this Agreement;

(i) Agent shall not be liable for any claims against the Trustee other than as expressly provided for in this Agreement;

(j) ~~subject to Agent having satisfied its obligations hereunder, a~~<u>A</u>ny Commission, Expenses, or other amounts owed to Agent under this Agreement shall be granted the status of superpriority claims in Trustee's Bankruptcy Case pursuant to section 364(c) of the Bankruptcy Code senior to all other superpriority claims, including, without limitation, to the superpriority claims of the creditors, if any;

~~(k) Agent shall be granted a valid, binding, enforceable and perfected security interest without the necessity of filing financing statements to perfect the security interests;~~

(~~l~~k)  the Bankruptcy Court finds that time is of the essence in effectuating this Agreement and proceeding with the Marketing Services uninterrupted;

(~~m~~l)  Trustee's decisions to (a) enter into this Agreement and (b) perform under and make payments required by this Agreement is a reasonable exercise of the Trustee's sound business judgment consistent with its fiduciary duties and is in the best interests of the bankruptcy estate, its creditors, and other parties in interest;

(~~n~~m)  this Agreement was negotiated in good faith and at arms' length between the Trustee and Agent and that Agent is entitled to the protection of the applicable provisions in Section 363 of the Bankruptcy Code;

(~~o~~n)  Agent's performance under this Agreement will be, and payment of any Commission, under this Agreement will be made, in good faith and for valid business purposes and uses, as a consequence of which Agent is entitled to the protection and benefits of Sections 363(m) and 364(e) of the Bankruptcy Code; and

(~~p~~o)  in the event any of the provisions of the Approval Order are modified, amended or vacated by a subsequent order of the Bankruptcy Court or any other court, Agent shall be entitled to the protections provided in Sections 363(m) and 364(e) of the Bankruptcy Code, and no such appeal, modification, amendment or vacatur shall affect the validity and enforceability of the sale or the liens or priority authorized or created under this Agreement or the Approval Order.

4) Conduct of Marketing Services. Agent shall perform the Marketing Services in the name of and on behalf of Trustee in a commercially reasonable manner and in compliance with the terms of this Agreement and, except as modified by the Approval Order, all governing laws and applicable agreements to which Trustee is a party. Agent shall perform the Marketing Services in accordance with the Sale Guidelines, if any, ~~annexed~~ attached hereto as Exhibit 4 and approved by the Approval Order, whether such services shall be delivered by media advertising, email marketing, or other promotional materials. Trustee shall have the right to monitor the Marketing Services and activities attendant thereto so long as Trustee's monitoring does not unreasonably disrupt the Marketing Services. Agent agrees that Trustee will conduct the sale and Agent will remain, at all times, a service provider to Trustee for the limited purpose of providing the Marketing Services. Trustee will conduct the sale in accordance with the Sale Guidelines.

a) Right to advertise. Agent shall have the discretion to develop and use any advertising and promotional programs consistent with a Trustee's sale, and as otherwise provided in the Approval Order and the Sale Guidelines, if any, as and where applicable (including, without limitation, by means of media advertising, photo, audio, video, print advertisements, advertising on the Overstock.com website and similar marketing efforts).

b) Buyer Terms of Sale. Trustee, with the help of Agent if so requested, shall create terms and conditions dictating the policies and procedures that shall govern the sale of the Emerald ("Buyer Terms of Sale"). At all times throughout the Term, Agent shall provide access to such Buyer Terms of Sale. The Buyer Terms of Sale shall include, among other things, a statement that Agent will not warrant the Emerald in any manner.

c) Authority. Except as otherwise specifically provided in this Agreement, Agent shall have no authority, and shall not represent that it has any authority, to enter into any contract, agreement, or other arrangement or take any other action by or on behalf of Trustee, that would have the effect of creating any obligation or liability, present or contingent, on behalf of or for the account of Trustee without Trustee's prior written consent.

d) Taxes. Any taxes due and payable as a result of this Agreement shall be borne by the party to whom such tax is attributable. Agent shall have no further obligation to the Trustee, the buyer, any taxing authority, or any other party, and Trustee shall indemnify and hold harmless Agent and its officers, directors, employees, agents and Supervisors (collectively, "Agent Indemnified Parties") from and against all claims, demands, assessments, penalties, losses, liability or damage, including, without limitation, reasonable attorneys' fees and expenses, directly or indirectly asserted against, resulting from or related to the failure by Trustee or buyer to promptly pay such taxes to the proper taxing authorities and/or the failure by Trustee to promptly file with such taxing authorities all reports and other documents required by applicable law to be filed with or delivered to such taxing authorities.

5) Conditions Precedent to Agent's Obligations. The willingness of Agent to enter into the transactions contemplated under this Agreement is directly conditioned upon the satisfaction of the following conditions at the time or during the time periods indicated, unless specifically waived in writing by Agent:

a) All representations and warranties of Trustee hereunder shall be true and correct in all material respects;

b) The Bankruptcy Court shall have entered the Approval Order, on or before _____, 2015;

c) Agent shall have performed an independent inspection and appraisal of the Emerald by a reputable third party, on or before _____, 2015, the results of which must be satisfactory to Agent in order to proceed with the transactions contemplated. Agent shall have sole discretion to waive this condition.

6) Representations and Warranties.

a) Trustee's Representations, Warranties, and Covenants. Trustee hereby represents, warrants, and covenants in favor of Agent as follows:

i) Trustee (1) is a validly appointed bankruptcy trustee; (2) has all requisite power and authority to enter into this Agreement, conduct the Sale and to carry on its business as presently conducted; and (3) is, and during the Term will continue to be, duly authorized and qualified to do conduct its business.

ii) Subject to the entry of the Approval Order, Trustee has the right, power, and authority to execute and deliver this Agreement and each other document and agreement contemplated hereby (collectively, together with this Agreement, the "Agency Documents") and to perform fully its obligations hereunder. Subject to the entry of the Approval Order, Trustee has taken all necessary actions required to authorize the execution, delivery, and performance of the Agency Documents, and no further consent or approval on the part of Trustee is required for Trustee to enter into and deliver the Agency Documents, to perform its obligations thereunder, and to consummate the

Sale. Subject to the entry of the Approval Order, no court order or decree of any federal, state, local, or provincial governmental authority or regulatory body is in effect that would prevent or materially impair, or is required for Trustee's consummation of, the transactions contemplated by this Agreement, and no consent of any third party that has not been obtained is required therefor, except for any such consent the failure of which to be obtained could not reasonably be expected to have a material adverse effect on the ability of Trustee to execute and deliver this Agreement and perform fully its obligations hereunder. No contract or other agreement to which Trustee is a party or by which Trustee is otherwise bound will prevent or materially impair the consummation of the Sale and the other transactions contemplated by this Agreement.

iii) Trustee has the right, and will own at all times during the ~~Sale~~ Term, the right to convey the Emerald free and clear of all liens, claims, and encumbrances of any nature. And Trustee shall not create, incur, assume, or suffer to exist any security interest, lien, or other charge or encumbrance upon or with respect to the Emerald or the Proceeds, in each case, except for such pre-existing liens and security interests as shall have been disclosed by Trustee to Agent and identified in Exhibit 6(a)(iii).

iv) To the best of Trustee's knowledge, the Emerald is in material compliance with all applicable federal, state, and local laws, rules, and standards related to such goods.

v) Except for (1) the Bankruptcy Case and (2) the matters set forth on Exhibit 6(a)(v), no action, arbitration, suit, notice, or legal, administrative, or other proceeding before any court or governmental body has been instituted by or against Trustee or the Debtor, or has been settled or resolved, or to Trustee's knowledge, is threatened against or affects Trustee or Debtor, which if adversely determined, would adversely affect the conduct of the Marketing Efforts or the Sale.

vi) To Trustee's knowledge, formed after reasonable inquiry, all documents, information and supplements provided by Trustee to Agent in connection with Agent's due diligence and the negotiation of this Agreement were true and accurate in all material respects at the time provided.

b) Agent's Representations and Warranties. Agent hereby represents, warrants, and covenants in favor of Trustee as follows:

i) Agent (1) is a corporation duly and validly existing and in good standing under the laws of the State of Delaware; (2) has all requisite power and authority to carry on its business as presently conducted and to consummate the transactions contemplated hereby; and (3) is and during the ~~Sale~~ Term will continue to be duly authorized and qualified as a foreign company to do business and in good standing in each jurisdiction where the nature of its business or properties requires such qualification.

ii) Agent has the right, power, and authority to execute and deliver each of the Agency Documents to which it is a party and to perform fully its obligations thereunder. Agent has taken all necessary actions required to authorize the execution, delivery, and performance of the Agency Documents, and no further consent or approval is required on the part of Agent for Agent to enter into and deliver the Agency Documents, to perform its obligations thereunder, and to consummate the Sale. Each of the Agency Documents has been duly executed and delivered by Agent and constitutes the legal, valid, and binding obligation of Agent enforceable in accordance with its terms. No court order or decree of any federal, provincial, state, or local governmental authority or regulatory body is in effect

that would prevent or impair or is required for Agent's consummation of the transactions contemplated by this Agreement, and no consent of any third party which has not been obtained is required therefor other than as provided herein. No contract or other agreement to which Agent is a party or by which Agent is otherwise bound will prevent or impair the consummation of the transactions contemplated by this Agreement.

iii) No action, arbitration, suit, notice, or legal, administrative, or other proceeding before any court or governmental body has been instituted by or against Agent, or has been settled or resolved, or to Agent's knowledge, has been threatened against or affects Agent, which questions the validity of this Agreement or any action taken or to be taken by Agent in connection with this Agreement, or which if adversely determined, would have a material adverse effect upon Agent's ability to perform its obligations under this Agreement.

7) Indemnification.

a) Trustee Indemnification. Trustee shall indemnify and hold Agent and each Agent Indemnified Party harmless from and against all claims, demands, penalties, losses, liability, or damage, including, without limitation, reasonable attorneys' fees and expenses, asserted directly or indirectly against Agent resulting from or related to:

i) Trustee's material breach of or failure to comply with any of its agreements, covenants, representations or warranties contained in any Agency Document;

ii) any failure by Trustee to pay any Ssales Ttaxes to the proper taxing authorities or to properly file with any taxing authorities any reports or documents required by applicable Jaw to be filed in respect thereof;

iii) any consumer warranty or products liability claims relating to the Emerald;

iv) any liability or other claims asserted by creditors, Buyer, or potential buyers, or any other person against any Agent Indemnified Party;

v) the gross negligence or willful misconduct of Trustee or any of its officers, directors, employees, agents (other than Agent), or representatives.

The indemnification obligations set forth in this Section 7(a) shall be in addition to (and shall not limit) any other indemnification obligations of Trustee set forth in this Agreement.

b) Agent Indemnification. Agent shall indemnify and hold harmless Trustee and the Trustee Indemnified Parties from and against all claims, demands, penalties, losses, liability, or damage, including, without limitation, reasonable attorneys' fees and expenses, asserted directly or indirectly against Trustee resulting from or related to (including acts or omissions of persons or entities affiliated with or acting on behalf of Agent):

i) Agent's material breach of or failure to comply with any of its agreements, covenants, representations, or warranties contained in any Agency Document;

ii) any claims by any party engaged by Agent as an employee or independent contractor arising out of such engagement;

iii) the gross negligence, willful misconduct, or fraud of Agent or any of its officers, directors, employees, agents, or representatives; and

The indemnification obligations set forth in this Section 7(b) shall be in addition to (and shall not limit) any other indemnification obligations of Agent set forth in this Agreement.

8) LIMITATION OF LIABILITY. IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR CONSEQUENTIAL, SPECIAL, PUNITIVE, INDIRECT OR INCIDENTAL DAMAGES.

9) Agent's Security Interest. In consideration of and effective upon execution of this Agreement Trustee hereby grants to Agent first priority, senior security interests in and liens (subject to the subordination provisions set forth herein below) upon: (i) the Emerald; and (ii) the Proceeds to secure the full payment and performance of all obligations of Agent hereunder. Upon entry of the Approval Order, the security interest granted to the Agent hereunder shall be deemed properly perfected without the necessity of filing UCC-1 financing statements or any other documentation.

a) Without any further act by or on behalf of the Agent or any other party, the Agent's security interests and liens created hereunder are (i) validly created, (ii) effective upon entry of the Approval Order, perfected, and (iii) senior to all other liens and security interests. Trustee shall cooperate with Agent with respect to all filings (including, without limitation, UCC-1 financing statements) and other actions to the extent reasonably requested by Agent in connection with the security interests and liens granted under this Agreement.

10) Defaults.
The following shall constitute "Events of Default" hereunder:

a) Trustee's or Agent's failure to perform any of their respective material obligations hereunder, which failure shall continue uncured seven (7) days after receipt of written notice thereof to the defaulting party; or

b) Any representation or warranty made by Trustee or Agent proves untrue in any material respect as of the date made or at any time and throughout the ~~Sale~~ Term; or

c) The filing of a motion by any party to convert or the conversion of the Bankruptcy Case to a case under another chapter of the Bankruptcy Code (other than chapter 7).

In the event of an Event of Default, the non-defaulting party (in the case of 10(a) or 10(b) above, or the Agent in the case of 10(c) above) may, in its discretion, elect to terminate this Agreement upon seven (7) business days' written notice to the other party and pursue any and all rights and remedies and damages resulting from such default hereunder in the event such cure is not effected by the defaulting party.

11) Independent Contractors. It is understood that both Parties hereto are independent contractors and engage in the operation of their own respective businesses. Neither Party hereto is to be considered the agent of the other Party for any purpose whatsoever and neither Party has any authority to enter

into any contract or assume any obligation for the other Party or to make any warranty or representation on behalf of the other Party. Each Party shall be fully responsible for its own employees, servants and agents, and the employees, servants and agents of one Party shall not be deemed to be employees, servants and agents of the other Party for any purpose whatsoever.

12) Governing Law; Consent to Jurisdiction. This Agreement shall be governed and construed in accordance with the laws of the State of Utah, without regard to conflicts of laws principles thereof. The parties hereto agree that the Bankruptcy Court (and the District Court and Circuit Court of Appeal with appellate jurisdiction over the Bankruptcy Court) shall retain exclusive jurisdiction to hear and finally determine any disputes arising from or under this Agreement, and by execution of this Agreement each party hereby irrevocably accepts and submits to the jurisdiction of such court with respect to any such action or proceeding and to service of process by certified mail, return receipt requested to the address listed above for each party.

13) Entire Agreement. This Agreement, the Exhibits hereto, and the Agency Documents (subject, in each instance, to the Approval Order) contain the entire agreement between the parties with respect to the transactions contemplated hereby and supersede and cancel all prior agreements, including but not limited to all proposals, letters of intent, or representations, written or oral, with respect thereto.

14) Amendments. This Agreement, the Exhibits hereto, and the Agency Documents may not be modified except in a written instrument executed by each of the parties hereto. This Agreement constitutes the entire agreement between the Parties on the subject hereof and supersedes all prior understandings and instruments on the subject.

15) Survival of Provisions. The following provisions of this Agreement shall survive the termination of this Agreement: Sections 7, 8, and 9 and all other provisions of this Agreement that by their nature extend beyond the termination of this Agreement.

15) No Waiver. No party's consent to or waiver of any breach or default by the other in the performance of its obligations hereunder shall be deemed or construed to be a consent or waiver to or of any other breach or default in the performance by such other party of the same or any other obligation of such party. Failure on the part of any party to complain of any act or failure to act by the other party or to declare the other party in default, irrespective of how long such failure continues, shall not constitute a waiver by such party of its rights hereunder.

    IN WITNESS WHEREOF, Agent and Trustee hereby execute this Agency Agreement as of the Effective Date.

| Overstock.com, Inc. ("Agent") | Trustee |
|---|---|
| By: _____ | By: _____ |
| Name: _____ | Jeri Coppa-Knudsen<br>U.S. Bankruptcy Trustee |
| Title: _____ | |

<u>**EXHIBIT A**</u>
<u>**EMERALD INFORMATION PACKET**</u>

EXHIBIT 2(a)(ii)(2)
PREVIOUSLY IDENTIFIED BUYERS

Formatted: Left

Formatted: Space After: 0 pt, Line spacing: single

<div style="text-align:center">

**EXHIBIT 4**
**SALES GUIDELINES**

</div>

EXHIBIT 6(a)(v)
MATTERS AFFECTING CONDUCT OF THE SALE

EXHIBIT 6(A)(III)
PRE-EXISTING LIENS AND SECURITY INTERESTS