# EXHIBIT 8

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

Ninth Circuit Case No. 17-60042
Appeal From BAP Case No.16-1058

In re:

ANTHONY THOMAS; ET AL.,

Debtors

ANTHONY THOMAS and WENDI THOMAS,
Appellants,

v.

KENMARK VENTURES, LLC,

Appellee.

Appeal from the United States Bankruptcy Appellate Panel for the Ninth Circuit

## APPELLANT ANTHONY THOMAS' REPLY IN SUPPORT OF MOTION TO RECALL MANDATE

Keith M. Knowlton
KEITH M. KNOWLTON, L.L.C.
9920 S. Rural Road, Suite 108
PMB# 132
Tempe, Arizona 85284-4100
TEL: (480) 755-1777
FAX: (480) 471-8956
*Attorney for Movant Anthony Thomas*

Gerald D.W. North
125 S. Wacker Dr., 10th Floor
Chicago, IL 60606
TEL: (831) 224-0007
*Of Counsel*

1

## Introduction

Kenmark concedes that *Lamar, Archer & Cofrin, LLP v. Appling*, No. 16-1215, 2018 WL 2465174 (U.S. June 4, 2018) ("*Lamar*") changed the controlling law in this Circuit regarding nondischargeability under 11U.S.C. § 523(a)(2)(A). It further concedes that, under *Lamar,* the Emerald-related Thomas nondisclosures do not provide a basis for nondischargeability. It nevertheless opposes Thomas' motion to recall the mandate on two grounds: (1) it claims that the circumstances are not sufficiently exceptional to justify a recall and (2) it suggests there are alternate grounds for affirmance.

Kenmark's first argument ignores the principle that where, as here, a supervening Supreme Court decision conflicts with a recent decision of this Court, recall of the mandate is justified. More importantly, it ignores that *Lamar* is an *intervening* decision, because it was handed down *before* this Court's mandate was received by the BAP and *before* the time for seeking a writ of certiorari expired. The proceedings in this case were not yet final and *Lamar* is thus the law to be applied. Recall of the mandate is an appropriate mechanism to do so.

Kenmark's second argument hinges on a plain misconstruction of §523(a)(2)(A) and an untruthful, and unsupportable, rewrite of the history of the proceedings below. According to Kenmark, "statement[s]

respecting the debtor's ... financial condition" are not a carve-out of "false pretenses, a false representation, or actual fraud" that cannot be used to obtain nondischargeability but are an entirely separate category of conduct (a category Kenmark purports to derive from §523(a)(2)(**B**)). With alacrity, it then claims that the Emerald-related nondisclosures that consumed the Bankruptcy Court, the BAP, and this Court were just icing on the cake. The cake, it now says, consists of the Electronic Plastic ("EP")-related representations and nondisclosures - representations and non-disclosures that were never addressed by this Court, barely mentioned (only to be ignored) by the BAP, and passed over as unimportant by the Bankruptcy Court. Then, by virtue of its misconstruction of 523(a)(2)(A), it asserts that the EP-related statements and omissions were "false pretenses" or constitute "a false representation" unaffected by *Lamar* because they are not, according to Kenmark, "statement[s] respecting ... financial condition."

All this ignores the fact that Thomas was a major owner of EP (ER885), the entity that actually received the loan proceeds, so any statements about it were as much statements regarding an asset of Thomas (albeit a different asset, *i.e.*, Thomas' ownership interest in EP) as were his statements regarding the Emerald, thus falling within *Lamar*. And Kenmark's attempt to bootstrap boilerplate

3

language in the Bankruptcy Court's orally-delivered conclusions of law (which simply recited the language of §523(a)(2)(A)) into a separate and distinct finding of "actual fraud," would require this Court to attribute clairvoyance to the Bankruptcy Judge, because a separate and distinct meaning for the term "actual fraud" was not established until May 16, 2016 - months *after* he delivered his findings and conclusions on February 8, 2016 - when the Supreme Court handed down its decision in *Husky International Electronics, Inc. v. Ritz*, ___ U.S. ___, 136 S.Ct. 1581 (2016).[1]

## I.   The Balance of Interests Weighs Heavily in Favor of Recall.

This Court's decision was issued on March 23, 2018. The mandate issued on April 16 (not April 6), but was not received by the BAP until June 6. Two days earlier, on June 4, 2018, the Supreme Court handed down *Lamar*.

Unaware of *Lamar*, but with a June 21 deadline for a petition for certiorari fast approaching, Thomas consulted with Mr. North, a member of the Supreme Court's (and this Court's) bar. He learned of the just-issued

---

[1] Prior to *Husky*, a creditor could not prevail under § 523(a)(2)(A) in this Circuit without a "misrepresentation, fraudulent omission or deceptive conduct." *Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman)*, 234 F.3d 1081, 1085 (9th Cir. 2000).

decision in *Lamar* and retained North to seek an extension of time. An application for a 60-day extension was filed with then-Circuit Justice Kennedy on June 11, 2018, one week after *Lamar*. On June 18, Justice Kennedy granted the application, extending the time for certiorari to August 20, 2018. The order granting the extension is annexed hereto.

Thomas is a Chapter 7 Bankrupt with limited resources. As the new deadline for certiorari approached, he was unable to undertake a petition for certiorari,[2] but managed the less expensive alternative of a motion to recall the mandate. The motion was filed on August 17, 2018, within the time allowed for certiorari.

Notwithstanding the foregoing, Kenmark argues that recall is not appropriate because the circumstances are not sufficiently extraordinary. To support its position, it cites two decisions of this Court. It cites *M2 Software, Inc. v. M2 Communs. LLC*, 463 F.3d 868, 870 (9th Cir. 2006) for the proposition that the harm from not recalling the mandate must be "gross" and enforcement of the judgment must be "manifestly

---

[2] Thomas' Supreme Court application reflected an intent to either file a motion to recall the mandate here or seek a "GVR" in the Supreme Court (*i.e.*, a petition that asked the Court to grant certiorari, vacate the judgment below, and remand for reconsideration by this Court), noting that these were two paths to the same end.

unconscionable" but, while those words appear in a concurring opinion, Kenmark has taken them completely out of context. *M2* involved a claim of fraud on the court and judicial misconduct. Concurring in denial of the motion to recall the mandate, one judge observed that "[w]hen a motion to recall the mandate is *based on allegations of fraud on the court or allegations of misconduct affecting the integrity of the judicial process*, the harm must be "gross" and enforcement of the judgment must be "manifestly unconscionable." (Emphasis supplied, citation omitted). The instant motion to recall is not based on any allegation of fraud on the court or judicial misconduct. As for the citation of *United States v. Board of Directors of Truckee-Carson Irrig. Dist.*, 723 F.3d 1029, 1034 (9th Cir. 2013), it is even more egregious. The dramatic language it quotes ("an overpowering sense of fairness and the firm belief that this is the exceptional case....") does not appear in the opinion at all![3]

Meanwhile, Kenmark ignores the pertinent authorities in this Circuit that hold it appropriate to recall the mandate when a subsequent Supreme

---

[3] In *Truckee-Carson*, this Court granted a recall of its mandate to correct an error that would have affected the scope of an earlier-ordered remedy. The Court's opinion contains nothing more than the usual cautionary language that recall of a mandate is an extraordinary remedy.

Court decision makes it clear that the decision of this Court was wrong. *Zipfel v. Halliburton*, 861 F.2d 565, 567-68 (9th Cir. 1988), originally cited by Thomas in the motion, is cited Kenmark in opposition for the unremarkable proposition that recall of the mandate is an extraordinary remedy. But while that certainly is true as a general proposition, the actual holding in *Zipfel* is that where a new Supreme Court decision "departs in some pivotal aspects" from a recent decision of this Court, "recall of a mandate may be warranted …'to protect the integrity' of the … prior judgment …. [and to] promote [] uniformity in judicial decision making and in the treatment of litigants." Thus, in *Bryant v. Ford Motor Co.*, 886 F.2d 1526, 1530-31 (9th Cir.1989), *cert. denied*, 493 U.S. 1076(1990), this Court, relying on *Zipfel,* observed that "an abrupt change in the law shortly after the panel's opinion justifies a recall of the mandate…."

That is consistent with decisions in other Circuits. In a very recent Fifth Circuit decision, for example, the Court held that "[r]ecalling the mandate is appropriate when a subsequent decision of the Supreme Court … renders a previous decision 'demonstrably wrong.'" *United States v. Montalvo-Davila*, 890 F.3d 583, 587 (5th Cir. 2018). The Fifth Circuit stated that "[a] previous decision is 'demonstrably wrong' if it 'directly conflicts with' the subsequent [Supreme

Court] decision [,]" and observed that the interest in correcting a recent decision (that has been rendered "demonstrably wrong"), "weighs heavily in favor of recalling the mandate...." *Id.*

Indeed, the primary reason for caution in exercising the power to recall the mandate is the desire to preserve finality. As noted by the Fifth Circuit, "[w]hen faced with a motion to recall the mandate, [a] court must balance two opposing interests: the interest in 'prevent[ing] injustice ... and the interest in maintaining ... finality ...." *Montalvo-Davila, supra,* 890 F.3d at 586. But where a case is not yet final at the time the intervening decision is rendered, considerations of repose carry little, if any, weight. And here, as of June 4, 2018, when *Lamar* was handed down, the proceedings in this case were not yet final.

The conclusion of the direct federal appellate process occurs when the Supreme Court denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires. See *Clay v. U.S.*, 537 U.S. 522, 527 (2003); see also *Griffith v. Kentucky*, 479 U.S. 314, 312 n.6 (1987) ("By 'final,' we mean a case in which ... the time for a petition for certiorari lapsed or a petition for certiorari finally denied."). Prior to that time, the case is still *sub judice* and "the dominant principle is that .... [i]ntervening and conflicting decisions will ... cause the

reversal of judgments which were correct when entered...." *Vandenbark v. Owens-Illinois Glass Co* 311 U.S. 538, 543 (1941).

In the circumstances, recall of the mandate is plainly warranted. GVRs are routinely granted by the Supreme Court where "intervening developments ... reveal a reasonable probability that the decision below rests on a [faulty] premise...." See *Lawrence v. Chater*, 576 U.S. 163, 166, 167 (1996). Recalling the mandate here will do nothing more than what the Supreme Court would have done had a petition for certiorari been filed instead of the instant motion.

## II. The EP-Related Representations and Omissions Fall Within *Lamar*, Were Not Relied On Below, And Did Not Cause Proximate Harm.

To read Kenmark's opposition, one would think that only statements of valuation are covered by *Lamar*, but that plainly is not so. In *Lamar*, statements deemed subject to the "financial condition" exception of §523(a)(2)(A) included a false representation about the amount of an expected tax refund, but also included a false representation that the debtor planned to use of the refund to pay his law firm's invoices, and a false representation that the refund had not yet been received. All three representations were intended to induce the law firm not to instigate a lawsuit and to continue representing the debtor. All three were deemed to fall within the "financial condition" exception. There is no material difference

9

between those representations and the various EP-related representations and omissions on which Kenmark belatedly seeks to rely. All regard Thomas's ownership interest in EP.

Moreover, the EP-related representations and omissions could not have resulted in a judgment under §523(a)(2) because Kenmark expressly denied relying on them. Kenmark's principal, Mr. Tersini, testified he had concerns about EP and the fact it was cash-strapped, made the loans in reliance on the Emerald as collateral, and would *not* have made the loans had he known of the undisclosed $400,000 appraisal or $20,000 purchase price of the Emerald. (ER 446-47, 453-57, 510). Given that testimony, Kenmark cannot possibly be deemed to have established justifiable reliance, a necessary element of actionable fraud under §523(a)(2)(A).[4]

The Bankruptcy Court, the BAP, and this Court all regarded the Emerald-related allegations as key. As the BAP observed, the Bankruptcy Court found the nondisclosures concerning the Emerald "were the most important for purposes of its nondischargeability determination," noting that "of the roughly seven pages of hearing transcript comprising the court's findings, nearly four of those pages

---

[4] In addition, actionable fraud requires proof of damages, but, because the Bankruptcy Court made no finding regarding the Emerald's value, it too cannot be deemed established. Indeed, in light of its judicial admission that it believes the emerald to be worth over $500 million (ER544-47) - more than 100 times the amount of its $4.5 million lien - it appears Kenmark is a grossly over-secured creditor, not a damaged plaintiff.

10

concern the issue of the loan and the pledging of the Thomas emerald as security." (ER889). Thomas challenged the sufficiency of the findings below, as well as the absence of adequate record support. The BAP held that the Emerald-related findings were adequately supported and "were sufficient by themselves to support the court's nondischargeability judgment." It affirmed "[o]n that basis." (ER885). This Court independently reviewed the Bankruptcy Court's findings and affirmed, based exclusively on the Emerald-related findings. Neither the BAP, nor this Court, considered the EP-related evidence or findings.

In light of Tersini's testimony, and the common understanding of the Bankruptcy Court, the BAP, and this Court, that the case below hinged on the Emerald-related findings, Kenmark's belated claim that "it must be remembered that the heart of Kenmark's case was Thomas' Electronics Plastics (EP) scam, not the Thomas Emerald...," is preposterous. But lest there be any doubt, the Court need look no further than Kenmark's closing argument at trial, where its counsel bluntly stated (ER 809):

> If Mr. Thomas had told the truth [about the Emerald] to Mr. Tersini, we would not be here today…because this money never would have been loaned.

A clear, unequivocal, and deliberate factual assertion by counsel in closing argument is a judicial admission. *United States v. Bentson*, 947 F.2d 1353, 1356 (9th Cir. 1991), *cert. denied*, 504 U.S. 958 (1992) (closing argument). See also

*Oscanyan v. Arms Co.*, 103 U.S. 261, 13 Otto 261 (1880) (opening statement). In any event, the assertion belies the eleventh-hour claim that Kenmark relied on *any* ER-related representation and puts the lie to its counsel's belated "remembrance."

### Conclusion

For the foregoing reasons, and those set forth in the Motion, this Court should recall its mandate, vacate the March 23 judgment, and reverse the decision of the BAP.

Respectfully submitted this 2nd day of September, 2018.

**KEITH M. KNOWLTON, LLC**

By: /s/ Keith Knowlton
_____
Keith M. Knowlton
Attorney for Movant Anthony Thomas

### CERTIFICATE OF SERVICE

I hereby certify that this 2nd day of September, 2018; I electronically transmitted the attached document to the clerk's office using the CM/ECF for filing, causing the transmittal of the notice of electronic filing to the following CM,/ECF registrants:

Wayne A. Silver
1674 N. Shoreline Blvd., Suite 140
Mountain View, CA 94043
ws@waynesilverlaw.com
Counsel for Kenmark Ventures, LLC

/s/ Keith Knowlton
_____

9/2/2018

Case 14-50333-gs    Doc 479-8    Entered 03/15/19 16:32:52    Page 14 of 16
Case: 17-60042, 09/02/2018, ID: 10998087, DktEntry: 39, Page 13 of 15

Search Supreme Court of the United States

Supreme Court of the United States

Search Site for...

SEARCH TIPS

ADVANCED SEARCH

DOCKET SEARCH

Search

Toggle navigation

- OPINIONS
  - Opinions of the Court
  - Opinions Relating to Orders
  - In-Chambers Opinions
  - Bound Volumes
  - Internet Sources Cited in Opinions
  - Media Resources
  - Case Citation Finder
- FILING & RULES
  - Electronic Filing
  - Rules and Guidance
  - Supreme Court Bar
- ORAL ARGUMENTS
  - Argument Transcripts
  - Argument Audio
  - Calendars and Lists
  - Courtroom Seating
- CASE DOCUMENTS
  - Docket Search
  - Orders of the Court
  - Orders by Circuit
  - Granted/Noted Cases List
  - Journal
- NEWS MEDIA
  - Services for News Media
  - Press Releases
  - Media Advisories
  - Press Credentials
  - Speeches
  - A Reporter's Guide to Applications
  - Chief Justice's Year-End Reports on the Federal Judiciary
- ABOUT THE COURT
  - Justices
  - Supreme Court at Work
  - History and Traditions
  - The Supreme Court Building
  - Visiting the Court
  - Building Regulations
  - Frequently Asked Questions

Skip Navigation Links Home > Search Results

RSS Feed  Print  **Search documents in this case:**   Search

No. 17A1372

| | |
|---|---|
| Title: | Anthony Thomas, et ux., Applicants<br>v.<br>Kenmark Ventures, LLC |
| Docketed: | June 14, 2018 |
| Lower Ct: | United States Court of Appeals for the Ninth Circuit |
|   Case Numbers: | (17-60042) |

| Date | Proceedings and Orders |
|---|---|
| Jun 11 2018 | Application (17A1372) to extend the time to file a petition for a writ of certiorari from June 21, 2018 to August 20, 2018, submitted to Justice Kennedy.<br>Main DocumentLower Court Orders/Opinions |
| Jun 18 2018 | Application (17A1372) granted by Justice Kennedy extending the time to file until August 20, 2018. |

| NAME | ADDRESS | PHONE |
|---|---|---|
| **Attorneys for Petitioners** | | |
| Gerald D. W. North<br>  Counsel of Record | Gerald D.W. North<br>125 S. Wacker Dr., Suite 1000<br>Chicago, IL 60606 | 8312240007 |
| | northlaw2@yahoo.com | |

Party name: Anthony Thomas

## Opinions

- Opinions of the Court
- Opinions Relating to Orders
- In-Chambers Opinions
- Bound Volumes
- Internet Sources Cited in Opinions
- Media Resources
- Case Citation Finder

## Filing & Rules

- Electronic Filing
- Rules and Guidance
- Supreme Court Bar

## Oral Arguments

- Argument Transcripts
- Argument Audio
- Calendars and Lists
- Courtroom Seating

Case Documents

- Docket Search
- Orders of the Court
- Orders by Circuit
- Granted/Noted Cases List
- Journal

News Media

- Services for News Media
- Press Releases
- Media Advisories
- Press Credentials
- Speeches
- A Reporter's Guide to Applications (PDF)
- Chief Justice's Year-End Reports on the Federal Judiciary

About the Court

- Justices
- Supreme Court at Work
- History and Traditions
- The Supreme Court Building
- Visiting the Court
- Building Regulations
- Frequently Asked Questions

Contact Us | Site Map | Help | Fellows Program | Jobs | Links | Website Policies and Notices | Privacy Policy | USA.GOV
SUPREME COURT OF THE UNITED STATES 1 First Street, NE Washington, DC 20543