EXHIBIT 7

Excerpts from Transcript of Hearing

9-13-2018

EXHIBIT 7

-55-

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA (RENO)

|  |  |  |
|---|---|---|
| IN RE: | . | Case No. 14-50333-BTB |
|  | . |  |
|  | . | Chapter 7 |
| ANTHONY THOMAS AND | . |  |
| WENDI THOMAS, | . | 300 Las Vegas Blvd. South |
|  | . | Las Vegas, NV 89101 |
| Debtors. | . |  |
|  | . | Thursday, September 13, 2018 |
| . . . . . . . . . . . | . | 1:40 p.m. |

TRANSCRIPT OF STATUS HEARING FOLLOWING HEARING RE: DOC NO. 358
MOTION TO WITHDRAW AS ATTORNEY OF RECORD AND FOR CLARIFICATION
OF STATUS OF COUNSEL, ETC. FILED BY LAUREY MILES MACAULEY
ON BEHALF OF MACAULEY LAW GROUP, P.C.;
MOTION FOR TURNOVER FILED BY JEFFREY L. HARTMAN
ON BEHALF OF JERI COPPA-KNUDSON [353]
**BEFORE THE HONORABLE BRUCE T. BEESLEY**
**UNITED STATES BANKRUPTCY COURT JUDGE**

APPEARANCES:

For the Debtors:        ANTHONY THOMAS, Pro Se
                        7725 Peavine Peak Court
                        Reno, NV 89523

For the Chapter 7       Hartman & Hartman
Trustee:                By: JEFFREY L. HARTMAN, ESQ.
                        510 West Plumb Lane, Suite B
                        Reno, NV 89509
                        (775) 324-2800

Audio Operator:         Illuminada Starzyk, ECR

Transcription Company:  Access Transcripts, LLC
                        10110 Youngwood Lane
                        Fishers, IN 46038
                        (855) 873-2223
                        www.accesstranscripts.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

—56—

2

<u>I N D E X</u>
<u>9/13/18</u>

<u>WITNESS</u>                     <u>DIRECT</u>  <u>CROSS</u>  <u>REDIRECT</u>  <u>RECROSS</u>

Anthony Thomas                  39 - by The Court


<u>EXHIBITS</u>:                                          <u>PAGE</u>

<u>FOR THE TRUSTEE</u>:

1 - Email dated 9/7/18                            22

2 - Decision by State Bar of California           22

3 - Printout of State Bar of California results    22

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

32

1          THE COURT:  You are dishonest.

2          MR. THOMAS:  No, it's not.  I'm not being dishonest,

3   Your Honor.

4          THE COURT:  Well, what about the fraud judgment that

5   was entered against you for several million dollars?

6          MR. THOMAS:  What fraud judgment?  The Kenmark case

7   where you didn't let me put in any evidence to show --

8          THE COURT:  No, no.

9          MR. THOMAS:  -- that they were an investor?

10         THE COURT:  In state court.

11         MR. THOMAS:  You blocked evidence --

12         THE COURT:  In state -- in state --

13         MR. THOMAS:  -- over and over.

14         THE COURT:  -- in state court, the fraud judgment

15   that was entered against you.

16         MR. THOMAS:  That judgment is in the process of being

17  turned over because the attorneys were convicted of fraud.

18  we're filing a case in California for that right now.  They --

19         THE COURT:  And you are currently the subject of a

20  fraud judgment entered against you.  Is that correct?

21         MR. THOMAS:  It was -- yeah, because of illegal acts

22  from my attorney.  They never disclosed that there was fraud in

23  the judgment to me.  It was said under Counts 4 and 5.  They

24  never told me that -- nobody in the courtroom ever said that

25  there was fraud, and my attorney told me --

33

1           THE COURT:  Except the judge.

2           MR. THOMAS:  No, we did not.

3           THE COURT:  Then why was there a judgment entered

4    that said fraud?

5           MR. THOMAS:  It's not in the record at all that there

6    was fraud.

7           THE COURT:  Why --

8           MR. THOMAS:  They --

9           THE COURT:  Stop.  Why would the judge enter a

10   judgment that said you had committed fraud?

11          MR. THOMAS:  The judge didn't enter a -- on the

12   record, the judge said all parties are agreeing to no

13   wrongdoing.  And Tersini's attorneys said that there was -- all

14   parties are agreeing to no wrongdoing.  And they slipped in

15   under -- because they -- the attorneys colluded to put four --

16   Counts 4 and 5 in there and never said what they were.  The

17   judge didn't even know what they were.

18          And so when it was read onto the record, they never

19   let me see a copy of the settlement agreement.  I never got to

20   see it.  I never got to sign it.  And my attorney told me that

21   I wasn't liable at all, that Mr. Gardner was taking 100 percent

22   of the responsibility.  His --

23          THE COURT:  However, there was a judgment entered

24   against -- listen to me.  There was a judgment entered against

25   you that said you had committed fraud.  Was there not?

34

1        MR. THOMAS:  There was a -- the fraud was committed
2   on me, Your Honor.
3        THE COURT:  Answer my question.
4        MR. THOMAS:  And I'm going to answer your question.
5        THE COURT:  Was -- answer my question.  Was there a
6   judgment entered against you that you had committed fraud?
7        MR. THOMAS:  Only by you, Your Honor.
8        THE COURT:  No, that's not true.  There was a
9   California state judgment that was entered against you.
10        MR. THOMAS:  There was -- there was a California
11   state judgment, but they never revealed the fraud to the judge
12   or myself.
13        THE COURT:  I didn't ask you that.  I asked you if
14   there was a judgment entered against you that said you had
15   committed fraud in a California state court.
16        MR. THOMAS:  Yes.  And that judgment was only because
17   you lifted the stay through the bankruptcy.  You lifted the
18   stay so they could go in and get a fraud judgment against me.
19   There was no fraud judgment before.
20        THE COURT:  I lifted the stay so they could go
21   forward with litigation.
22        MR. THOMAS:  And get a fraud judgment against me.
23        THE COURT:  I had no idea what they were going to do.
24        MR. THOMAS:  Well, I did.  I knew exactly what they
25   were going to do and that's why I asked you not to lift the

35

1  stay because I was not aware of the fraud because I was lied to

2  by my counsel and they committed fraud on the Court.  They

3  didn't tell the judge that there was fraud in there.  The judge

4  said on the record, all parties are agreeing to no wrongdoing.

5  Mr. Silver, Mr. Kenmark's attorney, said the exact same thing.

6  All parties --

7            THE COURT:  Well, let me ask you this.

8            MR. THOMAS:  -- are agreeing to no wrongdoing.

9            THE COURT:  Have you appealed?

10           MR. THOMAS:  Huh?

11           THE COURT:  Have you appealed?  Did you appeal the

12 California state judgment?

13           MR. THOMAS:  I am filing a case to have the whole

14 thing turned over.  The attorneys that represented me --

15           THE COURT:  Answer --

16           MR. THOMAS:  -- have been convicted of fraud.

17           THE COURT:  Answer my question first.  Have you

18 appealed the California state judgment?

19           MR. THOMAS:  I'm in the process of doing that right

20 now, okay.  We're having it turned over --

21           THE COURT:  Stop.

22           MR. THOMAS:  -- on the basis of fraud.

23           THE COURT:  Stop.  Stop.

24           MR. THOMAS:  I'm filing a motion with the Court.

25           THE COURT:  And have you gotten a stay of the



ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

36

1  judgment pending your efforts to get it overturned?

2       MR. THOMAS:  Not yet, but we will.

3       THE COURT:  Okay.  So --

4       MR. THOMAS:  We're in the -- I'm in that process

5  right now, Your Honor.

6       THE COURT:  All right.  So you have a fraud judgment

7  against you that is current?

8       MR. THOMAS:  Yes.

9       THE COURT:  That's one of the reason I think you are

10 dishonest.

11      MR. THOMAS:  Because I was defrauded by my attorneys

12 and --

13      THE COURT:  That's not what the judgment says.  The

14 judgment says you committed fraud.

15      MR. THOMAS:  You can read the transcript.  The judge

16 said that all parties are agreeing to no wrongdoing.

17      THE COURT:  What I care about is what the judgment

18 says.

19      MR. THOMAS:  The judge didn't know what the judgment

20 said.  He wasn't even there.  He didn't sign off on the

21 judgment.

22      THE COURT:  I think that's highly unlikely.

23      MR. THOMAS:  No.  He didn't.  Judge Nichols was gone

24 when they went in and got the judgment.  They got it from

25 another judge.

37

1      THE COURT:  You nonetheless have an active judgment
2  finding you committed fraud.  That's one of the reasons I don't
3  think you're credible and I don't think you're honest.
4      MR. THOMAS:  Well, then you shouldn't be my judge
5  because if you can't be independent, then you shouldn't be the
6  judge.  You should recuse yourself right now.
7      THE COURT:  I should not because --
8      MR. THOMAS:  You should be because you're biased
9  against me.
10     THE COURT:  No, I'm not.  The only way I know about
11 this to know that you have committed fraud is by virtue of what
12 has happened in this case.  I am allowed to make findings and
13 have impressions based on what has happened in this case.
14     MR. THOMAS:  Your Honor, you blocked evidence in the
15 Tracini case throughout that showed that he was an investor.
16 There never was a loan.
17     THE COURT:  And have you --
18     MR. THOMAS:  And there was never funds --
19     THE COURT:  And have you appealed that judgment?
20     MR. THOMAS:  Yes, I have, Your Honor.
21     THE COURT:  And where is it?
22     MR. THOMAS:  Your case is in the Ninth Circuit Court
23 right now.
24     THE COURT:  That's fine.  And they may overturn me.
25 I don't know.

38

1    MR. THOMAS: I believe they will.

2    THE COURT: They could.

3    MR. THOMAS: I believe they will.

4    THE COURT: They could. I don't know.

5    MR. THOMAS: And I believe the case in Santa Clara

6 County is going to be overturned, too, Your Honor, and I think

7 I will be out of the bankruptcy because I didn't own anybody

8 any money.

9    THE COURT: Okay. Well --

10    MR. THOMAS: And the fraud was committed on me. And

11 you have taken it out on me since day one, me and my family.

12 And you've been biased. You blocked all the evidence that I

13 tried to get into the court case showing that -- there never

14 was a loan. There never was a loan. There was no funds that

15 ever came to me, ever.

16    THE COURT: Okay. Well, I think you should address

17 Mr. Hartman's turnover motion.

18    MR. THOMAS: Okay. I'm here to address it right now,

19 and I want to address all the points where he lied. And the

20 law is in my favor because --

21    THE COURT: Please stop. Stop. Please step forward

22 and be sworn. What document are you looking at, sir?

23    MR. THOMAS: I'm looking at the declaration of

24 Jeffrey Hartman.

25    THE COURT: And what document is that in?

-64-

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

A. Thomas - Court Examination                    49

1    THE COURT:  Yes, please.

2    MR. HARTMAN:  Okay.  The question I think Mr. Thomas

3 is asking to testify to is whether or not the statements in my

4 declaration are accurate.

5    THE COURT:  And I don't have your declaration in

6 front of me.  Declaration of Jeffrey Hartman?  Yes.

7    MR. HARTMAN:  Right.

8    THE COURT:  Okay.

9    MR. HARTMAN:  On page 2, this is docket entry 404,

10 page 2, paragraph 6 is the one we were talking about.  And it

11 says that in looking at question 10, I interpreted it to mean

12 -- interpreted it to say that in 2008 they transferred the

13 residence to the parents for $200,000.  That's what docket

14 entry 1, page 36 says.  Now he may say that I didn't tell my

15 attorneys to say that, but he signed the schedules and

16 statements.

17    THE WITNESS:  I didn't sign it.

18    MR. HARTMAN:  Well --

19 BY THE COURT:

20 Q    Mr. Thomas, listen, your schedules and statements say that

21 it's misleading, but there where talks about the value of the

22 residence in Portola, there's $200,000 in that space.  Do you

23 see that?

24 A    I do see that, but there's also $25,000 in that space.

25 Q    Right.

A. Thomas – Court Examination                                    50

1  A     And I made it clear on the record with the trustee.

2  Q     And this is a document that you authorized by your

3  signature to be done.  So this is confusing.  This is a

4  confusing thing.

5  A     That's why I cleared it up in the 341 meeting with the

6  trustee.  So she -- her saying she didn't know.  There's

7  specific questions about that in the 341 meeting, and I

8  presented those -- those questions as evidence.  And we can go

9  through every single one of those.

10           THE COURT:  No, we're done here.  This is not -- what

11  we're going to do is we're going to address Mr. Hartman's

12  motion for turnover, and you can address that.

13  BY THE COURT:

14  Q     The trustee has the right to turn over property that's not

15  exempt.  The house in Portola is not exempt.

16  A     Under the law, I believe you're wrong, Your Honor, and

17  you're not letting me --

18  Q     Could you stop, sir?

19  A     -- present the law.

20  Q     Would you --

21  A     You're --

22  Q     Would you not interrupt me, please?  The trustee has filed

23  a motion to turn over.  The property is not listed in -- the

24  property is still listed in your name.

25  A     But the turnover motion is not --

-66-

51

1  Q     Listen to me.

2  A     They already -- they admit in this motion themself that

3  there's an adversary complain with my parents, that there's a

4  dispute over the property.  And a turnover motion is not the

5  proper procedure for if there's a dispute over the property.

6  And I -- and I --

7  Q     You may step down --

8  A     And I put law in about that.

9  Q     -- and then sit down and be quiet.

10     (Witness excused)

11          THE COURT:  Your motion is granted.

12          MR. HARTMAN:  Thank you, Your Honor.

13          THE COURT:  Please upload an order.  I will sign it.

14  You do not need to run it by Mr. Thomas, and I will sign it.

15          Mr. Thomas?

16          MR. THOMAS:  Your Honor, I think you should recuse

17  yourself --

18          THE COURT:  Mr. Thomas?

19          MR. THOMAS:  -- because you do not go by the law.  I

20  put lots of law into this case and you just walked right over

21  it.  There's plenty of law that I put in that says --

22          THE COURT:  Then you should --

23          MR. THOMAS:  -- if there's a dispute --

24          THE COURT:  Then you should appeal.

25          MR. THOMAS:  If there's a dispute over --

-67-

52

1       THE COURT:  Then you should appeal.

2       MR. THOMAS:  -- a property --

3       THE COURT:  Then you should appeal.

4       MR. THOMAS:  I will appeal it.

5       THE COURT:  It is not the trustee's fault that your

6  mother did not record the deed.

7       MR. THOMAS:  Your Honor, you're wrong on the law.

8  Your job is to rule on the law, and you are wrong on the law.

9  If there's a dispute over the property, then they can't get it

10  from a turnover motion.  And I submitted all of that law, but

11  you won't look at it.

12       THE COURT:  I disagree with you.

13       MR. THOMAS:  No.  And the statute of limitations is

14  up because they only have six years to even go back and get it.

15  And I put that in, but you won't look at that law.  And then

16  they cite law under Chase Manhattan that's not even relevant to

17  the turnover motion.

18       THE COURT:  Would you --

19       MR. THOMAS:  It's --

20       THE COURT:  Would you please sit down, sir?

21       MR. THOMAS:  Can I cite that law and put it on the

22  record so that I can perfect my appeal?

23       THE COURT:  Please.  And what are you looking at

24  here?

25       MR. THOMAS:  I'm looking at the Chase case that they

-68-

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

53

1  cited.  It's not even relevant.  It's -- and in their brief,

2  they admit that there's a dispute over the law, and if there's

3  a dispute over the law, I provided you with law, tons of it, a

4  whole volume here that says that you cannot have a turnover

5  motion if there's a dispute over the property.  But you won't

6  look at the law.

7          THE COURT:  Show me where you're at.

8          MR. THOMAS:  Show you where it's at?

9          THE COURT:  In your filing of October 16th.

10         MR. THOMAS:  It's in my filings that I filed today.

11         THE COURT:  Well --

12         MR. THOMAS:  And it's also in my --

13         THE COURT:  -- how was I supposed to have read your

14  filings that you just filed?

15         MR. THOMAS:  Your Honor, I think you should read the

16  filings that I just filed because --

17         THE COURT:  Well, for one --

18         MR. THOMAS:  -- the whole -- this whole thing shows

19  that they can't do what they're doing and you can't do what

20  you're doing.  You're not going by the law.  The law says that

21  if there's a dispute --

22         THE COURT:  Stop.  Stop yelling at me.  Stop yelling.

23  Speak in a calm voice.  Don't be raising things up and --

24         MR. THOMAS:  I'm sorry, Your Honor.

25         THE COURT:  -- gesticulating.

54

1          MR. THOMAS:  You get me worked up because I feel

2    every time I come in this court, you just -- you are so biased.

3    You won't look at the law and you won't look at anything that I

4    file and go by the rule of law.  I live in the United States.

5          THE COURT:  As do I.

6          MR. THOMAS:  There's a Constitution, and you're

7    supposed to abide by it.

8          THE COURT:  As I do.  So --

9          MR. THOMAS:  I don't believe so.

10          THE COURT:  -- you filed this 21 minutes before the

11    hearing.

12          MR. THOMAS:  Yes, I did.

13          THE COURT:  And I didn't realize you'd filed it until

14    they put it up on the bench, so I did not have a chance to read

15    through your I'd say about 80 pages, so.

16          MR. THOMAS:  I think you should read it.

17          THE COURT:  Would you direct me to what you're

18    looking at?

19          MR. THOMAS:  Yes, I will.  I'll start off and I'll

20    even read it for you.

21          THE COURT:  No, you will not.  You will direct me to

22    what you're looking atm and I will read it.

23          MR. THOMAS:  Okay.  The first page.

24          THE COURT:  "I make this declaration in support"?

25          MR. THOMAS:  Yep.



ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

55

1          "The turnover motion and to correct the errors in the

2          turnover motion.  Although I stated the trustee

3          replies of the opposition of the motion to turnover

4          of real property, Hartman's declaration makes it

5          clear that Thomas did not conceal the existence of

6          the Portola property" --

7          THE COURT:  So stop.  Stop.  Whether -- there's no

8  allegation at this point that you concealed it.  That's not an

9  issue in this case.

10          MR. THOMAS:  Okay.  Then let's --

11          THE COURT:  You did not conceal it.  It was on your

12  statements and schedules.  You did not conceal the transfer.

13          MR. THOMAS:  Okay.

14          THE COURT:  That's not part of this case.

15          MR. THOMAS:  Okay.  If you go to page 7 --

16          THE COURT:  Hold on.

17          MR. THOMAS:  -- I state --

18          THE COURT:  Hold on.  Stop.  On page 7, you list a

19  bunch of cases.

20          MR. THOMAS:  Yes.  And all these cases have to do

21  with the turnover motion if there's a dispute.  And if you look

22  at Mr. --

23          THE COURT:  So what is the dispute?

24          MR. THOMAS:  Mr. Hartman and --

25          THE COURT:  What is the dispute?

56

1            MR. THOMAS:  -- Knudson say that there's a dispute.

2    They put it in their brief, in the trial brief.

3            THE COURT:  Stop.  Answer my question.  What is the

4    dispute?

5            MR. THOMAS:  That my parents own the property and

6    they don't have a right to have it turned over because this

7    isn't a proper procedure for a turnover motion if there's a

8    dispute over the property.  My parents are claiming that they

9    own the property, and he's claiming that --

10           THE COURT:  Well, how about 544(a)(3) that says the

11   trustee has a hypothetical right as a bona fide purchaser of

12   value without notice to recover property?  Please turn your

13   phone off, sir.

14           MR. THOMAS:  I'm turning it off right now.

15           THE COURT:  So in this circumstance, there was not

16   deed that's filed in California that shows your parents own the

17   property.  And, therefore, under 544(a)(3), the trustee can

18   turn it over to her, so.

19           MR. THOMAS:  Your Honor, they can't because the deed

20   was conveyed, and I cited plenty of law in my brief saying --

21           THE COURT:  You've cited plenty of California law,

22   and that's absolutely correct.  But we're dealing with

23   bankruptcy law here.

24           MR. THOMAS:  I understand that, but the property is

25   in California, and California law --

57

1    THE COURT:  Doesn't trump federal law.

2    MR. THOMAS:  Well, and I put a bunch of cases in

3  there if you would read them all about --

4    THE COURT:  You gave them to me 21 minutes before the

5  hearing started.

6    MR. THOMAS:  No, I -- no, I put them in the judicial

7  notice that I'd like you to take when I filed my judicial

8  notice motion that I want you to take judicial notice of the

9  law so that you don't just rule any way you want.

10   THE COURT:  Here's what I'll do.  I will read the

11 cases you have cited.  I will continue this for a week.  You

12 will be back here in a week at 1:30 in the afternoon, and I

13 will make my decision.

14   MR. THOMAS:  Your Honor, I still want to go --

15   THE COURT:  Stop.

16   MR. THOMAS:  I want to make sure that we have a clear

17 record that I put a bunch of cases in there that says that this

18 is not the proper procedure for a turnover motion if there's a

19 dispute.  And the case that they cited, the Chase case, doesn't

20 have anything to do with it.  This should be turned over in my

21 favor today because the Chase case that they cited is a lot of

22 bona fide purchaser.  There's no bona fide purchaser.  My

23 parents have had that deed since 2008 and it was conveyed

24 properly back then.  Just -- and the law says they don't have

25 to -- they didn't have to register it for it to be their

58

1 property.

2          THE COURT:  Well, that would be perfectly correct if

3 you were in state court in California, but that's not where you

4 are.  You are in federal court in bankruptcy court where the

5 trustee has certain rights to set aside transfers.

6          MR. THOMAS:  I think in 1856 or something like

7 that --

8          THE COURT:  1856 --

9          MR. THOMAS:  --  I'm not sure exactly on the law.

10          THE COURT:  1856 was before the enactment of the

11 Bankruptcy Code.

12          MR. THOMAS:  Well, I understand that, but Nevada took

13 over the English law and so did California.  And in English

14 law, based on English law that I put in my brief that if a deed

15 is conveyed and it's conveyed with the intent, which it was,

16 and it was given to them for full value, then they have legal

17 title to that property.  It doesn't have to be reported and the

18 law --

19          THE COURT:  Except that the trustee has avoiding

20 powers that apply.

21          MR. THOMAS:  Not if there's a dispute.  You can't

22 give him the property in a turnover motion if there's a dispute

23 over the property, and there is a dispute.

24          THE COURT:  I do not think you are correct.

25          MR. THOMAS:  Well --

59

1      THE COURT:  But I will hear you next week.

2      MR. HARTMAN:  Well, Your Honor?

3      THE COURT:  Sit down.

4      MR. THOMAS:  This whole --

5      THE COURT:  Sit down.  Sit down.  You sit down.

6  Mr. Thomas, sit down.

7      MR. THOMAS:  You're not going to let me make a clear

8  record.  Is that what you're going to do, Your Honor?

9      THE COURT:  You have made a record.  You've made a

10 paper record.  I'm not going to let you yell at me anymore.

11 Sit down.

12      Mr. Hartman, please respond briefly.

13      MR. HARTMAN:  Two things, Your Honor.  One, earlier,

14 you struck that opposition that was filed or the reply that was

15 filed today because it's not within the rules.  He already

16 filed an opposition last week.

17      THE COURT:  I will still read it.

18      MR. HARTMAN:  And, second, it may not be obvious, but

19 basically Mr. Thomas is attempting to represent the rights of

20 his parents.

21      THE COURT:  Correct.

22      MR. HARTMAN:  Nobody has bothered to present the

23 Court with this deed that supposedly was transferred in 2008.

24 If there's going to be a record completed and Mr. Thomas is

25 going to insist on that position, then he should be ordered to

-75-

60

1  present a copy of that deed which should demonstrate that it

2  was signed in 2008 and transferred to his parents.  If he can't

3  do that, he has no case and his parents have no case.

4  THE COURT:  Mr. Thomas.

5  MR. THOMAS:  Your Honor --

6  THE COURT:  Please step to the podium.  I'm going to

7  ask you a question.

8  MR. THOMAS:  Ask me a question, Your Honor.  Go

9  ahead.

10  THE COURT:  Did you prepare a deed?  Did you --

11  MR. THOMAS:  Yes.  They have a signed deed.

12  THE COURT:  Did -- I didn't ask you that.  Did you

13  prepare a deed?

14  MR. THOMAS:  Yes.

15  THE COURT:  And did you give it to your parents?

16  MR. THOMAS:  Yes.

17  THE COURT:  And do they have it?

18  MR. THOMAS:  Yes.

19  THE COURT:  And why haven't you produced it?

20  MR. THOMAS:  Because I don't have the deed.  My

21  parents have the deed.

22  THE COURT:  Did you think it might make sense to ask

23  your parents?

24  MR. THOMAS:  It's -- the property is not mine, Your

25  Honor.

61

1      THE COURT:  I didn't ask you that.  Well --

2      MR. THOMAS:  And you had me do all this without an

3  attorney in 30 days.  I asked you if I could get an attorney to

4  represent me and you crammed this thing down my throat in less

5  than 30 days to represent myself.  And I asked you.  He slips

6  in right at the end.  This is an unfair practice, Your Honor.

7  My constitutional rights have been taken away.  You let him

8  have this hearing today without me getting an attorney --

9      THE COURT:  Stop.

10     MR. THOMAS:  -- and I had to spend --

11     THE COURT:  Stop.  Stop.

12     MR. THOMAS:  -- all this time to prepare this.

13     THE COURT:  You are not entitled to an attorney as a

14  matter of constitutional right in a bankruptcy hearing as an

15  individual.  You are not.

16     MR. THOMAS:  I have a disability, Your Honor, and

17  I'll have the --

18     THE COURT:  You have not proved that you have a

19  disability to the Court because you've not given any medical

20  evidence.  And I do not believe that dyslexia from what I can

21  understand is a disability that will allow you to behave as you

22  wish in court.

23     MR. THOMAS:  I'm not saying that, Your Honor.  I gave

24  you plenty of law on that that I'd like you to take judicial

25  notice on.  And I'd like you to take judicial notice on

62

1  everything that I filed and answer yes or no to everything that

2  I put on file on what your opinion is on it so if you rule

3  against me, I can appeal it.

4          THE COURT:  You don't get to have my opinion.  I will

5  make findings after I have read all this new stuff that you

6  give.  You are not to file anything other than the deed, if you

7  get it.  If you don't get the deed, you can't file anything.

8          MR. THOMAS:  I will file the deed.

9          THE COURT:  What?

10         MR. THOMAS:  I will file the deed.  That's not a

11 problem.

12         THE COURT:  That would be fine.

13         MR. THOMAS:  I have to ask my parents for the deed,

14 but I will get the deed.

15         THE COURT:  Okay.

16         MR. THOMAS:  I'll get a -- I will get a copy of the

17 deed because the law says they have to be in -- they have to be

18 in control of the deed at all times and they have been.  So I

19 will get you a copy of the deed that my parents hold.

20         MR. HARTMAN:  Well, then I would ask that it be the

21 original, Your Honor.

22         MR. THOMAS:  I'm not --

23         THE COURT:  It has to be the original.

24         MR. THOMAS:  I'm not going to give the original

25 because the law says that they have to hold the deed at all

- 78 -

63

1  times.  And I'm not going to break their -- you want my parents

2  to have the deed, then you subpoena them and bring them in here

3  and they'll give you the deed.  I'll give you a copy of the

4  deed.

5              THE COURT:  Would you please do an order to show

6  cause directing his parents to appear in court next Sunday or

7  next Thursday?

8              THE CLERK:  And Your Honor?

9              THE COURT:  What?

10             THE CLERK:  I apologize.  You'll be in Las Vegas --

11             THE COURT:  Oh, that's right.  I can't do that.

12  Yeah.

13             THE CLERK:  -- on Thursday for a meeting.  We can do

14  Friday at 1:30.

15             THE COURT:  Friday at 1:30.

16             THE CLERK:  Friday, the 21st of September.

17             THE COURT:  So I am entering an order ordering your

18  parents to appear with the original deed, parent or parents.

19  It doesn't have to be both of them.  You choose.

20             MR. THOMAS:  Yeah, my father is 89 years old.  My

21  mother is 80, so --

22             THE COURT:  You're the one who's causing the problem.

23             MR. THOMAS:  I'm not causing the problem, Your Honor.

24  I stated the facts on the case, and they were given the deed

25  back in 2008.

64

1    THE COURT:  Right.  And --

2    MR. THOMAS:  There's no problem.

3    THE COURT:  -- and you can either get the original

4  deed from them and bring it to court and display it --

5    MR. THOMAS:  Well, I'll have their attorney --

6    THE COURT:  That would be absolutely fine.

7    MR. THOMAS:  -- whatever they have to do and my

8  brother may because my parents are 80 and 89.  I don't think

9  it's fair.  My dad can't come up here because of his heart

10  condition, and --

11    THE COURT:  You're the one who's insisting that you

12  won't bring the original deed.

13    MR. THOMAS:  I will get you the deed, Your Honor.  If

14  you want me to present the deed, I will get the deed.

15    THE COURT:  That's all I want you to do.

16    MR. THOMAS:  But I want to give you a copy of the

17  deed, not the original deed because under the law, they have to

18  hold the deed at all times.

19    THE COURT:  I want you to bring to court the original

20  deed.

21    MR. THOMAS:  Well, I'll have to talk to their

22  attorney about that --

23    THE COURT:  That would do fine.

24    MR. THOMAS:  -- because I don't know if I -- if

25  they'll let me have it.  I don't -- I can't make my parents

65

1  give me the original deed.

2          THE COURT:  Then that's your problem, not mine.

3          MR. THOMAS:  Your Honor, once again, you're

4  prejudicing me and I think you should recuse yourself.

5          THE COURT:  I'm not going to recuse myself.  You will

6  certainly appeal whatever happens here.  You can raise whatever

7  you think it is I've done that's inappropriate.

8          MR. THOMAS:  Okay.  So my understanding is, Your

9  Honor, the document that I filed today, you will have on the

10 record and all that law you will rule on that law?

11         THE COURT:  What I said was I would read through the

12 stuff you filed today.  I will go back and compare it with the

13 stuff you filed earlier this week.  That's what I'm saying.

14         MR. THOMAS:  Okay.  I appreciate that, Your Honor,

15 because I think --

16         THE COURT:  Thank you.

17         MR. THOMAS:  -- if you read the law, you will see

18 that we were in the right and that the trustee and Mr. Hartman

19 are in the wrong and that they illegally took possession of my

20 parents home.

21         THE COURT:  I do have a question about your parents'

22 home.  You have testified previously that the home was just a

23 shell and that there was nothing in it but bare walls.  Is that

24 correct?

25         MR. THOMAS:  Yeah.  It's a shell.

66

1      THE COURT:  And --

2      MR. THOMAS:  Nobody ever lived in that house.

3      THE COURT:  Stop.  But your mother in her letter

4  indicated that the trustee had gone in and taken out cupboards

5  and some other things.  You didn't mention any cupboards, and

6  how would your mother know that?

7      MR. THOMAS:  My parents bought cabinets and that

8  stuff that are still in there.  They're not in the -- they're

9  on the floor.  They're not hanging on the wall.  Nobody's ever

10  lived in there.  There's no bathrooms in it.  There's no

11  running water.

12      THE COURT:  And where would your mother get the

13  information that cabinets were taken?

14      MR. THOMAS:  Because from the -- they didn't say that

15  they were taken.  They were moved, and they painted the inside

16  of the house.  That's their home.

17      THE COURT:  No, no, no.

18      MR. THOMAS:  They had --

19      THE COURT:  Your mother has asserted in her letter, I

20  believe --

21      MR. THOMAS:  No.  She says that they -- that she

22  wants an inventory of the cabinets that are in the house to

23  make sure that they're still there.  That's what she asked for

24  and for other personal items that they have in their home.

25  Somebody went in that house and painted that house.  They

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

67

1  didn't have the right.  That house wasn't turned over to

2  anybody.  This Court didn't turn it over.  They changed the

3  locks on her home and then they went inside the home.  And she

4  wants to know what they took out of the house.

5           THE COURT:  Then she can bring that.

6           MR. THOMAS:  She --

7           THE COURT:  It's not --

8           MR. THOMAS:  She asked Mr. Hartman to --

9           THE COURT:  No, no.  She has to bring it by way of a

10 pleading if she wants to get it properly, and that's not for

11 you.

12          MR. THOMAS:  I understand.  My mom's probably going

13 to sue the trustee and Hartman for what they did.  So that's

14 fine.  And for their misstatements to the Court, so.

15          THE COURT:  Okay.

16          MR. HARTMAN:  What is the hearing date and time, Your

17 Honor?

18          MR. THOMAS:  Your Honor, could I get a couple of

19 weeks so --

20          THE COURT:  Stop.  Let's find out what dates we have

21 available.

22          THE CLERK:  Your Honor, the original you said one

23 week would be --

24          THE COURT:  Yeah, but that won't work.

25          THE CLERK:  Okay.  Let's go a little farther out.



68

1          MR. THOMAS:  Could I make one request, Your Honor?

2          THE COURT:  Not right now you can't, but hang on.

3          THE CLERK:  Your Honor, we can bump it out two weeks

4   to Thursday, September the 27th at 2:00 p.m.

5          THE COURT:  Mr. Thomas, does that work for you?

6          MR. THOMAS:  Your Honor, because this is a financial

7   burden on me and every day I take off, it's taxing on me and my

8   family.

9          THE COURT:  I understand.

10         MR. THOMAS:  Okay.  And so, I would like the hearing

11  to be at the same time as the turnover motion which is supposed

12  to be on, what, October something.  So I don't -- and I will

13  bring those documents and I will ask my parents' attorney and

14  them if I can bring the original deed --

15         THE COURT:  That would be great.

16         MR. THOMAS:  -- to court.

17         MR. HARTMAN:  Your Honor?

18         THE CLERK:  The turnover motion's scheduled for

19  today, Your Honor, at this point --

20         MR. HARTMAN:  The --

21         THE COURT:  Yeah, today was --

22         MR. THOMAS:  No, I mean, excuse me, the motion that I

23  requested for judicial notice.

24         THE CLERK:  Oh, uh-huh.

25         MR. THOMAS:  So that you can rule on all the judicial

69

1 notice and all the stuff that I filed today.

2         THE COURT:  I'm not telling you that I'm going to

3 rule on the judicial notice.  I will read everything.  You

4 don't just get to ask me to make rulings on what's judicial or

5 not.  I make rulings based on facts and law, and I will do that

6 in this case.  I'm not going to give you a law review on

7 judicial notice or what you think.  I'm going to read the stuff

8 and I will consider it at the time of the hearing.  Do you

9 understand?

10         MR. THOMAS:  Yes.  That's what I would like you to

11 do, Your Honor.  I would like you to --

12         THE COURT:  Okay.  Stop.

13         MR. THOMAS:  -- rule on the facts and the law.

14         THE CLERK:  Your Honor, the date he was given for

15 that pleading for that motion was October the 16th at 2:00 p.m.

16         MR. THOMAS:  What --

17         THE CLERK:  I can block the rest of the afternoon if

18 you'd like.

19         THE COURT:  Okay.

20         MR. THOMAS:  What day is the 16th?

21         THE CLERK:  October the 16th is a Tuesday.

22         MR. THOMAS:  Could we do this on a Friday because for

23 me to take off during the middle of the week --

24         THE COURT:  That's -- let's see what we have on that

25 Friday.

70

1              THE CLERK:  Let's see what we have.  Unfortunately,

2    Your Honor, Friday is already full.

3              THE COURT:  What's on it?

4              THE CLERK:  We have the Galloway plan and disclosure

5    statement.  And in the morning, we have <u>Baner v. Charles</u> with a

6    motion for summary judgment at Las Vegas --

7              MR. HARTMAN:  Your Honor, may I be heard?

8              THE CLERK:  -- to which you intended to travel to Las

9    Vegas.

10             THE COURT:  Yes, sir.  Mr. Hartman.

11             MR. HARTMAN:  The purpose of the continuance was to

12   give you an opportunity to read the papers and for them to

13   present the original of the deed.  Putting it out into the

14   middle of October is unreasonable.

15             THE COURT:  I'm -- I don't think we'd go out much

16   further than that.  What do we have -- next Friday doesn't work

17   for you.  Is that correct?

18             MR. THOMAS:  No, Your Honor.

19             THE COURT:  The Friday after that, I don't think it

20   works for me either.  The Friday after that?

21             MR. THOMAS:  Your Honor, I'm working on all these

22   fires right now, so it's, you know, I got a really tough

23   schedule.  So if we could do it on the same day so that I don't

24   have to come back and you could do the rulings all at one time

25   and not -- I don't want to take more time in the court and more

74

# C E R T I F I C A T I O N

I, Dipti Patel, court-approved transcriber, hereby
certify that the foregoing is a correct transcript from the
official electronic sound recording of the proceedings in the
above-entitled matter.


_/s/ Dipti Patel_

DIPTI PATEL, AAERT NO. 997    DATE:  September 27, 2018

ACCESS TRANSCRIPTS, LLC


# C E R T I F I C A T I O N

I, Alicia Jarrett, court-approved transcriber, hereby
certify that the foregoing is a correct transcript from the
official electronic sound recording of the proceedings in the
above-entitled matter.



_Alicia J. Jarrett_

ALICIA JARRETT, AAERT NO. 428    DATE:  October 1, 2018

ACCESS TRANSCRIPTS, LLC




# EXHIBIT 8

Excerpts from Transcript of Hearing
11-2-2018

EXHIBIT 8

-88-

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA (RENO)

|  |  |  |
|---|---|---|
| IN RE: | . | Case No. 14-50333-BTB |
|  | . | Chapter 7 |
| ANTHONY THOMAS AND | . |  |
| WENDI THOMAS, | . | 300 Booth Street |
|  | . | Reno, NV 89506 |
| Debtors. | . |  |
|  | . | Friday, November 2, 2018 |
| . . . . . . . . . . . . . | . | 3:14 p.m. |

TRANSCRIPT OF DECLARATION OF ANTHONY THOMAS IN SUPPORT OF
MOTION FOR JUDICIAL NOTICE OF LAW & FACTS (FRE RULE 201) FILED
BY ANTHONY THOMAS [395];
STATUS HEARING:  MOTION FOR TURNOVER FILED BY
JEFFREY L. HARTMAN ON BEHALF OF JERI COPPA-KNUDSON [353]
**BEFORE THE HONORABLE BRUCE T. BEESLEY**
**UNITED STATES BANKRUPTCY COURT JUDGE**

APPEARANCES:

| | |
|---|---|
| For the Debtors: | ANTHONY THOMAS, Pro Se<br>7725 Peavine Peak Court<br>Reno, NV 89523 |
| For the Chapter 7<br>Trustee: | Hartman & Hartman<br>By: JEFFREY L. HARTMAN, ESQ.<br>510 West Plumb Lane, Suite B<br>Reno, NV 89509<br>(775) 324-2800 |
| Chapter 7 Trustee: | JERI COPPA, ESQ.<br>3495 Lakeside Drive<br>Reno, NV  89509<br>(775) 329-1528 |
| For Kenmark Ventures:<br>(Telephonically) | AMY N. TIRRE, ESQ.<br>3715 Lakeside Drive, Suite A<br>Reno, NV  89509<br>(775) 828-0909 |
| Audio Operator: | Illuminada Starzyk, ECR |
| Transcription Company: | Access Transcripts, LLC<br>10110 Youngwood Lane<br>Fishers, IN 46038<br>(855) 873-2223<br>www.accesstranscripts.com |

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

2

1        (Proceedings commence at 3:14 p.m.)

2            THE COURT:  Good afternoon.  Pardon me, good

3  afternoon.  Please be seated.  This is the case of Anthony

4  Thomas and Wendi Thomas, case number 14-5033.  Appearances in

5  Court, please.

6            MR. HARTMAN:  Good afternoon, Your Honor.  Jeff

7  Hartman on behalf of the trustee.

8            MS. COPPA:  Good afternoon, Your Honor.  Jeri Coppa,

9  trustee.

10            THE COURT:  Mr. Thomas?

11            MR. THOMAS:  Good afternoon, Your Honor.  I first

12  would like to apologize to the Court and Mr. Hartman for being

13  late today.

14            THE COURT:  I understand there was bad traffic coming

15  out of San Francisco.  That happens, no problem.

16            MR. THOMAS:  Yeah.  So I want to apologize for the

17  inconvenience to the Court and to Mr. Hartman for that.

18            THE COURT:  Thank you, but I'm pretty sure we'll

19  survive.

20            MR. THOMAS:  Okay.  Thank you.

21            THE COURT:  Thanks.  Have a seat.

22            MR. THOMAS:  Okay.

23            THE COURT:  And on the phone, please?

24            MS. TIRRE:  (Telephonically)  Good afternoon, Your

25  Honor.  Amy Tirre on -- excuse me, on behalf of Kenmark

3

1  Ventures.  I'm just listening.

2             THE COURT:  Okay.  Thank you.  So this is a motion

3  to --

4             MS. TIRRE:  Thank you.

5             THE COURT:  This is a motion to turn over property.

6  Go ahead, Mr. Hartman.

7             MR. HARTMAN:  Well, Your Honor, at the last hearing,

8  if you'll recall, there was the contention by the debtor that

9  he had transferred the property in Portola to his parents in

10 2008.

11            THE COURT:  Right.

12            MR. HARTMAN:  And the sum and substance of the

13 hearing was that the Court entered an order, number one,

14 continuing the hearing, and then directing Mr. Thomas's parents

15 to bring the original deed to Court, and also directing Mr.

16 Thomas not to file any further papers.

17            THE COURT:  That's correct.

18            MR. HARTMAN:  And my understanding of at least one of

19 the papers filed by Mr. Thomas in the form of a declaration is

20 that he was told by Mr. Lehners that his parents should not

21 bring the deed into the State of Nevada.  There was a copy of a

22 purported deed attached to one of the papers filed by

23 Mr. Thomas, but I have no way of knowing whether it's an

24 authenticated deed that was, in fact, executed properly and

25 delivered in 2008.

4

1        So the Court also, at Mr. Thomas's request, continued

2   the hearing from an earlier date, I think it was in October,

3   until today because of Mr. Thomas's schedule, and here we are.

4   And there was something filed, apparently, within the last 15

5   minutes or so and I haven't had an opportunity to look at it

6   and see what it purports to be.

7        THE COURT:  Well, I was only handed it -- other than

8   that, it says it's a declaration of Anthony Thomas and it has

9   some attachments to it.  That's all I know.

10       MR. HARTMAN:  So what -- obviously the Court will

11  want to hear from Mr. Thomas, but what I'm going to propose is

12  that we kick this out again and I'm going to set a Rule 2004

13  examination for one or both of the parents, and I'll go down to

14  the vicinity of where they live and we'll have a 2004

15  examination on the record in the court reporter's office.  And

16  I'll examine what it is that they have and then make a

17  determination as to whether or not I want to engage a

18  handwriting expert to determine the authenticity or not.

19       THE COURT:  Okay.  Thank you.  Mr. Thomas?  So did

20  you bring the original with you?

21       MR. THOMAS:  No, I did not, Your Honor.

22       THE COURT: And why is that?

23       MR. THOMAS:  Because my parents and their attorney

24  wouldn't let me bring it.  And at the advice of Mr. Lehners I

25  only gave the copy because Mr. Hartman only requested a copy in

5

1  a letter that he sent to me.

2           THE COURT:  Well, there was also a statement in court

3  that you were to bring the original.

4           MR. THOMAS:  I know, but I can't force my parents to

5  give me something that's not mine, and --

6           THE COURT:  Well, we can.

7           MR. THOMAS:  -- and I don't have any grounds.

8           THE COURT:  We can.  We can subpoena it.

9           MR. THOMAS:  Well, I understand that and the Court

10  has that right to do that, but my parents were not involved in

11  any of the litigation and nobody, you know, nobody has served

12  my parents or any of that, so -- and I don't have the authority

13  to get the document from them.  You're asking me to do

14  something that I don't --

15           THE COURT:  No.

16           MR. THOMAS:  -- have the right --

17           THE COURT:  Not any more.

18           MR. THOMAS:  Right.  So --

19           THE COURT:  It'll be subpoenaed.

20           MR. THOMAS:  So that's okay.

21           THE COURT:  Okay.

22           MR. THOMAS:  Your Honor, that's okay.  But I also

23  want to state that Mr. Hartman never requested the deed.  At

24  all times they -- and the trustee, they requested lots of

25  documents to me at the 341 meeting when this was all disclosed

-93-

6

1  and the house was disclosed and that my parents had the deed

2  over three years ago.  And they requested all kinds of

3  documents from me, bank account documents and everything else,

4  but they didn't -- they never requested the deed.

5           And they never requested the deed until after they

6  took possession of my parents' house.  And they had full

7  knowledge that my parents disclosed -- they had full knowledge

8  that parents had the deed back then.  They could have requested

9  it back then and they never did.  So I don't think it's fair

10  now for them to go back -- it's -- the burden is on them, Your

11  Honor, and they didn't meet that burden.  They didn't --

12           THE COURT:  How did they not meet that burden?

13           MR. THOMAS:  Because they never requested the deed

14  until after they took possession of their house and they had

15  the right to request the deed --

16           THE COURT:  And is there a rule that says they have

17  to request the deed at a certain time?

18           MR. THOMAS:  There should be a statute --

19           THE COURT:  Is there?  Is there a statute that says

20  they have to request the deed by a certain time?

21           MR. THOMAS:  I believe there is, and I --

22           THE COURT:  So tell me what --

23           MR. THOMAS:  And I --

24           THE COURT:  Tell me what it is.

25           MR. THOMAS:  And I stated that in my --

7

1      THE COURT:  Tell me what it is.

2      MR. THOMAS:  -- in my motion.

3      THE COURT:  Tell me what it is.

4      MR. THOMAS:  Okay.  If you can give me just a few

5  minute to go through --

6      THE COURT:  Sure, I can.  No problem.

7      MR. THOMAS:  -- the docket and see -- you know,

8  through my docket and see which -- where that document is,

9  okay.

10      THE COURT:  Well, take a look.

11      MR. THOMAS:  I'm not an attorney, Your Honor.

12      THE COURT:  Take a look.

13      MR. THOMAS:  Okay.

14    (Pause)

15      MR. THOMAS:  I think it's addressed here in R3 of the

16  judicial notice where I asked to check the boxes under the --

17      THE COURT:  Well, I didn't bring those in.  Could you

18  please ask -- I'm sorry, I didn't see that.  Could you please

19  bring those in?

20      MS. COPPA:  Mr. Thomas, is that docket -- excuse me,

21  is that docket number 423?

22      MR. THOMAS:  I think it's 411.

23      MS. COPPA:  411, okay.

24      MR. THOMAS:  Submitted on 9/28.

25      THE COURT:  So while -- just while we're waiting --

8

1        MS. COPPA:  Okay.  Thank you.

2        THE COURT:  Just for your future education, giving me

3   a bunch of papers and asking me to take judicial notice of them

4   is not an appropriate way to try and prove your case.  I did

5   read what you sent to me.  I'm not sending back your report

6   card.  I considered what was in them, but you just don't take

7   judicial notice of various cases and stuff.  You read the

8   cases, see if they apply to the case and consider them in that

9   fashion.

10       So what's your -- I don't know what you were trying

11  to do, but the little report card you sent with me and all the

12  documents you sent with me, it's just not the appropriate way

13  to do it.  I mean, you can cite cases and I'll look them up or

14  you can -- if you want to be nice you can give me copies of

15  them and I'll look them up, but doing what -- doing it the way

16  you did was not good.  So what page is this?  What docket

17  number is this?

18       MR. THOMAS:  This is docket number 411.

19       THE COURT:  Okay.

20       MR. THOMAS:  And I cited a lot of cases.

21       THE COURT:  So I want to know which one says --

22       MR. THOMAS:  On Page 4 it would be R3.3 and R3.2, the

23  Jackson case.

24       THE COURT:  Hold on.  Okay.  So this -- I'll read

25  this.  It says:



9

1            "These presumptions are applicable even if the deed

2             is not recorded until after the death of the grantor

3             who, in the meantime, exercises act of control over

4             the property by collecting rent, paying insurance in

5             his own name, give some case cites."

6        And then R3.4 says, "Possession of the deed by the

7  grantee also creates prima facie evidence of valid delivery."

8        So my question was, is there a particular time by

9  which Mr. Hartman has to ask for the deed?

10       MR. THOMAS:  Well, I -- there was a statute in there

11 that I've cited some of the law, and I'm looking in here in the

12 question box, it said that, you know, a reasonable time for

13 chattel, you know, to -- and I think three and a half years --

14       THE COURT:  Well, chattel is not real property.  Real

15 property is not chattel.

16       MR. THOMAS:  Well, I mean, a reasonable time to ask

17 for the deed should have been three years ago when it was

18 disclosed.

19       THE COURT:  And what case says that?

20       MR. THOMAS:  I have some cases.  Let me get through

21 this because I have a lot that I sent to you.  And, Your Honor,

22 the reason that I did the checkbox is --

23       THE COURT:  I don't care.

24       MR. THOMAS:  Okay.

25    (Pause)

10

1    MR. THOMAS:  How about Page 21 on Docket 411 R18.

2    THE COURT:  Hold on.  Page 21 you said?

3    MR. THOMAS:  Uh-huh.  Point 4.

4    THE COURT:  R18.4:

5    "Trustee's turnover power can be improperly invoked,

6    especially when it is used as a Trojan horse for

7    bringing garden variety contract claims when the

8    property is not already property of the state or

9    where the turnover statute is used to recover assets

10   with disputed title when the estate's claim is

11   overship [sic] is" -- I think it means claim of

12   ownership -- "is legitimately debatable."

13   So how does that mean he has a limited period of time

14   to request the deed?

15   MR. THOMAS:  Well, I'm just going by what Hartman

16   told me that there was -- if it was over six years from the

17   time you filed bankruptcy they can't go back.  And he gave me

18   some law on that and I'm trying to find that law.

19   THE COURT:  Who gave you that?

20   MR. THOMAS:  Mr. Lehners.

21   THE COURT:  Well --

22   MR. THOMAS:  And so I'm trying to find that

23   particular law.  But, Your Honor, in their reply brief the only

24   two issues that they brought up in the reply brief was that I'm

25   dyslexic and that I didn't produce the deed, which I did

- 98 -

11

1  produce the deed --

2         THE COURT:  But not till after they filed their final

3  response.

4         MR. THOMAS:  Yeah, but they filed early.  They filed

5  a day early and I filed, you know --

6         THE COURT:  Okay.  You've now produced a deed.

7         MR. THOMAS:  Yes.

8         THE COURT:  You produced a photocopy of a deed.

9         MR. THOMAS:  And you said --

10         THE COURT:  Stop.  You produced a photocopy of a

11  deed.  You have not produced the original deed.  Is that

12  correct?

13         MR. THOMAS:  That is a photocopy of the original

14  deed.  Yes, I did not give the original deed, but I gave you a

15  photocopy of the original deed.

16         THE COURT:  Right.

17         MR. THOMAS:  Okay.

18         THE COURT:  And I -- my recollection is I told you to

19  bring the deed, but -- the real deed, not the photocopy of the

20  deed.

21         MR. THOMAS:  I understand that, Your Honor, but you

22  directed me to do something that I don't have the right to do.

23         THE COURT:  Okay.  That --

24         MR. THOMAS:  I don't have the power to do that, and

25  you know that.

12

1          THE COURT:  I understand -- well, if I asked my

2  parents they probably would do it, but I don't know.  But the

3  Court has the power to have your parents produce the deed.  Mr.

4  Hartman will apply for -- will file papers, will get an order

5  for them to produce the deed and they will have to produce the

6  deed.  He will then go to the area in California where they

7  live, he will depose them and he said he would probably have,

8  if he has concerns, a document examiner look at them.  He's

9  entitled to do that.

10          Mr. THOMAS:  Your Honor, in their reply brief they

11  never requested any of that and he's just requesting it now.

12  He didn't request any of that in his reply brief.  That's not

13  proper form.  He didn't request that my parents --

14          THE COURT:  Neither is giving me 600 pages of stuff

15  when I told you not to give me anything.

16          MR. THOMAS:  No, you didn't, Your Honor.  You said if

17  you produce the deed, which I did according to their letter, I

18  gave a copy.  They didn't ask for the original deed in their

19  letter.  They asked for a copy.

20          THE COURT:  You -- I told you not to file any more

21  pleadings.

22          MR. THOMAS:  Unless --

23          THE COURT:  Stop.

24          MR. THOMAS:  -- I produce the deed.  That was your

25  exact words.

13

1   THE COURT:  And you did not produce --

2   MR. THOMAS:  Go back to the transcript.

3   THE COURT:  And you did not produce the deed.

4   MR. THOMAS:  I did produce --

5   THE COURT:  You produced a copy of the deed.

6   MR. THOMAS:  Okay.

7   THE COURT:  Okay.  We're done here today.  So have a

8   seat.

9   MR. THOMAS:  Okay.  I would like --

10  THE COURT:  Have a seat.

11  MR. THOMAS:  I would like to --

12  THE COURT:  Have a seat or I will have security

13  remove you.

14  MR. THOMAS:  Your Honor, you should --

15  THE COURT:  Please call security.

16  MR. THOMAS:  You should recuse yourself right now,

17  Your Honor.  You are so biased to me.

18  THE COURT:  No, I'm not.

19  MR. THOMAS:  Yes, you are.  I filed this motion today

20  showing that you're biased.  On the docket, on your own docket,

21  Your Honor, if you --

22  THE COURT:  We will be in recess till the CSOs get

23  here.

24  MR. THOMAS:  Please call me back.

25  (Recess taken at 3:32 p.m.)

14

1          (Proceedings resumed at 3:44 p.m.)

2               THE CLERK:  We're back on the record.

3               THE COURT:  Okay.  Please come back to the podium,

4    sir.  So there was a question about whether or not you were

5    supposed to file anything, and I'll give you a copy of this

6    afterwards.  This is Page 62 of 74 of the hearing held 10/2/18.

7    It says you are not to file anything other than the deed if you

8    get it.  If you don't get the deed, you can't file anything.

9               MR. THOMAS:  That's right.  That's what you said.

10              THE COURT:  And you did not get the deed.  Stop.  You

11   said, I will file the deed.  You did not do that.  We need to

12   have the actual deed.  So here's a copy of this if you want.

13              MR. THOMAS:  Your Honor, I also found the question

14   you asked before for laches was on 11.9 of my judicial notice,

15   the Norton case, Page 9.

16              THE COURT:  I don't have the Norton case in front of

17   me.

18              MR. THOMAS:  What's that?

19              THE COURT:  I do not have the Norton case in front of

20   me.

21              MR. THOMAS:  I -- for the request for judicial

22   notice --

23              THE COURT:  You gave me something like 600 pages of

24   stuff.  I do not have the case you cite -- you're referring to

25   in front of me.

-102-

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

15

1      MR. THOMAS:  Okay.  I'll get it for you right here in

2  my binder.  Just give me one second and I'll pull it up for

3  you.

4      (Pause)

5      MR. THOMAS:  Okay.  Okay.  It's the 2012 Norton case

6  request for the Court to take judicial notice of the following

7  points of law regarding turnover motion under 542 and 543 of

8  the Bankruptcy Code.  The turnover motion actions under 542,

9  543 generally cannot be used, however, to determine assistance

10  whose title is in dispute.  The Court take judicial notice of

11  the Norton case.

12      THE COURT:  Do you have a copy of the Norton case

13  there?

14      MR. THOMAS:  And I can give you a copy right here.

15      THE COURT:  Yeah, give me the copy.

16      MR. THOMAS:  Okay.

17      THE COURT:  Your contention is that you can't use a

18  turnover case if there's a dispute.  I understand that.

19      MR. THOMAS:  And there's also laches because of the

20  time.  And I put that in a judicial notice.  That's why I was

21  asking, Your Honor, if you could check the boxes so that --

22      THE COURT:  I'm not --

23      MR. THOMAS:  -- I know that you --

24      THE COURT:  No, I'm not checking the boxes.

25      MR. THOMAS:  Well, how do I know that you're ruling

16

1  on the law, because in many cases before you didn't rule on the

2  law?  You made your own determination, in my opinion, of what

3  the law was and that's why I put the boxes in there so that I

4  know what your rulings are.

5          THE COURT:  So listen carefully.  I'm not going to

6  check the boxes.  I'm not going to do a report card for you.

7  What we're going to do is this.  Mr. Hartman is going to, as I

8  understand it, subpoena your parents and do whatever is

9  appropriate to try and get the original deed from them and to

10 question them about it and to discuss or to -- if he thinks

11 it's appropriate get a handwriting or somebody who's an expert

12 in those kinds of things and look at it.

13         MR. THOMAS:  Okay.

14         THE COURT:  That's what he's going to do.

15         MR. THOMAS:  That's okay, Your Honor.  And I just

16 want to say that I object on the record because Mr. Hartman --

17 this Court keeps trying Mr. Hartman's case for him.

18 Mr. Hartman never put that in his reply brief.

19         THE COURT:  Mr. Hartman said that when we were here

20 in Court this morning --

21         MR. THOMAS:  That's right.

22         THE COURT:  -- or this afternoon.

23         MR. THOMAS:  But he didn't put it in his reply brief

24 to my brief.  He only -- the only two things that he said was

25 that Mr. Thomas is not dyslexic, which I filed a bunch of

17

1 documents on that today.

2      THE COURT:  What you filed, as I recall, was you

3 filed -- I mean, I did some research on dyslexia.  About 20

4 percent of the population in this country suffer from some

5 level of dyslexia.  I don't doubt for a moment, from what you

6 told me, that you have a serious issue with dyslexia.

7      I don't think, however, that your dyslexia has any

8 impact on this particular motion.  This is a motion to turn

9 over property that is currently held in your name and would not

10 be exempt property.  The contention is -- I mean, your parents

11 -- you apparently gave the deeds of trust to your -- or the

12 deed to your parents.

13      MR. THOMAS:  That's correct.

14      THE COURT:  Under California law, if it doesn't get

15 filed, it's void, but there are certainly some exceptions to

16 that.  I am not arguing with you, sir, I'm just telling you

17 what I've read.

18      MR. THOMAS:  I know.

19      THE COURT:  So Mr. Hartman is going to take --

20      MR. THOMAS:  But --

21      THE COURT:  -- some discovery.  Stop talking.

22 Mr. Hartman is going to take some discovery.  When he has done

23 that we'll go forward with this matter.

24      MR. THOMAS:  I understand, Your Honor, but I think

25 that this Court keeps overreaching its bounds.  If you look at

18

1  the Whitney case, they don't have the right.  They don't have

2  that right.  And through the laches, through the time that

3  they've already barred the time is expired.  That house was

4  given to my parents in 2008, six years prior to me filing for

5  bankruptcy.

6          And then three years after they had notice, three and

7  a half years after they had notice of the deed and that my

8  parents had the deed they never made a request, not one, not

9  until after they took possession of my parents' home.

10          THE COURT:  It's not your --

11          MR. THOMAS:  And changed the locks without a court

12  order, without court approval.  They broke into my parents'

13  house, they changed the locks and they put it -- they got

14  insurance on it without a court approval.  So --

15          THE COURT:  The house is in your name.  You were a

16  debtor in a bankruptcy case.  The trustee has the authority to

17  do those things.

18          MR. THOMAS:  Your Honor, I turned in over 600 pages

19  of legal law that says --

20          THE COURT:  Most of which --

21          MR. THOMAS:  -- no, that you cannot do what you're

22  doing.

23          THE COURT:  Okay.

24          MR. THOMAS:  And I've asked you to check the boxes

25  because you can --

Case 14-50333-gs   Doc 483-1   Entered 03/25/19 10:47:21   Page 53 of 119

19

1    THE COURT:  I am not checking --

2    MR. THOMAS:  I know, because you continue to overstep

3 your bounds.  There's a Supreme Court case right here, <u>Whitney</u>,

4 that says they can't, they can't touch my parents' house.  The

5 deed was conveyed a long time ago and through late laches their

6 time is expired.  So --

7    THE COURT:  In California a deed that is not

8 recovered -- not recorded is void.  The house --

9    MR. THOMAS:  It is not void, Your Honor.

10    THE COURT:  The house is --

11    MR. THOMAS:  It is not void.  I gave you plenty of

12 law on California law and this <u>Whitney</u> case speaks right to

13 that.

14    THE COURT:  So --

15    MR. THOMAS:  And if you read the <u>Whitney</u> case --

16    THE COURT:  You have --

17    MR. THOMAS:  -- it's a Supreme Court case and if you

18 want me to read it and put it on the record --

19    THE COURT:  No, I don't want you to read it.

20    MR. THOMAS:  -- we could do that right now.

21    THE COURT:  I don't want you to read it.  You can

22 file a motion that incorporates it and explain it there, but I

23 am not going through the several hundred pages of documents you

24 gave me and reviewing them and checking whether I agree with

25 you or not.  That's not how this works.

20

1        MR. THOMAS:  Your Honor, you are a federal judge.

2        THE COURT:  That's true.

3        MR. THOMAS:  And I have constitutional rights.

4        THE COURT:  Yes, you do.

5        MR. THOMAS:  I filed motions on the law and I'm

6   asking you to rule on that law.  I'm not asking you to do

7   anything other than rule on the law, and you're refusing to

8   rule on the law.

9        THE COURT:  Well, you've not --

10        MR. THOMAS:  So I don't -- so I think you should

11   recuse yourself.

12        THE COURT:  You've expressed that opinion a number of

13   times.

14        MR. THOMAS:  Yes, and I filed a document where on the

15   record you stated how biased you were to me and you put on the

16   record when you had the document in your docket file already

17   that shows that the statements that you made were false.  And

18   that's why I filed this motion today because you put on the

19   record that I -- that I admitted to fraud and agreed to fraud

20   in a settlement in California, which wasn't true at all.  And I

21   -- that's why I filed this motion, Your Honor, and you had --

22        THE COURT:  So please --

23        MR. THOMAS:  -- it on your docket already.

24        THE COURT:  Please explain to me why it was that you

25   had a several million dollar judgment entered against you in

-108-

21

1  California.

2          MR. THOMAS:  I explained it in this brief and I'll

3  explain it to you again, and I will explain it to you.  My

4  attorney was notified by the State Bar on the eve of my trial

5  on October 3rd that he was supposed to appear in front of the

6  State Bar, okay?  And he wrote them an email, and that's -- let

7  me give you the docket number so you can --

8          THE COURT:  No, you can just tell me.

9          MR. THOMAS:  He wrote them an email, the document is

10  in here.  He wrote them an email at about 5:40 in the morning

11  saying, Your Honor, I have a trial today and I didn't know that

12  you noticed me.  Let me -- let's go right to the document so I

13  don't get this wrong.  Okay.  It's in what I filed today.

14          THE COURT:  I have not looked at what you filed

15  today.

16          MR. THOMAS:  Okay.  This is an email sent from

17  Mr. Morrisey (phonetic) on October 3rd and it says --

18          THE COURT:  So let me stop you there.

19          MR. THOMAS:  Huh?

20          THE COURT:  Let me stop you there.  That letter is

21  hearsay, unless you have Mr. Morrisey here to authenticate it.

22          MR. THOMAS:  It came from the State Bar record that

23  was stamped filed.

24          THE COURT:  Or you have somebody from the State Bar

25  here to authenticate it.

22

1          MR. THOMAS:  This letter was written to the State Bar

2  and it was stamped.  I got a stamped file from the State Bar

3  and I got a response from the State Bar, okay?  So with

4  judicial notice, with the stamp certifying this is a certified

5  letter from the Bar.

6          And this letter state that -- it says, Your Honor,

7  Presiding Judge of the State Bar Court, I was advised late last

8  night that there was a hearing today regarding disciplinary

9  charges that I have been brought against -- that have been

10 brought against me.

11         While I was not -- while I have not had the

12 opportunity and investigate exactly why I have received notice

13 of this matter or any hearing, I do know that it relate -- it's

14 related to my wife, who apparently has been suffering from

15 mental illness issues, and not the State Bar Court.

16         I am starting a trial today in Santa Clara Superior

17 Court and have spent every moment since I was reinstated on

18 Friday, which he never told me he was suspended in the first

19 place.  He had been suspended for two of the five months that

20 he represented me.  My attorney didn't tell me, no other

21 attorneys told me.  So I was not aware that my attorney was

22 suspended, okay?

23         On Friday preparing for trial -- this trial was

24 continued for August -- from August 1st and it was continued

25 from August 1st because he was suspended from August 1st all

23

1  the way till September 30th and never notified me, never told

2  me, okay -- 2001.  Today, due to the suspension I served

3  following my guides from the LAP and ADP program, I do not have

4  any option but to fully represent my client and try this case.

5          The case currently has a two-week timeline by all

6  parties.  I am requesting that any hearing scheduled for today

7  be continued so to allow a formal application and possible

8  hearing of counsel on my behalf.  Okay?  He sent this letter to

9  the Bar, this fax.  The Bar's response on the 4th was,

10 certified ruling, there was a court hearing on the 3rd and that

11 is Exhibit Number 3.

12          THE COURT:  Do you have that, please?

13          THE CLERK:  Yes, sir.

14          THE COURT:  Hold on.

15          MR. THOMAS:  They faxed it --

16          THE COURT:  Stop.

17          MR. THOMAS:  Huh?

18          THE COURT:  I'm waiting for the exhibit.

19          MR. THOMAS:  Okay.

20          THE COURT:  Okay.  It says:

21          "Respondent failed to appear at the pretrial

22          conference and has failed to appear at every single

23          court-related event.  Respondent's default will be

24          entered if he fails to appear at trial.  Trial will

25          start at 10:00 a.m. on October 11, 2011."

24

1    MR. THOMAS:  Yes.  Your Honor, Michael Morrisey knew

2 at that time that he could no longer represent me, and he had a

3 duty, and so did all the other attorneys, because Patricia

4 Douglas, also an attorney, and Mr. Scanlan all knew that

5 Mr. Morrisey wrote this letter to the Bar on the 3rd.  And they

6 also knew what the Bar's response was on the 4th, and they all

7 had a duty to tell Judge Nichols that he could no longer

8 represent me and not put anything on the record.  And --

9    THE COURT:  And did you tell him that?

10    MR. THOMAS:  Did who -- did I tell him that, what?

11    THE COURT:  The judge.

12    MR. THOMAS:  I didn't know, Your Honor.  I just got

13 these documents from the Bar a month ago.

14    THE COURT:  Okay.

15    MR. THOMAS:  Okay?  This is the first that I've ever

16 had any knowledge of this, and that's why I told you when I

17 came in here we're going to be filing a case in Santa Clara for

18 fraud upon the court because everything that those attorneys

19 did --

20    THE COURT:  Just listen.  Are you talking about the

21 attorneys on the other side?

22    MR. THOMAS:  The attorneys on the other side --

23    THE COURT:  And what --

24    MR. THOMAS:  -- and my attorney, they --

25    THE COURT:  And what obligation did the attorneys on

25

1  the other side --
2              MR. THOMAS:  They --
3              THE COURT:  -- have to you?
4              MR. THOMAS:  They colluded to --
5              THE COURT:  How do you know that?
6              MR. THOMAS:  -- to commit fraud on the court.
7              THE COURT:  How so?
8              MR. THOMAS:  Because they all knew and under 286 they
9  had a duty to tell me that my attorney was suspended, and they
10 knew that he was suspended, because they filed complaints to
11 the State Bar of record, which I found.
12             THE COURT:  So my understanding now is that you had a
13 judgment rendered against you, correct?
14             MR. THOMAS:  What's that?
15             THE COURT:  You had a judgment rendered against you,
16 correct?
17             MR. THOMAS:  I had a judgment rendered against me,
18 and if you go through the transcript --
19             THE COURT:  Just stop, just stop.
20             MR. THOMAS:  -- which is part of this --
21             THE COURT:  Just stop.  You had a judgment entered
22 against you for $4.5 million, something like that?
23             MR. THOMAS:  Yes, but it was under --
24             THE COURT:  Stop.
25             MR. THOMAS:  It was under fraud because they never

-- 112 --

26

1  told me that -- they left me in the hallway when they did the

2  settlement, Your Honor.  I was not aware what the settlement

3  was.  And when -- and they never let me see a copy of the

4  settlement, and the judge says that in the transcript.  If you

5  read the transcript --

6         THE COURT:  Just stop for a second.  Have you filed

7  to set this aside?

8         MR. THOMAS:  I'm working on it, Your Honor.  I've

9  spent months putting documents together and I will file with --

10  probably within the next two weeks.

11         THE COURT:  Okay.

12         MR. THOMAS:  So --

13         THE COURT:  But as of right now --

14         MR. THOMAS:  As of right now I have not filed --

15         THE COURT:  And as of --

16         MR. THOMAS:  -- because I'm still putting

17  everything --

18         THE COURT:  And as of right now you have a fraud

19  judgment against you.

20         MR. THOMAS:  Yes, but that fraud judgment was based

21  on the -- on fraud on the court.

22         THE COURT:  Well --

23         MR. THOMAS:  If you read the transcript, Your Honor,

24  which I've presented to you today, they never told the judge

25  about the fraud.  They never --

- 113 -

27

1          THE COURT:  Stop, stop.

2          MR. THOMAS:  The judge says on the record --

3          THE COURT:  Stop, stop.

4          MR. THOMAS:  -- that all parties are agreeing --

5          THE COURT:  Stop.

6          MR. THOMAS:  -- to no wrongdoing.

7          THE COURT:  Stop.  This has nothing to do with your

8 case.

9          MR. THOMAS:  Yes, it does.  It has everything to do

10 with the bias that you said that you have about me.  You said

11 you --

12         THE COURT:  I said you have a fraud conviction

13 against you, I am not particularly fond of people with fraud

14 convictions.

15         MR. THOMAS:  That's correct.  And that --

16         THE COURT:  And if your fraud conviction or finding

17 is overturned I will apologize to you, but we'll wait to see if

18 that happens.  But for the moment, this is what we've got going

19 for us.

20         MR. THOMAS:  I understand, Your Honor, but if you

21 even looked at the facts on its face -- and that's what I want

22 you to look at right now because you have had --

23         THE COURT:  I am not --

24         MR. THOMAS:  -- a bias against me.

25         THE COURT:  I am not going back --



1      MR. THOMAS:  It's in this document, you don't have to

2  go back.

3      THE COURT: Stop.

4      MR. THOMAS:  It's in the court record.

5      THE COURT:  Stop, stop.  I am not the Superior Court

6  in California.  I am a bankruptcy judge in Reno, Nevada; you

7  are a debtor in Reno, Nevada; and the issue we are dealing with

8  is a piece of property in Portola, which is in your name.

9      MR. THOMAS:  I understand that, Your Honor.

10     THE COURT:  And that's what we're going to deal with.

11     MR. THOMAS:  I understand that, Your Honor, but you

12  gave me a life sentence with a judgment for $5 million on a

13  loan that I never received, based on Tracini (phonetic) and

14  their attorneys committing fraud on your court.  And you

15  restricted me from putting in evidence showing that they were

16  an investor.  Every time I tried to get in evidence you said it

17  doesn't matter whether they're investor or loan.  And every

18  time my attorneys tried to raise that issue you shut them down.

19     THE COURT:  Well, just appeal.  Appeal, overturn me.

20     MR. THOMAS:  Your Honor, I can't appeal you because

21  you blocked the record from me putting in evidence that they

22  were an investor, and if it didn't come into the court then I

23  can't appeal those issues.  There never was a loan.  There

24  never was a loan.  I never received a dime from Mr. Tracini.

25     THE COURT:  So where --

29

1     MR. THOMAS: And you -- and that's why I think you

2  should recuse yourself because you blocked evidence

3  intentionally so that I had a judgment against me for the rest

4  of my life for a loan that I never received and for funds that

5  I never received. There was no evidence of a fax, a text

6  message, or anything to me on a loan. And the only document

7  that they had was a forged document that they forged on my

8  parent's anniversary, which you know is October 25th.

9     THE COURT: Actually, I don't.

10     MR. THOMAS: Yes, you do because I said -- I asked

11  this Court that I didn't want this hearing scheduled for

12  October 25th because that's my parents' 60th anniversary. They

13  forged those documents on my parents' anniversary and I was in

14  the same restaurant that I was in for my parents' anniversary

15  this last time in San Francisco at Kokkari restaurant with our

16  family.

17     I was not in their office at that time. They forged

18  a document and I got a handwriting expert to show that those

19  documents were forged. You let this bankruptcy court use funds

20  from my handwriting expert to buy the claim where they stole --

21  where my attorneys took $150,000 out of my trust account, and

22  you let them buy their claim out of bankruptcy in this court.

23     THE COURT: So --

24     MR. THOMAS: And with these trustees' approval.

25     THE COURT: So what this -- what we are here about is

30

1  whether or not --

2          MR. THOMAS:  You are biased to me.

3          THE COURT:  What we're here about is whether or not

4  the trustee can force the turnover of the property in Portola

5  to her to liquidate.

6          MR. THOMAS:  And, Your Honor, if you would rule on

7  the law and if you would rule on everything that I put forward,

8  I don't think they can.  I think they are dead in the water,

9  and Mr. Hartman already conceded in his brief.  The only issues

10 he said were that Mr. Thomas was dyslexic and that they didn't

11 give a deed.  I gave you a copy of the deed, you know, and

12 that's all they requested was a copy of the deed.  They didn't

13 request the original.

14         You tried to try their case for them and tell them

15 what -- you know, I want the original deed.  They never

16 requested the original deed.  You -- and you brought up

17 different points in their case that Mr. Hartman never even

18 brought up at the hearings.

19         THE COURT:  I am entitled as the judge to ask

20 questions.  I am entitled to call witnesses --

21         MR. THOMAS:  You're entitled to ask questions, but

22 you're not entitled to try their case for them and put in facts

23 that he doesn't put in.

24         THE COURT:  I --

25         MR. THOMAS:  And that's why I think you're biased.

31

1   And you know that I have a disability, and you have handcuffed

2   me time and time again knowing that I am dyslexic and that I

3   have had a disability.  And Mr. Hartman has on many occasions

4   criticized me and taken advantage of my disability, and so has

5   this Court.

6          And the only reason that I am here today, Your Honor,

7   is because I -- my other attorneys -- and your profession, Your

8   Honor, is supposed to be held to the highest standard of law

9   and all standards, and it is not.  This system has failed

10  miserably, because I shouldn't be here today.  I never owed

11  Tracini one dime, I never got a loan from Mr. Tracini and I was

12  forced into a settlement based on fraud from other attorneys.

13         THE COURT:  Why did you file bankruptcy?

14         MR. THOMAS:  I only had to file for bankruptcy

15  because Mr. Garner skipped the country and I got notified a

16  year later that I was liable for the judgment.  A year and a

17  half later they contacted me.

18         I never knew that settlement.  They told me that I

19  was not liable.  I got a declaration from Mr. Machado admitting

20  that his attorney lied -- his partner lied to me.  And I'm

21  waiting to get a declaration from Mr. Morrisey, who's been

22  already convicted.  He's already got a -- he's got a felony

23  against him that he pled to.  And --

24         THE COURT:  So --

25         MR. THOMAS:  And Mr. Machado --

-118-

32

1          THE COURT:  We are --

2          MR. THOMAS:  -- has been suspended.

3          THE COURT:  We are done here today.  Mr. Hartman is

4   going to take appropriate steps to subpoena your parents for a

5   deposition or a 2004 exam and to produce the papers.

6          MR. THOMAS:  I understand, Your Honor, but I don't

7   think they even have that right, and I think you should rule on

8   the law.  You know, I'm not afraid of them subpoenaing my

9   parents or the deed or anything.

10          THE COURT:  Nor am I.

11          MR. THOMAS:  It's just another waste of time and

12   money for this Court and inconvenience to my parents when this

13   case should be over right now.  It should be over based on this

14   -- based on the issues that were presented before us and based

15   on what his reply brief was, you know, and --

16          THE COURT:  Okay.  We're done.  We're done.

17          MR. THOMAS:  Okay.

18          THE COURT:  I'm sorry you had a tough trip over here.

19   Mr. Hartman will go forward, and we'll see you after he's had a

20   chance to depose your parents and take a look at the deed that

21   they have.

22          MR. THOMAS:  That's fine, Your Honor.

23          THE COURT:  We'll be in recess.  Thank you.

24          MR. THOMAS:  So when --

25          THE COURT:  I don't know how long it will take.  It

-119-

33

1  depends on how cooperative your parents can be.  I understand
2  they're elderly, they may have some issues that make it more
3  difficult for them to attend depositions or to attend a lengthy
4  deposition.  I can't tell you how long it will take, but it
5  usually -- I don't know.  Mr. Hartman will set another hearing
6  after he has completed that discovery.

7          MR. THOMAS:  Well, Your Honor, you didn't address the
8  issues of laches, which I have already asked you to address
9  which doesn't give them the right.  And I said under 11.2 and I
10 gave you that --

11         THE COURT:  I will hear --

12         MR. THOMAS:  -- file --

13         THE COURT:  I will hear the --

14         MR. THOMAS:  You didn't address that issue --

15         THE COURT:  I know, because --

16         MR. THOMAS:  -- whether they have the right to do it
17 nor not.

18         THE COURT:  Because you did not produce the deed --

19         MR. THOMAS:  I did.

20         THE COURT:  -- as I directed you to.

21         MR. THOMAS:  No, Your Honor.  There is your bias
22 again.

23         THE COURT:  We are in recess.

24         MR. HARTMAN:  Your Honor, if I may make one comment
25 for --

34

1          THE COURT:  Yes, please.

2          MR. HARTMAN:  -- the record.  We wouldn't be here if

3   that deed had been recorded when it was transferred --

4          THE COURT:  True, that's true.

5          MR. HARTMAN:  -- to the parents.

6          MR. THOMAS:  Your Honor, they knew about the deed.

7   They knew about it three and a half years ago.  They --

8          MR. HARTMAN:  If it had been recorded.

9          MR. THOMAS:  It doesn't matter.  You knew it wasn't

10  recorded three and a half years ago.

11         THE COURT:  Actually, it does make a difference, sir,

12  because under California law if you don't record a deed it's

13  void.

14         MR. THOMAS:  I don't think so, Your Honor.  Look

15  under the case, under the Whitney case right here, it doesn't

16  say that.

17         THE COURT:  We are done.  We are done here.  I am

18  sorry you had a bad day driving back from San Francisco.  We

19  are done.

20         MR. THOMAS:  You know --

21         THE COURT:  We are in recess.  Please stop talking.

22         MR. THOMAS:  Your Honor, I have had a bad day and

23  I've had a bad time in this Court because of the bias.

24         THE CLERK:  All rise.

25         (Proceedings concluded at 4:09 p.m.)

35

# C E R T I F I C A T I O N

I, Lisa Luciano, court-approved transcriber, hereby certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.

_Lisa Luciano_

LISA LUCIANO, AAERT NO. 327    DATE:  December 11, 2018

ACCESS TRANSCRIPTS, LLC

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

# EXHIBIT 9

Excerpts from Transcript of Hearing

12-17-2018

# EXHIBIT 9

-123-

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA (RENO)

IN RE:

ANTHONY THOMAS and
WENDI THOMAS,

                    Debtors.

. . . . . . . . . . . . . . . .

. Case No.  14-50333-btb
.
. Chapter 7
.
. 300 Booth Street
. Reno, NV  89509
.
. Monday, December 17, 2018
. 12:24 p.m.

TRANSCRIPT OF MOTION TO CONTINUE/RESCHEDULE HEARING
BEFORE THE HONORABLE BRUCE T. BEESLEY
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtors:            ANTHONY THOMAS, Pro Se
                            7725 Peavine Peak Court
                            Reno, NV 89523

TELEPHONIC APPEARANCES:

For the Chapter 7           Hartman & Hartman
Trustee:                    By: JEFFREY L. HARTMAN, ESQ.
                            510 West Plumb Lane, Suite B
                            Reno, NV 89509
                            (775) 324-2800

Audio Operator:             Illuminada Starzyk, ECR

Transcription Company:      Access Transcripts, LLC
                            10110 Youngwood Lane
                            Fishers, IN 46038
                            (855) 873-2223
                            www.accesstranscripts.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

-124-

2

1    (Proceedings commence at 12:24 p.m.)

2    THE COURT:  Good morning.  Please be seated.  This is

3 the case of Anthony Thomas and Wendi Thomas, case number --

4 it's two cases, actually.  It's case number 5033 -- I'm sorry,

5 14-50333 and 14-50331.  Appearances, please, on the phone

6 first.

7    MR. HARTMAN:  Good morning, Your Honor, or afternoon.

8 This is Jeff Hartman, counsel for the trustee.

9    THE COURT:  And appearances in court, please.

10    MR. THOMAS:  Yes.  This is Anthony Thomas.

11    THE COURT:  Could you please come to the podium,

12 Mr. Thomas.

13    MR. THOMAS:  Yes.

14    THE COURT:  We'll get a better recording.

15    MR. THOMAS:  Thank you, Your Honor.

16    THE COURT:  So you -- basically, what's happening is

17 you want some additional time to try and get a better price or

18 get the emerald sold.  Is that correct?

19    MR. THOMAS:  No.  I --

20    THE COURT:  That's not correct?

21    MR. THOMAS:  I want to oppose the motion on several

22 reasons because --

23    THE COURT:  Well, wait, just wait.

24    MR. THOMAS:  But I want more time to oppose the

25 motion so that I --

3

1        THE COURT:  Okay.  You want more time to oppose the

2   motion?

3        MR. THOMAS:  Yes.

4        THE COURT:  So could you describe for me briefly what

5   the reasons for opposing the motion are?

6        MR. THOMAS:  Yes.

7        THE COURT:  Just generally.  Go ahead.

8        MR. THOMAS:  Yes.  I wanted to oppose the motion

9   under -- I believe it's 6001, that the creditors or myself were

10  not notified 21 days ahead of time, as I put in my documents,

11  of the sale of the emerald, and the only person that was

12  notified, according to the documents that Mr. Hartman sent out,

13  was Ken Tersini and Mr. Silver.

14       THE COURT:  Okay.  What else?

15       MR. THOMAS:  And --

16       THE COURT:  We're not -- you're just telling me what

17  these are.  What other reasons are there?

18       MR. THOMAS:  The other reasons are is that Jennifer

19  Jordine (phonetic) is an employee of Mr. Tersini, and she's not

20  a bona fide purchaser.

21       THE COURT:  And how do you say that?  Well, how do

22  you know that?

23       MR. THOMAS:  Because she's buying the emerald through

24  Mr. Tersini.

25       THE COURT:  How does that make her not a bona fide

-126-

4

1  purchaser?

2          MR. THOMAS:  Well, according to the documents that

3  Mr. Hartman -- said she was not a bona fide purchaser.  She

4  wasn't a party and had any knowledge of the emerald.  What she

5  did, Mister -- they bought the emerald through Mr. Tersini.

6          THE COURT:  Okay.  What else?

7          MR. THOMAS:  Okay.  Also, the declaration of

8  Mr. Stremmel, I -- through the evidence -- I'd like to do more

9  evidence to make my discovery to prove that a lot of the

10  statements that he made in his declaration aren't true, like he

11  traveled all over the place and all these people he notified,

12  because I contacted a bunch -- you know, a couple of the people

13  on the list, and they didn't seem to be notified by

14  Mr. Stremmel.  And so I would like him to produce documents --

15          THE COURT:  No, just -- so just hang on.  This

16  emerald is going to be sold, and this emerald is going to be

17  sold in this court.  I -- just listen -- I have no problem with

18  you trying to get people who are interested in purchasing this

19  to purchase it.  I think that's a great idea for you.

20          MR. THOMAS:  Yes.

21          THE COURT:  I think that -- I would hope it would

22  bring in more money for it.  But there will be a sale of this

23  emerald in this courtroom sometime in the future.  So if you

24  object to Mr. Stremmel for whatever reason, you might want to

25  try and have some sort of alternate person because I'm not

5

1  going to -- this emerald is going to be sold here.

2         MR. THOMAS:  Okay.  Your Honor, I gave Mr. Hartman a

3  contract with Overstock.com almost two years ago, and

4  Overstock.com wasn't going to charge us any fees, as they

5  stated in their documents.  They said that they were going to

6  charge fees because the -- because my trust didn't have any

7  money to pay those fees, that they were not the best person.

8  But I negotiated the deal with the Overstock.com and the CEO,

9  and it was board-approved, and they were not going to charge us

10 any fees to market it and to sell the emerald.  So -- and they

11 do over a billion dollars in sales, and they have worldwide

12 potential.  This is something that they wanted to do.  It was

13 something that they wanted to execute on.  I didn't want to

14 execute at the time because I didn't want the publicity all

15 over the world about me and the emerald.  And that's why I

16 didn't go forward and wanted to do it through a private sale.

17 But they were -- they gave us a contract, and in that contract,

18 you see -- that I provided today -- there were no fees.

19        THE COURT:  Did you give a copy of that to

20 Mr. Hartman?

21        MR. THOMAS:  Mr. Hartman had a copy.  I gave it to

22 him two years ago, and I sent him all the emails which are

23 attached that stated that they were not going to charge fees

24 and that we had board approval and that the --

25        THE COURT:  Okay.  But we're talking about now.  We

-128-

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

6

1  are going to sell this emerald here within a relatively short
2  period of time.  What do you want to do that will facilitate
3  that?

4          MR. THOMAS:  Your Honor, first, I would like to state
5  one thing.

6          THE COURT:  Go ahead.

7          MR. THOMAS:  I'm trying to go into -- and I've
8  mentioned this on the record many times.  I'm almost there.
9  I'm still waiting to get a declaration from Mr. Morrissey,
10 which I was told I was going to get a couple weeks still to
11 have the motion -- the judgment in San Jose turned over because
12 it was procured by fraud.  And I've found out a lot of things,
13 Your Honor, in between the last few months that has been going
14 on, that Mr. Tersini's been -- was colluding with Mr. Gardner.
15 And I think that you'd be shocked to hear this evidence, but
16 the email that you sent -- that you said that I sent to
17 Mr. Gardner, which I told you was not my account, the Norfield
18 account, and it's what the Supreme Court and the Ninth Circuit
19 Court are balancing their rulings on was -- I told you, Your
20 Honor, that was not an email that was sent from me.  It was
21 sent from Mr. Gardner, and it was -- Mr. Gardner set up a
22 Norfield company in Hong Kong.  And so those documents that you
23 used to get a -- to rule on your judgment against me was
24 documents, as I said, it was not my email.

25         THE COURT:  Did you appeal?

-129-

7

1          MR. THOMAS:  I did appeal.  We appealed it all the
2   way to the Supreme Court.  I mean, we're there now.  I've got
3   30 days, you know, to finish my ruling there.  And so I don't
4   know if I'm going to go that route because it's expensive.
5   It's about $100,000 --
6          THE COURT:  Yes.
7          MR. THOMAS:  -- to do that, and it's -- and I think
8   that I have a better chance of getting it turned over in San
9   Jose because Mr. Tersini and Mr. Gardner colluded in San Jose
10  and told me that I was not part of the settlement, I didn't
11  need to be a participant.  I was out in the hallway when they
12  settled the case.  And they were the ones that snuck the fraud
13  in the judgment.  I didn't know anything about it.  And so --
14         THE COURT:  Okay.  So just stop.  What --
15         MR. THOMAS:  I just wanted you to be clear so that
16  you know all the different things that these -- Mr. Gardner is
17  the one who sent me to Mr. Tersini's office in August and told
18  me that -- to get the temporary note that said -- for the
19  formation of the LLC.  That document disappeared out of the
20  office of Electronic Plastics, and Mr. Tersini admitted there
21  was a document and he never turned it in.  So I believe that
22  they've been colluding all along to get this emerald from me,
23  so --
24         THE COURT:  Well, this emerald is in the possession
25  of the trustee.

-130-

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

8

1          MR. THOMAS:  Right.  But if the --

2          THE COURT:  The trustee is going to sell this

3 emerald.

4          MR. THOMAS:  But if the court in San Jose turns it

5 over, I want you to give me a stay, Your Honor, because if that

6 judgment gets turned over, then I'm not in bankruptcy.  The

7 only reason I'm in bankruptcy is they forced me into bankruptcy

8 procured by fraud on the court.

9          THE COURT:  Who is your judge in San Jose?

10          MR. THOMAS:  Judge Nichols was the judge in San Jose,

11 and I've said this several times, Your Honor.  Judge Nichols

12 said that all parties are agreeing to no wrongdoing.

13          THE COURT:  I hear thousands of cases.  I don't

14 remember every word of every case.

15          MR. THOMAS:  Okay.  Judge Nichols said that all

16 parties are agreeing to no wrongdoing on the record, okay.

17          THE COURT:  So when is Judge Nichols supposed to

18 rule?

19          MR. THOMAS:  Judge Nichols is retired, so I have to

20 file it with the new judge, and I'm waiting for the declaration

21 from Michael Morrissey, who was told by the state bar that he

22 was not allowed to try the case.  And if you remember on the

23 record, the email that he sent on --

24          THE COURT:  He's the disbarred lawyer?

25          MR. THOMAS:  Yes.  He's the one who sent the letter

9

1  to -- the email to the bar on the 3rd, saying that he was

2  supposed bo be in front of the state bar on that day.  He had

3  just got off the suspension, which he never told me about, and

4  that he would like more time to try the case.  The state bar

5  did a ruling on the 3rd, and on the 4th, they sent him back

6  notification saying, no, you are not going to be able to try

7  this case.  And at that time, he had a duty and all the other

8  attorneys had a duty to tell the judge that he was not allowed

9  to try the case or go forward.  So he abandoned me, and then

10 the next day, they put it on the record, and they told me that

11 I was not -- didn't have any liability for the judgment.  They

12 told me that Michael Gardner was taking 100 percent of the

13 responsibility.

14        They negotiated this, and if you read the record, in

15 Judge Nichols's chambers, Michael Gardner and Mr. Tersini.  I

16 was not there, and I was not present.  And under 664 --

17        THE COURT:  Just stop.  Just stop.

18        MR. THOMAS:  -- I need to be a participant, yes.

19        THE COURT:  Just stop.  We are going to be selling

20 the emerald in this courtroom.  What is it you want to have

21 happen here?

22        MR. THOMAS:  I want time to get subpoenas.

23        THE COURT:  How much time do you want?

24        MR. THOMAS:  Okay.  I have contacted --

25        THE COURT:  How much time do you want?

10

1    MR. THOMAS:  I need at least 90 days.

2    THE COURT:  Mr. Hartman.

3    MR. HARTMAN:  Thank you, Your Honor.  I'd like to get

4  back to the focus of what the trustee's here on.

5    THE COURT:  You can have a seat, please.

6    MR. HARTMAN:  And to begin with, Mr. Thomas is

7  attempting to impart -- litigate his issue in letters, and I

8  don't know if you've had a chance to read what he filed today.

9    THE COURT:  I just was handed it a few minutes ago.

10  I have not reviewed it.

11    MR. HARTMAN:  Well, I haven't either, but I can tell

12  you that his approach in the paper is that I refused somehow to

13  consent to or concede to the facts that he put in a letter to

14  me, I don't know, two or three weeks ago.  And I'm not required

15  to respond yes or no to facts that he raises in a letter.

16    THE COURT:  So stop --

17    MR. HARTMAN:  We have --

18    THE COURT:  -- stop right there.

19    Mr. Thomas, you did the same thing with me.  I'm not

20  filling out a report card for you.  Mr. -- opposing counsel

21  does not need to fill out a yes/no answer form for you.  They

22  don't have to do that.  He's not going to do it.  Have a seat.

23    MR. THOMAS:  Your Honor, I thought --

24    THE COURT:  You have a seat.

25    MR. HARTMAN:  If I might continue, Your Honor.

-133-

11

1        THE COURT:  You may.

2        MR. HARTMAN:  So Mr. Thomas indicated a few moments

3   ago that he believes that notice of hearing on the sale motion

4   was inadequate, and I can tell you that the motion to approve

5   the sale was filed on November 29th as docket entry 430.

6        THE COURT:  Hold on for one second.

7        Could you pull that up for me?

8        THE CLERK:  Yes, sir.

9        THE COURT:  Just give me a moment.

10       MR. HARTMAN:  Sure.

11       THE COURT:  Okay.  So, Mr. Thomas, could you please

12  come forward again?

13       MR. HARTMAN:  If I may finish, Judge --

14       THE COURT:  Well, okay.  Mr. Thomas, just sit down.

15       Go ahead, Mr. Hartman.  I'm sorry.

16       MR. HARTMAN:  So the notice period for a sale hearing

17  is 28 days.

18       THE COURT:  Right.

19       MR. HARTMAN:  And so it was scheduled for January

20  8th, which was substantially more than 28 days.  I filed the

21  certificate of service on December 3rd as docket entry 435, and

22  it clearly shows that notice of the hearing was provided to the

23  entire creditor matrix and Mr. Thomas by email, as he has

24  previously requested.  So there's no basis for him contending

25  that I'd only sent the notice to Mr. Tersini's attorney.

-134-

12

1    If I may continue --

2    THE COURT:  You may.

3    MR. HARTMAN:  So in the normal manner of practice,

4  Mr. Thomas would have had until 14 days before January 8th

5  within which to object to the motion and set forth any basis

6  for doing that.  And as is previewed by his statement, his

7  contention is that he had arranged with Overstock.com to market

8  the emerald without any fees.  Well, the trustee and I have

9  been in communication with Overstock.com, and I have three

10  drafts of Overstock.com proposed sale agreements, each of which

11  requires a -- basically, a marketing expense guarantee set at

12  $250,000, and I'm prepared to file those with the Court at the

13  appropriate time.  But the trustee, in an administratively

14  insolvent estate, was not in a position to enter into a

15  contract in which he essentially guaranteed $250,000 in

16  marketing expenses.  So that's what the trustee has done with

17  respect to that issue.

18       The point, I guess, finally, is Mr. Thomas's

19  contention that the proposed purchaser has some relationship

20  with Mr. Tersini, I don't believe that that fact, in and of

21  itself, disqualifies that person as a purchaser.  In any case,

22  I have no objection on behalf of the trustee to extending the

23  hearing date a week or two, but I'm afraid we're at risk of

24  losing the only buyer that we've had come out of the woodwork

25  in this whole period of time and we are back to square one,

13

1  based upon whatever Mr. Thomas thinks the emerald is worth as

2  opposed to what the marketplace apparently is determining what

3  it is worth.

4        THE COURT:  And let me ask you a question, kind of a

5  broad question.  Who has been -- who has this been marketed to?

6        MR. HARTMAN:  Well --

7        THE COURT:  It's a terrible sentence, I'm sorry.

8  What marketing was done concerning the sale of the emerald?

9        MR. HARTMAN:  Well, the marketing effort is set forth

10 in Hudson Stremmel's declaration, which was filed at the same

11 time as the motion, and they've done quite a bit of online

12 marketing.  They've been in contact with all of the gem dealers

13 that they could identify in the United States.  The --

14 Mr. Stremmel's declaration is quite extensive as to the efforts

15 they've undertaken to market the property.  And, of course, I

16 would be prepared to bring him to court to testify as to those

17 efforts.

18        THE COURT:  Okay.  All right.  Thank you very much.

19        So, Mr. Thomas, could you please come forward again.

20 Who, other than -- is it Overstock.com?  Who, other than

21 Overstock.com, have you notified that there's going to be this

22 sale?

23        MR. THOMAS:  That I know?

24        THE COURT:  Yeah.

25        MR. THOMAS:  I didn't know that there was going to be

14

1 this sale.  They didn't notify me.  Mr. Hartman --

2          THE COURT:  I doubt that very much.

3          MR. THOMAS:  Mr. Hartman didn't notify me or any of

4 the other creditors.

5          THE COURT:  Stop.

6          MR. THOMAS:  And --

7          THE COURT:  Stop.

8          MR. THOMAS:  -- under 6 --

9          THE COURT:  Stop.

10          Mr. Hartman, was Mr. Thomas notified that there's

11 going to be a sale?

12          MR. HARTMAN:  There was the -- as set forth in the

13 certificate of service, docket entry 435, he and everyone else

14 who's listed on the matrix was noticed of the hearing to

15 confirm the auction.

16          THE COURT:  Stop.  Mr. Hartman says he did this.

17 It's in the record.  I'm assuming that that's correct.

18          MR. THOMAS:  It's -- Your Honor --

19          THE COURT:  Listen now.  Listen to me.

20          MR. THOMAS:  Your Honor, it's not correct.

21          THE COURT:  Listen to me.

22          MR. THOMAS:  He didn't notify us 21 days ahead under

23 6004.  He's to notify us prior to the sale.  He only notified

24 us after the sale was completed, not before.  He's supposed to

25 -- that's a misrepresentation that Mr. Hartman is making right

15

1  now.

2          THE COURT:  The sale hasn't been completed.

3          MR. THOMAS:  Yes, but the sale went through.  They

4  notified us that Ms. -- excuse me one second -- Jennifer

5  Jordine purchased it, but they didn't notify anybody that the

6  sale was going on 21 days ahead of time like they're supposed

7  to.  They committed a fraud on the court, Your Honor.

8          THE COURT:  Mr. Hartman --

9          MR. HARTMAN:  May I clarify, Your Honor?

10          THE COURT:  You may.

11          MR. HARTMAN:  I can't remember when -- it's clearly

12  in the docket -- when the trustee filed her application to

13  employ Mr. Stremmel as the auctioneer.

14          THE COURT:  So --

15          MR. HARTMAN:  The --

16          THE COURT:  -- is the purchase by Ms. Jordine final

17  or is it subject to overbid?

18          MR. HARTMAN:  No.  No.  It's subject to overbid, and

19  that -- the motion basically is filed to approve the sale, but

20  like in any other bankruptcy court sale, if somebody shows up

21  at the hearing and offers more and they have cash on the barrel

22  head, anybody can buy it.  But you can't -- the problem is

23  Mr. Thomas doesn't understand you can't do this in a different

24  order because you're not going to know the sale price until the

25  auction's been conducted.  So the procedure I employed was to

-- 138 --

16

1  ask for approval to conduct the auction, but then come back to

2  court to confirm the sale itself.

3          THE COURT:  I mean, it's a --

4          MR. HARTMAN:  The sale has not been --

5          THE COURT:  -- it's a stalking horse bid.

6          MR. HARTMAN:  The sale has not been confirmed.

7          THE COURT:  Do you hear that, Mr. Thomas?

8          MR. HARTMAN:  Anybody can show up and buy it.

9          MR. THOMAS:  Your Honor --

10          THE COURT:  Listen to me --

11          MR. THOMAS:  Your Honor, they didn't follow the

12  proper procedure to --

13          THE COURT:  So --

14          MR. THOMAS:  They were supposed to notice under Rule

15  6004 --

16          THE COURT:  Mr. Thomas, listen to me.  We're going to

17  have an auction to sell this property.  I will extend it for

18  two weeks, as Mr. Hartman said he would do.  You can have

19  anybody you want here who wants to try and buy this.

20          MR. THOMAS:  Your Honor, you are taking away my

21  constitutional rights, and I think there's a huge fraud that's

22  been committed on this court, and I think it should be reported

23  to the FBI.  I believe --

24          THE COURT:  Well, if you will stop at the Office of

25  the U.S. Trustee's downstairs, they will give you the address

17

1  of the FBI.  You are free to report whatever you think is
2  appropriate, but we are having an auction.  I will continue the
3  auction date for two weeks from the date it's set for.  Don't
4  say anything.  If you have people who are interested in
5  purchasing this emerald, you should have them here on that
6  date.
7          MR. THOMAS:  Your Honor, I would request that you
8  give a stay until you let me file my motion in San Jose.
9          THE COURT:  Denied.
10         MR. THOMAS:  You're going to deny my constitutional
11 rights?
12         THE COURT:  I'm telling you I'm not letting you file
13 anything further.  There is an auction set.  It's going to be
14 continued two weeks.  If you have someone you think is
15 interested in purchasing this emerald, you should have them be
16 here with appropriate funds.
17         MR. THOMAS:  Your Honor, I have a constitutional
18 right to file documents.  You cannot tell me that I cannot file
19 documents in this court, and you have before.  I have a
20 constitutional right to file documents, and you haven't even
21 read my brief that I -- you didn't even read what I filed
22 today.  And --
23         THE COURT:  No, I didn't.  I got handed to it about
24 ten minutes ago.  I have not read it.
25         MR. THOMAS:  And there has been numerous frauds

18

1  committed on your court under your supervision.

2          THE COURT:  Then, you should report this to everyone

3  you think is possibly going to listen to you.

4          MR. THOMAS:  I think I will, Your Honor.  I think

5  it's your duty to report it because they committed the frauds

6  on your court.  Mr. Tersini --

7          THE COURT:  I'm unaware of any frauds that have been

8  committed.

9          MR. THOMAS:  Mr. Tersini claimed that he loaned me

10 money.  He never loaned me a dime, Your Honor.  That was a

11 complete fraud on this court, and there was no evidence of a

12 loan to me.  So that was a fraud.  Mr. Tersini and Mr. Gardner

13 have been committing fraud on the courts in San Jose, and it's

14 perpetrated through this court and now through the trustee and

15 through Mr. Hartman because Mr. Hartman's representations are

16 false.  Mr. Stremmel, I would like to do a hearing for

17 Mr. Stremmel because I believe that everything Mr. Stremmel

18 said in that -- those documents are false, and I think I can

19 have evidence if you let me do -- if you let me --

20         THE COURT:  This will be extended two weeks.  If you

21 want to do a 2004 exam of Mr. Stremmel --

22         MR. THOMAS:  I do.

23         THE COURT:  -- go ahead.

24         MR. THOMAS:  I do.

25         THE COURT:  You can set it up.

19

1          MR. THOMAS:  I do, because I have evidence that
2   Mr. Stremmel's declaration was false, and Mr. Hartman knows
3   it's false because there's no way --
4          MR. HARTMAN:  Your Honor --
5          MR. THOMAS:  -- they've done what he said.
6          THE COURT:  Yes, Mr. Hartman?
7          MR. HARTMAN:  This is getting to the point where
8   Mr. Thomas is throwing around these allegations without
9   compliance with any of the rules of evidence or proper
10  procedure.
11         THE COURT:  I'm aware of that.
12         MR. HARTMAN:  He shows up.  He files things at
13  essentially the 11th hour, nobody has time to respond, wants to
14  be heard on a shortening time without any proper procedure,
15  filing an application to do so.  And he is entitled to file his
16  opposition to the motion 14 days before the hearing, and he can
17  set forth his position there.  And if he wants to cross-examine
18  Mr. Stremmel at the hearing as Mr. Stremmel is called to
19  testify, he can do so, but his antics compound extraordinarily
20  all of the cost associated with administering this case.  He's
21  been telling you for quite a long time that he's going to get
22  things appealed and overturned in Santa Clara, and he hasn't
23  shown you anything that would demonstrate he's moving in that
24  direction.  He just expects everybody to take his word for
25  whatever he's saying, and he should be put to the proof.

-142-

20

1       THE COURT:  I have not -- all I'm saying is I will
2  continue this for two weeks.  If Mr. Thomas would like to
3  depose Mr. Stremmel, he needs to go through the proper
4  paperwork to do that and schedule it and get a reporter.  He
5  can do that.  If he wants to show us what has occurred that is
6  going to stay this because of something that's happening in
7  another court, I'll be happy to look at that, but we are going
8  forward with his auction.  If he has people who he thinks are
9  willing to purchase this or overbid this, he should bring them.
10 So that's where we are.

11      MR. THOMAS:  Your --

12      THE COURT:  You may have a seat, sir.

13      MR. THOMAS:  Your Honor --

14      THE COURT:  You may have a seat, sir.

15      MR. THOMAS:  You're going to take away my
16 constitutional rights to reply to his false statements?

17      THE COURT:  You may have a seat, sir.

18      MR. THOMAS:  Your Honor, I would respectfully ask --

19      THE COURT:  Have a seat.

20      MR. THOMAS:  -- for more time.

21      THE COURT:  Please call security.

22      You may have a seat until security gets here.  You

23 may walk out of the courtroom with them, and we'll see you at

24 the next hearing.

25      MR. THOMAS:  Your Honor --

-143-

21

1    THE CLERK:  Your Honor, we'll need to set that next
2  hearing.  Just a moment, please.
3    MR. THOMAS:  -- I respect -- I don't have -- I'm
4  dyslexic.  You're taking advantage of a person with a
5  disability, and I need more time, and I have evidence that I
6  would like to present.
7    THE COURT:  I'm aware that you suffer from dyslexia.
8    MR. THOMAS:  Yes, but --
9    THE COURT:  But there -- stop.  But often, dyslexics
10  can get wonderful information if they have somebody read the
11  document to them.  You are a married man.  I would assume your
12  wife can read to you.  You have acquaintances and others who
13  can read documents to you.  I am sorry that you have dyslexia.
14  I know it's a difficult disease.  But it doesn't mean you can't
15  have people assist you in reading the documents.
16    MR. THOMAS:  Your Honor, the reason I'm asking for
17  more time is because I -- it takes 45 days to get the subpoenas
18  from LinkedIn and from Gmail to prove my case, and I'm
19  respectfully asking --
20    THE COURT:  Then, you should have started earlier.
21    MR. THOMAS:  I didn't know because they didn't notify
22  me in time, Your Honor.  And the only time I got the
23  information from Jennifer Jordine that she works for
24  Mr. Tersini is when they -- when Mr. Hartman sent me the
25  documents.

22

1          THE COURT:  Please sit down.

2          MR. THOMAS:  Your Honor, I need --

3          THE COURT:  Please sit down.

4          MR. THOMAS:  -- I need to make a clear record for my

5     appeal because I'm sure this isn't --

6          THE COURT:  Please --

7          MR. THOMAS:  -- going to go the way --

8          THE COURT:  -- sit down.

9          MR. THOMAS:  -- it's supposed to according to the

10    law.

11         THE COURT:  Please sit down.  When security gets

12    here, we will go off -- we will leave.

13         THE CLERK:  Would you like a continue date, Your

14    Honor?

15         THE COURT:  Yes.

16         THE CLERK:  Okay.  I know that Mr. Thomas has

17    difficulty getting here during the week, so --

18         THE COURT:  Right.

19         THE CLERK:  -- if we were to set this for a Friday,

20    we're actually looking at two-and-a-half weeks.  My first

21    available is Friday, February the 1st.

22         THE COURT:  Mr. Thomas, does -- I know you work

23    during the week.  Is February the 21st -- is that right, or the

24    1st?

25         THE CLERK:  The 1st, February the 1st.

-- 145 --

23

1          THE COURT:  That should be -- that would be a Friday.
2   Does that work into your work schedule?
3          MR. THOMAS:  February 21st?
4          THE CLERK:  No, the 1st.
5          THE COURT:  The 1st.
6          THE CLERK:  February 1.
7          THE COURT:  February 1.
8          MR. THOMAS:  February 1, that's on a Friday.  Your
9   Honor, could I respectfully get another two weeks?
10         THE COURT:  Mr. Hartman?
11         MR. HARTMAN:  Well, Your Honor, I'm reluctant to
12  agree to that, but I will, but --
13         THE COURT:  Thank you.
14         MR. HARTMAN:  -- no further continuances.
15         THE COURT:  No further continuances after that, so
16  that would put you on what day?
17         THE CLERK:  Your Honor, will this take any more than
18  two hours?
19         THE COURT:  Almost certainly.  What do I have on that
20  day?
21         THE CLERK:  Okay.  The -- you're presiding at
22  naturalization.
23         THE COURT:  I'll get somebody else to do it.
24         THE CLERK:  So I -- okay.  So that would be that
25  two-week continuance, so it would put us at Friday, February

- 146 -

24

1 the 15th.

2          THE COURT:  Friday, February the 15th.

3          THE CLERK:  At 10 a.m.

4          THE COURT:  10 a.m.  Okay.  We are in recess.  You

5 may leave now.

6          Please escort Mr. Thomas out of the courtroom, out of

7 the building.  Thank you.

8          We'll be in --

9       (Proceedings concluded at 12:53 p.m.)

10                    *  *  *  *  *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

25

<u>C E R T I F I C A T I O N</u>

I, Alicia Jarrett, court-approved transcriber, hereby
certify that the foregoing is a correct transcript from the
official electronic sound recording of the proceedings in the
above-entitled matter.

_Alicia J. Jarrett_

ALICIA JARRETT, AAERT NO. 428     DATE:   December 21, 2018
ACCESS TRANSCRIPTS, LLC

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

EXHIBIT 10

Excerpts from Transcript of Hearing
1-4-2019

EXHIBIT 10

-149-

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA (RENO)

|  |  |
|---|---|
| IN RE: | Case No.  14-50333-btb |
| ANTHONY THOMAS and WENDI THOMAS, | Chapter 7 |
|  | 300 Booth Street Reno, NV 89509 |
| Debtors. | Friday, January 4, 2019 10:13 a.m. |

TRANSCRIPT OF DISCOVERY DISPUTE HEARING RE: DOC# 430
MOTION TO SELL FILED BY JEFFREY L. HARTMAN ON BEHALF OF
JERI COPPA-KNUDSON
BEFORE THE HONORABLE BRUCE T. BEESLEY
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

| | |
|---|---|
| For the Debtors: | ANTHONY THOMAS (Pro Se) 7725 Peavine Peak Court Reno, NV 89523 |
| For the Chapter 7 Trustee: | Hartman & Hartman By: JEFFREY L. HARTMAN, ESQ. 510 West Plumb Lane, Suite B Reno, NV 89509 (775) 324-2800 |
| Chapter 7 Trustee: | JERI COPPA-KNUDSON, ESQ. 3495 Lakeside Drive PMB #62 Reno, NV 89509 (775) 329-1528 |
| Audio Operator: | David Lindersmith, ECR |
| Transcription Company: | Access Transcripts, LLC 10110 Youngwood Lane Fishers, IN 46038 (855) 873-2223 www.accesstranscripts.com |

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

7

1    THE COURT:  March 8th, okay.

2    MR. HARTMAN:  Was one that -- because I had gotten a

3 call from Mr. Silver, who represents Kenmark.  He couldn't be

4 here on the February 22nd date.  We tried -- circled around the

5 March 8th date.  That was okay for him and for me, but it was

6 over the New Year's interlude and I didn't get back to court

7 staff.  So right now, we don't have a specific date for the

8 continued hearing.

9    THE COURT:  Okay.  Go ahead.

10    MR. HARTMAN:  That's it.  That's where we are.

11    THE COURT:  Mr. Thomas?

12    MR. THOMAS:  Thank you, Your Honor.  I'd like to

13 address everything that Mr. Hartman spoke to.  Number one, my

14 -- I was opposing the sale of the emerald because Mr. Hartman

15 did not follow the rules and notify all the creditors and

16 myself 21 days ahead of time, according to the Rule --

17    THE COURT:  Okay, stop.  Mr. Hartman, it appeared to

18 me that the notice was timely.

19    MR. HARTMAN:  Your Honor, I explained it in the

20 transcript.  It's there in black and white.  We got the

21 auctioneer approved.  He conducted the auction.  Then, I set a

22 hearing to approve the terms of the auction and the buyer.

23    THE COURT:  Right.

24    MR. HARTMAN:  Everybody got notice of that process.

25 It's in the certificate of service.  The matrix was noticed of

8

1  the hearing to approve the sale by auction.  It has not been

2  concluded.

3          THE COURT:  Okay.  So move on because I'm not -- the

4  sale can go forward as it is now scheduled.  People have

5  notice.  You've had notice.  Move on.

6          MR. THOMAS:  Your Honor, I want to make a --

7          THE COURT:  Move on.

8          MR. THOMAS:  -- I want to make a clear record, and I

9  don't want you to take away my constitutional rights.  They did

10 not notice people properly.

11         THE COURT:  Well, first off --

12         MR. THOMAS:  They're supposed to be sent out by the

13 clerk under 202.

14         THE COURT:  Please call security.  Have them come in.

15         Mr. Thomas, you have to behave.  You can't yell at

16 the judge.  You can't yell at opposing counsel.  I'm not going

17 to yell at you.  So --

18         MR. THOMAS:  Your Honor, I don't want you to block me

19 from making a clear record, and that's what you're doing, and I

20 think you should recuse yourself.

21         THE COURT:  Not by having security here, am I?

22         MR. THOMAS:  I think you should recuse yourself

23 because of a bias.  You don't want me to make a clear record

24 that he did not notify everybody according to the rules, which

25 he did not.

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

9

1    THE COURT:  So --

2    MR. THOMAS:  And the clerk is supposed to send out

3 the notice, and that was -- that did not happen.  It's not on

4 the docket.

5    THE COURT:  So where is your evidence?

6    MR. THOMAS:  It's not on the docket.

7    THE COURT:  Where is your evidence?

8    MR. THOMAS:  Where's my evidence?

9    THE COURT:  Right.  You need to present evidence.

10 Where is your evidence that this didn't happen?

11    MR. THOMAS:  I've looked at the court docket.  I

12 didn't receive a notice for 21 days ahead of time of the sale

13 of the emerald.  And according to 600 -- I think it's 6 and

14 202, they're supposed to notify all creditors and myself 21

15 days prior to the sale.  They did not do that.  They didn't

16 comply with the rules and the law.  And that's why the sale

17 should be void.  He didn't do that, and he said in court he

18 did, but he did not.  And I looked at all the rules, and he did

19 not follow the rules.

20    THE COURT:  So I read through your pleadings.  Have

21 you -- other than talking, have you provided any documentary

22 evidence that shows --

23    MR. THOMAS:  I haven't filed my opposition yet

24 because it's not due until 14 days before the hearing, and my

25 understanding is the hearing was going to be -- Illuminada

-153-

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

10

1  called me and told me that Mr. Hartman was not going to be able

2  to make the hearing on the 8th.

3          THE COURT:  And it's going to be moved.

4          MR. THOMAS:  And that it was going to be moved, and

5  she told me the date was going to be March 22nd.

6          THE COURT:  And that's fine.

7          MR. THOMAS:  So I put that in my order that --

8          THE COURT:  All right.  So --

9          MR. THOMAS:  -- the date would be March 22nd.  I also

10 want to address a few other things that Mr. Hartman --

11         THE COURT:  So just listen to me for a minute.

12         MR. THOMAS:  Okay.

13         THE COURT:  You have to provide a written motion

14 opposing it --

15         MR. THOMAS:  Yes.

16         THE COURT:  -- and attach evidence.

17         MR. THOMAS:  I am going to attach evidence.

18         THE COURT:  That's fine.

19         MR. THOMAS:  Yes.

20         THE COURT:  That's fine.  Stop.  Okay.  What is your

21 next problem?

22         MR. THOMAS:  My next problem is Mr. Hartman's

23 representations to this Court.  He said when he filed his

24 declaration that Overstock.com required $250,000 up front and

25 that's why he didn't use them.  And I filed a document with the

21

```
 1         THE COURT:  Okay.  No, I don't want to hear an "and."

 2         MR. THOMAS:  I just want to respond to --

 3         THE COURT:  I didn't ask you a question other than

 4  "do you understand".

 5         MR. THOMAS:  I do understand, but I want to address

 6  that because Mr. Hartman did take --

 7         THE COURT:  You can address that.

 8         MR. THOMAS:  -- possession of my parents' house --

 9         THE COURT:  You --

10         MR. THOMAS:  -- without a court order.

11         THE COURT:  Mister --

12         MR. THOMAS:  He did --

13         THE COURT:  Stop.  Just stop.  Mr. Hartman doesn't

14  need a court order to take possession of the house in Plumas.

15         MR. THOMAS:  And, excuse me, that was my parents'

16  house.

17         THE COURT:  You -- stop.  Stop.  Stop.  You listed

18  that on your schedules as your property.  When the case was

19  filed, it becomes the trustee's property when it's converted to

20  a Chapter 7.  That's what happened here.  You listed the house

21  that you claim is your parents' house in Plumas area.  The

22  trustee took control of that, which the trustee was entitled to

23  do.  Had you registered that, had you not put it in your

24  schedules, the trustee couldn't have done that.  If the title

25  was in your parents' name, the trustee could not have done
```

-155-

22

1  that.

2          MR. THOMAS:  Your Honor, I made it very clear to the

3  trustee that the property was conveyed to my parents in 2008,

4  and the deed was given to them in 2008.  They --

5          THE COURT:  And stop.

6          MR. THOMAS:  -- they knew that prior to them taking

7  --

8          THE COURT:  And stop.

9          MR. THOMAS:  -- possession of the home.  That is

10 illegal.

11         THE COURT:  And stop.  Well, according to California

12 law, an unrecorded deed is void.

13         MR. THOMAS:  Your Honor, I've cited that law on the

14 record many times, and I believe that you are wrong.

15         THE COURT:  Okay.  That's fine.

16         MR. THOMAS:  According to California law, the deed is

17 not void.  If you give them a deed in 2008 and I conveyed the

18 deed to them, then the property is theirs.  And that's what

19 California law says.  It doesn't say it has to be recorded, as

20 you've stated many times on the record.

21         THE COURT:  Well, that's what I read.  So -- but did

22 your parents record the deed?

23         MR. THOMAS:  I said in the 341 meeting they did not

24 record the deed.

25         THE COURT:  No, no, I'm talking about today.

-156-

23

1          MR. THOMAS:  No, because Mr. Hartman changed the
2     title of the property into his name.

3          THE COURT:  Okay.

4          MR. THOMAS:  So I have to go in to the court.

5          THE COURT:  Where is the deed?  Where is the deed?

6          MR. THOMAS:  My parents have the deed.

7          THE COURT:  Okay.  Why didn't your parents record the
8     deed?

9          MR. THOMAS:  Because my dad is 89 years old.  My
10    parents --

11          THE COURT:  Why didn't you record it for him?

12          MR. THOMAS:  My parents -- he's -- has dementia.  My
13    mom takes care of him full time.  And Plumas County is a few
14    hundred miles away from where they live, so --

15          THE COURT:  I believe they get mail to Plumas County.

16          MR. THOMAS:  What's that?

17          THE COURT:  I believe they have mail that goes to
18    Plumas County.

19          MR. THOMAS:  I don't know why they didn't go to
20    Plumas County and record the deed.  I just know that the deed
21    was conveyed to them in 2008, and that's where it stands, and
22    the trustee knew that back then.  And according to the rules
23    and the law, if the deed was conveyed, she didn't have the
24    right to take it over.  So that's an illegal possession of
25    property.  It's breaking and entering, and --

24

1          THE COURT:  Well, that is not actually before us.  I

2  disagree with you on your understanding of California law with

3  respect to a deed that's not been recorded.  Stop.  I'm not

4  asking you a question.  And you can take appropriate measures

5  by filing something in court in -- here or by filing something

6  in California to set aside the deed.  I don't -- I'm not --

7  I've not had a lot of experience setting aside deeds or getting

8  deeds or that kind of stuff, but you listed in your bankruptcy

9  the deed to the Plumas County as your property.

10          MR. THOMAS:  I --

11          THE COURT:  And --

12          MR. THOMAS:  I don't believe I did.  I said in the

13  341 meeting that --

14          THE COURT:  I didn't ask you what the 341 meeting.  I

15  said in -- stop.  In your pleadings, you said the -- you listed

16  the property in Plumas County as yours, correct?

17          MR. THOMAS:  I'm not sure, Your Honor.  I listed the

18  property --

19          THE COURT:  Okay.  That's fine.  That's fine.

20          MR. THOMAS:  -- as my parents'.

21          THE COURT:  Stop.  That's fine.

22          MR. THOMAS:  I'm not sure about the legal -- because

23  as you know, I'm not an attorney.  I did what the --

24          THE COURT:  I'm aware of that.

25          MR. THOMAS:  -- attorneys told me to do, and I've

25

1 told --

2         THE COURT:  I don't care what attorneys told you to
3 do.

4         MR. THOMAS:  I understand.  It was conveyed to them
5 in 2008, and the attorneys knew that.  So when they filled out
6 my schedules, they were supposed to fill them out
7 appropriately, and I thought that they were and I thought that
8 everything was approved, and I clarified it in the 341 meeting
9 when the trustee had some questions about it  over three and a
10 half years ago.

11        THE COURT:  Right.  And your clients, in that whole
12 -- and your parents, in that whole time, never recorded the
13 deed?

14        MR. THOMAS:  They never recorded the deed.

15        THE COURT:  Okay.  So you may have a seat.

16        Mr. Hartman.

17        MR. HARTMAN:  Your Honor, just what -- for the
18 record, on that issue, there will be a hearing sometime in the
19 future after I take the Rule 2004 exam of Mr. Thomas's mother
20 regarding the original deed.

21        THE COURT:  Okay.

22        MR. HARTMAN:  That's not an issue today.  What we
23 need is a continued hearing date and time.

24        THE COURT:  Okay.  This will take -- I will give you
25 -- I know you want to get done with this case.  I know it needs

26

1  to be taken care of, but Mr. Thomas needs to properly present

2  some of his complaints to the Court in a manner that everybody

3  has a chance to look at them reasonably and have time to look

4  at them.   So I will continue this hearing for 60 days.

5          Let's see, your motions, Mr. Thomas, with evidence

6  need to be filed with the Court within 30 days.  Do you

7  understand that?

8          MR. THOMAS:  Your Honor, could I ask -- respectfully,

9  the first date was March 22nd.  It was put on the calendar, and

10 if I could have those motions filed, according to the rule, 14

11 days ahead of that March 22nd date because I will follow the

12 rules and file all the motions properly.

13         THE COURT:  No, no, that's fine.

14         MR. THOMAS:  That's what I wanted to do, Your Honor.

15         THE COURT:  Mr. Hartman.

16         MR. HARTMAN:  I think there's some confusion, if I

17 may try and clarify.

18         THE COURT:  Please.

19         MR. HARTMAN:  One item that Mr. Thomas will want to

20 file is an objection to approving the sale by auction.  That

21 will be 14 days before the hearing.

22         MR. THOMAS:  Yes.

23         MR. HARTMAN:  I think the Court was alluding to any

24 other motion or discovery items that he wants to deal with

25 needs to be done within 30 days from today.

-160-

31

1  will consider that.  You will have to respond to that.  Do you
2  understand that?
3          MR. THOMAS:  Yes, Your Honor.  And I thank you for
4  giving me the time to do what I need to do and to get the
5  judgment in California set aside.  I'm working on that now.
6  There's a lot going on right now, Your Honor.  I had to file
7  documents with the Supreme Court this morning.
8          THE COURT:  That's fine.
9          MR. THOMAS:  So I have -- there's -- this is not the
10 only case.  I have to --
11         THE COURT:  Supreme Court of California?  Supreme
12 Court of the United States?
13         MR. THOMAS:  Supreme Court -- the United States
14 Supreme Court.  So --
15         THE COURT:  And that is -- I'm trying to think.  Is
16 that in your California -- I'm trying to think which case that
17 is.
18         MR. THOMAS:  That's this case, Your Honor.
19         THE COURT:  This case, okay.
20         MR. THOMAS:  That's the Kenmark case --
21         THE COURT:  Yeah, Kenmark case.
22         MR. THOMAS:  -- that I filed to appeal the Ninth
23 Circuit court.
24         THE COURT:  Right.
25         MR. THOMAS:  So I had to file some documents with the

32

1  Supreme Court today.

2          THE COURT:  Okay.

3          MR. THOMAS:  So -- and I need to file my motion and

4  my judicial notice of documents in California in Santa Clara.

5  So I'm also doing that, and I have to get -- and I'm trying to

6  get that done, but Mr. Morrissey's been holding us up on a

7  declaration that he promised --

8          THE COURT:  Now, Mr. Morrissey is the disbarred

9  lawyer that you work with?  Who's Mr. Morrissey?

10         MR. THOMAS:  Mr. Morrissey was my attorney that the

11 state bar sent the notice to saying that he was not allowed to

12 put the settlement on record.  The day before, Your Honor, he

13 was notified by the state bar, saying that he was not allowed

14 to go forward with the trial.

15         THE COURT:  Mr. Morrissey is the lawyer you were

16 using who has been disbarred.

17         MR. THOMAS:  This was the attorney that was -- that

18 admitted to fraud in 2017, him and Mr. Machado pled to fraud.

19 And after that, I got Mr. Machado to give a declaration stating

20 that they told me that I was not responsible for the settlement

21 and that Mr. Gardner was taking 100 percent.

22         THE COURT:  Well, I don't have that in front of me.

23 I don't think that, but --

24         MR. THOMAS:  That declaration was filed with the

25 Ninth Circuit court.

- 162 -

33

1      THE COURT:  That's great.

2      MR. THOMAS:  Okay.

3      THE COURT:  This is the lawyer who you have had here

4  occasionally who is a disbarred lawyer.  Is that correct?

5      MR. THOMAS:  Mr. Morrissey --

6      THE COURT:  Answer my question, yes or no.

7      MR. THOMAS:  No.

8      THE COURT:  Mr. Morrissey is not disbarred?

9      MR. THOMAS:  Mr. Morrissey is disbarred and has a

10  felony against him.

11      THE COURT:  Okay.

12      MR. THOMAS:  Okay.

13      THE COURT:  That's all I'm asking you.

14      MR. THOMAS:  And he was my original attorney who was

15  suspended by the state bar, but he never told me he was

16  suspended.  So --

17      THE COURT:  Well, I'm sorry about that, but --

18      MR. THOMAS:  And he -- well, he also put this

19  judgment that you -- that I had to take all the way up to the

20  Supreme Court on the record after the state bar told him he

21  couldn't, so that he committed a fraud on the court, and I

22  presented those documents to you.

23      THE COURT:  He didn't commit a fraud on me.

24      MR. THOMAS:  I know, not on you, in the Santa Clara

25  case.  They put -- he abandoned me and then --

-163-

34

```
 1          THE COURT:  But we're not --

 2          MR. THOMAS:  -- put it onto the record.

 3          THE COURT:  That's not the issue here.

 4          MR. THOMAS:  Well, I'm just --

 5          THE COURT:  That's not the issue here.

 6          MR. THOMAS:  -- I'm just making the record clear,

 7  Your Honor, that --

 8          THE COURT:  No, no.  You're not making the record

 9  clear.  You told me that you have something you're asking to

10  file with the Supreme Court to set aside --

11          MR. THOMAS:  That's a different case.  I put the --

12  the Supreme Court is to set aside your judgment.

13          THE COURT:  That's fine.

14          MR. THOMAS:  Okay.  And the Santa Clara County case

15  is to set aside the fraud that was procured against me in Santa

16  Clara by telling me that I was responsible for the judgment,

17  and Mr. Gardner was going to take full responsibility.  And

18  then, a year and a half later, they tell me that I had to pay

19  because he skipped the country, so --

20          THE COURT:  Well, I'm not involved in that case.

21          MR. THOMAS:  But you are, to some point, Your Honor,

22  because you lifted the stay, and I had asked you not to lift

23  the stay.  And on the record, you said that you were not

24  lifting the stay so that they could get fraud against me.  You

25  said that specifically on the record in the transcript.
```

35

1          THE COURT:  I didn't look at that.  I have no
2    recollection.
3          MR. THOMAS:  And then, you did the exact opposite.
4    You used that fraud against me, and then you said because I had
5    the fraud against me, you had the right to be biased against
6    me, which is what you said on the record.
7          THE COURT:  I don't have the right to be biased
8    against you.
9          MR. THOMAS:  You said that.  You said, I have the
10   right to be biased against you because --
11         THE COURT:  I have the right to take --
12         MR. THOMAS:  To think that --
13         THE COURT:  -- into account --
14         MR. THOMAS:  You said you had the right to think that
15   I was dishonest because I pled to fraud in San Jose --
16         THE COURT:  Yes.
17         MR. THOMAS:  -- which I did not.  And I said on the
18   record --
19         THE COURT:  Well, the record says you did.
20         MR. THOMAS:  No, the record does not.  It says all
21   parties are agreeing to no wrongdoing.  It says it twice.  And
22   the judge, in itself, says that, "In my findings of facts, I am
23   finding that there was no wrongdoing."
24         THE COURT:  Okay.  So, Mr. Thomas, when you come
25   back, you need to focus on the things that are in front of me.

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

36

1    MR. THOMAS:  Yes.  But all those have been in --
2    THE COURT:  Stop.  Rehashing things that aren't
3  applicable to this case, such as whatever you're doing with the
4  Supreme Court, that will happen.  Issues you've got with other
5  people, you can deal with those.  You need to focus.  You're
6  going to do a much better job for yourself here if you focus on
7  this case and the various things we've discussed this morning.
8  That's what you need to focus on here.

9        I know you have other issues elsewhere.  I know
10  you're taking care of the other issues elsewhere.  But those
11  issues don't impact what's happening in this court right now.
12  Do you understand that?  And the more you focus on what's
13  happening here, no matter how much you dislike me or dislike
14  what other people have done or unhappy with what your prior
15  lawyers did, what you need to focus on is what's happening in
16  the bankruptcy court here because that's -- this is where this
17  diamond -- or this emerald is going to be sold or not sold.
18    MR. THOMAS:  Yes.
19    THE COURT:  All right.  So --
20    MR. THOMAS:  And I would like to correct the record,
21  Your Honor.  It's not -- you said that I don't -- that I
22  dislike you.  That's not the case at all.  I respect you, Your
23  Honor, as a judge.  I just think that the rulings that you've
24  made in a lot of the cases don't go according to the law, and I
25  have that right, and that's why I've appealed those cases.

37

1      THE COURT:  Well, you certainly have that right, and
2  I disagree with you.  But it's not uncommon for people to
3  disagree with a judge, at least one party.  So no problems with
4  me.

5      MR. THOMAS:  But I don't have any hard feelings to
6  you as a person or as a judge.  I just -- it is the rulings.  I
7  think that, you know, my experience that there's been times
8  where you do not follow the rules and the law.  And by citing
9  California law stating --

10      THE COURT:  And we disagree, and you're certainly --
11  you are certainly able to appeal.

12      MR. THOMAS:  And that --

13      THE COURT:  And I'm not slightly offended by somebody
14  appealing or trying to overrule my decisions.  It doesn't
15  happen -- I mean, most of them aren't overruled, but people
16  object sometimes, and I'm occasionally wrong.  So we'll see.

17      MR. THOMAS:  Okay.

18      THE COURT:  All right.  So --

19      MR. THOMAS:  Thank you, Your Honor.

20      THE COURT:  Mr. Hartman.

21      MR. HARTMAN:  Yes?

22      THE COURT:  I would like you, please -- and I know I
23  have not made this easy -- to do an order as to when various
24  things have to be filed, when things will be heard, if there
25  are other things that need to be addressed.

-167-

38

1          Mr. Thomas.

2          MR. THOMAS:  Yes?

3          THE COURT:  Mr. Hartman will send you a copy.  Do you

4   have a -- you have email.  I'm assuming you have email.

5          MR. THOMAS:  Yes.

6          THE COURT:  Do you have email?

7          MR. THOMAS:  Yes.

8          THE COURT:  Mr. Hartman will send you, by email, a

9   draft of that order.  If you don't agree with it, Mr. -- tell

10  Mr. Hartman that or email Mr. Hartman that, and I will get the

11  two of you on the phone, or if you want to be in court, on the

12  phone, but I will get you on the phone or in court or by video

13  within 24 hours in a working week and we'll get that resolved

14  so we can go forward because we need to go forward and get this

15  case resolved, one way or the other.

16          MR. THOMAS:  Thank you, Your Honor.  And I would like

17  to have one more request.  Could I fax file?  Because it makes

18  it extremely hard when I'm in California and I've got to come

19  all the way up here to file documents to get them stamped, and

20  if you could make it available to me so that I could fax file

21  or email the court the documents so that I could get them on

22  the record without having to come all the way up here and bring

23  three copies and get them stamped.  It's a lot with the cases

24  that -- all the cases I have going on right now, and it's very

25  burdensome on me to not be able to file with this court like

-168-

39

1  Mr. Hartman can.  He can file through --

2          THE COURT:  ECF, but --

3          MR. THOMAS:  Yes.

4          THE COURT:  But the answer to that is I honestly

5  don't know.  I don't know -- I mean, I do not have any personal

6  opposition to that, but I don't know if the court has the

7  ability to fax file anymore.  I know it did at one point, but

8  it -- that fax is a long time ago, in my experience, and I

9  don't know if there are -- I don't know what the prohibitions

10 or limitations are on basically non-lawyers filing.  But I'm

11 going to ask the  -- Ms. Starzyk or perhaps someone else in the

12 office to see.

13         THE CLERK:  Your Honor, he can file it through the

14 mail.

15         THE COURT:  Okay.

16         THE CLERK:  And you do have the discretion to allow a

17 pro se debtor to file via fax.

18         THE COURT:  Okay.

19         THE CLERK:  It's your discretion since there are ways

20 around it.

21         THE COURT:  So --

22         MR. THOMAS:  And that's what I had asked --

23         THE COURT:  Just a second.

24         MR. THOMAS:  Yes.

25         THE COURT:  So, Mr. Hartman, do you have any issues

-169-

40

1  with him -- with Mr. Thomas filing by fax?

2          MR. HARTMAN:  Not at all, Your Honor.  It's --

3          THE COURT:  Okay.

4          MR. HARTMAN:  Historically, the volume of the

5  materials that he files will make it burdensome on everybody,

6  but fax is certainly available.

7          THE COURT:  I will allow you to file by fax.  I don't

8  know that you had asked before.  I don't see any reason why you

9  can't file by fax.  You're going to have a big phone bill, I

10 suspect, from the amount of stuff you're faxing, but you can

11 certainly do that.

12         MR. THOMAS:  Is there an e-service that I can file

13 like Mr. Hartman is filing to make it easier so that I can use

14 that process to file through instead of doing the fax?

15         THE COURT:  To be honest with you, I do not know.

16 Why don't you -- let's -- Ms. Starzyk, could you check?

17         THE CLERK:  Yes, Your Honor.

18         THE COURT:  Okay.  So just hang on for a second.  I

19 honestly don't know the answer to the question.

20         MR. THOMAS:  Okay.

21         MR. HARTMAN:  So do we have March 22nd as a hearing

22 date?

23         THE COURT:  We have March 22nd as a hearing date.

24         MR. HARTMAN:  And that is a Friday, right?

25         THE COURT:  I believe -- yeah, I think it's a Friday.

47

1  goes wrong.

2          MR. THOMAS:  Okay.

3          THE COURT:  I, myself, have never personally done

4  that, so I can't really give you a great deal of information on

5  it, but it is something that's on the web page.

6          MR. THOMAS:  Okay.

7          THE COURT:  Okay.

8          MR. THOMAS:  Thank you, Your Honor.

9          THE COURT:  Thank you very much.  Thank you.

10         MR. HARTMAN:  Thank you, Your Honor.

11         THE COURT:  We'll be in recess.

12         MS. COPPA-KNUDSON:  Thank you, Your Honor.

13         THE CLERK:  All rise.

14     (Proceedings concluded at 11:24 a.m.)

15                  *  *  *  *  *

16

17

18

19

20

21

22

23

24

25

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

48

1              C E R T I F I C A T I O N

2

3         I, Alicia Jarrett, court-approved transcriber, hereby

4  certify that the foregoing is a correct transcript from the

5  official electronic sound recording of the proceedings in the

6  above-entitled matter.

7

8

9

10

11  ALICIA JARRETT, AAERT NO. 428      DATE:  January 9, 2019

12  ACCESS TRANSCRIPTS, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

-172-