1　Anthony G. Thomas
　　7725 Peavine Peak Court
2　Reno, NV 89523
　　Tel:　　　(408) 640-2795
3　E-mail:　　atemerald2@gmail.com

RECEIVED
AND FILED

2019 JUL 19　AM 11: 27

U.S. BANKRUPTCY COURT
MARY A. SCHOTT CLERK

4　Debtor In Propria Persona

5　　　　　　**UNITED STATES BANKRUPTCY COURT**

6　　　　　　　　**DISTRICT OF NEVADA - RENO**

7　IN RE:　　　　　　　　　　　) Case No.　BK-N-14-50333-GS
　　　　　　　　　　　　　　　　) Case No.　BK-N-14-60442-GS
8　ANTHONY THOMAS and　　　　)　　　　　　(Jointly Administered)
　　　　　　　　　　　　　　　　)
9　WENDI THOMAS　　　　　　　) CHAPTER 7
　　　　　　　　　　　　　　　　)
10　AT EMERALD, LLC　　　　　　) NOTICES OF APPEAL FROM ORDERS
　　　　　　　　　　　　　　　　) VOID ON THEIR FACE
11　　　　　　Debtors.　　　　　) IN VIOLATION OF FUNDAMENTAL
　　　　　　　　　　　　　　　　) U.S. CONSTITUTIONAL DUE PROCESS
12　　　　　　　　　　　　　　　) RIGHTS - REPEATED VIOLATIONS OF BK
　　　　　　　　　　　　　　　　) COURT LOCAL RULE 9021; REQUEST
13　　　　　　　　　　　　　　　) FOR EMERGENCY EX PARTE STAY OF
　　　　　　　　　　　　　　　　) PROCEEDINGS TO PREVENT SALE
14　　　　　　　　　　　　　　　) OF THOMAS EMERALD ON 7-19-2019

15　_____)

16　　　　　**PLEASE TAKE NOTE** that Debtor Anthony G. Thomas hereby appeals from:

17　1.　Judge Spraker's Sales Procedures Order - ECF/DE 510 filed on 7-12-2019 that
　　　　is void on its' face due to failure to comply with Reno BK Court Local Rule 9021.
18　　　　A copy of the Order that is Void on its' face is attached hereto as Exhibit A.

19　2.　Judge Spraker's Order re: Pending Motion and Debtor's Request for Stay of
　　　　Proceedings filed as DE 512 on 7-12-2019, attached hereto as Exhibit B.
20

21　3.　Judge Spraker's Ruling from the Bench of 6-4-2019 wherein he refuses to rule on
　　　　Debtor's Motion for Judicial Notice of Law and Facts in Opposition to the
22　　　　Trustee's Motion to sell the Thomas Emerald without compliance with the U.S.
　　　　Bankruptcy Code and Rules governing Notices required to be given prior to any
23　　　　proposed use or sale of Estate property pursuant to BK Code Section 363(b) and
　　　　Rules 6004 and 2002.  The Judge's refusal to rule on Debtor's Motion for Judicial
24　　　　Notice is evidenced by the 40 page transcript of the hearing filed as ECF/Docket
　　　　Entry 500 filed on 7-3-2019 that is incorporated herein by reference. Exhibit C

25　4.　Debtor needs a stay of proceedings in light of his Motion for Judicial Notice (DE
　　　　508 filed on 7-8-2019) in Support of his Rule 60(b)(4) Motion to Vacate (DE 509
26　　　　filed on 7-8-2019) Judge Beesley's Void 8-22-2014 Conversion Order that is to
　　　　be heard before Judge Spraker on 9-13-2019.  If the underlying Conversion
27　　　　Order is Void, then so is the 7-19-2019 attempted sale of the Thomas Emerald.

28　5.　Debtor further requests an Emergency Ex Parte stay of proceedings from this

- 1 -





1    Court in light of the likelihood that Judge Spraker will deny his request for a stay
     that Debtor will nonetheless file in the BK Court prior to the 7-19-2019 sale date
2    and in light of Judge Spraker's refusal to take Judicial Notice that the purported
     sale of the Thomas Emerald is Void on its' face.  Irreparable harm will occur to
3    Debtor if the illegal sale proceeds in violation of the rule of law.  The current
     highest bidder turned out to be Ken Tersini, the principal of Kenmark Ventures
4    LLC and none other than the notorious human trafficker[1] and enslaver and
     exploiter of foreign labor Ken Tersini, and the one that procured the fraudulent
5    judgment with the collusion of the Debtor's disbarred attorney Michael Morrissey
     in the underlying Judgment of the Santa Clara Superior Court that is the issue
6    that forced Debtor into Bankruptcy Court in the first place.  Debtor also needs a
     stay so he can file his Motion to Vacate the $5 million Santa Clara County
7    Superior Court Judgment that was procured by Fraud Upon the Court.

8    Dated:        7-19,2019.                    Respectfully submitted,

9

10                                              Anthony G. Thomas
                                                Debtor In Propria Persona
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
     _____
     [1]    **as evidenced by his despicable conduct in the Slavery Towers affair in San Jose**
                                            - 2 -
     _____
                    DEBTOR ANTHONY G. THOMAS NOTICES OF APPEAL

1
2
3
4
5
6
7
8
9
10
11
12  **Exhibit A**
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27  **Exhibit A**
28

_(signature)_

_____
Honorable Gary Spraker
United States Bankruptcy Judge

Entered on Docket
July 12, 2019

## UNITED STATES BANKRUPTCY COURT

### DISTRICT OF NEVADA

* * * * * *

| | |
|---|---|
| In re: | Case No. BK-14-50333-gs |
| | Case No. BK-14-50331-gs |
| ANTHONY THOMAS and | |
| | (Jointly Administered) |
| WENDI THOMAS, | |
| | Chapter 7 |
| AT EMERALD, LLC, | |
| | Hearing Date:  July 19, 2019 |
| Debtors. | Hearing Time: 1:00 p.m. |

### SALE PROCEDURES ORDER

On June 4, 2019, the court conducted a status and scheduling conference regarding the

chapter 7 trustee's efforts to sell the "Thomas Emerald," consisting of a 21,000 carat emerald.

As a result of that hearing, the court scheduled a final evidentiary hearing on the trustee's

Motion for Order Confirming Sale by Auction; Request for Approval of Payment of

Commission to Stremmel Auctions (ECF No. 430) on **July 19, 2019 at 1:00 p.m.** in the Clifton

Young Federal Building, 300 Booth Street, Bankruptcy Courtroom, Fifth Floor, Reno, Nevada.

The court also requested that trustee's counsel draft an order setting out the procedures for the

sale should qualified, competing bids be received.  On July 9, 2019, counsel for the trustee

lodged a proposed Sales Procedure Order, to which Anthony Thomas objected.  Mr. Thomas's

objections were included with the proposed order.  By a separate Order (1) Regarding Pending

Motions and Debtor's Request for Stay of Proceedings, and (2) Overruling Debtor's Objections

to the Trustee's Bid Procedures Order, the court has considered and overruled Mr. Thomas's

objections to the proposed order for the reasons stated, and incorporated herein.  Nonetheless,

the court enters its own order to note the procedural history of this order, but will incorporate

1   the substance of the proposed order.  Therefore, to participate in the auction of the Thomas

2   Emerald,

3        IT IS ORDERED THAT any interested purchaser must provide evidence of ability to

4   bid cash or cash equivalent at the hearing.  The opening bid for the Thomas Emerald is

5   $21,500.  Incremental overbidding will be at $2,500 per bid.  A Buyer's premium of 10% over

6   the successful bid price will be charged.

7        IT IS SO ORDERED.

8   * * * *

9   Copies sent to all parties via CM/ECF ELECTRONIC NOTICE and via U.S. Mail to:

10  ANTHONY THOMAS
    7725 PEAVINE PEAK COURT
11  RENO, NV 89523
                                ###

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit B

# Exhibit B

- 4 -

_____
Honorable Gary Spraker
United States Bankruptcy Judge

Entered on Docket
July 12, 2019

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

* * * * * *

In re:

ANTHONY THOMAS and

WENDI THOMAS,

AT EMERALD, LLC,

              Debtors.

Case No. BK-14-50333-gs
Case No. BK-14-50331-gs

(Jointly Administered)

Chapter 7

## ORDER (1) REGARDING PENDING MOTIONS AND DEBTOR'S REQUEST FOR STAY OF PROCEEDINGS, AND (2) OVERRULING DEBTOR'S OBJECTIONS TO THE TRUSTEE'S BID PROCEDURES ORDER

On June 4, 2019, the court held a status conference regarding the chapter 7 trustee's (Trustee) motion to sell certain personal property of the debtors, namely the emerald referred to as the Thomas Emerald (ECF No. 430) (Sale Motion). For the reasons stated on the record at that hearing, the court scheduled a final evidentiary hearing regarding the Sale Motion for July 19, 2019 at 1:00 p.m. The court also requested that counsel for the chapter 7 trustee prepare an order establishing the bid procedures applicable for the auction.

On July 8, 2019, debtor Anthony Thomas (Thomas) filed two motions, among other documents. The first is his Notice of Motion and Motion for Judicial Notice of Law & Facts ISO Rule 60(b)(4) Motion to Vacate Void 8-22-2014 Conversion Order (ECF No. 508) (Judicial Notice Motion). The hearing on the Judicial Notice Motion was set at Mr. Thomas's request for September 13, 2019. The second motion recently filed by Mr. Thomas is captioned, Notice of Rule 60(b)(4) Motion & Motion to Vacate Order Void on Its Face in Violation of U.S. Constitutional Due Process Rights; Request for Stay (ECF No. 509) (Rule 60(b) Motion,

1  and together with the Judicial Notice Motion, the Motions). Mr. Thomas has requested that

2  this motion be set to be heard in October.

3        On July 11, 2019, the trustee lodged his Proposed Sale Procedures Order. The lodged

4  order actually references an attachment which is the proposed order indicating that Mr. Thomas

5  has disapproved the form of the order, and including a statement of objection.[1] Mr. Thomas

6  contends that the proposed order is late, is void because trustee's counsel failed to submit the

7  proposed order to him prior to filing it and serving it on the creditor matrix. He further argues

8  that as a result, the court's prior order dated June 21, 2019 is also void. The court did not enter

9  an order on June 21, 2019. The trustee filed his Notice of Continued Hearing on Motion for

10 Order Confirming Sale by Auction; Request for Approval of Payment of Commission to

11 Stremmel Auctions (ECF No. 498). The court finds no merit in Mr. Thomas's objection to the

12 proposed order. As the lodged order includes an objection to the form of the order, Mr.

13 Thomas has received notice of the proposed order. Because no other party other than Kenmark

14 Ventures, LLC appeared at the status hearing, and no other party has objected to the relief

15 sought, no additional notice or signatures were required. Moreover, Mr. Thomas does not have

16 standing to object on behalf of other parties such as Kenmark Venture. In accordance with

17 Local Rule 9021 governing entry of orders, the court overrules Mr. Thomas's objections and

18 shall enter the proposed order lodged by trustee's counsel.

19        The court has briefly reviewed the Motions. The request for judicial notice asks the

20 court to consider its prior actions and matters that occurred during the August 22, 2014 hearing.

21 Mr. Thomas has attached a transcript of that hearing. The court has reviewed the Judicial

22 Notice Motion and notes that the facts referenced therein do not appear to be in dispute, or are

23 otherwise inappropriate for judicial notice. Accordingly, the court will not require a separate

24

25

26

27

_____

28  [1] Mr. Thomas also included the court's law clerk in an email regarding the objection to the proposed order. The debtors are instructed to not do so in the future. Rather, the process for disapproving the form of an order is set forth in Local Rule 9021(b)(2).

1  hearing on the Judicial Notice Motion, and instead will set both Motions for hearing on

2  September 13, 2019, thus satisfying the requirements of Fed. R. Evid. 201(e).[2]

3          The Rule 60(b) Motion requests that the court vacate its prior order converting this case

4  from chapter 11 to chapter 7 (ECF No. 190) (Conversion Order). Mr. Thomas also includes a

5  request to stay all proceedings in this case pending resolution of the Motions. At Mr. Thomas's

6  request, this motion has been set for hearing on September 13, 2019, well after the July 19,

7  2019 sale of the Thomas Emerald. Thomas has not explained why either motion may not be

8  heard on an earlier date. He has not taken any action to do so, or requested that the court

9  consider a stay prior to the July 19, 2019 hearing on the sale of the Thomas Emerald.

10 Furthermore, the court is concerned by Thomas's request that all proceedings in this case be

11 stayed pending resolution of the Motions, especially since he has scheduled consideration of

12 those motions well after the hearing date for the sale itself. The filing of the Rule 60(b) Motion

13 does not stay the proceedings of the court. To the extent that Mr. Thomas intends to ask the

14 court to stay the sale scheduled for July 19, 2019, it is incumbent upon him to take such actions

15 before the sale occurs. He has not done so to date; placing a request for relief within another

16 motion (to void the order of conversion) and scheduling it months after the sale is not

17 sufficient. Any such request is not properly before the court at this time. Accordingly, as there

18 is no request currently before this court to stay the sale scheduled for July 19, 2019, the court

19 will consider the Rule 60(b) Motion, and the request for stay, on the date requested by debtor

20 absent further action by the debtor to appropriately bring such matter before the court.

21         For these reasons,

22

23

24  _____

25 [2] The court also notes that in the Rule 60(b) Motion, Thomas contends that the undersigned
   "has refused to rule on Debtor's Motion for Judicial Notice with regards to the sale of the Thomas
26 Emerald." ECF No. 509, p. 2:4-6. This is simply untrue as the court has stated that it will consider and
   rule on the request at the time of the substantive hearing. *See* Transcript of June 4, 2019 Hearing, ECF
   No. 500, p. 18:20-19:3 ("Mr. Thomas: Will you rule on our judicial notice motion? Court: I will
27 consider all matters. I'm likely to not rule on anything prior to. Mr. Thomas: But you will take judicial
   notice of the facts and laws that we present you. Court: Sir, I will allow – I – I've seen that. I have not
28 gone through it in any great length, but the – I will hear your position, and then I will decide how to
   proceed.").

1    IT IS HEREBY ORDERED that the court will hear both the Notice of Motion and

2  Motion for Judicial Notice of Law & Facts ISO Rule 60(b)(4) Motion to Vacate Void 8-22-

3  2014 Conversion Order (ECF No. 508) and the Notice of Rule 60(b)(4) Motion & Motion to

4  Vacate Order Void on Its Face in Violation of U.S. Constitutional Due Process Rights; Request

5  for Stay (ECF No. 509) on **September 13, 2019 at 9:30 a.m.**

6    IT IS FURTHER ORDERED that Mr. Thomas's objections to the form of the trustee's

7  Proposed Sale Procedures Order are overruled, and the court shall enter the proposed order.

8    IT IS SO ORDERED.

9  * * * *

10  Copies sent to all parties via CM/ECF ELECTRONIC NOTICE and via U.S. Mail to:

11  ANTHONY THOMAS
    7725 PEAVINE PEAK COURT
12  RENO, NV 89523

                          ###

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

Exhibit C

```
                 UNITED STATES BANKRUPTCY COURT
                    DISTRICT OF NEVADA (RENO)


IN RE:                        .    Case No. 14-50333-gs
                              .    Chapter 7
ANTHONY THOMAS and            .
WENDI THOMAS,                 .    300 Booth street
                              .    Reno, Nevada 89509
            Debtors.          .
                              .    Tuesday, June 4, 2019
. . . . . . . . . . . . . .   .    2:02 p.m.


        TRANSCRIPT OF STATUS AND SCHEDULING CONFERENCE RE:
            MOTION TO SELL FILED BY JEFFREY L. HARTMAN
              ON BEHALF OF JERI COPPA-KNUDSON [430]
      BEFORE THE HONORABLE GARY SPRAKER VIA VIDEO CONFERENCE
             UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Chapter 7       Hartman & Hartman
Trustee:                By:  JEFFREY L. HARTMAN, ESQ.
                        510 West Plumb Lane, Suite B
                        Reno, NV 89509
                        (775) 324-2800

Chapter 7 Trustee:      JERI COPPA-KNUDSON, ESQ.
                        3495 Lakeside Drive, PMB #62
                        Reno, NV  89509
                        (775) 329-1528

TELEPHONIC APPEARANCES:

For the Debtors:        ANTHONY THOMAS, Pro Se
                        7725 Peavine Peak Court
                        Reno, NV  89523

For Kenmark Ventures:   WAYNE A. SILVER, ESQ.
                        333 West El Camino Real, Suite 310
                        Sunnyvale, CA  94807
                        (408) 720-7007


Audio Operator:         Illuminada Starzyk, ECR

Transcription Company:  Access Transcripts, LLC
                        10110 Youngwood Lane
                        Fishers, IN 46038
                        (855) 873-2223
                        www.accesstranscripts.com

        Proceedings recorded by electronic sound recording,
           transcript produced by transcription service.
```

2

1    (Proceedings commence at 2:02 p.m.)

2    THE COURT:  (Via video conference) Good morning,

3  Madam -- or good afternoon, Madam Clerk.  This is

4  Judge Spraker.  Is everyone ready to appear?

5    THE CLERK:  Good afternoon, Judge.  Yes, everyone is

6  present and ready for you.

7    THE COURT:  All right.  If you will call the case,

8  then, please.

9    THE CLERK:  Yes, sir.  The matter that we have on

10  today's calendar is Case Number 14-50333.  It's the case of

11  <u>Anthony and Wendi Thomas</u>.  In regards to Docket Number 430,

12  it's a status and scheduling conference in regards to the

13  motion to sell.

14    THE COURT:  Thank you.  Please be seated.  All right.

15    As the court clerk just mentioned, we are on record

16  in Thomas regarding a status and scheduling conference set in

17  this matter by the Court.  I can only see the podium primarily,

18  so let's start with people approaching the podium and entering

19  their appearance.

20    Mr. Hartman, if you'd lead us off.

21    MR. HARTMAN:  Good afternoon, Your Honor.

22  Jeff Hartman, on behalf of trustee Jeri Coppa-Knudson.

23    MS. COPPA-KNUDSON:  Jeri Coppa-Knudson, trustee.

24    THE COURT:  Thank you, Ms. Coppa-Knudson.

25    All right.  Anyone else in the courtroom?

ACCESS TRANSCRIPTS, LLC    ⊤    1-855-USE-ACCESS (873-2223)

 1          MR. HARTMAN:  Nobody else in the courtroom,
 2 Your Honor.
 3          THE COURT:  All right.
 4          MR. HARTMAN:  I think they're --
 5          THE COURT:  Mr. Hartman --
 6          MR. HARTMAN:  I think they're telephone --
 7          THE COURT:  Go ahead.
 8          MR. HARTMAN:  -- telephone appearances, Your Honor.
 9          THE COURT:  Thank you.  Then let's take those on the
10 telephone.
11          MR. THOMAS:  (Telephonically)  Your Honor, this is
12 Anthony Thomas.
13          THE COURT:  All right, Mr. Thomas.  Thank you.
14 Somebody else was also on the line?
15          MR. SILVER:  (Telephonically)  Good afternoon,
16 Your Honor.  Yes, Your Honor.  Good afternoon.  Wayne Silver,
17 appearing for Kenmark Ventures, LLC.
18          THE COURT:  All right.  Thank you, Mr. Silver.
19          Okay.  Thank you.  Obviously, I am the judge that's
20 been appointed after Judge Beesley recused himself.  I am a
21 visiting judge from the District of Alaska.  I have been
22 helping out in the District of Nevada for, jeez, it's about to
23 be six years here soon.  So unfortunately, I do the initial
24 matters by video, if possible, and then try to take whatever
25 matters that may be necessary -- I will be down in Reno.

1       I thought it was necessary to set this matter on and
2  have this initial discussion to see where the parties believe
3  the matter was left after the last hearing in which
4  Judge Beesley recused himself.  There being no real activity on
5  the docket before then, I thought it was most simple just to go
6  ahead and set this matter for a hearing.

7       Mr. Hartman, as representative of the movant in the
8  motion to sell, I'll let you have the first crack.  But let me
9  tell you what I've seen -- and all the parties, for that
10 matter -- from what I've seen from my review of the docket.

11       Primarily, this is -- the relief requested is
12 approval of a motion of sale of the emerald that is at issue.
13 The sale is a result of an auction that was not subject to any
14 prior motion prior to the auction, and so, in my view, it comes
15 to us as -- really as a sale to a private party, but with the
16 auction behind it to support it.

17       I know that Mr. Thomas has challenged or made several
18 challenges.  Primarily -- or the first was to challenge the
19 validity of the notice; also challenges the approval of the
20 sale; and seems to have challenged the payment of some expenses
21 to the auctioneer.  So I want to know what else is being
22 challenged or subject to the Court's consideration, where we
23 are, and where we go from here.  So, Mr. Hartman, with that
24 introduction --

25       MR. HARTMAN:  Thank you, Your Honor.

1    THE COURT:    -- take it away.

2    MR. HARTMAN:    I'll -- I guess I'll begin by the

3  process.    The trustee has possession of the emerald.    She

4  recovered possession early on in the case.    She went to Florida

5  to retrieve it.    And --

6    THE COURT:    And, Mr. Hartman, I apologize.    I should

7  have said this.    I've read as much as I could, so I know the

8  history and the back story.    We can get into what's evidence

9  and what isn't at a later date, but really I just want to try

10  to get a handle as to where things are, whether this matter

11  should be deemed submitted, or whether we need to schedule a

12  further evidentiary matter, and if so, on what issues or all

13  issues.

14    MR. HARTMAN:    Well --

15    THE COURT:    So I'm going to ask all parties to ignore

16  the history and the context at the moment.    I just want -- you

17  know, for lack of better -- just figure out the scheduling and

18  the status, actually.    I should have started with that.

19    MR. HARTMAN:    Certainly, Your Honor.    The --

20  Mr. Thomas has questioned the procedure leading up to the

21  hearing that was held at which Judge Beesley recused himself.

22  And the issue, as I understand it, by Mr. Thomas is that the

23  option wasn't properly noticed.    The procedure that was

24  followed was that the auction was conducted but the sale had to

25  actually be confirmed by the Court, and anybody that wanted to

1  appear and overbid would be able to do so, provided that they
2  had legitimate funds.

3         At the hearing on the motion to approve the sale,
4  Judge Beesley actually conducted the hearing and recused
5  himself at the end.  He never ruled on -- he never said, I'm
6  going to enter an order approving the sale.  So we have a
7  motion that's in limbo and it can be reset at any time; or if
8  the Court ultimately determines the trustee needs to re-notice
9  the sale or engage in a different process, we can do that.

10        THE COURT:  Okay.  So where do you believe the
11 evidentiary matters were left?  There was some -- there was
12 testimony -- limited testimony from Mr. Thomas.  There was more
13 testimony from Mr. Stremmel.  What does the trustee want to do,
14 other than sell the emerald?  What do you want to do
15 procedurally at this point?

16        MR. HARTMAN:  Well, in my ideal situation,
17 Your Honor, I would like Mr. Thomas to be directed to supply
18 any information he has to the trustee with respect to potential
19 purchasers of the emerald who might be willing to pay more, and
20 we'll obviously notice them and invite them to appear at the
21 hearing, and the Court conduct an auction, basically, and the
22 highest bidder will prevail.  I --

23        THE COURT:  I --

24        MR. HARTMAN:  I believe the record is clear that
25 notice of the hearing on the sale was proper.  Actually it was

1  more than proper under the rules and the time required.  So
2  from that standpoint, I think the trustee's on solid ground.
3  And eventually, you know, she's charged with liquidating the
4  assets.  She continuously has to report to the United States
5  Trustee on the status of this case, and that's getting to be a
6  challenge.

7          But it's at issue, and we can reset a hearing and
8  conduct a hearing, and Mr. Thomas can appear and object to
9  Your Honor, and you can rule on the issues at that point in
10 time.

11          THE COURT:  Okay.  Mr. Thomas, let's hear from you.
12 What do you think should be the next step in this process?

13          MR. THOMAS:  Your Honor, I think that the sale should
14 be void on its face because they didn't follow Rule 363(b) or
15 Rule 6004 and 2002.  They didn't notice all creditors or myself
16 21 days prior to the sale.

17          And I believe that the sale was a collusive sale.  It
18 was -- the only people that were notified of the sale was
19 Ken Trazini (phonetic) and Mr. Silver and the auctioneer put
20 them down as emerald experts.  So I believe that the sale was
21 collusive and they should be void.  And I think that a new
22 auctioneer should be picked.

23          You know, there was Overstock.com, and I think that,
24 you know, they're a more appropriate auctioneer for this type
25 of emerald, or Sotheby's, or any of the big auctioneer firms

8

1 for one of the single largest emeralds in the world.

2 And I think the whole process has been undermined and
3 not followed the rules. There was no reason for them not to
4 notify me or the creditors 21 days prior to the sale. And, you
5 know, there are rules in the Bankruptcy Court for a reason, and
6 they didn't follow the rules. So I believe that the sale
7 should be void, and I think that they should start from the
8 beginning and pick an auctioneer that's not a local auctioneer
9 that they know, and pick a good public auctioneer that can get
10 the most money for the emerald.

11 There's also some very -- some underlying issues,
12 Your Honor, that I've been trying to get filed in the
13 Santa Clara Bankruptcy Court if -- I was forced into
14 Bankruptcy Court by a fraudulent settlement. And I'm trying to
15 get these papers filed in Santa Clara, but every week I have to
16 deal with another issue. And, you know, I -- hopefully I'll be
17 able to get those filed within the next two weeks.

18 But the whole reason I'm in bankruptcy in the first
19 place is because my attorney was told by the State Bar the day
20 before the settlement that he wasn't allowed to try my case.
21 They wrote him a letter and said that he was -- wasn't allowed
22 to go forward. And he settled my case with Kenmark, and they
23 told me that I had no liability. And a year and a half later,
24 they came after me for a payment for $500,000, and my attorney
25 that colluded with Trazini's attorney, told me I had -- you

1 know, the only thing I could do was file for bankruptcy, which
2 I have now found is not an option.  And I believe that the
3 whole reason that I was forced into bankruptcy is void.

4          And I was also illegally converted from Chapter 7 to
5 11, because Judge Beesley took away my counsel, and I was
6 represented and so was my LLC, AT Emerald, which can't appear
7 in front of a court without representation.  And that's when
8 the conversion happened.  And I asked Judge Beesley for a
9 two-week continuance so that I could get counsel, and I was
10 denied.

11          So my -- on the grounds of 60(b), I believe that my
12 constitutional rights were taken away, and the trustee should
13 have never had the right to sell the emerald in the first
14 place.  So on those issues there, that's where I stand.

15          And then I also filed in my brief that the John Beach
16 case that I won on the appeal was dismissed a year later has
17 now been brought back to life without Judge -- an order from
18 Judge Beesley or yourself.  Judge Beesley recused himself, and
19 you just got into the case and are listening to us for the
20 first time, but it was put on the docket again, and it's
21 Docket 77, on 5/29.

22          This case has been reopened after it was already
23 closed and dismissed.  So I don't know how that happened
24 without approval from you, Your Honor, or Judge Beesley.

25          THE COURT:  Okay.  Thank you.  We are here only on

1  the status of scheduling for the motion to sell.  I appreciate
2  your comments on the other matters, but they'll proceed however
3  they proceed.  We are simply trying to figure out what the next
4  step is for the motion to sell at the moment.  So that gives me
5  an overview of the case, but we're going to stick to the motion
6  to sell.

7          So, Mr. Silver, your comments.

8          MR. SILVER:  Thank you, Your Honor.  Wayne Silver,
9  appearing telephonically.

10         Your Honor, I agree with Mr. Hartman.  I think that,
11 to the extent that there's any issues regarding notice, any
12 possibility that there might be somebody out there willing to
13 bid more, it should be explored.  And so I'm not at all adverse
14 to having the sale re-noticed, to giving notice to the world,
15 if you will.  Mr. Thomas can supply any information he wants to
16 regarding any potentially-interested buyer.  And as long as
17 they come in with hard dollars and not, you know, funny money,
18 I'm perfectly aligned with the trustee, because I think we're
19 both looking to accomplish the same goal, which is to maximize
20 the value of the emerald.

21         THE COURT:  That's an interesting point, Mr. Silver.
22         Mr. Hartman, what is -- in reviewing the transcript
23 and the other matters, the concept of an overbid has been out
24 there and there's usually some kind of reference to, you know,
25 hard money or whatever.  What does that mean in this case?

11

1 What do you -- if we set this for another hearing, which is
2 essentially approval of -- your continuation of the hearing to
3 approve the sale subject to overbids, presumably noticing out
4 that anybody who wants to overbid may do so, essentially having
5 another auction at the commencement of the next hearing, what
6 are the requirements for that overbid?

7 MR. HARTMAN: Well, Your Honor, our practice normally
8 is to ask the Court to set whatever the incremental overbid
9 numbers are. But, you know, it's -- usually, on a sale of
10 this, you know, size, it would be increments of 2,500 or
11 $5,000. And --

12 MS. COPPA-KNUDSON: If --

13 MR. HARTMAN: -- the trustee --

14 MS. COPPA-KNUDSON: I'm sorry.

15 MR. HARTMAN: The trustee would like to address the
16 Court --

17 MS. COPPA-KNUDSON: Yeah.

18 MR. HARTMAN: -- Your Honor.

19 MS. COPPA-KNUDSON: I --

20 THE COURT: Go ahead, ma'am.

21 MS. COPPA-KNUDSON: I spoke to the auctioneer this
22 morning, and he indicated that our last high bidder has
23 withdrawn his offer. So we do not even have that offer at --
24 that is my understanding at this moment. So that was what he
25 told me this morning.

 1          So I have no idea -- we can go back to them and see
 2  if that last offer that they made is still viable, but his
 3  indication to me this morning was that that offer has been
 4  withdrawn.

 5          THE COURT:  So the offer from Jennifer Judoin
 6  (phonetic) at twenty-one five hundred or twenty-five --
 7  whatever it was -- has been withdrawn?

 8          MS. COPPA-KNUDSON:  That's my understanding,
 9  Your Honor.

10          MR. HARTMAN:  Your Honor, this is Jeff Hartman, for
11  the record.  I think Mr. Silver can address that, because that
12  claim -- or that purchase position was assigned to Mr. Silver's
13  client.

14          MR. SILVER:  Wayne Silver, telephonically.  That's
15  correct, Your Honor.  The offer was assigned to my client, and
16  to my knowledge, it has not been withdrawn.

17          MS. COPPA-KNUDSON:  It has not?

18          MR. SILVER:  That's -- that -- that's -- as far as I
19  know, it has not been withdrawn.  I haven't spoken to anyone
20  from Stremmel recently.  It's possible that there was a
21  conversation I'm not aware of.  But as far as I know, that
22  offer is still good.

23          MS. COPPA-KNUDSON:  Well, and I would have to verify
24  that because as of this morning, Steve Stremmel thought that
25  offer had been withdrawn.  Maybe he is wrong.

1          MR. SILVER:  Okay.  We can certainly clear --

2          MR. THOMAS:  Your --

3          MR. SILVER:  -- that up quickly, but as far as I
4 know, it's good.

5          MR. THOMAS:  Your Honor, I would like you tc make a
6 ruling on the judicial notice motion that I filed and get a
7 ruling, and then we could start from scratch.  Because I would
8 like to have a ruling on the evidence that was presented before
9 you and the judicial notice that I had asked the Court to take
10 judicial notice of.

11         THE COURT:  Thank you.  Well, what I am hearing is
12 that the trustee is not opposed to seeing if anyone else --
13 well, what I originally thought I heard was that the trustee's
14 not opposed to having another hearing which anyone could
15 overbid the amount of the current offer to Ms. Judoin, who was
16 assigned.  There's some question whether that offer is still
17 outstanding.  That's the first question that has to happen.  If
18 there's no offer, there's no motion to sell and that -- restart
19 again.  How we restart again would be probably the subject from
20 another status conference.

21         If that offer is still valid, I think that it is
22 worthwhile to see where that takes us and reset that as another
23 notice of essentially another auction for anybody wanting to
24 make a bid in the proper increment above the accepted offer on
25 the terms that the trustee, you know, proposes and the Court

14

1 would approve, meaning the increments of any subsequent bids
2 and the money that had to be put up or the means to establish
3 the money to qualify as an appropriate bid.

4 So, Mr. Hartman, the first question is do -- does the
5 trustee want about a week or so to figure out whether or not
6 that bid's out there?

7 MR. HARTMAN: Yes, Your Honor. We would certainly do
8 that.

9 THE COURT: Okay. So what I am looking at is trying
10 to be in Reno on Friday, July 19th. That would be the date --
11 I now have two matters I am presiding over out of Reno. Going
12 to set that aside for both matters. Presently, I don't think
13 the other matter has any heavily substantive things scheduled
14 for that day, so if we need to set aside the afternoon of that
15 day for this hearing, in whatever shape it ultimately comes to,
16 then, you know, I think that's fine.

17 I am not going to rule on the judicial notice motion.
18 I will say, however, that you can take as my operating
19 structure that if a notice goes out with more than 21 days
20 notifying people of a continued evidentiary hearing in which
21 bids certain to subject considerations and requirements will be
22 considered and cause, in effect, another auction, that would
23 strongly lead me to believe that any harm that was caused has
24 been remedied and either is moot or harmless at that point.
25 To the extent that anybody believes that that is

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

15

1  legally incorrect, we'll talk about that on the 19th. So we
2  have plenty of time between now and the 19th, even with --
3  given a week to get -- allow the trustee to figure out the
4  exact lay of the land as to the pending offer. My thought is
5  that that afternoon of the 19th would be an evidentiary
6  hearing. There are a number of people that have provided
7  declarations. Mr. Stremmel actually was examined.

8          My intent is that if we go to another evidentiary
9  hearing, it will be evidentiary. We'll have the auction,
10  wherever that takes us. And then we will have evidence to
11  approve that, and to the extent that it is requested, to allow
12  the Court to address the good-faith nature of any ultimate
13  buyer.

14          That means there will be testimony and then there
15  will be argument. We will not have a running argument
16  throughout the testimony. So we're going to treat this as an
17  evidentiary matter, essentially a trial, and that is how it's
18  going to go.

19          So, Mr. Hartman, we can come back in a week and reset
20  deadlines, if you like, or if you believe that's not necessary
21  and you'll notice it out, then I do want sufficient time for
22  objections and a reply prior to the hearing.

23          MR. HARTMAN: Your Honor, thank you. What I was
24  thinking about is we can verify whether or not the offer is
25  still open. And what I -- one suggestion is that I would

16

1 simply file a notice; it's obviously not separate hearing, it's
2 just the notice that the offer remains pending.  And then I can
3 notice up the hearing appropriately and the rules and the
4 opposition dates in the rules would apply.  So we don't need a
5 briefing scheduled beyond what's in the rules.

6             THE COURT:  Well, that -- and that -- that's fine.  I
7 mean, a lot of ink has been spilled on this matter, and both
8 for and against.

9             First, any notice, however it goes, must include a
10 statement that bids in a certain amount will be considered.  I
11 mean, the notice that goes out setting the hearing needs to
12 also provide the information regarding what has to happen at
13 that hearing to turn it into an action.

14             MR. HARTMAN:  Oh, certainly, Your Honor.

15             THE COURT:  Okay.  So to the extent that you want to
16 get a auction procedures order set prior to that, that
17 certainly makes sense, because I want those locked down
18 quickly.

19             MR. HARTMAN:  Well, then for -- that -- that's sort
20 of a separate process, I guess, and I could prepare a proposed
21 order and then circulate it to Mr. Thomas.  He can either
22 approve it or disapprove it and then submit it to the Court,
23 and it would go out with the notice.

24             THE COURT:  Yes.

25             MR. HARTMAN:  We can do it that way, Your Honor.

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

17

1           THE COURT:  Yeah.  That would be great.

2           MR. THOMAS:  Your Honor, this is one of the single
3   largest emeralds.  And I don't think that in between now and
4   July is enough time to promote this thing around the world to
5   get the most value for it.  They haven't done anything to
6   promote this thing other than stick it on a website and the --
7   and spend $200.

8           THE COURT:  Great.  You can make all of those --
9           MR. THOMAS:  You're talking one of the single --
10          THE COURT:  -- arguments -- sir, you can make all
11  those arguments at the hearing.  You've made a lot of them
12  before.  I've read the transcript.  And we can address that at
13  the hearing.

14          I will say, though, that at the hearing, when it's
15  evidentiary, if someone -- if you have a declaration submitted
16  and that person is not present to be cross-examined, that
17  evidence will not come in.  Okay?  I can't tell what evidence
18  was accepted at the court or not accepted based upon the
19  declarations and how it evolved.  But at the beginning, we will
20  go over who was present and whose declaration should be
21  admitted for direct testimony into evidence.  And if that
22  person is not physically present in the courtroom or has
23  otherwise been allowed to testify by phone in advance, the
24  Court is not going to accept that evidence.

25          MR. THOMAS:  Yes, Your Honor.  And thank you for

1  saying that. The -- Your Honor, the reason that the witnesses
2  weren't presented is because I never thought the sale would go
3  through in the first place, because it was void, because they
4  never notified me or the creditors according to the rules under
5  2002 and 6004. There was not proper notice in the first place,
6  so --

7            THE COURT: Well, that --

8            MR. THOMAS: -- I didn't feel --

9            THE COURT: That is now resolved. All right? You
10 are on notice that all witnesses must be present in the
11 courtroom to provide testimony as a precondition to getting the
12 declaration admitted into evidence as direct testimony to be
13 followed by cross-examination. You are not to assume anything
14 until this Court orders. So we will have whatever is needed
15 during the afternoon of July 19th to consider and submit
16 this -- the sale motion. So one shot, one stop, all matters.

17           MR. THOMAS: Okay. And then -- and what --

18           THE COURT: All right.

19           MR. THOMAS: And, Your Honor -- and at that time will
20 you consider our judicial notice motion? Will you rule on our
21 judicial notice motion?

22           THE COURT: I will consider all matters. I'm likely
23 to not rule on anything prior to.

24           MR. THOMAS: But you will take judicial notice of the
25 facts and laws that we present you.

1          THE COURT:  Sir, I will allow -- I -- I've seen that.
2   I have not gone through it in any great length, but the -- I
3   will hear your position, and then I will decide how to proceed.

4          MR. THOMAS:  Okay.  Thank you.  Thank you,
5   Your Honor.  I appreciate that.

6          THE COURT:  But again, I will urge you to consider
7   getting competent bankruptcy counsel, because we will apply the
8   Rules of Evidence.  And, you know, I am sensitive to hearsay
9   comments and matters beyond the scope.  So we will deal with
10  the motion to sell at that time.

11          MR. THOMAS:  And just so I'm clear on the record,
12  Your Honor, you will take judicial notice of our judicial
13  notice motion.

14          THE COURT:  I will consider all matters involving the
15  motion to sell.  I understand you filed that motion for
16  judicial notice in relationship to the motion to sell, so that
17  will be addressed.  I'm not going to take judicial notice --

18          MR. THOMAS:  Okay.

19          THE COURT:  -- it -- it's on the docket.  So we will
20  hear all matters relating to the motion to sell on July 19th.

21          And, Madam Clerk, I can't recall if you start at one
22  o'clock or 1:30 in the afternoon there.

23          THE CLERK:  Your Honor, we can start whenever you
24  would like.

25          THE COURT:  All right.  I'd like to start at one

1  o'clock.

2          THE CLERK:  Yes, Your Honor.

3          THE COURT:  On Friday, July --

4          MR. THOMAS:  Your Honor, what day is the -- it's the

5  Friday?

6          THE COURT:  Friday, July 19th.

7          MR. THOMAS:  Okay.  Thank you, Your Honor.

8          THE COURT:  Certainly.

9          All right.  So, Mr. Hartman, to bring it back around,

10 do you think -- do you need another hearing prior to getting

11 out the notice or --

12          MR. HARTMAN:  I don't believe so, Your Honor.

13          THE COURT:  Okay.  And you -- then we'll have a

14 motion to set auction procedures.  I imagine that will be

15 submitted on an ex parte basis?

16          MR. HARTMAN:  Well, I mean, I can certainly file a

17 motion, but it seems to me, under the circumstances, just a

18 proposed form of order setting the option procedures should

19 suffice if Mr. Thomas has an opportunity to comment.

20          THE COURT:  Well, yeah, you do need to file at least

21 a perfunctory motion for approval that -- I'm not going to sign

22 just an order that -- that's submitted as a -- I mean, if it's

23 a stipulated motion to approve, generally how I do it is even

24 on a stipulation, there's a stipulation requesting something

25 and then the order approving the stipulated request.

1          I don't know if in Reno you just file the stipulated
2   order, but generally I'll -- I like to see the docket event and
3   then the order tied to that docket event --

4          MR. HARTMAN:  Certainly.  I'll do that --

5          THE COURT:  -- if you could.

6          MR. HARTMAN:  I'll do that, Your Honor.

7          THE COURT:  You know, whether it's ex parte, what it
8   stipulated, I leave to the parties.

9          MR. HARTMAN:  All right.  We'll do it, Your Honor.
10  Thank you.

11         THE COURT:  All right.  And, Madam Trustee, you had a
12  comment.  I just wanted to --

13         MS. COPPA-KNUDSON:  Oh, I just thought that the order
14  that he was going to file was the proposed order, not even a
15  stipulated order, but just kind of the outline of what the
16  order would read, not just for Mr. Thomas's comment if he
17  didn't agree with what the proposed order of the auction would
18  be.

19         THE COURT:  I believe that we can short-circuit a lot
20  of future discussion if there is an order setting the terms of
21  the hearing for auction, bids, deadlines, and such.  Everybody
22  knows, everybody's on the same page, and then that gets sent
23  out to the matrix and whoever else you want to send that order
24  setting it out, and advertising and attempting to get as many
25  bids as possible.

ACCESS TRANSCRIPTS, LLC         1-855-USE-ACCESS (873-2223)

1            MR. HARTMAN: I will do it, Your Honor.

2            THE COURT: All right. Mr. Silver, any last

3 comments?

4            MR. SILVER: No, Your Honor. Wayne Silver.

5            THE COURT: All right. All right, then -- and,

6 Mr. Thomas, final word?

7            MR. THOMAS: No, Your Honor.

8            THE COURT: All right. Thank you, then. And I'll

9 look forward to a proposed order and then seeing the notice go

10 out to the matrix, and let the parties attempt to provide it to

11 whoever they believe may want to bid. That order, though, I do

12 believe, should have very clearly in there when any opposition

13 to the proposed sale is due. While -- you don't have to repeat

14 what has been out there.

15            And, Mr. Thomas, to the extent that you have filed

16 your oppositions, you don't have to renew any of that. If

17 there's something that comes up between now and the hearing

18 which you believe is legally erroneous that has not been

19 addressed, then we can deal with that.

20            And, Mr. Hartman, going forward, you know, this is a

21 contested matter. There have been some discussion and forms

22 put on the last hearing, but I'm considering, if all this goes

23 out, we don't receive anything, we will go to the hearing on

24 the existing offer based upon the declarations that are -- have

25 been filed. And then we'll see who shows up. We'll deal with

23

1 those declarations.

2         Are you anticipating that any additional evidence
3 should be taken -- would be taken -- would need to be in the
4 form of a declaration prior?

5         MR. HARTMAN:  On behalf of the trustee, Your Honor,
6 no.

7         THE COURT:  Okay.  But do you believe if a witness
8 shows up and is present and submitted for providing testimony
9 at that, does that witness get to testify or not?

10         MR. HARTMAN:  I would say yes.

11         THE COURT:  Okay.  All right.  So any witnesses in
12 support or opposition may be brought.  Those that have
13 submitted a declaration need to be present if they want to
14 testify or have their declaration accepted as evidence.

15         MR. HARTMAN:  May I ask for --

16         THE COURT:  So you under --

17         MR. HARTMAN:  -- clarification?

18         THE COURT:  Go -- certainly.

19         MR. HARTMAN:  So I -- my question is, would
20 Mr. Thomas have the opportunity to bring in a new declaration
21 from a new witness at this juncture.

22         THE COURT:  Well, that's why I was asking if
23 additional witnesses would be able to appear.  Because if you
24 say -- if they show up and appear, then yes, he would.

25         MR. HARTMAN:  Well, I -- I'm sorry.  I misunderstood.

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

24

1  I thought you meant from the declarations that he submitted in
2  advance of the last hearing.

3        THE COURT:  Well, those people are known and at least
4  have provided declarations.  So the question I'm getting
5  about -- to in an oblique manner is do you need an additional
6  deadline for further declarations in support or opposition of
7  the motion to sell?

8        MR. HARTMAN:  Well, I guess, yes.  I don't expect to
9  provide any new declarations, but if Mr. Thomas attempts to do
10 so, I need advance notice.

11        THE COURT:  Okay.  Mr. Thomas, are you going to --

12        MR. THOMAS:  Yes, Your Honor.

13        THE COURT:  -- call any additional witnesses?

14        MR. THOMAS:  Yes.  I would like to be able to call
15 whatever witnesses I need necessary to prove my case.

16        THE COURT:  Well, in theory, those witnesses should
17 have been provided and detailed in the prior hearing.

18        MR. THOMAS:  I didn't believe that the prior hearing
19 was going to go forward, Your Honor, because I thought it was
20 void on its face.

21        THE COURT:  Well, that --

22        MR. THOMAS:  It should have never --

23        THE COURT:  That was a mistake.  Yeah.  I mean,
24 that -- that's why I urged you --

25        MR. THOMAS:  So --

1           THE COURT:   -- to think about getting counsel,
2  because that understanding is a mistake, and I'm trying to make
3  sure we have no similar misunderstandings going forward.

4           MR. THOMAS:   Your Honor, I have asked this Court, and
5  I've filed documents with this Court -- I have a disability.
6  I'm dyslexic.  And I've asked this Court to provide me with
7  counsel since it's taken my counsel away.  And I've filed law
8  based on that in other cases that people with disabilities were
9  provided with counsel.  And so I'm at a disadvantage, because I
10 do have a disability.

11          Mr. Hartman and Mr. Silver both know it.  The --
12 Judge Beesley knew it.  And, you know, I'm doing the best I can
13 to make sure that, you know, I preserve my constitutional
14 rights.  And, you know, I would like this Court to provide me
15 with counsel.

16          THE COURT:   Well, I'm sure a lot of people would like
17 the Court to provide them with counsel.  The Court has no
18 ability to provide counsel; we are not a criminal court.

19          MR. THOMAS:   I know.  But there are cases that say
20 that people with disabilities like dyslexia are provided with
21 counsel.  And I submitted those cases in a judicial notice
22 motion that I filed with the Court on the house, and that's why
23 I wanted you to take judicial notice and make a ruling also on
24 the Portola house that was illegally taken from my parents.
25          THE COURT:   If you want to make a motion to have the

1 Court appoint a counsel for you, you should make a specific
2 motion, not one for judicial notice. You need to make a motion
3 for Court to appoint counsel and get it filed.

4              MR. THOMAS: Okay. I will get -- I would like to --

5              THE COURT: We are all --

6              MR. THOMAS: -- have the time to -- Your Honor, I
7 would like to have the time to make that motion and to get that
8 filed. So can you --

9              THE COURT: Well, let me --

10             MR. THOMAS: -- please give me more time?

11             THE COURT: -- be clear. Let me be clear. I am
12 giving all the parties until July 19th to get -- to rehear
13 this. This gives you well over a month. This matter has been
14 going on since last November or December, right? So there is
15 plenty of time out there. And do what you have to, bring
16 whatever you want, but it -- all I'm trying to find out -- you
17 have additional witnesses that you want to bring to the hearing
18 to testify on July 19th. You want to bring whoever you may,
19 that's fine and dandy. But at some point you have to tell
20 people who those witnesses are so they can prepare, right?

21             MR. THOMAS: Yes.

22             THE COURT: And if you're going to do that, then the
23 form that has been adopted here which you are able to comply
24 with was to provide declarations. So --

25             MR. THOMAS: Yes, Your Honor. But I didn't fully get

 1  to take the -- take -- cross-examine the witnesses to make
 2  sure -- to know which witnesses I wanted to bring forward.
 3  There's experts like Ronald Ringsrud, who, you know, did the
 4  original appraisals, you know, who I would like to bring
 5  forward as a witness -- as one, but there's many other
 6  witnesses that I'd like to bring forward too.

 7          THE COURT:  Okay.

 8          MR. THOMAS:  So I'd like to have the time to do that,
 9  because I have to send subpoenas.  And, you know, July 19th is
10  not much time, Your Honor.  I -- I'm --

11          THE COURT:  Well, and it -- it's the time you have --

12          MR. HARTMAN:  Your --

13          THE COURT:  -- unfortunately.

14          MR. HARTMAN:  Your Honor.

15          THE COURT:  Mr. Hartman.

16          MR. HARTMAN:  Your Honor, there's an order, and I
17  don't remember where in the docket it is, that gave Mr. Thomas
18  adequate time to issue subpoenas, to get all the documents he
19  wanted.  That time came and went.  That door is closed, as far
20  as I'm concerned.  This is going to drag on beyond July 19th
21  now because Mr. Thomas will say, I haven't had an opportunity
22  to get court-appointed counsel.  And I'm just afraid it's going
23  to go on and on and on.  This is an --

24          MR. THOMAS:  I will file --

25          MR. HARTMAN:  This is an administratively insolvent

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

28

1 estate.  And we have a $20,000 emerald we're trying to
2 liquidate, and it just gets worse and worse and worse.
3          The case was filed in 2014.  Mr. Thomas has had five
4 years to come up with a buyer for this emerald, and he hasn't
5 done it.
6          THE COURT:  All right.
7          MR. THOMAS:  I have -- I haven't had five years,
8 Your Honor.  The trustee took the emerald over in the illegal
9 conversion when they converted me in two thousand -- I can't --
10 I don't know the docket date, but I think it was in 2014.  I'm
11 not --
12          THE COURT:  All right.
13          MR. THOMAS:  -- sure on that, but the illegal
14 conversion where they took my attorney away and converted me
15 from Chapter 7 to 11.
16          THE COURT:  Again, beyond --
17          MR. THOMAS:  Or Chapter 11 to 7.
18          THE COURT:  -- the scope of the hearing -- again, let
19 me just say that's beyond the scope of the hearing on setting
20 the motion to sell.  So we're going to have the motion to
21 sell -- the hearing on July 19th at one o'clock.  The question
22 is whether we do prior to that --
23          Mr. Hartman, if you're in -- if you're wanting to
24 know who the witnesses are, I mean, that -- that's -- what are
25 you wanting out of that?  Are you wanting additional

1 declarations? Are you wanting final witness list?

2 MR. HARTMAN: No. No.

3 THE COURT: What exactly are you wanting?

4 MR. HARTMAN: No, Your Honor. I'm sorry if I wasn't

5 clear. The -- there were certain witnesses that should have

6 been at the hearing for Mr. Thomas, and the -- one wasn't, and

7 that's why Judge Beesley said, of course, if the witness who

8 signed the declaration isn't present to be cross-examined, you

9 can't introduce the declaration.

10 So I just want to make sure that there's not going to

11 be a new person or persons for this next hearing that we have

12 to anticipate, determine whether or not we need to conduct a

13 Rule 2004 exam, and so forth. So it's a new prospective

14 witness for Mr. Thomas that I'm addressing, not one of the

15 existing witnesses.

16 MR. THOMAS: Your Honor, there was other witnesses

17 that --

18 THE COURT: No. But, Mr. --

19 MR. THOMAS: The --

20 THE COURT: Mr. Thomas, hold on for a second. Let me

21 ask some questions.

22 So to understand, Mr. Hartman, it's not your position

23 that while Mr. Mullow (phonetic) wasn't at the first hearing,

24 if he shows up at the second hearing, is it your position that

25 he does or does not get to testify?

1          MR. HARTMAN:  I would say let him testify.

2          THE COURT:  Okay.  So we're in agreement, then.

3          Any of the witnesses that actually show up may

4 testify for the declarations that were already provided, so

5 that should be most of the witnesses

6          Now, for the new witnesses, you don't want anybody --

7 you don't want to give an opportunity to provide any additional

8 testimony or witnesses.  Is that your point?

9          MR. HARTMAN:  That's correct.

10          THE COURT:  All right.  And --

11          MR. THOMAS:  I object to that, Your Honor.

12          THE COURT:  -- Mr. Thomas?

13          MR. THOMAS:  I object to that on the basis that

14 Mr. Silver has already cross-examined Ronald Ringsrud, and they

15 didn't want to let in any of that evidence of Ronald Ringsrud's

16 testimony, as he's an expert.  And he's already taken his

17 deposition in the Kenmark case, and all that evidence should

18 come in.  And if Mr. Ringsrud wants to testify, he should be

19 able to testify.

20          And there's also other documents that I would like to

21 bring in.  Ken Trazini filed a (indiscernible) in Florida

22 claiming that the emerald was worth $500 million.  And that

23 evidence has not been submitted to this case.  And I don't want

24 to be precluded from putting in evidence that should be allowed

25 into this hearing.

1        THE COURT:  All right.  So here's what we're going to
2  do, then.  We are going to require the parties to exchange
3  exhibits and file a final exhibit list by July 8th, also file a
4  final witness list by July 8th.  I will require all witnesses
5  to appear in person for testimony.

6        MR. THOMAS:  Your Honor, could I ask one request?
7        THE COURT:  Sure.

8        MR. THOMAS:  You are -- not knowing the circumstances
9  of what's going on, there's a -- I'm -- also filed my case in
10  the Oakland court, as you know, where these -- Mr. Hartman and
11  Mr. Silver and the judge are all defendants in this case.  And
12  there's ongoing hearings in the other case too, which are on
13  the 28th.

14        And for somebody with a disability taking on all the
15  replies that I have to do, that's a very short time.  And I'm
16  asking that -- if you could push it out at least one more
17  month.  Give me until August 19th instead of until the -- July
18  19th, because I have a lot of documents that I still need to
19  get filed in the court for the Oakland hearing, a tremendous
20  amount of documents, reply briefs for Mr. Hartman trying to get
21  out of the case, saying that he has immunity.  You know, I have
22  to file another amended complaint in that case, because we only
23  did a placeholder filing for our original lawsuit, so it has to
24  be amended.

25        And then there's the judicial notice motion that

32

1 needs to be filed in that case. And then all that has to be
2 ruled on and all that has to be done before June 28th, which is
3 going to consume all of my time in between now and June 28th.

4 MR. SILVER: Your Honor, this is Wayne Silver,
5 telephonically. And I'd like to make a comment about what
6 Mr. Thomas just said.

7 Your Honor, I'm a named defendant in that lawsuit.
8 It is pending in the District Court, Northern District of
9 California in Oakland. And as a matter of fact, Your Honor,
10 the judge in that hearing entered an order specifically stating
11 that nothing further was to be filed between now and the
12 hearing.

13 Mr. Thomas has totally misrepresented what is
14 happening in that case. And I will be happy to provide a copy
15 of that order to this Court.

16 MR. THOMAS: He did not say that I could not file a
17 judicial notice motion in that order, Mr. Silver. He did not.

18 THE COURT: Okay. Thank you.

19 MR. THOMAS: And I need to file it --

20 THE COURT: Thank you. Thank you, Mr. Thomas. I'd
21 like to hear from Mr. Hartman.

22 So the suggestion has been made to continue it to the
23 August calendar. Mr. Hartman, your response.

24 MR. HARTMAN: Well, Your Honor, I -- I'm reluctant to
25 do that, because sometime in August there will be another

ACCESS TRANSCRIPTS, LLC ⵣ 1-855-USE-ACCESS (873-2223)

1 reason for Mr. Thomas to ask that this be kicked down the road.

2        And although I hate to burden the Court with another

3 piece of information, Mr. Thomas also has a petition for

4 certiorari pending with the United States Supreme Court

5 regarding the matter he referred to in Santa Clara County. And

6 so that is out there as well. And he believes that -- I

7 think -- that if the Supreme Court were to grant cert, then a

8 year or two from now the court -- the Supreme Court might say

9 that the judgment obtained in Santa Clara County was

10 fraudulently obtained, and this whole chapter -- bankruptcy

11 case could go away.

12        I don't see it, and I don't know that we can hold up

13 the process in the trustee's obligations to allow all these

14 things to unfold according to Mr. Thomas's time frame.

15        MR. THOMAS: Your Honor, the case in Santa Clara, I

16 believe, will be turned over because the fraud that was

17 procured in Santa Clara. My attorney was told through the

18 State Bar the day before that he was not allowed to try the

19 case, and they settled it the next day --

20        THE COURT: You may well have --

21        MR. THOMAS: -- on the record --

22        THE COURT: -- an action against your attorney,

23 Mr. Thomas, but you are in bankruptcy. The bankruptcy has been

24 around for quite a period of time. I believe it was filed in

25 2014. The motion to sell has been on the docket since

1  November, I believe.  It's gone through several hearings,
2  including an evidentiary hearing, so it is getting a second
3  bite at the apple.

4         Again, much of this is for naught if there is no
5  actual offer on the table.  We need to know whether there's an
6  actual offer on the table.  That's the very first thing we must
7  know.  So I appreciate that.  I am sympathetic.  But this
8  matter is prepared.  There is actually nothing that should
9  happen that is new, unless and until somebody comes in to bid
10 higher.

11        So this matter is ready to be heard.  It needs to be
12 heard.  I am sympathetic to your situation, but honestly, there
13 really isn't a whole lot that should need to be done.  And so
14 the court's going to keep it on for July 19th.  It gives you 40
15 days or more to prepare.

16        I understand that you may have additional matters
17 going on, but everybody has additional matters going on.  So
18 the time has come to get this resolved.  We will get it
19 resolved.  And we'll --

20             MR. THOMAS:  Your Honor, could you respectfully --
21             THE COURT:  -- just see what we can --
22             MR. THOMAS:  Could you respectfully give me until
23 August?
24             THE COURT:  No.  July 19th.
25             MR. HARTMAN:  Your Honor, may I make a suggestion?

1        THE COURT:  Yes, Mr. Hartman.

2        MR. HARTMAN:  As you know, there are extensive briefs
3  on file with respect to the motion.  And it -- I don't want to
4  have the Court have to be burdened with additional motions that
5  repeat everything.  So if -- unless somebody has something new
6  to inject into the process, I would suggest that each party's
7  papers refer to every docket entry that they would like to have
8  the Court consider, so that nothing's repeated.

9        THE COURT:  Well, I appreciate that.  I agree.  But
10 really, again, there should be no additional -- we've had
11 briefing.  We've had --

12       MR. HARTMAN:  I under --

13       THE COURT:  -- an opposition.  You've opposed
14 actually that opposition as untimely.  That matter was argued.
15 So there's really nothing on the legal side to do.

16       What we really need to do is see if anybody else is
17 willing to pay more than what the current bid was.  As --
18 Judge Beesley referred to it as the stalking-horse; that's
19 exactly what it is.  And unless and until something happens,
20 there really shouldn't be anything other -- you know, to do in
21 preparation other than to bring the people that are going to
22 testify to the hearing.

23       And what I will do was -- is require a final witness
24 list and exhibits by July 8th, and that's all.  I'm not going
25 to require declarations; people show up.  This is a contested

36

1  matter.  It is just a contested matter.  It is not a trial.

2            So we will exchange exhibits so you know the

3  exhibits.  You'll get a list of people that are going to

4  appear.  And if they're on the list, they better appear.  All

5  right?  I don't want you -- I don't want people putting every

6  possible person in the world that might appear.  You better

7  have a good faith basis for putting them on there, and I better

8  see them in the courtroom on July 19th at one o'clock.

9            MR. HARTMAN:  So again, to be clear, there's really

10  no further briefing on legal issues, there's just the fact

11  issues and the witnesses.

12            THE COURT:  Not unless something happens.

13            MR. HARTMAN:  Right.  Okay.

14            THE COURT:  All right.  And I don't discount that

15  something could happen.  But, you know, you better have

16  something new to say if you file it.

17            So if Mr. Thomas wants to make a motion for the Court

18  to appoint counsel for reasons, that's new.  Okay.  Let --

19  let's put that on the record, and we will deal with that.  But

20  enough has been said on this, right?

21            And I -- that's why I led with -- I understand

22  there's a challenge to notice.  I understand there's a

23  challenge to the actual sale itself and that it's not

24  generating enough money.  And then there's a challenge as to

25  the expenses to be paid to the auctioneer.  Those are the

1  matters that have been raised.  Those are the matters that are
2  going forward.  Ostensibly, the good faith of the purchaser is
3  at issue, and I'll expect testimony on that.  But those are the
4  matters there.

5       So there's not anything that I'm aware of that needs
6  further briefing, unless something should happen.

7            MR. HARTMAN:  Very well, Your Honor.

8            MR. THOMAS:  And there was one more matter,
9  Your Honor, which was that they didn't use the proper process
10 for picking an auctioneer that was qualified to get the most
11 money for it, to -- you know, we had Overstock.com that was
12 going to do a worldwide tour of the emerald, and had mentioned
13 that they thought that they could get over 200 million for it,
14 you know, and they -- they've got 20,000 for it.

15           THE COURT:  Well, that, I take, Mr. Thomas, as
16 falling into, you know, just another variation of they didn't
17 get enough money for it.

18           MR. THOMAS:  Well, but -- because it wasn't promoted.
19 Nobody knew about it.  The only people that knew about it was
20 Silver and Trazini.  They were the only people notified about
21 the sale.

22           THE COURT:  And that's what I'm telling you,
23 Mr. Thomas.  Now you get to notify people that there'll be a
24 new sale at -- on July 19th, 2019, at one o'clock, if they meet
25 those requirements.  And if this is worth however millions that

1 it is worth, then there should be plenty of people willing to

2 pay more than 20- or \$25,000. That will be the proof in the

3 pudding.

4         MR. THOMAS: Your Honor, though, the --

5         THE COURT: And with that --

6         MR. THOMAS: It --

7         THE COURT: -- I think that --

8         MR. THOMAS: I won't get -- Your Honor, I'd like to

9 object on the basis that I have no right to -- since you have

10 it in the trustee's hands, to promote it. You know, it's the

11 trustee's job to promote it and get the money for it; it's not

12 mine. It's their job to promote it around the world and get

13 the best auctioneer.

14         THE COURT: Okay.

15         MR. THOMAS: And that's not happening, and that's

16 what I'm objecting on. We had an auctioneer --

17         THE COURT: That --

18         MR. THOMAS: -- that was willing to do all that for

19 us.

20         THE COURT: Okay. So, Mr. Hartman, you'll prepare

21 the order on the terms and conditions of the auction in

22 anticipation of the notice. Court will prepare its own very

23 short order on the scheduling of this, including the deadline

24 to file exhibit lists and witness lists by July 8th and

25 exchange and mark exhibits for presentation by July 8th as

1  well.

2         The exhibits that were admitted into evidence
3  previously will be deemed -- will continue over as evidence in
4  the continued hearing. All right.

5         Thank you very much. You've given me much to think
6  about. I look forward to moving this along promptly. But that
7  will end the hearing for today. And we'll be adjourned.
8  Parties on the phone can hang up.

9              MR. THOMAS: Thank you, Your Honor.

10             MR. SILVER: Thank you.

11             MR. HARTMAN: Thank you, Your Honor.

12             THE COURT: Thank you.

13             MR. SILVER: Thank you, Your Honor.

14             THE COURT: Madam Clerk, I'll go ahead and hang up as
15  well.

16        (Proceedings concluded at 2:59 p.m.)

17                          * * * * *

18

19

20

21

22

23

24

25

ACCESS TRANSCRIPTS, LLC      1-855-USE-ACCESS (873-2223)

40

# C E R T I F I C A T I O N

1

2

3          I, Lisa Luciano, court-approved transcriber, hereby

4  certify that the foregoing is a correct transcript from the

5  official electronic sound recording of the proceedings in the

6  above-entitled matter, and to the best of my ability.

7

8

9  _____

10 LISA LUCIANO, AAERT NO. 327     DATE:   July 3, 2019

11 ACCESS TRANSCRIPTS, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# CERTIFICATE OF SERVICE

I certify that I am an adult, over the age of 18 years, not a party to the action herein who resides in Washoe County, Nevada. I caused to be served the foregoing documents via e-mail and U.S. Mail to the following persons as listed below from my e-mail address of kayla.ca.nv@nvmail.com as follows:

JEFFREY A. COGAN
jeffrey@jeffreycogan.com, beautausinga@gmail.com, beau@jeffreycogan.com

JERI COPPA-KNUDSON VIA U.S. MAIL: 3495 LAKESIDE DR PMB #62 RENO, NV 89509
renobktrustee@gmail.com, jcoppaknudson@ecf.epiqsystems.com

KEVIN A. DARBY
kad@darbylawpractice.com, tricia@darbylawpractice.com, jill@darbylawpractice.com, hershi@darbylawpractice.com, sam@darbylawpractice.com

JEFFREY L. HARTMAN VIA U.S. MAIL: 510 WEST PLUMB LANE, STE B RENO, NV 89509
notices@bankruptcyreno.com, sji@bankruptcyreno.com

TIMOTHY A. LUCAS
ecflukast@hollandhart.com

LAURY MILES MACAULEY
laury@macauleylawgroup.com

WILLIAM MCGRANE
ECF-8116edf28c97@ecf.pacerpro.com, mitch.chyette@mcgranellp.com

STEPHANIE T. SHARP
ssharp@rssblaw.com, cobrien@rssblaw.com

WAYNE A. SILVER
w_silver@sbcglobal.net, ws@waynesilverlaw.com

ALAN R. SMITH
mail@asmithlaw.com

STEVEN C. SMITH
ssmith@smith-lc.com, mbrand@smith-lc.com

AMY N. TIRRE
amy@amytirrelaw.com, admin@amytirrelaw.com

U.S. TRUSTEE - RN - 7,7
USTPRegion17.RE.ECF@usdoj.gov

JOSEPH G. WENT
jgwent@hollandhart.com, vllarsen@hollandhart.com

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 7-19-2019

/S/ Katherine Thomas
KATHERINE THOMAS