R E C E I V E D
Susan M. Spraul, Clerk
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

AUG 1 2 2019

FILED_____
DOCKETED_____
          DATE     INITIAL

1  Anthony G. Thomas
    7725 Peavine Peak Court
2  Reno, NV 89523
    Tel:   (408) 640-2795
3  E-mail: atemerald2@gmail.com

4  Debtor In Propria Persona

5               **UNITED STATES BANKRUPTCY COURT**

6                 **DISTRICT OF NEVADA - RENO**

| | |
|---|---|
| 7  IN RE: | ) Case No.    BK-N-14-50333-BTB |
| | ) Case No.    BK-N-14-50331-BTB |
| 8  ANTHONY THOMAS and | ) (Jointly Administered) |
| | ) |
| 9  WENDI THOMAS | ) CHAPTER  7 |
| | ) |
| 10  AT EMERALD, LLC | ) BAP No.:   NV-19-1184 |
| | ) BK Ct. Appeal Reference #: 19-27 |
| 11          Debtors. | ) |
| | ) CORRECTED NOTICES OF APPEAL FROM |
| 12 | ) ORDERS VOID ON THEIR FACE IN VIOLATION |
| | ) OF FUNDAMENTAL U.S. CONSTITUTIONAL |
| 13 | ) DUE PROCESS RIGHTS - REPEATED |
| | ) VIOLATIONS OF LOCAL RULE 9021; REQUEST |
| 14 | ) FOR EMERGENCY EX PARTE STAY OF |
| | ) PROCEEDINGS TO PREVENT SALE OF |
| 15 | ) THOMAS EMERALD ON 7-19-2019 |
| 16 | ) |

17       **PLEASE TAKE NOTE** that Debtor Anthony G. Thomas hereby appeals from:

18  1.    Judge Spraker's Sales Procedures Order - ECF/DE 510 filed on 7-12-2019 that
          is void on its' face due to failure to comply with Reno BK Court Local Rule 9021.
19        A copy of the Order that is Void on its' face is attached hereto as Exhibit A.

20  2.    Judge Spraker's Order re: Pending Motion and Debtor's Request for Stay of
          Proceedings filed as DE 512 on 7-12-2019, attached hereto as Exhibit B.
21

22  3.    Judge Spraker's Ruling from the Bench of 6-4-2019 wherein he refuses to rule
          on Debtor's Motion for Judicial Notice of Law and Facts in Opposition to the
23        Trustee's Motion to sell the Thomas Emerald without compliance with the U.S.
          Bankruptcy Code and Rules governing Notices required to be given prior to any
24        proposed use or sale of Estate property pursuant to BK Code Section 363(b) and
          Rules 6004 and 2002.  The Judge's refusal to rule on Debtor's Motion for
25        Judicial Notice is evidenced by the 40 page transcript of the hearing filed as
          ECF/Docket Entry 500 filed on 7-3-2019 that is incorporated herein by reference
26        and attached hereto as Exhibit C.

27  4.    Debtor needs a stay of proceedings in light of his Motion for Judicial Notice (DE
          508 filed on 7-8-2019) in Support of his Rule 60(b)(4) Motion to Vacate (DE 509
28        filed on 7-8-2019) Judge Beesley's Void 8-22-2014 Conversion Order that is to
          be heard before Judge Spraker on 9-13-2019.  If the underlying Conversion

**DEBTOR ANTHONY G. THOMAS'S CORRECTED NOTICES OF APPEAL**

1        Order is Void, then so is the 7-19-2019 attempted sale of the Thomas Emerald.

2   5.   Debtor further requests an Emergency Ex Parte stay of proceedings from this
         Court in light of the likelihood that Judge Spraker will deny his request for a stay
3        that Debtor will nonetheless file in the BK Court prior to the 7-19-2019 sale date
         and in light of Judge Spraker's refusal to take Judicial Notice that the purported
4        sale of the Thomas Emerald is Void on its' face.  Irreparable harm will occur to
         Debtor if the illegal sale proceeds in violation of the rule of law.  The current
5        highest bidder is Debtor Anthony Thomas who outbid the previous highest bidder
         who turned out to be Ken Tersini, the principal of Kenmark Ventures LLC and
6        none other than the notorious human trafficker[1] and enslaver and exploiter of
         foreign labor Ken Tersini, and the one that procured the fraudulent judgment with
7        the collusion of the Debtor's disbarred attorney Michael Morrissey in the
         underlying Judgment of the Santa Clara Superior Court that is the issue that
8        forced Debtor into Bankruptcy Court in the first place.  Debtor also needs a stay
         so he can file his Motion to Vacate the $5 million Santa Clara County Superior
9        Court Judgment that was procured by Fraud Upon the Court.

10  6.   The parties to the orders appealed from and the names and addresses of their
         respective attorneys are as follows:
11
         JERI COPPA-KNUDSON
12       United States Bankrptcy Trustee
         3495 Lakeside PMB 62 Dr.
13       Reno,        NV    89509

14       JEFFREY L. HARTMAN, Esq.
         LAW OFFICES OF HARTMAN & HARTMAN
15       510 W. Plumb Lane Suite B
         Reno,        NV 89509
16

17  Dated: August 7th 2019.                    _____
                                               Anthony G. Thomas
18                                             Debtor In Propria Persona

19

20

21

22

23

24

25

26

27

28
    _____
    [1]   as evidenced by his despicable conduct in the Slavery Towers affair in San Jose

DEBTOR ANTHONY G. THOMAS'S CORRECTED NOTICES OF APPEAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit A

# Exhibit A

DEBTOR ANTHONY G. THOMAS NOTICES OF APPEAL

Case 14-50333-gs    Doc 544    Entered 08/16/19 13:38:20    Page 4 of 53
Case 14-50333-gs    Doc 520    Entered 07/19/19 11:57:00    Page 4 of 52
Case 14-50333-gs    Doc 510    Entered 07/12/19 16:57:54    Page 1 of 2



_____
Honorable Gary Spraker
United States Bankruptcy Judge

Entered on Docket
July 12, 2019

## UNITED STATES BANKRUPTCY COURT

### DISTRICT OF NEVADA

\* \* \* \* \* \*

| In re: | ) | Case No. BK-14-50333-gs |
|---|---|---|
| | ) | Case No. BK-14-50331-gs |
| ANTHONY THOMAS and | ) | |
| | ) | (Jointly Administered) |
| WENDI THOMAS, | ) | |
| | ) | Chapter 7 |
| AT EMERALD, LLC, | ) | |
| | ) | Hearing Date: July 19, 2019 |
| Debtors. | ) | Hearing Time: 1:00 p.m. |
| | ) | |

### SALE PROCEDURES ORDER

On June 4, 2019, the court conducted a status and scheduling conference regarding the chapter 7 trustee's efforts to sell the "Thomas Emerald," consisting of a 21,000 carat emerald. As a result of that hearing, the court scheduled a final evidentiary hearing on the trustee's Motion for Order Confirming Sale by Auction; Request for Approval of Payment of Commission to Stremmel Auctions (ECF No. 430) on **July 19, 2019 at 1:00 p.m.** in the Clifton Young Federal Building, 300 Booth Street, Bankruptcy Courtroom, Fifth Floor, Reno, Nevada. The court also requested that trustee's counsel draft an order setting out the procedures for the sale should qualified, competing bids be received. On July 9, 2019, counsel for the trustee lodged a proposed Sales Procedure Order, to which Anthony Thomas objected. Mr. Thomas's objections were included with the proposed order. By a separate Order (1) Regarding Pending Motions and Debtor's Request for Stay of Proceedings, and (2) Overruling Debtor's Objections to the Trustee's Bid Procedures Order, the court has considered and overruled Mr. Thomas's objections to the proposed order for the reasons stated, and incorporated herein. Nonetheless, the court enters its own order to note the procedural history of this order, but will incorporate

Case 14-50333-gs    Doc 544    Entered 08/16/19 13:38:20    Page 5 of 53
Case 14-50333-gs    Doc 520    Entered 07/19/19 11:57:00    Page 5 of 52
Case 14-50333-gs    Doc 510    Entered 07/12/19 16:57:54    Page 2 of 2

1   the substance of the proposed order.  Therefore, to participate in the auction of the Thomas

2   Emerald,

3          IT IS ORDERED THAT any interested purchaser must provide evidence of ability to

4   bid cash or cash equivalent at the hearing.  The opening bid for the Thomas Emerald is

5   $21,500.  Incremental overbidding will be at $2,500 per bid.  A Buyer's premium of 10% over

6   the successful bid price will be charged.

7          IT IS SO ORDERED.

8   * * * *

9   Copies sent to all parties via CM/ECF ELECTRONIC NOTICE and via U.S. Mail to:

10  ANTHONY THOMAS
    7725 PEAVINE PEAK COURT
11  RENO, NV 89523                          ###

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit B

# Exhibit B

DEBTOR ANTHONY G. THOMAS NOTICES OF APPEAL

Case 14-50333-gs    Doc 544    Entered 08/16/19 13:38:20    Page 7 of 53
Case 14-50333-gs    Doc 520    Entered 07/19/19 11:57:00    Page 7 of 52
Case 14-50333-gs    Doc 512    Entered 07/12/19 17:04:21    Page 1 of 4



_____
Honorable Gary Spraker
United States Bankruptcy Judge

Entered on Docket
July 12, 2019

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

* * * * * *

In re:

ANTHONY THOMAS and

WENDI THOMAS,

AT EMERALD, LLC,

                  Debtors.

)
)
)
)
)
)
)
)
)
)
)
)

Case No. BK-14-50333-gs
Case No. BK-14-50331-gs

(Jointly Administered)

Chapter 7

## ORDER (1) REGARDING PENDING MOTIONS AND DEBTOR'S REQUEST FOR STAY OF PROCEEDINGS, AND (2) OVERRULING DEBTOR'S OBJECTIONS TO THE TRUSTEE'S BID PROCEDURES ORDER

On June 4, 2019, the court held a status conference regarding the chapter 7 trustee's (Trustee) motion to sell certain personal property of the debtors, namely the emerald referred to as the Thomas Emerald (ECF No. 430) (Sale Motion). For the reasons stated on the record at that hearing, the court scheduled a final evidentiary hearing regarding the Sale Motion for July 19, 2019 at 1:00 p.m. The court also requested that counsel for the chapter 7 trustee prepare an order establishing the bid procedures applicable for the auction.

On July 8, 2019, debtor Anthony Thomas (Thomas) filed two motions, among other documents. The first is his Notice of Motion and Motion for Judicial Notice of Law & Facts ISO Rule 60(b)(4) Motion to Vacate Void 8-22-2014 Conversion Order (ECF No. 508) (Judicial Notice Motion). The hearing on the Judicial Notice Motion was set at Mr. Thomas's request for September 13, 2019. The second motion recently filed by Mr. Thomas is captioned, Notice of Rule 60(b)(4) Motion & Motion to Vacate Order Void on Its Face in Violation of U.S. Constitutional Due Process Rights; Request for Stay (ECF No. 509) (Rule 60(b) Motion,

Case 14-50333-gs   Doc 544   Entered 08/16/19 13:38:20   Page 8 of 53
Case 14-50333-gs   Doc 520   Entered 07/19/19 11:57:00   Page 8 of 52
Case 14-50333-gs   Doc 512   Entered 07/12/19 17:04:21   Page 2 of 4

1   and together with the Judicial Notice Motion, the Motions).  Mr. Thomas has requested that

2   this motion be set to be heard in October.

3            On July 11, 2019, the trustee lodged his Proposed Sale Procedures Order.  The lodged

4   order actually references an attachment which is the proposed order indicating that Mr. Thomas

5   has disapproved the form of the order, and including a statement of objection.[1]  Mr. Thomas

6   contends that the proposed order is late, is void because trustee's counsel failed to submit the

7   proposed order to him prior to filing it and serving it on the creditor matrix.  He further argues

8   that as a result, the court's prior order dated June 21, 2019 is also void.  The court did not enter

9   an order on June 21, 2019.  The trustee filed his Notice of Continued Hearing on Motion for

10  Order Confirming Sale by Auction; Request for Approval of Payment of Commission to

11  Stremmel Auctions (ECF No. 498).  The court finds no merit in Mr. Thomas's objection to the

12  proposed order.  As the lodged order includes an objection to the form of the order, Mr.

13  Thomas has received notice of the proposed order.  Because no other party other than Kenmark

14  Ventures, LLC appeared at the status hearing, and no other party has objected to the relief

15  sought, no additional notice or signatures were required.  Moreover, Mr. Thomas does not have

16  standing to object on behalf of other parties such as Kenmark Venture.  In accordance with

17  Local Rule 9021 governing entry of orders, the court overrules Mr. Thomas's objections and

18  shall enter the proposed order lodged by trustee's counsel.

19           The court has briefly reviewed the Motions.  The request for judicial notice asks the

20  court to consider its prior actions and matters that occurred during the August 22, 2014 hearing.

21  Mr. Thomas has attached a transcript of that hearing.  The court has reviewed the Judicial

22  Notice Motion and notes that the facts referenced therein do not appear to be in dispute, or are

23  otherwise inappropriate for judicial notice.  Accordingly, the court will not require a separate

24

25

26

27

28

---

[1] Mr. Thomas also included the court's law clerk in an email regarding the objection to the proposed order.  The debtors are instructed to not do so in the future.  Rather, the process for disapproving the form of an order is set forth in Local Rule 9021(b)(2).

2

Case 14-50333-gs    Doc 544    Entered 08/16/19 13:38:20    Page 9 of 53
Case 14-50333-gs    Doc 520    Entered 07/19/19 11:57:00    Page 9 of 52
Case 14-50333-gs    Doc 512    Entered 07/12/19 17:04:21    Page 3 of 4

1   hearing on the Judicial Notice Motion, and instead will set both Motions for hearing on

2   September 13, 2019, thus satisfying the requirements of Fed. R. Evid. 201(e).[2]

3        The Rule 60(b) Motion requests that the court vacate its prior order converting this case

4   from chapter 11 to chapter 7 (ECF No. 190) (Conversion Order). Mr. Thomas also includes a

5   request to stay all proceedings in this case pending resolution of the Motions.  At Mr. Thomas's

6   request, this motion has been set for hearing on September 13, 2019, well after the July 19,

7   2019 sale of the Thomas Emerald. Thomas has not explained why either motion may not be

8   heard on an earlier date.  He has not taken any action to do so, or requested that the court

9   consider a stay prior to the July 19, 2019 hearing on the sale of the Thomas Emerald.

10  Furthermore, the court is concerned by Thomas's request that all proceedings in this case be

11  stayed pending resolution of the Motions, especially since he has scheduled consideration of

12  those motions well after the hearing date for the sale itself.  The filing of the Rule 60(b) Motion

13  does not stay the proceedings of the court.  To the extent that Mr. Thomas intends to ask the

14  court to stay the sale scheduled for July 19, 2019, it is incumbent upon him to take such actions

15  before the sale occurs.  He has not done so to date; placing a request for relief within another

16  motion (to void the order of conversion) and scheduling it months after the sale is not

17  sufficient.  Any such request is not properly before the court at this time.  Accordingly, as there

18  is no request currently before this court to stay the sale scheduled for July 19, 2019, the court

19  will consider the Rule 60(b) Motion, and the request for stay, on the date requested by debtor

20  absent further action by the debtor to appropriately bring such matter before the court.

21        For these reasons,

22

23

24   _____

25   [2] The court also notes that in the Rule 60(b) Motion, Thomas contends that the undersigned
     "has refused to rule on Debtor's Motion for Judicial Notice with regards to the sale of the Thomas
26   Emerald." ECF No. 509, p. 2:4-6.  This is simply untrue as the court has stated that it will consider and
     rule on the request at the time of the substantive hearing. *See* Transcript of June 4, 2019 Hearing, ECF
27   No. 500, p. 18:20-19:3 ("Mr. Thomas: Will you rule on our judicial notice motion?  Court: I will
     consider all matters.  I'm likely to not rule on anything prior to.  Mr. Thomas: But you will take judicial
28   notice of the facts and laws that we present you.  Court: Sir, I will allow – I – I've seen that.  I have not
     gone through it in any great length, but the – I will hear your position, and then I will decide how to
     proceed.").

3

Case 14-50333-gs   Doc 544   Entered 08/16/19 13:38:20   Page 10 of 53
Case 14-50333-gs   Doc 520   Entered 07/19/19 11:57:00   Page 10 of 52
Case 14-50333-gs   Doc 512   Entered 07/12/19 17:04:21   Page 4 of 4

1    IT IS HEREBY ORDERED that the court will hear both the Notice of Motion and

2  Motion for Judicial Notice of Law & Facts ISO Rule 60(b)(4) Motion to Vacate Void 8-22-

3  2014 Conversion Order (ECF No. 508) and the Notice of Rule 60(b)(4) Motion & Motion to

4  Vacate Order Void on Its Face in Violation of U.S. Constitutional Due Process Rights; Request

5  for Stay (ECF No. 509) on **September 13, 2019 at 9:30 a.m.**

6    IT IS FURTHER ORDERED that Mr. Thomas's objections to the form of the trustee's

7  Proposed Sale Procedures Order are overruled, and the court shall enter the proposed order.

8    IT IS SO ORDERED.

9  * * * *

10  Copies sent to all parties via CM/ECF ELECTRONIC NOTICE and via U.S. Mail to:

11  ANTHONY THOMAS
    7725 PEAVINE PEAK COURT
12  RENO, NV 89523
                                        ###

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit C

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA (RENO)

IN RE:                          .    Case No. 14-50333-gs
                                .    Chapter 7
ANTHONY THOMAS and              .
WENDI THOMAS,                   .
                                .    300 Booth street
                                .    Reno, Nevada 89509
              Debtors.          .
                                .    Tuesday, June 4, 2019
. . . . . . . . . . . . . .     .    2:02 p.m.


TRANSCRIPT OF STATUS AND SCHEDULING CONFERENCE RE:
MOTION TO SELL FILED BY JEFFREY L. HARTMAN
ON BEHALF OF JERI COPPA-KNUDSON [430]
**BEFORE THE HONORABLE GARY SPRAKER VIA VIDEO CONFERENCE
UNITED STATES BANKRUPTCY COURT JUDGE**

APPEARANCES:

For the Chapter 7          Hartman & Hartman
Trustee:                   By:  JEFFREY L. HARTMAN, ESQ.
                           510 West Plumb Lane, Suite B
                           Reno, NV 89509
                           (775) 324-2800

Chapter 7 Trustee:         JERI COPPA-KNUDSON, ESQ.
                           3495 Lakeside Drive, PMB #62
                           Reno, NV  89509
                           (775) 329-1528

TELEPHONIC APPEARANCES:

For the Debtors:           ANTHONY THOMAS, Pro Se
                           7725 Peavine Peak Court
                           Reno, NV  89523

For Kenmark Ventures:      WAYNE A. SILVER, ESQ.
                           333 West El Camino Real, Suite 310
                           Sunnyvale, CA  94807
                           (408) 720-7007


Audio Operator:            Illuminada Starzyk, ECR

Transcription Company:     Access Transcripts, LLC
                           10110 Youngwood Lane
                           Fishers, IN 46038
                           (855) 873-2223
                           www.accesstranscripts.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

2

1        (Proceedings commence at 2:02 p.m.)

2             THE COURT:   (Via video conference) Good morning,

3   Madam -- or good afternoon, Madam Clerk.   This is

4   Judge Spraker.   Is everyone ready to appear?

5             THE CLERK:   Good afternoon, Judge.   Yes, everyone is

6   present and ready for you.

7             THE COURT:   All right.   If you will call the case,

8   then, please.

9             THE CLERK:   Yes, sir.   The matter that we have on

10  today's calendar is Case Number 14-50333.   It's the case of

11  Anthony and Wendi Thomas.   In regards to Docket Number 430,

12  it's a status and scheduling conference in regards to the

13  motion to sell.

14            THE COURT:   Thank you.   Please be seated.   All right.

15            As the court clerk just mentioned, we are on record

16  in Thomas regarding a status and scheduling conference set in

17  this matter by the Court.   I can only see the podium primarily,

18  so let's start with people approaching the podium and entering

19  their appearance.

20            Mr. Hartman, if you'd lead us off.

21            MR. HARTMAN:   Good afternoon, Your Honor.

22  Jeff Hartman, on behalf of trustee Jeri Coppa-Knudson.

23            MS. COPPA-KNUDSON:   Jeri Coppa-Knudson, trustee.

24            THE COURT:   Thank you, Ms. Coppa-Knudson.

25            All right.   Anyone else in the courtroom?

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

3

1          MR. HARTMAN:  Nobody else in the courtroom,
2   Your Honor.
3          THE COURT:  All right.
4          MR. HARTMAN:  I think they're --
5          THE COURT:  Mr. Hartman --
6          MR. HARTMAN:  I think they're telephone --
7          THE COURT:  Go ahead.
8          MR. HARTMAN:  -- telephone appearances, Your Honor.
9          THE COURT:  Thank you.  Then let's take those on the
10  telephone.
11         MR. THOMAS:  (Telephonically)  Your Honor, this is
12  Anthony Thomas.
13         THE COURT:  All right, Mr. Thomas.  Thank you.
14  Somebody else was also on the line?
15         MR. SILVER:  (Telephonically)  Good afternoon,
16  Your Honor.  Yes, Your Honor.  Good afternoon.  Wayne Silver,
17  appearing for Kenmark Ventures, LLC.
18         THE COURT:  All right.  Thank you, Mr. Silver.
19         Okay.  Thank you.  Obviously, I am the judge that's
20  been appointed after Judge Beesley recused himself.  I am a
21  visiting judge from the District of Alaska.  I have been
22  helping out in the District of Nevada for, jeez, it's about to
23  be six years here soon.  So unfortunately, I do the initial
24  matters by video, if possible, and then try to take whatever
25  matters that may be necessary -- I will be down in Reno.

4

1        I thought it was necessary to set this matter on and

2   have this initial discussion to see where the parties believe

3   the matter was left after the last hearing in which

4   Judge Beesley recused himself.  There being no real activity on

5   the docket before then, I thought it was most simple just to go

6   ahead and set this matter for a hearing.

7        Mr. Hartman, as representative of the movant in the

8   motion to sell, I'll let you have the first crack.  But let me

9   tell you what I've seen -- and all the parties, for that

10   matter -- from what I've seen from my review of the docket.

11        Primarily, this is -- the relief requested is

12   approval of a motion of sale of the emerald that is at issue.

13   The sale is a result of an auction that was not subject to any

14   prior motion prior to the auction, and so, in my view, it comes

15   to us as -- really as a sale to a private party, but with the

16   auction behind it to support it.

17        I know that Mr. Thomas has challenged or made several

18   challenges.  Primarily -- or the first was to challenge the

19   validity of the notice; also challenges the approval of the

20   sale; and seems to have challenged the payment of some expenses

21   to the auctioneer.  So I want to know what else is being

22   challenged or subject to the Court's consideration, where we

23   are, and where we go from here.  So, Mr. Hartman, with that

24   introduction --

25        MR. HARTMAN:  Thank you, Your Honor.

5

1           THE COURT:  -- take it away.

2           MR. HARTMAN:  I'll -- I guess I'll begin by the

3    process.  The trustee has possession of the emerald.  She

4    recovered possession early on in the case.  She went to Florida

5    to retrieve it.  And --

6           THE COURT:  And, Mr. Hartman, I apologize.  I should

7    have said this.  I've read as much as I could, so I know the

8    history and the back story.  We can get into what's evidence

9    and what isn't at a later date, but really I just want to try

10   to get a handle as to where things are, whether this matter

11   should be deemed submitted, or whether we need to schedule a

12   further evidentiary matter, and if so, on what issues or all

13   issues.

14          MR. HARTMAN:  Well --

15          THE COURT:  So I'm going to ask all parties to ignore

16   the history and the context at the moment.  I just want -- you

17   know, for lack of better -- just figure out the scheduling and

18   the status, actually.  I should have started with that.

19          MR. HARTMAN:  Certainly, Your Honor.  The --

20   Mr. Thomas has questioned the procedure leading up to the

21   hearing that was held at which Judge Beesley recused himself.

22   And the issue, as I understand it, by Mr. Thomas is that the

23   option wasn't properly noticed.  The procedure that was

24   followed was that the auction was conducted but the sale had to

25   actually be confirmed by the Court, and anybody that wanted to

6

1  appear and overbid would be able to do so, provided that they

2  had legitimate funds.

3          At the hearing on the motion to approve the sale,

4  Judge Beesley actually conducted the hearing and recused

5  himself at the end.  He never ruled on -- he never said, I'm

6  going to enter an order approving the sale.  So we have a

7  motion that's in limbo and it can be reset at any time; or if

8  the Court ultimately determines the trustee needs to re-notice

9  the sale or engage in a different process, we can do that.

10         THE COURT:  Okay.  So where do you believe the

11  evidentiary matters were left?  There was some -- there was

12  testimony -- limited testimony from Mr. Thomas.  There was more

13  testimony from Mr. Stremmel.  What does the trustee want to do,

14  other than sell the emerald?  What do you want to do

15  procedurally at this point?

16         MR. HARTMAN:  Well, in my ideal situation,

17  Your Honor, I would like Mr. Thomas to be directed to supply

18  any information he has to the trustee with respect to potential

19  purchasers of the emerald who might be willing to pay more, and

20  we'll obviously notice them and invite them to appear at the

21  hearing, and the Court conduct an auction, basically, and the

22  highest bidder will prevail.  I --

23         THE COURT:  I --

24         MR. HARTMAN:  I believe the record is clear that

25  notice of the hearing on the sale was proper.  Actually it was

7

1   more than proper under the rules and the time required.  So

2   from that standpoint, I think the trustee's on solid ground.

3   And eventually, you know, she's charged with liquidating the

4   assets.  She continuously has to report to the United States

5   Trustee on the status of this case, and that's getting to be a

6   challenge.

7            But it's at issue, and we can reset a hearing and

8   conduct a hearing, and Mr. Thomas can appear and object to

9   Your Honor, and you can rule on the issues at that point in

10  time.

11           THE COURT:  Okay.  Mr. Thomas, let's hear from you.

12  What do you think should be the next step in this process?

13           MR. THOMAS:  Your Honor, I think that the sale should

14  be void on its face because they didn't follow Rule 363(b) or

15  Rule 6004 and 2002.  They didn't notice all creditors or myself

16  21 days prior to the sale.

17           And I believe that the sale was a collusive sale.  It

18  was -- the only people that were notified of the sale was

19  Ken Trazini (phonetic) and Mr. Silver and the auctioneer put

20  them down as emerald experts.  So I believe that the sale was

21  collusive and they should be void.  And I think that a new

22  auctioneer should be picked.

23           You know, there was Overstock.com, and I think that,

24  you know, they're a more appropriate auctioneer for this type

25  of emerald, or Sotheby's, or any of the big auctioneer firms

8

1  for one of the single largest emeralds in the world.

2           And I think the whole process has been undermined and

3  not followed the rules.  There was no reason for them not to

4  notify me or the creditors 21 days prior to the sale.  And, you

5  know, there are rules in the Bankruptcy Court for a reason, and

6  they didn't follow the rules.  So I believe that the sale

7  should be void, and I think that they should start from the

8  beginning and pick an auctioneer that's not a local auctioneer

9  that they know, and pick a good public auctioneer that can get

10 the most money for the emerald.

11          There's also some very -- some underlying issues,

12 Your Honor, that I've been trying to get filed in the

13 Santa Clara Bankruptcy Court if -- I was forced into

14 Bankruptcy Court by a fraudulent settlement.  And I'm trying to

15 get these papers filed in Santa Clara, but every week I have to

16 deal with another issue.  And, you know, I -- hopefully I'll be

17 able to get those filed within the next two weeks.

18          But the whole reason I'm in bankruptcy in the first

19 place is because my attorney was told by the State Bar the day

20 before the settlement that he wasn't allowed to try my case.

21 They wrote him a letter and said that he was -- wasn't allowed

22 to go forward.  And he settled my case with Kenmark, and they

23 told me that I had no liability.  And a year and a half later,

24 they came after me for a payment for $500,000, and my attorney

25 that colluded with Trazini's attorney, told me I had -- you

9

1  know, the only thing I could do was file for bankruptcy, which

2  I have now found is not an option.  And I believe that the

3  whole reason that I was forced into bankruptcy is void.

4        And I was also illegally converted from Chapter 7 to

5  11, because Judge Beesley took away my counsel, and I was

6  represented and so was my LLC, AT Emerald, which can't appear

7  in front of a court without representation.  And that's when

8  the conversion happened.  And I asked Judge Beesley for a

9  two-week continuance so that I could get counsel, and I was

10 denied.

11       So my -- on the grounds of 60(b), I believe that my

12 constitutional rights were taken away, and the trustee should

13 have never had the right to sell the emerald in the first

14 place.  So on those issues there, that's where I stand.

15       And then I also filed in my brief that the John Beach

16 case that I won on the appeal was dismissed a year later has

17 now been brought back to life without Judge -- an order from

18 Judge Beesley or yourself.  Judge Beesley recused himself, and

19 you just got into the case and are listening to us for the

20 first time, but it was put on the docket again, and it's

21 Docket 77, on 5/29.

22       This case has been reopened after it was already

23 closed and dismissed.  So I don't know how that happened

24 without approval from you, Your Honor, or Judge Beesley.

25       THE COURT:  Okay.  Thank you.  We are here only on

ACCESS TRANSCRIPTS, LLC        1-855-USE-ACCESS (873-2223)

10

1  the status of scheduling for the motion to sell.  I appreciate

2  your comments on the other matters, but they'll proceed however

3  they proceed.  We are simply trying to figure out what the next

4  step is for the motion to sell at the moment.  So that gives me

5  an overview of the case, but we're going to stick to the motion

6  to sell.

7          So, Mr. Silver, your comments.

8          MR. SILVER:  Thank you, Your Honor.  Wayne Silver,

9  appearing telephonically.

10         Your Honor, I agree with Mr. Hartman.  I think that,

11 to the extent that there's any issues regarding notice, any

12 possibility that there might be somebody out there willing to

13 bid more, it should be explored.  And so I'm not at all adverse

14 to having the sale re-noticed, to giving notice to the world,

15 if you will.  Mr. Thomas can supply any information he wants to

16 regarding any potentially-interested buyer.  And as long as

17 they come in with hard dollars and not, you know, funny money,

18 I'm perfectly aligned with the trustee, because I think we're

19 both looking to accomplish the same goal, which is to maximize

20 the value of the emerald.

21         THE COURT:  That's an interesting point, Mr. Silver.

22         Mr. Hartman, what is -- in reviewing the transcript

23 and the other matters, the concept of an overbid has been out

24 there and there's usually some kind of reference to, you know,

25 hard money or whatever.  What does that mean in this case?

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

11

1   What do you -- if we set this for another hearing, which is

2   essentially approval of -- your continuation of the hearing to

3   approve the sale subject to overbids, presumably noticing out

4   that anybody who wants to overbid may do so, essentially having

5   another auction at the commencement of the next hearing, what

6   are the requirements for that overbid?

7           MR. HARTMAN:  Well, Your Honor, our practice normally

8   is to ask the Court to set whatever the incremental overbid

9   numbers are.  But, you know, it's -- usually, on a sale of

10  this, you know, size, it would be increments of 2,500 or

11  $5,000.  And --

12          MS. COPPA-KNUDSON:  If --

13          MR. HARTMAN:  -- the trustee --

14          MS. COPPA-KNUDSON:  I'm sorry.

15          MR. HARTMAN:  The trustee would like to address the

16  Court --

17          MS. COPPA-KNUDSON:  Yeah.

18          MR. HARTMAN:  -- Your Honor.

19          MS. COPPA-KNUDSON:  I --

20          THE COURT:  Go ahead, ma'am.

21          MS. COPPA-KNUDSON:  I spoke to the auctioneer this

22  morning, and he indicated that our last high bidder has

23  withdrawn his offer.  So we do not even have that offer at --

24  that is my understanding at this moment.  So that was what he

25  told me this morning.

12

1        So I have no idea -- we can go back to them and see
2  if that last offer that they made is still viable, but his
3  indication to me this morning was that that offer has been
4  withdrawn.
5        THE COURT:  So the offer from Jennifer Judoin
6  (phonetic) at twenty-one five hundred or twenty-five --
7  whatever it was -- has been withdrawn?
8        MS. COPPA-KNUDSON:  That's my understanding,
9  Your Honor.
10       MR. HARTMAN:  Your Honor, this is Jeff Hartman, for
11  the record.  I think Mr. Silver can address that, because that
12  claim -- or that purchase position was assigned to Mr. Silver's
13  client.
14       MR. SILVER:  Wayne Silver, telephonically.  That's
15  correct, Your Honor.  The offer was assigned to my client, and
16  to my knowledge, it has not been withdrawn.
17       MS. COPPA-KNUDSON:  It has not?
18       MR. SILVER:  That's -- that -- that's -- as far as I
19  know, it has not been withdrawn.  I haven't spoken to anyone
20  from Stremmel recently.  It's possible that there was a
21  conversation I'm not aware of.  But as far as I know, that
22  offer is still good.
23       MS. COPPA-KNUDSON:  Well, and I would have to verify
24  that because as of this morning, Steve Stremmel thought that
25  offer had been withdrawn.  Maybe he is wrong.

13

1        MR. SILVER:  Okay.  We can certainly clear --

2        MR. THOMAS:  Your --

3        MR. SILVER:  -- that up quickly, but as far as I

4  know, it's good.

5        MR. THOMAS:  Your Honor, I would like you tc make a

6  ruling on the judicial notice motion that I filed and get a

7  ruling, and then we could start from scratch.  Because I would

8  like to have a ruling on the evidence that was presented before

9  you and the judicial notice that I had asked the Court to take

10  judicial notice of.

11        THE COURT:  Thank you.  Well, what I am hearing is

12  that the trustee is not opposed to seeing if anyone else --

13  well, what I originally thought I heard was that the trustee's

14  not opposed to having another hearing which anyone could

15  overbid the amount of the current offer to Ms. Judoin, who was

16  assigned.  There's some question whether that offer is still

17  outstanding.  That's the first question that has to happen.  If

18  there's no offer, there's no motion to sell and that -- restart

19  again.  How we restart again would be probably the subject from

20  another status conference.

21        If that offer is still valid, I think that it is

22  worthwhile to see where that takes us and reset that as another

23  notice of essentially another auction for anybody wanting to

24  make a bid in the proper increment above the accepted offer on

25  the terms that the trustee, you know, proposes and the Court

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

14

1  would approve, meaning the increments of any subsequent bids

2  and the money that had to be put up or the means to establish

3  the money to qualify as an appropriate bid.

4          So, Mr. Hartman, the first question is do -- does the

5  trustee want about a week or so to figure out whether or not

6  that bid's out there?

7          MR. HARTMAN:  Yes, Your Honor.  We would certainly do

8  that.

9          THE COURT:  Okay.  So what I am looking at is trying

10  to be in Reno on Friday, July 19th.  That would be the date --

11  I now have two matters I am presiding over out of Reno.  Going

12  to set that aside for both matters.  Presently, I don't think

13  the other matter has any heavily substantive things scheduled

14  for that day, so if we need to set aside the afternoon of that

15  day for this hearing, in whatever shape it ultimately comes to,

16  then, you know, I think that's fine.

17          I am not going to rule on the judicial notice motion.

18  I will say, however, that you can take as my operating

19  structure that if a notice goes out with more than 21 days

20  notifying people of a continued evidentiary hearing in which

21  bids certain to subject considerations and requirements will be

22  considered and cause, in effect, another auction, that would

23  strongly lead me to believe that any harm that was caused has

24  been remedied and either is moot or harmless at that point.

25          To the extent that anybody believes that that is

Case 14-50333-gs    Doc 544    Entered 08/16/19 13:38:20    Page 26 of 53
Case 14-50333-gs    Doc 520    Entered 07/19/19 11:57:00    Page 26 of 52

15

1 legally incorrect, we'll talk about that on the 19th. So we
2 have plenty of time between now and the 19th, even with --
3 given a week to get -- allow the trustee to figure out the
4 exact lay of the land as to the pending offer. My thought is
5 that that afternoon of the 19th would be an evidentiary
6 hearing. There are a number of people that have provided
7 declarations. Mr. Stremmel actually was examined.

8       My intent is that if we go to another evidentiary
9 hearing, it will be evidentiary. We'll have the auction,
10 wherever that takes us. And then we will have evidence to
11 approve that, and to the extent that it is requested, to allow
12 the Court to address the good-faith nature of any ultimate
13 buyer.

14      That means there will be testimony and then there
15 will be argument. We will not have a running argument
16 throughout the testimony. So we're going to treat this as an
17 evidentiary matter, essentially a trial, and that is how it's
18 going to go.

19      So, Mr. Hartman, we can come back in a week and reset
20 deadlines, if you like, or if you believe that's not necessary
21 and you'll notice it out, then I do want sufficient time for
22 objections and a reply prior to the hearing.

23      MR. HARTMAN: Your Honor, thank you. What I was
24 thinking about is we can verify whether or not the offer is
25 still open. And what I -- one suggestion is that I would

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

16

1  simply file a notice; it's obviously not separate hearing, it's

2  just the notice that the offer remains pending.  And then I can

3  notice up the hearing appropriately and the rules and the

4  opposition dates in the rules would apply.  So we don't need a

5  briefing scheduled beyond what's in the rules.

6         THE COURT:  Well, that -- and that -- that's fine.  I

7  mean, a lot of ink has been spilled on this matter, and both

8  for and against.

9         First, any notice, however it goes, must include a

10 statement that bids in a certain amount will be considered.  I

11 mean, the notice that goes out setting the hearing needs to

12 also provide the information regarding what has to happen at

13 that hearing to turn it into an action.

14        MR. HARTMAN:  Oh, certainly, Your Honor.

15        THE COURT:  Okay.  So to the extent that you want to

16 get a auction procedures order set prior to that, that

17 certainly makes sense, because I want those locked down

18 quickly.

19        MR. HARTMAN:  Well, then for -- that -- that's sort

20 of a separate process, I guess, and I could prepare a proposed

21 order and then circulate it to Mr. Thomas.  He can either

22 approve it or disapprove it and then submit it to the Court,

23 and it would go out with the notice.

24        THE COURT:  Yes.

25        MR. HARTMAN:  We can do it that way, Your Honor.

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

17

1        THE COURT:  Yeah.  That would be great.

2        MR. THOMAS:  Your Honor, this is one of the single

3    largest emeralds.  And I don't think that in between now and

4    July is enough time to promote this thing around the world to

5    get the most value for it.  They haven't done anything to

6    promote this thing other than stick it on a website and the --

7    and spend $200.

8        THE COURT:  Great.  You can make all of those --

9        MR. THOMAS:  You're talking one of the single --

10       THE COURT:  -- arguments -- sir, you can make all

11    those arguments at the hearing.  You've made a lot of them

12    before.  I've read the transcript.  And we can address that at

13    the hearing.

14        I will say, though, that at the hearing, when it's

15    evidentiary, if someone -- if you have a declaration submitted

16    and that person is not present to be cross-examined, that

17    evidence will not come in.  Okay?  I can't tell what evidence

18    was accepted at the court or not accepted based upon the

19    declarations and how it evolved.  But at the beginning, we will

20    go over who was present and whose declaration should be

21    admitted for direct testimony into evidence.  And if that

22    person is not physically present in the courtroom or has

23    otherwise been allowed to testify by phone in advance, the

24    Court is not going to accept that evidence.

25        MR. THOMAS:  Yes, Your Honor.  And thank you for

18

1  saying that.  The -- Your Honor, the reason that the witnesses

2  weren't presented is because I never thought the sale would go

3  through in the first place, because it was void, because they

4  never notified me or the creditors according to the rules under

5  2002 and 6004.  There was not proper notice in the first place,

6  so --

7              THE COURT:  Well, that --

8              MR. THOMAS:  -- I didn't feel --

9              THE COURT:  That is now resolved.  All right?  You

10  are on notice that all witnesses must be present in the

11  courtroom to provide testimony as a precondition to getting the

12  declaration admitted into evidence as direct testimony to be

13  followed by cross-examination.  You are not to assume anything

14  until this Court orders.  So we will have whatever is needed

15  during the afternoon of July 19th to consider and submit

16  this -- the sale motion.  So one shot, one stop, all matters.

17              MR. THOMAS:  Okay.  And then -- and what --

18              THE COURT:  All right.

19              MR. THOMAS:  And, Your Honor -- and at that time will

20  you consider our judicial notice motion?  Will you rule on our

21  judicial notice motion?

22              THE COURT:  I will consider all matters.  I'm likely

23  to not rule on anything prior to.

24              MR. THOMAS:  But you will take judicial notice of the

25  facts and laws that we present you.

19

1          THE COURT:  Sir, I will allow -- I -- I've seen that.

2    I have not gone through it in any great length, but the -- I

3    will hear your position, and then I will decide how to proceed.

4          MR. THOMAS:  Okay.  Thank you.  Thank you,

5    Your Honor.  I appreciate that.

6          THE COURT:  But again, I will urge you to consider

7    getting competent bankruptcy counsel, because we will apply the

8    Rules of Evidence.  And, you know, I am sensitive to hearsay

9    comments and matters beyond the scope.  So we will deal with

10   the motion to sell at that time.

11         MR. THOMAS:  And just so I'm clear on the record,

12   Your Honor, you will take judicial notice of our judicial

13   notice motion.

14         THE COURT:  I will consider all matters involving the

15   motion to sell.  I understand you filed that motion for

16   judicial notice in relationship to the motion to sell, so that

17   will be addressed.  I'm not going to take judicial notice --

18         MR. THOMAS:  Okay.

19         THE COURT:  -- it -- it's on the docket.  So we will

20   hear all matters relating to the motion to sell on July 19th.

21         And, Madam Clerk, I can't recall if you start at one

22   o'clock or 1:30 in the afternoon there.

23         THE CLERK:  Your Honor, we can start whenever you

24   would like.

25         THE COURT:  All right.  I'd like to start at one

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

20

1  o'clock.

2                THE CLERK:  Yes, Your Honor.

3                THE COURT:  On Friday, July --

4                MR. THOMAS:  Your Honor, what day is the -- it's the

5  Friday?

6                THE COURT:  Friday, July 19th.

7                MR. THOMAS:  Okay.  Thank you, Your Honor.

8                THE COURT:  Certainly.

9                All right.  So, Mr. Hartman, to bring it back around,

10  do you think -- do you need another hearing prior to getting

11  out the notice or --

12                MR. HARTMAN:  I don't believe so, Your Honor.

13                THE COURT:  Okay.  And you -- then we'll have a

14  motion to set auction procedures.  I imagine that will be

15  submitted on an ex parte basis?

16                MR. HARTMAN:  Well, I mean, I can certainly file a

17  motion, but it seems to me, under the circumstances, just a

18  proposed form of order setting the option procedures should

19  suffice if Mr. Thomas has an opportunity to comment.

20                THE COURT:  Well, yeah, you do need to file at least

21  a perfunctory motion for approval that -- I'm not going to sign

22  just an order that -- that's submitted as a -- I mean, if it's

23  a stipulated motion to approve, generally how I do it is even

24  on a stipulation, there's a stipulation requesting something

25  and then the order approving the stipulated request.

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

Case 14-50333-gs    Doc 520    Entered 07/19/19 11:57:00    Page 32 of 52

1      I don't know if in Reno you just file the stipulated
2  order, but generally I'll -- I like to see the docket event and
3  then the order tied to that docket event --
4          MR. HARTMAN:  Certainly.  I'll do that --
5          THE COURT:  -- if you could.
6          MR. HARTMAN:  I'll do that, Your Honor.
7          THE COURT:  You know, whether it's ex parte, what it
8  stipulated, I leave to the parties.
9          MR. HARTMAN:  All right.  We'll do it, Your Honor.
10 Thank you.
11         THE COURT:  All right.  And, Madam Trustee, you had a
12 comment.  I just wanted to --
13         MS. COPPA-KNUDSON:  Oh, I just thought that the order
14 that he was going to file was the proposed order, not even a
15 stipulated order, but just kind of the outline of what the
16 order would read, not just for Mr. Thomas's comment if he
17 didn't agree with what the proposed order of the auction would
18 be.
19         THE COURT:  I believe that we can short-circuit a lot
20 of future discussion if there is an order setting the terms of
21 the hearing for auction, bids, deadlines, and such.  Everybody
22 knows, everybody's on the same page, and then that gets sent
23 out to the matrix and whoever else you want to send that order
24 setting it out, and advertising and attempting to get as many
25 bids as possible.

22

1            MR. HARTMAN:  I will do it, Your Honor.

2            THE COURT:  All right.  Mr. Silver, any last

3    comments?

4            MR. SILVER:  No, Your Honor.  Wayne Silver.

5            THE COURT:  All right.  All right, then -- and,

6    Mr. Thomas, final word?

7            MR. THOMAS:  No, Your Honor.

8            THE COURT:  All right.  Thank you, then.  And I'll

9    look forward to a proposed order and then seeing the notice go

10   out to the matrix, and let the parties attempt to provide it to

11   whoever they believe may want to bid.  That order, though, I do

12   believe, should have very clearly in there when any opposition

13   to the proposed sale is due.  While -- you don't have to repeat

14   what has been out there.

15           And, Mr. Thomas, to the extent that you have filed

16   your oppositions, you don't have to renew any of that.  If

17   there's something that comes up between now and the hearing

18   which you believe is legally erroneous that has not been

19   addressed, then we can deal with that.

20           And, Mr. Hartman, going forward, you know, this is a

21   contested matter.  There have been some discussion and forms

22   put on the last hearing, but I'm considering, if all this goes

23   out, we don't receive anything, we will go to the hearing on

24   the existing offer based upon the declarations that are -- have

25   been filed.  And then we'll see who shows up.  We'll deal with

23

1  those declarations.

2          Are you anticipating that any additional evidence

3  should be taken -- would be taken -- would need to be in the

4  form of a declaration prior?

5          MR. HARTMAN:  On behalf of the trustee, Your Honor,

6  no.

7          THE COURT:  Okay.  But do you believe if a witness

8  shows up and is present and submitted for providing testimony

9  at that, does that witness get to testify or not?

10         MR. HARTMAN:  I would say yes.

11         THE COURT:  Okay.  All right.  So any witnesses in

12 support or opposition may be brought.  Those that have

13 submitted a declaration need to be present if they want to

14 testify or have their declaration accepted as evidence.

15         MR. HARTMAN:  May I ask for --

16         THE COURT:  So you under --

17         MR. HARTMAN:  -- clarification?

18         THE COURT:  Go -- certainly.

19         MR. HARTMAN:  So I -- my question is, would

20 Mr. Thomas have the opportunity to bring in a new declaration

21 from a new witness at this juncture.

22         THE COURT:  Well, that's why I was asking if

23 additional witnesses would be able to appear.  Because if you

24 say -- if they show up and appear, then yes, he would.

25         MR. HARTMAN:  Well, I -- I'm sorry.  I misunderstood.

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

Case 14-50333-gs   Doc 520   Entered 07/19/19 11:57:00   Page 35 of 52

24

1  I thought you meant from the declarations that he submitted in

2  advance of the last hearing.

3           THE COURT:  Well, those people are known and at least

4  have provided declarations.  So the question I'm getting

5  about -- to in an oblique manner is do you need an additional

6  deadline for further declarations in support or opposition of

7  the motion to sell?

8           MR. HARTMAN:  Well, I guess, yes.  I don't expect to

9  provide any new declarations, but if Mr. Thomas attempts to do

10 so, I need advance notice.

11          THE COURT:  Okay.  Mr. Thomas, are you going to --

12          MR. THOMAS:  Yes, Your Honor.

13          THE COURT:  -- call any additional witnesses?

14          MR. THOMAS:  Yes.  I would like to be able to call

15 whatever witnesses I need necessary to prove my case.

16          THE COURT:  Well, in theory, those witnesses should

17 have been provided and detailed in the prior hearing.

18          MR. THOMAS:  I didn't believe that the prior hearing

19 was going to go forward, Your Honor, because I thought it was

20 void on its face.

21          THE COURT:  Well, that --

22          MR. THOMAS:  It should have never --

23          THE COURT:  That was a mistake.  Yeah.  I mean,

24 that -- that's why I urged you --

25          MR. THOMAS:  So --

Case 14-50333-gs    Doc 520    Entered 07/19/19 11:57:00    Page 36 of 52

25

1      THE COURT:  -- to think about getting counsel,

2  because that understanding is a mistake, and I'm trying to make

3  sure we have no similar misunderstandings going forward.

4      MR. THOMAS:  Your Honor, I have asked this Court, and

5  I've filed documents with this Court -- I have a disability.

6  I'm dyslexic.  And I've asked this Court to provide me with

7  counsel since it's taken my counsel away.  And I've filed law

8  based on that in other cases that people with disabilities were

9  provided with counsel.  And so I'm at a disadvantage, because I

10  do have a disability.

11      Mr. Hartman and Mr. Silver both know it.  The --

12  Judge Beesley knew it.  And, you know, I'm doing the best I can

13  to make sure that, you know, I preserve my constitutional

14  rights.  And, you know, I would like this Court to provide me

15  with counsel.

16      THE COURT:  Well, I'm sure a lot of people would like

17  the Court to provide them with counsel.  The Court has no

18  ability to provide counsel; we are not a criminal court.

19      MR. THOMAS:  I know.  But there are cases that say

20  that people with disabilities like dyslexia are provided with

21  counsel.  And I submitted those cases in a judicial notice

22  motion that I filed with the Court on the house, and that's why

23  I wanted you to take judicial notice and make a ruling also on

24  the Portola house that was illegally taken from my parents.

25      THE COURT:  If you want to make a motion to have the

26

1  Court appoint a counsel for you, you should make a specific

2  motion, not one for judicial notice.  You need to make a motion

3  for Court to appoint counsel and get it filed.

4            MR. THOMAS:  Okay.  I will get -- I would like to --

5            THE COURT:  We are all --

6            MR. THOMAS:  -- have the time to -- Your Honor, I

7  would like to have the time to make that motion and to get that

8  filed.  So can you --

9            THE COURT:  Well, let me --

10           MR. THOMAS:  -- please give me more time?

11           THE COURT:  -- be clear.  Let me be clear.  I am

12  giving all the parties until July 19th to get -- to rehear

13  this.  This gives you well over a month.  This matter has been

14  going on since last November or December, right?  So there is

15  plenty of time out there.  And do what you have to, bring

16  whatever you want, but it -- all I'm trying to find out -- you

17  have additional witnesses that you want to bring to the hearing

18  to testify on July 19th.  You want to bring whoever you may,

19  that's fine and dandy.  But at some point you have to tell

20  people who those witnesses are so they can prepare, right?

21           MR. THOMAS:  Yes.

22           THE COURT:  And if you're going to do that, then the

23  form that has been adopted here which you are able to comply

24  with was to provide declarations.  So --

25           MR. THOMAS:  Yes, Your Honor.  But I didn't fully get

Case 14-50333-gs   Doc 544   Entered 08/16/19 13:38:20   Page 38 of 53
Case 14-50333-gs   Doc 520   Entered 07/19/19 11:57:00   Page 38 of 52

27

1    to take the -- take -- cross-examine the witnesses to make

2    sure -- to know which witnesses I wanted to bring forward.

3    There's experts like Ronald Ringsrud, who, you know, did the

4    original appraisals, you know, who I would like to bring

5    forward as a witness -- as one, but there's many other

6    witnesses that I'd like to bring forward too.

7              THE COURT:  Okay.

8              MR. THOMAS:  So I'd like to have the time to do that,

9    because I have to send subpoenas.  And, you know, July 19th is

10   not much time, Your Honor.  I -- I'm --

11             THE COURT:  Well, and it -- it's the time you have --

12             MR. HARTMAN:  Your --

13             THE COURT:  -- unfortunately.

14             MR. HARTMAN:  Your Honor.

15             THE COURT:  Mr. Hartman.

16             MR. HARTMAN:  Your Honor, there's an order, and I

17   don't remember where in the docket it is, that gave Mr. Thomas

18   adequate time to issue subpoenas, to get all the documents he

19   wanted.  That time came and went.  That door is closed, as far

20   as I'm concerned.  This is going to drag on beyond July 19th

21   now because Mr. Thomas will say, I haven't had an opportunity

22   to get court-appointed counsel.  And I'm just afraid it's going

23   to go on and on and on.  This is an --

24             MR. THOMAS:  I will file --

25             MR. HARTMAN:  This is an administratively insolvent

28

1  estate.  And we have a $20,000 emerald we're trying to

2  liquidate, and it just gets worse and worse and worse.

3           The case was filed in 2014.  Mr. Thomas has had five

4  years to come up with a buyer for this emerald, and he hasn't

5  done it.

6           THE COURT:  All right.

7           MR. THOMAS:  I have -- I haven't had five years,

8  Your Honor.  The trustee took the emerald over in the illegal

9  conversion when they converted me in two thousand -- I can't --

10  I don't know the docket date, but I think it was in 2014.  I'm

11  not --

12           THE COURT:  All right.

13           MR. THOMAS:  -- sure on that, but the illegal

14  conversion where they took my attorney away and converted me

15  from Chapter 7 to 11.

16           THE COURT:  Again, beyond --

17           MR. THOMAS:  Or Chapter 11 to 7.

18           THE COURT:  -- the scope of the hearing -- again, let

19  me just say that's beyond the scope of the hearing on setting

20  the motion to sell.  So we're going to have the motion to

21  sell -- the hearing on July 19th at one o'clock.  The question

22  is whether we do prior to that --

23           Mr. Hartman, if you're in -- if you're wanting to

24  know who the witnesses are, I mean, that -- that's -- what are

25  you wanting out of that?  Are you wanting additional

29

1  declarations?  Are you wanting final witness list?

2              MR. HARTMAN:  No.  No.

3              THE COURT:  What exactly are you wanting?

4              MR. HARTMAN:  No, Your Honor.  I'm sorry if I wasn't

5  clear.  The -- there were certain witnesses that should have

6  been at the hearing for Mr. Thomas, and the -- one wasn't, and

7  that's why Judge Beesley said, of course, if the witness who

8  signed the declaration isn't present to be cross-examined, you

9  can't introduce the declaration.

10              So I just want to make sure that there's not going to

11  be a new person or persons for this next hearing that we have

12  to anticipate, determine whether or not we need to conduct a

13  Rule 2004 exam, and so forth.  So it's a new prospective

14  witness for Mr. Thomas that I'm addressing, not one of the

15  existing witnesses.

16              MR. THOMAS:  Your Honor, there was other witnesses

17  that --

18              THE COURT:  No.  But, Mr. --

19              MR. THOMAS:  The --

20              THE COURT:  Mr. Thomas, hold on for a second.  Let me

21  ask some questions.

22              So to understand, Mr. Hartman, it's not your position

23  that while Mr. Mullow (phonetic) wasn't at the first hearing,

24  if he shows up at the second hearing, is it your position that

25  he does or does not get to testify?

30

1          MR. HARTMAN:  I would say let him testify.

2          THE COURT:  Okay.  So we're in agreement, then.

3          Any of the witnesses that actually show up may

4    testify for the declarations that were already provided, so

5    that should be most of the witnesses

6          Now, for the new witnesses, you don't want anybody --

7    you don't want to give an opportunity to provide any additional

8    testimony or witnesses.  Is that your point?

9          MR. HARTMAN:  That's correct.

10         THE COURT:  All right.  And --

11         MR. THOMAS:  I object to that, Your Honor.

12         THE COURT:  -- Mr. Thomas?

13         MR. THOMAS:  I object to that on the basis that

14   Mr. Silver has already cross-examined Ronald Ringsrud, and they

15   didn't want to let in any of that evidence of Ronald Ringsrud's

16   testimony, as he's an expert.  And he's already taken his

17   deposition in the Kenmark case, and all that evidence should

18   come in.  And if Mr. Ringsrud wants to testify, he should be

19   able to testify.

20         And there's also other documents that I would like to

21   bring in.  Ken Trazini filed a (indiscernible) in Florida

22   claiming that the emerald was worth $500 million.  And that

23   evidence has not been submitted to this case.  And I don't want

24   to be precluded from putting in evidence that should be allowed

25   into this hearing.

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

31

1          THE COURT:  All right.  So here's what we're going to

2   do, then.  We are going to require the parties to exchange

3   exhibits and file a final exhibit list by July 8th, also file a

4   final witness list by July 8th.  I will require all witnesses

5   to appear in person for testimony.

6          MR. THOMAS:  Your Honor, could I ask one request?

7          THE COURT:  Sure.

8          MR. THOMAS:  You are -- not knowing the circumstances

9   of what's going on, there's a -- I'm -- also filed my case in

10  the Oakland court, as you know, where these -- Mr. Hartman and

11  Mr. Silver and the judge are all defendants in this case.  And

12  there's ongoing hearings in the other case too, which are on

13  the 28th.

14         And for somebody with a disability taking on all the

15  replies that I have to do, that's a very short time.  And I'm

16  asking that -- if you could push it out at least one more

17  month.  Give me until August 19th instead of until the -- July

18  19th, because I have a lot of documents that I still need to

19  get filed in the court for the Oakland hearing, a tremendous

20  amount of documents, reply briefs for Mr. Hartman trying to get

21  out of the case, saying that he has immunity.  You know, I have

22  to file another amended complaint in that case, because we only

23  did a placeholder filing for our original lawsuit, so it has to

24  be amended.

25         And then there's the judicial notice motion that

32

1  needs to be filed in that case.  And then all that has to be

2  ruled on and all that has to be done before June 28th, which is

3  going to consume all of my time in between now and June 28th.

4          MR. SILVER:  Your Honor, this is Wayne Silver,

5  telephonically.  And I'd like to make a comment about what

6  Mr. Thomas just said.

7          Your Honor, I'm a named defendant in that lawsuit.

8  It is pending in the District Court, Northern District of

9  California in Oakland.  And as a matter of fact, Your Honor,

10  the judge in that hearing entered an order specifically stating

11  that nothing further was to be filed between now and the

12  hearing.

13          Mr. Thomas has totally misrepresented what is

14  happening in that case.  And I will be happy to provide a copy

15  of that order to this Court.

16          MR. THOMAS:  He did not say that I could not file a

17  judicial notice motion in that order, Mr. Silver.  He did not.

18          THE COURT:  Okay.  Thank you.

19          MR. THOMAS:  And I need to file it --

20          THE COURT:  Thank you.  Thank you, Mr. Thomas.  I'd

21  like to hear from Mr. Hartman.

22          So the suggestion has been made to continue it to the

23  August calendar.  Mr. Hartman, your response.

24          MR. HARTMAN:  Well, Your Honor, I -- I'm reluctant to

25  do that, because sometime in August there will be another

Case 14-50333-gs    Doc 544    Entered 08/16/19 13:38:20    Page 44 of 53
Case 14-50333-gs    Doc 520    Entered 07/19/19 11:57:00    Page 44 of 52

33

1    reason for Mr. Thomas to ask that this be kicked down the road.

2         And although I hate to burden the Court with another

3    piece of information, Mr. Thomas also has a petition for

4    certiorari pending with the United States Supreme Court

5    regarding the matter he referred to in Santa Clara County.  And

6    so that is out there as well.  And he believes that -- I

7    think -- that if the Supreme Court were to grant cert, then a

8    year or two from now the court -- the Supreme Court might say

9    that the judgment obtained in Santa Clara County was

10   fraudulently obtained, and this whole chapter -- bankruptcy

11   case could go away.

12        I don't see it, and I don't know that we can hold up

13   the process in the trustee's obligations to allow all these

14   things to unfold according to Mr. Thomas's time frame.

15        MR. THOMAS:  Your Honor, the case in Santa Clara, I

16   believe, will be turned over because the fraud that was

17   procured in Santa Clara.  My attorney was told through the

18   State Bar the day before that he was not allowed to try the

19   case, and they settled it the next day --

20        THE COURT:  You may well have --

21        MR. THOMAS:  -- on the record --

22        THE COURT:  -- an action against your attorney,

23   Mr. Thomas, but you are in bankruptcy.  The bankruptcy has been

24   around for quite a period of time.  I believe it was filed in

25   2014.  The motion to sell has been on the docket since

34

1  November, I believe.  It's gone through several hearings,

2  including an evidentiary hearing, so it is getting a second

3  bite at the apple.

4         Again, much of this is for naught if there is no

5  actual offer on the table.  We need to know whether there's an

6  actual offer on the table.  That's the very first thing we must

7  know.  So I appreciate that.  I am sympathetic.  But this

8  matter is prepared.  There is actually nothing that should

9  happen that is new, unless and until somebody comes in to bid

10  higher.

11         So this matter is ready to be heard.  It needs to be

12  heard.  I am sympathetic to your situation, but honestly, there

13  really isn't a whole lot that should need to be done.  And so

14  the court's going to keep it on for July 19th.  It gives you 40

15  days or more to prepare.

16         I understand that you may have additional matters

17  going on, but everybody has additional matters going on.  So

18  the time has come to get this resolved.  We will get it

19  resolved.  And we'll --

20         MR. THOMAS:  Your Honor, could you respectfully --

21         THE COURT:  -- just see what we can --

22         MR. THOMAS:  Could you respectfully give me until

23  August?

24         THE COURT:  No.  July 19th.

25         MR. HARTMAN:  Your Honor, may I make a suggestion?

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

Case 14-50333-gs    Doc 544    Entered 08/16/19 13:38:20    Page 46 of 53
Case 14-50333-gs    Doc 520    Entered 07/19/19 11:57:00    Page 46 of 52

35

1          THE COURT:  Yes, Mr. Hartman.

2          MR. HARTMAN:  As you know, there are extensive briefs

3  on file with respect to the motion.  And it -- I don't want to

4  have the Court have to be burdened with additional motions that

5  repeat everything.  So if -- unless somebody has something new

6  to inject into the process, I would suggest that each party's

7  papers refer to every docket entry that they would like to have

8  the Court consider, so that nothing's repeated.

9          THE COURT:  Well, I appreciate that.  I agree.  But

10  really, again, there should be no additional -- we've had

11  briefing.  We've had --

12          MR. HARTMAN:  I under --

13          THE COURT:  -- an opposition.  You've opposed

14  actually that opposition as untimely.  That matter was argued.

15  So there's really nothing on the legal side to do.

16          What we really need to do is see if anybody else is

17  willing to pay more than what the current bid was.  As --

18  Judge Beesley referred to it as the stalking-horse; that's

19  exactly what it is.  And unless and until something happens,

20  there really shouldn't be anything other -- you know, to do in

21  preparation other than to bring the people that are going to

22  testify to the hearing.

23          And what I will do was -- is require a final witness

24  list and exhibits by July 8th, and that's all.  I'm not going

25  to require declarations; people show up.  This is a contested

1  matter.  It is just a contested matter.  It is not a trial.

2          So we will exchange exhibits so you know the

3  exhibits.  You'll get a list of people that are going to

4  appear.  And if they're on the list, they better appear.  All

5  right?  I don't want you -- I don't want people putting every

6  possible person in the world that might appear.  You better

7  have a good faith basis for putting them on there, and I better

8  see them in the courtroom on July 19th at one o'clock.

9          MR. HARTMAN:  So again, to be clear, there's really

10  no further briefing on legal issues, there's just the fact

11  issues and the witnesses.

12          THE COURT:  Not unless something happens.

13          MR. HARTMAN:  Right.  Okay.

14          THE COURT:  All right.  And I don't discount that

15  something could happen.  But, you know, you better have

16  something new to say if you file it.

17          So if Mr. Thomas wants to make a motion for the Court

18  to appoint counsel for reasons, that's new.  Okay.  Let --

19  let's put that on the record, and we will deal with that.  But

20  enough has been said on this, right?

21          And I -- that's why I led with -- I understand

22  there's a challenge to notice.  I understand there's a

23  challenge to the actual sale itself and that it's not

24  generating enough money.  And then there's a challenge as to

25  the expenses to be paid to the auctioneer.  Those are the

37

1  matters that have been raised.  Those are the matters that are

2  going forward.  Ostensibly, the good faith of the purchaser is

3  at issue, and I'll expect testimony on that.  But those are the

4  matters there.

5        So there's not anything that I'm aware of that needs

6  further briefing, unless something should happen.

7        MR. HARTMAN:  Very well, Your Honor.

8        MR. THOMAS:  And there was one more matter,

9  Your Honor, which was that they didn't use the proper process

10 for picking an auctioneer that was qualified to get the most

11 money for it, to -- you know, we had Overstock.com that was

12 going to do a worldwide tour of the emerald, and had mentioned

13 that they thought that they could get over 200 million for it,

14 you know, and they -- they've got 20,000 for it.

15       THE COURT:  Well, that, I take, Mr. Thomas, as

16 falling into, you know, just another variation of they didn't

17 get enough money for it.

18       MR. THOMAS:  Well, but -- because it wasn't promoted.

19 Nobody knew about it.  The only people that knew about it was

20 Silver and Trazini.  They were the only people notified about

21 the sale.

22       THE COURT:  And that's what I'm telling you,

23 Mr. Thomas.  Now you get to notify people that there'll be a

24 new sale at -- on July 19th, 2019, at one o'clock, if they meet

25 those requirements.  And if this is worth however millions that

38

1  it is worth, then there should be plenty of people willing to

2  pay more than 20- or $25,000.  That will be the proof in the

3  pudding.

4              MR. THOMAS:  Your Honor, though, the --

5              THE COURT:  And with that --

6              MR. THOMAS:  It --

7              THE COURT:  -- I think that --

8              MR. THOMAS:  I won't get -- Your Honor, I'd like to

9  object on the basis that I have no right to -- since you have

10 it in the trustee's hands, to promote it.  You know, it's the

11 trustee's job to promote it and get the money for it; it's not

12 mine.  It's their job to promote it around the world and get

13 the best auctioneer.

14             THE COURT:  Okay.

15             MR. THOMAS:  And that's not happening, and that's

16 what I'm objecting on.  We had an auctioneer --

17             THE COURT:  That --

18             MR. THOMAS:  -- that was willing to do all that for

19 us.

20             THE COURT:  Okay.  So, Mr. Hartman, you'll prepare

21 the order on the terms and conditions of the auction in

22 anticipation of the notice.  Court will prepare its own very

23 short order on the scheduling of this, including the deadline

24 to file exhibit lists and witness lists by July 8th and

25 exchange and mark exhibits for presentation by July 8th as

39

1  well.

2          The exhibits that were admitted into evidence

3  previously will be deemed -- will continue over as evidence in

4  the continued hearing.  All right.

5          Thank you very much.  You've given me much to think

6  about.  I look forward to moving this along promptly.  But that

7  will end the hearing for today.  And we'll be adjourned.

8  Parties on the phone can hang up.

9          MR. THOMAS:  Thank you, Your Honor.

10          MR. SILVER:  Thank you.

11          MR. HARTMAN:  Thank you, Your Honor.

12          THE COURT:  Thank you.

13          MR. SILVER:  Thank you, Your Honor.

14          THE COURT:  Madam Clerk, I'll go ahead and hang up as

15  well.

16      (Proceedings concluded at 2:59 p.m.)

17                      * * * * *

18

19

20

21

22

23

24

25

40

## C E R T I F I C A T I O N

1

2

3         I, Lisa Luciano, court-approved transcriber, hereby

4    certify that the foregoing is a correct transcript from the

5    official electronic sound recording of the proceedings in the

6    above-entitled matter, and to the best of my ability.

7

8

9    _____

10   LISA LUCIANO, AAERT NO. 327       DATE:  July 3, 2019

11   ACCESS TRANSCRIPTS, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# CERTIFICATE OF SERVICE

I certify that I am an adult, over the age of 18 years, not a party to the action herein who resides in Washoe County, Nevada. I caused to be served the foregoing documents via e-mail and U.S. Mail to the following persons as listed below from my e-mail address of kayla.ca.nv@nvmail.com as follows:

JEFFREY A. COGAN
jeffrey@jeffreycogan.com, beautausinger@gmail.com, beau@jeffreycogan.com

JERI COPPA-KNUDSON VIA U.S. MAIL: 3495 LAKESIDE DR PMB #62 RENO, NV 89509
renobktrustee@gmail.com, jcoppaknudson@ecf.epiqsystems.com

KEVIN A. DARBY
kad@darbylawpractice.com, tricia@darbylawpractice.com, jill@darbylawpractice.com,
hersh@darbylawpractice.com, sam@darbylawpractice.com

JEFFREY L. HARTMAN VIA U.S. MAIL: 510 WEST PLUMB LANE, STE B RENO, NV 89509
notices@bankruptcyreno.com, sji@bankruptcyreno.com

TIMOTHY A. LUCAS
ecflukast@hollandhart.com

LAURY MILES MACAULEY
laury@macauleylawgroup.com

WILLIAM MCGRANE
ECF-8116edf28c97@ecf.pacerpro.com, mitch.chyette@mcgranellp.com

STEPHANIE T. SHARP
ssharp@rssblaw.com, cobrien@rssblaw.com

WAYNE A. SILVER
w_silver@sbcglobal.net, ws@waynesilverlaw.com

ALAN R. SMITH
mail@asmithlaw.com

STEVEN C. SMITH
ssmith@smith-lc.com, mbrandi@smith-lc.com

AMY N. TIRRE
amy@amytirrelaw.com, admin@amytirrelaw.com

U.S. TRUSTEE - RN - 7,7
USTPRegion17.RE.ECF@usdoj.gov

JOSEPH G. WENT
jgwent@hollandhart.com, vllarsen@hollandhart.com

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 7-19-2019

/S/ Katherine Thomas
KATHERINE THOMAS

**CERTIFICATE OF SERVICE**

I Francis Thomas certify that I am an adult, over the age of 18 years, not a party to the action herein who resides in Santa Clara County, California.  I caused to be served the following documents via e-mail to the following persons as listed below from my e-mail address of fxthomas@pacbell.net as follows:

DOCUMENTS SERVED:

1.    DEBTOR ANTHONY G. THOMAS'S CORRECTED NOTICES OF APPEAL

as follows:
JEFFREY A. COGAN
jeffrey@jeffreycogan.com, beautausinga@gmail.com, beau@jeffreycogan.com
JERI COPPA-KNUDSON VIA E-MAIL & US MAIL: 3495 Lakeside PMB 62 Dr. Reno, NV      89509
renobktrustee@gmail.com, jcoppaknudson@ecf.episystems.com
KEVIN A. DARBY
kad@darbylawpractice.com, tricia@darbylawpractice.com, jill@darbylawpractice.com, hersh@darbylawpractice.com, sam@darbylawpractice.com
JEFFREY L. HARTMAN VIA E-MAIL & US MAIL: 510 W. Plumb Lane Suite B - Reno, NV 89509
notices@bankruptcyreno.com, sji@bankruptcyreno.com
TIMOTHY A. LUCAS
ecflukast@hollandhart.com
LAURY MILES MACAULEY
laury@macauleylawgroup.com
WILLIAM MCGRANE
ECF-8116edf28c97@ecf.pacerpro.com, mitch.chyette@mcgranellp.com
STEPHANIE T. SHARP
ssharp@rssblaw.com, cobrien@rssblaw.com
WAYNE A. SILVER
w_silver@sbcglobal.net, ws@waynesilverlaw.com
ALAN R. SMITH
mail@asmithlaw.com
STEVEN C. SMITH
ssmith@smith-lc.com, mbrandt@smith-lc.com
AMY N. TIRRE
amy@amytirrelaw.com, admin@amytirrelaw.com
U.S. TRUSTEE - RN - 7,7
USTPRegion17.RE.ECF@usdoj.gov
JOSEPH G. WENT
jgwent@hollandhart.com, vllarsen@hollandhart.com

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 7th 2019.

Francis X. Thomas